David A. Riggi, Esq.
5550 Painted Mirage Rd. Suite 120
Las Vegas, NV 89149
Ph.: 1-702-463-7777
Fax: 1-888-306-7157
E-mail:RiggiLaw@gmail.com

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | )Proposed Joint Administration Under |
| Melani Schulte and | ) Cases No. |
| William Schulte…………………………….. | ) ) 09-29123-BAM |
| (proposed lead case), | ) |
| | ) |
| 2704 Sattley LLC, ………………………… | ) 09-27238-BAM |
| Hot Endeavor LLC………………………… | ) 09-27909-BAM |
| 1341 Minuet LLC …………………………. | ) 09-27910-BAM |
| 1708 Plato Pico LLC ……………………… | ) 09-27911-BAM |
| 2228 Warm Walnut LLC …………………… | ) 09-27912-BAM |
| 9425 Valley Hills LLC …………………… | ) 09-27913-BAM |
| 9500 Aspen Glow LLC …………………… | ) 09-27914-BAM |
| 5218 Misty Morning LLC ………………… | ) 09-27916-BAM |
| Cherish LLC ……………………………… | ) 09-28513-BAM |
| SABRECO Inc. …………………………… | ) 09-31584-BAM |
| Keep Safe LLC …………………………… | ) 09-31585-BAM |
| | ) |
| | ) DATE: March 2, 2010 |
| | ) TIME: 10:00 a.m. |
| | ) |
| Debtors in Possession | ) |

## JOINT
## DISCLOSURE STATEMENT OF THE
## SCHULTE-RELATED ENTITIES

I.      Introduction………………………………………………………………...…2

II.     The Joint Debtors and Their Relationships………………………………..…….3

III.    Summary of the Plan of Reorganization…………………………………………...6

IV.     Means of Implementing the Plan and Liquidation Analysis……………..….……….6

V.      Important Dates, Deadlines and Contact Information…...…………………………….8

VI.     Confirmation Requirements and Procedures…………………………………………10

VII.    Effect of Confirmation of the Plan……………………………………………………13

VIII.   Other Provisions …………………………………………………………..………14

## I. INTRODUCTION

This Disclosure Statement is intended to disclose facts and data, as well as to explain certain legal concepts. The facts and data should be sufficient, and the legal concepts should be presented in such an understandable fashion, so as to allow you to determine whether you should be in favor, or oppose, the Plan of Reorganization (a separate document, attached as **Exhibit "A"**).  In order for this Disclosure Statement to be "understandable," however, the obvious threshold questions must be asked – what is a disclosure statement and how does it differ, if at all, from a "joint"  disclosure statement ?

This Disclosure Statement describes:

- The relationship among the joint Debtors;

- How the Plan proposes to treat claims of the type you hold (i.e., what you will receive for your claim if the plan is confirmed);

- Who can vote on or object to the Plan;

- What factors the Bankruptcy Court (the "**Court**") will consider when deciding whether to confirm the Plan;

- Why the Debtors believe the Plan is feasible, and how the treatment of your claim under the Plan compares to what you would receive on your claim in liquidation and

- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the confirmed Plan itself that will establish and control your rights.

Had each of the 12 Debtors proposed their disclosure statements and plans, you might have received a very limited perspective of any particular Debtor's reorganization.  Moreover, if all 12 separate disclosure statements and plans were somehow appropriate to be transmitted to you, and if they were transmitted, the voluminous amount of paper might be overwhelming.  In addition, your possible desire to compare the statements and plans would not be well served by several documents; one unified disclosure statement and one unified plan, in the opinion of the Debtors, is much more efficient and understandable.

Your rights under separate plans or under a joint plan would be the same in terms of, for instance,

liquidation analysis. That means that if any particular Debtor's case would be, hypothetically, administered as a chapter 7 case, whatever distribution you would receive under that hypothetical chapter 7, you must also receive through the joint Plan. This is not a Plan in which the cases have been "substantively consolidated." (Although the Debtor retains the right to petition for such a consolidation if appropriate and if timely). If the cases were substantively consolidated, then a primary effect would be that the liquidation analysis would be based on an analytical framework in which all the assets would be pooled together, as would all of the liabilities. A possible distinction between the effect of a separate plan and the effect of this joint plan is that, of course, specific requirements of the Bankruptcy laws for confirmation of a "plan" would be determined, and based upon, the single joint plan.

## II. THE JOINT DEBTORS AND THEIR RELATIONSHIPS

### *The "Lead" Case*

A joint disclosure statement is, in effect, a document that combines the information from more than one entity. These entities are somehow related. The 12 entities ("Schulte-Related-Entities") that are joined into this single disclosure statement and plan share the commonality of William and Melani Schulte. That is why their bankruptcy is the "lead" case. That has no special or substantive significance other than for purposes of administration and organization; the Melani and William Schulte bankruptcy case ("Schulte Case") data, obtained from the Clerk of Court, would usually be the first and best source from which to get information that relates to any of the entities. Of particular note, the Schulte's have about 28 LLC's that are not in bankruptcy. It is possible that some of these LLC's may have property that might be transferred to the Schulte's, consistent with the explanation, in the next section, of property in seven of the LLC's in bankruptcy.

### *The seven Schulte-Transferee-Cases*

Of the eleven other cases, seven of them are inextricably associated with the Schulte case. These seven cases share the similarity of having their entity being a direct transferee of real estate from the Schulte's. Coincidentally and conveniently, these seven cases ("Schulte-Transferee-Cases") can easily be

3

identified by the fact they their names are the only cases of the 12 in which their names begin with numbers:

2704 Sattley LLC

1341 Minuet LLC

1708 Plato Pico LLC

2228 Warm Walnut LLC

9425 Valley Hills LLC

9500 Aspen Glow LLC

5218 Misty Morning LLC

Each of these seven bankruptcies have, as its primary asset, a real estate investment property. And each of these real estate investment properties were, at one time, titled to William and Melani Schulte. For purposes of financial planning and upon advice of a law firm, the Schulte's transferred each of the properties into their own individual LLC.  This practice is neither improper nor illegal.

Further, these seven properties could, conceivably, under bankruptcy law, be transferred back to William and Melani Shulte, effectively rendering these seven bankruptcy proceedings superfluous. As of now, the Schulte's have not decided to do such transfers.  What is noteworthy about their right to transfer these seven properties back, is the close relationship of these seven cases to the Schulte lead case.

### _The Keep Safe LLC and the Cherish LLC_

The two other LLC's with investment houses - Keep Sake LLC and Cherish LLC -- obtained properties on their own.  Cherish is unique among the LLC's in that it is the only one with two properties. Nevertheless, as with the Schulte-Transferee-Cases, the sole members are William and Melani Schulte.  In addition, these two LLC's also have another similarity with the Schulte-Transferee-Cases:  five of the general unsecured creditors listed in each of the

4

Bankruptcy Schedules are the same (Sattley has three of the five, but it is anticipated that the other two will be added to Sattley).

### Hot Endeavor LLC

The Hot Endeavor LLC is the centerpiece of an ambitious project to develop a facility for individual with Alzheimer's and Parkinson's diseases. The undeveloped property is located near Summerlin Parkway and Durango Boulevard, Las Vegas, Nevada. Like all the other LLC's the sole LLC members are Melani and William Schulte. The major creditor in Hot Endeavor, City National Bank, also, arguably, has second mortgages on properties in six of the seven Schulte-Transferee-Cases: 1341 Minuet LLC; 1708 Plato Pico LLC; 2228 Warm Walnut LLC; 9425 Valley Hills LLC; 9500 Aspen Glow LLC; and 5218 Misty Morning LLC.

