1  WRIGHT, FINLAY & ZAK, LLP
2  Nichole L. Glowin, Esq.
   Nevada Bar No. 14204
3  7785 W. Sahara Ave., Ste. 200
   Las Vegas, NV 89117
4  (702) 475-7964; Fax: (702) 946-1345
5  nglowin@wrightlegal.net
   *Attorney for Secured Creditor, Federal National Mortgage Association ("Fannie Mae"), its*
6  *successors and/or assigns*

7                **UNITED STATES BANKRUPTCY COURT**

8                     **DISTRICT OF NEVADA**

9  In re:                                    Case No.:  09-29123-mkn
                                             Chapter:   11
10 MELANIE SCHULTE AND WILLIAM R.
   SCHULTE,
11
12             Debtors.
13
14
15
16 _____

17      **FEDERAL NATIONAL MORTGAGE ASSOCIATION'S EX PARTE**

18 **APPLICATION FOR AN ORDER CONFIRMING THE ABSENCE OF AUTOMATIC**

19 **STAY PURSUANT TO 11 U.S.C. §§ 362(c)(1), 362(c)(2)(C) and 362(j)**

20      Federal National Mortgage Association ("Fannie Mae"), its successors and/or assigns

21 ("FNMA" or "Movant hereafter), requests from this Court an Order Confirming that the

22 Automatic Stay of 11 U.S.C § 362 has terminated with respect to the Debtors due to

23 confirmation of the Debtors' plan and their subsequent discharge. This application is supported

24 by the following Memorandum of Points and Authorities.

25                    **JURISDICTION AND VENUE**

26      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334. This

27 is a core proceeding pursuant to 28 U.S.C. § I 57(b)(2). The statutory predicate for the relief

28

1  sought herein is Sections 361 and 362 of the Code and Rule 4001 of the Bankruptcy Rules.

2  Venue is proper in this Court pursuant to 28 U.S.C. §§1432 and/or 1473.

3  <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

4      1.    On February 7, 2002, Borrower Leola Brinker (hereinafter "Borrower") executed

5  and delivered a promissory note in the original principal amount of $152,000.00 (the "Note") in

6  favor of Amera Mortgage Corporation ("Lender") which was secured by a first position Deed of

7  Trust ("Deed of Trust") recorded on title to the real property located at 8562 Lambert Drive, Las

8  Vegas, NV 89147 (the "Property") which is legally described as follows:

9      LOT 123 IN BLOCK 4 OF RANCHO LAS BRISAS R2 NO. 9 AS SHOWN BY MAP
10      THEREOF ON FILE IN BOOK 57 OF PLATS, PAGE 76 IN THE OFFICE OF THE
    COUNTY RECORDER OF CLAR COUNTY, NEVADA.

11
12      EXCEPTING ALL MINERAL, OIL, GAS, PETROLEUM, OTHER
    HYDROCARBONS, SUBSTANCES AND ALL GEOTHERMAL ENERGY SOURCES
13      IN, UNDER, OR WHICH MAY BE PRODUCED FROM THE WITHIN-DESCRIBED
    LANDS, WHICH LIEN BELOW A PLANE PARALLEL TO AND 500 FEET BELOW
14      THE SURFACE OF THE WITHIN EXTRACTION OF SAID SUBSTANCES BY
    MEANS ON MINES, WELLS, OR DERRICKS, OR OTHER EQUIPMENT, SURFCE
15      OF THE WITHIN DESCRIBED LAND, NOT TO USE SAID LAND ABOVE PLANE
    PARALLEL TO AND 500 FEET BELOW THE SURFACE OF SUCH LAND.
16

17      Assessor's Parcel No.: 163-21-418-003

18  True and correct copies of the Note and Deed of Trust are attached hereto as **Exhibits 1 and 2**,

19  respectively.

20      2.    All rights, remedies and beneficial interest under the Deed of Trust was assigned

21  to Movant FNMA by executing an endorsement in blank of the Note (See **Exhibit 1** attached

22  hereto, Note) and recording an Assignment on title to the Property evidencing the transfer. True

23  and correct copies of the relevant Assignment are attached hereto as **Exhibit 3**.

24      3.    In or around the date of execution of the Note and Deed of Trust, Borrower

25  transferred all right, title and interest in the Property to Debtor herein MELANIE SCHULTE by

26  way of a Grant, Bargain and Sale Deed ("1st Grant Deed") recorded on title to the Property.

27  Thereafter, Debtor MELANIE SCHULTE transferred all right, title and interest in the Property

28  to herself and co-Debtor herein WILLIAM R. SCHULTE by way of a Grant, Bargain and Sale

Deed recorded on title to the Property ("2nd Grant Deed"). True and correct copies of the 1st and 2nd Grant Deeds are attached hereto as **Exhibit 4**, collectively.

4.    On or about October 11, 2009 MELANIE SCHULTE AND WILLIAM R. SCHULTE (hereinafter collectively referred to as the "Debtors"), filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Nevada as Bankruptcy Case No. 09-29123-mkn ("Bankruptcy Action"). Debtors included the Property as part of their assets in their Schedules filed in the Bankruptcy Action (See Docket for the Bankruptcy Action at Docket No. 41).

5.    The Debtors confirmed a Chapter 11 Plan ("Plan") in the Bankruptcy Action on March 8, 2011 (See Docket for the Bankruptcy Action at Docket No. 912). Pursuant to Section 6.05 of the confirmed Plan all property of the estate was vested in the Debtors on the date of confirmation, March 8, 2011. Additionally, pursuant to Section 2.01 Class 2(s) of the confirmed Plan Debtors agreed to make regular post-petition payments to Movant on a principal balance of $148,000.00 amortized over 30 years at 5% in accordance with the terms of the Note and Deed of Trust secured by the Property following confirmation (See Docket for the Bankruptcy Action at Docket No. 834.)

6.    The Debtors subsequently received their Chapter 11 discharge on December 15, 2015 (See Docket for the Bankruptcy Action at Docket No. 1182).

7.    Debtors have defaulted under the terms of their confirmed Plan by failing to make the required monthly mortgage payments under the Note and Deed of Trust. Currently, Debtors are delinquent on their payments for the months of January 1, 2012 through October 1, 2018 in the following amounts:

90 payments at $1,282.00 each:     $115,380.00
(01/01/2012-10/01/2018)
Suspense Balance (Credit):     -$382.12

**TOTAL POST CONFIRMATION ARREARS: $114,977.88**

A true and correct copy of Movant's Payment History evidencing the default is attached hereto as **Exhibit 5.**

8.    Movant FNMA requests that the Court enter an Order confirming that no automatic stay affecting Movant is currently in effect with respect to the Debtors or the their estate.

