CHRISTOPHER P. BURKE, ESQ.                    *ECF Filed On* 9/4/20
Nevada Bar No.:  004093
*atty@cburke.lvcoxmail.com*
218 S. Maryland Pkwy.
Las Vegas, Nevada 89101
(702) 385-7987
Attorney for Debtor
for Limited Purpose

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In Re: | Case No. 09-29123-MKN |
| MELANI SCHULTE and WILLIAM R. SCHULTE, (Deceased) | Chapter 11 |
| Debtors. | Date:  October 7, 2020 Time: 9:30 a.m. |

## MOTION FOR CONTEMPT FOR VIOLATION OF THE AUTOMATIC STAY AND DISCHARGE INJUNCTION, FAILING TO COMPLY WITH A COURT ORDER AND THE CONFIRMED PLAN AND FOR DAMAGES INCLUDING ATTORNEYS FEES AGAINST CREDITOR, CITI MORTGAGE INC.

COMES NOW, Debtor, Melani Schulte ("Mrs. Schulte" or "Debtor"), and files this Motion for Contempt for Violation of the Automatic Stay and Discharge Injunction and Failure to Comply with A Court Order and the Confirmed Plan and for Damages including Attorneys Fees against Creditor, Citi Mortgage Inc. ("Citi") for the property located at 9500 Aspen Glow Drive, Las Vegas Nevada 89134 ("Aspen Glow Dr.").

### I
### Facts

1.      On or about June 30, 1997, a Grant Deed was executed by Edward Wendell Porta and Patricia Porta transferring the interest in 9500 Aspen Glow Drive, Las Vegas Nevada 89134 ("Aspen Glow Dr.") to William R. Schulte and Melani Schulte, ("Schulte") husband and wife as joint tenants with right of survivorship for consideration of $1.00. The Grant Deed was recorded on July

1

15, 1997, in the Official Records of Clark County, State of Nevada. Subsequently, Lender's beneficial interest in the Note and Deed of Trust was sold, assigned and transferred to Creditor.

2.    On October 11, 2009, Debtors filed a Chapter 11 petition ("Petition") for bankruptcy and was assigned bankruptcy case no. 09-29123-MKN (Dkt. #1). Debtors Melani Schulte and William Schulte (Deceased) filed their bankruptcy schedules on December 1, 2009 (Dkt.#41). On Schedule B of the petition, Debtors listed many properties, including one located at 9500 Aspen Glow Drive, Las Vegas Nevada 89134 ("Aspen Glow Dr."). On May 26, 2010 Secured Creditor CitiMortgage filed a Proof of Claim (claim no. 67-1), which lists $13,505.31 in pre-petition arrears and a total claim of $105,657.89 due as of date of filing.

3.    On January 29, 2010 Debtor proposed their Plan of Reorganization (Dkt. #67) and Disclosure Statement (Dkt. #68).

4.    On May 31, 2010 Debtors filed their Amended Disclosure Statement (Dkt.# 250).

5.    On May 31, 2010, Debtor filed their Amended Plan of Reorganization (Dkt.# 251) and Exhibit B (Table of Properties) to Disclosure Statement (Dkt.# 252).

6.    On October 5, 2010, Debtor filed their Second Amended Disclosure Statement (Dkt. #752) and their Amended Plan #3 of Reorganization (Dkt.# 753).

7.    On November 9, 2010, Debtor filed their Third Amended Disclosure Statement (Dkt. #816).

8.    On November 23, 2010, Debtor proposed their Amended Plan #4 of Reorganization, (Dkt. #834) and on November 23, 2010, filed their Fourth Amended Disclosure Statement (Dkt. #832).

9.      Debtors Amended Chapter 11 Plan #4 ("Confirmed Plan") incorporated the Agreed Order by reference to Citi's class treatment, and the Court confirmed the proposed plan on March 8, 2011 ("Confirmation Order")(Dkt.#912, p.7, ln.31-34 and p.8, ln. 1-7).

### Post Confirmation

10.     On March 16, 2011 Citi and the Debtors filed a Stipulation between Debtors Re: Treatment of CitiMortgage's Claim on Aspen Glow Dr. (Dkt. #917). And on March 18, 2011 the Agreed Order was granted on the Stipulated Order Regarding Treatment of Creditor's Claim Pursuant to Chapter 11 plan. In the Agreed Order the secured creditors claim was reduced to a secured claim of $94,646.23. and was to be paid over thirty (30) years at **5.25% interest** at **monthly principal** and **interest payments of $522.64** each commencing with the March 1, 2011 post-petition monthly mortgage payment. Debtors were also required to maintain insurance and pay the property taxes on the subject property. The Agreed Order also made clear the notice required in the event of default, Secured Creditor shall provide written notice via certified mail to Melani Schulte and William R. Schulte, 7201 West Lake Mead Blvd, #500, Las Vegas, Nevada 89128, and to the Debtors' attorney of record, provided the Debtors' bankruptcy remains active, Bryan A. Lindsey, 701 E. Bridger Ave., Ste 120, Las Vegas, Nevada 89101, indicating the nature of default. If Debtors fail to cure the default with certified funds after passage of thirty (30) calendar days from the date said written notice is placed in the mail, then the Automatic Stay shall terminate and Creditor may proceed to foreclose its security interest in the Subject Property under the terms of the Note and Deed of Trust and pursuant to applicable state law and thereafter commence any action necessary to obtain complete possession of

the Subject Property without further notice, order, or proceeding of this Court. (Dkt.#925, p.4-5).

11.     Debtor Melanie Schulte continued making her payments in accordance with the Stipulation, including paying the monthly principal and interest and Escrow payments.

**Post Stipulation**

12.     That on or about April 19, 2011, Mrs. Schulte received a mortgage statement from Citi. It listed, Type of Mortgage GOVERNMENT FIXED; Principal Balance **$90,889.18**; Interest Rate **7.50000%**; Interest Year to Date **$570.00**. It had an Account Activity; **PAYMENTS RECEIVED**; **MONTHLY PAYMENT AMOUNT**; Date **05/01/11**; Principal **$359.39**; Interest **$522.02**; Escrow **$277.99**; Total Amount **$1,159.40**. At the bottom on the Detach portion of the page it listed a **Due Date**: 05/01/11; **Total Amount Due**: $1,159.40. (Ex. '2', p.2)

13.     That on or about May 17, 2011, Mrs. Schulte received a mortgage statement from Citi. It listed, Type of Mortgage GOVERNMENT FIXED; Principal Balance $90,575.83; Interest Rate 7.50000%; Interest Year to Date $1,138.06. It further list an Account Activity; **PAYMENTS RECEIVED**; **MONTHLY PAYMENT AMOUNT**; Date 06/01/11; Principal $361.83; Interest $519.78; Escrow $277.99; Total Amount **$1,159.40**. At the bottom on the Detach portion of the page it listed a **Due Date**: 06/01/11; **Total Amount Due**: $1,159.40. (Ex. '2', p.4)

14.     That on or about June 20, 2011, Mrs. Schulte received a mortgage statement from Citi. It listed, Type of Mortgage GOVERNMENT FIXED; Principal Balance $90,575.83; Interest Rate 7.50000%; Interest Year to Date $1,138.06. It further list an Account Activity; **PAYMENTS RECEIVED**;

**MONTHLY PAYMENT AMOUNT**; Date 07/01/11; Principal $363.89; Interest $517.52; Escrow $277.99; Total Amount **$1,159.40**. At the bottom on the Detach portion of the page it listed a **Due Date**: 07/01/11; **Total Amount Due**: $1,159.40. (Ex. '2', p.6)

15.    That on or about July 19, 2011, Mrs. Schulte received a mortgage statement from Citi. It listed, Type of Mortgage GOVERNMENT FIXED; Principal Balance $90,260.52; Interest Rate 7.50000%; Interest Year to Date $1,704.16. It further list an Account Activity; **PAYMENTS RECEIVED**; **MONTHLY PAYMENT AMOUNT**; Date 08/01/11; Principal $366.17; Interest $515.24; Escrow $277.99; Total Amount **$1,159.40**. At the bottom on the Detach portion of the page it listed a **Due Date**: 08/01/11; **Total Amount Due**: $1,159.40. (Ex. '2', p.8)

16.    That on or about August 17, 2011, Mrs. Schulte received a mortgage statement from Citi. It listed, Type of Mortgage GOVERNMENT FIXED; Principal Balance $90,260.52; Interest Rate 7.50000%; Interest Year to Date $1,704.16. It further list an Account Activity; **PAYMENTS RECEIVED**; **MONTHLY PAYMENT AMOUNT**; Date 09/01/11; Principal $368.46; Interest $512.95; Escrow $277.99; Total Amount **$1,159.40**. At the bottom on the Detach portion of the page it listed a **Due Date**: 09/01/11; **Total Amount Due**: $1,159.40. (Ex. '2', p.10)

17.    That on or about September 19, 2011, Mrs. Schulte received a mortgage statement from Citi. It listed, Type of Mortgage GOVERNMENT FIXED; Principal Balance $90,260.52; Interest Rate 7.50000%; Interest Year to Date $1,704.16. It further list an Account Activity; **PAYMENTS RECEIVED**; **MONTHLY PAYMENT AMOUNT**; Date 10/01/11; Principal $370.76; Interest $510.65; Escrow $277.99; Total Amount **$1,159.40**. At the bottom

on the Detach portion of the page it listed a **Due Date**: 10/01/11; **Total Amount Due**: $1,159.40. (Ex. '2', p.12)

18. That on or about October 18, 2011, Mrs. Schulte received a mortgage statement from Citi. It listed, Type of Mortgage GOVERNMENT FIXED; Principal Balance $89,943.24; Interest Rate 7.50000%; Interest Year to Date $2,268.29. It further list an Account Activity; **PAYMENTS RECEIVED**; **MONTHLY PAYMENT AMOUNT**; Date 11/01/11; Principal $373.08; Interest $508.33; Escrow $277.99; Total Amount **$1,159.40**. At the bottom on the Detach portion of the page it listed a **Due Date**: 11/01/11; **Total Amount Due**: $1,159.40. (Ex. '2', p.14)

19. That on or about November 17, 2011, Mrs. Schulte received a mortgage statement from Citi. It listed, Type of Mortgage GOVERNMENT FIXED; Principal Balance $89,943.24; Interest Rate 7.50000%; Interest Year to Date $2,268.29. It further list an Account Activity; **PAYMENTS RECEIVED**; **MONTHLY PAYMENT AMOUNT**; Date 12/01/11; Principal $375.41; Interest $506.00; Escrow $165.46; Total Amount **$1,046.87**. At the bottom on the Detach portion of the page it listed a **Due Date**: 12/01/11; **Total Amount Due**: $1,046.87. (Ex. '2', p.16)

20. That on or about December 19, 2011, Mrs. Schulte received a mortgage statement from Citi. It listed, Type of Mortgage GOVERNMENT FIXED; Principal Balance $89,943.24; Interest Rate 7.50000%; Interest Year to Date $2,268.29. It further list an Account Activity; **PAYMENTS RECEIVED**; **MONTHLY PAYMENT AMOUNT**; Date 01/01/12; Principal $377.75; Interest $503.66; Escrow $165.46; Total Amount **$1,046.87**. At the bottom on the Detach portion of the page it listed a **Due Date**: 01/01/12; **Total Amount Due**: $1,046.87. (Ex. '2', p.19)

21.    That on or about January 18, 2012, Mrs. Schulte received a mortgage statement from Citi. It listed, Type of Mortgage GOVERNMENT FIXED; Principal Balance $89,623.98; Interest Rate 7.50000%; Interest Year to Date $562.15. It further list an Account Activity; **PAYMENTS RECEIVED**; **MONTHLY PAYMENT AMOUNT**; Date 02/01/12; Principal $380.12; Interest $501.29; Escrow $165.46; Total Amount **$1,046.87**. At the bottom on the Detach portion of the page it listed a **Due Date**: 02/01/12; **Total Amount Due**: $1,046.87. It also attached the Annual Tax and Interest Statement. (Ex. '3', p.2)

22.    That on or about February 20, 2012, Mrs. Schulte received a mortgage statement from Citi. It listed, Type of Mortgage GOVERNMENT FIXED; Principal Balance $89,623.98; Interest Rate 7.50000%; Interest Year to Date $562.15. It further list an Account Activity; **PAYMENTS RECEIVED**; **MONTHLY PAYMENT AMOUNT**; Date 03/01/12; Principal $382.49; Interest $498.92; Escrow $165.46; Total Amount **$1,046.87**. At the bottom on the Detach portion of the page it listed a **Due Date**: 03/01/12; **Total Amount Due**: $1,046.87. (Ex. '3', p.8)

23.    That on or about March 19, 2012, Mrs. Schulte received a mortgage statement from Citi. It listed, Type of Mortgage GOVERNMENT FIXED; Principal Balance $89,623.98; Interest Rate 7.50000%; Interest Year to Date $562.15. It further list an Account Activity; **PAYMENTS RECEIVED**; **MONTHLY PAYMENT AMOUNT**; Date 04/01/12; Principal $382.88; Interest $496.53; Escrow $165.46; Total Amount **$1,046.87**. At the bottom on the Detach portion of the page it listed a **Due Date**: 04/01/12; **Total Amount Due**: $1,046.87. (Ex. '3', p.10)

24. That on or about April 17, 2012, Mrs. Schulte received a mortgage statement from Citi. It listed, Type of Mortgage GOVERNMENT FIXED; Principal Balance $89,302.72; Interest Rate 7.50000%; Interest Year to Date $1,122.30. It further list an Account Activity; **PAYMENTS RECEIVED**; **MONTHLY PAYMENT AMOUNT**; Date 05/01/12; Principal $387.29; Interest $494.12; Escrow $165.46; Total Amount **$1,046.87**. At the bottom on the Detach portion of the page it listed a **Due Date**: 05/01/12; **Total Amount Due**: $1,046.87. (Ex. '3', p.12)

25. That on or about May 17, 2012, Mrs. Schulte received a mortgage statement from Citi. It listed, Type of Mortgage GOVERNMENT FIXED; Principal Balance $89,302.72; Interest Rate 7.50000%; Interest Year to Date $1,122.30. It further list an Account Activity; **PAYMENTS RECEIVED**; **MONTHLY PAYMENT AMOUNT**; Date 06/01/12; Principal $389.71; Interest $491.70; Escrow $165.46; Total Amount **$1,046.87**. At the bottom on the Detach portion of the page it listed a **Due Date**: 06/01/12; **Total Amount Due**: $1,046.87. (Ex. '3', p.14)

26. That on or about June 19, 2012, Mrs. Schulte received a mortgage statement from Citi. It listed, Type of Mortgage GOVERNMENT FIXED; Principal Balance $89,302.72; Interest Rate 7.50000%; Interest Year to Date $1,122.30. It further list an Account Activity; **PAYMENTS RECEIVED**; **MONTHLY PAYMENT AMOUNT**; Date 07/01/12; Principal $392.14; Interest $489.27; Escrow $165.46; Total Amount **$1,046.87**. At the bottom on the Detach portion of the page it listed a **Due Date**: 07/01/12; **Total Amount Due**: $1,046.87. (Ex. '3', p.16)

27. That on or about July 17, 2012, Mrs. Schulte received a mortgage statement from Citi. It listed, Type of Mortgage GOVERNMENT FIXED; Principal

Balance $89,979.45; Interest Rate 7.50000%; Interest Year to Date $1,680.44. It further list an Account Activity; **PAYMENTS RECEIVED**; **MONTHLY PAYMENT AMOUNT**; Date 08/01/12; Principal $394.59; Interest $486.82; Escrow $165.46; Total Amount **$1,046.87**. At the bottom on the Detach portion of the page it listed a **Due Date**: 08/01/12; **Total Amount Due**: $1,046.87. (Ex. '3', p.18)

28.     That on or about August 17, 2012, Mrs. Schulte received a mortgage statement from Citi. It listed, Type of Mortgage GOVERNMENT FIXED; Principal Balance $88,654.16; Interest Rate 7.50000%; Interest Year to Date $2,236.56. It further list an Account Activity; **PAYMENTS RECEIVED**; **MONTHLY PAYMENT AMOUNT**; Date 09/01/12; Principal $397.06; Interest $484.35; Escrow $165.46; Total Amount **$1,046.87**. At the bottom on the Detach portion of the page it listed a **Due Date**: 09/01/12; **Total Amount Due**: $1,046.87. (Ex. '3', p.20)

29.     That on or about September 18, 2012, Mrs. Schulte received a mortgage statement from Citi. It listed, Type of Mortgage GOVERNMENT FIXED; Principal Balance $88,654.16; Interest Rate 7.50000%; Interest Year to Date $2,236.56. It further list an Account Activity; **PAYMENTS RECEIVED**; **MONTHLY PAYMENT AMOUNT**; Date 10/01/12; Principal $399.54; Interest $481.87; Escrow $165.46; Total Amount **$1,046.87**. At the bottom on the Detach portion of the page it listed a **Due Date**: 10/01/12; **Total Amount Due**: $1,046.87. (Ex. '3', p.22)

30.     That on or about October 17, 2012, Mrs. Schulte received a mortgage statement from Citi. It listed, Type of Mortgage GOVERNMENT FIXED; Principal Balance $88,654.16; Interest Rate 7.50000%; Interest Year to Date $2,236.56. It further list an Account Activity; **PAYMENTS RECEIVED**;

**MONTHLY PAYMENT AMOUNT**; Date 11/01/12; Principal $402.04; Interest $479.37; Escrow $277.99; Total Amount **$1,159.40**. At the bottom on the Detach portion of the page it listed a **Due Date**: 11/01/12; **Total Amount Due**: $1,159.40. (Ex. '3', p.24)

31.    That on or about November 19, 2012, Mrs. Schulte received a mortgage statement from Citi. It listed, Type of Mortgage GOVERNMENT FIXED; Principal Balance $88,326.84; Interest Rate 7.50000%; Interest Year to Date $2,790.65. It further list an Account Activity; **PAYMENTS RECEIVED**; **MONTHLY PAYMENT AMOUNT**; Date 12/01/12; Principal $404.55; Interest $476.86; Escrow $168.37; Total Amount **$1,049.78**. At the bottom on the Detach portion of the page it listed a **Due Date**: 12/01/12; **Total Amount Due**: $1,049.78. (Ex. '3', p.26)

32.    That on or about December 18, 2012, Mrs. Schulte received a mortgage statement from Citi. It listed, Type of Mortgage GOVERNMENT FIXED; Principal Balance $88,326.84; Interest Rate 7.50000%; Interest Year to Date $2,790.65. It further list an Account Activity; **PAYMENTS RECEIVED**; **MONTHLY PAYMENT AMOUNT**; Date 01/01/13; Principal $407.08; Interest $474.33; Escrow $168.37; Total Amount **$1,049.78**. At the bottom on the Detach portion of the page it listed a **Due Date**: 01/01/13; **Total Amount Due**: $1,049.78. (Ex. '3', p.29)

33.    That on or about January 4, 2013, Mrs. Schulte received letter statement from Citi. It stated, We have received a Request for Review From for the property noted above. If you have requested an Independent Foreclosure Review, your request will now be evaluated to confirm eligibility. (Ex. '4', p.2)

34.    That on or about January 17, 2013, Mrs. Schulte received a mortgage statement from Citi. It listed, Type of Mortgage GOVERNMENT FIXED;

10

Principal Balance $88,326.84; Interest Rate 7.50000%; Interest Year to Date $0.00. It further list an Account Activity; **PAYMENTS RECEIVED**; **MONTHLY PAYMENT AMOUNT**; Date 02/01/13; Principal $409.63; Interest $471.78; Escrow $168.37; Total Amount **$1,049.78**. At the bottom on the Detach portion of the page it listed a **Due Date**: 02/01/13; **Total Amount Due**: $1,049.78. It also attached the Annual Tax and Interest Statement. (Ex. '4', p.4)

35.  That on or about February 19, 2013, Mrs. Schulte received a mortgage statement from Citi. It listed, Type of Mortgage GOVERNMENT FIXED; Principal Balance $88,326.84; Interest Rate 7.50000%; Interest Year to Date $0.00. It further list an Account Activity; **PAYMENTS RECEIVED**; **MONTHLY PAYMENT AMOUNT**; Date 03/01/13; Principal $412.19; Interest $469.22; Escrow $168.37; Total Amount **$1,049.78**. At the bottom on the Detach portion of the page it listed a **Due Date**: 03/01/13; **Total Amount Due**: $1,049.78. (Ex. '4', p.8)

36.  That on or about March 19, 2013, Mrs. Schulte received a mortgage statement from Citi. It listed, Type of Mortgage GOVERNMENT FIXED; Principal Balance $88,326.84; Interest Rate 7.50000%; Interest Year to Date $0.00. It further list an Account Activity; **PAYMENTS RECEIVED**; **MONTHLY PAYMENT AMOUNT**; Date 04/01/13; Principal $414.76; Interest $466.65; Escrow $168.37; Total Amount **$1,049.78**. At the bottom on the Detach portion of the page it listed a **Due Date**: 04/01/13; **Total Amount Due**: $1,049.78. (Ex. '4', p.10)

37.  That on or about April 17, 2013, Mrs. Schulte received a mortgage statement from Citi. It listed, Type of Mortgage GOVERNMENT FIXED; Principal Balance $91,200.59; Interest Rate 7.50000%; Interest Year to Date $0.00.

