EDDIE R. JIMENEZ (SBN 10376)
ejimenez@aldridgepite.com
**ALDRIDGE PITE, LLP**
7220 South Cimarron Road, Suite 140
Las Vegas, NV 89113
Telephone: (858) 750-7600
Facsimile:  (619) 590-1385

**Mailing Address**:
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, California 92177-0933

Attorneys for CitiMortgage, Inc.

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re: MELANI SCHULTE and WILLIAM SCHULTE,<br><br><br>2704 SATTLEY LLC,<br>HOT ENDEAVOR LLC,<br>1341 MINUET LLC,<br>1708 PLATO PICO LLC,<br>2228 WARM WALNUT LLC,<br>9425 VALLEY HILLS LLC,<br>9500 ASPEN GLOW LLC,<br>5218 MISTY MORNING LLC,<br>CHERISH LLC,<br>SABRECO Inc.,<br>KEEP SAFE LLC | Case No.: 09-29123-MKN<br><br>Chapter 11<br><br>Jointly Administered with:<br><br>09-27238-BAM<br>09-27909-BAM<br>09-27910-BAM<br>09-27911-BAM<br>09-27912-BAM<br>09-27913-BAM<br>09-27914-BAM<br>09-27916-BAM<br>09-28513-BAM<br>09-31584-BAM<br>09-31585-BAM<br><br>**CITIMORTGAGE, INC.'S RESPONSE TO DEBTOR'S AMENDED MOTION FOR CONTEMPT FOR VIOLATION OF THE AUTOMATIC STAY AND DISCHARGE INJUNCTION, FAILING TO COMPLY WTH COURT ORDER AND THE CONFIRMED PLAN AND FOR DAMAGES INCLUDING ATTORNEYS FEES AGAINST CREDITOR, CITIMORTGAGE INC. [DKT No. 1283, 1289]**<br><br>**Hearing**:<br>Date: November 18, 2020<br>Time: 9:30 a.m.<br>Judge: Hon. Mike K. Nakagawa |

**CITI MORTGAGE, INC.'S RESPONSE TO DEBTOR'S MOTION FOR CONTEMPT**

1    CitiMortgage, Inc. ("Citi") hereby files its *Response to Debtor's Amended Motion for*
2    *Contempt for Violation of the Automatic Stay and Discharge Injunction and Failure to Comply with*
3    *a Court Order and the Confirmed Plan and for Damages* ("Motion for Contempt") [Dockets 1283,
4    1289], Declaration of CitiMortgage, Inc. ("Citi Declaration"), Declaration of Cenlar FSB ("Cenlar
5    Declaration"), and related Exhibits ("Exhibits") in Support of its Response (collectively, the
6    "Response").

7    /././

8    /././

9    /././

10    /././

11    /././

12    /././

13    /././

14    /././

15    /././

16    /././

17    /././

18    /././

19    /././

20    /././

21    /././

22    /././

23    /././

24    /././

25    /././

26    /././

27    /././

28    /././

1

**TABLE OF CONTENTS**

I. INTRODUCTION.................................................................................................- 3 -

II. STATEMENT OF FACTS...................................................................................- 5 -

   A.  LOAN HISTORY .........................................................................................- 5 -

   B.  THE FIRST BANKRUPTCY CASE ...........................................................- 6 -

   C.  THE SECOND BANKRUPTCY CASE ......................................................- 7 -

   D.  THE THIRD BANKRUPTCY CASE ..........................................................- 7 -

   E.  THE MOTION FOR CONTEMPT .............................................................- 8 -

III.  ARGUMENT ...................................................................................................- 8 -

   A.  CITI SHOULD NOT BE HELD IN CONTEMPT UNDER 11 U.S.C. § 105 AS IT IS IN
       COMPLIANCE WITH THE CONFIRMATION ORDER AND DISCHARGE ORDER- 8 -

       1. Legal Standard..................................................................................- 8 -

       2. Citi is in Compliance with the Confirmation Order and Discharge Order: .................- 9 -

   B.  CITI DID NOT VIOLATE THE AUTOMATIC STAY ................................- 10 -

       1. Legal Standard..................................................................................- 10 -

       2. The Automatic Stay Terminated Upon Entry of the Confirmation Order .................- 11 -

   C.  SANCTIONS ARE NOT APPROPRIATE UNDER THE COURT'S INHERENT
       AUTHORITY AS CITI DID NOT ACT IN BAD FAITH OR WITH WILLFUL
       MISCONDUCT ..........................................................................................- 12 -

       1. Legal Standard..................................................................................- 12 -

       2. Citi Did Not Intentionally Violate a Court Order to Warrant Sanctions or Contempt- 12 -

   D.  DEBTOR IS NOT ENTITLED TO DAMAGES FOR VIOLATION OF THE DISCHARGE
       INJUNCTION..............................................................................................- 13 -

       1. Legal Standard..................................................................................- 13 -

       2. Citi's Actions were Objectively Reasonable Given the Debtor's Default under the
          Confirmed Plan ...........................................................................- 14 -

       3. Debtor Has Failed to Demonstrate She Suffered Damages or that    Citi Caused Said
          Damages ......................................................................................- 17 -

          a. Actual Damages............................................................................- 17 -

          b. Emotional Damages:.....................................................................- 18 -

          c. Attorneys' Fees and Costs ............................................................- 19 -

       4. Debtor Failed to Mitigate Damages ..................................................- 20 -

       5. Punitive Damages are Not Appropriate in this Case.........................- 21 -

i

**CITI MORTGAGE, INC.'S RESPONSE TO DEBTOR'S MOTION FOR CONTEMPT**

IV.  CONCLUSION ......................................................................................- 21 -

# TABLE OF AUTHORITIES

**Cases**

*Chambers v. NASCO, Inc.,* 501 U.S. 32 (1991).......................................- 13 -

*Dawson v. Washington Mutual Bank (In re Dawson)*, 390 F.3d 1139, 1148 (9th Cir. 2004)
........................................................................................- 20 -

*Dyer*, 322 F.3d at 1194 .................................................................- 24 -

*Espinosa v. United Student Aid Funds, Inc.,* 553 F.3d 1193, 1205 n. 7 (9th Cir.2008).- 15 -

*F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.,*
    244 F.3d 1128, 1137-38 (9th Cir. 2001) ...................................... - 9 -

*Fink v. Gomez*, 239 F.3d 989, 992-93 (9th Cir. 2001) .........................- 13 -

*Fink v. Gomez*, 239 F.3d 989, 991-92 (9th Cir. 2001) .........................- 13 -

*Fink*, 239 F.3d at 992-93..............................................................- 14 -

*In re 1601 W. Sunnyside Dr. #106, LLC*, 2010 WL 5481080, at *6 (Bankr. D. Idaho Dec.
    30, 2010) ........................................................................- 20 -

*In re Bennett*, 298 F.3d 1059, 1069 (9th Cir. 2002)...........................- 8 -, - 9 -

*In re Bloom*, 875 F.2d at 228 ........................................................- 24 -