### SABRECO Inc.

The only corporate entity among the Schulte-Related Cases, SABRECO is an operating property management company which, other than rental income from the real estate investment properties, is the main source of income for the Schulte's. The sole shareholders are William and Melani Schulte. SABRECO oversees the maintenance and operations of real estate -- owned by non-related entities -- throughout the Las Vegas valley. The approximate number of properties managed is just under 300. The Debtor's services includes: the screening and acceptance of tenants; negotiating and executing rental leases with the new tenants; the maintenance of properties, including pre-occupancy and post-occupancy inspection; resolution of HOA issues; and all appropriate accounting (including billing, receipt of rental income and transmittal to owner, receipt of security and return, as appropriate, of security deposit). The Debtor generates revenues based on a percentage of rent collected – the range is 7 to 10 percent.

### III.  SUMMARY OF THE PLAN OF REORGANIZATION

For the seven Schulte-Transferee-Cases, as well as the cases of Cherish LLC and Keep Safe LLC, the first mortgage holders on the real estate investment properties shall have their claims re-amortized at 4 percent over a 360 month time period, based on a determined or agreed value for the respective property. General unsecured creditors of these entities will receive a pro rata distribution.  All second mortgages will be stripped off.

For the Hot Endeavor secured creditor, that creditor will retain the property until a re-financing of the property is obtained within one year of the Effective Date of the Plan, thereby completely satisfying whatever claim that creditor may have. If not satisfied within that year, monthly payments shall commence, based on the value of the property, amortized over a 360 month time period at 4 percent. General unsecured creditors of these entities will receive a pro rata distribution.   All second mortgages will be stripped off.

In the Schulte individual lead case, the first mortgage on the primary residence will not be impaired, with a cure proposed over a period of time.  General unsecured creditors of these entities will receive a pro rata distribution.  All second mortgages will be stripped off.  The SABRECO creditors will receive, pro rata, a total amount equal to the value of the property owned by SABRECO.

### IV. MEANS OF IMPLEMENTING THE PLAN AND LIQUIDATION ANALYSIS

#### ***Ability to Fund the Plan***

The Debtors believe that they will have either (A) enough cash on hand or (B) sufficient cash flow on the effective date of the Plan to pay all claims and expenses that are entitled to be paid on that date. Currently, SABRECO revenues result in about $6,000 a month income to the Schulte's.  With an expansion of the property management business, William Schulte anticipates that SABRECO could, within 18 months, render a net income increase to at least $10,000 a month.

Historically, the income from the rental properties has been, monthly, as follows:

| Property Name | Monthly Income |
|---|---|
| 1341 Minuet | $1,495.00 |
| 2228 Warm Walnut | $1,295.00 |
| 9425 Valley Hills | $1,395.00 |
| 1708 Plato Pico | $1,250.00 |
| 5218 Misty Morning | $1,100.00 |
| 9500 Aspen Glow | $1,275.00 |
| 2704 Sattley | $1,000.00 |
| 1407 Hometown (Cherish LLC) | $1,495.00 |
| 5709 Ridgetree    (Cherish LLC) | $995.00 |
| 207 Booth Bay (Safe Keep LLC) | $1,195.00 |

The projected expenses of each of the properties, after a re-amortization of the first mortgage based on the indicated values and stripping of all subordinate mortgages, and based $ percent interest rate amortized over 30 years, as well as appropriate estimates for taxes, insurance, sewer fees, home owner association dues, and normal maintenance are:

| Property | Value | Principal & Interest | Taxes | Insur | HOA | Sewer/Maint. | Total |
|---|---|---|---|---|---|---|---|
| 1341 Minuet | $80,000 | $381.93 | $66 | $50 | $33 | $95 | $625.93 |
| 2228 Warm Walnut | $133,000 | $634.96 | $110 | $67 | $47 | $95 | $953.96 |
| 9425 Valley Hills | $195,000 | $930.96 | $162 | $67 | $47 | $95 | $1,301.96 |
| 1708 Plato Pico | $125,000 | $596.11 | $104 | $50 | $47 | $95 | $892.11 |
| 5218 Misty Morning | $140,000 | $668.38 | $116 | $67 | $0.00 | $95 | $946.38 |
| 9500 Aspen Glow | $133,000 | $634.96 | $110 | $67 | $47 | $95 | $953.96 |
| 2704 Sattley | $103,423 | $493.76 | $86 | $67 | $26 | $95 | $767.76 |
| 1407 Hometown | $118,000 | $563.35 | $98 | $67 | $213 | $95 | $1,036.35 |
| 5709 Ridgetree | $114,000 | $542.25 | $95 | $67 | $26 | $95 | $825.25 |
| 207 Booth Bay | $95,000 | $453.54 | $79 | $50 | $110 | $95 | $787.54 |

Applying expenses to the income, the net income is as follows:

| Property Name | Net Income |
|---|---|
| 1341 Minuet | $871.07 |
| 2228 Warm Walnut | $341.09 |
| 9425 Valley Hills | $93.04 |
| 1708 Plato Pico | $357.89 |
| 5218 Misty Morning | $153.62 |
| 9500 Aspen Glow | $321.04 |
| 2704 Sattley | $232.24 |
| 1407 Hometown | $458.65 |
| 5709 Ridgetree | $169.75 |
| 207 Booth Bay | $407.46 |

### *Liquidation Analysis*

Despite certain aspects of the Plan might be somewhat complex, the liquidation analysis is very simple.  For all of the LLC cases, no monies would be the Court must find that all creditors who do not accept the Plan will receive at least as much under the Plan as such claim holders would receive in a Chapter 7 liquidation.

## V.  IMPORTANT DATES, DEADLINES AND CONTACT INFORMATION

### *Deadline for Voting and Objection; Date of Plan Confirmation Hearing*

The Court has not yet confirmed the Plan described in this Disclosure Statement. **Your vote and input may determine whether the Plan is confirmed.** This section describes the procedures pursuant to which the Plan will or will not be confirmed. In addition, also included with this Disclosure Statement are deadlines and important Court dates relevant here.

### *Time and Place of the Hearing to Confirm the Plan*

The Court will hold a hearing on              , 2010 at        .m. to determine whether to confirm the Plan, in Courtroom 3, at the United States Bankruptcy Court for the District of Nevada, 300 South Las Vegas Boulevard, Las Vegas, Nevada, 89101.

### *Deadline for Voting to Accept or Reject the Plan*

8

If you are entitled to vote to accept or reject the Plan, enclosed is a ballot describing your claim. Please complete the ballot, as indicated, and return the ballot in the enclosed envelope to the Debtors' counsel, Law Office of David Riggi, 5550 Painted Mirage Rd. Ste. 120, Las Vegas, NV 89149, Attn: David A Riggi, Esq. See section IV.A. below for a discussion of the voting eligibility requirements. Your ballot must be received by _____, 2010 or it will **NOT** be counted.