9.    Bankruptcy Code  11 U.S.C. § 362(c)(1), (c)(2)(C) and (j) provide for termination of the automatic stay upon the request of a party when the property is no longer property of the estate and/or if a bankruptcy discharge is granted or denied as follows:

(c)(1) [T]he stay of an act against property of the estate under section (a) of this section continues until such property is no longer property of the estate; and

(c)(2)(C) [I]f the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied

(j) On request of a party in interest the Court shall issue an order under subsection (c) confirming that the automatic stay has terminated

12.    Pursuant to the above provisions of the Bankruptcy Code and in light of the provisions of the confirmed Plan and discharge of Debtors, Movant FNMA respectfully requests an order confirming that the Automatic Stay has terminated and that Movant may proceed with collection on the note and enforcement of its security interest, including foreclosure proceedings over the subject Property.

**WHEREFORE**, Movant FNMA, respectfully requests this Court enters an Order confirming that the Automatic Stay terminated with respect to the Movant and the subject Property described in this application. A true and correct copy of FNMA's proposed Order is attached hereto as **Exhibit 6**.

DATED this 12th day of November, 2018.

WRIGHT, FINLAY & ZAK, LLP

/s/ Nichole L Glowin
Nichole L. Glowin, Esq.
Nevada Bar No. 14204
7785 W. Sahara Ave., Ste. 200
Las Vegas, NV 89117
*Attorney for Secured Creditor, Federal National Mortgage Association ("Fannie Mae"), its successors and/or assigns*

 

# NOTE

BRINKER
LOAN NUMBER:

FEBRUARY 7, 2002          LAS VEGAS                NEVADA
[Date]                         [City]                      [State]

8562 LAMBERT DRIVE LAS VEGAS, NV 89147
[Property Address]          FEB 1

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ **152,000.00**
(this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
AMERA MORTGAGE CORPORATION          FEB 1 1 2002

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **7.250**          %

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month

I will make my monthly payment on the   **1ST**   day of each month beginning on
MARCH 2002   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal  If, on   **FEBRUARY 1, 2032**           ,
I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at    **3515 W. CHARLESTON BLVD., LAS VEGAS**
**NV 89102**
or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $   **1,036.91**

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due  A payment of Principal only is known as a "Prepayment"  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge  The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note  If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits,

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3200 1/01
DOCUCFA1                           *(page 1 of 3 pages)*
DOCUCFA1.VTX  11/28/2001

# EXHIBIT 1




LOAN NUMBER:

then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.000      % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together This means that any one of us may be required to pay all of the amounts owed under this Note

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor "Presentment" means the right to require the Note Holder to demand payment of amounts due "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT             Form 3200 1/01
DOCUCFA1
DOCUCFA2.VTX  11/24/2000                                    *(page 2 of 3 pages)*

LOAN NUMBER: 

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

*Leola Brinker* _____ (Seal)
LEOLA BRINKER                                        -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
Pay To The Order Of              -Borrower

Without Recourse        [Sign Original Only]
*Cindi Callaham*
Cindi Callaham, Senior Vice President
RBMG, Inc.

PAY TO THE ORDER OF RBMG, INC.
WITHOUT RECOURSE
7909 PARKLANE ROAD
COLUMBIA, SC 29223

BY AMERA MORTGAGE CORPORATION
3515 W. CHARLESTON BLVD.

LAS VEGAS, NV 89102
THIS *7th* DAY OF *February 2002*

SIGNED _____
       GARY R. BURNS
       VICE PRESIDENT
       AMERA MORTGAGE CORPORATION

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3200 1/01
DOCUCFA3                                    *(page 3 of 3 pages)*
DOCUCFA3 VTX  01/02/2001

003

200202 08
.02441

PARCEL NUM: 163-21-418-003
After Recording Return to:
AMERA MORTGAGE CORPORATION

3515 W. CHARLESTON BLVD.
LAS VEGAS, NV 89102

Grantee:
AMERA MORTGAGE CORPORATION
3515 W. CHARLESTON BLVD.
LAS VEGAS NV 89102

Mail Tax Statement To:
RBMG, INC.
P.O. BOX 100155
COLUMBIA SC 29202-3155



ORIGINAL    FNA18 (19)

---

[Space Above This Line For Recording Data]

## DEED OF TRUST

BRINKER
LOAN NUMBER:

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated    FEBRUARY 7, 2002
, together with all Riders to this document.
(B) "Borrower" is    LEOLA BRINKER, AN UNMARRIED WOMAN

Borrower is the trustor under this Security Instrument.
(C) "Lender" is    AMERA MORTGAGE CORPORATION

Lender is a    CORPORATION                                    organized and existing under the
laws of    NEVADA                        Lender's address is    3515 W.
CHARLESTON BLVD. LAS VEGAS, NV 89102
.
Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is    FIDELITY NATIONAL TITLE
.
(E) "Note" means the promissory note signed by Borrower and dated    FEBRUARY 7, 2002
. The Note states that Borrower owes Lender
ONE HUNDRED FIFTY-TWO THOUSAND AND 00/100
Dollars (U.S. $   152,000.00          ) plus interest. Borrower has promised to pay this
debt in regular Periodic Payments and to pay the debt in full not later than    FEBRUARY 1, 2032
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

NEVADA--Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3029 1/01
DOCUNV1
DOCUNV1.VTX 08/09/2001                    (Page 1 of 12 pages)

# EXHIBIT 2

004

2002 02 08
.02441

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider    ☐ Second Home Rider
☐ Balloon Rider    ☒ Planned Unit Development Rider    ☐ Biweekly Payment Rider
☒ 1-4 Family Rider    ☐ Other(s) [specify]

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the    COUNTY
(Type of Recording Jurisdiction)
of    CLARK    :
(Name of Recording Jurisdiction)
SEE EXHIBIT "ONE" ATTACHED HERETO AND MADE A PART HEREOF.
APN 163-21-418-003

which currently has the address of        8562 LAMBERT DRIVE
[Street]
LAS VEGAS        , Nevada    89147        ("Property Address").
[City]        [Zip Code]