It further list an Account Activity; **PAYMENTS RECEIVED**; **MONTHLY PAYMENT AMOUNT**; Date 05/01/13; Principal $417.35; Interest $464.06; Escrow $168.37; Total Amount **$1,049.78**. At the bottom on the Detach portion of the page it listed a **Due Date**: 05/01/13; **Total Amount Due**: $1,049.78. (Ex. '4', p.14)

38.     That on or about May 17, 2013, Mrs. Schulte received a mortgage statement from Citi. It listed, Type of Mortgage GOVERNMENT FIXED; Principal Balance $91,200.59; Interest Rate 7.50000%; Interest Year to Date $0.00. It further list an Account Activity; **PAYMENTS RECEIVED**; **MONTHLY PAYMENT AMOUNT**; Date 06/01/13; Principal $419.96; Interest $461.45; Escrow $168.37; Total Amount **$1,049.78**. At the bottom on the Detach portion of the page it listed a **Due Date**: 06/01/13; **Total Amount Due**: $1,049.78. (Ex. '4', p.16)

39.     That on or about June 18, 2013, Mrs. Schulte received a mortgage statement from Citi. It listed, Type of Mortgage GOVERNMENT FIXED; Principal Balance $91,200.59; Interest Rate 7.50000%; Interest Year to Date $0.00. It further list an Account Activity; **PAYMENTS RECEIVED**; **MONTHLY PAYMENT AMOUNT**; Date 07/01/13; Principal $422.59; Interest $458.82; Escrow $168.37; Total Amount **$1,049.78**. At the bottom on the Detach portion of the page it listed a **Due Date**: 07/01/13; **Total Amount Due**: $1,049.78. (Ex. '4', p.18)

40.     That on or about July 17, 2013, Mrs. Schulte received a mortgage statement from Citi. It listed, Type of Mortgage GOVERNMENT FIXED; Principal Balance $88,326.84; Interest Rate 7.50000%; Interest Year to Date $0.00. It further list an Account Activity; **PAYMENTS RECEIVED**; **MONTHLY PAYMENT AMOUNT**; Date 08/01/13; Principal $425.23; Interest $456.18;

Escrow $168.37; Total Amount **$1,049.78**. At the bottom on the Detach portion of the page it listed a **Due Date**: 08/01/13; **Total Amount Due**: $1,049.78. (Ex. '4', p.20)

41.    That on or about August 19, 2013, Mrs. Schulte received a mortgage statement from Citi. It listed, Type of Mortgage GOVERNMENT FIXED; Principal Balance $88,326.94; Interest Rate 7.50000%; Interest Year to Date $0.00. It further list an Account Activity; **PAYMENTS RECEIVED**; **MONTHLY PAYMENT AMOUNT**; Date 09/01/13; Principal $427.89; Interest $453.52; Escrow $168.37; Total Amount **$1,049.78**. At the bottom on the Detach portion of the page it listed a **Due Date**: 09/01/13; **Total Amount Due**: $1,049.78. (Ex. '4', p.22)

42.    That on or about September 17, 2013, Mrs. Schulte received a mortgage statement from Citi. It listed, Payment Date: 10/01/13; **Payment Amount: $1,159.40;** Account Activity since 08/19/13; **PAYMENT(S) RECEIVED**; **MONTHLY PAYMENT AMOUNT**; Date 10/01/13; Principal $430.56; Interest $450.85; Escrow $277.99; **Total Amount $1,159.40**. It further list, Type of Mortgage GOVERNMENT FIXED; Outstanding Principal Balance $88,326.94; Interest Rate 7.50000%; Interest Year to Date $0.00. At the bottom it had a **Payment Coupon** with a **Total Amount by 10/01/13: $1,159.40.** (Ex. '4', p.24)

43.    That on or about October 17, 2013, Mrs. Schulte received a mortgage statement from Citi. It listed, Payment Date: 11/01/13; **Payment Amount: $721.99;** Account Activity; **PAYMENT(S) RECEIVED**; **MONTHLY PAYMENT AMOUNT**; Date 11/01/13; Principal $139.70; Interest $411.23; Escrow $171.06; **Total Amount $721.99**. It also states, Type of Mortgage FIXED RATE LOAN; Outstanding Principal Balance $102,504.17; Interest

13

Rate 5.0000%; Interest Year to Date $0.00. It further list, Important Messages;

Per your modification agreement, $5,773.10 was written-off 09/19/13.
Per your modification agreement, $873.69 was written-off 09/19/13.
Per your modification agreement, -$6,319.39 was capitalized on 09/19/13.
Per your modification agreement, $1,065.00 was written-off 09/19/13.
Per your modification agreement, $600.00 was written-off 09/19/13.
Per your modification agreement, $252.00 was written-off 09/19/13.
Per your modification agreement, $673.50 was written-off 09/19/13.
Per your modification agreement, $392.00 was written-off 09/19/13.
Per your modification agreement, $500.24 was written-off 09/19/13.

At the bottom it has a **Payment Coupon** with a **Total Amount by 11/01/13: $721.99**. On the second page it continued from page 1. Per your modification agreement, $1,352.26 was written-off 10/11/13. (Ex. '4', p.26)

44. That on or about November 19, 2013, Mrs. Schulte received a mortgage statement from Citi. It listed, Payment Date: 12/01/13; **Payment Amount: $721.99;** Account Activity; **PAYMENT(S) RECEIVED**; **MONTHLY PAYMENT AMOUNT**; Date 12/01/13; Principal $140.28; Interest $410.65; Escrow $171.06; **Total Amount $721.99**. It further list, Type of Mortgage FIXED RATE LOAN; Outstanding Principal Balance $102,380.34; Interest Rate 5.0000%; Interest Year to Date $427.10. At the bottom it has a **Payment Coupon** with a **Total Amount by 12/01/13: $721.99.**(Ex. '4', p.29)

45. That on or about December 17, 2013, Mrs. Schulte received a mortgage statement from Citi. It listed, Payment Date: 01/01/14; **Payment Amount: $721.99;** Account Activity; **PAYMENT(S) RECEIVED**; **MONTHLY PAYMENT AMOUNT**; Date 01/01/14; Principal $140.87; Interest $410.06; Escrow $171.06; **Total Amount $721.99**. It further list, Type of Mortgage FIXED RATE LOAN; Outstanding Principal Balance $102,380.34; Interest Rate 5.0000%; Interest Year to Date $427.10. At the bottom it has a

**Payment Coupon** with a **Total Amount by 01/01/14: $721.99.** (Ex. '4', p.31)

46. That on or about January 17, 2014, Mrs. Schulte received a mortgage statement from Citi. It listed, Payment Date: 02/01/14; **Payment Amount: $721.99; Explanation of Payment Amount**; Principal $141.45; Interest $409.48; Escrow $171.06; **Total Payment Amount $721.99**. It further list, Type of Mortgage FIXED RATE LOAN; Outstanding Principal Balance $102,380.34; Interest Rate 5.0000%. At the bottom it has a **Payment Coupon** with a **Total Amount by 02/01/14:  $721.99.** It also attached the Annual Tax and Interest Statement. (Ex. '5', p.2)

47. That on or about May 8, 2014, Mrs. Schulte received a letter from Citi. It listed, We are writing to inform you we have received your recent correspondence. We appreciate your taking the time to write us, and the opportunity to service your mortgage needs. Your letter will be reviewed and processed timely.(Ex. '5', p.8)

48. That on or about May 14, 2014, Mrs. Schulte received a letter from Citi. It listed, We are writing to inform you we have received your recent correspondence. We appreciate your taking the time to write us, and the opportunity to service your mortgage needs. Your letter will be reviewed and processed timely.(Ex. '5', p.9)

49. That on or about August  18, 2014, Mrs. Schulte received a mortgage statement from Citi. It listed, Payment Date: 09/01/14; **Payment Amount: $1,159.40; Explanation of Payment Amount**; Principal $461.10; Interest $420.31; Escrow $277.99; **Total Payment Amount $1,159.40**; Type of Mortgage FIXED RATE LOAN; Outstanding Principal Balance $88,326.64; Interest Rate 7.50000%; Escrow Balance  -

$8,269.81; Taxes Paid Year to Date $840.93. It further list, Transaction Activity (07/18/14 to 08/18/14); Date 08/01/14; Description Escrow Disbursement-County Tax; Charges; Payments -$427.14. At the bottom it has a **Payment Coupon** with a **Total Amount by 09/01/14: $1,159.40.** (Ex. '5', p.10)

50.    That on or about October 17, 2014, Mrs. Schulte received a mortgage statement from Citi. It listed, Payment Date: 11/01/14; **Payment Amount: $1,058.40; Explanation of Payment Amount**; Principal $466.89; Interest $414.52; Escrow $176.99; **Total Payment Amount $1,058.40**; Type of Mortgage FIXED RATE LOAN; Outstanding Principal Balance $88,326.64; Interest Rate 7.50000%; Escrow Balance - $8,696.01; Taxes Paid Year to Date $1,267.13. At the bottom it has a **Payment Coupon** with a **Total Amount by 11/01/14:  $1,058.40.** (Ex. '5', p.12)

51.    That on or about November 18, 2014, Mrs. Schulte received a mortgage statement from Citi. It listed, Payment Date: 12/01/14; **Payment Amount: $1,058.40.** It has an **Explanation of Payment Amount**; Principal $469.80; Interest $411.61; Escrow $176.99; **Total Payment Amount $1,058.40**; Type of Mortgage FIXED RATE LOAN; Outstanding Principal Balance $88,326.84; Interest Rate 7.50000%; Escrow Balance  -$8,696.01; Taxes Paid Year to Date $1,267.13. At the bottom it has a **Payment Coupon** with a **Total Amount by 12/01/14: $1,058.40.** (Ex. '5', p.14)

52.    That on or about December 17, 2014, Mrs. Schulte received a mortgage statement from Citi. It listed, Payment Date: 01/01/15; **Payment Amount: $1,058.40.** It has an **Explanation of Payment Amount**;

Principal $472.74; Interest $408.67; Escrow $176.99; **Total Payment Amount $1,058.40**; Type of Mortgage FIXED RATE LOAN; Outstanding Principal Balance $88,326.84; Interest Rate 7.50000%; Escrow Balance  -$9,122.21; Taxes Paid Year to Date $1,693.33. It further list, Transaction Activity (11/19/14 to 12/17/14); Date 12/15/14; Description, Escrow Disbursement-County Tax; Charges; Payments -$426.20. At the bottom it has a **Payment Coupon** with a **Total Amount by 01/01/15:  $1,058.40.** (Ex. '5', p.16)

53. That on or about January 19, 2015, Mrs. Schulte received a mortgage statement from Citi. It listed, Payment Date: 02/01/15; **Payment Amount: $1,058.40.** It has an **Explanation of Payment Amount**; Principal $475.69; Interest $405.72; Escrow $176.99; **Total Payment Amount $1,058.40**. It further list, Type of Mortgage FIXED RATE LOAN; Outstanding Principal Balance $88,326.84; Interest Rate 7.50000%; Escrow Balance  -$9,122.21. At the bottom it has a **Payment Coupon** with a **Total Amount by 02/01/15:  $1,058.40.** (Ex. '6', p.2)

54. That on or about December 4, 2015, Mrs. Schulte received a letter from Citi. It listed, We are writing to inform you of important information regarding your mortgage account payments. The payment address where you should send your monthly mortgage payment is changing and the new address is below CitiMortgage, Inc. will forward any payments made by you to the old payment address until 12/17/2015. (Ex. '6', p.4)

55. On November 3, 2015, Debtor filed their Amended Application for the Entry of the Discharge of Debtors (Dkt.# 1152). Citi did not object. On December 15, 2015, the Court entered its Stipulated Order Granting Amended Motion for Discharge of Debtors (Dkt.#1181). And on December

15, 2015 court entered Debtors Discharge (Dkt.#1182).

**<u>Post-Discharge</u>**

56.    That on or about January 8, 2016, Mrs. Schulte received a certified letter from Citi. It listed, RE: FACE-TO FACE-INTERVIEW; We are writing to arrange a face-to-face meeting. Your VA loan is in default and we would like to work with you to correct this situation soon. During the telephone discussion to schedule your face-to-face meeting, you should be prepared to discuss the reason your account is delinquent. (Ex. '7', p.2)

57.    That on or about January 8, 2016, Mrs. Schulte received another letter from Citi. It stated, RE: Foreclosure Avoidance Notice; Please note: As a result of your bankruptcy case, this letter is not attempt to collect a debt from you personally or in any way violate any provision of the United States Bankruptcy Code. This letter has been sent to you for informational purposes only. It further states, Your decision to discuss workout options with CitiMortgage, Inc. is strictly voluntary.(Ex. '4', p.3)

58.    That on or about January 12, 2016, Mrs. Schulte received another letter from Citi. It stated, Your account has been assigned to the Homeowner Support team. This team of dedicated Homeowner Support Specialists will assist you by exploring various financial hardship solutions; whether your goal is to remain in your home, sell your property, or return ownership to Citi. It is very important that you call now if you are experiencing any financial hardship.(Ex. '7', p.6)

59.    That on or about January 22, 2016, Mrs. Schulte received another letter from Citi. It stated, THE ABOVE REFERENCED LOAN IS IN DEFAULT. Payments have not been made as required by the note and mortgage or deed of trust (the "Security Instrument"). Refer to the note and Security

Instrument for additional information. It further states, To cure the default you can pay the past due amount of $80,927.73 (total amount to reinstate loan/total amount due), including $38,878.32 in interest, $0.00 in late charges and $13.50 in delinquency related expenses. (Ex. '7', p.9)

60.    That on or about February 17, 2016, Mrs. Schulte received a mortgage statement from Citi. It listed, Payment Due Date: 03/01/16; **Amount Due: $83,507.35.** It has an **Explanation of Amount Due**; Principal $515.83; Interest $365.58; Escrow $281.40; **Regular Monthly Payment $1,162.81**; Fees Charged $13.50; Past Due Amount $82,331.04; **Total Amount Due $83,507.35**. It further list, Type of Mortgage FIXED RATE LOAN; Outstanding Principal Balance $87,997.47; Interest Rate 7.50000%; Escrow Balance -$11,264.01; Partial Payment Unapplied Balance $254.00; CitiMortgage Taxes Paid Year to Date $439.84. It also list a, Past Payments Breakdown;

| Paid Since Last Statement | Paid Year to Date |
|---|---|
| Principal $2,891.71 | $2,891.71 |
| Interest $5,040.98 | $0.00 |
| Escrow $2,501.91 | $2,713.70 |
| Partial Payment (Unapplied)** $254.00 | $254.00 |
| Loan Modification (Unapplied)** -$10,688.60 | -$10,688.60 |
| **Total $0.00** | **-$4,829.19** |

It further list a Transaction Activity Since Last Statement (01/08/16 to 02/17/16); Date 01/11/16; Description Account Maintenance; Charges/Adjustments; Payments -$1,159.40; -$1,159.40; -$1,159.40; **Partial Payments: Any partial monthly payment that you make are not applied to your mortgage, but instead are held in a separate unapplied

account. If you pay the balance of a partial monthly payment, the funds will first be applied to your outstanding principal, interest, and escrow until your payments are made through the current month. At the bottom it has a **Payment Coupon** with a **Total Amount by 03/01/16: $83,507.35**. On the second page it continued from page 1

Transaction Activity Since Last Statement (01/08/16 to 02/17/16)

| Date | Description | Charges/Adjustments; | Payments |
|------|-------------|----------------------|----------|
| 01/11/16 | Account Maintenance | | -$1,159.40 |
| 01/11/16 | Account Maintenance | | -$1,159.40 |
| 01/11/16 | Account Maintenance | | -$1,159.40 |
| 01/11/16 | Account Maintenance | | -$1,159.40 |
| 01/11/16 | Account Maintenance | | -$1,159.40 |
| 01/11/16 | Account Maintenance | | -$1,159.40 |
| 01/11/16 | Payment Amount Received-Thank you | | $1,159.40 |
| 01/11/16 | Payment Amount Received-Thank you | | $1,159.40 |
| 01/11/16 | Payment Amount Received-Thank you | | $1,159.40 |
| 01/11/16 | Payment Amount Received-Thank you | | $1,159.40 |
| 01/11/16 | Payment Amount Received-Thank you | | $1,159.40 |
| 01/11/16 | Payment Amount Received-Thank you | | $1,159.40 |
| 01/11/16 | Payment Amount Received-Thank you | | $1,159.40 |
| 01/11/16 | Payment Amount Received-Thank you | | $1,159.40 |
| 01/11/16 | Payment Amount Received-Thank you | | $1,159.40 |
| 01/14/16 | Year-to-Date Interest Decrease | -$5,040.98 | |
| 01/20/16 | Inspection Fee | $13.50 | |
| 02/9/16 | Escrow Disbursement-County Tax | | -$439.84 |

On the third page it states, Delinquency Notice; As of 04/01/10, you are late on your mortgage payments. Failure to bring your loan current may result in additional fees, costs and may result in CitiMortgage taking legal action, such as referring your loan to foreclosure. Recent Account History ·Payment due 09/01/15: Unpaid Regular Monthly Payment amount of $76,523.81;

·Payment due 10/01/15: Unpaid Regular Monthly Payment amount of $77,683.21;

·Payment due 11/01/15: Unpaid Regular Monthly Payment amount of $78,842.61;

·Payment due 12/01/15: Unpaid Regular Monthly Payment amount of $80,005.42;

·Payment due 01/01/16: Unpaid Regular Monthly Payment amount of $81,168.23;

·Payment due 02/01/16: Unpaid Regular Monthly Payment amount of $82,331.04;

·**Total Unpaid Regular Monthly Payment amount as of this statement $83,493.85**. (Ex. '7', p.12)