*In re Brock Utils. & Grading, Inc.,* 185 B.R. 719 (Bankr.E.D.N.C.1995) ...................- 22 -

*In re Craine,*206 B.R. 594 (Bankr.M.D.Fla.1997) ...............................- 22 -

*In re Dyer*, 322 F.3d at 1193 (citing *Walls v. Wells Fargo Bank, N.A.,* 276 F.3d 502,507
    (9th Cir.2002)..................................................................- 19 -

*In re Houlik*, 481 B.R. 661, 673 (10th Cir. BAP 2012). .......................- 12 -

*In re McHenry*, 179 B.R. 165, 168 (9th Cir. BAP 1995)........................- 24 -

*In re McLean,* 794 F.3d at 1322......................................................- 17 -

*In re Pace,* 67 F.3d 187, 193 (9th Cir.1995)......................................- 15 -

*In re Rainbow Magazine*, 77 F.3d 278, 284 (9th Cir. 1996)...................- 13 -

*In re Roman*, 283 B.R. 1, 12 (B.A.P. 9th Cir. 2002)..................- 22 -, - 24 -

Marino, 577 B.R. 772, 784 ....................................................- 16 -, - 18 -

*Marino,* 577 B.R. 772, 784. ...........................................................

*McClaran v. Plastic Indus., Inc.,* 97 F.3d 347, 361 (9th Cir.1996) .............................- 20 -

*McHenry,* 179 B.R. at 168 ............................................................- 21 -

*McLaughlin,* 96 B.R. at 563 (reducing fees)......................................- 22 -

*Perry v. O-Donnell*, 759 F.2d 702, 706 (9th Cir. 1985). .........................- 22 -

*Renwick v. Bennett (In re Bennett),* 298 F.3d 1059, 1069 (9th Cir.2002) ..................... - 15 -

*Roadway Express, Inc. v. Piper,* 447 U.S. 752 (1980) .................................................. - 13 -

*Shadduck v. Rodolakis,* 221 B.R. 573, 585 (D.Mass.1998)........................................... - 21 -

*Silver Sage Partners, Ltd. v. City of Desert Hot Springs,* 251 F.3d 814, 824 (9th Cir.2001)

.................................................................................................................................... - 19 -

*Sucre v. MIC Leasing Corp. (In re Sucre),* 226 B.R. 340, 351 (Bankr.S.D.N.Y.1998) - 21 -

*Taggart v. Lorenzen,* 139 S.Ct. 1795 (2019) ................................................................. - 12 -

*Taggart,* 139 S.Ct. 1795, 1804........................................................................................ - 16 -

*United States v. Arkison (In re Cascade Roads, Inc.),* 34 F.3d 756, 767 (9th Cir.1994)

................................................................................................................................... ...- 15 -

*United States v. Price,* 176 B.R. 807, 808 (N.D.Ill.1993), *aff'd,* 42 F.3d 1068 (7th

Cir.1994) .................................................................................................................... - 21 -

*Walls v. Wells Fargo Bank, N.A.,* 276 F.3d 502, 207 (9th Cir. 2002) ....................- 8 -, - 9 -

*Walls v. Wells Fargo Bank, N.A.,* 276 F.3d 502, 507 (9th Cir. 2002) .......................... - 21 -

*Walls v. Wells Fargo Bank, N.A.,* 276 F.3d 502, 507 (9th Cir.2002). .......................... - 15 -

*Walls,* 276 F.3d at 507 ...................................................................................................... - 9 -

**Statutes**

11 U.S.C. § 105 ................................................................................................................. - 8 -

11 U.S.C. § 105(a). ............................................................................................................ - 9 -

11 U.S.C. § 330(a)(1)(A) ................................................................................................. - 19 -

11 U.S.C. § 362(k)(1), ..................................................................................................... - 21 -

11 U.S.C. § 524(a)(2) (2006). ......................................................................................... - 14 -

11 U.S.C. § 524(f) ........................................................................................................... - 16 -

*11 U.S.C. § 524.* .............................................................................................................. - 14 -

11 U.S.C. §§ 524 .............................................................................................................. - 17 -

11 U.S.C. §362(c) ............................................................................................................ - 11 -

11 U.S.C. §362(c)(1)........................................................................................................ - 11 -

11 U.S.C. §362(c)(2)(C)................................................................................................... - 11 -

**Other Authorities**

4 *Collier on Bankruptcy* ¶ 524.02[2][c] (15th ed. 1999) ............................................... - 19 -

Black's Law Dictionary 445 (9th ed.2009) ..................................................................... - 18 -

# I.    **INTRODUCTION**

On October 11, 2009, William R. Schulte and Melani Schulte (the "Borrower" or "Debtor") filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code, Case No. 09-29123-MKN (the "First Case"). On March 8, 2011, the Court entered an Order Confirming a Plan in the First Bankruptcy Case (the "Confirmation Order" or ("Confirmed Plan"). The Confirmation Order effectively modified secured claims encumbering the Debtor's thirty-two (32) rental properties, including the Subject Loan previously serviced by Citi.

Following entry of the Confirmation Order in the First Case, it is uncontroverted the Debtor defaulted under the terms of the Confirmed Plan by failing to make the required monthly mortgage payments and escrow payments to Citi. At the same time, Debtor alleged many creditors failed to comply with the Confirmation Order by correctly updating records to reflect the modification of claims in the Confirmed Plan. Citi is currently in compliance with the Confirmation Order from the First Case. Subsequently, the Debtor filed two additional bankruptcy cases under the name of her controlled entity, Schulte Properties, LLC ("SPLLC"). Meanwhile Citi transferred sub-servicing of the Subject Loan to Cenlar FSB ("Cenlar") in April 2019.

The ongoing dispute between the Parties has encompassed three (3) bankruptcy cases spanning a decade and multiple service transfers of the Debtor's loan(s) over ten (10) years. As a result, Citi requested the Debtor's participation in the Court's Judicial Settlement Conference and the Court entered an [Amended] Order Scheduling Settlement Conference ("Amended Settlement Order"). (*See* Third Case, Dkt No. 734). The Judicial Settlement Conference is scheduled for October 6, 2020, in the Third Case.

Notwithstanding the Court ordering the Parties to participate in the Judicial Settlement Conference, on September 4, 2020, Debtor filed the instant Motion for Contempt against Citi related to the Subject Loan in First Case. In the Motion for Contempt, Debtor alleges Citi failed to comply with the Confirmation Order in the First Case, violated the Discharge Order, and violated the automatic stay. Due to the alleged violations, Debtor seeks actual [unspecified] damages against Citi, including emotional distress damages under §§105, 362(k), and 524. Further, Debtor requested

punitive damages, sanctions, and an award of attorneys' fees and costs incurred, with amounts to be determined at a hearing.

First, Citi asserts the Motion for Contempt should be stayed until the Parties exhaust all mitigation options at the court-ordered Judicial Settlement Conference. Citi is prepared to participate in the Judicial Settlement Conference in good faith. Citi, and the approximately eight (8) other creditors participating in the Judicial Settlement Conference, seek a global resolution of all issues and claims related to the First Case, including any claims asserted by the Debtor in the Motion for Contempt. Accordingly, the Court should continue any proceedings on the Motion for Contempt until the conclusion of the Judicial Settlement Conference in the Third Case.