### *Deadline for Objecting to Confirmation of the Plan*

Objections to the confirmation of the Plan must be filed with the Court and served upon (a) the Debtors' counsel, Law Office of David Riggi, 5550 Painted Mirage Rd. Ste. 120, Las Vegas, NV 89149, Attn: David A Riggi, Esq. and (b) The Office of the United States Trustee by _____, 2010.

### *Deadline to File a Proof of Claim*

Pursuant to local rule, unless the court orders otherwise, a proof of claim for a non-governmental entity in a chapter 11 case must be filed within ninety (90) days after the date first set for the meeting of creditors under 11 U.S.C. § 341(a).  The deadlines for each case are:

| Case | Proof of Claim Deadline for Regular Creditors | Proof of Claim Deadline for Government Creditors |
|---|---|---|
| Melani Schulte and William Schulte | 01/09/10 | 04/09/10 |
| 2704 Sattley LLC, | 12/15/09 | 03/15/10 |
| Hot Endeavor  LLC | 12/24/09 | 03/24/10 |
| 1341 Minuet LLC | 12/24/09 | 03/24/10 |
| 1708 Plato Pico LLC | 12/24/09 | 03/24/10 |
| 2228 Warm Walnut LLC | 12/24/09 | 03/24/10 |
| 9425 Valley Hills LLC | 12/24/09 | 03/24/10 |
| 9500 Aspen Glow LLC | 12/24/09 | 03/24/10 |
| 5218 Misty Morning LLC | 12/24/09 | 03/24/10 |
| Cherish LLC | 12/30/09 | 03/30/10 |
| SABRECO Inc. | 02/13/10 | 05/13/10 |
| Keep Safe LLC | 02/14/10 | 05/15/10 |

*__Identity of Person to contact for more information__*

If you want additional information about the Plan, you should contact the Debtor's counsel, Law Office of David Riggi, 5550 Painted Mirage Rd. Ste. 120, Las Vegas, NV 89149, at 702-463-7777. Attn: David A Riggi.

## VI.  CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in Section 1129(a) or (b) of the Bankruptcy Code. These include the requirements that: (i) the Plan must be proposed in good faith; (ii) at least one impaired class of claims must accept the plan, without counting votes of insiders; (iii) the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a Chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and (iv) the Plan must be feasible. These requirements are <u>not</u> the only requirements listed in Section 1129, and they are not the only requirements for confirmation.

### *__Who May Vote or Object__*

Any party-in-interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties-in-interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed (or allowed for voting purposes) and (2) impaired.

### *__What Is an Allowed Claim?__*

Only a creditor with an allowed claim has the right to vote on the Plan. Generally, a claim is allowed if either (A) the Debtors have scheduled the claim on the Debtor's schedules, unless

the claim has been scheduled as disputed, contingent, or un-liquidated, or (B) the creditor has filed a proof of claim, unless an objection has been filed to such proof of claim by the Debtors, in which case, such creditor cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

The deadline for filing objections to claims is _____.

### *What Is an Impaired Claim?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is impaired under the Plan. As provided in Section 1124 of the Bankruptcy Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### *Who is NOT Entitled to Vote*

The holders of the following six types of claims are *not* entitled to vote:

- Holders of claims that have been disallowed by an order of the Court;

- Holders of other claims that are not "allowed claims" (as discussed above), unless they have been "allowed" for voting purposes;

- Holders of claims in unimpaired classes;

- Holders of claims entitled to priority pursuant to Sections 507(a)(2), or (a)(8) of the Bankruptcy Code;

- Holders of claims in classes that do not receive or retain any value under the plan; and

- Administrative expenses.

Even if you are not entitled to vote on the Plan, you have a right to object to the confirmation of the plan and to the adequacy of the Disclosure Statement.

### *Who Can Vote In More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

### *Votes Necessary to Confirm the Plan*

If impaired classes exist, the Court cannot confirm the Plan unless (A) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, or (B) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed below.

### *Votes necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (A) the holders of more than one-half (½) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (B) the holders of at least two-thirds (⅔) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

### *Treatment of Non-Accepting Classes*

Even if one or more of the impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner prescribed by Section 1129(b) of the Bankruptcy Code. A plan that binds non-accepting classes often includes a type of reorganization centered on a "cramdown" plan.  Until a vote occurs, of course, it can not be determined which classes might accept and which might not.  Nevertheless, it is anticipated that the Plan for these Debtors might result in a cramdown plan. The Code allows the Plan to bind

12

non-accepting classes if it meets all the requirements for consensual confirmation except the voting requirements of Section 1129(a)(8) of the Bankruptcy Code, does not "discriminate unfairly", and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

**You should consult your own attorney regarding whether a "cram down" confirmation will affect your claim, as the variations on this general are numerous and complex.**

## VII. EFFECT OF CONFIRMATION PLAN

### *Discharge of the Debtors*

The discharge for the Melani and William Schulte case is distinguishable from the discharge for the other Schulte-Related-Cases.  Confirmation of the Plan does not discharge the Schulte's, individually, from any debt provide for in the plan until the court grants a discharge on completion of all payments under the Plan, or as otherwise provided in Section 1141(d)(5) of the Bankruptcy Code. The Debtors will not be discharged from any debt excepted from discharge under Section 523 of the Bankruptcy Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

### *Modification of Plan*

The Debtors may modify the Plan at any time before confirmation of the Plan. The Court, however, may require a new Disclosure Statement and/or re-voting on the Plan.

The Debtors may also seek to modify the Plan at any time after confirmation only if (A) the Plan has not been substantially consummated and (B) the Court authorizes the proposed modifications after notice and a hearing.

Upon request of the Debtors, the Plan may be modified at any time after confirmation of the Plan, but before the completion of payments under the Plan, to (1) increase o reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time

13

period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent to take on accounting of any payment of a claim made other than under the Plan.

Effective as of the date hereof and subject to the limitations and rights contained in the Plan: (a) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the confirmation order; and (b) after the entry of the confirmation order, the Debtors or the reorganized Debtors, as applicable, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan; provided, however, that any modification to the Plan shall not affect the rights or treatment of holders of General Unsecured Claims.

### ***Final Decree***

Once the estate has been fully administered, as provide in Rule 3022 of the Federal Rules of bankruptcy Procedure, the Debtors, or such other party as the Court shall designate in the Plan confirmation order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

## VIII.  OTHER PLAN PROVISIONS

### ***Effectuating Documents; Further Transactions***

The Debtors may take all actions to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan.

14

### *Exemption from certain transfer Taxes*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the confirmation order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

### *Revocation of Plan*

The Debtors reserve the right to revoke or withdraw the Plan prior to the confirmation hearing and to file subsequent Chapter 11 plans. If the Debtors revoke or withdraw the Plan, or if confirmation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Court; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against, the Debtors or any other entity; (b) prejudice in any manner the rights of the Debtors or any other entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtors or any other entity.

### *Successors and Assigns*

The right, benefits and obligations of any entity name or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

### *Reservation of Rights*

Except as expressly set forth herein, the Plan shall have no force or effect until the Court enters the confirmation order. Neither the filing of the Plan, any statement or provision contained in the disclosure Statement, nor the taking of any action by the Debtors or any other entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) any Debtors with respect to the holders of claims or other entity or (2) any holder of a Claim or other entity prior to the effective date of the Plan.