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3029 1/01
DOCUNV2
DOCULNV3.VTX  08/09/2001        *(Page 2 of 12 pages)*

20020208
.02441

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

NEVADA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3029 1/01
DOCUINV3
DOCU1NV3.VTX  11/18/2000                        (Page 3 of 12 pages)

200202 08
.02441

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3029 1/01
DOCU1NV4
DOCU1NV4.VTX  08/09/2001                    *(Page 4 of 12 pages)*

007

defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3029 1/01
DOCUINV5                                    *(Page 5 of 12 pages)*
DOCU1NV5.VTX  08/09/2001

2018020B
.02441

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                    Form 3029 1/01
DOCU1NV6
DOCU1NV6.VTX   08/08/2001                    *(Page 6 of 12 pages)*

009



20020208
.02441

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a

NEVADA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3029 1/01
DOCU3NV7
DOCU3NV7.VTX  08/09/2002
*(Page 7 of 12 pages)*

010

single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to

Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3029 1/01
DOCUINV8
DOCU1NV8.VTX    08/09/2001
*(Page 8 of 12 pages)*

011

20020208
.02441

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3029 1/01
DOCUINV9
DOCU1NV9.VTX   08/09/2001                    *(Page 9 of 12 pages)*

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in

defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3029 1/01
DOCU1NV10
DOCU1NVA.VTX  08/09/2001
                                   *(Page 10 of 12 pages)*

20020208
.02441

Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note, and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lenders' election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                    Form 3029 1/01
DOCUINV11                                                                                                    *(Page 11 of 12 pages)*
DOCU3INVB.VTX   08/03/2001

014

200202 08
.02441

secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____
Witness

_____
Witness

*Leola Brinker*                    (Seal)
LEOLA BRINKER              Borrower

_____ (Seal)
Borrower

_____ (Seal)
Borrower

_____ (Seal)
Borrower

[Space Below This Line For Acknowledgment]

STATE OF *Nevada*
COUNTY OF *Clark*

This instrument was acknowledged before me on 7th day of February 2002. by *Leola Brinker*

_____
NOTARY PUBLIC

Title (and Rank)_____

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
P. WALTER
Appt. No. 92-1387-1
My Appt. Expires June 21, 2004

NEVADA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3029 1/01
DOCUINV12
DOCULNVC.VTX  03/09/2002                  *(Page 12 of 12 pages)*

015

 EXHIBIT "ONE" 


20020208
.02441

Lot 123 in Block 4 of Rancho Las Brisas - R2 No. 9, as shown by map thereof on file in Book 57 of Plats, Page 76 in the Office of the County Recorder of Clark County, Nevada.

EXCEPTING all mineral, oil, gas, petroleum, other hydrocarbons, substances, and all geothermal energy sources in, under, or which may be produced from the within-described lands, which lie below a plane parallel to and 500 feet below the surface of the within described land, for the purposes of prospecting, explorationk development, production, or extraction of said substances by means of mines, well, or derricks, or other equipment, provided, however, that the owner of said substances shall have no right to enter upon the surface of the within described land, not to use said land above plane parallel to and 500 feet below the surface of such land.

Assessor's Parcel No: 163-21-418-003

2

016

Branch :FLV,User :CON2                    Comment:                                    Station Id :D0MI

2002020 8
.02442

PARCEL NUMBER:   163-21-618-003
When Recorded Mail to:
AMERA MORTGAGE CORPORATION

3515 W. CHARLESTON BLVD.
LAS VEGAS, NV 89102
ATTN: POST CLOSING

MAIL TAX STATEMENT TO:
HBMG, INC.
P.O. BOX 100155
COLUMBIA SC 29202-3155

(Space Above This Line For Recording Data)    LOAN NUMBER
                                              PARCEL NUMBER:

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, and assigns and transfers to    HBMG, INC.

whose address is  7909 PARKLANE ROAD COLUMBIA, SC 29223

all beneficial interest under that certain Deed of Trust dated the 7TH    day of FEBRUARY, 2002

executed by  LEOLA BRINKER, AN UNMARRIED WOMAN

as Trustor, to  FIDELITY NATIONAL TITLE
, as Trustee,

was recorded on  2/8/2002 , in Book 20020208 , at page 2441

Docket No. _____ , of the records of the County Recorder of
CLARK                        County, NEVADA                    and covers real
property situated in said county described as follows:
SEE EXHIBIT "ONE" ATTACHED HERETO AND MADE A PART HEREOF.
APN 163-21-618-003

        Together with the note or notes therein described or referred to, the money due and to become due
thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated  2-7-02

                                            AMERA MORTGAGE CORPORATION

                                            By _____
                                            GARY R. HORNE
                                            Its VICE PRESIDENT

STATE OF NEVADA            )
                           ) SS.
COUNTY OF CLARK            )

        On this  7TH  day of  FEBRUARY, 2002 , before me, the undersigned, a Notary
Public in and for said State of   NEVADA             , duly commissioned and sworn,
personally appeared  GARY R. HORNE             the       VICE PRESIDENT               , to
me known to be the             VICE PRESIDENT                             , of
AMERA MORTGAGE CORPORATION

the corporation that executed the foregoing instrument, and acknowledged the said instrument to be the free and
voluntary act and deed of said corporation, for the uses and purposes therein mentioned, an  oath stated that
he/she are/is authorized to execute the said instrument and that the seal affixed is the corporate seal of said
corporation.

        Witness my hand and official seal hereto affixed the day and year first above written.

                                            _____
                                            Notary Public
                                            C. HODEK

My Commission Expires:  JULY 16, 2005
        Residing at: _____

                                            ┌─────────────────────────────┐
                                            │        C. HODEK             │
                                            │  Notary Public, State of Nevada │
                                            │  Appointment No. 97-2713-1  │
                                            │  My Appt. Expires July 16, 2005 │
                                            └─────────────────────────────┘

Assignment of Deed of Trust

# EXHIBIT 3

017

**EXHIBIT "ONE"**



Lot 123 in Block 4 of Rancho Las Brisas - R2 No. 9, as shown by map thereof on file in Book 57 of Plats, Page 76 in the Office of the County Recorder of Clark County, Nevada.