61.    That on or about May 11, 2016, Mrs. Schulte received a letter from Citi. It stated, **Your mortgage loan payment is past due and your property may be referred to foreclosure unless immediate action is taken.** We are writing to let you know that your mortgage loan payment is past due, and your property may be referred to foreclosure after 14 days from the date of this letter. (Ex. '7', p.16)

62.    That on or about June 9, 2016, Mrs. Schulte received a letter from Citi. It stated, We are writing to inform you we have received your recent correspondence. We appreciate your taking the time to write us, and the opportunity to service your mortgage needs. Your letter will be reviewed and processed timely. (Ex. '7', p.25)

63.    That on or about June 23, 2016, Mrs. Schulte received a letter from Citi. It stated, As you may be aware, we have referred your mortgage loan to foreclosure counsel to begin foreclosure proceedings. While we have already sent you prior communications regarding possible alternatives to foreclosure we remain committed to help you identify all possible solutions. (Ex. '7', p. 26)

21

64. That on or about July 15, 2016, Ms. Schulte received a letter from National Default Servicing Corporation ("NDSC"), for the property at Aspen Glow Dr. (Ex. '7', p.28)

65. That on August 17, 2016, Citi filed a Notice of Default and Election to Sell Under Deed of Trust. (Ex. '7', p.31)

66. That on or about August 19, 2016, Mrs. Schulte received a letter from Citi. It stated, Please be advised that due to the default on the terms and/or conditions of the referenced loan, CitiMortgage, Inc., has initiated foreclosure proceedings on the referenced property by causing a Notice of Default, the first formal step in the foreclosure process, to be recorded in the Recorder's Office of the county where that Property is located. (Ex. '7', p.33)

67. That on or about September 30, 2016, Mrs. Schulte received an Escrow Analysis Statement, which has detailed information regarding the escrow account. It further states, Your monthly mortgage payment can change based on increases or decreases in your property taxes and/or insurance premium. It list a

| Monthly Payment Breakdown | Current Monthly Payment | New Monthly Payment |
|---|---|---|
| Principal & Interest | 881.41 | 881.41 |
| Escrow Payment | 227.99 | 185.08 |
| Total Monthly Payment | 1,159.40 | 1,066.49 |

It list, Mortgage Payment New Monthly Payment Amount: $1,066.49; New Payment Effective November 01, 2016. (Ex. '7', p.35)

68. That on or about October 18, 2016, Mrs. Schulte received a mortgage statement from Citi. It listed, Payment Due Date: N/A; **Amount Due:**

22

**$146,242.74.** It states, Your dedicated Single Point of Contact is REBECCA CELAYA. The CitiMortgage Foreclosure Attorney is TIFFANY & BOSCO, P.A. It has an **Explanation of Amount Due**; Principal $87,997.47; Interest $43,755.81; Escrow $12,605.25;Past Due Fees/Late Charges $2,138.21; Unapplied Funds Allocation -$254.00; **Total Amount Due $146,242.74**. It further list, Type of Mortgage FIXED RATE LOAN; Outstanding Principal Balance $87,997.47; Interest Rate 7.50000%; Escrow Balance -$12,605.25; CitiMortgage Taxes Paid Year to Date $1,323.08. It also list a, Past Payments Breakdown;

| Paid Since Last Statement | | Paid Year to Date |
|---|---|---|
| Principal $0.00 | | $2,891.71 |
| Interest $0.00 | | $0.00 |
| Escrow $0.00 | | $2,713.70 |
| Unapplied Funds  $0.00 | | $254.00 |
| **Total** | **$0.00** | **$5,859.41** |

It further list a Transaction Activity Since Last Statement (09/20/16 to 10/18/16); Date NO TRANSACTION HAVE OCCURRED SINCE YOUR LAST STATEMENT ; Description; Charges/Adjustments; Payments; **Partial Payments: Any partial monthly payment that you make, other than a full reinstatement or payment of the total amount due, will not be applied to your mortgage but instead will be returned to you, as your loan has been accelerated and the accelerated amount is now due. On the second page it states, Important Messages; Delinquency expenses are third-party expenses such as property inspection fees, property preservation costs, appraisal costs, and attorney fees incurred by CMI as a result of default. Your monthly escrow payment has been adjusted to $185.08 effective 11/01/16. On the third page it states, Delinquency

23

Notice; As of 04/01/10, you are late on your mortgage payments. Your loan in foreclosure, and fees and costs will continue to accrue unless the loan is fully reinstated or paid in full; Recent Account History

·Payment due 05/01/16: Unpaid Regular Monthly Payment amount of $85,795.60;

·Payment due 06/01/16: Unpaid Regular Monthly Payment amount of $86,955.00;

·Payment due 07/01/16: Unpaid amount of $140,612.79;

·Payment due 08/01/16: Unpaid amount of $141,670.43;

·Payment due 09/01/16: Unpaid amount of $142,626.77;

·Payment due 10/01/16: Unpaid amount of $142,710.84;

·**Your loan has been accelerated. The amount now due is: $146,242.74**. (Ex. '7', p.38)

69.    That on or about November 17, 2016, Mrs. Schulte received a mortgage statement from Citi. It listed, Payment Due Date: N/A; **Amount Due: $146,858.64.** It states, Your dedicated Single Point of Contact is REBECCA CELAYA. The CitiMortgage Foreclosure Attorney is TIFFANY & BOSCO, P.A. It further list an **Explanation of Amount Due**; Principal $87,997.47; Interest $44,287.71; Escrow $12,605.25; Fees Charged $84.00; Past Due Fees/Late Charges $2,138.21; Unapplied Funds Allocation -$254.00; **Total Amount Due $146,858.64**; Type of Mortgage FIXED RATE LOAN; Outstanding Principal Balance $87,997.47; Interest Rate 7.50000%; Escrow Balance -$12,605.25; CitiMortgage Taxes Paid Year to Date $1,323.08. It also list a, Past Payments Breakdown;

| | Paid Since Last Statement | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $2,891.71 |
| Interest | $0.00 | $0.00 |
| Escrow | $0.00 | $2,713.70 |
| Unapplied Funds | $0.00 | $254.00 |
| **Total** | **$0.00** | **$5,859.41** |

24

It further list a Transaction Activity Since Last Statement (10/19/16 to 11/17/16);

| Date | Description | Charges/Adjustments; | Payments |
|------|-------------|----------------------|----------|
| 10/27/16 | Appraisal Fee | $84.00 | |
| 10/31/16 | Appraisal Fee | $475.00 | |
| 10/01/16 | Appraisal Fee | -$475.00 | |

**Partial Payments: Any partial payment that you make, other than a full reinstatement or payment of the total amount due, will not be applied to your mortgage but instead will be returned to you, as your loan has been accelerated and the accelerated amount is now due. On the second page it states, Delinquency Notice; As of 04/01/10, you are late on your mortgage payments. Your loan in foreclosure, and fees and costs will continue to accrue unless the loan is fully reinstated or paid in full.; Recent Account History

·Payment due 06/01/16: Unpaid Regular Monthly Payment amount of $86,862.09;
·Payment due 07/01/16: Unpaid amount of $140,612.79;
·Payment due 08/01/16: Unpaid amount of $141,670.43;
·Payment due 09/01/16: Unpaid amount of $142,626.77;
·Payment due 10/01/16: Unpaid amount of $145,710.84;
·Payment due 11/01/16: Unpaid amount of $146,242.74;
·**Your loan has been accelerated. The amount now due is: $146,858.64.** (Ex. '7', p.41)

70.    That on or about December 19, 2016, Mrs. Schulte received a mortgage statement from Citi. It listed, Payment Due Date:01/01/17; **Amount Due: $97,016.87.** It further list an **Explanation of Amount Due**; Principal $548.99; Interest $332.42; Escrow $165.08; **Regular Monthly Payment** $1,066.49; Fees Charged $2.59; Past Due Amount $95,947.79; **Total**

**Amount Due $97,016.87**; Type of Mortgage FIXED RATE LOAN; Outstanding Principal Balance $87,997.47; Interest Rate 7.50000%; Escrow Balance -$13,045.97; CitiMortgage Taxes Paid Year to Date $1,763.80. It also list a, Past Payments Breakdown;

| Paid Since Last Statement | Paid Year to Date |
|---|---|
| Principal $0.00 | $2,891.71 |
| Interest $0.00 | $0.00 |
| Escrow $0.00 | $2,713.70 |
| Partial Payment (Unapplied)  $0.00 | $254.00 |
| **Total**                 **$0.00** | **$5,859.41** |

It further list a Transaction Activity Since Last Statement (11/18/16 to 12/19/16);

| Date | Description | Charges/Adjustments; | Payments |
|---|---|---|---|
| 12/01/16 | Interest on Escrow Advance | $2.59 | |
| 12/09/16 | Escrow Disbursement-County Tax | | -$440.72 |

**Partial Payments: Any partial monthly payment that you make are not applied to your mortgage, but instead are held in a separate unapplied account. If you pay the balance of a partial monthly payment, the funds will first be applied to your outstanding principal, interest, and escrow until your payments are made through the current month. At the bottom it has a **Payment Coupon** with a **Total Amount Due by 01/01/17: $97,016.87** On the second page it states, Delinquency Notice; As of 04/01/10, you are late on your mortgage payments. Failure to bring your loan current may result in additional fees, costs and may result in CitiMortgage taking legal action, such as referring your loan to foreclosure. Recent Account History

·Payment due 07/01/16: Unpaid Regular Monthly Payment amount of $140,612.79;

·Payment due 08/01/16: Unpaid Regular Monthly Payment amount

of $141,670.43;

·Payment due 09/01/16: Unpaid Regular Monthly Payment amount of $142,626.77;

·Payment due 10/01/16: Unpaid Regular Monthly Payment amount of $145,710.84;

·Payment due 11/01/16: Unpaid Regular Monthly Payment amount of $146,242.74;

·Payment due 12/01/16: Unpaid Regular Monthly Payment amount of $146,858.64;

·**Total Unpaid Regular Monthly Payment amount as of this statement $94,792.07.** (Ex. '7', p.43)

71.   That on or about December 28, 2016, Mrs. Schulte received a letter from Citi. It stated, **"We are writing to inform you that we inadvertently sent you an incorrect Mortgage Account Statement in December 2016. This statement was inaccurate and should be disregarded. We are in the process of preparing a corrected statement and will mail it to you by December 30, 2016**". (Ex. '7', p.45)

72.   That on or about January 17, 2017, Mrs. Schulte received a letter from Citi. It stated, "In accordance with the federal Real Settlement Procedures Act (RESPA) and Regulation X, CitiMortgage has designated an address where you must send a written request for information, a written notice of error, or a qualified written request." (Ex. '8', p.2)

73.   That on or about January 18, 2017, Mrs. Schulte received a mortgage statement from Citi. It listed, Payment Due Date: N/A; **Amount Due: $146,500.28.** It states, The CitiMortgage Foreclosure Attorney is TIFFANY & BOSCO, P.A. It further list an **Explanation of Amount Due**; Principal $87,997.47; Interest $45,405.75; Escrow $13,045.97; Fees Charged $82.88; Past Due Fees/Late Charges $2,222.21; Unapplied Funds Allocation - $254.00; **Total Amount Due $148,500.28**; Type of Mortgage FIXED

27

RATE LOAN; Outstanding Principal Balance $87,997.47; Interest Rate 7.50000%; Escrow Balance -$13,045.97; CitiMortgage Taxes Paid Year to Date $0.00. It also list a, Past Payments Breakdown;

| Paid Since Last Statement | | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Unapplied Funds | $0.00 | $254.00 |
| **Total** | **$0.00** | **$254.00** |

It further list a Transaction Activity Since Last Statement (11/18/16 to 01/18/17);

| Date | Description | Charges/Adjustments; | Payments |
|---|---|---|---|
| 12/01/16 | Interest on Escrow Advance | $2.59 | |
| 12/09/16 | Escrow Disbursement-County Tax | | -$440.72 |
| 01/01/17 | Interest on Escrow Advance | $80.29 | |

**Partial Payments: Any partial payment that you make, other than a full reinstatement or payment of the total amount due, will not be applied to your mortgage but instead will be returned to you, as your loan has been accelerated and the accelerated amount is now due. On the second page it states, Delinquency Notice; As of 04/01/10, you are late on your mortgage payments. Your loan in foreclosure, and fees and costs will continue to accrue unless the loan is fully reinstated or paid in full.; Recent Account History

·Payment due 08/01/16: Unpaid amount of $141,670.43;
·Payment due 09/01/16: Unpaid amount of $142,626.77;
·Payment due 10/01/16: Unpaid amount of $145,710.84;
·Payment due 11/01/16: Unpaid amount of $146,242.74;
·Payment due 12/01/16: Unpaid Regular Monthly Payment amount of $146,858.64;
·Payment due 01/01/17: Unpaid Regular Monthly Payment amount

28

of $94,792.07;

·**Your loan has been accelerated. The amount now due is: $148,500.28**. (Ex. '8', p.3)

74.     That on or about February 2, 2017, Mrs. Schulte received a letter from Citi. It stated, Your account has been assigned to the Homeowner Support Team. This team of dedicated Homeowner Support Specialists will assist you by exploring various financial hardship solutions, whether your goal is to remain in your home, sell your property, or return ownership to Citi. (Ex. '8', p.5)

75.     That on or about February 17, 2017, Mrs. Schulte received a mortgage statement from Citi. It listed, Payment Due Date:03/01/17; **Amount Due: $99,310.43.** It further list an **Explanation of Amount Due**; Principal $555.87; Interest $325.54; Escrow $185.088; **Regular Monthly Payment** $1,066.49; Fees Charged $80.29; Past Due Amount $98,163.65; **Total Amount Due $99,310.43**; Type of Mortgage FIXED RATE LOAN; Outstanding Principal Balance $87,997.47; Interest Rate 7.50000%; Escrow Balance -$13,486.69; CitiMortgage Taxes Paid Year to Date $440.72. It also list a, Past Payments Breakdown;

| Paid Since Last Statement | | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Partial Payment (Unapplied) | $0.00 | $254.00 |
| **Total** | **$0.00** | **$254.00** |

It further list a Transaction Activity Since Last Statement (01/19/17 to 02/17/17);

| Date | Description | Charges/Adjustments; | Payments |
|---|---|---|---|
| 02/01/17 | Interest on Escrow Advance | $80.29 | |
| 02/09/17 | Escrow Disbursement-County Tax | | -$440.72 |

**Partial Payments: Any partial monthly payment that you make are not

29

applied to your mortgage, but instead are held in a separate unapplied account. If you pay the balance of a partial monthly payment, the funds will first be applied to your outstanding principal, interest, and escrow until your payments are made through the current month. At the bottom it has a **Payment Coupon** with a **Total Amount Due by 03/01/17: $99,310.43** On the second page it states, Delinquency Notice; As of 04/01/10, you are late on your mortgage payments. Failure to bring your loan current may result in additional fees, costs and may result in CitiMortgage taking legal action, such as referring your loan to foreclosure.

Recent Account History

·Payment due 09/01/16: Unpaid Regular Monthly Payment amount of $90,340.29;
·Payment due 10/01/16: Unpaid Regular Monthly Payment amount of $91,499.69;
·Payment due 11/01/16: Unpaid Regular Monthly Payment amount of $92,659.09;
·Payment due 12/01/16: Unpaid Regular Monthly Payment amount of $93,725.58;
·Payment due 01/01/17: Unpaid Regular Monthly Payment amount of $94,792.07;
·Payment due 02/01/17: Unpaid Regular Monthly Payment amount of $95,858.56;
**·Total Unpaid Regular Monthly Payment amount as of this statement $96,925.05.** (Ex. '8', p.7)

76.    That on or about March 17, 2017, Mrs. Schulte received a mortgage statement from Citi. It listed, Payment Due Date: N/A; **Amount Due: $150,973.18.** It states, The CitiMortgage Foreclosure Attorney is TIFFANY & BOSCO, P.A. It further list an **Explanation of Amount Due**; Principal $87,997.47; Interest $46,487.63; Escrow $13,486.69; Fees Charged $870.01; Past Due Fees/Late Charges $2,385.38; Unapplied Funds Allocation -$254.00; **Total Amount Due $150,973.18**; Type of Mortgage FIXED RATE LOAN;

Outstanding Principal Balance $87,997.47; Interest Rate 7.50000%; Escrow Balance -$13,486.69; CitiMortgage Taxes Paid Year to Date $440.72. It also list a, Past Payments Breakdown;

| Paid Since Last Statement | | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Unapplied Funds | $0.00 | $254.00 |
| **Total** | **$0.00** | **$254.00** |

It further list a Transaction Activity Since Last Statement (02/18/17 to 03/17/17);

| Date | Description | Charges/Adjustments; | Payments |
|---|---|---|---|
| 02/23/17 | Certified Mail Fee | $373.49 | |
| 02/23/17 | Sale Posting Fee | $100.00 | |
| 02/23/17 | Publication Fee | $220.00 | |
| 02/23/16 | Recording Fee | $54.00 | |
| 02/23/16 | Title Costs Fee | $50.00 | |

\*\*Partial Payments: Any partial payment that you make, other than a full reinstatement or payment of the total amount due, will not be applied to your mortgage but instead will be returned to you, as your loan has been accelerated and the accelerated amount is now due. On the second page it continued from page 1 Transaction Activity Since Last Statement (02/18/17 to 03/17/17)

| Date | Description | Charges/Adjustments; | Payments |
|---|---|---|---|
| 03/01/17 | Interest on EscrowAdvance | $72.52 | |

Important Messages; Delinquency expenses are third-party expenses such as property inspection fees, property preservation costs, appraisal costs, and attorney fees incurred by CMI as a result of default.  On the third page it states, Delinquency Notice; As of 04/01/10, you are late on your mortgage payments. Your loan in foreclosure, and fees and costs will continue

to accrue unless the loan is fully reinstated or paid in full.