Second, Citi asserts it is currently in compliance with the Confirmation Order from the First Case. While the Debtor submitted monthly informational statements from years ago in an attempt to demonstrate Citi's non-compliance with the Confirmed Plan, Debtor failed to submit any recent statements, which clearly show Citi's compliance (and the Debtor's default). As Citi is in compliance with the Confirmation Order it is no longer necessary or appropriate to hold Citi in contempt to force compliance with the terms of a court order under §§ 105(a) or 524.

Third, Citi asserts the automatic stay terminated upon entry of the Confirmation Order in 2011 or, at the latest, upon entry of the Discharge Order in 2015. There is currently no automatic stay in effect to support a claim for an ongoing stay violation. Additionally, Debtor attempts to classify herself with Chapter 7 debtors who receive a discharge and there is no expectation of receiving communications/correspondence creditors. Debtor and Citi have an ongoing contractual relationship based on the terms of her Confirmed Plan. A contract she immediately breached when failing to make payments on the modified loan. As such, Citi believed it was reasonable for it to provide Debtor information regarding the status of the Subject Loan and ascertain whether Debtor needed loss mitigation assistance based on her default under the terms of the confirmed Chapter 11 Plan. Additionally, based on the terms of the Debtor's Chapter 11 Plan, Citi it was objectively reasonable for Citi to believe the automatic stay terminated upon entry of the Confirmation Order and/or Discharge Order.

Fourth, Citi did not act in bad faith or with willful misconduct to warrant sanctions under § 105(a) or punitive damages. To the contrary, Citi has acted in good faith to resolve this matter, most recently, through the Judicial Settlement Conference. However, the Debtor has acted in bad faith by continuing to collect rent from the Property for years without making payments on the Loan.

Fifth, Citi asserts any statements sent to the Debtor were: (i) for informational purposes only based on the Debtor's default under the Confirmed Plan, (ii) not sent with an intention to collect a debt from the Debtor personally, but rather to enforce it in rem rights to the Property based on the Debtor's default under the Confirmed Plan (iii) sent to assist the Debtor with potential loss mitigation based on Debtor's default under the Confirmed Plan; and (iv), were objectively reasonably given the Debtor's default under the Confirmed Plan.

Finally, even assuming *arguendo* Debtor could satisfy the elements for a willful violation of the discharge injunction under § 524, stay violation under § 362, or that the Court finds Citi in contempt under § 105(a), Debtor has failed to establish she is entitled to any damages. Indeed, the Debtor has successfully moved the Property, and approximately 30 other properties, in and out of bankruptcies while transferring the properties to shell entities for the benefit of the automatic stay and in furtherance of her scheme to collect rents while failing make to payments on the loans. The Debtor has pocketed hundreds of thousands of dollars over the last ten years without making payments on the loans secured by her properties. For Debtor to now seek redress from the Court as an individual, while seeking to also obtain relief via an LLC in the Third Case, all with soaking unclean hands over the last ten years is disingenuous at best and in bad faith at worst.

## II. STATEMENT OF FACTS

### A.    LOAN HISTORY

On March 5, 1993, Edward Wendell Porta and Patricia Porta executed a promissory note in the principal sum of $126,056.00 (the "Note"). The Note reflects it was specially indorsed to Citi. Subsequently, William Schulte and Melani Schulte executed an Assumption Agreement Creating Liability to the Holder of the Note. (*See* **Exhibit A**, Declaration of CitiMortgage, Inc. ("Citi Declaration"); ¶4).

1   The Note is secured by a deed of trust (the "Deed of Trust") encumbering the real property

2   located at 9500 Aspen Glow Drive, Las Vegas, NV  89134 ("Property"). (*See* Exhibit A, Citi

3   Declaration, ¶4).  The Note and Deed of Trust are correctly referenced as the "Subject Loan."

4   The Deed of Trust was assigned to Citi. (*See* Exhibit A, Citi Declaration, ¶4).

5   On April 1, 2019, Citi transferred sub-servicing of the Subject Loan to Cenlar, FSB

6   ("Cenlar"). (*See* Exhibit A, Citi Declaration, ¶7 and **Exhibit B**, Declaration of Cenlar FSB ("Cenlar

7   Declaration"), ¶1).

8   **B.    THE FIRST BANKRUPTCY CASE**

9   On October 11, 2009, Debtor filed the First Case as Case No. 09-29123.

10   On March 18, 2011, the Court entered a *Stipulated Order Regarding the Treatment of*

11   *Creditor's Claim* ("Stipulation" and "Order") in the First Case. (*See* First Case, Dkt No 917, 925).

12   The Stipulation provided Citi with a secured claim of $94,646.23 amortized over thirty (30) years

13   at 5.25% interest per annum. Principal and Interest Payments of $522.64 were to commence March

14   1, 2011 and continue each month thereafter. Further, the Stipulation provided the Loan shall remain

15   escrowed, with the Debtor responsible for making monthly escrow payments to Citi for taxes and

16   insurance. (*See* **Exhibit C**, Stipulation).

17   On March 8, 2011, the Court entered the Confirmation Order in the First Case, which

18   modified the Subject Loan as outlined in the Stipulation. (*See* First Case, Dkt No 912).

19   On December 15, 2015, Debtor obtained a Chapter 11 discharge in the First Case.  (*See* First

20   Case, Dkt No 1181-2).

21   Citi verified completion of system updates to reflect the terms of the Confirmed Plan. Citi

22   is currently in compliance with the Confirmation Order from the First Case. (*See* Exhibit A, Citi

23   Declaration, ¶5, Exhibit B, Cenlar Declaration, ¶5).

24   The monthly statements ("Cenlar Statements") sent to the Debtor for the past twelve (12)

25   months reflect the terms of the Confirmed Plan, including the correct interest rate (5.25%) and

26   Principal and Interest Payment amount ($522.64). (*See* **Exhibit D**, Cenlar Statements, Exhibit B,

27   Cenlar Declaration, ¶6).

28

The Subject Loan reflects a default based on the Debtor's failure to make all required Principal, Interest, and Escrow Payments under the Confirmed Plan. (*See* Exhibit B, Cenlar Declaration, ¶7).

As of October 6, 2020, the approximate payoff owed on the Subject Loan totals $122,434.33. As of October 6, 2020, the approximate contractual reinstatement on the Subject Loan totals $57,584.57. (*See* Exhibit B, Cenlar Declaration, ¶8).

**C.    THE SECOND BANKRUPTCY CASE**

Thereafter, Debtor allegedly transferred her interest in the Property to Schulte Properties, LLC.

Five (5) days after registering the entity with the Nevada Secretary of State, on May 31, 2017, SPLLC, filed a second Chapter 11 Bankruptcy Case and was assigned case number 17-12883 (the "Second Case"). Debtor, Melani Schulte signed the petition as Managing Member of the SPLLC. (*See* Second Case, Dkt. No. 1).