### *Further Assurances*

The Debtors or the reorganized Debtors, as applicable, all holders of Claims receiving distributions under the Plan and all other entities shall, from time to time, prepare, execurte and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the confirmation order.

### *Severability*

If, prior to confirmation of the Plan, any term or provision of the Plan is held by the Court to be invalid, void or unenforceable, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted, *provided* that any such alteration or interpretation must be in form and substance reasonably acceptable to the Debtor, and, to the extent such alteration or interpretation affects the rights or treatment of holders of general unsecured claims, such claim holder.

### *Filing of Additional Documents*

On or before the Effective Date, the Debtors may file with the Court all agreements and other documents that may be necessary to effectuate and further evidence the terms and conditions hereof.

**DISCLAIMER**

*THE COURT APPROVED THIS DISCLOSURE STATEMENT AS CONTAINING ADEQUATE INFORMATION TO ENABLE PARTIES AFFECTED BY THE PLAN TO MAKE AN INFORMED DECISION ABOUT ITS TERMS. THE COURT HAS NOT YET DETERMINED WHETER THE PLAN MEETS THE LEGAL REQUIREMENTS FOR CONFIRMATION AND THE FACT THAT THE COURT APPROVED THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AND ENDORSEMENT OF THE PLAN BY THE COURT, OR A RECOMMENDATION THAT IT BE ACCEPTED.*

Dated this   29th day of January, 2010.

> Respectfully submitted,
> */s/  Melani Schulte*                             */s/ David A. Riggi*
>    **As** Member of LLC's,                        Attorney for the Debtors in Possession of
>        Officer of SABRECO, and              Schulte-Related-Entities
>        Individually
> */s/  William Schulte*
>    **As** Member of LLC's,
>        Officer of SABRECO, and
>        Individually

Exhibit "A"

# UNITED STATES BANKRUPTCY COURT
# FOR THE
# DISTRICT OF NEVADA

|  |  |
|---|---|
| | ) |
| | )Proposed Joint Administration Under |
| In re: | ) Cases No. |
| Melani Schulte and | ) |
| William Schulte……………………………….. | ) 09-29123-BAM |
| (proposed lead case), | ) |
| | ) |
| 2704 Sattley LLC, …………………………. | ) 09-27238-BAM |
| Hot Endeavor  LLC………………………… | ) 09-27909-BAM |
| 1341 Minuet LLC …………………………… | ) 09-27910-BAM |
| 1708 Plato Pico LLC  ……………………... | ) 09-27911-BAM |
| 2228 Warm Walnut LLC …………………... | ) 09-27912-BAM |
| 9425 Valley Hills LLC   …………………... | ) 09-27913-BAM |
| 9500 Aspen Glow LLC  …………………... | ) 09-27914-BAM |
| 5218 Misty Morning LLC ………………... | ) 09-27916-BAM |
| Cherish LLC ………………………………… | ) 09-28513-BAM |
| SABRECO Inc. ……………………………… | ) 09-31584-BAM |
| Keep Safe LLC ……………………………… | ) 09-31585-BAM |
| | ) |
| | )  DATE: |
| | )  TIME: |
| | ) |
| | ) |
| | ) |
| Debtors in Possession | ) |

## *JOINT*
## *PLAN OF REORGANIZATION*
## *FOR*
## *SCHULTE-RELATED ENTITIES*

The Debtors in Possession, styled above, proposes the following Joint Plan of Reorganization (herein "Plan").

1

## BRIEF SUMMARY OF PLAN

The Plan, as proposed by the Debtors in Possession, is based on: (1) modifying and re-amortizing first mortgages encumbering properties; (3) stripping off second mortgages encumbering properties; (3) curing arrearages on a principal residence; (4) fully satisfying priority and administrative debt; (5) separately satisfying, certain general unsecured creditors that are common to most of the cases, and as a convenience class, and for business purposes; (6) satisfying, on a partial basis, the general unsecured creditors; and (7) the retention by a debtor of any rights to challenge the validity of a note and mortgage.

## ARTICLE I
## DEFINITIONS

The following terms when used in the Plan shall, unless the context otherwise requires, have the following meaning respectively:

**ADMINISTRATIVE CLAIM and ADMINISTRATIVE EXPENSE CLAIM:** A Claim Allowed under §503(b) of the Bankruptcy Code that is entitled to priority under §507(a)(2) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Estate or administering the Chapter 11 Case as authorized and approved by a Final Order, (b) any actual and necessary costs and expenses incurred in the ordinary course of the Debtor's business, (c) fees and expenses of Professionals to the extent Allowed by Final Order under §§330, 331, or 503 of the Bankruptcy Code, and (d) all fees and charges assessed against the Estate pursuant to 28 U.S.C. §1930.

**ALLOWED CLAIM:** A claim (a) in respect to which a Proof of Claim has been filed with the Bankruptcy Court within the applicable period of limitation; or (b) scheduled in the list of creditors and filed with the Bankruptcy Court in the case and not listed as disputed, contingent, or

2

unliquidated as to amount, in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation or an order to the Bankruptcy Court, or as to which any such objection has been determined by an order or judgment, which order or judgment is not subject to any stay of the effect thereof. Certain claims not listed in the Debtor's bankruptcy schedules as disputed, contingent, or unliquidated as to amounts may be objected to by Debtor because of a change in circumstances or because of additional information made available to debtor or its counsel. All claims will be determined by Bankruptcy Court order to be allowed or disallowed.

**BANKRUPTCY CODE:** Title 11, United States Code.

**BANKRUPTCY COURT:** The United States Bankruptcy Court for the District of Nevada, the Honorable Bruce A. Markell, Judge, acting in these cases.

**CHAPTER 11:** Chapter 11, Title 11, United States Code.

**CLAIM:** Any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, against the Debtor in existence on or as of the date of the petition, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured or unsecured.

**CLASS:** Any class into which Allowed Claims are classified pursuant to

Article II.

**CONFIRMATION DATE:** Confirmation date shall be the date upon which the order confirming the Joint Plan of Reorganization is entered by the Bankruptcy Court for the District of Nevada.

**COURT:** Court shall mean the United States Bankruptcy Court for the District of Nevada, including the United States Bankruptcy Judge presiding in the Bankruptcy Case of the Debtor.

3

**CREDITOR:** Holder of a Claim against a Debtor.

**DATE OF THE PETITION:**  The date upon which the commencement of a Bankruptcy case commenced, which would be:

| Case | File Date |
|---|---|
| Melani Schulte and William Schulte | 10/11/09 |
| 2704 Sattley LLC, | 09/16/09 |
| Hot Endeavor  LLC | 09/25/09 |
| 1341 Minuet LLC | 09/25/09 |
| 1708 Plato Pico LLC | 09/25/09 |
| 2228 Warm Walnut LLC | 09/25/09 |
| 9425 Valley Hills LLC | 09/25/09 |
| 9500 Aspen Glow LLC | 09/25/09 |
| 5218 Misty Morning LLC | 09/25/09 |
| Cherish LLC | 10/01/09 |
| SABRECO Inc. | 11/15/09 |
| Keep Safe LLC | 11/16/09 |

**DEBTOR:**  Any of the Schulte-Related-Entities .

**DEFICIENCY CLAIM:**  Regarding a Creditor having a Secured Claim, that portion of the  Claim that is not an Allowed Secured Claim because of a determination by the Court that the value of the Creditor's interest in property is not sufficient to fully collateralize the Creditor's claim.