EXCEPTING all mineral, oil, gas, petroleum, other hydrocarbons, substances, and all geothermal energy sources in, under, or which may be produced from the within-described lands, which lie below a plane parallel to and 500 feet below the surface of the within described land, for the purposes of prospecting, exploration, development, production, or extraction of said substances by means of mines, well, or derricks, or other equipment, provided, however, that the owner of said substances shall have no right to enter upon the surface of the within described land, not to use said land above plane parallel to and 500 feet below the surface of such land.

Assessor's Parcel No: 163-21-416-003

2

CLARK COUNTY, NEVADA
JUDITH A. VANDEVER, RECORDER
RECORDED AT REQUEST OF:
FIDELITY NATIONAL TITLE
02-08-2002    14:18    DRO
OFFICIAL RECORDS                    2
BOOK: 20020208    INST:    02442
FEE:       15.00    RPTT:            .00

APN#: 163-21-418-003

I the undersigned hereby affirm that this
Document submitted for recording does not
contain the social security number of any person
or persons (Per NRS 239B.030)

Record & Return To
CT Lien Solutions
100 Wood Hollow Drive, Suite 170
Novato, CA 94945
888-861-8818

Prepared By:
CitiMortgage, Inc.
1000 Technology Dr.
O'Fallon, MO 63368
888-861-8818

Loan #:
MIN:                                          MERS Phone #:
888-679-6377
Deal Name: Internal
NV, Clark

Inst #: 201107210000184
Fees: $15.00
N/C Fee: $0.00
07/21/2011 09:01:59 AM
Receipt #: 851272
Requestor:
CT LIEN SOLUTIONS
Recorded By: DXI   Pgs: 2
**DEBBIE CONWAY**
**CLARK COUNTY RECORDER**

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the receipt and sufficiency of which is hereby acknowledged, the undersigned,
**Mortgage Electronic Registration Systems, Inc.** 1901 E VOORHEES ST, DANVILLE, IL 61834 herein
("Assignor"), does hereby grant, sell, assign, transfer and convey, without recourse unto **CitiMortgage, Inc.,** 1000
Technology Drive, O'Fallon, MO 63368 herein ("Assignee") that certain **DEED OF TRUST** referenced below;

**Borrower: LEOLA BRINKER, AN UNMARRIED WOMAN**
**Original Lender: Mortgage Electronic Registration Systems, Inc. as nominee for AMERA MORTGAGE**
**CORPORATION**
**Recorded: 02/08/2002  Book: 20020208.02441  Instrument: 02441  in Clark, NV.**
**Property:        8562 LAMBERT DRIVE, LAS VEGAS, NV 89147**
**Parcel Tax ID: 163-21-418-003**

Together with the note(s) and obligations therein described or referred to, the money due and to become due
thereon, with interest, and all rights accrued or to accrue under said document referenced above.

TO HAVE AND TO HOLD the same unto Assignee, its successors and assigns, forever, subject only to the terms
and conditions of the document above-described.

019

Branch :FLV,User :CON2                              Comment:                                              Station Id :D0MI

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed and delivered, effective 06/29/2011.



Mortgage Electronic Registration Systems, Inc.

By: _____

Name:    Derek Coleman
Title:    Assistant Secretary

State of Missouri
County of St Charles

On this 06/29/2011 before me, Lee Kee Robinson, Sr., a Notary Public in and for said state, personally appeared Derek Coleman, Assistant Secretary of Mortgage Electronic Registration Systems, Inc., known to me to be the person who executed the within instrument in behalf of said entity and acknowledged to me that he/she executed the same for the purposes therein stated.

_____

Notary Public: Lee Kee Robinson, Sr.
My commission expires: 05/20/2013

LEE KEE ROBINSON, SR.
My Commission Expires
May 20, 2013
St. Louis County
Commission #09462618

020

Branch :FLV,User :CON2                     Comment:                                    Station Id :D0MI

Inst #: 201107050000365
Fees: $16.00
N/C Fee: $0.00
07/05/2011 09:05:55 AM
Receipt #: 833119
Requestor:
NATIONWIDE TITLE CLEARING
Recorded By: MSH   Pge: 2
DEBBIE CONWAY
CLARK COUNTY RECORDER

I hereby affirm that this document submitted for
recording does not contain a social security number.

Signed: _____
DERRICK WHITE          VICE PRESIDENT

Parcel#:163-21-418-003
When Recorded Mail To:
CitiMortgage, Inc.
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683
CMI Loan #:
Investor #:

## CORPORATE ASSIGNMENT OF DEED OF TRUST

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the
undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (ASSIGNOR), (MERS
Address: P.O. Box 2026, Flint, Michigan 48501-2026)** by these presents does convey, grant, sell, assign,
transfer and set over the described deed of trust together with the certain note(s) described therein together with
all interest secured thereby, all liens, and any rights due or to become due thereon to **CITIMORTGAGE, INC.,
WHOSE ADDRESS IS 1000 TECHNOLOGY DRIVE, O'FALLON, MO 63368 (636)261-2484, ITS
SUCCESSORS OR ASSIGNS, (ASSIGNEE)**

Said Deed of Trust is dated 02/07/2002, made by: **LEOLA BRINKER** and recorded as Instr# 02441 or Book
20020208 Page in the Recorder's office of CLARK, Nevada.

**Dated this 01st day of July in the year 2011**
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

_____
DERRICK WHITE          VICE PRESIDENT

CGMAS              MIN                          MERS PHONE 1-888-679-MERS   EFRMNV1

021

Branch :FLV,User :CON2                          Comment:                                          Station Id :D0MI

Parcel#:163-21-418-003
CMI Loan #:
Investor #:

**STATE OF FLORIDA**
**COUNTY OF PINELLAS**

The foregoing instrument was acknowledged before me this 01st day of July in the year 2011, by DERRICK
WHITE as VICE PRESIDENT for MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., who, as
such VICE PRESIDENT being authorized so to do, executed the foregoing instrument for the purposes therein
contained. He/she/they is (are) personally known to me.



MIRANDA AVILA, NOTARY PUBLIC
Comm. Expires: 08/22/2014



Notary Public State of Florida
Miranda Avila
My Commission EE019063
Expires 08/22/2014

Prepared by: E. Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

Mail Tax Statements to:  LEOLA BRINKER
                         8562 LAMBERT DRIVE
                         LAS VEGAS, NV 89147

CGMAS          MIN                    MERS PHONE 1-888-679-MERS  EFRMNV1

022

Inst #: 201402130000205
Fees: $18.00
N/C Fee: $0.00
02/13/2014 08:02:40 AM
Receipt #: 1931639
Requestor:
NATIONWIDE TITLE CLEARING
Recorded By: MAT  Pgs: 2
DEBBIE CONWAY
CLARK COUNTY RECORDER

The undersigned does hereby affirm that this document submitted for recording does not contain personal information about any person.