Recent Account History

·Payment due 10/01/16: Unpaid Regular Monthly Payment amount of $91,499.69;

·Payment due 11/01/16: Unpaid Regular Monthly Payment amount of $92,659.09;

·Payment due 12/01/16: Unpaid Regular Monthly Payment amount of $93,725.58;

·Payment due 01/01/17: Unpaid Regular Monthly Payment amount of $94,792.07;

·Payment due 02/01/17: Unpaid Regular Monthly Payment amount of $95,858.56;

·Payment due 03/01/17: Unpaid Regular Monthly Payment amount of $96,925.05;

·**Your loan has been accelerated. The amount now due is: $150,973.18**. (Ex. '8', p.9)

77.    That on or about March 20, 2017, Mrs. Schulte received a letter from Citi. It stated, "As you may be aware, we have referred your mortgage loan to foreclosure counsel to begin foreclosure proceedings. While we have already sent you prior communications regarding possible alternatives to foreclosure we remain committed to helping you identify all possible solutions. There may be a number of options available to you, but we need to hear from you in order to discuss which options may be best suited for your situation". (Ex. '8', p.12)

78.    That on or about March 22, 2017, Mrs. Schulte mailed a certified letter to Citi dated March 21,2017. Requesting for information regarding the loan account:

1. Itemized Reinstatement Statement;

2. Complete contractual "life of loan history" from the system of record with all transaction codes and code definitions;

3. Current and most recent property valuation based on your system of

32

record;

4. Most recent escrow analysis;

5. Most recent Periodic Billing Statement;

6. Current loss mitigation package;

7. List of home retention programs that are available per the investor of this Mortgage Loan; and

8. Copy of note, mortgage and any allonge(s) if applicable. (Ex. '8', p.14)

79.    That on or about March 30, 2017, Mrs. Schulte received the signed confirmation from Citi for the certified mail Ms. Schulte sent them.(Ex. '8', p.17)

80.    That on or about March 23, 2017, Ms. Schulte received a letter from National Default Servicing Corporation ("NDSC"), for the property at Aspen Glow Dr.(Ex. '8', p.18)

81.    That on or about March 31, 2017, Mrs. Schulte received a letter from Citi. It stated, We are writing to inform you we have received your recent correspondence. We appreciate your taking the time to write us, and the opportunity to service your mortgage needs. Your letter will be reviewed and processed timely. (Ex. '8', p.21)

82.    That on or about April 3, 2017, Ms. Schulte received a letter from National Default Servicing Corporation ("NDSC"), for the property at Aspen Glow Dr. (Ex. '8', p.22)

83.    That on or about April 3, 2017, Mrs. Schulte received a letter from Citi. It stated, This letter is in response to your inquiry dated March 21, 2017 and received in the Default Mortgage Account Research Services of CitiMortgage Inc. (CMI) on March 30, 2017. Thank you for contacting CitiMortgage. We received your correspondence which included a Request for information. On the second page it list a detail of the payoff on the above referenced account. it inclosed the requested Payoff, Reinstatement and Payment History. (Ex. '8',

p.25)

84.   That on or about April 18, 2017, Mrs. Schulte received a mortgage statement from Citi. It listed, Payment Due Date: N/A; **Amount Due: $151,621.53.** It states, The CitiMortgage Foreclosure Attorney is TIFFANY & BOSCO, P.A. It further list an **Explanation of Amount Due**; Principal $87,997.47; Interest $46,055.69; Escrow $13,486.69; Fees Charged $80.29; Past Due Fees/Late Charges $3,255.39; Unapplied Funds Allocation -$254.00; **Total Amount Due $151,621.53**; Type of Mortgage FIXED RATE LOAN; Outstanding Principal Balance $87,997.47; Interest Rate 7.50000%; Escrow Balance -$13,486.69; CitiMortgage Taxes Paid Year to Date $440.72. It also list a, Past Payments Breakdown;

| | Paid Since Last Statement | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Unapplied Funds | $0.00 | $254.00 |
| **Total** | **$0.00** | **$254.00** |

It further list a Transaction Activity Since Last Statement (03/18/17 to 04/17/17);

| Date | Description | Charges/Adjustments; | Payments |
|---|---|---|---|
| 04/01/17 | Interest on Escrow Advance | $80.29 | |

**Partial Payments: Any partial payment that you make, other than a full reinstatement or payment of the total amount due, will not be applied to your mortgage but instead will be returned to you, as your loan has been accelerated and the accelerated amount is now due. (Ex. '8', p.28)

85.   That on or about April 12, 2017, Mrs. Schulte received a letter from National Default Servicing Corporation ("NDSC"), for the property at Aspen Glow Dr. It stated, We are writing to advise you that your mortgage loan payment is

34

past due, and your property has been referred for foreclosure. (Ex. '8', p.29)

86.    That on or about May 10, 2017, Mrs. Schulte received a letter from Citi. It stated, Please be advised that due to the default on the terms and/or conditions of the referenced loan, CitiMortgage, Inc., has initiated foreclosure proceedings on the referenced property by causing a Notice of Default, the first formal step in the foreclosure process, to be recorded in the Recorder's Office of the county where that Property is located. (Ex. '8', p.31)

87.    That on or about May 17, 2017, Mrs. Schulte received a mortgage statement from Citi. It listed, Payment Due Date: N/A; **Amount Due: $152,231.13.** It states, The CitiMortgage Foreclosure Attorney is TIFFANY & BOSCO, P.A. It further list an **Explanation of Amount Due**; Principal $87,997.47; Interest $47,587.59; Escrow $13,486.69; Fees Charged $77.70; Past Due Fees/Late Charges $3,335.68; Unapplied Funds Allocation -$254.00; **Total Amount Due $152,231.13**; Type of Mortgage FIXED RATE LOAN; Outstanding Principal Balance $87,997.47; Interest Rate 7.50000%; Escrow Balance -$13,486.69; CitiMortgage Taxes Paid Year to Date $440.72. It also list a, Past Payments Breakdown;

| Paid Since Last Statement | | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Unapplied Funds | $0.00 | $254.00 |
| **Total** | **$0.00** | **$254.00** |

It further list a Transaction Activity Since Last Statement (04/19/17 to 05/17/17);

| Date | Description | Charges/Adjustments; | Payments |
|---|---|---|---|
| 04/01/17 | Interest on Escrow Advance | $77.70 | |

**Partial Payments: Any partial payment that you make, other than a full

reinstatement or payment of the total amount due, will not be applied to your mortgage but instead will be returned to you, as your loan has been accelerated and the accelerated amount is now due. (Ex. '8', p.33)

88.     That on or about June 19, 2017, Mrs. Schulte received a mortgage statement from Citi. It listed, Payment Due Date: N/A; **Amount Due: $155,106.47.** It states, The CitiMortgage Foreclosure Attorney is TIFFANY & BOSCO, P.A. It further list an **Explanation of Amount Due**; Principal $87,997.47; Interest $48,173.73; Escrow $13,486.69; Fees Charged $2,289.20; Past Due Fees/Late Charges $3,413.38; Unapplied Funds Allocation -$254.00; **Total Amount Due $155,106.47**; Type of Mortgage FIXED RATE LOAN; Outstanding Principal Balance $87,997.47; Interest Rate 7.50000%; Escrow Balance -$13,486.69; CitiMortgage Taxes Paid Year to Date $440.72. It also list a, Past Payments Breakdown;

| Paid Since Last Statement | | Paid Year to Date |
| --- | --- | --- |
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Unapplied Funds | $0.00 | $254.00 |
| **Total** | **$0.00** | **$254.00** |

It further list a Transaction Activity Since Last Statement (05/18/17 to 06/19/17);

| Date | Description | Charges/Adjustments; | Payments |
| --- | --- | --- | --- |
| 06/01/17 | Interest on Escrow Advance | $80.29 | |
| 06/07/17 | Foreclosure Attorney Fee (Filing, Search, Etc.) | $991.25 | |
| 06/07/17 | Certified Mail Fee | $234.66 | |
| 06/07/17 | Sale Posting Fee | $85.00 | |
| 06/07/17 | Recording Fee | $18.00 | |

**Partial Payments: Any partial payment that you make, other than a full reinstatement or payment of the total amount due, will not be applied to

your mortgage but instead will be returned to you, as your loan has been accelerated and the accelerated amount is now due. On the second page it continued from page 1 Transaction Activity Since Last Statement (05/18/17 to 06/19/17)

| Date | Description | Charges/Adjustments; | Payments |
|---|---|---|---|
| 06/07/17 | Service Expense Fee | $200.00 | |
| 06/07/17 | Service Expense Fee | $25.00 | |
| 06/09/17 | Title Costs Fee | $655.00 | |

Important Messages; Delinquency expenses are third-party expenses such as property inspection fees, property preservation costs, appraisal costs, and attorney fees incurred by CMI as a result of default.  On the third page it states, Delinquency Notice; As of 04/01/10, you are late on your mortgage payments. Your loan in foreclosure, and fees and costs will continue to accrue unless the loan is fully reinstated or paid in full.

Recent Account History

·Payment due 01/01/17: Unpaid Regular Monthly Payment amount of $94,792.07;

·Payment due 02/01/17: Unpaid Regular Monthly Payment amount of $95,858.56;

·Payment due 03/01/17: Unpaid Regular Monthly Payment amount of $96,925.05;

·Payment due 04/01/17: Unpaid amount of $150,973.18;

·Payment due 05/01/17: Unpaid amount of $151,621.53;

·Payment due 06/01/17: Unpaid amount of $152,231.13;

·**Your loan has been accelerated. The amount now due is: $155,106.47.** (Ex. '8', p.34)

89.     That on or about July 18, 2017, Mrs. Schulte received a mortgage statement from Citi. It listed, Payment Due Date: 08/01/17; **Payment Amount: $1,066.49.** It further list an **Explanation of Amount Due**; Principal

$573.46; Interest $307.95; Escrow $185.08; **Total Payment Amount $1,066.49**; Type of Mortgage FIXED RATE LOAN; Outstanding Principal Balance $87,997.47; Interest Rate 7.50000%; Escrow Balance -$13,486.69; CitiMortgage Taxes Paid Year to Date $440.72. It also list a, Transaction Activity Since Last Statement (06/20/17 to 07/18/17);

| Date | Description | Charges/Adjustments; | Payments |
|------|-------------|----------------------|----------|
| 06/20/17 | Escrow Disbursement-Hazard Insurance | | -$474.00 |

At the bottom it has a **Payment Coupon** with a **Total Amount Due by 08/01/17: $1,066.49**. (Ex. '8', p.37)

90. That on or about August 1, 2017, Mrs. Schulte received a mortgage statement from Citi. It listed, Payment Due Date: 09/01/17; **Payment Amount: $1,066.49.** It further list an **Explanation of Amount Due**; Principal $577.05; Interest $304.36; Escrow $185.08; **Total Payment Amount $1,066.49**; Type of Mortgage FIXED RATE LOAN; Outstanding Principal Balance $87,997.47; Interest Rate 7.50000%; Escrow Balance -$13,486.69; CitiMortgage Taxes Paid Year to Date $440.72. At the bottom it has a **Payment Coupon** with a **Total Amount Due by 09/01/17: $1,066.49**. (Ex. '8', p.38)

91. That on or about August 17, 2017, Mrs. Schulte received another mortgage statement from Citi. It listed, Payment Due Date: 09/01/17; **Payment Amount: $1,066.49.** It further list an **Explanation of Amount Due**; Principal $577.05; Interest $304.36; Escrow $185.08; **Total Payment Amount $1,066.49**; Type of Mortgage FIXED RATE LOAN; Outstanding Principal Balance $87,997.47; Interest Rate 7.50000%; Escrow Balance -$14,414.65; CitiMortgage Taxes Paid Year to Date $894.68. It also list a, Transaction Activity Since Last Statement (08/02/17 to 08/17/17);

| Date | Description | Charges/Adjustments; | Payments |
|------|-------------|----------------------|----------|
| 08/07/17 | Escrow Disbursement-County Tax | | -$453.96 |

At the bottom it has a **Payment Coupon** with a **Total Amount Due by 09/01/17: $1,066.49**. (Ex. '8', p.39)

92.  That on or about September 19, 2017, Mrs. Schulte received letter from Citi. It listed, Please note: As a result of your bankruptcy case, this letter is not attempt to collect a debt from you personally or in any way violate any provision of the United States Bankruptcy Code. This letter has been sent to you for informational. Enclosed is your Escrow Analysis Statement, which has detailed information regarding the escrow account. It further states, Your new voluntary monthly mortgage payment is $1,069.88, and will be effective with your November 01, 2017 payment. It list a

| Monthly Payment Breakdown | Current Monthly Payment | New Monthly Payment |
|---------------------------|-------------------------|---------------------|
| Principal & Interest | 881.41 | 881.41 |
| Escrow Payment | 227.99 | 185.08 |
| Total Monthly Payment | 1,159.40 | 1,066.49 |

(Ex. '8', p.40)

93.  That on or about September 19, 2017, Mrs. Schulte received another mortgage statement from Citi. It listed, Payment Due Date: 10/01/17; **Payment Amount: $1,159.40.** It further list an **Explanation of Amount Due**; Principal $580.65; Interest $300.78; Escrow $277.99; **Total Payment Amount $1,159.40**; Type of Mortgage FIXED RATE LOAN; Outstanding Principal Balance $87,997.47; Interest Rate 7.50000%; Escrow Balance -$14,866.83; CitiMortgage Taxes Paid Year to Date $1,346.86. It also list a, Transaction Activity Since Last Statement (08/18/17 to 09/19/17);

| Date | Description | Charges/Adjustments; | Payments |
|------|-------------|----------------------|----------|

08/07/17      Escrow Disbursement-County Tax              -$452.18

At the bottom it has a **Payment Coupon** with a **Total Amount Due by 10/01/17: $1,159.40**. (Ex. '8', p.43)

94.    That on or about October 17, 2017, Mrs. Schulte received another mortgage statement from Citi. It listed, Payment Due Date: 11/01/17; **Payment Amount: $1,069.88.** It further list an **Explanation of Amount Due**; Principal $584.28; Interest $297.13; Escrow $188.47; **Total Payment Amount $1,069.88**; Type of Mortgage FIXED RATE LOAN; Outstanding Principal Balance $87,997.47; Interest Rate 7.50000%; Escrow Balance - $14,866.83; CitiMortgage Taxes Paid Year to Date $1,346.86. At the bottom it has a **Payment Coupon** with a **Total Amount Due by 11/01/17: $1,069.88**.(Ex. '8', p.44)

95.    That on or about October 26, 2017, Mrs. Schulte received letter from Citi. It listed, Please note: As a result of your bankruptcy case, this letter is not attempt to collect a debt from you personally or in any way violate any provision of the United States Bankruptcy Code. This letter has been sent to you for informational purposes only. It further states, Your decision to discuss workout options with CitiMortgage, Inc. is strictly voluntary. (Ex. '8', p.45)

96.    That on or about November 6, 2017, Mrs. Schulte mailed a second request for information letter to Citi. Regarding her first request for information that she mailed on 3/22/17. Requesting for information regarding the loan account. (Ex. '8', p.48)

97.    That on or about November 28, 2017, Mrs. Schulte received a letter from Citi. It stated, We are writing to inform you we have received your recent correspondence. We appreciate your taking the time to write us, and the

opportunity to service your mortgage needs. Your letter will be reviewed and processed timely. (Ex. '8', p.49)

98. That on or about December 5, 2017, Mrs. Schulte received letter from Citi. It listed, Please note: As a result of your bankruptcy case, this letter is not attempt to collect a debt from you personally or in any way violate any provision of the United States Bankruptcy Code. This letter has been sent to you for informational purposes only. It further states, Your decision to discuss workout options with CitiMortgage, Inc. is strictly voluntary. (Ex. '8', p.50)

99. That on or about December 11, 2017, Mrs. Schulte received letter from Citi. It listed, Please note: As a result of your bankruptcy case, this letter is not attempt to collect a debt from you personally or in any way violate any provision of the United States Bankruptcy Code. This letter has been sent to you for informational purposes only. It further states, This letter is in response to your inquiry dated November 6, 2017 and received in the Default Mortgage Account Research Services of CitiMortgage on November 27, 2017. That you for contacting CitiMortgage. We received your 2nd Request for information related to the above caption mortgage loan. A copy of our prior response dated April3, 2017 is enclosed. (Ex. '8', p.52)

100. That on or about December 19, 2017, Mrs. Schulte received another mortgage statement from Citi. It listed, Payment Due Date: 01/01/18; **Payment Amount: $1,045.22.** It further list an **Explanation of Amount Due**; Principal $591.61; Interest $289.80; Escrow $163.81; **Total Payment Amount $1,045.22**; Type of Mortgage FIXED RATE LOAN; Outstanding Principal Balance $87,997.47; Interest Rate 7.50000%; Escrow Balance - $15,319.01; CitiMortgage Taxes Paid Year to Date $1,799.04. It also list a,

41

Transaction Activity Since Last Statement (11/18/17 to 12/19/17);

| Date | Description | Charges/Adjustments; | Payments |
|------|-------------|---------------------|----------|
| 12/12/17 | Escrow Disbursement-County Tax | | -$452.18 |

At the bottom it has a **Payment Coupon** with a **Total Amount Due by 01/01/18: $1,045.22**. (Ex. '8', p.58)

101.   That on or about January 17, 2018, Mrs. Schulte received another mortgage statement from Citi. It listed, Payment Due Date: 02/01/18; **Payment Amount: $1,045.22.** It further list an **Explanation of Amount Due**; Principal $595.31; Interest $286.10; Escrow $163.81; **Total Payment Amount $1,045.22**; Type of Mortgage FIXED RATE LOAN; Outstanding Principal Balance $87,997.47; Interest Rate 7.50000%; Escrow Balance -$15,319.01; CitiMortgage Taxes Paid Year to Date $1,346.86. At the bottom it has a **Payment Coupon** with a **Total Amount Due by 02/01/18: $1,045.22**. (Ex. '9', p.2)

102.   That on or about January 29, 2018, Mrs. Schulte received two letter from Citi. the first letter stated, Your account has been assigned to a Homeowner Support Specialist, Jennifer Moran. Your specialist will assists you by exploring various financial hardship solutions, whether your goal is to remain in your home, sell your property, or return ownership to Citi". (Ex. '9', p.3)

103.   The second letter stated, We appreciate your pursuit of a hardship treatment! My name is Jennifer Moran and I will be your Homeowner Support Specialist throughout the review process, from beginning to end.(Ex. '9', p.5)

104.   That on or about January 30, 2018, Mrs. Schulte received a letter from Citi. It stated, "Please send the documents required to complete your application; Thank you for submitting your application for mortgage assistance. However, your application is incomplete because it is missing some required

documents, which we must received before we can determine whether or not you're eligible for any mortgage assistance program". (Ex. '9', p.6)

105. That on or about February 14, 2018, Mrs. Schulte received a letter from Citi. It stated, "This is a reminder to a previous notice we mailed to you; Please send the documents required to complete your application; Thank you for submitting your application for mortgage assistance. However, your application is incomplete because it is missing some required documents, which we must received before we can determine whether or not you're eligible for any mortgage assistance program." (Ex. '9', p.7)

106. That on or about February 19, 2018, Mrs. Schulte received a mortgage statement from Citi. It listed, Payment Due Date: N/A; **As of 02/19/18; Reinstatement Amount Due: $105,012.47.** It states, Your dedicated Single Point of Contact is JENNIFER MORAN; The CitiMortgage Foreclosure Attorney is TIFFANY & BOSCO, P.A. It further list an **Explanation of Amount Due**; As of 02/19/18 Reinstatement Amount Due: $105,012.47; Accelerated Amount: $161,352.62; Amounts below are included in the Reinstatement & Accelerated Amounts above: Fees, Advances & Late Charges Since Last Statement: $0.00; Past Due Payment Amounts: $99,295.90; Type of Mortgage FIXED RATE LOAN; Outstanding Principal Balance $87,997.47; Interest Rate 7.50000%; Escrow Balance -$15,065.01; CitiMortgage Taxes Paid Year to Date $0.00. It also list a, Past Payments Breakdown;

| | Paid Since Last Statement | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow | $254.00 | $254.00 |
| Unapplied Funds | $254.00 | $0.00 |
| **Total** | **$0.00** | **$254.00** |

43

It further list a Transaction Activity Since Last Statement (01/18/18 to 02/19/18);

| Date | Description | Charges/Adjustments; | Payments |
|------|-------------|----------------------|----------|
| 06/01/17 | Interest on Escrow Advance | -$94.70 | |

On the second page it continued from page 1 Transaction Activity Since Last Statement (01/18/18 to 02/19/18)

| Date | Description | Charges/Adjustments; | Payments |
|------|-------------|----------------------|----------|
| 01/24/18 | Interest on Escrow Advance | -$36.66 | |
| 01/24/18 | Interest on Escrow Advance | -$80.29 | |
| 01/24/18 | Interest on Escrow Advance | -$80.29 | |
| 01/24/18 | Interest on Escrow Advance | -$77.70 | |
| 01/24/18 | Interest on Escrow Advance | -$80.29 | |
| 02/01/18 | Interest on Escrow Advance | -$94.28 | |