SPLLC failed to confirm a Chapter 11 Plan in the Second Case. On January 16, 2018, the Court entered an Order Dismissing the Second Case. (*See* Second Case, Dkt. No. 99).

**D.    THE THIRD BANKRUPTCY CASE**

Several months later, on May 10, 2018, SPLLC commenced a third Bankruptcy Case by filing a third voluntary petition under Chapter 11 of the Bankruptcy Code and was assigned case number 18-12734-mkn (the "Third Case"). Debtor, Melani Schulte signed the petition as Managing Member of SPLLC. (Dkt No. 1).

On January 30, 2019, Citi filed *its Amended Proof of Claim* reflecting a secured claim of $135,449.71, including *pre-petition* arrears of $50,926.11 (the "Claim"). (*See* **Exhibit E**, Third Case, Claim No. 17-2). The Proof of Claim indicates Citi updated its system to reflect the treatment of its Claim in the Plan from the First Case. (*See* Exhibit A, Citi Declaration, ¶5-6).

On April 7, 2020, Citi met and conferred with Debtor's counsel regarding the possibility of a global settlement of all claims, including mutual participation in the court's judicial settlement program.

1    On September 16, 2020, the Court entered an [Amended] Order Scheduling Settlement

2  Conference ("<u>Amended Settlement Order</u>"). (Dkt No. 734). The Judicial Settlement Conference is

3  scheduled for October 6, 2020.

4  **E.     THE MOTION FOR CONTEMPT**

5    After the Court entered the First Settlement Order, Debtor filed the Motion for Contempt

6  against Citi in her First Case (First Case, Dkt No. 1283, 1289). Debtor alleges Citi failed to comply

7  with the Confirmation Order in the First Case, violated the Discharge Order, and violated the

8  automatic stay. The Motion for Contempt is supported solely with informational statements

9  allegedly sent by Citi to the Debtor following entry of the Confirmation Order. Due to the alleged

10  violations, Debtor seeks actual [unspecified] damages against Citi, including emotional distress

11  damages under §§105, 362(k), and 524. Further, Debtor requested punitive damages, sanctions, and

12  an award of attorneys' fees and costs incurred, with amounts to be determined. In support of the

13  allegations, Debtor attached copies of informational statements allegedly received from Citi

14  following entry of the Confirmation Order in the First Case.

15                            **III.    <u>ARGUMENT</u>**

16  **A.  CITI SHOULD NOT BE HELD IN CONTEMPT UNDER 11 U.S.C. § 105 AS IT IS
      IN COMPLIANCE WITH THE CONFIRMATION ORDER AND DISCHARGE
17      ORDER**

18  **1.  Legal Standard**

19    A party injured by a violation of a discharge injunction has no private cause of action for

20  damages under § 524 or § 105. *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 207 (9th Cir. 2002).

21  Rather, a violation under § 524(a) is enforced through the bankruptcy court's contempt authority

22  under §105(a). *In re Bennett*, 298 F.3d 1059, 1069 (9th Cir. 2002).

23    The court's contempt authority under §105(a) is only a civil contempt authority and allows

24  only for civil sanctions as the appropriate remedy. Pursuant to 11 U.S.C. § 105, the court is

25  empowered with discretion to take any action or make any determination  necessary or appropriate

26  to enforce or implement court orders or rules, or to prevent an abuse of process. 11 U.S.C. § 105(a).

27  Section 105(a) authorizes ***only*** such remedies as are ***necessary and appropriate*** to carry out the

28  provisions of Bankruptcy Code. *See Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 207 (9th Cir.

2002) (emphasis added). In a civil contempt proceeding, the moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. *In re Bennett*, 298 F.3d 1059, 1069 (9th Cir. 2002).   However, civil penalties must either be compensatory or designed to coerce compliance. *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1137-38 (9th Cir. 2001). Indeed the power of the bankruptcy court to contemn should be exercised sparingly so long as justice can be done. *In re Mallow Hotel Corp.*, 18 F.Supp. 869 (M.D. Pa. 1937).

**2.  Citi is in Compliance with the Confirmation Order and Discharge Order**:

The language of § 105(a) authorizes ***only*** those remedies ***necessary*** to enforce the Bankruptcy Code. *Walls*, 276 F.3d at 507 (emphasis added). As discussed above, Citi updated its system to reflect the modification of its claim in the First Plan. Citi did not intentionally violate the terms of the Confirmation Order or Discharge Order as asserted by the Debtor. Indeed, Citi believed it was in compliance with the First Plan.

After the filing of the Third Case, wherein the Debtor made blanket allegations of creditor non-compliance with the Confirmed Plan from the First Case, Citi audited the Subject Loan to verify completion of system updates to reflect the terms of the Confirmed Plan. Citi is currently in compliance with the Confirmation Order from the First Case. (*See* Exhibit A, Citi Declaration, ¶5). The monthly statements sent to the Debtor for the past twelve (12) months reflect the terms of the Confirmed Plan, including the correct interest rate (5.25%) and Principal and Interest Payment amount ($522.64). (*See* Exhibit B, Cenlar Declaration, ¶6 and Exhibit D, Cenlar Statements). Further, Citi filed its Amended Proof of Claim in the Third Case reflecting a secured claim of $135,449.71, including *pre-petition* arrears of $50,926.11. (*See* Exhibit E, Claim 17-2). The Proof of Claim indicates Citi updated its system to reflect the treatment of its Claim in the Plan from the First Case. Specifically, the Claim reflected a secured claim of $94,646.23 amortized over thirty (30) years at 5.25% interest per annum with Principal and Interest Payments of $522.64 plus escrow payments for taxes and insurance. (*See* Exhibit E, Claim 17-2).

The Subject Loan reflects a default as ***the Debtor*** failed to comply with the Confirmed Plan by making all Principal, Interest, and Escrow Payments to Citi. (*See* Exhibit A, Citi Declaration, ¶6

and Exhibit B, Cenlar Declaration, ¶7). As of October 6, 2020, the approximate payoff owed on the Subject Loan totals $122,434.33. As of October 6, 2020, the approximate contractual reinstatement on the Subject Loan totals $57,584.57. (*See* Exhibit B, Cenlar Declaration, ¶8).

While Citi submitted evidence to demonstrate its compliance with the Confirmed Plan (and the Debtor's default), Debtor failed to submit evidence to suggest Citi is currently in violation of the Confirmation Order (or any other court order). Nor has the Debtor objected to Citi's Proof of Claim in the Third Case. Cherry-picking informational statements from nine years ago to show non-compliance now is unreasonable and unproductive. Moreover, even assuming arguendo Debtor can establish Citi *previously* sent informational statements with outdated figures following entry of the Confirmation Order, Debtor cannot establish Citi is *currently* in violation of a court order, or that she suffered damages as a result of alleged non-compliance. Indeed, the Debtor has continued to receive the benefit of collecting rent over ten years without making payments on the Loan. Additionally, in violation of the Confirmed Plan, the Debtor has failed to maintain insurance on the Subject Property or pay the taxes due regarding the Subject Property. As such. Citi has been forced to insure the Subject Property against loss and pay the taxes to protect its priority interest in the Subject Property. All this while the Debtor pockets rent, makes incomplete payments, and remains in violation of the Confirmed Plan by failing to pay taxes and insurance.