**EFFECTIVE DATE:** The first day of the first calendar month following the entry of order of the Bankruptcy Court of the District of Nevada confirming this Plan.

4

**PRIORITY CLAIM:** Any and all Claims (or portions thereof), if any, entitled to priority under §507(a) of the Bankruptcy Code other than Priority Tax Claims and Administrative Expense Claims.

**PRIORITY TAX CLAIM:** Any Claims of a governmental entity entitled to priority under §507(a)(8) of the Bankruptcy Code.

**PROPERTY:** The term will be used only within the context of a clear referential indication of a particular piece of real estate.

**PRO RATA:** With respect to any holder of an unsecured proof of claim, the manner of payment in which any particular creditor holding an unsecured claim shall be paid the same proportion that the amount of such claim bears to the aggregate amount of the claims in the particular Class.

**RULES:** The Federal Rules of Bankruptcy Procedure, as amended, and the Local Rules of Bankruptcy Procedure and as adopted by the Bankruptcy Court.

**SCHULTE-RELATED ENTITIES:** The Debtors that have been joined through this Plan of Reorganization.

**SECURED CLAIM:** An allowed claim of a creditor, secured by a lien on property of the Debtor, which claim existed on the date of the filing of the petition or which was authorized by the Bankruptcy Court thereafter to the extent that such claim is not greater than the value of the Debtor's property on which the Bankruptcy Court finds a valid security interest for such claim is held.

5

**ARTICLE II**
**CLASSIFICATION AND TREATMENT OF CERTAIN CLAIMS,**
**DESIGNATION AS TO THEIR IMPAIRMENT,**
**AND TREATMENT OF UNCLASSIFIED CLAIMS**

For the purposes of this Plan of Reorganization, the creditors are categorized into the following classes:

**CLASS 1 – HOT ENDEAVOR CASE – FIRST MORTGAGE, SECURED CLAIM OF CITY NATIONAL BANK.** This claim, secured by a mortgage on undeveloped property near Summerlin Parkway and Durango Boulevard, Las Vegas, Nevada, shall be impaired. City National Bank shall retain its secured status until, and unless, its allowed claim is satisfied. Property taxes and insurance on the property shall be kept current. Within one year of the Effective Date of the Plan, re-financing shall be obtained in an amount to completely satisfy City National Bank; or monthly payments shall commence based on the the value of the property, at 4 % amortized over 360 months. City National Bank may have a Deficiency Claim that is in Class 3, the Class of General Unsecured Creditors for the Hot Endeavor case.

**CLASS 1A – 1341 MINUET LLC CASE – FIRST MORTGAGE, SECURED CLAIM OF CHASE MANHATTAN MORTGAGE.** This claim, secured by a mortgage on the property, shall be impaired. Commencing on the Effective Date of the Plan, 1341 Minuet LLC shall make monthly payments in the approximate amount of $497.93, which is based on an interest rate of 4% amortized over 360 months with a property value of $80,000. Estimated monthly allocations for taxes and insurance are part of the proposed monthly payment. Chase Manhattan Mortgage shall also have a Deficiency Claim that is in Class 3A, the Class of General Unsecured Creditors for the Minuet case.

6

**CLASS 1B – 1703 PLATO PICO LLC CASE – FIRST MORTGAGE, SECURED CLAIM OF BAC HOME LOANS.** This claim, secured by a mortgage on the property, shall be impaired. Commencing on the Effective Date of the Plan, 1703 Plato Pico LLC shall make monthly payments in the approximate amount of $750.11, which is based on an interest rate of 4% amortized over 360 months with a property value of $125,000. Estimated monthly allocations for taxes and insurance are part of the proposed monthly payment. BAC Home Loans shall also have a Deficiency Claim that is in Class 3B, the Class of General Unsecured Creditors for the Plato Pico case.

**CLASS 1C – 2228 WARM WALNUT LLC CSE – FIRST MORTGAGE, SECURED CLAIM OF WELLS FARGO HOME MORTGAGE.** This claim, secured by a mortgage on the property, shall be impaired. Commencing on the Effective Date of the Plan, 2228 Warm Walnut LLC shall make monthly payments in the approximate amount of $811.96, which is based on an interest rate of 4% amortized over 360 months with a property value of $133,000. Estimated monthly allocations for taxes and insurance are part of the proposed monthly payment. Wells Fargo Home Mortgage shall also have a Deficiency Claim that is in Class 3C, the Class of General Unsecured Creditors for the Warm Walnut case.

**CLASS 1D – 2704 SATTLEY LLC CASE – FIRST MORTGAGE, SECURED CLAIM OF ELIZER/LLEWELYN.** This claim, secured by a mortgage on the property, shall be impaired. Commencing on the Effective Date of the Plan, 2704 Sattley LLC shall make monthly payments in the approximate amount of $646.76, which is based on an interest rate of 4% amortized over 360 months with a property value of $103,423. Estimated monthly allocations for taxes and insurance are part of the proposed monthly payment.

Elizer/Llewelyn shall also have a Deficiency Claim that is in Class 3D, the Class of General Unsecured Creditors for the Sattley case.

**CLASS 1E – 5218 MISTY MORNING LLC CASE – FIRST MORTGAGE, SECURED CLAIM OF FIFTH THIRD BANK.** This claim, secured by a mortgage on the property, shall be impaired. Commencing on the Effective Date of the Plan, 5218 Misty Morning LLC shall make monthly payments in the approximate amount of $851.38, which is based on an interest rate of 4% amortized over 360 months with a property value of $140,000. Estimated monthly allocations for taxes and insurance are part of the proposed monthly payment. Misty Morning LLC shall also have a Deficiency Claim that is in Class 3E, the Class of General Unsecured Creditors for the Minuet case.

**CLASS 1F – 9425 VALLEY HILLS LLC CASE – FIRST MORTGAGE, SECURED CLAIM OF MIDLAND MORTGAGE.** This claim, secured by a mortgage on the property, shall be impaired. Commencing on the Effective Date of the Plan, 9425 Valley Hills LLC shall make monthly payments in the approximate amount of $1159.96, which is based on an interest rate of 4% amortized over 360 months with a property value of $195,000. Estimated monthly allocations for taxes and insurance are part of the proposed monthly payment. Midland Mortgage shall also have a Deficiency Claim that is in Class 3F, the Class of General Unsecured Creditors for the Valley Hills case.

**CLASS 1G – 9500 ASPEN GLOW LLC CASE – FIRST MORTGAGE, SECURED CLAIM OF CITIMORTGAGE.** This claim, secured by a mortgage on the property, shall be impaired. Commencing on the Effective Date of the Plan, 9500 Aspen Glow LLC shall make monthly payments in the approximate amount of $811.96, which is based on an interest

8

rate of 4% amortized over 360 months with a property value of $133,000. Estimated monthly allocations for taxes and insurance are part of the proposed monthly payment. Citimortgage shall also have a Deficiency Claim that is in Class 3G, the Class of General Unsecured Creditors for the Aspen Glow case.