Parcel#:163-21-418-003

When Recorded Mail To:
CitiMortgage, Inc.
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

Citi Loan No
Seterus Loan No
Fannie Loan No

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Contact Federal National Mortgage Association for this instrument c/o Seterus, Inc., 14523 SW Millikan Way, #200, Beaverton, OR 97005, telephone #1-866-570-5277, which is responsible for receiving payments.

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, CITIMORTGAGE, INC.,WHOSE ADDRESS IS 1000 TECHNOLOGY DRIVE, O'FALLON, MO, 63368, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Deed of Trust together with all interest secured thereby, all liens, and any rights due or to become due thereon to FEDERAL NATIONAL MORTGAGE ASSOCIATION, WHOSE ADDRESS IS 14221 DALLAS PARKWAY, SUITE 100, DALLAS, TX 75254, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Deed of Trust is  dated , made by LEOLA BRINKER and recorded as Instrument # 02441, and/or Book 20020208, Page , in the Recorder's office of CLARK County, Nevada.

Dated this 12th day of February in the year 2014
CITIMORTGAGE, INC.

By: _____
    KIMBERLY NANCE
    VICE PRESIDENT

All Authorized Signatories whose signatures appear above have reviewed this document and supporting documentation prior to signing.

023

**Parcel#:163-21-418-003**
**Citi Loan No**
**Seterus Loan No**
**Fannie Loan No**

**STATE OF FLORIDA**
**COUNTY OF PINELLAS**
The foregoing instrument was acknowledged before me on this 12th day of February in the year 2014, by Kimberly Nance as VICE PRESIDENT of CITIMORTGAGE, INC., who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

**TONYA L. TEJERA - NOTARY PUBLIC**
**COMM EXPIRES: 02/25/2017**



Tonya L. Tejera
Notary Public State of Florida
My Commission # EE849072
Expires February 25, 2017

**Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**

024

Branch :FLV,User :CON2                         Comment:                                         Station Id :D0MI

20020211
01064

**RECORDING REQUESTED BY:**
Melani Schulte

**When Recorded Mail Document
and Tax Statement To:**
Melani Schulte
7201 W. Lake Mead Blvd. #550
Las Vegas, NV· 89128

RPTT. 0.00
APN:

163-21-418-003

## GRANT, BARGAIN, SALE DEED

**THIS INDENTURE WITNESSETH:** That Leola Brinker, an unmarried woman

**FOR A VALUABLE CONSIDERATION**, receipt of which is hereby acknowledged, do(es) hereby Grant, Bargain, Sell and Convey to, Melani Schulte, a married woman as her sole and separate property

all that real property situated in Clark County, State of Nevada, bounded and described as follows:

SEE EXHIBIT "A" ATTACHED HERETO AND BY THIS
REFERENCE MADE A PART HEREOF

SUBJECT TO    1    Taxes for the fiscal year 2001-2002
              2    Covenants, Conditions, Reservations, Rights, Rights of Way and Easements now of record

Together with all and singular tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining.

DATED   January 12, 2002

STATE OF NEVADA
COUNTY OF _____                    _Leola Brinker_____
                                            Leola Brinker
This instrument was acknowledged before me
on _January 24, 2002_____
by _Leola Brinker_____                     _____

Signature _____
                                 Notary Public

My Commission Expires _____


NOTARY PUBLIC
STATE OF NEVADA
WALTER
Appt No 92-1047-1
My Comm Expires June 11, 20__

--------

MAIL TAX STATEMENTS AS DIRECTED ABOVE

NV Pk. 6.97                          GRANT DEED



EXHIBIT 4

025

Branch :FLV,User :CON2                    Comment:                    Station Id :D0MI

# EXHIBIT "A"

THE FEE SIMPLE TITLE TO LOT ONE HUNDRED TWENTY-THREE (123) IN BLOCK FOUR (4) IN RANCHO LAS BRISAS – R2 NO. 9, AS SHOWN ON PLAT RECORDED ON AUGUST 2, 1993 ON FILE IN BOOK 57 OF PLATS, PAGE 76, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

EXCEPT ALL OIL, ASPHALTUM, PETROLEUM, NATURAL GAS AND OTHER HYDROCARBONS AND ANY OTHER VALUABLE MINERAL SUBSTANCES AND PRODUCTS, AND ALL OTHER MINERALS, WHETHER OR NOT OF THE SAME CHARACTER HEREINBEFORE GENERALLY DESCRIBED, IN OR UNDER SAID LAND AND LYING AND BEING AT A VERTICAL DEPTH OF 500 OR MORE FEET BELOW THE PRESENT NATURAL SURFACE OF THE GROUND, BUT WITHOUT RIGHT OF ENTRY ON THE SURFACE OR WITHIN A VERTICAL DEPTH OF 500 FEET BELOW THE PRESENT NATURAL SURFACE OF THE GROUND.

CLARK COUNTY, NEVADA
JUDITH A. VANDEVER, RECORDER
RECORDED AT REQUEST OF

OFFICIAL RECORDS
BOOK                INST

FEE                 RPTT

026

Branch :FLV,User :CON2                    Comment:                                    Station Id :D0MI

# DECLARATION OF VALUE

2002021 11
01065

Assessor Parcel Numbers:

a) 163-21-41K-005

b)
c)
d)

Type of Property:

a) ☐ Vacant Land        ☐ Single Fam Res
b) ☐ Condo/Twnhse      ☐ 2-4 Plex
c) ☐ Apt. Bldg           ☐ Comm'l/Ind'l
d) ☐ Agriculture         ☐ Mobile Home
   ☐ Other

<table>
<tr><td></td><td></td><td></td><td></td></tr>
<tr><td>Total Value/Sales Price of Property</td><td></td><td></td><td>$</td></tr>
<tr><td>Deed in Lieu of Foreclosure Only (value of property)</td><td></td><td></td><td>$</td></tr>
<tr><td>Transfer Tax Value</td><td></td><td></td><td>$</td></tr>
<tr><td>Real Property Transfer Tax Due</td><td></td><td></td><td>$</td></tr>
</table>

**FOR RECORDERS OPTIONAL USE ONLY**

Document/Instrument #
Book _____ Page _____
Date of Recording
Notes:

4. If Exemption Claimed:

a) Transfer Tax Exemption per NRS 375.090, Section ⑤ *Add spouse w/out*
b) Explain Reason for Exemption *Consideration*

5. Partial Interest: Percentage being transferred _____%

The undersigned declares and acknowledges, under penalty of perjury, pursuant to NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their information and belief, and can be supported by documentation if called upon to substantiate the information provided herein. Furthermore, the parties agree that disallowance of any claimed exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month. Pursuant to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owed.