Important Messages; Delinquency expenses are third-party expenses such as property inspection fees, property preservation costs, appraisal costs, and attorney fees incurred by CMI as a result of default. Real estate taxes paid in 2017: $1,799.04. On the third page it further states, Delinquency Notice; **As of 02/19/18, your account is 2882 days delinquent**. Your loan in foreclosure, and fees and costs will continue to accrue unless the loan is fully reinstated or paid in full. Recent Account History ·Payment due 09/01/17: Unpaid Regular Monthly Payment amount of $94,069.80;
·Payment due 10/01/17: Unpaid amount of $158,374.83;
·Payment due 11/01/17: Unpaid amount of $111,192.26;
·Payment due 12/01/17: Unpaid amount of $112,262.14;
·Payment due 01/01/18: Unpaid amount of $102,928.98;
·Payment due 02/01/18: Unpaid amount of $104,068.90;
·**Your loan has been accelerated. The reinstatement amount now due is: $105,012.47**. (Ex. '9', p.8)

107.   That on or about March 6, 2018, Mrs. Schulte received a letter from Citi. It stated, **Your mortgage loan payment is past due and your property may be refereed to foreclosure unless immediate action is taken.** We are writing to let you know that your mortgage loan payment is past due, and your property may be referred to foreclosure after 14 days from the date of this letter. (Ex. '9', p.11)

108.   That on or about March 19, 2018, Mrs. Schulte received a mortgage statement from Citi. It listed, Payment Due Date: 04/01/18; **Amount Due: $107,186.98.** It states, Your dedicated Single Point of Contact is JENNIFER MORAN. It further list an **Explanation of Amount Due**; Principal $602.77; Interest $278.64; Escrow $163.81; **Regular Monthly Payment** $1,045.22; Fees/Advance Charged $84.07' Past Due Amount $106,057.69; **Total Amount Due $107,186.98**; Type of Mortgage FIXED RATE LOAN; Outstanding Principal Balance $87,997.47; Interest Rate 7.50000%; Escrow Balance -$15,065.01; CitiMortgage Taxes Paid Year to Date $0.00. It also list a, Past Payments Breakdown;

| Paid Since Last Statement | | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow | $0.00 | $254.00 |
| **Total** | **$0.00** | **$254.00** |

It further list a Transaction Activity Since Last Statement (02/20/18 to 03/19/18);

| Date | Description | Charges/Adjustments; | Payments |
|---|---|---|---|
| 03/01/18 | Interest on Escrow Advance | $84.07 | |

On the second page it further states, Delinquency Notice;

**As of 03/19/18, your account is 2910 days delinquent**. Your loan in foreclosure, and fees and costs will continue to accrue unless the loan is

45

fully reinstated or paid in full. Recent Account History

·Payment due 10/01/17: Unpaid Regular Monthly Payment amount of $95,115.02;

·Payment due 11/01/17: Unpaid amount of $96,160.24;

·Payment due 12/01/17: Unpaid amount of $97,205.46;

·Payment due 01/01/18: Unpaid amount of $98,250.68;

·Payment due 02/01/18: Unpaid amount of $99,295.90;

·Payment due 03/01/18: Unpaid amount of $100,341.12;

·**Total Unpaid Regular Monthly Payment amount as of this statement: $101,386.34.** (Ex. '9', p.12)

109.   On March 22, 2018 Mrs. Schulte mailed two letter to Citi. The first letter was (notice of error). It stated, "Please consider this letter to constitute a Notice of Error; FURTHERMORE, YOU ARE IN COMPLETE VIOLATION OF THE ORDER CONFIRMING MY CHAPTER 11 BANKRUPTCY PLAN OF REORGANIZATION ENTERED 3/8/2011, CASE 09-29123-BAM (SEE ATTACHED – HIGHLIGHTED ON PAGE 8). In your correspondence dated December 11, 2017, I note the following ERRORS:

1) Payments made between the date of the bankruptcy in the court ordered amount of $522.64 at a rate of 5.25% have not been applied correctly. You have left them in unapplied funds category and not applied correctly to the balance. Thus not applying the payments correctly.

2) Continually adding in **pre-bankruptcy charges, fees etc.** that were stripped from the loan at confirmation.

3) Continually adding these **false amounts**, claiming that I'm due and owing to you placing me into default status as your numbers are completely inaccurate.

4) Filing **false documents** with the Clark County Recorder's Office based on the above **inaccurate and incorrect** numbers.

46

5) Failing to correctly **Board the loan** per the bankruptcy confirmation numbers.

6) **Filing incorrect and inaccurate information** on my credit report causing my credit score to be lowered.

7) Not sending me **monthly statements** with correct information detailed within. Please provide the requested information in the time outlined under the amendments to the address provided. (Ex. '9', p.14). The second letter was a notice of Error under 12 CRF section 1024.35 and Notice of bankruptcy violation. (Ex. '9', p.17)

110.    That on or about March 28, 2018, Mrs. Schulte received a letter from Citi. It stated, "My name is The Homeowner Support Team, and due to a recent internal business charge, I will be your new Homeowner Support Specialist. I want to assure you that I will continue to provide assistance to you and answer any questions you might have throughout this process". (Ex. '9', p.20)

111.    That on or about March 30, 2018, Mrs. Schulte received a letter from Citi. It stated, We are writing to inform you we have received your recent correspondence. We appreciate your taking the time to write us, and the opportunity to service your mortgage needs. Your letter will be reviewed and processed timely. (Ex. '9', p.22)

112.    That on or about April 3, 2018, Mrs. Schulte received a letter from Citi. It stated, "**Important Information:** This letter provides important information about the various types of notices that you may receive from us as a result of your delinquency". (Ex. '9', p.23)

113.    That on or about April 17, 2018, Mrs. Schulte received a mortgage statement from Citi. It listed, Payment Due Date: 05/01/18; **Amount Due: $108,365.28.** It states, Your dedicated Single Point of Contact is THE

47

HOMEOWNER SUPPORT TEAM. It further list an **Explanation of Amount Due**; Principal $606.54; Interest $274.87; Escrow $163.81; **Regular Monthly Payment** $1,045.22; Fees/Advance Charged $133.08; Past Due Amount $107,186.98; **Total Amount Due $108,365.28**; Type of Mortgage FIXED RATE LOAN; Outstanding Principal Balance $87,997.47; Interest Rate 7.50000%; Escrow Balance -$15,065.01; CitiMortgage Taxes Paid Year to Date $0.00. It also list a, Past Payments Breakdown;

| Paid Since 03/19/18 | | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow | $0.00 | $254.00 |
| **Total** | **$0.00** | **$254.00** |

It further list a Transaction Activity Since Last Statement (03/20/18 to 04/17/18);

| Date | Description | Charges/Adjustments; | Payments |
|---|---|---|---|
| 03/01/18 | Recording Fee | $93.08 | |
| 03/01/18 | Interest on Escrow Advance | $93.08 | |

At the bottom it has a **Payment Coupon** with a **Total Amount Due by 05/01/18: $108,365.28**

On the second page it further states, Delinquency Notice;

**As of 04/17/18, your account is 2939 days delinquent**. Your loan in foreclosure, and fees and costs will continue to accrue unless the loan is fully reinstated or paid in full. Recent Account History

·Payment due 11/01/17: Unpaid Regular Monthly Payment amount of $96,160.24;

·Payment due 12/01/17: Unpaid Regular Monthly Payment amount of $97,205.46;

·Payment due 01/01/17: Unpaid Regular Monthly Payment amount of $98,250.68;

·Payment due 02/01/18: Unpaid Regular Monthly Payment amount of

48

$99,295.90;

·Payment due 03/01/18: Unpaid Regular Monthly Payment amount of $100,341.12;

·Payment due 04/01/18: Unpaid Regular Monthly Payment amount of $101,386.34;

**·Total Unpaid Regular Monthly Payment amount as of this statement: $102,431.56.** (Ex. '9', p.25)

114. That on April 25, 2018, Mrs. Schulte received a letter from Citi. It stated, We are writing to inform you we have received your recent correspondence. We appreciate your taking the time to write us, and the opportunity to service your mortgage needs. Your letter will be reviewed and processed timely. (Ex. '9', p.27)

115. That on or about April 26, 2018, Mrs. Schulte received a letter from Citi. It stated, "This letter is in response to your inquiries dated March 22, 2018 and received in the Default Mortgage Account Research Services Department of CitiMortgage Inc. (CMI) on March 28, 2018 and April 24, 2018. Thank you for contacting CitiMortgage. We received your Qualified Written Request in which you state errors have occurred in the servicing of the above loan. After review of the above loan, we have assigned the loan to our Bankruptcy Response Unit. Currently, the account is under review and being assigned to a specialist who will audit the account with the Confirmation Order. (Ex. '9', p.28)

116. That on or about June 4, 2018, Mrs. Schulte received a letter from Citi. It stated, "IMPORTANT: This communication is in regards to your above-referenced client's mortgage loan. Please forward to your client if you deem appropriate. (Ex. '9', p.30)

117. That on or about July 17, 2018, Mrs. Schulte received a mortgage statement from Citi. It listed, Payment Due Date: 08/01/18; **Amount Due:**

49

**$111,797.04.** It states, Your dedicated Single Point of Contact is THE HOMEOWNER SUPPORT TEAM. It further list an **Explanation of Amount Due**; Principal $621.84; Interest $259.57; Escrow $163.81; **Regular Monthly Payment** $1,045.22; Past Due Amount $110,751.82; **Total Payment Amount $111,797.04**; Type of Mortgage FIXED RATE LOAN; Outstanding Principal Balance $87,997.47; Interest Rate 7.50000%; Escrow Balance -$16,608.63. It also list a, Past Payments Breakdown;

| | Paid Since 07/19/18 | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow | $0.00 | -$773.62 |
| Partial Payment (Unapplied) | | $1,027.62 |
| **Total** | **$0.00** | **$254.00** |

It further list a Transaction Activity Since Last Statement (07/02/18 to 07/17/18);

| Date | Description | Charges/Adjustments; | Payments |
|---|---|---|---|
| 03/01/18 | Escrow Disbursement-Hazard Insurance | | -$516.00 |

At the bottom it has a **Payment Coupon** with a **Total Amount Due by 08/01/18: $111,797.04**

On the second page it further states, Recent Account History

·Payment due 02/01/18: Unpaid Regular Monthly Payment amount of $100,341.12;

·Payment due 03/01/18: Unpaid Regular Monthly Payment amount of $101,386.34;

·Payment due 04/01/18: Unpaid Regular Monthly Payment amount of $102,431.56;

·Payment due 05/01/18: Unpaid Regular Monthly Payment amount of $103,476.78;

·Payment due 06/01/18: Unpaid Regular Monthly Payment amount of $104,522.00;

·Payment due 07/01/18: Unpaid Regular Monthly Payment amount of

50

$105,567.22;

·**Total Unpaid Regular Monthly Payment amount as of this statement: $106,612.44**. (Ex. '9', p.31)

118.  That on or about August 17, 2018, Mrs. Schulte received a mortgage statement from Citi. It listed, Payment Due Date: 09/01/18; **Amount Due: $111,799.71.** It states, Your dedicated Single Point of Contact is THE HOMEOWNER SUPPORT TEAM. It further list an **Explanation of Amount Due**; Principal $625.73; Interest $255.68; Escrow $163.81; **Regular Monthly Payment** $1,045.22; Fee/Advance Charged $2.67; Past Unpaid Amount $110,751.82; **Total Payment Amount $111,799.71**; Type of Mortgage FIXED RATE LOAN; Outstanding Principal Balance $87,666.04; Interest Rate 7.50000%; Escrow Balance -$16,917.76; Interest Paid Year to Date $549.98' CitiMortgage Taxes Paid Year to Date $472.94. It also list a, Past Payments Breakdown;

| | Paid Since 07/17/18 | Paid Year to Date |
|---|---|---|
| Principal | $331.43 | $331.43 |
| Interest | $549.98 | $549.98 |
| Escrow | $163.81 | -$609.81 |
| Partial Payment (Unapplied) | $0.06 | $1,027.68 |
| **Total** | **$0.00** | **$1,299.28** |

It further list a Transaction Activity Since Last Statement (07/18/18 to 08/17/18);

| Date | Description | Charges/Adjustments; | Payments |
|---|---|---|---|
| 07/23/18 | Interest on Escrow Advance | -$80.99 | |
| 07/30/18 | Escrow Disbursement- County Tax | | -$472.94 |

At the bottom it has a **Payment Coupon** with a **Total Amount Due by 09/01/18: $111,799.71**

On the second page it further states, On the second page it continued from page 1 Transaction Activity Since Last Statement (07/18/18 to 08/17/18)

| Date | Description | Charges/Adjustments; | Payments |
|------|-------------|----------------------|----------|
| 07/31/18 | Post-Petition Payment Received-Thank you | | $522.64 |
| 07/31/18 | Post-Petition Payment Received-Thank you | | $1,045.22 |
| 07/31/18 | Post-Petition Payment Received-Thank you | | $1,045.22 |
| 08/01/18 | Interest on Escrow Advance | $86.66 | |
| 08/14/18 | Post-Petition Payment Received-Thank you | | $522.64 |

On the third page it states, Recent Account History

·Payment due 03/01/18: Unpaid Regular Monthly Payment amount of $100,341.12;

·Payment due 04/01/18: Unpaid Regular Monthly Payment amount of $101,386.34;

·Payment due 05/01/18: Unpaid Regular Monthly Payment amount of $102,431.56;

·Payment due 06/01/18: Unpaid Regular Monthly Payment amount of $103,476.78;

·Payment due 07/01/18: Unpaid Regular Monthly Payment amount of $104,522.00;

·Payment due 08/01/18: Unpaid Regular Monthly Payment amount of $105,567.22;

**·Total Unpaid Regular Monthly Payment amount as of this statement: $106,612.44**. (Ex. '9', p.33)

119.    That on or about September 18, 2018, Mrs. Schulte received a mortgage statement from Citi. It listed, Payment Due Date: 10/01/18; **Amount Due: $66,522.24.** It states, Your dedicated Single Point of Contact is THE HOMEOWNER SUPPORT TEAM. It further list an **Explanation of Amount Due**; Principal $161.51; Interest $361.13; Escrow $196.08; **Regular Monthly Payment** $718.72; Past Unpaid Amount $65,803.52; **Total Amount Due $66,522.24**; Type of Mortgage FIXED RATE LOAN; Outstanding Principal Balance $94,646.23; Interest Rate 5.25000%; Escrow Balance -$0.00; CitiMortgage Taxes Paid Year to Date $944.11. It also list a, Past Payments Breakdown;

|                                          | Paid Since 08/17/18 | Paid Year to Date |
|------------------------------------------|--------------------|-------------------|
| Principal                                | $333.50            | $664.93           |
| Interest                                 | $547.91            | $1,097.89         |
| Escrow                                   | $163.81            | -$446.00          |
| Partial Payment (Unapplied) - $522.58    |                    | $505.10           |
| **Total**                                | **$522.64**        | **$1,821.92**     |

It further list a Transaction Activity Since Last Statement (08/18/18 to 09/17/18);

| Date     | Description                             | Charges/Adjustments; | Payments   |
|----------|----------------------------------------|---------------------|------------|
| 09/01/18 | Interest on Escrow Advance             | -$82.85             |            |
| 09/11/18 | Post-Petition Payment Received-Thank you |                   | $522.65    |
| 09/11/18 | Post-Petition Payment Received-Thank you |                   | $1,045.22  |

At the bottom it has a **Payment Coupon** with a **Total Amount Due by 10/01/18: $66,522.24**

On the second page it continued from page 1 Transaction Activity Since Last Statement (08/18/18 to 09/18/18)

| Date     | Description                                      | Charges/Adjustments; | Payments  |
|----------|-------------------------------------------------|---------------------|-----------|
| 09/11/18 | Post-Petition Payment Received-Thank you         |                     | $1,045.22 |
| 09/12/18 | Interest on Escrow Advance                       | -$82.65             |           |
| 09/12/18 | Interest on Escrow Advance                       | -$83.66             |           |
| 09/12/18 | Foreclosure Attorney Fee (Filing, Search, Etc.)  | -$991.25            |           |
| 08/01/18 | Foreclosure Attorney Fee (Filing, Search, Etc.)  | -$915.00            |           |
| 08/14/18 | Recording Fee                                    | -$40.00             |           |
| 09/12/18 | Tile Cost Fee                                    | -$655.00            |           |
| 09/12/18 | Service Expense Fee                              | -$25.00             |           |
| 09/12/18 | Service Expense Fee                              | -$200.00            |           |
| 09/12/18 | Recording Fee                                    | -$18.00             |           |
| 09/12/18 | Sale Posting Fee                                 | -$85.00             |           |
| 09/12/18 | Certified Mail Fee                               | -$234.66            |           |
| 09/12/18 | Tile Cost Fee                                    | -$50.00             |           |
| 09/12/18 | Recording Fee                                    | -$54.00             |           |
| 09/12/18 | Publication Fee                                  | -$220.00            |           |
| 09/12/18 | Sale Posting Fee                                 | -$100.00            |           |

| 09/12/18 | Certified Mail Fee | -$373.49 |
| 09/12/18 | Tile Cost Fee | -$646.60 |
| 09/12/18 | Service Expense Fee | -$110.00 |
| 09/12/18 | Recording Fee | -$17.00 |
| 09/12/18 | Certified Mail Fee | -$318.61 |
| 09/12/18 | Breach Letter Document Fee | -$50.00 |
| 09/12/18 | Escrow Disbursement-County Tax | -$471.17 |
| 09/12/18 | Modification-Written Off Principal Decrease | -$9,911.43 |
| 09/12/18 | Modification-Written Off Interest Decrease | -$5,458.30 |
| 09/12/18 | Modification-Capitalized Principal increased | $17,225.12 |
| 09/12/18 | Modification-Escrow Decrease | -$17,225.12 |
| 09/12/18 | Bankruptcy Attorney Fee | $400.00 |

On the third page it states, Delinquency Notice; A of 09/18/18, **your account is 2759 days delinquent**. Failure to bring your loan current may result in additional fees, costs and may result in CitiMortgage taking legal action, such as referring your loan to foreclosure. Recent Account History

·Payment due 04/01/18: Unpaid Regular Monthly Payment amount of $61,809.92;

·Payment due 05/01/18: Unpaid Regular Monthly Payment amount of $62,528.64;

·Payment due 06/01/18: Unpaid Regular Monthly Payment amount of $63,247.36;

·Payment due 07/01/18: Unpaid Regular Monthly Payment amount of $63,966.08;

·Payment due 08/01/18: Unpaid Regular Monthly Payment amount of $64,684.80;

·Payment due 09/01/18: Unpaid Regular Monthly Payment amount of $65,403.52;

·**Total Unpaid Regular Monthly Payment amount as of this statement: $66,122.24**. (Ex. '9', p.36)

120.    That on or about September 27, 2018, Mrs. Schulte received a letter from Citi. It stated, "IMPORTANT: This communication is in regards to your above-

referenced client's mortgage loan. Please forward to your client if you deem appropriate. (Ex. '9', p.39)

121.  That on or about October 16, 2018, Mrs. Schulte received a letter from Citi. It stated, "We recently received your remittance for your mortgage payment. Your remittance was insufficient to cover your mortgage payment in full. To avoid the assessment of a late fee, your remittance was applied first to principal and interest, paying both in full. This left a shortage in the required monthly escrow amount. We are asking that you remit the outstanding amount of $27.97. (Ex. '9', p.40)