Citi did not intentionally violate the terms of the Confirmed Plan or Discharge Order as asserted in the Debtor's Motion for Contempt. While Debtor may assert Citi failed to *immediately* update its system to reflect the modification of the Subject Loan from First Case, Citi has in fact updated its system to reflect the modification of the Subject Loan. The Confirmation Order clearly did not include a deadline for creditors to update their systems to reflect the new terms. Regardless, Citi has updated its system to reflect the modification of the Subject Loan. Thus, Citi is currently in compliance with the terms of the Confirmed Plan and Discharge Order. As such, it is not necessary or appropriate to hold Citi in contempt to force compliance with the terms of a court order under § 105(a). Accordingly, the Debtors' Motion for Contempt must be denied.

**B. CITI DID NOT VIOLATE THE AUTOMATIC STAY**

    **1. Legal Standard**

11 U.S.C. §362(c) provides:

    (1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate;

    (2) the stay of any other act under subsection (a) of this section continues until the earliest of—

        (A) the time the case is closed;
        (B) the time the case is dismissed; or
        (C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied.

11 U.S.C. §362(c). Pursuant to § 362(c)(1), the stay of an act against property of the estate continues only until such property is no longer property of the estate. 11 U.S.C. §362(c)(1). The automatic stay terminates upon confirmation pursuant to 11 U.S.C. §362(c)(1) as a Chapter 11 Plan typically revests property of the estate with the debtor. *In re Houlik*, 481 B.R. 661, 673 (10th Cir. BAP 2012).

**2.  The Automatic Stay Terminated Upon Entry of the Confirmation Order**

Debtor alleges Citi violated the automatic stay of §362(a) by sending inaccurate informational statements following entry of the Confirmation Order and Discharge Order. As a result, Debtor alleges she is entitled to damages under §362(k) based on a willful and ongoing stay violation. However, Debtor's Confirmed Plan expressly provided "[a]fter confirmation of the Plan, all property of the Debtors shall vest in the reorganized Debtors and the Holding Company." (*See* Plan, §6.05). As a result, the automatic stay terminated upon confirmation of the Plan on March 8, 2011. 11 U.S.C. §362(c)(1). Further, even assuming arguendo the Court concludes the automatic stay did not terminate upon entry of the Confirmation Order on March 8, 2011, the automatic stay terminated, at the latest, upon entry of the Discharge Order on December 15, 2015. 11 U.S.C. §362(c)(2)(C). As a result, there is no stay violation to support a claim for damages under §362(k).

Citi did not intentionally or willfully violate the automatic stay. Rather, Citi believed its actions were objectively reasonable in furtherance of its *in rem* rights and did not violate the stay. (*See Taggart v. Lorenzen*, 139 S.Ct. 1795 (2019). Citi completed system adjustments following entry of a Confirmation Order. As a result, Debtor has failed to establish Citi willfully violated the

automatic following entry of the Confirmation Order or that damages are appropriate under §362(k) for an ongoing stay violation. Accordingly, the Debtor's Motion for Contempt must be denied.

## C. SANCTIONS ARE NOT APPROPRIATE UNDER THE COURT'S INHERENT AUTHORITY AS CITI DID NOT ACT IN BAD FAITH OR WITH WILLFUL MISCONDUCT

### 1. Legal Standard

In extreme cases, where conduct rises to the level of bad faith, the bankruptcy court may also impose sanctions under its inherent sanction authority. *In re Rainbow Magazine*, 77 F.3d 278, 284 (9th Cir. 1996). The inherent sanction authority allows a bankruptcy court to deter and provide compensation for a broad range of improper litigation tactics. *Fink v. Gomez*, 239 F.3d 989, 992-93 (9th Cir. 2001). "The inherent sanction authority differs from the civil contempt authority in an additional respect as well. Before imposing sanctions under its inherent sanctioning authority, a court must make an explicit finding of bad faith or willful misconduct . . . [which] consists of something more egregious than mere negligence or recklessness." *Id* at 993-94. The Supreme Court in *Roadway Express, Inc. v. Piper,* 447 U.S. 752 (1980), delivered the definitive summary of the basis on which a federal court may levy sanctions under its inherent power. The Court reiterated the federal courts' inherent power to levy sanctions, including attorneys' fees, for "willful disobedience of a court order ... or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons...." *Id.* at 766. The Court reaffirmed the *Roadway* principles in *Chambers v. NASCO, Inc.,* 501 U.S. 32 (1991), emphasizing the continuing need for resort to the court's inherent power, because it is "both broader and narrower than other means of imposing sanctions." *Id.* at 46. On the one hand, the inherent power "extends to a full range of litigation abuses." On the other, the litigant must have "engaged in bad faith or willful disobedience of a court's order." *Id.* at 46-47, 111 S.Ct. 2123. In *Chambers,* the Court left no question that a court may levy fee-based sanctions when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Fink v. Gomez*, 239 F.3d 989, 991-92 (9th Cir. 2001).

### 2. Citi Did Not Intentionally Violate a Court Order to Warrant Sanctions or Contempt

1    Debtor failed to demonstrate Citi engaged in clearly frivolous or legally unreasonable

2    conduct to warrant sanctions. Before imposing sanctions under its inherent sanctioning authority, a

3    court must make an explicit finding of bad faith or willful misconduct . . . [which] consists of

4    something more egregious than mere negligence or recklessness." *Fink*, 239 F.3d at 992-93.

5    As discussed above, Citi completed an audit to verify its compliance with the Confirmation

6    Order from the First Case. (*See* Exhibit A, Citi Declaration, ¶5). Citi did not engage in vexatious

7    conduct, nor did it willfully violate an order of the court to warrant the extreme and extraordinary

8    remedy of court-ordered sanctions. The Debtor herself does not allege Citi engaged in unreasonable

9    conduct. Debtor's entire Motion for Contempt is based on written communications allegedly

10   remitted by Citi. However, the communications specifically advised they are for informational

11   purposes, in furtherance of Citi's secured interest in the Property, and offering Debtor loss

12   mitigation assistance. The Debtor does not allege she ever contacted Citi and requested Citi no

13   longer send her any correspondence/communications nor does she allege any Citi took any other

14   actions allegedly in violation of the automatic stay, discharge injunction, or Plan.  Indeed, following

15   verification of system adjustments to reflect the Confirmed Plan terms, Citi reached out to the

16   Debtor to resolved the default on account and the treatment of the Claim in the Third Case. Further,

17   Citi requested the Debtor's participation in the Court's Judicial Settlement Conference. Citi is

18   prepared to participate in the Judicial Settlement Conference in good faith. Citi seeks a global

19   resolution of all issues and claims related to the First Case, including any claims asserted by the

20   Debtor in the Motion for Contempt.

21   Therefore, Citi did not act in bad faith or with willful misconduct to warrant sanctions under

22   § 105(a).  Accordingly, the Motion for Contempt must be denied.