**CLASS 1H(a) – CHERISH LLC CASE – FIRST MORTGAGE ON 5709 RIDGETREE AVENUE, SECURED CLAIM OF BAC HOME LOANS.** This claim, secured by a mortgage on the property commonly known as 5709 Ridgetree Avenue, Las Vegas, Nevada, shall be impaired. Commencing on the Effective Date of the Plan, Cherish LLC shall make monthly payments in the approximate amount of $704.25, which is based on an interest rate of 4% amortized over 360 months with a property value of $114,000. Estimated monthly allocations for taxes and insurance are part of the proposed monthly payment. BAC Home Loans shall also have a Deficiency Claim that is in Class 3H, the Class of General Unsecured Creditors for the Cherish case.

**CLASS 1H(b) – CHERISH LLC CASE – FIRST MORTGAGE ON 1407 HOMETOWN AVENUE, SECURED CLAIM OF BERNARD GREENBLATT.** This claim, secured by a mortgage on the property commonly known as 1407 Hometown Avenue, Las Vegas, Nevada, shall be impaired. Commencing on the Effective Date of the Plan, the Debtor shall make monthly payments in the approximate amount of $728.35, which is based on an interest rate of 4% amortized over 360 months with a property value of $118,000. Estimated monthly allocations for taxes and insurance are part of the proposed monthly payment. Bernard Greenblatt shall also have a Deficiency Claim that is in Class 3H, the Class of General Unsecured Creditors for the Cherish Case.

9

**CLASS 1I – KEEP SAFE LLC CASE – FIRST MORTGAGE ON 207 BOOTH BAY STREET, SECURED CLAIM OF BANK OF NEVADA.** This claim, secured by a mortgage on the property commonly known as 207 Booth Bay Street, Las Vegas, Nevada, shall be impaired. Commencing on the Effective Date of the Plan, the Debtor shall make monthly payments in the approximate amount of $582.54, which is based on an interest rate of 4% amortized over 360 months with a property value of $95,000. Estimated monthly allocations for taxes and insurance are part of the proposed monthly payment. Bank of Nevada shall also have a Deficiency Claim that is in Class 3I, the Class of General Unsecured Creditors for the Keep Safe Case.

**CLASS 1J – MELANI AND WILLIAM SCHULTE CASE – FIRST MORTGAGE ON PRINCIPAL RESIDENCE, SECURED CLAIM OF AMERICA'S SERVICING COMPANY.** This claim, secured by a mortgage on the property commonly known as 509 Canyon Greens, Las Vegas, Nevada, shall be unimpaired. Commencing on the Effective Date of the Plan, Debtor shall commence normal monthly mortgage payments.  Commencing six months after the effective date of the Plan, the Debtor shall make monthly payments in the approximate amount of $500, which shall be applied against the pre-confirmation arrearages, and which shall continue until the arrearages are cured.

**CLASS 2A – 1341 MINUET LLC CASE – SECOND MORTGAGE, SECURED CLAIM OF CITY NATIONAL BANK.** This claim, secured by a second mortgage on the property, shall be impaired.  The claim shall be modified, as allowed by the Bankruptcy Code, and upon determination of the Bankruptcy Court, to a completely unsecured claim. As such, City National Bank shall have a Deficiency Claim that is in Class 3A, the Class of General

Unsecured Creditors for the Minuet Case.

**CLASS 2B – 1708 PLATO PICO LLC CASE – SECOND MORTGAGE, SECURED CLAIM OF CITY NATIONAL BANK.** This claim, secured by a second mortgage on the property, shall be impaired.  The claim shall be modified, as allowed by the Bankruptcy Code, and upon determination of the Bankruptcy Court, to a completely unsecured claim. As such, City National Bank shall have a Deficiency Claim that is in Class 3B, the Class of General Unsecured Creditors for the Plato Pico Case.

**CLASS 2C – 2228 WARM WALNUT LLC CASE – SECOND MORTGAGE, SECURED CLAIM OF CITY NATIONAL BANK.** This claim, secured by a second mortgage on the property, shall be impaired.  The claim shall be modified, as allowed by the Bankruptcy Code, and upon determination of the Bankruptcy Court, to a completely unsecured claim. As such, City National Bank shall have a Deficiency Claim that is in Class 3C, the Class of General Unsecured Creditors for the Warm Walnut Case.

**CLASS 2E – 5218 MISTY MORNING LLC CASE – SECOND MORTGAGE, SECURED CLAIM OF CITY NATIONAL BANK.** This claim, secured by a second mortgage on the property, shall be impaired.  The claim shall be modified, as allowed by the Bankruptcy Code, and upon determination of the Bankruptcy Court, to a completely unsecured claim. As such, City National Bank shall have a Deficiency Claim that is in Class 3E, the Class of General Unsecured Creditors for the Misty Morning Case.

**CLASS 2F – 9425 VALLEY HIILS CASE – SECOND MORTGAGE, SECURED CLAIM OF CITY NATIONAL BANK.** This claim, secured by a second mortgage on the property, shall be impaired.  The claim shall be modified, as allowed by the Bankruptcy Code, and upon determination of the Bankruptcy Court, to a completely unsecured claim. As such, City National Bank shall have a Deficiency Claim that is in Class 3F, the Class of General Unsecured Creditors for the Valley Hills Case.

**CLASS 2G – 9500 ASPEN GLOW – SECOND MORTGAGE, SECURED CLAIM OF CITY NATIONAL BANK.** This claim, secured by a second mortgage on the property, shall be impaired.  The claim shall be modified, as allowed by the Bankruptcy Code, and upon determination of the Bankruptcy Court, to a completely unsecured claim. As such, City National Bank shall have a Deficiency Claim that is in Class 3G, the Class of General Unsecured Creditors for the Aspen Glow Case.

**CLASS 2H(a) – CHERISH LLC CASE – SECOND MORTGAGE ON 5709 RIDGETREE AVENUE, SECURED CLAIM OF JESSE SBAIH.** This claim, secured by a second mortgage on the property commonly known as 5709 Ridgetree Avenue, Las Vegas, Nevada, shall be impaired.  The claim shall be modified, as allowed by the Bankruptcy Code, and upon determination of the Bankruptcy Court, to a completely unsecured claim. As such, City National Bank shall have a Deficiency Claim that is in Class 3H, the Class of General Unsecured Creditors for the Cherish Case.

**CLASS 2H(a) – CHERISH LLC CASE – THIRD MORTGAGE ON 5709 RIDGETREE AVENUE, SECURED CLAIM OF SABRECO DEFINED BENEFIT PENSION PLAN.** This claim, secured by an encumbrance that has a third priority on the property commonly

12

known as 5709 Ridgetree Avenue, Las Vegas, Nevada, shall be impaired.  The claimant is an insider and, therefore, shall not vote on the Plan, and has consented to receive no payments pursuant to the Plan.

**CLASS 2I – KEEP SAFE LLC CASE – SECOND MORTGAGE, SECURED CLAIM OF JESSE SBAIH.** This claim, secured by a second mortgage on the property, shall be impaired.  The claim shall be modified, as allowed by the Bankruptcy Code, and upon determination of the Bankruptcy Court, to a completely unsecured claim. As such, City National Bank shall have a Deficiency Claim that is in Class 3I, the Class of General Unsecured Creditors for the Keep Safe Case.