Signature *Melani Schutte*                    Capacity _____

Signature _____                    Capacity _____

| SELLER (GRANTOR) INFORMATION | BUYER (GRANTEE) INFORMATION |
|---|---|
| (REQUIRED) | (REQUIRED) |
| Print Name *Melani Schulte* | Print Name |
| Address *7201 W. Lake Mead #150* | Address |
| City *Las Vegas* | City |
| State *NV*   Zip *89128* | State        Zip |

**COMPANY/PERSON REQUESTING RECORDING (required if not seller or buyer)**

Print Name _____                    Escrow # _____
Address _____
City _____        State _____        Zip _____

AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED

*1065*

CLARK,NV
Document: DED 2002.0211.1065

Page 1 of 3

Printed on 7/26/2016 5:33:11 PM

027

Branch :FLV,User :CON2                    Comment:                              Station Id :D0MI

20020211
.01065

RECORDING REQUESTED BY:
Melani Schulte

When Recorded Mail Document
and Tax Statement To:
Melani Schulte
7201 W. Lake Mead Blvd. #550
Las Vegas, NV 89128

RPTT: 0.00
APN:
163-21-418-003

## GRANT, BARGAIN, SALE DEED

THIS INDENTURE WITNESSETH:  That Melani Schulte, a married woman as her sole and separate property

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, do(es) hereby Grant, Bargain, Sell and Convey to William R. Schulte and Melani Schulte, husband and wife as Joint Tenants with rights of survivorship

all that real property situated in Clark County, State of Nevada, bounded and described as follows:

SEE EXHIBIT "A" ATTACHED HERETO AND BY THIS
REFERENCE MADE A PART HEREOF

SUBJECT TO  1.      Taxes for the fiscal year 2001-2002
            2.      Covenants, Conditions, Reservations, Rights, Rights of Way and Easements now of record.

Together with all and singular tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining.

DATED:  January 18, 2002

STATE OF NEVADA
COUNTY OF ___Clark___

This instrument was acknowledged before me
on ___January 18, 2002___
by
___Melani Schulte___

Signature _____

                              Notary Public
My Commission Expires _____

_____
Melani Schulte



NOTARY PUBLIC
STATE OF NEVADA
County of Clark
F. WALTER
Appt No. 92-1387-1
My Appt Expires June 21, 2004

MAIL TAX STATEMENTS AS DIRECTED ABOVE

NV-Rev 6-97                          GRANT DEED

Branch :FLV,User :CON2                    Comment:                                    Station Id :D0MI

# EXHIBIT "A"

2002021 1
.01065

THE FEE SIMPLE TITLE TO LOT ONE HUNDRED TWENTY-THREE (123) IN BLOCK FOUR (4) IN RANCHO LAS BRISAS – R2 NO. 9, AS SHOWN ON PLAT RECORDED ON AUGUST 3, 1993 ON FILE IN BOOK 57 OF PLATS, PAGE 76, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

EXCEPT ALL OIL, ASPHALTUM, PETROLEUM, NATURAL GAS AND OTHER HYDROCARBONS AND ANY OTHER VALUABLE MINERAL SUBSTANCES AND PRODUCTS, AND ALL OTHER MINERALS, WHETHER OR NOT OF THE SAME CHARACTER HEREINBEFORE GENERALLY DESCRIBED, IN OR UNDER SAID LAND AND LYING AND BEING AT A VERTICAL DEPTH OF 500 OR MORE FEET BELOW THE PRESENT NATURAL SURFACE OF THE GROUND, BUT WITHOUT RIGHT OF ENTRY ON THE SURFACE OR WITHIN A VERTICAL DEPTH OF 500 FEET BELOW THE PRESENT NATURAL SURFACE OF THE GROUND

CLARK COUNTY, NEVADA
JUDITH A. VANDEVER, RECORDER
RECORDED AT REQUEST OF

OFFICIAL RECORDS
INST

BOOK

FEE                                    RPTT

# POST-PETITION PAYMENT HISTORY

| Name: | BRINKER |
|---|---|
| Loan: | |
| Case: | 09-29123 |
| Filing Date: | 10/11/2009 |
| Modification: | |
| Agreed Order: | |

| | Todays Date | 10/29/2018 |
|---|---|---|
| BK Specialist | | |
| BK QA Check Specialist | P. Pickard | |
| | Name | |