122.  That on or about October 17, 2018, Mrs. Schulte received a mortgage statement from Citi. It listed, Payment Due Date: 11/01/18; **Amount Due: $53,185.28.** It states, Your dedicated Single Point of Contact is ALFONSO SILVAS . It further list an **Explanation of Amount Due**; Principal $162.22; Interest $360.42; Escrow $196.08; **Regular Monthly Payment** $718.72; Past Unpaid Amount $52,466.56; **Total Amount Due $53,185.28**; Type of Mortgage FIXED RATE LOAN; Outstanding Principal Balance $92,500.28; Interest Rate 5.25000%; Escrow Balance -$3,697.55; Interest Paid Year to Date $2,173.23; CitiMortgage Taxes Paid Year to Date $944.11. It also list a, Past Payments Breakdown;

|  | Paid Since 09/18/18 | Paid Year to Date |
|---|---|---|
| Principal | $15,503.02 | $16,167.95 |
| Interest | $1,075.34 | $2,173.23 |
| Escrow | -$16,073.26 | -$16,519.26 |
| Partial Payment (Unapplied) - $505.10 | | $0.000 |
| **Total** | **$0.00** | **$1,821.92** |

It further list a Transaction Activity Since Last Statement (09/19/18 to 10/17/18);

| Date | Description | Charges/Adjustments; | Payments |
|------|-------------|---------------------|----------|
| 09/21/18 | Interest-Bearing Principal Increase | $9,911.43 | |
| 09/27/18 | Bankruptcy Attorney Fee | -$400.00 | |
| 10/01/18 | Interest on Escrow Advance | $1,045.22 | |

At the bottom it has a **Payment Coupon** with a **Total Amount Due by 11/01/18: $53,185.28**

On the second page it continued from page 1 Transaction Activity Since Last Statement (09/19/18 to 10/17/18)

| Date | Description | Charges/Adjustments; | Payments |
|------|-------------|---------------------|----------|
| 10/12/18 | Post-Petition Account Maintenance | | -$1,045.22 |
| 10/12/18 | Post-Petition Account Maintenance | | -$1,045.22 |
| 10/12/18 | Post-Petition Account Maintenance | | -$1,045.22 |
| 10/12/18 | Post-Petition Account Maintenance | | -$1,045.22 |
| 10/12/18 | Post-Petition Account Maintenance | | -$1,045.22 |
| 10/12/18 | Post-Petition Account Maintenance | | -$1,045.22 |
| 10/12/18 | Post-Petition Account Maintenance | | -$1,045.22 |
| 10/12/18 | Post-Petition Account Maintenance | | -$1,045.22 |
| 10/12/18 | Post-Petition Account Maintenance | | -$1,045.22 |
| 10/12/18 | Post-Petition Account Maintenance | | -$1,045.22 |
| 10/12/18 | Post-Petition Account Maintenance | | -$1,045.22 |
| 10/12/18 | Post-Petition Account Maintenance | | -$254.00 |
| 10/12/18 | Post-Petition Account Maintenance | | -$211.79 |
| 10/12/18 | Post-Petition Account Maintenance | | -$1,159.40 |
| 10/12/18 | Post-Petition Partial Payment Received-Thank you | | $579.25 |
| 10/12/18 | Post-Petition Partial Payment Received-Thank you | | $12,543.36 |
| 10/12/18 | Interest on Escrow Advance | | -$45.09 |
| 10/12/18 | Modification-Written Off Principal Decrease | -$16,325.17 | |
| 10/12/18 | Modification-Written Off Interest Decrease | -$12,540.00 | |
| 10/12/18 | Modification-Capitalized Principal Increase | $19,770.81 | |
| 10/12/18 | Modification-Escrow Decrease | -$19,770.81 | |
| 10/12/18 | Post-Petition Partial Payment Received-Thank you | -$13,627.71 | |
| 10/12/18 | Payment Amount Received-Thank you | | $718.72 |
| 10/12/18 | Payment Amount Received-Thank you | | $718.72 |
| 10/12/18 | Payment Amount Received-Thank you | | $718.72 |

56

| | | |
|---|---|---|
| 10/12/18 | Payment Amount Received-Thank you | $718.72 |
| 10/12/18 | Payment Amount Received-Thank you | $718.72 |
| 10/12/18 | Payment Amount Received-Thank you | $718.72 |
| 10/12/18 | Payment Amount Received-Thank you | $718.72 |
| 10/12/18 | Payment Amount Received-Thank you | $718.72 |
| 10/12/18 | Payment Amount Received-Thank you | $718.72 |
| 10/12/18 | Payment Amount Received-Thank you | $718.72 |
| 10/12/18 | Payment Amount Received-Thank you | $718.72 |
| 10/12/18 | Payment Amount Received-Thank you | $718.72 |
| 10/12/18 | Payment Amount Received-Thank you | $718.72 |
| 10/12/18 | Payment Amount Received-Thank you | $718.72 |
| 10/12/18 | Payment Amount Received-Thank you | $718.72 |
| 10/12/18 | Payment Amount Received-Thank you | $718.72 |
| 10/12/18 | Payment Amount Received-Thank you | $718.72 |
| 10/12/18 | Payment Amount Received-Thank you | $690.75 |

On the third page it states, Recent Account History

·Payment due 05/01/18: Unpaid Regular Monthly Payment amount of $48,872.96;

·Payment due 06/01/18: Unpaid Regular Monthly Payment amount of $49,591.68;

·Payment due 07/01/18: Unpaid Regular Monthly Payment amount of $50,310.40;

·Payment due 08/01/18: Unpaid Regular Monthly Payment amount of $51,029.12;

·Payment due 09/01/18: Unpaid Regular Monthly Payment amount of $51,747.84;

·Payment due 10/01/18: Unpaid Regular Monthly Payment amount of $52,466.56;

·**Total Unpaid Regular Monthly Payment amount as of this statement: $53,185.28** (Ex. '9', p.42)

123.     That on or about November 19, 2018, Mrs. Schulte received a mortgage statement from Citi. It listed, Payment Due Date: 12/01/18; **Amount Due:**

**$53,273.28.** It states, Your dedicated Single Point of Contact isTHE HOMEOWNERS SUPPORT TEAM. It further list an **Explanation of Amount Due**; Principal $162.93; Interest $359.71; Escrow $196.08; **Regular Monthly Payment** $718.72; Fees/Advances Charged $88.00; Past Unpaid Amount $52,466.56; **Total Payment Amount $53,273.28**; Type of Mortgage FIXED RATE LOAN; Outstanding Principal Balance $92,382.33; Interest Rate 5.25000%; Escrow Balance -$3,893.63; Interest Paid Year to Date $2,577.92; CitiMortgage Taxes Paid Year to Date $944.11. It also list a, Past Payments Breakdown;

| | Paid Since 10/17/18 | Paid Year to Date |
|---|---|---|
| Principal | $117.95 | $16,285.90 |
| Interest | $404.89 | $2,577.92 |
| Escrow | $196.08 | -$16,323.18 |
| Partial Payment (Unapplied) - $326.56 | | $326.56 |
| **Total** | **$1,045.28** | **$2,867.20** |

It further list a Transaction Activity Since Last Statement (10/18/18 to 11/19/18);

| Date | Description | Charges/Adjustments; | Payments |
|---|---|---|---|
| 09/21/18 | Post-Petition Partial Payment Received-Thank you | | $522.64 |
| 09/27/18 | Post-Petition Partial Payment Received-Thank you | | $522.64 |

At the bottom it has a **Payment Coupon** with a **Total Amount Due by 12/01/18: $53,273.28**

On the second page it continued from page 1 Transaction Activity Since Last Statement (10/18/18 to 11/19/18)

| Date | Description | Charges/Adjustments; | Payments |
|---|---|---|---|
| 11/12/18 | Post-Petition Account Maintenance | | -$718.72 |
| 11/12/18 | Post-Petition Account Maintenance | | $718.72 |
| 11/12/18 | Property Valuation-Broker Price Opinion Fee | $88.00 | |

On the third page it states, Recent Account History

·Payment due 06/01/18: Unpaid Regular Monthly Payment amount of

58

$48,872.96;

·Payment due 07/01/18: Unpaid Regular Monthly Payment amount of $49,591.68;

·Payment due 08/01/18: Unpaid Regular Monthly Payment amount of $50,310.40;

·Payment due 09/01/18: Unpaid Regular Monthly Payment amount of $51,029.12;

·Payment due 10/01/18: Unpaid Regular Monthly Payment amount of $51,747.84;

·Payment due 11/01/18: Unpaid Regular Monthly Payment amount of $52,466.56;

·**Total Unpaid Regular Monthly Payment amount as of this statement: $53,185.28** (Ex. '9', p.45)

124.    That on or about November 29, 2018, Mrs. Schulte mailed a letter to Citi, requesting Citi to provide her with modified periodic statements as of April 19, 2018. Current and continuing mortgage statement to be sent to her mailing address; requesting a complete contractual "Life of Loan History"; And a copy of the note, mortgage and any allonge(s) if applicable. (Ex. '9', p.48)

125.    That on or about December 18, 2018, Mrs. Schulte received a mortgage statement from Citi. It listed, Payment Due Date: 01/19/19; **Amount Due: $53,273.28.** It states, Your dedicated Single Point of Contact isTHE HOMEOWNERS SUPPORT TEAM. It further list an **Explanation of Amount Due**; Principal $163.64; Interest $359.00; Escrow $196.08; **Regular Monthly Payment** $718.72; Past Unpaid Amount $52,554.56; **Total Payment Amount $53,273.28**; Type of Mortgage FIXED RATE LOAN; Outstanding Principal Balance $92,263.86; Interest Rate 5.25000%; Escrow Balance $3,618.54; Interest Paid Year to Date $2,982.09; CitiMortgage Taxes Paid Year to Date $1,415.28. It also list a, Past Payments

Breakdown;

|  | Paid Since 11/18/18 | Paid Year to Date |
|---|---|---|
| Principal | $118.47 | $16,404.37 |
| Interest | $404.17 | $2,982.09 |
| Escrow | $196.08 | -$16,127.10 |
| Partial Payment (Unapplied) - $196.08 | | $130.48 |
| **Total** | **$522.64** | **$3,389.84** |

It further list a Transaction Activity Since Last Statement (12/18/18 to 12/19/18);

| Date | Description | Charges/Adjustments; | Payments |
|---|---|---|---|
| 12/10/18 | Post-Petition Partial Payment Received-Thank you | | $522.64 |
| 12/10/18 | Post-Petition Partial Payment Received-Thank you | | -$718.72 |
| 12/10/18 | Post-Petition Partial Payment Received-Thank you | | 718.72 |

At the bottom it has a **Payment Coupon** with a **Total Amount Due by 01/01/19: $53,273.28**

On the second page it continued from page 1 Transaction Activity Since Last Statement (11/20/18 to 12/18/18)

| Date | Description | Charges/Adjustments; | Payments |
|---|---|---|---|
| 11/12/18 | Escrow Disbursement-County Tax | | -$471.17 |

On the fourth page it states, Recent Account History

·Payment due 07/01/18: Unpaid Regular Monthly Payment amount of $48,872.96;

·Payment due 08/01/18: Unpaid Regular Monthly Payment amount of $49,591.68;

·Payment due 09/01/18: Unpaid Regular Monthly Payment amount of $50,310.40;

·Payment due 10/01/18: Unpaid Regular Monthly Payment amount of $51,029.12;

·Payment due 11/01/18: Unpaid Regular Monthly Payment amount of $51,747.84;

·Payment due 12/01/18: Unpaid Regular Monthly Payment amount of $52,466.56;

**·Total Unpaid Regular Monthly Payment amount as of this statement: $53,185.28** (Ex. '9', p.49)

126.   That on or about January 17, 2019, Mrs. Schulte received a mortgage statement from Citi. It listed, Payment Due Date: 02/01/19; **Amount Due: $53,904.00.** It states, Your dedicated Single Point of Contact isTHE HOMEOWNERS SUPPORT TEAM. It further list an **Explanation of Amount Due**; Principal $164.36; Interest $358.28; Escrow $196.08; **Regular Monthly Payment** $718.72; Past Unpaid Amount $53,185.28; **Total Payment Amount $53,904.00**; Type of Mortgage FIXED RATE LOAN; Outstanding Principal Balance $92,263.86; Interest Rate 5.25000%; Escrow Balance $3,618.54; It also list a, Past Payments Breakdown;

|  | Paid Since 12/18/18 | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Partial Payment (Unapplied) | $522.64 | $653.12 |
| **Total** | **$522.64** | **$653.12** |

It further list a Transaction Activity Since Last Statement (12/19/18 to 01/17/19);

| Date | Description | Charges/Adjustments; | Payments |
|---|---|---|---|
| 01/07/19 | Property Valuation-Broker Price Opinion Fee | -$88.00 | |
| 01/08/19 | Post-Petition Partial Payment Received-Thank you | | $522.64 |

At the bottom it has a **Payment Coupon** with a **Total Amount Due by 02/01/19: $53,904.00**

On the third page it states, Recent Account History

·Payment due 08/01/18: Unpaid Regular Monthly Payment amount of $49,591.68;

·Payment due 09/01/18: Unpaid Regular Monthly Payment amount of $50,310.40;

·Payment due 10/01/18: Unpaid Regular Monthly Payment amount of

$51,029.12;

·Payment due 11/01/18: Unpaid Regular Monthly Payment amount of $51,747.84;

·Payment due 12/01/18: Unpaid Regular Monthly Payment amount of $52,466.56;

·Payment due 01/01/19: Unpaid Regular Monthly Payment amount of $53,185.28;

·**Total Unpaid Regular Monthly Payment amount as of this statement: $53,904.00** (Ex. '10', p.2)

127.    That on or about February 20, 2019, Mrs. Schulte received a mortgage statement from Citi. It listed, Payment Due Date: 03/01/19; **Amount Due: $53,904.00.** It states, Your dedicated Single Point of Contact isTHE HOMEOWNERS SUPPORT TEAM. It further list an **Explanation of Amount Due**; Principal $165.08; Interest $357.56; Escrow $196.08; **Regular Monthly Payment $718.72**; Past Unpaid Amount $53,185.28; **Total Payment Amount $53,904.00**; Type of Mortgage FIXED RATE LOAN; Outstanding Principal Balance $92,144.87; Interest Rate 5.25000%; Escrow Balance $3,343.45; Interest Paid Year to Date $403.65; CitiMortgage Taxes Paid Year to Date $471.17. It also list a, Past Payments Breakdown;

|  | Paid Since 01/17/19 | Paid Year to Date |
|---|---|---|
| Principal | $118.99 | $118.99 |
| Interest | $403,65 | $403,65 |
| Escrow | $196.08 | $196.08 |
| Partial Payment (Unapplied) - $196.08 | | $457.04 |
| **Total** | **$522.64** | **$1,175.76** |

It further list a Transaction Activity Since Last Statement (01/18/19 to 02/20/19);

| Date | Description | Charges/Adjustments; | Payments |
|---|---|---|---|
| 02/07/19 | Post-Petition Partial Payment Received-Thank you | | $522.64 |
| 02/07/19 | Post-Petition Partial Payment Received-Thank you | | -$718.72 |

02/07/19    Post-Petition Partial Payment Received-Thank you    $718.72

At the bottom it has a **Payment Coupon** with a **Total Amount Due by 03/01/19: $53,904.00**

On the second page it continued from page 1 Transaction Activity Since Last Statement (01/18/19 to 02/20/19)

| Date | Description | Charges/Adjustments; | Payments |
|---|---|---|---|
| 02/07/19 | Bankruptcy Attorney Fee | $250.00 | |
| 02/12/19 | Escrow Disbursement-County Tax | | -$471.17 |
| 02/19/19 | Bankruptcy Attorney Fee | -$250.00 | |

On the fourth page it states, Recent Account History

·Payment due 09/01/18: Unpaid Regular Monthly Payment amount of $49,591.68

·Payment due 10/01/18: Unpaid Regular Monthly Payment amount of $50,310.40;

·Payment due 11/01/18: Unpaid Regular Monthly Payment amount of $51,029.12;

·Payment due 12/01/18: Unpaid Regular Monthly Payment amount of $51,747.84;

·Payment due 01/01/19: Unpaid Regular Monthly Payment amount of $52,466.56;

·Payment due 02/01/19: Unpaid Regular Monthly Payment amount of $53,185.28;

·**Total Unpaid Regular Monthly Payment amount as of this statement: $53,904.00** (Ex. '10', p.5)

128.    That on or about March 13, 2019, Mrs. Schulte received a servicing transfer. It stated To continue this tradition, we have entered into an agreement with Cenlar FSB d/b/a Central Loan Administration & Reporting ("Cenlar FSB"), where CitiMortgage will utilize Cenlar FSB to perform various servicing functions. Effective April 1, 2019, all payments should be sent to Cenlar FSB directly. (Ex. '10', p.9)

129.    That on or about March 19, 2019, Mrs. Schulte received a mortgage statement from Citi. It listed, Payment Due Date: 04/01/19; **Amount Due: $54,622.72.** It states, Your dedicated Single Point of Contact is THE HOMEOWNERS SUPPORT TEAM. It further list an **Explanation of Amount Due**; Principal $165.08; Interest $356.84; Escrow $196.08; **Regular Monthly Payment $718.72**; Past Unpaid Amount $53,904.00; **Total Payment Amount $54,622.72**; Type of Mortgage FIXED RATE LOAN; Outstanding Principal Balance $92,144.87; Interest Rate 5.25000%; Escrow Balance $3,343.45; Interest Paid Year to Date $403.65; CitiMortgage Taxes Paid Year to Date $471.17. It also list a, Past Payments Breakdown;

|  | Paid Since 02/20/19 | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $118.99 |
| Interest | $0.00 | $403.65 |
| Escrow | $0.00 | $196.08 |
| Partial Payment (Unapplied) - $0.00 |  | $457.04 |
| **Total** | **$0.00** | **$1,175.76** |

It further list a Transaction Activity Since Last Statement (02/21/19 to 03/19/19);

Date        Description        Charges/Adjustments;        Payments
NO TRANSACTIONS HAVE OCCURRED SINCE YOUR LAST STTAEMENT
At the bottom it has a **Payment Coupon** with a **Total Amount Due by 04/01/19: $54,622.72**
On the second page it states, Recent Account History
·Payment due 10/01/18: Unpaid Regular Monthly Payment amount of $50,310.40
·Payment due 11/01/18: Unpaid Regular Monthly Payment amount of $51,029.12;
·Payment due 12/01/18: Unpaid Regular Monthly Payment amount of $51,747.84;
·Payment due 01/01/19: Unpaid Regular Monthly Payment amount of

$52,466.56;

·Payment due 02/01/19: Unpaid Regular Monthly Payment amount of $53,185.28;

·Payment due 03/01/19: Unpaid Regular Monthly Payment amount of $53,904.00;

**·Total Unpaid Regular Monthly Payment amount as of this statement: $54,622.72** (Ex. '10', p.11)

130.    That on or about March 29, 2019, Mrs. Schulte mailed a letter to Citi. Requesting for them to mail her past, current and continuing mortgage statements to her mailing address. (Ex. '10', p.14)

131.    That Debtor William R. Schulte passed on January 21, 2020.

## II

## Overview

Clear and convincing evidence will establish that Citi knew of the automatic stay, Confirmation Order, the confirmed plan and the discharge injunction and by its terms, the Stipulation applied to Debtor's personal debt obligations under the Promissory Note. As described above, Debtor asserts that (1) Citi misapplied her payments; (2) Citi failed to properly update its system to reflect Debtor's compliance with the Stipulation's terms of repayment. Each of these facts establish that Citi violated this Court's Confirmation Order, the plan, stay and discharge and did so knowingly. Accordingly, the Court should enter judgment in favor of Debtor as to Citi liability for violating the plan, Confirmation Order the stay and discharge.