23   **D.    DEBTOR IS NOT ENTITLED TO DAMAGES FOR VIOLATION OF THE
24        DISCHARGE INJUNCTION**

25   **1.    Legal Standard**

26   A discharge "operates as an injunction against the commencement or continuation of an

27   action ... to collect, recover or offset any [discharged] debt as a personal liability of the debtor." 11

28   U.S.C. § 524(a)(2) (2006). A party that knowingly violates the discharge injunction can be held in

contempt under § 105(a). *Renwick v. Bennett (In re Bennett),* 298 F.3d 1059, 1069 (9th Cir.2002); *Walls v. Wells Fargo Bank, N.A.,* 276 F.3d 502, 507 (9th Cir.2002). Section 105(a) permits the bankruptcy court to "issue any order ... that is necessary or appropriate to carry out the provisions *176 of this title." An award of damages under section 105(a) is discretionary. *United States v. Arkison (In re Cascade Roads, Inc.),* 34 F.3d 756, 767 (9th Cir.1994); *In re Pace,* 67 F.3d 187, 193 (9th Cir.1995).

The party seeking contempt sanctions for violation of the discharge injunction has the burden of proving, by clear and convincing evidence, that the sanctions are justified. *Espinosa v. United Student Aid Funds, Inc.,* 553 F.3d 1193, 1205 n. 7 (9th Cir.2008). Enforcement of a lien is not a violation of the discharge injunction because the discharge injunction by its terms only prohibits efforts to collect debts "as a personal liability of the debtor." *See 11 U.S.C.* § 524. But, "[e]ven if a creditor threatens only to enforce its surviving lien, that threat will violate the discharge injunction **if** the evidence shows that the threat is really an effort to coerce payment of the underlying discharged debt." *See, e.g.,* Marino, 577 B.R. 772, 784 (emphasis added).

Together section 524(a)(2) and 105(a) "authorize a court to impose civil contempt sanctions [for attempting to collect a discharged debt] where there is no objectively reasonable basis for concluding the creditor's conduct might be lawful under the discharge order." *Taggart v. Lorenzen,* 139 S. Ct. 1795, 1801 (2019). As such, a court may only hold a creditor in civil contempt for violating a discharge order if there is no fair ground of doubt as to whether the order barred the creditor's conduct. *Id.* at 1799. Put differently, if there is "fair ground of doubt" as to whether the subject order barred the conduct the violator engaged in, the court has the discretion not to hold the alleged violator in contempt of court. *See Id.* at 1804. Based upon the foregoing, the Debtor must prove by clear and convincing evidence that Citi's alleged actions were in violation of the discharge injunction and there was **no objectively reasonable** basis for to Citi to believe it was not in violation of the discharge injunction.

2.    **Citi's Actions were Objectively Reasonable Given the Debtor's Default under the Confirmed Plan**

1    Under *Taggart,* as noted above, a court "may hold a creditor in civil contempt for

2 violating a discharge order where there is," on an "objective" basis, "not a 'fair ground of

3 doubt' as to whether the creditor's conduct might be lawful under the discharge order."

4 *Taggart,* 139 S.Ct. 1795, 1804 (emphasis added; citation omitted). "Under the fair ground of doubt

5 standard," civil contempt "may be appropriate when the creditor violates

6 a discharge order based on an objectively unreasonable understanding of the discharge

7 order or the statutes that govern its scope." *Id.* at 1802 (emphasis added).

8    First, Debtor does not allege Citi contacted the Debtor directly via telephone in violation of

9 the discharge injunction. Indeed, Debtor's entire case against Citi for alleged violation of the

10 automatic stay and discharge injunction is based solely on the alleged receipt of informational

11 statements in the mail. Debtor alleged the statements contained inaccurate figures prior to

12 completion of system adjustments. Additionally, notwithstanding the litany of cases cited by the

13 Debtor in her Motion for Contempt, this is not a Chapter 7 case where the Debtor has a reasonable

14 belief she is no longer liable for making payments on the loan following a discharge order, or where

15 the Debtor should not expect to receive written correspondence from Citi regarding the Loan. As

16 such, Debtor's feign outrage for receiving the alleged offending correspondence is disingenuous.

17    Second, each statement allegedly sent to the Debtor included a disclaimer advising the

18 Debtor the correspondence was for "informational purposes only" and <u>not</u> an attempt to collect the

19 debt from the Debtor personally, but rather to enforce *in rem* rights against the Property. Debtor has

20 not met her burden of showing that the informational statements were an unlawful debt collection in

21 violation of § 524. The monthly statements were not to pressure Debtor to repay a discharged debt.

22 *In re McLean,* 794 F.3d at 1322. Indeed, the disclaimers were printed in capital letters on bold on

23 the first page of each statement. The statements declared that: "THIS MORTGAGE ACCOUNT

24 STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY, AS THIS DEBT MAY HAVE

25 BEEN INCLUDED IN A BANKRUPTCY ACTION, OR MAY HAVE BEEN DISCHARGED,

26 THIS IS NOT AN ATTEMPT TO COLLECT, RECOVER OR OFFSET THE MORTGAGE

27 INDEBTEDNESS AGAINST YOU PERSONALLY."

28

1        The fact that the statements included an "amount due," "due date," does not diminish the

2    effect of the prominent, clear, and broadly worded disclaimer. Notably, section 524 allows for a

3    debtor to pay back a discharged debt voluntarily. Under 11 U.S.C. § 524(f), "[n]othing contained in

4    subsection (c) or (d) of this section prevents a debtor from voluntarily repaying any debt."  Debtor

5    had the option to repay the amount due under the Confirmed Plan and thereby retain the Property

6    because Citi had not completed a foreclosure on the Property. If we accepted Debtor's argument that

7    the informational statements were unlawful debt collection under § 524, there would be little

8    daylight between (1) a legitimate attempt by Citi to inform Debtor how she could retain the Property

9    and (2) an unlawful attempt at debt collection in violation of the § 524 injunction. Instead, the

10   statutory scheme clearly allows for Citi to send potentially helpful informational statements to the

11   Debtor without simultaneously casting those statements as debt collection. In light of these facts, the

12   informational statements sent by Citi were not designed to have the "objective effect" of

13   "pressur[ing] the debtor to pay a discharged debt," in violation of § 524. While subsequent statements

14   included different disclaimers, each statement properly advised the Debtor of the informational

15   nature of the correspondence and made it clear the statements were not an attempt to collect a debt

16   from the Debtor personally. Accordingly, Citi asserts the informational statements were reasonable

17   given the Debtor's default under the Plan. Citi did not believe the statements violated the discharge

18   injunction, automatic stay, or any other provision of the Bankruptcy Code. Thus, Citi asserts is

19   actions were objectively reasonable.