**CLASS 2J(a) – MELANI AND WILLIAM SCHULTE CASE – SECOND MORTGAGE, SECURED CLAIM OF  BAC HOME LOANS.** This claim, secured by a second mortgage on the principal residence of Melani and William Schulte, shall be impaired. The claim shall be modified, as allowed by the Bankruptcy Code, and upon determination of the Bankruptcy Court, to a completely unsecured claim. As such, BAC Home Loans shall have a Deficiency Claim that is in Class 3J, the Class of General Unsecured Creditors for the Melani and William Schulte Case.

. **CLASS 2J(b) – MELANI AND WILLIAM SCHULTE CASE – THIRD MORTGAGE, SECURED CLAIM OF   SYLVESTER & POLEDNAK .** This claim, secured by an encumbrance that is third in priority on the principal residence of Melani and William Schulte, shall be impaired.  The claim shall be modified, as allowed by the Bankruptcy Code, and upon determination of the Bankruptcy Court, to a completely unsecured claim. As such, Sylvester & Polednak shall have a Deficiency Claim that is in

13

Class 3J, the Class of General Unsecured Creditors for the Melani and William Schulte Case.

**CLASS 2J(c) – MELANI AND WILLIAM SCHULTE CASE – FOURTH MORTGAGE, SECURED CLAIM OF Z'REA LIMITED PARTNERSHIP.** This claim, secured by an an encumbrance that is fourth in priority on the principal residence of Melani and William Schulte, shall be impaired.  The claimant is an insider and, therefore, shall not vote on the Plan, and has consented to receive no payments pursuant to the Plan.

**CLASS 3 – GENERAL UNSECURED CLAIMS OF HOT ENDEAVOR.**  These claims shall be impaired. Commencing on the first day of the 36th month after the Effective Date of the Plan, the Debtor shall make monthly payments of $100.00 a month for a period of 36 months.  The Creditors of this Class shall share pro rata the distribution.

**CLASS 3A – GENERAL UNSECURED CLAIMS OF 1341 MINUET LLC.**  These claims shall be impaired. Commencing on the Effective Date of the Plan, the Debtor shall make monthly payments of $100.00 a month for a period of 36 months.  The Creditors of this Class shall share pro rata the distribution.

**CLASS 3B – GENERAL UNSECURED CLAIMS OF 1708 PLATO PICO LLC.**  These claims shall be impaired. Commencing on the Effective Date of the Plan, the Debtor shall make monthly payments of $100.00 a month for a period of 36 months.  The Creditors of this Class shall share pro rata the distribution.

**CLASS 3C – GENERAL UNSECURED CLAIMS OF 2228 WARM WALNUT LLC.** These claims shall be impaired. Commencing on the Effective Date of the Plan, the Debtor shall make monthly payments of $100.00 a month for a period of 36 months.  The Creditors

14

of this Class shall share pro rata the distribution.

**CLASS 3D – GENERAL UNSECURED CLAIMS OF 2704 SATTLEY LLC.** These claims shall be impaired. Commencing on the first day of the 36th month after the Effective Date of the Plan, the Debtor shall make monthly payments of $100.00 a month for a period of 36 months. The Creditors of this Class shall share pro rata the distribution.

**CLASS 3E – GENERAL UNSECURED CLAIMS OF 5218 MISTY MORNING LLC.** These claims shall be impaired. Commencing on the first day of the 36th month after the Effective Date of the Plan, the Debtor shall make monthly payments of $100.00 a month for a period of 36 months. The Creditors of this Class shall share pro rata the distribution.

**CLASS 3F – GENERAL UNSECURED CLAIMS OF 9425 VALLEY HILLS LLC.** These claims shall be impaired. Commencing on the first day of the 36th month after the Effective Date of the Plan, the Debtor shall make monthly payments of $100.00 a month for a period of 36 months. The Creditors of this Class shall share pro rata the distribution.

**CLASS 3G – GENERAL UNSECURED CLAIMS OF 9500 ASPEN GLOW LLC.** These claims shall be impaired. Commencing on the Effective Date of the Plan, the Debtor shall make monthly payments of $100.00 a month for a period of 36 months. The Creditors of this Class shall share pro rata the distribution.

**CLASS 3H – GENERAL UNSECURED CLAIMS OF CHERISH LLC.** These claims shall be impaired. Commencing on the Effective Date of the Plan, the Debtor shall make monthly payments of $100.00 a month for a period of 36 months. The Creditors of this Class shall share pro rata the distribution.

15

**CLASS 3I – GENERAL UNSECURED CLAIMS OF KEEP SAFE LLC.**  These claims shall be impaired. Commencing on the Effective Date of the Plan, the Debtor shall make monthly payments of $100.00 a month for a period of 36 months.  The Creditors of this Class shall share pro rata the distribution.

**CLASS 3J – GENERAL UNSECURED CLAIMS OF MELANI AND WILLIAM SCHULTE.**  These claims shall be impaired. Commencing on the Effective Date of the Plan, the Debtor shall make monthly payments of $100.00 a month for a period of 36 months.  The Creditors of this Class shall share pro rata the distribution.

**CLASS 3K – GENERAL UNSECURED CLAIMS OF SABRECO, INC.**  These claims shall be impaired. Commencing on the Effective Date of the Plan, the Debtor shall make monthly payments of $285.00 a month for a period of 60 months.  The Creditors of this Class shall share pro rata the distribution.

**CLASS 4 – CONVENIENCE CLASS.**  This claim shall be impaired, and is comprised of all unsecured creditors that have claims of under $1000 and that are claimants in multiple cases. Commencing on the Effective Date of the Plan, the Debtor shall make monthly payments of $20.00 a month for 36 months.

**UNCLASSIFIED CLAIMANT – PRIORITY TAX CLAIM OF CLARK COUNTY TREASURER.**  This Creditor is unimpaired by operation of law.  The Clark County Treasurer shall be paid in full  Commencing on the Effective Date of the Plan, the Debtor shall make monthly payments of $250.00 a month for a period of 36 months and, if necessary to satisfy the claim in full, subsequent and continuing months until paid in full.

16

**UNCLASSIFIED CLAIMANTS – ADMINISTRATIVE EXPENSE CLAIMS.**    These claimants shall be comprised of the quarterly fees due to the United States Trustee and any fees and costs for Professionals.  The claims of the United States Trustee shall be paid in full on or before the Effective Date of the Plan.   The claims of Professionals shall be paid only upon approval of the Court.

**UNCLASSIFED CLAIMANT – INSIDERS.**  These claimants, SABRECO Benefit Pension Plan and Z-Rae, shall be paid after all other payments under the Plan are may be made in a lump sum payment but shall not be greater, as a percentage of satisfaction, than the satisfaction received by any other unsecured creditor.

## ARTICLE III
## DEBTOR IN POSSESSION FINANCING

The nine investment rental property cases (2704 Sattley  LLC; 1341 Minuet LLC; 1708 Plato Pico LLC; 2228 Warm Walnut LLC; 9425 Valley Hills LLC; 9500 Aspen Glow LLC; 5218 Misty Morning LLC; Cherish LLC; and Keep Safe LLC) shall each be self-funded through rental income.

The lone investment commercial property case, Hot Endeavor LLC, shall be funded through re-financing or other third party contributions.  SABRECO, Inc., shall be self-funding, as well as being the source of employment income for William Schulte.