No POC for 8562 LAMBERT as of 10/29/18

| Date Received | Amount Received | $ Applied To Payment | Applied to Month | Paid To Suspense | Running Suspense Total | Post Petition Payment Amount Due | Court Filed PCN Date | Note PRIOR SVCR HISTORY |
|---|---|---|---|---|---|---|---|---|
| 10/29/2009 | $ 1,282.28 | $ 1,282.00 | Oct-09 | $ 0.28 | $ 0.28 | $ 1,282.00 | | |
| 9/23/2010 | $ 1,038.45 | $ 1,282.00 | Nov-09 | $ (243.55) | $ (243.27) | $ 1,282.00 | | |
| 10/9/2010 | $ 1,038.45 | $ 1,282.00 | Dec-09 | $ (243.55) | $ (486.82) | $ 1,282.00 | | |
| 12/1/2010 | $ 1,038.45 | $ 1,282.00 | Jan-10 | $ (243.55) | $ (730.37) | $ 1,282.00 | | |
| 12/31/2010 | $ 1,038.45 | $ 1,282.00 | Feb-10 | $ (243.55) | $ (973.92) | $ 1,282.00 | | |
| 3/10/2011 | $ 764.38 | $ 1,282.00 | Mar-10 | $ (517.62) | $ (1,491.54) | $ 1,282.00 | | |
| 4/13/2011 | $ 764.38 | $ 1,282.00 | Apr-10 | $ (517.62) | $ (2,009.16) | $ 1,282.00 | | |
| 5/10/2011 | $ 764.38 | $ 1,282.00 | May-10 | $ (517.62) | $ (2,526.78) | $ 1,282.00 | | |
| 6/11/2011 | $ 764.38 | $ 1,282.00 | Jun-10 | $ (517.62) | $ (3,044.40) | $ 1,282.00 | | |
| 7/13/2011 | $ 764.38 | $ 1,282.00 | Jul-10 | $ (517.62) | $ (3,562.02) | $ 1,282.00 | | |
| 8/10/2011 | $ 764.38 | $ 1,282.00 | Aug-10 | $ (517.62) | $ (4,079.64) | $ 1,282.00 | | |
| 9/1/2011 | $ 764.38 | $ 1,282.00 | Sep-10 | $ (517.62) | $ (4,597.26) | $ 1,282.00 | | |
| 11/7/2011 | $ 764.38 | $ 1,282.00 | Oct-10 | $ (517.62) | $ (5,114.88) | $ 1,282.00 | | |
| 1/12/2012 | $ 764.38 | $ 1,282.00 | Nov-10 | $ (517.62) | $ (5,632.50) | $ 1,282.00 | | |
| 2/16/2012 | $ 764.38 | $ 1,282.00 | Dec-10 | $ (517.62) | $ (6,150.12) | $ 1,282.00 | | |
| 5/16/2012 | $ 764.38 | $ 1,282.00 | Jan-11 | $ (517.62) | $ (6,667.74) | $ 1,282.00 | | |
| 7/4/2012 | $ 764.38 | $ 1,282.00 | Feb-11 | $ (517.62) | $ (7,185.36) | $ 1,282.00 | | |
| 8/14/2012 | $ 764.38 | $ 1,282.00 | Mar-11 | $ (517.62) | $ (7,702.98) | $ 1,282.00 | | |
| 10/5/2012 | $ 764.38 | $ 1,282.00 | Apr-11 | $ (517.62) | $ (8,220.60) | $ 1,282.00 | | |
| 11/14/2012 | $ 764.38 | $ - | May-11 | $ 764.38 | $ (7,456.22) | $ 1,282.00 | | |
| 12/14/2012 | $ 1,282.28 | $ - | Jun-11 | | $ (6,173.94) | $ 1,282.00 | | |
| 11/7/2013 | $ 764.38 | $ - | Jul-11 | $ 764.38 | $ (5,409.56) | $ 1,282.00 | | |
| 2/5/2014 | $ 2,734.16 | $ - | Aug-11 | $ 2,734.16 | $ (2,675.40) | $ 1,282.00 | | |
| 7/17/2018 | $ 764.38 | $ - | Sep-11 | $ 764.38 | $ (1,911.02) | $ 1,282.00 | | SERV. REL. |

EXHIBIT 5

030

| Date | Amount | | Month | Amount | Amount | Amount |
|---|---|---|---|---|---|---|
| 8/13/2018 | $ 764.38 | $ - | Oct-11 | $ 764.38 | $ (1,146.64) | $ 1,282.00 |
| 9/13/2018 | $ 764.38 | $ - | Nov-11 | $ 764.38 | $ (382.26) | $ 1,282.00 |
| 10/22/2018 | $ 764.38 | $ - | Dec-11 | $ 764.38 | $ 382.12 | $ 1,282.00 |
| | | $ - | Jan-12 | $ - | $ 382.12 | $ 1,282.00 |
| | | $ - | Feb-12 | $ - | $ 382.12 | $ 1,282.00 |
| | | $ - | Mar-12 | $ - | $ 382.12 | $ 1,282.00 |
| | | $ - | Apr-12 | $ - | $ 382.12 | $ 1,282.00 |
| | | $ - | May-12 | $ - | $ 382.12 | $ 1,282.00 |
| | | $ - | Jun-12 | $ - | $ 382.12 | $ 1,282.00 |
| | | $ - | Jul-12 | $ - | $ 382.12 | $ 1,282.00 |
| | | $ - | Aug-12 | $ - | $ 382.12 | $ 1,282.00 |
| | | $ - | Sep-12 | $ - | $ 382.12 | $ 1,282.00 |
| | | $ - | Oct-12 | $ - | $ 382.12 | $ 1,282.00 |
| | | $ - | Nov-12 | $ - | $ 382.12 | $ 1,282.00 |
| | | $ - | Dec-12 | $ - | $ 382.12 | $ 1,282.00 |
| | | $ - | Jan-13 | $ - | $ 382.12 | $ 1,282.00 |
| | | $ - | Feb-13 | $ - | $ 382.12 | $ 1,282.00 |
| | | $ - | Mar-13 | $ - | $ 382.12 | $ 1,282.00 |
| | | $ - | Apr-13 | $ - | $ 382.12 | $ 1,282.00 |
| | | $ - | May-13 | $ - | $ 382.12 | $ 1,282.00 |
| | | $ - | Jun-13 | $ - | $ 382.12 | $ 1,282.00 |
| | | $ - | Jul-13 | $ - | $ 382.12 | $ 1,282.00 |
| | | $ - | Aug-13 | $ - | $ 382.12 | $ 1,282.00 |
| | | $ - | Sep-13 | $ - | $ 382.12 | $ 1,282.00 |
| | | $ - | Oct-13 | $ - | $ 382.12 | $ 1,282.00 |
| | | $ - | Nov-13 | $ - | $ 382.12 | $ 1,282.00 |
| | | $ - | Dec-13 | $ - | $ 382.12 | $ 1,282.00 |
| | | $ - | Jan-14 | $ - | $ 382.12 | $ 1,282.00 |
| | | $ - | Feb-14 | $ - | $ 382.12 | $ 1,282.00 |
| | | $ - | Mar-14 | $ - | $ 382.12 | $ 1,282.00 |
| | | $ - | Apr-14 | $ - | $ 382.12 | $ 1,282.00 |
| | | $ - | May-14 | $ - | $ 382.12 | $ 1,282.00 |
| | | $ - | Jun-14 | $ - | $ 382.12 | $ 1,282.00 |
| | | $ - | Jul-14 | $ - | $ 382.12 | $ 1,282.00 |
| | | $ - | Aug-14 | $ - | $ 382.12 | $ 1,282.00 |
| | | $ - | Sep-14 | $ - | $ 382.12 | $ 1,282.00 |
| | | $ - | Oct-14 | $ - | $ 382.12 | $ 1,282.00 |
| | | $ - | Nov-14 | $ - | $ 382.12 | $ 1,282.00 |