## III

## Argument

## Citi Violated the Automatic Stay

**1. Knowledge of the Stay**

Section 362(k) provides for an award of actual damages for an individual injured by a willful violation of the automatic stay. A prerequisite to awarding any actual or punitive

damages under Section 362(k) is a finding that the creditor's violation of the automatic stay was willful. Proof of specific intent to violate the automatic stay is not required. *In re Dyer*, 322 F.3d 1178, 1191 (9th Cir. 2003). Instead, the moving party need only demonstrate that the creditor knew of the automatic stay, and that the creditor's actions that violated the stay were intentional. See *In re Pace*, 67 F.3d 187, 191 (9th Cir. 1995). A party with knowledge of the bankruptcy proceeding is considered to have knowledge of the automatic stay. See *In re Perl*, 513 B.R. 566, 576 (B.A.P. 9th Cir. 2014), *rev'd on other grounds*, 811 F.3d 1120 (9th Cir. 2016). Here, there is no question that Citi knew of Ms. Schulte bankruptcy. It had written notice, it participated in her bankruptcy and it likely used a third party notification vender.

### (a) Written Notice

The automatic stay arose immediately upon the filing of the Debtors' bankruptcy petitions on October 11, 2009. The docket shows Citi was listed on the Schulte petition (Dkt. #1). The Bankruptcy Noticing Center ("BNC") mailed Citi their 341 notice on October 15, 2009 (Dkt.#9).

### (b) Participation in the Bankruptcy

Citi mortgage also participated in Schulte's bankruptcy case. On May 26, 2010, it filed a proof of claim (Claim no.67-1). Then, on March 16, 2011, Citi also stipulated with Schulte on how to treat its claim post-petition (Dkt.#917).

### (c) Aacer or Pacer Notice

In addition, the industry standard, is for servicers to get direct notification from third parties of a bankruptcy filing. In this way, a servicer will receive notice of a bankruptcy prior to receiving notice by mail, or will receive notice even if an address is incorrect. Citi pays for this service. Thus, it is likely Citi received notice by a third party through, Black Knight, Aacer or directly from Pacer.

**2. Citi Took Action against Ms. Schulte  with the Stay in Effect.**

The automatic stay is self-executing, effective upon filing of the bankruptcy petition. *In re Gruntz,* 202 F.3d 1074, 1081 (9th Cir. 2000). Even if a creditor received no notice whatsoever, any act done in violation of the stay would be subject to being undone by the court. *In re Computer Communication,* 824 F.2d 725 (9th Cir. 1987). Further,  "[w]hen a creditor receives actual notice of the filing of a case, the burden is on the creditor to ensure that the automatic stay is not violated." *Roche v. Pep Boys, Inc.*, 361 BR 615, 623 (Bankr. N.D. Ga. 2008).

Where a creditor is provided actual notice of the bankruptcy any violation of the stay *must* be deliberate, *In re Smith*, 296 BR 46, 55 (Bankr. MD. Ala. 2002). Willfulness under §362(k) requires knowledge that a bankruptcy petition has been filed, whether through formal notice or otherwise. *In re Lyckberg*, 310 BR 881, 891 (Bankr. N.D. Ill. 1999). Knowledge of the bankruptcy filing is the legal equivalent of knowledge of the stay, and a violation is willful when a creditor acts intentionally with knowledge of the bankruptcy. *In re Ozenne,* 337 BR 214, 220 (9th Cir. BAP 2006); *In re Welch*, 296 BR 170, 172 (Bankr. C.D. Ill. 2003). Ignorance of the bankruptcy laws does not excuse anyone involved in a willful violation of the stay. *In re Sumpter,* 171 BR 835, 843 (Bankr. N.D. Ill. 1994). As to the Debtors, the inquiry under §362(k) is whether Citi engaged in any act to collect, assess, or recover their mortgage claim, between 2011 and 2015. Citi's actions violate §362(a)(3), (5) and (a)(6).

An act is wilful under §362(k) if it is done intentionally and with knowledge of the bankruptcy filing. *In re Bloom,* 875 F. 2d 224, 227 (9th Cir. 1989). Showing that the creditor knew of the bankruptcy case and that the creditor's action were intentional is enough. *Bloom* at 227. "The absence of willfulness does not relieve [a party violating a court order or decree] from civil contempt." *Id*. Thus, because civil contempt is remedial in nature, "it matters not with what intent the [contemnor does] the prohibited act." *Perry v. O'Donnell*,

759 F. 2d 702, 705 (9th Cir. 1985).

"When reasonable actual notice is received, it becomes the creditors responsibility to ensure the stay is not violated, or if it has been prior to receipt of actual notice, to reverse any action taken." *In re Flack,* 239 BR 155, 163. "Creditors will not be shielded from liability by *turning a blind eye* to reasonable, actual notice of filing." *Id.* at 164. "It is not for creditors to decide when they will respect the rights of debtors and/or to interpret the applicability of the stay provisions". *Id*

"Once a party is put on notice of a bankruptcy filing, he is under a duty to seek further information which should reveal the applicability and scope of the automatic stay". *In re Lile,* 103 BR 830, 837 (Bankr. S. D. Tex. 1989), *aff'd* 161 BR 788 (S.D. Tex 1993), *aff'd* in part sub nom. *Matter of Lile,* 43 F.3d 668 (5th Cir. 1994). Had Citi taken the time and trouble to correct its statements after stipulating to the monthly payment and interest it agreed to in Ms. Schulte bankruptcy instead of embarking on what eventually proved to be an incorrect decision, than the element of reckless disregard may not be present. *In re Aster*, 11 BR 483, 485 (Bankr. D. RI. 1981).

When a creditor knows that the automatic stay exists, the creditor bears responsibility for any violations caused by its intentional actions (or inactions), regardless of whether the specific intent of the action or actions was to violate the stay. *See, e.g., In re Goodman*, 991 F.2d 613, 618 (9th Cir. 1993). An act or omission "does not cease to be a violation of a law and a decree merely because it may have been done innocently." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949).

A creditor's "half-hearted effort to determine if a Debtor had filed, even if sincere . . . , did not meet the burden of inquiry. It is the responsibility of parties stayed to ascertain whether a bankruptcy case has truly been commenced" *Johnson* at 267. Automatic stay violations, even if innocent can became willful if the creditor fails to remedy the violation after receiving notice of the stay. *In re Adams*, 94 BR 838 (Bankr. E.D. Pa. 1989). Upon

learning of a bankruptcy filing, a creditor has an affirmative duty to reverse any action and return the debtor to status quo. *In re Sams,* 106 BR 485 (Bankr. S.D. OH. 1989). Here, Citi took no steps to correct its notice for seven years.

Citi, as a long term mortgage servicer, was equipped with individuals experienced in dealing with legal matters. "[I]t is the responsibility of [the] part[y] stayed to ascertain whether a bankruptcy case has truly been commenced." *In re Freemyer Indus. Pressure, Inc.,* 281 BR 262, 267 (Bankr. N.D. Tex. 2002). (Notice sent by facsimile and given orally puts a creditor on inquiry notice). Even if, Citi was uncertain what to do, the court in *Freemyer* stated, it is "especially troubled that [the creditor] apparently did not look up the law. Applicability of the automatic stay is not a difficult concept, nor is the law unclear. A five-minute check of any treatise would have corrected [the creditors] misperception." *Id* at 268 fn.6.

Finally, "[i]f a creditor is uncertain about the applicability of the automatic stay, the creditor may petition the court for clarification; otherwise, the creditor risks exposure under 11 U.S.C. §362(k)(1) when he undertakes his own determination of the manner in which §362(a) affects his actions." *In re Galmore,* 390 BR 901, 904 (Bankr. Ind. 2008). Here, Citi failed to take this or any other route.

**3. Citi's Stay Violation Continued Post Discharge by Failing to Take Steps to Stop What it Started.**

A creditor also violates the automatic stay by failing to take affirmative action to halt the effect of its violation. Once a party is put on notice of a bankruptcy filing, he is under a duty to seek further information which should reveal the applicability and scope of the stay. *In re Wagner,* 74 BR 898, 904 (Bankr. E.D.Pa. 1987). A creditor takes the risk of being assessed damages if he fails to obtain clarification from the bankruptcy court. *In re Clark*, 49 BR 704, 707 (Bankr. D. Guam. 1985). Many courts have held, it is incumbent on a creditor to take the necessary steps to halt or reverse any pending collection efforts and thereby, maintain, or restore the status quo as it existed at the time of the filing of the

bankruptcy petition. Even "if [the stay] has been violated prior to receipt of actual notice the burden is on the creditor to *reverse* any such action taken in violation of the stay." *In re Smith,* 180 BR 311, 319 (Bankr. N.D. Ga. 1995).

" The responsibility is placed on the creditor because 'to place the onus on the debtor . . . to take affirmative steps . . . would subject the debtor to the financial pressures the automatic stay was designed to temporarily abate, and render the breathing spell from his creditors illusory' ". *Roche* at 621. "Courts find a violation of the stay based on an act of *omission* when a creditor fails to cure a previous violation of the stay or otherwise restore the states quo." *In re Bilfield*, 494 BR 292, 301 (Bankr. N.D. OH. 2013). The *Bilfield* court rejected the innocence argument of a creditor who hired a process server that served a subpoena upon the debtor in violation of the stay. The creditor had an affirmative obligation to instruct its agent to stand down. *Id.* at 305. Here, despite actual knowledge Citi took no steps to cease mailing incorrect collection letters to Ms. Schulte.

It would result in a significant waste of judicial resources and "the automatic stay . . . would be frustrated if the debtor had to involve the court in each situation as here. It would continuously involve the court in pointless and needless litigation. . . it should not be the court that should stop the snowball." *In re Baldwin*, 1996 WL 33401577*3 (Bankr.C.D. Ill. 1996). "A creditor sets in motion the process. [The] [c]reditor is in the driver's seat and very much controls what is done thereafter if it chooses. If the 'continuation' is to be stayed, it cannot chose to do nothing and pass the buck to the garnishee or the court in which the garnishment is filed to effectuate the stay. Positive action on the part of the creditor is necessary so that continuation is stayed" *In re Elder,* 12 BR 491, 494-95 (Bankr. M.D. Ga. 1981).

A willful violation can be found based on an act of *omission*. *In re Banks*, 253 BR. 25, 31 (Bankr. E.D. Mich. 2000). Courts have been quick to realize that a creditors *inaction* can often be just as disruptive to the debtor as are affirmative collection efforts. *In re Miller*,

22 BR 479, 481 (Bankr. D. Md. 1982). "In other words, the entire scenario was created, produced and directed by Creditor", so it was the party that needed to act. *In re Daniels,* 316 BR 342, 348-49 (Bankr. D. ID. 2004). Here, Citi took no action to curtail its incorrect collection statements.

Even, after Ms. Schulte discharge, Citi's stay violations carried over and continued, because it never corrected its earlier violations. Debtors may continue to experience the consequences of a stay violation even *after* the stay has expired. *In re Snowden*, 769 F3 651, 659 and 662 (9th Cir. 2014), *aff'g* 422 B.R. 737 (Bankr. W.D. Wash. 2010). A creditor's failure, after they became aware of the Debtors bankruptcy filing and resulting stay, to take affirmative steps to stop its actions also constitutes a "willful" violation of the stay under 11 U.S.C. §362(k)(1). *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1212, (9th Cir. 2002). For this reason, a stay violation exists until remedied, even after the underlying bankruptcy case is resolved. Thus, because Citi has *never* acknowledged it violated the stay in the first place, it amounted to a continuing violation.

The Ninth Circuit has held that until a stay violation ends, even if it's after discharge, it is a continuing violation. "Stay violation liability under §362(k)(1) continues until full restitution is actually made or, if after expiration of the stay, until the court orders full restitution. *In re Snowden*, 769 F.3d 651, 659 and 662 (9th Cir. 2014); *In re Sundquist*, 566 B.R. 563, 586 (E.D. Cal. 2017). As Judge Christopher Klein aptly stated:

> When "a violation of the discharge injunction is merely continuation of pre-discharge conduct that violated the automatic stay, §362(k)(1) *continues* to provide stronger more explicit, and more definite statutory remedies that are more adequate to the task than the least-possible-exercise-of-power restriction on civil contempt" citing *In re Snowden*, 769 F.3d at 659 and 662; *In re Sundquist*, 566 BR at 586.

*In re Legrand*, 19-21198 at *15 (Bankr. E.D.Cal. Feb. 6, 2020)(emphasis added).

Judge Klein adds: "It would be an odd system that strips an individual debtor of the potent §362(k)(1) statutory punitive damages remedy against a creditor violating the automatic stay in bad faith but then holds that, because the stay violation persisted past

entry of discharge, the §524 discharge injunction insulates that same bad actor with civil contempt's milder least-possible-exercise-of-power approach of civil contempt." *Id*. In fact, Ms. Schulte have been *required* to pursue litigation and hire an expert to establish that the violation was willful and to obtain potential damages.  *Snowden*, 769 F.3d at 659. Thus, Citi's stay violation will not end until this Court rules after trial.

### Citi Violated the Discharge Injunction

#### 1. Ms. Schultes Discharge

The bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, . . . or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . ." 11 USC §524(a)(2). Like the stay, the discharge is automatic and self-effectuating. *In re Marino*,  577 B.R. 772, 783 (9th Cir. BAP 2017). In fact, creditors must obey it, even if a debtor does not assert it.  *In re Pavelich*, 229 BR 777, 781-782 (9thCir. BAP 1999). Here, Ms. Schulte asserted it by contacting Citi on several occasions post-discharge.

#### 2. Knowledge of the Discharge

Second, because Citi was on notice of the bankruptcy and stipulated to new mortgage figures its collection letters also violated the discharge injunction. "One of the benefits an individual receives from a discharge is peace of mind the individual needs no longer be concerned that a discharged debt will be enforced against him or her. When a creditor disregards the discharge and attempts to collect a debt, it is certainly within the realm of possibility that the debtor will be harmed emotionally. When such occurs, the harm may be remedied." *In re Nordlund*, 494 BR 507, 523 (Bankr. E.D. Cal. 2011). A debtor who asserts that the discharge injunction has been violated must seek relief from the bankruptcy court by motion, as was done here, rather than through commencement of an adversary proceeding. See *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1190 (9th Cir. 2011).

The Ninth Circuit has held that Section 524(a) may be enforced by the court's

contempt power under section 105(a). See *Walls v. Wells Fargo Bank, N.A.,* 276 F.3d 502, 509 (9th Cir. 2002).

To be subject to sanctions for violating the discharge injunction, a party's violation must be "willful." The Ninth Circuit applies a two-part test to determine whether the willfulness standard has been met: (1) did the alleged offending party know that the discharge injunction applied; (2) and did such party intend the actions that violated the discharge injunction? *In re Nash*, 464 B.R. at 880 (citing *Espinosa v. United Student Aid Funds, Inc.,* 553 F.3d 1193, 1205 n.7 (9th Cir.2008), *aff'd*, 130 S.Ct. 1367 (2010); *In re Zilog, Inc.*, 450 F.3d 996, 1007 (9th Cir.2006).

For the second prong, the bankruptcy court's focus is not on the offending party's subjective beliefs or intent, but on whether the party's conduct in fact complied with the order at issue. *In re Bassett*, 255 B.R. 747, 758 (9th Cir.BAP2000), *rev'd on other grounds*, 285 F.3d 882 (9th Cir.2002). In *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019), the US Supreme Court issued its ruling overturning the Ninth Circuit's previous standard for judging violations of a 11 U.S.C. § 524 discharge injunction – a subjective standard which focused on the subjective thought process of the creditor. *In re Taggart*, 888 F.3d 438, 441 (9th Cir. 2018). In its place, the Court adopted the reasoning of an old case, *California Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618, 5 S.Ct. 618, 28 L.Ed. 1106 (1885), to find that "a court may hold a creditor in civil contempt for violating a discharge order if there is *no fair ground of doubt* as to whether the order barred the creditor's conduct. In other words, civil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful." *Taggart*, 139 S. Ct. at 1799 (2019) (emphasis in original).

The "fair ground of doubt" standard, therefore, would seem to be an application of the "reasonable person" principle, wherein an action is judged to be lawful only if a reasonable person would perform it. "[A] party's record of continuing and persistent

violations and persistent contumacy justified placing the burden of any uncertainty in the decree on the shoulders of the party who violated the court order." *Taggart v. Lorenzen*, 139 S. Ct. at 1802. By this standard, Citi had no objectively reasonable basis for believing that its collection actions by mail when advised to do so by Ms. Schulte, were lawful, and it is therefore subject to sanctions.

"Under the fair ground of doubt standard, civil contempt may be appropriate when the creditor violates a discharge order based on an objectively unreasonable understanding of the discharge order *or the statutes that govern its scope*." *Taggart*, 139 S. Ct. at 1796 (emphasis added). In general, the law presumes that all parties are aware of the obligations the law imposes on them. *Bibeau v. Pac. Nw. Research Found. Inc.*, 188 F.3d 1105, 1110 (9th Cir. 1999), *opinion amended on denial of reh'g*, 208 F.3d 831 (9th Cir. 2000). In particular, "[b]usinesses are deemed knowledgeable of the laws affecting their enterprise." *Franken Invs., Inc. v. City of Flint*, 218 F. Supp. 2d 876, 886 (E.D. Mich. 2002) (*citing Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947)). Citi is in the business of collecting money from debtors. It is an institutional servicer that regularly files claims in bankruptcy. Thus, it must be presumed to be familiar with, and understand, the federal laws regarding debt and bankruptcy.

The moving party must prove by clear and convincing evidence that the offending party violated the order. *In re Zilog, Inc.*, 450 F.3d at 1007; *In re Dyer*, 322 F.3d 1178, 1191 (9th Cir.2003). The moving party also has this same burden to prove that sanctions are justified. *Espinosa*, 553 F.3d at 1205 n.7. The burden then shifts to the offending party to demonstrate why it was unable to comply. *In re Bennett*, 298 F.3d at 1069. If a bankruptcy court finds that a party has willfully violated the discharge injunction, it may award actual damages, punitive damages and attorney's fees to the debtor. *In re Nash*, 464 B.R. at 880 (citing *Espinosa*, 553 F.3d at 1205 n.7 (citing 2 Collier Bankruptcy Manual ¶524.02[2][c] (3d rev. ed.))). The bankruptcy court has broad discretion in fashioning a remedy for

violation of the discharge injunction. *In re Bassett*, 255 B.R. at 758. *In re Wallace*, 2012 WL 2401871 at *5 (B.A.P. 9th Cir. June 26, 2012).

The discharge prohibits not just litigation, but also informal collection activities, such a dunning notices and calls. *Marino* 577 BR at 783.  Actual or constructive notice of the discharged debt will suffice to find a party in violation of the discharge injunction. *In re Nassoko*, 405 B.R. 515, 522 (Bankr. S.D. N.Y. 2009). Here, Citi was on both actual and constructive notice of Ms. Schulte discharge.

### 3. Citi's Billing Statements Violated the Discharge Injunction When Requesting an Improper Amount of Payment and Interest.