20       Third, the terms of the Confirmed Plan required ongoing payments post-discharge. As

21   discussed above, the Debtor defaulted on payments under the Confirmed Plan. Accordingly, it was

22   objectively reasonable for Citi to send correspondence to the Debtor with offers of assistance and

23   options for loss mitigation. Further, Citi asserts said communications were in furtherance of the

24   enforcement of its *in rem* rights based on the *Debtor's* failure to make payments under the Confirmed

25   Plan, not in furtherance of an attempt to collect a discharged debt from the Debtor personally (as

26   clearly disclosed on each statement). Enforcement of a lien is not a violation of the discharge

27   injunction because the discharge injunction by its terms only prohibits efforts to collect debts "as a

28   personal liability of the debtor." § 524. *See, e.g., Marino,* 577 B.R. 772, 784.

While the Debtor may argue said statements contained inaccurate figures, the Subject Loan still reflected a default based on the Debtor's failure to make payments. Thus, it was objectively reasonable for Citi to send monthly statements to the Debtor regarding the account status. As the party seeking contempt sanctions, the <u>Debtor</u> has the burden of proof to show by "clear and convincing" evidence that Citi acted unreasonably given her default under the Plan. *FTC v. Affordable Media, LLC,* 179 F.3d 1228, 1239 (9th Cir. 1999). Debtor has failed to meet her burden.

Based on the foregoing, Citi did not knowingly and willfully violate the discharge injunction or automatic stay. Citi had an objectively reasonable belief the automatic stay was no longer in effect, the communications were proper in accordance with the Debtor's Plan and ongoing relationship amongst the parties, and the informational statements were proper and necessary to enforce its *in rem* rights and/or provide the Debtor with potential loss mitigation options based on her default under the terms of the Confirmed Plan. Citi is informed and believes it is currently in compliance with all court orders. As a consequence, Citi did not knowingly violate the discharge injunction or intend its actions to violate said inunction. Accordingly, damages are inappropriate under 11 U.S.C. §§ 524 or 105(a).

### 3.    Debtor Has Failed to Demonstrate She Suffered Damages or that Citi Caused Said Damages

Assuming *arguendo* Debtor could satisfy the elements for a willful violation of the discharge injunction under section 524 or that the Court finds Citi in contempt under § 105(a), Debtor has failed to establish she is entitled to any damages. The Debtor's Motion for Contempt does not detail or quantify the damages suffered beyond the attorneys' fees incurred to bring the instant Motion for Contempt, and a statement she suffered emotional stress and time/gas driving to her attorneys' office.

a.    <u>Actual Damages</u>

Compensatory damages are recoverable by a debtor for a creditor's violation under a § 105(a) civil contempt motion. *See In re Dyer,* 322 F.3d at 1193 (Citing *Walls v. Wells Fargo Bank, N.A.,* 276 F.3d 502,507 (9th Cir.2002). Further, "compensatory damages" include those damages that are "sufficient in amount to indemnify the injured person for the loss suffered," essentially placing the injured party in as good a position as it would have been in absent violation. *See* Black's Law

1    Dictionary 445 (9th ed.2009). However, in order to recover such damages, the party asserting

2    compensatory damages must specifically prove not only the right to damages, but also the amount

3    of damages. In proving compensatory damages, the existence and amount of damages must be based

4    upon more than mere conjecture. *See Silver Sage Partners, Ltd. v. City of Desert Hot Springs,* 251

5    F.3d 814, 824 (9th Cir.2001); *McClaran v. Plastic Indus., Inc.,* 97 F.3d 347, 361 (9th Cir.1996); *In*

6    *re 1601 W. Sunnyside Dr. #106, LLC*, 2010 WL 5481080, at *6 (Bankr. D. Idaho Dec. 30, 2010).

7          Debtor failed to quantify what damages she suffered beyond alleging she incurred attorneys'

8    fees to bring the instant Motion for Contempt, and a statement she suffered emotional distress.

9    Further, Debtor stated she spent money on gas, copies, and time going to her attorney's office in the

10   sum of $150. However, in order to recover such damages, the party asserting compensatory damages

11   must specifically prove not only the right to damages, but also the amount of damages. In proving

12   compensatory damages, the existence and amount of damages must be based upon more than mere

13   conjecture. Accordingly, the Debtor's request for "actual" damages must be denied.

14          b.    <u>Emotional Damages</u>:

15          Debtor asserts she suffered emotional distress over the accounting issues discussed above.

16   However, Citi contends Debtor failed to meet her burden she is entitled compensatory damages for

17   emotional distress.  *See, Dawson v. Washington Mutual Bank (In re Dawson)*, 390 F.3d 1139, 1148

18   (9th Cir. 2004) (individual must prove: 1) suffer significant harm; 2) clearly establish the significant

19   harm; and 3) demonstrate a causal connection between that significant harm and violation of the

20   automatic stay (as distinct from, for instance, the anxiety and pressures inherent in the bankruptcy

21   process).

22          The only assertion of emotional distress includes Debtor's assertion of "emotional and

23   financial strain." (*See* Debtor Declaration, ¶25). This does not sufficiently prove Debtor suffered

24   significant harm. Further, Debtor failed to provide sufficient evidence of a causal connection

25   between the asserted distress and any alleged violation by Citi. Thus, Citi asserts Debtor is not

26   entitled to damages for emotional distress as an element of compensatory damages.

27   /././

28   /././

c.    Attorneys' Fees and Costs

Section 105(a) authorizes only such remedies as are "necessary or appropriate to carry out the provisions of this title." "[C]ivil contempt is the normal sanction for violation of the discharge injunction." 4 *Collier on Bankruptcy* ¶ 524.02[2][c] (15th ed. 1999). Compensatory civil contempt allows an aggrieved debtor to obtain compensatory damages, including attorneys' fees. *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 507 (9th Cir. 2002). Courts have applied the standard of § 330 for compensating professionals in bankruptcy, which provides for "reasonable compensation for actual, necessary services." 11 U.S.C. § 330(a)(1)(A). *See United States v. Price,* 176 B.R. 807, 808 (N.D.Ill.1993), *aff'd,* 42 F.3d 1068 (7th Cir.1994) ("To the extent that services performed are compensable under § 330, attorneys' fees have been incurred by the estate and can be awarded pursuant to § 362(h)."); *Sucre v. MIC Leasing Corp. (In re Sucre),* 226 B.R. 340, 351 (Bankr.S.D.N.Y.1998).

Courts especially scrutinize cases where the debtor's only injuries are those incurred in litigating the motion for sanctions, and where there exist no circumstances warranting punitive damages. *See McHenry,* 179 B.R. at 168; *Shadduck v. Rodolakis,* 221 B.R. 573, 585 (D.Mass.1998) (requiring a debtor to attempt to resolve the dispute prior to filing a motion for sanctions); *In re Craine,* 206 B.R. 594 (Bankr.M.D.Fla.1997) (finding no injury); *In re Brock Utils. & Grading, Inc.,* 185 B.R. 719 (Bankr.E.D.N.C.1995) (same); *McLaughlin,* 96 B.R. at 563 (reducing fees). *In re Roman,* 283 B.R. 1, 12 (B.A.P. 9th Cir. 2002). When considering damages, the court must consider two factors: "(1) what expenses or costs resulted from the violation and (2) what portion of those costs was reasonable, as opposed to costs that could have been mitigated." *In re Roman,* 283 B.R. 1, 12 (9th Cir. BAP 2002).  Further, any such attorneys' fees must be reasonable.  *See, Perry v. O-Donnell*, 759 F.2d 702, 706 (9th Cir. 1985).