## ARTICLE IV
## MOTIONS AND OTHER COURT PROCEEDINGS
## NECESSARY TO EFFECTUATE THE PLAN AND/OR RESOLVE ISSUES;
## PRESERVATION OF RIGHTS TO CAUSES OF ACTIONS OR CLAIMS

Any and all causes of action or claims which the Debtor may have that arise under Chapter 5 of the Bankruptcy Code against any third party shall be preserved. Any and all causes of action or claims which the Debtor may have that arise under the Bankruptcy Code or any other law or statute against any third party shall be preserved. Preserved causes of action shall include, but in no way be limited to, any Debtor's pending adversary proceedings and any potential causes of action.

Motions to value property may be necessary, to the extent a secured mortgage holder does not agree to the Debtors' proposed property values. Motions to modify second, and other subordinate, mortgages, will be necessary. Finally, to the extent claims litigation is more appropriate than adversary proceedings, several objections may be forthcoming before 30 days after the Effective Date of the Plan.

## ARTICLE V
## DISCHARGE OF DEBTOR AND EFFECT OF CONFIRMATION

Except for individual Debtors (i.e. Melani and William Schulte), and upon confirmation of the Plan the Debtor shall be discharged from any and all obligations, demand or claims of whatever character whether provable, liquidate, fixed or contingent except as provided in this Plan.

On and after the effective date, Debtor may grant, sell and convey any property it may have without order of the Bankruptcy Court upon such terms, subject to the

18

provisions of this Plan and the payment of Plan as provided herein, as it deems reasonable and just and may execute all appropriate documents necessary to grant, sell and convey its property.

**ARTICLE V**
**EVENTS OF DEFAULT AND ACCELERATION**

**EVENTS OF DEFAULT:** The occurrence of any of the following shall constitute an event of default under the Plan.

**(a) FAILURE TO MAKE PAYMENTS:** Failure on the part of the reorganized debtor to pay fully within thirty (30) days when due and payment required to be made in respect of the Plan Debt on or after the Consummation Date;

**(b) FAILURE TO PERFORM NEGATIVE COVENANTS:** Failure on the part of the debtor to perform or observe any negative term or provision as set forth in Article IV of the Plan, which failure remains uncured for a period of thirty (30) days after notice of such default;

**(c) FAILURE TO PERFORM OTHER TERMS AND PROVISIONS:** Failure on the part of the debtor to perform or observe any other term or provision of the Plan other than those set forth in Paragraphs (a) and (b) above of this section, which failure remains uncured for a period of sixty (60) days after notice of such default;

**(d) VOLUNTARY BANKRUPTCY CASES, ETC.:** Debtor shall generally not pay its debts as they become due or shall admit in writing its inability to pay its debts, or shall make a general assignment for the benefit of creditors; or debtor shall commence any case proceeding or other actions seeking to have an order for relief entered on its behalf as debtor or to adjudicate itself as bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, liquidation, dissolution or

19

composition of any of its debts under the Code or any other law relating to bankruptcy, insolvency, reorganization or relief of debtor or seeking appointment of a receiver, trustee, custodian or other similar official for it's or for any substantial part of its property;

## ARTICLE VI
## RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of this case until the last day of the first full fiscal quarter following the quarter in which the Effective Date falls at which time an order of the Bankruptcy Court shall be entered concluding and terminating this case effective on said day unless the debtor or any interested party shall, prior to that date, move the court to retain jurisdiction for a longer period of time.

During such time as the Bankruptcy Court retains jurisdiction, said jurisdiction will be deemed to include jurisdiction to hear and determine all claims against the debtor or the bankruptcy estate and to enforce all causes of action that may be owned by the debtor or the bankruptcy estate and to contest any claims and to hear the objection to any claims posed by the debtor or other interested party.

## ARTICLE VII
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

Objections to Claims must be filed with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made on or before thirty (30) days after the Effective Date. Notwithstanding any other provision of this Plan, proposed distributions to Disputed Claims shall suspended, pending separate order of the Court that distributions shall be made to a disbursing agent and held until the claim has been resolved, and such order shall

20

only be forthcoming if the Court believes the Disputed Claim has a likelihood of being allowed. If a Disputed Claim is allowed, a distribution to that resolved claim shall recommence. Unless otherwise provided in a Final Order of the Bankruptcy Court, any Claim on account of which a proof of claim is required by Bankruptcy Rule 3003(c)(2) and which is filed after the Bar Date shall be deemed disallowed. The holder of a Claim which is disallowed shall not receive any Distribution on account of such Claim. A Debtor may seek an order estimating the amount of any Disputed Claim, pursuant to §502(c) of the Bankruptcy Code, for the purpose of making distributions under this Plan.

## ARTICLE VIII
## MISCELLANEOUS

     **1.   HEADINGS:** The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the meanings hereof.

     **2.   NOTICES:** All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be transmitted by facsimile transmission to 1-888-306-7517; and mailed by registered or certified mail, return receipt requested:

          A.     If to the Debtor,  to David A. Riggi, Esq., 5550 Painted Mirage Road, Suite 120, Las Vegas, NV 89149;

          B.     If to a holder of an allowed claim or allowed interest, at the address set forth in its allowed Proof of Claim or proof of interest or, if none, at its' address set forth in the schedule prepared and filed with the Court; and,

21

C.         Notice to a Debtor shall be deemed given when received. Notice to any holder shall be deemed given when delivered or mailed. Any person may change the address at which it is to receive notices under the Plan by sending written notice pursuant to the provisions of this section to the person or entity to be charged with the knowledge of such change.

3. **RESERVATION OF RIGHTS:** Neither the filing of this Plan nor the Disclosure Statement, nor any statement or provision contained herein or therein, nor the taking by any creditor of an action with respect to this Plan: (a) Shall be or be deemed an admission against interest; nor, (b) Prior to the Confirmation Date, be or be deemed to be a waiver of any rights which any creditor might have against the debtors or any of their properties specifically reserved. In the event substantial consummation of the Plan does not occur, neither this Plan nor any statement contained herein or in the Disclosure Statement, may be used or relief upon in any manner in any suit, action, proceeding or controversy within or outside of the _____ Case involving Debtor.

4. **PAYMENT OF STATUTORY FEES:** All fees payable pursuant to § 1930 of Title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date.

5. **GOVERNING LAW:** Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Nevada.

6. **SUCCESSORS AND ASSIGNS:** The rights and obligations of any person

22

named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such person.

      7.  **SEVERABILITY:** Wherever possible, each provision of this Plan shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Plan shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Plan. Furthermore, if the Bankruptcy Court will not confirm this Plan because one or more provisions hereof are determined to be prohibited or invalid under applicable law, the Proponents may seek permission of the Bankruptcy Court to amend this Plan by deleting the offending provision.

      8.  **PRESERVATION OF RIGHTS.** Nothwithstanding any provision of this Plan, the Debtors specifically preserve their respective rights to object, complain against, or otherwise affect the claims that are part of this Plan.  A Debtor must commence the exercise of its rights no later than 30 days after the Effective Date of the Plan.

      Dated this  29th day of January,  2010.

Respectfully submitted,
*/s/  Melani Schulte*                                       */s/ David A. Riggi*
      **As** Member of LLC's,                        Attorney for the Debtors in Possession of the
      Officer of SABRECO, and                 Schulte-Related-Entities
      Individually
*/s/  William Schulte*
      **As** Member of LLC's,
      Officer of SABRECO, and
      Individually