031

| Month | | | |
|---|---|---|---|
| Dec-14 | $ - | $ 382.12 | $ 1,282.00 |
| Jan-15 | $ - | $ 382.12 | $ 1,282.00 |
| Feb-15 | $ - | $ 382.12 | $ 1,282.00 |
| Mar-15 | $ - | $ 382.12 | $ 1,282.00 |
| Apr-15 | $ - | $ 382.12 | $ 1,282.00 |
| May-15 | $ - | $ 382.12 | $ 1,282.00 |
| Jun-15 | $ - | $ 382.12 | $ 1,282.00 |
| Jul-15 | $ - | $ 382.12 | $ 1,282.00 |
| Aug-15 | $ - | $ 382.12 | $ 1,282.00 |
| Sep-15 | $ - | $ 382.12 | $ 1,282.00 |
| Oct-15 | $ - | $ 382.12 | $ 1,282.00 |
| Nov-15 | $ - | $ 382.12 | $ 1,282.00 |
| Dec-15 | $ - | $ 382.12 | $ 1,282.00 |
| Jan-16 | $ - | $ 382.12 | $ 1,282.00 |
| Feb-16 | $ - | $ 382.12 | $ 1,282.00 |
| Mar-16 | $ - | $ 382.12 | $ 1,282.00 |
| Apr-16 | $ - | $ 382.12 | $ 1,282.00 |
| May-16 | $ - | $ 382.12 | $ 1,282.00 |
| Jun-16 | $ - | $ 382.12 | $ 1,282.00 |
| Jul-16 | $ - | $ 382.12 | $ 1,282.00 |
| Aug-16 | $ - | $ 382.12 | $ 1,282.00 |
| Sep-16 | $ - | $ 382.12 | $ 1,282.00 |
| Oct-16 | $ - | $ 382.12 | $ 1,282.00 |
| Nov-16 | $ - | $ 382.12 | $ 1,282.00 |
| Dec-16 | $ - | $ 382.12 | $ 1,282.00 |
| Jan-17 | $ - | $ 382.12 | $ 1,282.00 |
| Feb-17 | $ - | $ 382.12 | $ 1,282.00 |
| Mar-17 | $ - | $ 382.12 | $ 1,282.00 |
| Apr-17 | $ - | $ 382.12 | $ 1,282.00 |
| May-17 | $ - | $ 382.12 | $ 1,282.00 |
| Jun-17 | $ - | $ 382.12 | $ 1,282.00 |
| Jul-17 | $ - | $ 382.12 | $ 1,282.00 |
| Aug-17 | $ - | $ 382.12 | $ 1,282.00 |
| Sep-17 | $ - | $ 382.12 | $ 1,282.00 |
| Oct-17 | $ - | $ 382.12 | $ 1,282.00 |
| Nov-17 | $ - | $ 382.12 | $ 1,282.00 |
| Dec-17 | $ - | $ 382.12 | $ 1,282.00 |
| Jan-18 | $ - | $ 382.12 | $ 1,282.00 |

032

| Month | | | | |
|---|---|---|---|---|
| Feb-18 | $ - | $ 1,282.00 | $ - | $ 382.12 |
| Mar-18 | $ - | $ 1,282.00 | $ - | $ 382.12 |
| Apr-18 | $ - | $ 1,282.00 | | $ 382.12 |
| May-18 | $ - | $ 1,282.00 | | $ 382.12 |
| Jun-18 | $ - | $ 1,282.00 | | $ 382.12 |
| Jul-18 | $ - | $ 1,282.00 | | $ 382.12 |
| Aug-18 | $ - | $ 1,282.00 | | $ 382.12 |
| Sep-18 | $ - | $ 1,282.00 | | $ 382.12 |
| Oct-18 | $ - | $ 1,282.00 | $ - | $ 382.12 |

| | |
|---|---|
| Total Installments | $ 115,380.00 |
| Suspense | $382.12 |
| Total Post Arrears | $ 114,997.88 |

033

1  WRIGHT, FINLAY & ZAK, LLP
2  Nichole L. Glowin, Esq.
   Nevada Bar No. 14204
3  7785 W. Sahara Ave., Ste. 200
   Las Vegas, NV 89117
4  (702) 475-7964; Fax: (702) 946-1345
5  nglowin@wrightlegal.net
   *Attorney for Secured Creditor, Federal National Mortgage Association ("Fannie Mae"), its*
6  *successors and/or assigns*

7                    **UNITED STATES BANKRUPTCY COURT**

8                         **DISTRICT OF NEVADA**

9  In re:                                  Case No.: 09-29123-mkn
                                           Chapter:   11
10 MELANIE SCHULTE AND WILLIAM R.
11 SCHULTE,

12            Debtors.

13

14

15

16 _____

17    **ORDER GRANTING FEDERAL NATIONAL MORTGAGE ASSOCIATION'S**

18 **EX PARTE APPLICATION FOR AN ORDER CONFIRMING THE ABSENCE OF**

19 **AUTOMATIC STAY PURSUANT TO 11 U.S.C. §§ 362(c)(1), 362(c)(2)(C) and 362(j)**

20        The Court has reviewed Federal National Mortgage Association ("Fannie Mae"), its

21 successors and/or assigns Ex Parte Application For An Order Confirming the Absence of

22 Automatic Stay Pursuant to 11 U.S.C. §§ 362(c)(1), 362(c)(2) and 362(j) and hereby orders as

23 follows:

24        **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the automatic stay of

25 11 U.S.C. § 362 in the above-entitled bankruptcy proceedings has terminated for all purposes as

26 to Federal National Mortgage Association ("Fannie Mae"), its successors and/or assigns

27 ("FNMA" or "Movant hereafter") with respect to the real property located at 8562 Lambert Drive,

28

EXHIBIT 6                                                                    034

Las Vegas, NV 89147 (the "Property") and that Movant may proceed with all of its non-bankruptcy rights and remedies to enforce it security interest on the Property.

**IT IS SO ORDERED**.

SUBMITTED BY:

WRIGHT, FINLAY & ZAK, LLP

_____

Nichole L. Glowin, Esq.
Nevada Bar No. 14204
7785 W. Sahara Ave., Ste. 200
Las Vegas, NV 89117
*Attorney for Secured Creditor, Federal National Mortgage Association ("Fannie Mae"), its successors and/or assigns*

035