Not surprisingly, case law also favors Ms. Schulte. "The discharge injunction survives the bankruptcy case and applies permanently with respect to every debt that is discharged." *In re Garske*, 287 BR 537,542 (9th Cir. BAP 2002).  So, demand for payment of discharged debts is prohibited.  *In re Brown*, 481 BR 351, 358, n. 10 (Bankr. W.D. Pa. 2012).  Therefore, "[s]ending of collection letters by a mortgagee or servicer after receiving notice of a debtor's discharge is a clear violation of the discharge injunction" *In re Sharak*, 571 B.R. 13, 20 (Bankr. N.D. New York 2017), citing *In re Doger-Marinesco*, 2016 Bankr. LEXIS 4111, at *26 (Bankr. S.D. N.Y. Dec. 1, 2016).  See also *In re Nassoko*, 405 BR 515 (S.D. NY 2009).

The automatic stay contained in 11 U.S.C. §362 and the discharge injunction contained in 11 U.S.C. §524 operate as orders of the court. *Matthews* at 598. A bankruptcy court may therefore use its inherent civil contempt authority to issue sanctions against creditors violating the automatic stay and discharge injunction, which sanctions may include compensatory damages. *See, e.g., In re Wallace*, 2011 WL 1335822 at *5 (Bankr. M.D. Fla. April 5, 2011) (stating that "[i]t is well settled that this Court has the inherent power to award compensatory damages for willful violations of the automatic stay as this falls within the ambit of the bankruptcy court's civil contempt power."); *In re Hardy,* 97

F.3d 1384, 1389 (11th Cir. 1996) (noting that "the modern trend is for courts to award actual damages for violation of §524 based on the inherent contempt power of the court.").

One court noted, that "the billing statements that Respondent sends to discharged debtors . . . are the same statements that Respondent sends to non-bankruptcy customers to collect personal debts." *In re Biery* 543 B.R. 267, 288 (Bankr. E.D. Kent. 2015). Thus, these types of "Billing statements *per se* violate the discharge [injunction]." *Id*. And critically, whether someone is in bankruptcy or not, Citi's correspondence never changed.

A "lien holder may communicate with a discharged debtor *only* to the extent necessary to preserve or enforce its lien rights, and may not attempt to induce the debtor to pay the debt." *Marino* 577 BR at 784. (Emphasis added). However, a "creditor may not use a contact to 'coerce' or 'harass' the debtor." *In re Nash*, 464 BR 874, 881 (9th Cir. BAP 2012). But here, that's exactly what Citi's account statements do. Under an objective standard, an action is considered coercive when it is "tantamount to a threat," *In re Jamo* 283 F.3d 392, 401 (1st Cir. 2002)), or "places a debtor 'between a rock and a hard place.'" *Id*. Despite dozens of Citi's collection letters being incorrect it threatened to foreclose.

Thus, Citi's actions should not be viewed in isolation, but should be considered under the totality of circumstances to determine whether they evidence a pattern of coercive behavior. *In re Mahoney*, 368 B.R. 579, 584 (Bankr. W.D. Tex. 2007).

In this modern age of information technology, Citi could and should prepare notices that are consistent with the known legal status of its loan with a debtor. Citi's failure to do so must reflect either incompetence or a deliberate effort to induce confused borrowers to pay more on a discharged debt.

### Inherent Contempt Authority

**1. The Court has inherent contempt authority to sanction violations of the discharge injunction, the confirmed plan and the confirmation order.**

Bankruptcy courts have inherent civil contempt authority independent of any statute or rule. *Jove Eng'g, Inc., v. IRS,* 92 F.3d 1539, 1553 (11th Cir. 1996). Pursuant to its inherent

civil contempt authority, bankruptcy courts may enforce its own orders, *see id.; In re Matthews,* 184 B.R. 594, 598 (Bankr. S.D. Ala. 1995), and issue sanctions for noncompliance, *Bessette v. Avco Fin. Services, Inc.,* 230 F.3d 439, 445 (1st Cir. 2000).

Despite knowledge of Ms. Schulte's bankruptcy and discharge, Citi has not ceased collection of an incorrect amount of its debt against her personally, thereby continuing to violate the Courts order and plan confirmation. These letters and correspondence are of little understanding to the average debtor, especially when confronted with the mounds of paperwork and contradictory legal jargon that Ms. Schulte has received since her discharge. Thus, Citi should be sanctioned under the court's inherent authority or, as shown below, under 11 U.S.C. §105.

## 2. The Court has Contempt Authority under Section 105 to Sanction Violations of a Court's Order and the Plan Confirmation.

In addition to its inherent civil contempt powers, bankruptcy courts have statutory civil contempt authority under 11 U.S.C. §105(a) to enforce the discharge provisions of the Bankruptcy Code and its own orders. *See Bessette*, 230 F.3d at 445; *see also In re Fatsis,* 405 B.R. 1, 7 (B.A.P. 1st Cir. 2009). Section 105(a) provides for the issuance of "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." (Emphasis added).

See also *In re Rainbow Magazine, Inc.*, 77 F.3d 278, 284 (9th Cir. 1996) (noting that "[t]here can be little doubt that bankruptcy courts have the inherent power to sanction vexatious conduct presented before the court" as recognized by the statutory grant of power to the bankruptcy courts under 11 U.S.C. §105(a)). "The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." *F.T.C. v. Affordable Media,* 179 F.3d 1228, 1239 (9th Cir. 1999).

A party who knowingly violates a court order or a confirmed plan can be held in contempt under §105(a) of the Bankruptcy Code. *Espinosa v. United Student Aid Funds, Inc.,* 553 F.3d 1193, fn. 7 (9th Cir. 2008). Proof of a knowing violation requires only proof that the creditor (1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction. *Bennett,* 298 F.3d at 1069; (citing *In re Hardy,* 97 F.3d at 1388-89). Therefore, the bankruptcy court clearly has discretion to impose sanctions under section 105(a). *Bennett* at 1069. The focus "is not on the subjective beliefs or intent of the contemnors in complying with the order, but whether in fact their conduct complied with the order at issue." *In re Dyer* 322 F.3d 1178, 1191 (9th Cir. 2003), citing *Hardy* at 1390 (regarding stay violation). "Because civil contempt serves a remedial purpose it matters not with what intent the defendant did the prohibited act." *Dyer* at 1191. "[T]he threshold questions regarding the propriety of an award turns not on a finding of 'bad faith' or subjective intent, but rather on a finding of willfulness' ". *Id* at 1191. To be subject to sanctions for violating the discharge injunction, a party's violation must be "willful." The Ninth Circuit applies a two-part test to determine whether the willfulness standard has been met: (1) did the alleged offending party know that the discharge injunction applied; and (2) did such party intend the actions that violated the discharge injunction? *In re Nash*, 464 B.R. 874, 880 (9th Cir. BAP 2012). Here, the answer to both questions is a resounding yes!

Since these letters, billing statements and correspondence seek to collect improper amounts from Ms. Schulte personally, Citi is in contempt and should be sanctioned under the Court's inherent authority. 11 U.S.C. §105.

# IV

## Damages

### 1. Stay and Discharge Violation

#### (a) Actual Damages

Actual damages may include costs, expert witness fees, attorneys' fees and, in appropriate circumstances, punitive damages for Citi's stay and discharge violations. See 11 U.S.C. §362(k)(1). Actual damages may also include compensation for emotional distress. Proof of pecuniary loss is not required for an award of emotional distress damages. *In re Dawson*, 390 F.3d 1139, 1149 (9th Cir. 2004). "To recover damages for emotional distress under § 362(k), 'an individual must (1) suffer significant harm (2) clearly establish the significant harm, and (3) demonstrate a causal connection between that significant harm and the violation of the automatic stay (as distinct, for instance, from the anxiety and pressures inherent in the bankruptcy process).' . . . Emotional harm may be proved by: (1) medical evidence, (2) non-experts, such as family members, friends, or coworkers; or (3) 'even without corroborative evidence where significant emotion distress is readily apparent.' . . . The last category includes cases where the violator's conduct is 'egregious,' or where the conduct is not egregious but the circumstances make it obvious that a reasonable person would suffer significant emotional harm . . . 'Fleeting or trivial anxiety or distress does not suffice . . .'" *See America's Servicing Co. v. Schwartz-Tallard*, 438 B.R. 313, 321-22 (D. Nev. 2010), *citing In re Dawson*, 390 F.3d at 1149-50.

Because actual damages can include emotional distress damages for an automatic stay violation, see *Dawson*, 390 F.3d at 1148, courts also have authority to award emotional distress damages for a discharge violation. See *In re McLean*, 794 F.3d 1313, 1325 (11th Cir. 2015). Schulte argues, that any reasonable person would suffer emotional distress after seven years of continuous post-petition and post-discharge collection attempts by letters that have incorrect information.

Both the Supreme Court and Ninth Circuit have made it clear, that emotional distress damages can be awarded to individuals based *solely* on a person's testimony. *Chalmers v. City of Los Angeles* 762 F.2d 753, 761 (9th Cir. 1985) (upholding emotional damages solely on testimony); *Johnson v. Hale*, 13 F.3d 1351, 1352 (9th Cir. 1994) (noting that emotional distress damages may be awarded based on testimony alone or appropriate inference from circumstances); *Carey v. Piphus*, 435 U.S. 247, 264, n.20 (1978) (emotional distress damages are "essentially subjective" and may be proven by reference to injured party's conduct and observations by others). Here, there was an actual causal connection between Citi's contumacious conduct and Ms. Schulte emotional distress. Finally, the Ninth Circuit has permitted large emotional damages based solely on a person's testimony. *Zhang v. Am Gen. Seafoods*, 339 F.3d 1020, 1040 (9th cir. 2003) ("Zhang's testimony alone is enough to substantiate the jury's award of emotional distress damages" - $360,000 emotional distress and $2,600,000 punitive damages); *Passantino v. Johnson + Johnson Consumer Prods. Inc.* 212 F.3d 493, 513 (9th Cir. 2000) (upheld $1,000,000 emotional distress damages and $2,200,000 in economic damages; *McCullough v. Johnson Rodenburg & Lauinger*, 637 F.3d 939, 957 (9th Cir. 2011)(upheld $250,000 emotional distress damages - FDCPA). Thus, this Court should consider large emotional distress damages.

**(b) Punitive Damages**

**(1) Stay Violation**

Punitive damages are permissible for stay violation. 11 U.S.C. §362(k). An award of punitive damages requires "some showing of reckless or callous disregard for the law or rights of others." *In re Bloom,* 875 F.2d 224, 228 (9th Cir. 1989). "Once a party is put on notice of a bankruptcy filing, he is under a duty to seek further information which should reveal the applicability and scope of the automatic stay." *In re Lile*, 103 B.R. 830, 837 (Bankr.S.D. Tex. 1989), *aff'd* 161 B.R. 788 (S.D. Tex. 1993), *aff'd* in part subnom. *Matter*

*of Lile*, 43 F.3d 668 (5th Cir. 1994).  Where a creditor is provided actual notice of the bankruptcy any violation of the stay *must* be deliberate. *In re Smith*, 296 B.R. 46, 55 (Bankr. MD. Ala. 2002).  But, even "[t]he absence of willfulness does not relieve [a party violating a court order or decree] from civil contempt." *Id*. Because civil contempt is remedial in nature, "it matters not with what intent the [contemnor does] the prohibited act." *Perry v. O'Donnell*, 759 F.2d 702, 705 (9th Cir. 1985).     Third, punitive damages can also be warranted, not only when a creditor engages in "egregious conduct", *In re Repine* 536 F.3d at 521, but also if the conduct is "reckless" or "arrogant," as in this situation. *In re Lile,* 161 BR 788, 792 (S.D. Tex. 1993). *In re Emberton*, 263 BR 817, 826 (Bankr. W.D. Kent. 2001)(punitive damages three times actual damages). Punitive damages are most appropriate "where there has been an 'arrogant defiance' of the Bankruptcy Code." *In re Curtis*, 322 B.R. 470, 486 (Bankr. D. Mass. 2005). But, since they completely ignored Ms. Schulte on numerous occasions, punitive damages are warranted.

### (2) Discharge Violation

A bankruptcy court's civil contempt authority under Section 105(a) is limited to relatively mild, non-compensatory fines rather than serious punitive sanctions. See *Dyer*, 322 F.3d at 1193. That is, unless this Court believes larger sanctions are needed. Then, it has two choices: First it can issue proposed findings and a recommended judgment on punitive damages to the district court or refer the matter to the district court for criminal contempt proceedings. *Marino* at 789.

### (c) Attorney Fees Actual Damage

An award of attorneys' fees under Section 362(k) may include the fees incurred in seeking to enforce the automatic stay. *In re Schwartz-Tallard*, 803 F.3d 1095, 1101 (9th Cir. 2015). Attorneys fees are also appropriate for a discharge violation, because it is an appropriate component of a civil contempt award. See *Walls v. Wells Fargo Bank, N.A.,* 276 F.3d 502, 507 (9th Cir. 2002).

81

**2. Inherent Authority**

A "willful violation" does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. *In re Pinkstaff*, 974 F.2d 113, 115 (9th Cir. 1992). "If the Bankruptcy Court finds that the creditor [Appellants] willfully violated the injunction, it shall, at the very least, impose sanctions to the extent necessary to make [Wallace] whole." *Ibid.*; "Where the discharge injunction was willfully violated courts award debtor's actual damages, punitive damages and attorneys' fees." *Ibid.,* citing 2 Collier Bankruptcy Manual (3rd Rev. Ed.) ¶ 524.02 [2][c].

"[B]ankruptcy courts across the country have appropriately used their statutory contempt power to order monetary relief, in the form of actual damages, attorney fees, and punitive damages when creditors have engaged in conduct that violates § 524." *Bessette* at 445.  See also *In re Harris*, 312 B.R. 591 (N.D. Miss. 2004); *In re Sanchez*, 372 B.R. 289 (Bankr. S.D. Tex. 2007) (Section 105(a) gives the court power to sanction a creditor charging undisclosed and improper fees); *In re Rizzo Cheverier*, 364 B.R. 532 (Bankr. S.D.NY 2007).

"In a civil contempt proceeding, a monetary sanction, assessed for the purpose of compensating the complainant for losses sustained by reason of the contemnor's acts, is within the universe of permissible sanctions. Thus, make-whole relief is a commonplace sanction in civil contempt.  So too are. . .  attorney's fees and costs." *Goya Foods, Inc. v. Wallach Mgmt. Co.* 290 F.3d 63, 78 (1st Cir. 2002).  "[D]amage awards are both necessary and appropriate in the context of contempt for violation of the discharge injunctions." *Gervin* at 858.

Creditors have been found to have violated the discharge injunctive for various acts. See *In re Adrus*, 189 B.R. 413 (N.D. Ill.1995)(calling); *In re Burke* 200 B.R. 282 (Bankr. S.D. Ga. 1996)(collection letter). As a consequence, debtors have received actual damages,

emotional distress damages and attorney's fees. See *In re Curtis*, 322 B.R. 470 (Bankr.D.Mass 2005)(debtor awarded $15,000 emotional distress damages and $30,000 punitive damages); *In re Atkins,* 279 B.R. 639 (Bankr.N.D.N.Y. 2002)($30,000 emotional distress); *In re Gervin,* 337 B.R. 854, 864 (Bankr.W.D. Tex.2005)($25,000 emotional distress damages); *In re Goodfellow,* 298 B.R. 358 (Bankr. N.D. IA.2003)(debtor awarded $5,000 actual and $5,000 punitive damages); *In re Faust,* 270 B.R. 310 (Bankr.N.D.Ga. 1998). *In re McCormak* 203 B.R. 521 (Bankr. D.N.H. 1996) (mortgage bank held liable for $10,000 in punitive damages). These are typical civil contempt sanctions. *In re National Gypsum,* 118 F.3d 1056 (5th Cir. 1997).

**3. Ms. Schulte should not be penalized for enforcing her rights.**

"Without the willingness of aggrieved debtors to prosecute violations of the discharge injunction of section 524(a)(2), such violations would go unchecked by the court. The Code has as one of its underlying purposes providing a fresh start to a discharged debtor." *In re McClure*, 420 B.R. 655, 664 (Bankr. N.D. Tex. 2009), (citing *Marrama v. Citizens Bank*, 549 U.S. 365, 367, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007) and *Grogan v. Garner*, 498 U.S. 279, 286-87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

"If violation of the discharge injunction go unpunished, creditors will lack the necessary incentive to avoid violating the law, and an underlying purpose of the Code with be undermined. In order to ensure that debtors are not hesitant to prosecute violations of the discharge injunction, they should be awarded a actual damages to compensate them for the time and effort they expend in the process." *McClure* at 664, "Should creditors feel safe in ignoring the discharge injunction, some debtors, especially if not represented - . . . may be intimidated into paying discharged debts." *Id* at 664. Here, Ms. Schulte should not be discouraged from seeking to enforce her rights.

**5. Various Forms Of Sanctions and Damages Are Available To This Court To Compensate Ms. Schulte And Coerce Citi To Comply With Its Order.**

The civil contempt powers under §105(a) empower this Court to sanction the offending party. Such sanctions "must either be compensatory or designed to coerce compliance." *Dyer*, 322 F.3d at 1192; *See also: Am. Airlines Inc. v. Allied Pilots Ass'n,* 228 F.3d 574, 585 (5th Cir.2000) ("Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complaint for losses sustained."). As explained in *Dyer*, the sanctions associated with civil contempt include, compensatory damages, attorney fees, and the offending creditor's compliance. *Id.* at 1193 (citing *Walls v. Wells Fargo Bank*, 276 F.3d 502, 507 (9th Cir. 2002). *Dyer* also concluded that "relatively mild noncompensatory fines" might be necessary under some circumstances, and within the Court's inherent power, but ultimately rejected any ability for imposition of "serious" punitive sanctions. *Id.* at 1194-95.

The contempt authority conferred on bankruptcy courts is a *civil* contempt authority. As such, it authorizes only *civil* sanctions as available remedies. *In re Dyer*, 322 F.3d 1191. The Ninth Circuit has explained the difference between civil sanctions and criminal sanctions: Civil penalties must either be compensatory or designed to coerce compliance. *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.,* 244 F.3d 1128, 1137-38 (9th Cir.2001). Compensatory civil sanctions include actual damages such as attorneys fees, costs and emotional distress. *See In re Dawson*, 390 F.3d 1139, 1148 (9th Cir. 2004). Coercive sanctions are used to coerce or compel compliance with court orders and should be awarded to the party, as opposed the court. *See F.J. Hanshaw*, 244 F.3d at 1138; *See also Int'l Union, United Mine Workers of Am. v. Bagwell,* 512 U.S. 821, 827-34 (1994).

**IV**

**Conclusion**

It is clear, that Citi Mortgage Inc, violated the automatic stay. This is a case which warrants the imposition of sanctions, damages and an award of attorney's fees.

WHEREFORE, the Debtor respectfully requests an order;

1. That Citi violated the automatic stay under §362, a Court order, the confirmed plan, and the discharge injunction under §524(a)(2);

2. Sanctioning Citi under §362(k)(1) §105(a) or its inherent authority in an amount to be determined at a hearing;

3. Awarding Ms. Schulte emotional distress damages in an amount to be determined at a hearing;

4. Awarding the Debtor attorney fees and costs under §362(k)(1), §105(a) or its inherent authority in an amount to be determined in a hearing;

5. Awarding the Debtor actual damages and costs in an amount to be determined in a hearing;

6. Awarding the Debtor punitive damages;

7. Holding a separate hearing on sanctions, actual damages, emotional distress damages, punitive damages, and attorney fees;

8. Any other relief deemed just and proper;

DATED this 4th day of September, 2020.

RESPECTFULLY SUBMITTED:

/S/CHRISTOPHER P. BURKE, ESQ.
CHRISTOPHER P. BURKE, ESQ.
218 S. Maryland Parkway
Las Vegas, Nevada 89101
(702) 385-7987