Here, Debtor failed to plead the amount of attorneys' fees incurred in prosecuting the instant Motion for Contempt against Citi. Rather, the Motion for Contempt simply requests an award of attorneys' fees and costs incurred by Debtor for filing the instant Motion for Contempt for an amount to be determined at a hearing. As discussed above, Citi verified completion of system adjustments *prior to* the filing of the Motion for Contempt as evidenced by the monthly statements sent to the

Debtor for the last twelve (12) months and the Amended Proof of Claim filed in the Third Case. Citi believes Debtor failed to provide **clear and convincing evidence** of a discharge violation, Plan violation, or stay violation to warrant a finding of damages.

Moreover, Citi disputes whether any such attorneys' fees and costs incurred in filing the Motion for Contempt are reasonable given Citi's compliance with the Confirmation Order at the time of filing and the currently scheduled Judicial Settlement Conference to resolve all issues involving the Subject Loan. As a result, Citi asserts Debtor failed to mitigate damages and is not appearing in this Court with clean hands. Finally, Citi opposes an award of any attorneys' fees and costs for any professionals who have yet to be approved via an Employment Application in *this* Bankruptcy Case. As such, Debtor's request for attorneys' fees and costs must be denied.

**4.      Debtor Failed to Mitigate Damages**

The ongoing dispute between the Parties has encompassed three (3) bankruptcy cases spanning a decade and multiple service transfers of the Debtor's loan(s) over ten (10) years. Upon the filing of the Third Case, Citi immediately contacted Debtor's counsel in an attempt to resolve the default on the Subject Loan and any outstanding compliance issues related to the First Case. However, Debtor failed to respond to Citi's efforts. After continued litigation and little progress towards confirmation in the Third Case, on April 7, 2020, Citi met and conferred with Debtor's counsel regarding the possibility of a global settlement of all claims, including mutual participation in the court's judicial settlement program. Thereafter, Citi filed a Motion Requesting a Judicial Settlement Conference. Subsequently, the Court entered scheduling orders, with a Judicial Settlement Conference scheduled for October 6, 2020.

Notwithstanding the scheduled Judicial Settlement Conference in the Third Case, Debtor elected to file the instant Motion for Contempt in the First Case on September 4, 2020. Citi asserts the filing of the Motion for Contempt was unnecessary due to the scheduled Judicial Settlement Conference. Further, the filing of the Motion for Contempt was unreasonable given Citi's compliance with the Confirmation Order at the time of filing, the Debtor's default under the Plan, the termination of the automatic stay years ago, and the currently scheduled Judicial Settlement

1  Conference to resolve all issues involving the Subject Loan. Accordingly, Citi asserts the Debtor

2  failed to mitigate damages and any request for damages must be denied.

3        **5.    Punitive Damages are Not Appropriate in this Case**

4        Similar to her claims for compensatory damages and attorney's fees, Debtor's request for

5  punitive damages is unavailing.  While section 362(k) authorizes an award of punitive damages in

6  appropriate circumstances, *see* 11 U.S.C. § 362(k)(1), a bankruptcy court is not generally authorized

7  to impose punitive sanctions under the contempt authority of section 105(a). *See Dyer*, 322 F.3d at

8  1194; *see also In re Roman*, 283 B.R. 1, 14 (9th Cir. BAP 2002). Even if punitive sanctions were

9  authorized by section 105(a), Debtor would still not be entitled to such an award. Put simply, punitive

10  damages are not warranted where a claimant, like Debtor, has failed to establish a right to  recover

11  actual damages. *See e.g., In re McHenry*, 179 B.R. 165, 168 (9th Cir. BAP 1995)(noting that punitive

12  damages should not be awarded in the absence of actual damages). There is otherwise no evidence

13  that Citi acted with a reckless or callous disregard for Debtor's rights, a necessary prerequisite to

14  recovering punitive damages. *See e.g., In re Bloom*, 875 F.2d at 228. Debtors has failed to prove that

15  Citi acted deliberately, maliciously, or in bad faith. Based on the foregoing, Debtor's request for

16  punitive damages must be denied.

17        **IV.   <u>CONCLUSION</u>**

18        Based on above, Debtor's claims for violation of the automatic stay, violation of the

19  discharge injunction and contempt are unwarranted. Citi acted objectively reasonably by sending

20  informational statements to the Debtor following her default under the Confirmed Plan. Citi updated

21  its system to reflect the terms of the Confirmed Plan well before the filing of the instant Motion for

22  Contempt. If any party is *<u>currently</u>* in violation of the Confirmed Plan, it is the Debtor, not Citi.

23  Debtor failed to make all required payments under the Confirmed Plan and subsequently filed

24  numerous bankruptcy cases through her shell entities (while continuing to collect rental income).

25  Although the Court scheduled a Judicial Settlement Conference, the Debtor filed the instant Motion

26  for Contempt. Debtor failed to mitigate damages and is not appearing before the Court with clean

27  hands. Debtor failed to demonstrate she is entitled to damages or prove said damages are directly

28  attributable to any action or inaction of Citi, or that sanctions are necessary or appropriate.

1   Based upon the foregoing, Citi respectfully request the Court to deny the Debtor's Motion

2   for Contempt. In the alternative, Citi requests a stay of any proceedings on the Motion for Contempt

3   until after the conclusion of the Judicial Settlement Conference in the First Case. In the alternative,

4   that the Court order the Parties to participate in a Judicial Settlement Conference in this Bankruptcy

5   Case (the First Case).  In the alternative, Citi requests an evidentiary hearing and scheduling order

6   to conduct discovery in this case and potentially file a dispositive motion regarding whether Debtor

7   has met her burden of proof for the alleged violations and/or damages.

8   **WHEREFORE**: Citi respectfully requests that:

9   1. The Court enter an Order Denying the Motion for Contempt;

10  2. In the alternative, the Court stay any proceedings on the Motion for Contempt until after

11  the conclusion of the Judicial Settlement Conference in the First Case;

12  3. In the alternative, the Court order the Parties to participate in a Judicial Settlement

13  Conference in this Bankruptcy Case (the First Case);

14  4. In the alternative, the Court issue a scheduling order regarding deadlines to complete

15  discovery and file dispositive motions with an evidentiary hearing to be set (if necessary);

16  5. The Court award Citi reasonable attorney's fees and costs; and

17  6. Any additional relief the Court deems appropriate.

18  Respectfully submitted:

19  **ALDRIDGE PITE, LLP**

20  Dated: October 2, 2020

20  */s/ Eddie R. Jimenez*
EDDIE R. JIMENEZ
21  Attorneys for CitiMortgage, Inc.