**Fill in this information to identify the case:**

Debtor 1 _____ Schulte Properties LLC _____

Debtor 2 _____
(Spouse, if filing)

United States Bankruptcy Court for the: _____ District of __Nevada__
(State)

Case number _____18-12734-mkn_____

Official Form 410

# Proof of Claim

04/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

## Part 1:    Identify the Claim

| | |
|---|---|
| 1. Who is the current creditor? | __CitiMortgage, Inc.__<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor _____ |
| 2. Has this claim been acquired from someone else? | ☒ No<br>☐ Yes.  From whom? _____ |

3. Where should notices and payments to the creditor be sent?

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payment to the creditor be sent? (if different) |
|---|---|
| CitiMortgage, Inc.<br>Name | CitiMortgage, Inc.<br>Name |
| P.O. Box 6030<br>Number        Street | P.O. Box 688971<br>Number        Street |
| Sioux Falls, SD 57117-6030<br>City            State            Zip Code | Des Moines, IA 50368-8971<br>City            State            Zip Code |
| Contact phone  866-613-5636 | Contact phone   866-613-5636 |
| Contact email  CitiPOC1@citi.com:<br>        citiassist4trustee1@citi.com | Contact email   CitiPOC1@citi.com:<br>        citiassist4trustee1@citi.con |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

-----------------------------------------------------------

| | |
|---|---|
| 4. Does this claim amend one already filed? | ☐ No<br>☒ Yes.  Claim number on court claims registry (if known)__17_____      Filed on __09/12/2018__<br>                                                                                                                            MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☒ No<br>☐ Yes.  Who made the earlier filing? _____ |

Official Form 410                                    Proof of Claim

Exhibit E

**Part 2:**    **Give Information About the Claim as of the Date the Case Was Filed**

| | | |
|---|---|---|
| 6. | Do you have any number you use to identify the debtor? | ☐ No<br>☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor.        ******4851 |

7. How much is the claim?    $ 135,449.71    Does this amount include interest or other charges?

☐ No

☒ Yes.   Attach statement itemizing interest, fees, expenses, or other charges require by Bankruptcy Rule 3001(c)(2)(A).

8. What is the basis of the claim?

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money Loaned

9. Is all or part of the claim secured?

☐ No

☒ Yes.   The claim is secured by a lien on property.

Nature of property:

☒ Real estate   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe    9500 Aspen Glow Dr, Las Vegas, NV  89134

Basis for perfection:    Mortgage/Deed of Trust

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for Example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:          $ _____

Amount of the claim that is secured  $  135,449.71

Amount of the claim that is unsecured:          $  0.00          (The sum of the secured and unsecured amounts should match the amount in line 7

Amount necessary to cure any default as of the date of the petition:        $  50,926.11

Annual Interest Rate (when case was filed)          5.25          %

☒ Fixed

☐ Variable

10. Is this claim based on a lease?

☒ No

☐ Yes.  Amount necessary to cure any default as of the date of the petition.        $ _____

11. Is this claim subject to a right of setoff?

☒ No

☐ Yes.  Identify the property _____

12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?

☒ No

☐ Yes. *Check all that apply:*          **Amount entitled to priority**

Exhibit E

12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:  Sign Below**

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  01/30/2019
                  MM / DD / YYYY

/s/ Arnold L. Graff
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Arnold L. Graff | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Agent for Creditor | | |
| Company | Aldridge Pite, LLP | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 4375 Jutland Drive | | |
| | Number        Street | | |
| | San Diego | CA | 92117 |
| | City | State | ZIP Code |
| Contact phone | 858.750.7600 | Email | agraff@aldridgepite.com |

Print    Save As...    Add Attachment    Reset

Exhibit E



**AMENDED PROOF OF CLAIM DISCLOSURES**

IN RE: **SCHULTE PROPERTIES LLC**
UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA - LAS VEGAS DIVISION

CASE NO. 18-12734-mkn
CREDITOR:  CITIMORTGAGE, INC.

**SECURED TOTAL BREAKDOWN**

| | |
|---|---|
| Principal | $92,263.85 |
| Interest | $26,753.99 |
| Escrow Advance | $16,431.87 |
| **Total Amount of Secured Claim** | **$ 135,449.71** |

**ARREARS TOTAL BREAKDOWN**

| | |
|---|---|
| Pre-Petition Payments 66 Installments From 12/1/12 To 5/1/18 @ $522.64 | $34,494.24 |
| Escrow Advance | $16,431.87 |
| **Total Amount of Arrearages** | **$ 50,926.11** |

1. The amount of the post-petition payments is subject to change per the terms of the Note and Deed of Trust/Mortgage.
2. This Proof of Claim shall not constitute a waiver of the within party's right to receive service pursuant to Fed. R. Civ. P. 4, made applicable to this proceeding by Fed. R. Bankr. P. 7004 notwithstanding Aldridge Pite, LLP's participation in this proceeding. Moreover, the within party does not authorize Aldridge Pite, LLP, either expressly or impliedly through Aldridge Pite, LLP's participation in this proceeding, to act as its agent for purpose of service under Fed. R. Bankr. P. 7004.
3. Please be on notice that the Post-Petition Attorneys' Fees and Costs in the Total Breakdown include the post-petition preparation and filing of this Proof of Claim; obtaining and reviewing the Chapter 11 Plan; and the preparation, filing and service of a Request for Courtesy Notice to monitor this bankruptcy.

4375 Jutland Drive
P.O. Box 17933
San Diego, CA 92177-0933
(858) 750-7600
www.aldridgepite.com

Exhibit E



REPRESENTATION OF PRINTED DOCUMENT

Mortgage Account Number: ▉▉▉▉▉
Date: October 23, 2018

**Customer Service:** 1-866-613-5636*
www.citimortgage.com

WILLIAM R SCHULTE
MELANI   SCHULTE
9811 W CHARLESTON BLVD STE2-351
LAS VEGAS NV 89117-7519

**Please note:** As a result of your bankruptcy case, this letter is not an attempt to collect debt from you or in any way violate any provision of the United States Bankruptcy Code. This letter has been sent to you for informational purposes only. This is not a bill or a request for payment, or a statement that you are personally obligated in any way to make a payment.

Enclosed is your Escrow Analysis Statement, which has detailed information regarding your escrow account. In an effort to provide you with a simple overview of the enclosed statement, below is a summary of the key information.
**Your new voluntary monthly mortgage payment is $718.72, and will be effective with your December 01, 2018 payment.**

| Monthly Payment Breakdown | Current Monthly Payment | New Monthly Payment |
|---|---|---|
| Principal & Interest | 522.64 | 522.64 |
| Escrow Payment | 196.08 | 196.08 |
| Total Monthly Payment | 718.72 | 718.72 |

If your new voluntary monthly payment includes a shortage spread amount, you may pay the shortage in full which will lower your payment; however, your payment may not return to the previous amount. If your tax and/or insurance bill amounts have changed, your voluntary monthly payment amount might change, and this amount may be higher. If you have questions about increased bills, contact your insurance agent or tax authority directly.

The voluntary monthly mortgage payment can change based on increases or decreases in property taxes and/or insurance premiums. These changes may result in an escrow shortage or surplus.

| | Projected Annual Escrow Disbursements Amounts |
|---|---|
| COUNTY TAX | 1,837.01 |
| HAZARD INSURANCE | 516.00 |
| Total Annual Disbursement Amount | 2,353.01 |

Please refer to the enclosed statement for detailed information about your escrow analysis including any shortage or overage you may have.

To the extent your obligation has been discharged or is subject to an automatic stay of a Bankruptcy order under Title 11 of the United States code, this notice is for compliance and informational purposes only and does not constitute a demand for payment or an attempt to collect any such obligation.

*Calls are randomly monitored and recorded for quality assurance.

Exhibit E

CitiMortgage
*2525501243*
CitiMortgage, P.O. Box 6243
O'Fallon MO 63368-0243
Customer Service 1-800-283-7918*
TTY Services available: Dial 711 from the United States;
Dial 1-866-280-2050 from Puerto Rico

**Escrow Account Disclosure Statement**

REPRESENTATION OF PRINTED DOCUMENT

Page 1

### Annual Escrow Analysis

Account Number:
Analysis Date:                                October 23, 2018

WILLIAM R SCHULTE
MELANI   SCHULTE
9811 W CHARLESTON BLVD STE2-351
LAS VEGAS NV 89117-7519

TO THE EXTENT YOUR OBLIGATION HAS BEEN DISCHARGED OR
IS SUBJECT TO AN AUTOMATIC STAY OF A BANKRUPTCY ORDER
UNDER TITLE 11 OF THE UNITED STATES CODE, THIS NOTICE IS
FOR COMPLIANCE AND INFORMATIONAL PURPOSES ONLY AND
DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR AN
ATTEMPT TO COLLECT ANY SUCH OBLIGATION.

## Mortgage Payment

| New Monthly Payment Amount: | **$718.72** | New Payment Effective: | **December 01, 2018** |
|---|---|---|---|

|  | CURRENT PAYMENT | NEW PAYMENT |
|---|---|---|
| PRINCIPAL/INTEREST | 522.64 | 522.64 |
| MONTHLY ESCROW PAYMENT | 196.08 | 196.08 |
| **TOTAL PAYMENT** | **718.72** | **718.72** |

- Your new monthly escrow payment represents 1/12th of your projected annual escrow disbursements.
- If your payment is issued by a third party, or if you make your payments through a bill pay service, please take the appropriate action to ensure that the new amount is updated with the service provider.

## Projections for the coming Year

Please keep this statement for reference next year.

| MONTH | PAYMENTS TO ESCROW ACCT | PAYMENTS FROM ESCROW ACCT | DESCRIPTION | PROJECTED BALANCE | REQUIRED BALANCE |
|---|---|---|---|---|---|
| Starting Balance: (Activity Assumed through October, 2018) | | | | $18,011.39 | $196.13 |
| NOV 18 | 196.08 | .00 | | 18,207.47 | 392.21 |
| DEC 18 | 196.08 | 452.18 | COUNTY TAX | 17,951.37 | 136.11 |
| JAN 19 | 196.08 | .00 | | 18,147.45 | 332.19 |
| FEB 19 | 196.08 | 440.72 | COUNTY TAX | 17,902.81 | 87.55 |
| MAR 19 | 196.08 | .00 | | 18,098.89 | 283.63 |
| APR 19 | 196.08 | .00 | | 18,294.97 | 479.71 |
| MAY 19 | 196.08 | .00 | | 18,491.05 | 675.79 |
| JUN 19 | 196.08 | .00 | | 18,687.13 | 871.87 |
| JUL 19 | 196.08 | 516.00 | HAZARD INSURANCE | 18,367.21 | 551.95 |
| AUG 19 | 196.08 | 472.94 | COUNTY TAX | 18,090.35 | 275.09 |
| SEP 19 | 196.08 | 471.17 | COUNTY TAX | 17,815.26 (a) | .00 (b) |
| OCT 19 | 196.08 | .00 | | 18,011.34 | 196.08 |
| NOV 19 | 196.08 | .00 | | 18,207.42 | 392.16 |
| TOTALS: | $2,352.96 | $2,353.01 | | | |

- Mortgage Insurance, if any, is not included in the required low point calculation.

## Determining Your Escrow Shortage/Surplus

Under Federal Law, your surplus may be returned to you via a check.  Since not all payments have been received on your account, you will not receive a check for your escrow surplus.
If your Projected Low-Point (a) is:
- Less than your Required Low-Point (b), you have a shortage.
- Greater than your Required Low-Point (b), you have a surplus.
- Equal to your Required Low-Point (b), the above does not apply.

| PROJECTED LOW-POINT: | 17,815.26 | (a) |
|---|---|---|
| REQUIRED LOW-POINT (Cushion): | .00 | (b) |
| **TOTAL ESCROW SURPLUS:** | **17,815.26** | |

## CitiMortgage, Inc. appreciates your business.

INTERNET REPRINT

Exhibit E
03-16-16

## Escrow Account Disclosure Statement

REPRESENTATION OF PRINTED DOCUMENT

Account Number:
Analysis Date:                    October 23, 2018
Annual Escrow Analysis

### Account History

| | ITEM | ACTUAL PAYMENTS | PROJECTED PAYMENTS | INCREASE/ DECREASE |
|---|---|---|---|---|
| Please note the increases/decreases that may have occurred from the projections. This has impacted the shortage/surplus in this analysis reflected on the front side of this statement. | HAZARD INSURANCE | 516.00 | 474.00 | 42.00 |
| | COMBINED TAXES | 1,848.47 | 2,228.30 | -379.83 |

This is a statement of actual activity in your escrow account from September 1, 2017 through October 23, 2018. This section provides last year's projections and compares it with actual activity.

Your most recent monthly mortgage payment during the past year was $718.72 of which $522.64 was for principal and interest and $196.08 was credited to your escrow account.

| MONTH | ACTUAL PAYMENTS TO ESCROW ACCOUNT | PROJECTED PAYMENTS TO ESCROW ACCOUNT | ACTUAL PAYMENTS FROM ESCROW ACCOUNT | PROJECTED PAYMENTS FROM ESCROW ACCOUNT | DESCRIPTION | ACTUAL ESCROW RUNNING BALANCE | PROJECTED ESCROW RUNNING BALANCE |
|---|---|---|---|---|---|---|---|
| Starting Balance: | | | | | | $14,414.65- | $9,426.56 |
| SEP 17 | .00 | 185.08 * | 452.18 | 440.72 * | COUNTY TAX | 14,866.83- | 9,170.92 |
| OCT 17 | .00 | 185.08 * | .00 | .00 | | 14,866.83- | 9,356.00 |
| NOV 17 | .00 | 188.47 * | .00 | .00 | | 14,866.83- | 10,618.73 |
| DEC 17 | .00 | 188.47 * | 452.18 | 440.72 * | COUNTY TAX | 15,319.01- | 10,366.48 |
| JAN 18 | 254.00 | 188.47 * | .00 | .00 | | 15,065.01- | 10,554.95 |
| FEB 18 | .00 | 188.47 * | .00 | 440.72 * | COUNTY TAX | 15,065.01- | 10,302.70 |
| MAR 18 | .00 | 188.47 * | .00 | .00 | | 15,065.01- | 10,491.17 |
| APR 18 | .00 | 188.47 * | .00 | .00 | | 15,065.01- | 10,679.64 |
| MAY 18 | 1,027.62- | 188.47 * | .00 | .00 | ESCROW ADJUSTMENT | 16,092.63- | 10,868.11 |
| JUN 18 | .00 | 188.47 * | .00 | .00 | | 16,092.63- | 11,056.58 |
| JUL 18 | 163.81 | 188.47 * | 516.00 | 474.00 * | HAZARD INSURANCE | 16,444.82- | 10,771.05 |
| JUL 18 | .00 | .00 | 472.94 | .00 * | COUNTY TAX | 16,917.76- | 10,771.05 |
| AUG 18 | .00 | 188.47 * | .00 | 453.96 * | COUNTY TAX | 16,917.76- | 10,505.56 |
| SEP 18 | 163.81 | 188.47 * | 471.17 | 452.18 * | COUNTY TAX | 17,225.12- | 10,241.85 |
| OCT 18 | 20,922.67 | 188.47 * | .00 | .00 | | 3,697.55 | 10,430.32 |
| Totals: | $20,476.67 | $2,631.80 | $2,364.47 | $2,702.30 | | | |

An asterisk (*) indicates a difference from a previous estimate either in the date or amount. Payment differences of $2.00 or less will not be marked with an asterisk.

Under Federal Law, your lowest monthly balance should not have exceeded $376.92 which is 1/6 of anticipated payments unless your mortgage contract or state law specifies a lower amount. Under your mortgage contract or state law, your lowest monthly balance should not have exceeded $.00.

Please note: As a result of your bankruptcy case, this letter is not an attempt to collect debt from you or in any way violate any provision of the United States Bankruptcy Code. This letter has been sent to you for informational purposes only. This is not a bill or a request for payment, or a statement that you are personally obligated in any way to make a payment.

CitiMortgage may charge interest on funds advanced to pay your escrow items. If you do not repay the escrow advance within 60 days (of the Escrow Analysis Statement date above) interest will be charged on the outstanding advance amount. The rate of interest on the advance will be the Note rate applicable to your first mortgage loan. The monthly interest accrual will appear on your monthly Mortgage Statement.

©2014 CitiMortgage, Inc. CitiMortgage, Inc. is an equal housing lender, Citi, Arc Design, and Citi and Arc Design are registered service marks of Citigroup
INTERNET REPRINT

C671EP

02-10-14

Exhibit E 

LOAN #:
CASE NUMBER: LHG

# NOTE

## NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

| **March 5, 1993** | **LAS VEGAS** | **NEVADA** |
|---|---|---|
| [Date] | [City] | [State] |

**9500 ASPEN GLOW DRIVE, LAS VEGAS, NV 89134**

[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ **126,056.00** (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
**WEYERHAEUSER MORTGAGE COMPANY**

. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of **7.500** %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

#### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the **First** day of each month beginning on **May 1** **1993** . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on **April 1, 2023** , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **P.O. BOX 54089**
**LOS ANGELES, CA 90054-0089**
or at a different place if required by the Note Holder.

#### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ **881.41** .

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

### 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

### 6. BORROWER'S FAILURE TO PAY AS REQUIRED

#### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **4.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

#### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

MULTISTATE FIXED RATE NOTE - Single Family - **Fannie Mae/Freddie Mac Uniform Instrument**



-5V (9202)

VMP MORTGAGE FORMS - (313)293-8100

Page 1 of 2

Form 3200 12/83
Amended 2/92

Initials:

Exhibit E

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. ALLONGE TO THIS NOTE**

If an allonge providing for payment adjustments or for any other supplemental information is executed by the Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge    ☒ Other [Specify]    ☐ Other [Specify]
    **VA ASSUMPTION POLICY**
    **ALLONGE AMENDING NOTE**

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Regulations (38 C.F.R. Part 36) issued under the Department of Veteran's Affairs ("V.A.") Guaranteed Loan Authority (38 U.S.C. Chapter 37) and in effect on the date of loan closing shall govern the rights, duties and liabilities of the parties to this loan and any provisions of this Note which are inconsistent with such regulations are hereby amended and supplemented to conform thereto.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)    _____ (Seal)
EDWARD WENDELL PORTA              -Borrower                                    -Borrower
SSN▮                                          SSN:

_____ (Seal)    _____ (Seal)
PATRICIA P. PORTA                -Borrower                                    -Borrower
SSN▮                                          SSN:

*[Sign Original Only]*

Exhibit E

PAY TO THE ORDER OF

WITHOUT RECOURSE

WEYERHAEUSER MORTGAGE COMPANY

x

VICE PRESIDENT

Exhibit E



# NOTE ALLONGE

**Statement of Purpose:** This Note Allonge is attached to and made part of the Note, for the purpose of Noteholder Endorsements to evidence transfer of interest.

**Loan Number:** ████████

**Investor #:**  726                        **Loan Date:**   12-Mar-93

**Original Loan Amount:**$    126056.00

**Original Mortgagor:**
*WILLIAM R SCHULTE*

**Property Address:**
9500 ASPEN GLOW DR
LAS VEGAS                    NV  89134


Pay to the Order of

**First Nationwide Mortgage Corporation**

Without Recourse

**WMC Mortgage Corp. F/K/A Weyerhaeuser Mortgage Company**


By:  *Carin L Dietsch*

Name:    Connie L. Dietsch
Title:   Vice President


Pay to the Order of

**CitiMortgage, Inc.**

Without Recourse

**First Nationwide Mortgage Corporation**


By:  *Carin L Dietsch*

Name:    Connie L. Dietsch
Title:   Vice President


Exhibit E



LOAN #
CASE NUMBER: LH

# V.A. ASSUMPTION POLICY ALLONGE AMENDING NOTE

## NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

THIS ASSUMPTION POLICY ALLONGE AMENDING NOTE is made this **5th** day of **March**, **1993**, and is incorporated into and shall be deemed to amend and supplement the Note ("Note") of the same date herewith, given by the undersigned ("Borrower") to evidence Borrower's indebtedness to

### WEYERHAEUSER MORTGAGE COMPANY

its successors and assigns

("Lender") which indebtedness is secured by a Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date and covering the property described in the Security Instrument and located at:

### 9500 ASPEN GLOW DRIVE
### LAS VEGAS, NV 89134

(Property Address)

Notwithstanding anything to the contrary set forth in the Note, Lender and Borrower hereby acknowledge and agree to the following:

GUARANTY: Should the Department of Veterans Affairs fail or refuse to issue its guaranty in full amount within 60 days from the date that this loan would normally become eligible for such guaranty committed upon by the Department of Veterans Affairs under provisions of Title 38 of the U.S. Code "Veterans Benefits," the Lender may declare the indebtedness due under the Note and secured by the Security Instrument at once due and payable and may require immediate payment in full or may exercise any other rights hereunder or take any other proper action as by law provided.

TRANSFER OF THE PROPERTY: If all or any part of the Property or any interest in it is sold or transferred, this loan may be declared immediately due and payable upon transfer ("assumption") of the property securing such loan to any transferee ("assumer"), unless the acceptability of the assumption and transfer of this loan is established by the Department of Veterans Affairs or its authorized agent pursuant to Section 1814 of Chapter 37, Title 38, United States Code.

An authorized transfer ("assumption") of the property shall also be subject to additional covenants and agreements as set forth below:

(a) <u>ASSUMPTION FUNDING FEE:</u> A fee equal to one-half of 1 percent (.50%) of the unpaid principal balance of this loan as of the date of transfer of the property shall be payable at the time of transfer to the Lender or its authorized agent, as trustee for the Department of Veterans Affairs. If the assumer fails to pay this fee at the time of transfer, the fee shall constitute an additional debt to that already due under the Note and secured by the Security Instrument, shall bear interest at the rate herein provided, and, at the option of the Lender of the indebtedness due under the Note and secured by the Security Instrument or any transferee thereof, shall be immediately due and payable. This fee is automatically waived if the assumer is exempt under the provisions of 38 U.S.C. 1829 (b).

(b) <u>ASSUMPTION PROCESSING CHARGE:</u> Upon application for approval to allow assumption and transfer of this loan, a processing fee may be charged by the Lender or its authorized agent for determining the creditworthiness of the assumer and subsequently revising the holder's ownership records when an approved transfer is completed. The amount of this charge shall not exceed the lesser of the maximum established by the Department of Veterans Affairs for a loan to which Section 1814 of Chapter 37, Title 38, United States Code applies or any maximum prescribed by applicable State law.

(c) <u>ASSUMPTION INDEMNITY LIABILITY:</u> If this obligation is assumed, then the assumer hereby agrees to assume all of the obligations of the veteran under the terms of the instruments creating and securing the loan, including the obligation of the veteran to indemnify the Department of Veterans Affairs to the extent of any claim payment arising from the guaranty or insurance of the indebtedness created by this instrument.

IN WITNESS WHEREOF, Borrower(s) has executed this Assumption Policy Allonge Amending Note.

_____ (Seal)
EDWARD WENDELL PORTA          -Borrower

_____ (Seal)
PATRICIA P. PORTA          -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

-535 (9012)            VMP MORTGAGE FORMS            10/90

Exhibit E

# SIGNATURE / NAME AFFIDAVIT

DATE:       3/05/93

LOAN #: ▮▮▮▮▮

BORROWER:   **PORTA**

TO WHOM IT MAY CONCERN:

THIS IS TO CERTIFY THAT MY LEGAL SIGNATURE IS AS WRITTEN AND TYPED BELOW. (This signature must <u>exactly</u> match signatures on the Note and Mortgage or Deed of Trust.)

**EDWARD WENDELL PORTA**
(Print or Type Name)

Signature

**PATRICIA P. PORTA**
(Print or Type Name)

Signature

(Print or Type Name)

Signature

(Print or Type Name)

Signature

(If applicable, complete the following.)

I AM ALSO KNOWN AS:

EDWARD W. PORTA
(Print or Type Name)

Signature

TRICIA PARKER
(Print or Type Name)

Signature

TRICIA KAY PORTA
(Print or Type Name)

Signature

(Print or Type Name)

Signature

STATE OF Nevada

COUNTY OF Clark                    SS.

Subscribed and sworn (affirmed) before me by this     9th     day of   March   , 19 93 .

**NOTARY PUBLIC**
**STATE OF NEVADA**
County of Clark
Jennifer L. Smith
My Appointment Expires Jan. 15, 1996

L.S. _____
Notary Public

▮-WH151 (9012)        ELECTRONIC LASER FORMS, INC.   ▮▮▮▮▮        RLD 2279 (06/18/90)

Exhibit E

LOAN #:
CASE NUMBER: LHG #

WEYERHAEUSER MORTGAGE COMPANY
2080 E. FLAMINGO RD., STE. 400
LAS VEGAS, NV  89119

——————————————————————— [Space Above This Line For Recording Data] ———————————————————————

# DEED OF TRUST

# NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

THIS DEED OF TRUST ("Security Instrument") is made on **March 5, 1993** . The grantor is
**EDWARD WENDELL PORTA AND PATRICIA P. PORTA**

("Borrower"). The trustee is   **WESTWOOD ASSOCIATES, A CALIFORNIA CORPORATION**

("Trustee"). The beneficiary is   **WEYERHAEUSER MORTGAGE COMPANY**

which is organized and existing under the laws of   **the State of California**   , and whose
address is   **P.O. BOX 54089, LOS ANGELES, CA  90054-0089**
("Lender"). Borrower owes Lender the principal sum of

**ONE HUNDRED TWENTY SIX THOUSAND FIFTY SIX & 00/100**

Dollars (U.S. $   **126,056.00**   ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on   **April 1, 2023**   .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,
extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to
protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this
Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of
sale, the following described property located in   **CLARK**   County, Nevada:

LOT THIRTY-EIGHT (38) IN BLOCK A OF CYPRESS IN THE HILLS AT SUMMERLIN BY LEWIS
HOMES, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 48 OF PLATS, PAGE 5, IN THE
OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA AND AS AMENDED BY
CERTIFICATE OF AMENDMENT RECORDED JANUARY 4, 1991 IN BOOK 910104 AS
DOCUMENT NO. 00923.

which has the address of   **9500 ASPEN GLOW DRIVE, LAS VEGAS**   [Street, City],
Nevada       **89134**             ("Property Address");
[Zip Code]

NEVADA-Single Family-Fannie Mae/Freddie
-6V(NV) (9106)

Form 3029 9/90
Amended 5/91
Initials

Exhibit E

TOGETHER WITH all the ████████████████████████, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

 -6V(NV) (9105)

Form 3029  9/90

Initials 

Exhibit E

**5. Hazard or Property** ▬▬▬▬▬▬▬▬▬▬▬▬▬ existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve

Form 3029  9/90
Initial

Exhibit E

payments may no longer be req~~uired, at the option of Lender,~~ if ~~mortgage insurance~~ coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

 -6V(NV) (9105)

Form 3029  9/90

Initials 

Exhibit E

**17. Transfer of the Property of a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify:   (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration  and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender, at its option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note, and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by applicable law to Borrower and to the persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without

Form 3029  9/90

Initials

demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**22. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs.

**23. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**24. Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $ **"NOT TO EXCEED $500"**.

**25. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☒ V.A. Rider | ☐ Other(s) [specify] | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_____          _____ (Seal)
                                          EDWARD WENDELL PORTA                -Borrower

_____          _____ (Seal)
                                          PATRICIA P. PORTA                   -Borrower

_____ (Seal)   _____ (Seal)
                                 -Borrower                                    -Borrower

**STATE OF NEVADA,**        Clark                                **County ss:**
On this   9th    day of      MARCH    ,  1993   , personally appeared before me, the undersigned, a notary public in and for the County and State aforesaid,  Edward Wendell Porta and Patricia P. Porta

                                                                    known to me to be the person described in
and who executed the within and foregoing instrument, and who acknowledged to me that        t h e   y        executed the same freely and voluntarily and for the uses and purposes therein mentioned.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal at my office in said county of clark                              , the day and year in this Certificate first above written.

My Commission Expires:                    _____
                                          Notary Public
**NOTARY PUBLIC**
**STATE OF NEVADA**                       County of      CLARK        , State of Nevada
County of Clark
Jennifer L. Smith
-6V(NV) (9108) My Appointment Expires Jan. 15, 1996

                    Page 6 of 6                              Form 3029  9/90

Exhibit E

LOAN #
CASE NUMBER: LHG

## V.A. GUARANTEED LOAN AND ASSUMPTION POLICY RIDER

# NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

THIS V.A. GUARANTEED LOAN AND ASSUMPTION POLICY RIDER is made this **5th** day of **March** , **1993** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Deed to Secure Debt (herein "Security Instrument") dated of even date herewith, given by the undersigned (herein "Borrower") to secure Borrower's Note to
**WEYERHAEUSER MORTGAGE COMPANY**

(herein "Lender")

and covering the Property described in the Security Instrument and located at

**9500 ASPEN GLOW DRIVE**
**LAS VEGAS, NV 89134**
(Property Address)

V.A. GUARANTEED LOAN COVENANT: In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

If the indebtedness secured hereby be guaranteed or insured under Title 38, United States Code, such Title and Regulations issued thereunder and in effect on the date hereof shall govern the rights, duties and liabilities of Borrower and Lender. Any provisions of the Security Instrument or other instruments executed in connection with said indebtedness which are inconsistent with said Title or Regulations, including, but not limited to, the provision for payment of any sum in connection with prepayment of the secured indebtedness and the provision that the Lender may accelerate payment of the secured indebtedness pursuant to Covenant 17 of the Security Instrument, are hereby amended or negated to the extent necessary to conform such instruments to said Title or Regulations.

LATE CHARGE: At Lender's option, Borrower will pay a "late charge" not exceeding four per centum (4%) of the overdue payment when paid more than fifteen (15) days after the due date thereof to cover the extra expense involved in handling delinquent payments, but such "late charge" shall not be payable out of the proceeds of any sale made to satisfy the indebtedness secured hereby, unless such proceeds are sufficient to discharge the entire indebtedness and all proper costs and expenses secured hereby.

GUARANTY: Should the Department of Veterans Affairs fail or refuse to issue its guaranty in full amount within 60 days from the date that this loan would normally become eligible for such guaranty committed upon by the Department of Veterans Affairs under the provisions of Title 38 of the U.S. Code "Veterans Benefits," the Mortgagee may declare the indebtedness hereby secured at once due and payable and may foreclose immediately or may exercise any other rights hereunder or take any other proper action as by law provided.

TRANSFER OF THE PROPERTY: If all or any part of the Property or any interest in it is sold or transferred, this loan may be declared immediately due and payable upon transfer ("assumption") of the property securing such loan to any transferee ("assumer"), unless the acceptability of the assumption and transfer of this loan is established by the Department of Veterans Affairs or its authorized agent pursuant to Section 1814 of Chapter 37, Title 38, United States Code.

An authorized transfer ("assumption") of the property shall also be subject to additional covenants and agreements as set forth below:

(a) ASSUMPTION FUNDING FEE: A fee equal to one-half of 1 percent (.50%) of the unpaid principal balance of this loan as of the date of transfer of the property shall be payable at the time of transfer to the mortgagee or its authorized agent, as trustee for the Department of Veterans Affairs. If the assumer fails to pay this fee at the time of transfer, the fee shall constitute an additional debt to that already secured by this instrument, shall bear interest at the rate herein provided, and, at the option of the mortgagee of the indebtedness hereby secured or any transferee thereof, shall be immediately due and payable. This fee is automatically waived if the assumer is exempt under the provisions of 38 U.S.C. 1829 (b).

(b) ASSUMPTION PROCESSING CHARGE: Upon application for approval to allow assumption and transfer of this loan, a processing fee may be charged by the mortgagee or its authorized agent for determining the creditworthiness of the assumer and subsequently revising the holder's ownership records when an approved transfer is completed. The amount of this charge shall not exceed the lesser of the maximum established by the Department of Veterans Affairs for a loan to which Section 1814 of Chapter 37, Title 38, United States Code applies or any maximum prescribed by applicable State law.

(c) ASSUMPTION INDEMNITY LIABILITY: If this obligation is assumed, then the assumer hereby agrees to assume all of the obligations of the veteran under the terms of the instruments creating and securing the loan, including the obligation of the veteran to indemnify the Department of Veterans Affairs to the extent of any claim payment arising from the guaranty or insurance of the indebtedness created by this instrument.

IN WITNESS WHEREOF, Borrower(s) has executed this V.A. Guaranteed Loan and Assumption Policy Rider.

_____          _____
EDWARD WENDELL PORTA              -Borrower   PATRICIA P. PORTA              -Borrower

_____          _____
                                  -Borrower                                 -Borrower

V.A. GUARANTEED LOAN AND ASSUMPTION POLICY RIDER                                    2/91
538 (9102).02          VMP MORTGAGE FORMS

Exhibit E

CLARK COUNTY, NEVADA
JOAN L. SWIFT, RECORDER
RECORDED AT REQUEST OF:
FIRST AMERICAN TITLE COMPANY OF

03-12-93   08:00    NA1           8
OFFICIAL RECORDS
BOOK:    930312  INST:    00421
FEE:       12.00  RPTT:          .00

Exhibit E

After Recording Mail To:
WMC Mortgage Corp.
P.O. Box 54089
Los Angeles, Ca 90054
Attn: Assumptions TR35



VA LOAN NUMBER:
PROPERTY ADDRESS: 9500 Aspen Glow Dr.
CITY AND STATE: Las Vegas, NV 89134

### ASSUMPTION AGREEMENT CREATING LIABILITY TO HOLDER AND TO UNITED STATES

It is mutually agreed between the undersigned Seller(s), Purchaser(s), and the Department of Veterans Affairs as follows:

That the Purchaser(s) (is/are) acquiring title to the real property described in a deed of trust dated March 5, 1993, recorded in the office of the recorder of Clark County, State of Nevada, in Book 930312 Page _____ Instrument No. 00421, which was given to secure a promissory note in the sum of $126,056.00.

The note and deed of trust were executed by (Seller) Edward Wendell Porta &** and the loan which the note and deed of trust respectively secure is guaranteed by the Department of Veterans Affairs pursuant to the provisions of Title 38, U.S.C., Chapter 37.

As part of the consideration for the conveyance of the real property and as part of the same transaction, Purchaser(s) assume and agree to pay the indebtedness evidenced by that promissory note, as modified or extended before this date, and to be bound by and to perform all the covenants of the deed of trust at the time and in the manner provided and also hereby assume the obligations under the terms of the instruments creating the loan. Pursuant to superseding federal law, and regardless of any state or local laws prohibiting or limiting deficiencies after foreclosure, Purchaser(s) also agree to indemnify the Department of Veterans Affairs to the extent of any claim payment arising from the above loan.

In consideration of the foregoing assumption of liabilities, the Seller(s), (is/are) relieved of all further liability to the Department of Veterans Affairs on account of such loan.

LOANS MADE PRIOR TO MARCH 1, 1988 REQUIRE THE DEPT. OF VETERANS AFFAIRS APPROVAL BEFORE A RELEASE OF LIABILITY CAN BE GRANTED. LOANS MADE AFTER MARCH 1, 1988, REQUIRE THE HOLDER/SERVICER'S APPROVAL PRIOR TO TITLE TRANSFER.

July 7, 1997                          JUL 14, 1997
_____              _____
Dated                                SELLER  Edward Wendell Porta

Department of Veterans Affairs
( ) Arizona      (x) Nevada          SELLER  Patricia P. Porta

BY: _____ Ernesto Banes
Loan Guaranty Officer/               PURCHASER  William R. Schulte
Holder/Servicer

                                     PURCHASER  Molani Schulte

Pursuant to Delegation of Authority Contained in VA Regulations (38 C.F.R. 36.4342)

Description: Clark,NV Document-Year.Date.DocID 1997.715.1242 Page: 1 of 8
Order: _____ Comment:

Exhibit E



After Recording Mail To:
WMC Mortgage Corp.
P.O. Box 54089
Los Angeles, Ca 90054
Attn: Assumptions TR35

VA LOAN NUMBER: 
PROPERTY ADDRESS: 9500 Aspen Glow Dr.
CITY AND STATE: Las Vegas, NV 89134

## ASSUMPTION AGREEMENT CREATING LIABILITY
## TO HOLDER AND TO UNITED STATES

It is mutually agreed between the undersigned Seller(s), Purchaser(s), and the Department of Veterans Affairs as follows:

That the Purchaser(s) (is/are) acquiring title to the real property described in a deed of trust dated March 5, 1997, recorded in the office of the recorder of _Clark_ County, State of Nevada, in Book 930312 Page _____ Instrument No. _00421_ which was given to secure a promissory note in the sum of $126,056.00.

The note and deed of trust were executed by (Seller) Edward Wendell Porta &** and the loan which the note and deed of trust respectively secure is guaranteed by the Department of Veterans Affairs pursuant to the provisions of Title 38, U.S.C., Chapter 37.

As part of the consideration for the conveyance of the real property and as part of the same transaction, Purchaser(s) assume and agree to pay the indebtedness evidenced by that promissory note, as modified or extended before this date, and to be bound by and to perform all the covenants of the deed of trust at the time and in the manner provided and also hereby assume the obligations under the terms of the instruments creating the loan. Pursuant to superseding federal law, and regardless of any state or local laws prohibiting or limiting deficiencies after foreclosure, Purchaser(s) also agree to indemnify the Department of Veterans Affairs to the extent of any claim payment arising from the above loan.

In consideration of the foregoing assumption of liabilities, the Seller(s), (is/are) relieved of all further liability to the Department of Veterans Affairs on account of such loan.

LOANS MADE PRIOR TO MARCH 1, 1988 REQUIRE THE DEPT. OF VETERANS AFFAIRS APPROVAL BEFORE A RELEASE OF LIABILITY CAN BE GRANTED. LOANS MADE AFTER MARCH 1, 1988, REQUIRE THE HOLDER/SERVICER'S APPROVAL PRIOR TO TITLE TRANSFER.

July 7, 1997
_____
Dated

SELLER  Edward Wendell Porta

Department of Veterans Affairs
( ) Arizona   (X) Nevada

SELLER  Patricia P. Porta

BY: _____ Ernesto Banes
Loan Guaranty Officer/
Holder/Servicer

PURCHASER  William N. Schulte

PURCHASER  Melani Schulte

Pursuant to Delegation of Authority Contained in VA Regulations (38 C.F.R. 36.4342)

*Patricia P. Porta* (vertical text, right margin)

Description: Clark, NV Document-Year.Date.DocID 1997.715.1242 Page: 2 of 8
Order: ▮▮▮  Comment:

Exhibit E



WMC MORTGAGE CORP.
P.O. Box 54089
Los Angeles, Ca 90054
Attn: Assumptions TR35

VA LOAN NUMBER: ▮▮▮▮▮▮
PROPERTY ADDRESS: 9500 Aspen Glow Dr.
CITY AND STATE: Las Vegas, NV 89134

ASSUMPTION AGREEMENT CREATING LIABILITY
TO HOLDER AND TO UNITED STATES

It is mutually agreed between the undersigned Seller(s), Purchaser(s), and the Department of Veterans Affairs as follows:

That the Purchaser(s) (is/are) acquiring title to the real property described in a deed of trust dated March 5, 1993, recorded in the office of the recorder of __Clark__ County, State of Nevada, in Book 930312, Page _____ Instrument No. 00421 which was given to secure a promissory note in the sum of $126,056.00.

The note and deed of trust were executed by (Seller) Edward Wendell Porta &** and the loan which the note and deed of trust respectively secure is guaranteed by the Department of Veterans Affairs pursuant to the provisions of Title 38, U.S.C., Chapter 37.

As part of the consideration for the conveyance of the real property and as part of the same transaction, Purchaser(s) assume and agree to pay the indebtedness evidenced by that promissory note, as modified or extended before this date, and to be bound by and to perform all the convenants of the deed of trust at the time and in the manner provided and also hereby assume the obligations under the terms of the instruments creating the loan. Pursuant to superseding federal law, and regardless of any state or local laws prohibiting or limiting deficiencies after foreclosure, Purchaser(s) also agree to indemnify the Department of Veterans Affairs to the extent of any claim payment arising from the above loan.

In consideration of the foregoing assumption of liabilities, the Seller(s), (is/are) relieved of all further liability to the Department of Veterans Affairs on account of such loan.

LOANS MADE PRIOR TO MARCH 1, 1988 REQUIRE THE DEPT. OF VETERANS AFFAIRS APPROVAL BEFORE A RELEASE OF LIABILITY CAN BE GRANTED. LOANS MADE AFTER MARCH 1, 1988, REQUIRE THE HOLDER/SERVICER'S APPROVAL PRIOR TO TITLE TRANSFER.

July 7, 1997
_____
Dated

Department of Veterans Affairs
( ) Arizona    (×) Nevada

BY: _____ Ernesto Eanes
Loan Guaranty Officer/
Holder/Servicer

SELLER  Edward Wendell Porta

SELLER  Patricia P. Porta

PURCHASER  William R. Schulte

PURCHASER  Melani Schulte

Pursuant to Delegation of Authority Contained in VA Regulations (38 C.F.R. 36.4342)

_(margin, vertical text: Patricia P. Porta)_

Description: Clark, NV Document-Year.Date.DocID 1997.715.1242 Page: 3 of 8
Order: ▮▮▮▮ Comment:

Exhibit E

Order: [REDACTED] Comment:

Description: Clark,NV Document-Year.Date.DocID 1997.715.1242 Page: 4 of 8

State of _____ Nu _____ ]
                        ] s.s.
County of _____ Clark _____ ]

On this _____ 8 _____ day of _____ July _____, 19 97 _____ personally appeared before me,
a Notary in and for said County and State,

_____ Warren R Schultz & Melani Schultz _____

known to me to be the person (s) described in and who executed the foregoing
instrument who acknowledged to me that _____ he executed the same freely and
voluntarily and for the uses and purposes therein mentioned.

_____ Vickie B Quitz _____
Notary Public in and for said County and State

Exhibit E

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

No. 5133

State of __California__

County of __Los Angeles__

On __7/7/97__ before me, __Geraldine B. Wisdom__
DATE                                  NAME, TITLE OF OFFICER - E.G. "JANE DOE, NOTARY PUBLIC"

personally appeared __Ernesto Banes__
NAME(S) OF SIGNER(S)

☒ personally known to me - OR - ☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

GERALDINE B. WISDOM
Commission #
Notary Public — California
Los Angeles County
My Comm. Expires Sep 29, 2000

WITNESS my hand and official seal.

_Geraldine B Wisdom_
SIGNATURE OF NOTARY

━━━━━ OPTIONAL SECTION ━━━━━
### CAPACITY CLAIMED BY SIGNER
Though statute does not require the Notary to fill in the data below, doing so may prove invaluable to persons relying on the document.

☐ INDIVIDUAL
☒ CORPORATE OFFICER(S)
__Assistant Secretary__
TITLE(S)
☐ PARTNER(S)  ☐ LIMITED
                     ☐ GENERAL
☐ ATTORNEY-IN-FACT
☐ TRUSTEE(S)
☐ GUARDIAN/CONSERVATOR
☐ OTHER: _____
_____
_____

SIGNER IS REPRESENTING:
NAME OF PERSON(S) OR ENTITY(IES)
__WMC Mortgage Corp.__

━━━━━ OPTIONAL SECTION ━━━━━

THIS CERTIFICATE MUST BE ATTACHED TO THE DOCUMENT DESCRIBED AT RIGHT:

Though the data requested here is not required by law, it could prevent fraudulent reattachment of this form.

TITLE OR TYPE OF DOCUMENT __Assumption Agreement__

NUMBER OF PAGES __1__  DATE OF DOCUMENT _____

SIGNER(S) OTHER THAN NAMED ABOVE _____

©1992 NATIONAL NOTARY ASSOCIATION • 8236 Remmet Ave., P.O. Box 7184 • Canoga Park, CA 91309-7184

Description: Clark,NV Document-Year.Date.DocID 1997.715.1242 Page: 5 of 8
Order: _____ Comment:

Exhibit E

State of Colorado )
) s.s.
County of Boulder )

On this 11th day of July , 1997, personally appeared before me,
a Notary in and for said County and State,
Patricia P. Porta

known to me to be the person [s] described in and who executed the foregoing
instrument who acknowledged to me that _he executed the same freely and
voluntarily and for the uses and purposes therein mentioned.

_____
Notary Public in and for said County and State

Exhibit E

State of CALIFORNIA )
                    ) s.s.
County of SANTA CLARA )

On this 14th day of July , 19 97 , personally appeared before me,
a Notary in and for said County and State,

EDWARD W. PORTA

known to me to be the person [s] described in and who executed the foregoing
instrument who acknowledged to me that _be_ executed the same freely and
voluntarily and for the uses and purposes therein mentioned.

_Nancy A. Knapp_
Notary Public in and for said County and State

NANCY A. KNAPP, SrA, USAF
PARALEGAL
TITLE/O. USC. SECTION 1044.

NATL. TITLE

07/08/97 TUE 12:35 FAX 703 613 2223

Exhibit E

Page 5

EXHIBIT "A"

Lot Thirty-eight (38) in Block A of CYPRESS IN THE HILLS AT SUMMERLIN BY LEWIS HOMES, as shown by map thereof on file in Book 48 of Plats, page 5, in the Office of the County Recorder of Clark County, Nevada and as amended by Certificate of Amendment recorded January 4, 1991 in Book 910104 as Document No. 00923.

EXCEPTING all mineral, oil, gas, petroleum, other hydrocarbon substances, and all geothermal energy sources in, under or which may be produced from the within described land, which lie below a plane parallel to  and 500 feet below the  surface of the within described land, for  the  purpose of  prospecting,  exploration, development, production or extraction of said substances by means of mines, wells, or derricks, or other equipment, provided however, that the owner of said substances shall have no right to enter upon the surface of the within described land, nor to use said land above said plane parallel to and 500 feet below the surface of such land.

CLARK COUNTY, NEVADA
JUDITH A. VANDEVER, RECORDER
RECORDED AT REQUEST OF:

NATIONAL TITLE COMPANY

07-15-97  15:06  CPD           8
OFFICIAL RECORDS
BOOK:  970715  INST:  01242

FEE:  14.00  RPTT:        .00

Exhibit E

3.25

Affix R.P.T.T.$ .2.86

# GRANT, BARGAIN, SALE DEED



## THIS INDENTURE WITNESSETH: THAT:

EDWARD WENDELL PORTA AND PATRICIA P. PORTA, husband and wife

in consideration of $1.00   the receipt of which is hereby acknowledged, do hereby Grant, Bargain, Sell and Convey to:

WILLIAM R. SCHULTE AND MELANI SCHULTE, husband and wife as joint tenants with right of surviorship

all that real property situated in the City of  Las Vegas        County of Clark State of Nevada, bounded and described as follows:

See Exhibit "A" attached hereto and made a part hereof.

(Commonly known as: 9500 Aspen Glow Drive, Las Vegas, NV)

APN████████

Subject to:  1. Taxes for the fiscal year
             2. Rights of way, reservations, restrictions, easements and conditions of record.

Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining.

Witness_____hand_____this 30ᵀᴴ day of ___JUNE_____ 19 97

_____
Edward Wendell Porta

_____
Patricia Porta

STATE OF  CALIFORNIA
County of  SANTA CLARA

This instrument was acknowledge before me
on 30 JUNE ___ 1997 by  MARTY A. KNAPP
FOR  Edward Wendell Porta

Notary Public _____
(My commission expires  21 AUGUST 2000

TITLE 60 USC, SECTION 1044a.

Escrow No.████████

WHEN RECORDED MAIL TO:
Mr and Mrs Schulte
6010 Smoke Ranch Rd,
Las Vegas, Nv 89108

Exhibit E

Affix R.P.T.T.S _____

# GRANT, BARGAIN, SALE DEED

### THIS INDENTURE WITNESSETH: THAT:

EDWARD WENDELL PORTA AND PATRICIA P. PORTA, husband and wife

in consideration of $1.00  the receipt of which is hereby acknowledged, do hereby
Grant, Bargain, Sell and Conveyt to:

WILLIAM R. SCHULTE AND MELANI SCHULTE, husband and wife as joint tenants
     with right of surviorship

all that real property situated in the City of  Las Vegas         County of Clark
State of Nevada, bounded and described as follows:

See Exhibit "A" attached hereto and made a part hereof.

THIS DOCUMENT IS BEING SIGNED IN COUNTERPART AND SHOULD BE TREATED AS ORIGINAL

(Commonly known as: 9500 Aspen Glow Drive, Las Vegas, NV)

APN ▓▓▓▓▓▓▓▓

Subject to:  1.  Taxes for the fiscal year
          2.  Rights of way, reservations, restrictions, easements and conditions of record.

Together with all and singular the tenements, hereditaments and appurtenances thereunto
belonging or in anywise appertaining.

Witness   my   hand   on   this  18ᵗʰ day of    June   19  97

Edward Wendell Porta

_Patricia P. Porta_
Patricia Porta

STATE OF  Colorado

County of  Boulder

This instrument was acknowledge before me
on   June 18   1997 by
Patricia P. Porta

Notary Public
(My commission expires

My Commission Expires: 03/25/2001
6500 Lookout Road
Boulder, CO 80301

Escrow No. ▓▓▓▓▓▓

WHEN RECORDED MAIL TO:
   Mr and Mrs Schulte

6010 Smoke Ranch, Las Vegas, Nv
                       89108

Exhibit E

. Page 5 -

E X H I B I T "A"

Lot Thirty-eight (38) in Block A of CYPRESS IN THE HILLS AT
SUMMERLIN BY LEWIS HOMES, as shown by map thereof on file in Book
48 of Plats, page 5, in the Office of the County Recorder of Clark
County, Nevada and as amended by Certificate of Amendment recorded
January 4, 1991 in Book 910104 as Document No. 00923.

EXCEPTING all mineral, oil, gas, petroleum, other hydrocarbon
substances, and all geothermal energy sources in, under or which
may be produced from the within described land, which lie below a
plane parallel to and 500 feet below the surface of the within
described land, for the purpose of prospecting, exploration,
development, production or extraction of said substances by means
of mines, wells, or derricks, or other equipment, provided however,
that the owner of said substances shall have no right to enter upon
the surface of the within described land, nor to use said land
above said plane parallel to and 500 feet below the surface of such
land.

CLARK COUNTY, NEVADA
JUDITH A. VANDEVER, RECORDER
RECORDED AT REQUEST OF:
NATIONAL TITLE COMPANY
07-15-97  15:06    CPD          3
BOOK:   970715  OFFICIAL RECORDS
                 INST:    01241
FEE:       9.00  RPTT:        3.25

Exhibit E

20040824-0004140
Fee: $17.00        RPTT: EX#008
09/24/2004 13:58:38    Y20C40000158
Req: WILLIAM R SCHULTE
Frances Deane               N/C: $0.00
Clark County Recorder    Pgs: 4

Parcel No █████

RPTT: Exempt #8

Recording Requested by and
when recorded, return to:

William R. Schulte
7201 W Lake Mead Blvd #550
Las Vegas, Nevada 89128

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

# Grant, Bargain, Sale Deed

THIS INDENTURE WITNESSETH:    That **William R. Schulte and Melani Schulte, as Joint Tenants**, for good and other valuable consideration, do hereby Grant, Bargain, Sell and Convey to 9500 ASPEN GLOW, LLC, a Nevada limited liability company, all of their right, title and interest in that real property situated in the County of Clark, State of Nevada, bounded and described as follows:

As more fully described in EXHIBIT "ONE" attached herein and made a part thereof

**SUBJECT TO:**    1.    Taxes for the current fiscal year.
2.    Restrictions, conditions, reservations, rights, rights of way and easements now of record, if any, or any that actually exist on the property.

Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in any wise appertaining.

IN WITNESS WHEREOF, this instrument has been executed this **24th** day of ___August___, 2004.

_____          _____
William R. Schulte                         Melani Schulte

Exhibit E

STATE OF <u>NEVADA</u>                )

COUNTY OF <u>CLARK</u>            ) ss.
                                                          )

On this 24th day of August _____, 2004, before me, personally appeared **William R. Schulte** personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument, the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

B. Saunders _X Saunders_
Notary Public

> Notary Public - State of Nevada
> County of Clark
> B. SAUNDERS
> My Appointment Expires
> April 4, 2008
> No. 04-88140-1

STATE OF <u>NEVADA</u>                )

COUNTY OF <u>CLARK</u>            ) ss.
                                                          )

On this 24th day of August _____, 2004, before me, personally appeared **Melani Schulte** personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument, the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

B. Saunders _X Saunders_
Notary Public

> Notary Public - State of Nevada
> County of Clark
> B. SAUNDERS
> My Appointment Expires
> April 4, 2008
> No. 04-88140-1

**Grantee's Name and Mail future tax statements to:**

9500 ASPEN GLOW, LLC
William R. Schulte, Manager
7201 W Lake Mead Blvd, #550
Las Vegas, Nevada 89128

Description: Clark,NV Document-Year.Date.DocID 2004.824.4140 Page: 2 of 4
Order: ▆▆▆▆ Comment:

Exhibit E

## EXHIBIT "ONE"

Lot Thirty-eight (38) in Block A of CYPRESS IN THE HILLS AT SUMMERLIN BY LEWIS HOMES, as shown by map thereof on file in Book 48 of Plats, Page 5 in the Office of the County Recorder of Clark County, Nevada, and as amended by Certificate of Amendment recorded January 4, 1991 in book 910104 as Document No. 00923

Excepting all mineral, oil, gas petroleum, other hydrocarbons, substances, and all geothermal energy sources in, under, or which may be produced from the within-described lands, which lie below a plane parallel and 500 feet below the surface of the within described land, for the purpose of prospecting, exploration, development, production, or extraction of said substances by means of mines, well or derricks, or other equipment, provided however, that the owner of said substances shall have no right to enter upon the surface of the within described land, nor to use said land above plane parallel to and 500 feet below the surface of such land.

APN ████████████

████████████████

**STATE OF NEVADA**
**DECLARATION OF VALUE FORM**

1. Assessor Parcel Number(s)
   a) ▮▮▮▮▮▮▮▮▮
   b) _____
   c) _____
   d) _____

2. Type of Property:
   | | | | |
   |---|---|---|---|
   | a) ☐ Vacant Land | b) ☑ Single Fam. Res. | | |
   | c) ☐ Condo/Twnhse | d) ☐ 2-4 Plex | | |
   | e) ☐ Apt. Bldg | f) ☐ Comm'l/Ind'l | | |
   | g) ☐ Agricultural | h) ☐ Mobile Home | | |
   | ☐ Other____ | | | |

   FOR RECORDER'S OPTIONAL USE ONLY
   Book:_____ Page:_____
   Date of Recording:_____
   Notes:

3. Total Value/Sales Price of Property         $
   Deed in Lieu of Foreclosure Only (value of property)  ( )
   Transfer Tax Value:                          $
   Real Property Transfer Tax Due

4. **If Exemption Claimed:**
   a. Transfer Tax Exemption per NRS 375.090, Section  _8_
   b. Explain Reason for Exemption: TRANSFER TO LLC Without Consideration

5. Partial Interest: Percentage being transferred: _____%

   The undersigned declares and acknowledges, under penalty of perjury, pursuant to NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their information and belief, and can be supported by documentation if called upon to substantiate the information provided herein. Furthermore, the parties agree that disallowance of any claimed exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month. Pursuant to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owed.

   Signature _Melani Schulte_                Capacity  _Grantor_

   Signature _____             Capacity _____

   | **SELLER (GRANTOR) INFORMATION**<br>(REQUIRED) | **BUYER (GRANTEE) INFORMATION**<br>(REQUIRED) |
   |---|---|
   | Print Name: WILLIAM + MELANI SCHULTE | Print Name: 9500 ASPEN GLOW LLC |
   | Address: 7201 W. Lake Mead Bl #550 | Address: 7201 W. LAKE MEAD BL 550 |
   | City: LAS VEGAS | City: LAS VEGAS |
   | State: NV   Zip: 89128 | State: NV   Zip: 89128 |

   **COMPANY/PERSON REQUESTING RECORDING** (required if not seller or buyer)
   Print Name: _____   Escrow #: _____
   Address: _____
   City: _____   State: _____ Zip: _____

   AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED

Exhibit E

Entered on Docket
March 08, 2011

Hon. Bruce A. Markell
United States Bankruptcy Judge

1
2
3
4
5
6

Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
Bryan A. Lindsey, Esq.
Nevada Bar No. 10662
The Schwartz Law Firm, Inc.
701 E. Bridger Avenue, Suite 120
Las Vegas, Nevada 89101
Telephone: (702) 385-5544
Facsimile: (702) 385-2741
Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | ) Case No. 09-29123-BAM |
| | ) |
| Melani Schulte and William R. Schulte, | ) Chapter 11 |
| | ) |
| | ) Jointly Administered with: |
| 2704 Sattley LLC, | ) |
| Hot Endeavor LLC, | ) 09-27238-BAM |
| Cherish LLC, | ) 09-27909-BAM |
| SABRECO Inc., | ) 09-28513-BAM |
| Keep Safe LLC | ) 09-31584-BAM |
| | ) 09-31585-BAM |
| Debtors. | ) |
| | ) Confirmation Hearing Date: January 31, 2011 |
| | ) Confirmation Hearing Time:  9:30 a.m. |

**ORDER CONFIRMING THE DEBTORS'**
**CHAPTER 11 PLAN OF REORGANIZATION**

The above-captioned debtors and debtors-in-possession (the "**Debtors**"), having proposed

and filed their Third Amended Chapter 11 Plan of Reorganization (the "**Plan**");[1] and the Court

---

[1]    All capitalized terms used but not defined herein shall have the respective meanings
ascribed to such terms in the Plan.

1

Exhibit E

having conducted a hearing on January 31, 2011 (the "**Hearing**") to consider confirmation of the Plan, and the Court having considered (i) the Debtors' Memorandum of Law in Support of Confirmation of their Plan of Reorganization Under Chapter 11 of the Bankruptcy Code and Reply to Objection (the "**Memo**"), (ii) the declaration of the Debtors submitted in support of their Plan, (iii) the arguments of counsel presented at the Hearing, (iv) the objection of Chase Home Finance, LLC filed with respect to confirmation of the Plan and the response filed thereto, and (v) the pleadings filed in support of confirmation; and the Court being familiar with the Plan and other relevant factors affecting these Chapter 11 cases pending under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "**Bankruptcy Code**"); and the Court having taken judicial notice of the entire record of the Chapter 11 cases, including, without limitation, all pleadings and papers filed by the Debtors in the Chapter 11 cases, the order (the "**Disclosure Statement Order**") entered by the Court on December 1, 2010 (a) approving the Debtors' Fourth Amended Disclosure Statement with Respect to the Plan (the "**Disclosure Statement**"), (b) approving the forms of ballots and solicitation and tabulation procedures, (c) prescribing the form and manner of notice thereof, (d) fixing the last date for filing objections to the Plan, and (e) scheduling the Hearing to consider confirmation for the Chapter 11 Plan and (f) appointing The Schwartz Law Firm, Inc. ("**SLF**") as solicitation and tabulation agent; and the Court having found that due and proper notice has been given with respect to the Hearing and the deadlines and procedures for objections to the Plan and the appearance of all interested parties having been duly noted in the record of the Hearing; and upon the record of the Hearing, and after due deliberation thereon, and sufficient cause appearing therefore;

2

Exhibit E

**IT IS HEREBY FOUND AND CONCLUDED,**[2] that:

<u>**JURISDICTION AND VENUE**</u>

A.      The Court has jurisdiction to conduct the Hearing and to confirm the Plan pursuant to 28 U.S.C. § 1334.

B.      Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b), and this Court has jurisdiction to enter a final order with respect thereto.

C.      The Debtors are proper debtors under section 109 of the Bankruptcy Code and proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.

D.      Each of the conditions precedent to the entry of this Order has been satisfied.

<u>**JUDICIAL NOTICE**</u>

E.      This Court takes judicial notice of the docket of the Debtors' Chapter 11 cases maintained by the Clerk of the Court and/or its duly-appointed agent, and all pleadings and other documents filed, all orders entered, and evidence and arguments made, proffered or adduced at, the hearings held before the Court during the pendency of the Chapter 11 cases.

**STANDARDS FOR CONFIRMATION UNDER
SECTION 1129 OF THE BANKRUPTCY CODE**

F.      <u>Section 1129(a)(1).</u>    The Plan complies with each applicable provision of the Bankruptcy Code.  In particular, the Plan complies with the requirements of sections 1122, 1123, 1125 and 1126 of the Bankruptcy code.

---

[2]    The Findings of Fact and Conclusions of Law contained herein constitute the findings of fact and conclusions of law required to be entered by this Court pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").  To the extent any finding of fact constitutes a conclusion of law, it is adopted as such.  To the extent any conclusion of law constitutes a finding of fact, it is adopted as such.

Exhibit E

G.      **Section 1129(a)(4).**  No payment for services or costs in connection with the Chapter 11 cases or the Plan has been made by the Debtors other than payments that have been authorized by order of the Court.

H.      **Section 1129(a)(7).**  Each holder of an impaired Claim that has not accepted the Plan will, on account of such Claim, receive or retain property under the Plan having a value, as of the effective date of the Plan (the "**Effective Date**"), that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

I.      **Section 1129(a)(8).**  The Plan has not been accepted by all impaired classes of Claims.  Nevertheless, the Plan is confirmable because it satisfies 1129(b)(1) of the Bankruptcy Code with respect to such non-accepting classes of Claims.

J.      **Section 1129(a)(9).**  The Plan provides treatment for Administrative and Priority Claims that is consistent with the requirements of section 1129(a)(9) of the Bankruptcy Code.

K.      **Section 1129(a)(10).**  The Plan has been accepted by a class of impaired Claims that voted on the Plan, including Classes 2(c), (f), (h), (i), (l), (n), (o), (v), (x), (y), (cc), (ff) and (kk), and Class 5, determined without including any acceptance of the Plan by any insider.

L.      **Section 1129(a)(11).**  Confirmation of the Plan is not likely to be followed by the liquidation or the need for the further financial reorganization of the Debtors.

M.      **Section 1129(a)(12).**  The Plan provides for the payment of all fees payable under Section 1930, Title 28 of the United States Code by the Debtors on the Effective Date (or as soon as practicable thereafter).  After the Effective Date and until these Chapter 11 cases are closed, converted or dismissed, the Plan provides for the payment by the Disbursement Agent of all such fees as they become due and payable.

Exhibit E

N.    **Section 1129(a)(15).**  There were no objections to the Plan from creditors holding allowed unsecured claims.  In accordance with section 1129(a)(15) and as indicated on the record at the Hearing, the Debtors will not make any Plan payments to their unsecured creditors.

O.    **Section 1129(c).**  The Plan (including previous versions thereof) is the only plan that has been filed in the Chapter 11 cases that has been found to satisfy the requirements of subsections (a) and (b) of section 1129 of the Bankruptcy Code.  Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

P.    **Section 1129(d).**  No party in interest, including but not limited to any governmental unit, has requested that the Court deny confirmation of the Plan on grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, and the principal purpose of the Plan is not such avoidance.  Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

## EXECUTORY CONTRACTS

Q.    Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, upon the occurrence of the Effective Date, the Plan provides for the rejection of each and every executory contract and unexpired lease that is not listed on Exhibit 2 to the Plan as being rejected.  The Debtors' decisions regarding the assumption and rejection of executory contracts and unexpired leases are based on and are within the sound business judgment of the Debtors, are necessary to the implementation of the Plan and are in the best interests of the Debtors, their estate, holders of Claims and other parties in interest in these Chapter 11 cases.

## SETTLEMENTS

R.    Pursuant to section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019(a), and in consideration of the classification, distributions and other benefits provided under the Plan,

Exhibit E

the provisions of the Plan constitute a good faith compromise and settlement of all the Claims and controversies resolved pursuant to the Plan.

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:

**A.      General**

1.      The Plan, attached hereto as **Exhibit A**, is hereby confirmed and the record of the Hearing is hereby closed.

2.      The Effective Date of the Plan shall occur on the tenth day after the Court signs and enters this Order confirming the Plan (the "**Confirmation Date**").

3.      In accordance with section 1141(a) of the Bankruptcy Code and upon the occurrence of the Effective Date, the Plan shall be binding upon and inure to the benefit of (i) the Debtors and their respective successors and assigns, (ii) the holders of Claims and their respective successors and assigns (whether or not they voted to accept the Plan, whether or not they are impaired under the Plan, and whether or not any such holder has filed or is deemed to have filed a proof of Claim), (iii) any other Person giving, acquiring or receiving property under the Plan, (iv) any party to an executory contract or unexpired lease of a Debtors and (v) each of the foregoing's respective heirs, successors, assigns, trustees, executors, administrators, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries or guardians, if any.

**B.      Treatment of Secured Claims**

4.      The secured portions of the claims of the Debtors' lenders (the "**Lenders**") are reduced to either the appraised value of the underlying properties (the "**Properties**"), pursuant to 11 U.S.C. § 506(a) or as agreed upon between the parties, as set forth in this Order and the Plan.

5.      That the unsecured portions of the Lenders' claims are reduced and shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a).

6

6.      That the secured and unsecured claims against the property located at 509 Canyon Greens Drive, Las Vegas, Nevada, are bifurcated in accordance in accordance with the agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 509 Canyon Greens Drive, Las Vegas, Nevada  are:

    a.   First Lien – America's Servicing Company – Loan Number: ████

        i.          Secured Claim -          $807,141.58

        ii.         Unsecured Claim -      $0.00

    b.   Second Lien – Countrywide/BAC Home Loans Servicing, LP – Loan Number: ████

        i.          Secured Claim -          $0.00

        ii.         Unsecured Claim -      $839,500.00

    c.   Third Lien - Deborah Drake

        i.          Secured Claim -          $0.00

        ii.         Unsecured Claim -      $155,000.00

    d.      Fourth Lien – Z'REA LP

        i.          Secured Claim -          $0.00

        ii.         Unsecured Claim -      $2,000,000.00

    e.   Fifth Lien – Jeffrey Sylvester

        i.          Secured Claim -          $0.00

        ii.         Unsecured Claim -      $72,000.00

7.      That the secured and unsecured claims against the property located at 9500 Aspen Glow Drive, Las Vegas, Nevada, are bifurcated in accordance with the agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims,"

Exhibit E

pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 9500 Aspen Glow Drive, Las Vegas, Nevada, are:

    a.  First Lien – CitiMortgage - Loan Number –

        i.       Secured Claim -     $94,646.23

        ii.      Unsecured Claim -   $0.00

    b.  Second Lien – City National Bank - Loan Number –

        i.       Secured Claim -     $25,777.44

        ii.      Unsecured Claim -   $974,222.56

8.     That the secured and unsecured claims against the property located at 2460 Avenida Cortes, Henderson, Nevada, are bifurcated in accordance with the agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 2460 Avenida Cortes, Henderson, Nevada, are:

    a.  First Lien – JP Morgan Chase Bank - Loan Number –

        i.       Secured Claim -     $69,436.96

        ii.      Unsecured Claim -   $0.00

    b.  Second Lien – BAC Home Loans Servicing, LP - Loan Number –

        i.       Secured Claim -     $39,883.68

        ii.      Unsecured Claim -   $125,427.32

9.     That the secured and unsecured claims against the property located at 4710 Brently Place, Las Vegas, Nevada, are bifurcated in accordance with the agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 4710 Brently Place, Las Vegas, Nevada, are:

Exhibit E

a.  First Lien – BAC Home Loans Servicing  - Loan Number – ██████████

    i.      Secured Claim -    $109,105.70

    ii.     Unsecured Claim -    $0.00

b.  Second Lien – Bank of America - Loan Number – ██████████

    i.      Unsecured Claim -    $100,000.00

c.  Third Lien – Deborah Drake

    i.      Unsecured Claim -    $155,000.00

10.    That the secured and unsecured claims against the property located at 7873 Bridgefield Lane, Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 7873 Bridgefield Lane, Las Vegas, Nevada, are:

a.  First Lien – JP Morgan Chase Bank  - Loan Number – ██████████

    i.      Secured Claim -    $73,213.85

    ii.     Unsecured Claim -    $0.00

b.  Second Lien – Bank of Nevada – Loan Number – ██████████

    i.      Secured Claim  -    $37,309.74

    ii.     Unsecured Claim -    $472,690.26

11.    That the secured and unsecured claims against the property located at 3322 Cheltenham Street, Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and the creditor's wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 3322 Cheltenham Street, Las Vegas, Nevada, are:

a.  First Lien – BAC Home Loans Servicing LP  - Loan Number – ██████████

9

Exhibit E

i.      Secured Claim -     $99,806.60

ii.     Unsecured Claim -   $119,936.54

12.    That the secured and unsecured claims against the property located at 3383 Cloverdale Court, Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 3383 Cloverdale Court, Las Vegas, Nevada, are:

a.  First Lien – BAC Home Loans Servicing, LP  - Loan Number – ▮▮▮▮▮▮

i.      Secured Claim -     $168,856.34

ii.     Unsecured Claim -   $20,438.13

b.  Second Lien – Bank of America – Loan Number – ▮▮▮▮▮▮▮

i.      Secured Claim  -    $0.00

ii.     Unsecured Claim -   $100,000.00

13.    That the secured and unsecured claims against the property located at 1624 Desert Canyon Court, Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 1624 Desert Canyon Court, Las Vegas, Nevada, are:

a.  First Lien – CitiMortgage  - Loan Number – ▮▮▮▮▮▮

i.      Secured Claim -     $90,568.03

ii.     Unsecured Claim -   $0.00

b.  Second Lien – Bank of Nevada – Loan Number – ▮▮▮▮▮▮

i.      Secured Claim  -    $49,244.61

ii.     Unsecured Claim -   $460,755.39

10

14.     That the secured and unsecured claims against the property located at 3729 Discovery Creek Avenue, North Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and the creditor's wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 3729 Discovery Creek Avenue, North Las Vegas, Nevada are:

a.  First Lien – BAC Home Loans Servicing, LP  - Loan Number – █████████

    i.        Secured Claim -    $125,446.93

    ii.      Unsecured Claim -   $128,092.53

15.     That the secured and unsecured claims against the property located at 1392 Echo Falls Avenue, Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 1392 Echo Falls Avenue, Las Vegas, Nevada, are:

a.  First Lien – Litton Loan Servicing  - Loan Number – ████████

    i.        Secured Claim -    $132,000.00

    ii.      Unsecured Claim -   $0.00

b.  Second Lien – Bank of America – Loan Number – █████████

    i.        Secured Claim  -   $0.00

    ii.      Unsecured Claim -   $100,000.00

16.     That the secured and unsecured claims against the property located at 1701 Empire Mine Drive, Henderson, Nevada, are bifurcated in accordance with agreement of the parties; and the creditor's wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 1701 Empire Mine Drive, Henderson, Nevada, are:

11

Exhibit E

a.   First Lien – BAC Home Loans Servicing, LP  - Loan Number – ▮▮▮▮▮

   i.      Secured Claim -      $80,000.00

   ii.     Unsecured Claim -    $99,633.34

17.    That the secured and unsecured claims against the property located at 9020 Feather River Court, Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 9020 Feather River Court, Las Vegas, Nevada, are:

a.   First Lien – JP Morgan Chase Bank  - Loan Number – ▮▮▮▮▮

   i.      Secured Claim -      $73,692.98

   ii.     Unsecured Claim -    $0.00

b.   Second Lien – Countrywide/BAC Home Loans Servicing, LP – Loan Number – ▮▮▮▮▮

   i.      Secured Claim  -     $44,941.33

   ii.     Unsecured Claim -    $153,468.46

18.    That the secured and unsecured claims against the property located at 1013 Golden Hawk Way, Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 1013 Golden Hawk Way, Las Vegas, Nevada, are:

a.   First Lien – CitiMortgage  - Loan Number – ▮▮▮▮▮

   i.      Secured Claim -      $64,854.69

   ii.     Unsecured Claim -    $0.00

b.   Second Lien – BAC Home Loans Servicing, LP – Loan Number – ▮▮▮▮▮

Exhibit E

Transferred to Green Tree Servicing – Loan Number:

    i.      Secured Claim **-**      $0.00

    ii.     Unsecured Claim **-**    $167,756.00

19.     That the secured and unsecured claims against the property located at 4521 W. La Madre Way, North Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 4521 W. La Madre Way, North Las Vegas, Nevada, are:

   a.  First Lien – CitiMortgage **-** Loan Number –

     i.      Secured Claim **-**     $74,304.10

     ii.     Unsecured Claim -    $0.00

   b.  Second Lien – Wells Fargo – Loan Number –

     i.      Secured Claim **-**    $0.00

     ii.     Unsecured Claim -    $149,951.83

20.     That the secured and unsecured claims against the property located at 8562 Lambert Drive, Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 8562 Lambert Drive, Las Vegas, Nevada, are:

   a.  First Lien – CitiMortgage **-** Loan Number –

     i.      Secured Claim -    $138,423.56

     ii.     Unsecured Claim -    $0.00

   b.  Second Lien – BAC Home Loans Servicing – Loan Number –

     i.      Secured Claim **-**    $0.00

13

Exhibit E

ii.      Unsecured Claim **-**   $146,269.17

21.      That the secured and unsecured claims against the property located at 276 Manzanita Ranch Lane, Henderson, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 276 Manzanita Ranch Lane, Henderson, Nevada, are:

a.   First Lien – CitiMortgage **-** Loan Number – ██████████

i.      Secured Claim **-**   $126,038.87

ii.      Unsecured Claim **-**   $0.00

b.   Second Lien **–** Wells Fargo – Loan Number – ████████████

i.      Secured Claim **-**   $9,172.80

ii.      Unsecured Claim **-**   $134,827.20

22.      That the secured and unsecured claims against the property located at 2861 Marathon Drive, Henderson, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 2861 Marathon Drive, Henderson, Nevada, are:

a.   First Lien – CitiMortgage **-** Loan Number – ██████████

i.      Secured Claim **-**   $101,274.22

ii.      Unsecured Claim **-**   $0.00

b.   Second Lien – BAC Home Loans Servicing, LP – Loan Number – ██████████

i.      Secured Claim **-**   $0.00

ii.      Unsecured Claim **-**   $114,363.00

14

Exhibit E

23.    That the secured and unsecured claims against the property located at 5218 Misty Morning Drive, Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 5218 Misty Morning Drive, Las Vegas, Nevada, are:

a.   First Lien – Fifth Third Bank  - Loan Number – ▮▮▮▮▮

    i.        Secured Claim -    $141,640.60

    ii.       Unsecured Claim -   $27,573.99

b.   Second Lien – City National Bank – Loan Number – ▮▮▮▮▮

    i.        Secured Claim  -    $0.00

    ii.       Unsecured Claim -   $1,000,000.00

24.    That the secured and unsecured claims against the property located at 10317 Neopolitan Place, Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 10317 Neopolitan Place, Las Vegas, Nevada, are:

a.   First Lien – BAC Home Loans Servicing, LP  - Loan Number – ▮▮▮▮▮

    i.        Secured Claim -    $122,425.03

    ii.       Unsecured Claim -   $0.00

b.   Second Lien – BAC Home Loans Servicing, LP – Loan Number – ▮▮▮▮▮

    i.        Secured Claim  -    $0.00

    ii.       Unsecured Claim -   $117,081.00

25.    That the secured and unsecured claims against the property located at 956 Ostrich Fern Court, Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and

15

Exhibit E

the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to

11 U.S.C. § 506(a), and the total amounts of the claims against 956 Ostrich Fern Court, Las Vegas,

Nevada, are:

    a.  First Lien – Litton Loan Servicing  - Loan Number – ▮▮▮▮▮▮

        i.        Secured Claim -    $152,440.29

        ii.       Unsecured Claim -    $0.00

    b.  Second Lien – Bank of America – Loan Number – ▮▮▮▮▮▮▮

        i.        Secured Claim -    $0.00

        ii.       Unsecured Claim -    $102,022.20

26.     That the secured and unsecured claims against the property located at 8216 Peaceful

Canyon Drive, Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and

the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to

11 U.S.C. § 506(a), and the total amounts of the claims against 8216 Peaceful Canyon Drive, Las

Vegas, Nevada, are:

    a.  First Lien – JP Morgan Chase Bank  - Loan Number – ▮▮▮▮▮▮

        i.        Secured Claim -    $86,994.02

        ii.       Unsecured Claim -    $0.00

    b.  Second Lien – BAC Home Loans Servicing, LP – Loan Number – ▮▮▮▮▮▮

        i.        Secured Claim -    $39,302.59

        ii.       Unsecured Claim -    $114,127.41

27.     That the secured and unsecured claims against the property located at 6091

Pumpkin Patch Avenue, Las Vegas, Nevada, are bifurcated in accordance with that certain

stipulation between the parties and filed with this court on March 3, 2011 (Docket No. 907); and

the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to

16

Exhibit E

11 U.S.C. § 506(a), and the total amounts of the claims against 6091 Pumpkin Patch Avenue, Las

Vegas, Nevada, are:

    a.   First Lien – Chase Home Finance, LLC  - Loan Number – ▉▉▉▉▉▉▉

        i.      Secured Claim -    $108,307.50

        ii.     Unsecured Claim -   $0.00

    b.  Second Lien – Wells Fargo – Loan Number – ▉▉▉▉▉▉▉

        i.      Secured Claim  -   $0.00

        ii.     Unsecured Claim -   $154,555.66

28.     That the secured and unsecured claims against the property located at 5709

Ridgetree Avenue, Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties;

and the creditors' wholly unsecured claims shall be treated as "general unsecured claims,"

pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 5709 Ridgetree

Avenue, Las Vegas, Nevada, are:

    a.   First Lien – BAC Home Loans Servicing, LP  - Loan Number – ▉▉▉▉▉

        i.      Secured Claim -   $57,963.85

        ii.     Unsecured Claim -   $17,235.43

    b.  Second Lien – Deborah Drake

        i.      Secured Claim  -   $0.00

        ii.     Unsecured Claim -   $155,000.00

29.     That the secured and unsecured claims against the property located at 5524 Rock

Creek Lane, Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and

the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to

11 U.S.C. § 506(a), and the total amounts of the claims against 5524 Rock Creek Lane, Las Vegas,

Nevada, are:

17

Exhibit E

a. First Lien – Fidelity Bank  - Loan Number – █████████

    i.       Secured Claim -    $83,380.18

    ii.      Unsecured Claim -    $0.00

b. Second Lien – Wells Fargo – Loan Number - █████████████

    i.       Secured Claim  -    $0.00

    ii.      Unsecured Claim -    $145,000.00

30.      That the secured and unsecured claims against the property located at 922 Saddle Horn Drive, Henderson, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 922 Saddle Horn Drive, Henderson, Nevada, are:

a. First Lien – CitiMortgage  - Loan Number – █████████

    i.       Secured Claim -    $96,734.23

    ii.      Unsecured Claim -    $0.00

b. Second Lien – Bank of America – Loan Number - █████████

    i.       Secured Claim  -    $0.00

    ii.      Unsecured Claim -    $100,000.00

31.      That the secured and unsecured claims against the property located at 5609 San Ardo Place, Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 5609 San Ardo Place, Las Vegas, Nevada, are:

a. First Lien – CitiMortgage  - Loan Number – █████████

    i.       Secured Claim -    $100,573.39

Exhibit E

ii.      Unsecured Claim - $0.00

b.  Second Lien – U.S. Bank – Loan Number: ▮▮▮▮▮▮

   i.      Secured Claim - $0.00

   ii.      Unsecured Claim - $48,600.00

c.  Third Lien – Deborah Drake

   i.      Secured Claim - $0.00

   ii.      Unsecured Claim - $155,000.00

32.     That the secured and unsecured claims against the property located at 2704 Sattley Circle, Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 2704 Sattley Circle, Las Vegas, Nevada, are:

a.  First Lien – Maxine Llewellyn and Mel Elizer

   i.      Secured Claim - $210,000.00

   ii.      Unsecured Claim - $0.00

b.  Second Lien – Wells Fargo – Loan Number - ▮▮▮▮▮▮

   i.      Secured Claim - $0.00

   ii.      Unsecured Claim - $31,531.11

c.  Third Lien – Bank of Nevada – Loan Number – ▮▮▮▮▮

   i.      Secured Claim - $0.00

   ii.      Unsecured Claim - $510,000.00

33.     That the secured and unsecured claims against the property located at 9521 Sierra Summit Avenue, Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims,"

19

Exhibit E

pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 9521 Sierra Summit Avenue, Las Vegas, Nevada, are:

    a.  First Lien – BAC Home Loans Servicing, LP – Loan Number - ███████

        i.      Secured Claim -      $103,824.33

        ii.     Unsecured Claim -   $0.00

    b.  Second Lien – BAC Home Loans Servicing, LP – Loan Number – ███████

       Transferred to Green Tree Servicing – Loan Number: ███████

        i.      Secured Claim -   $0.00

        ii.     Unsecured Claim -  $151,713.00

34.     That the secured and unsecured claims against the property located at 1528 Splinter Rock Way, North Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 1528 Splinter Rock Way, North Las Vegas, Nevada, are:

    a.  First Lien – Wells Fargo – Loan Number - ███████

        i.      Secured Claim -      $105,942.62

        ii.     Unsecured Claim -   $0.00

    b.  Second Lien – Bank of Nevada – Loan Number - ███████

        i.      Secured Claim -   $0.00

        ii.     Unsecured Claim -   $510,000.00

35.     That the secured and unsecured claims against the property located at 1194 Stormy Valley Road, Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to

20

11 U.S.C. § 506(a), and the total amounts of the claims against 1194 Stormy Valley Road, Las Vegas, Nevada, are:

    a.  First Lien – CitiMortgage– Loan Number – ▮▮▮▮▮▮▮▮

        i.        Secured Claim -     $107,161.54

        ii.       Unsecured Claim -   $0.00

    b.  Second Lien – Wells Fargo – Loan Number - ▮▮▮▮▮▮▮▮▮▮

        i.        Secured Claim  -    $0.00

        ii.       Unsecured Claim -   $130,000.00

36.     That the secured and unsecured claims against the property located at 2290 Surrey Meadows Avenue, Henderson, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 2290 Surrey Meadows Avenue, Henderson, Nevada, are:

    a.  First Lien – CitiMortgage– Loan Number – ▮▮▮▮▮▮▮▮

        i.        Secured Claim -     $160,723.30

        ii.       Unsecured Claim -   $0.00

    b.  Second Lien – BAC Home Loans Servicing, LP – Loan Number – ▮▮▮▮▮▮▮▮

       Transferred to Green Tree Servicing – Loan Number: ▮▮▮▮▮▮▮

        i.        Secured Claim  -    $0.00

        ii.       Unsecured Claim -   $168,075.00

37.     That the secured and unsecured claims against the property located at 2614 Sweet Leilani Avenue, North Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims,"

Exhibit E

pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 2614 Sweet Leilani Avenue, North Las Vegas, Nevada, are:

    a.  First Lien – BAC Home Loans Servicing, LP – Loan Number – ▮▮▮▮▮▮

        i.          Secured Claim -    $130,720.99

        ii.        Unsecured Claim -    $48,298.87

    b.  Second Lien – Jeff Sylvester

        i.          Secured Claim  -    $0.00

        ii.        Unsecured Claim -    $72,000.00

38.      That the secured and unsecured claims against the property located at 2525 Via Di Autostrada, Henderson, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 2525 Via Di Autostrada, Henderson, Nevada, are:

    a.  First Lien – CitiMortgage – Loan Number – ▮▮▮▮▮▮

        i.          Secured Claim -    $85,280.12

        ii.        Unsecured Claim -    $0.00

    b.  Second Lien – Homecomings Financial – Loan Number – ▮▮▮▮▮▮

        Transferred to GMAC Mortgage – Loan Number: ▮▮▮▮▮▮

        Transferred to Specialized Loan Servicing – Loan Number: ▮▮▮▮▮▮

        i.          Secured Claim  -    $0.00

        ii.        Unsecured Claim -    $141,800.00

39.      That the unsecured portions of the Lenders' claims be reclassified as general unsecured claims with other general unsecured creditors through the Debtors' Plan.

Exhibit E

40.     That Lenders' secured rights and/or lien-holder rights in the Properties are hereby modified as set forth above, provided, however, all remaining terms of the mortgages and notes related to the Properties, except as expressly modified herein or in the Plan, shall remain the same.

**C.      Plan Implementation.**

41.     The Debtors are authorized to undertake or cause to be undertaken any and all acts and actions contemplated by the Plan or required to consummate and implement the provisions of the Plan, prior to, on and after the Effective Date, including without limitation, entering, executing, delivering, filing or recording any agreements, instruments or documents necessary to implement the Plan.  All such actions shall be deemed to have occurred and shall be in effect without any requirement or further action by the Debtors.

42.     Each federal, state, commonwealth, local, foreign or other governmental agency is hereby directed and authorized to accept any and all documents, mortgages and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan and this Order.

**D.      Plan Distributions.**

43.     There were no objections to the Plan from creditors holding allowed unsecured claims.  In accordance with section 1129(a)(15) and as indicated on the record at the Hearing, the Debtors will not make any Plan payments to their unsecured creditors.

44.     In accordance with the Plan, all applications for payment of fees and reimbursement of expenses by professionals retained in these Chapter 11 cases as well as parties seeking compensation pursuant to section 503 of the Bankruptcy Code must be filed with the Court by the date that is no later than forty-five (45) days after the Confirmation Date (or, if such date is not a Business Day, by the next Business Day thereafter).  Any Person or entity that fails to file such an application or request on or before such date shall be forever barred from asserting such

23

Exhibit E

Administrative Claim against the Debtors or their property, and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover such Administrative Claim.  Applications for approval of professionals' fees not previously awarded during the pendency of the Chapter 11 cases may be included in such professional's final applications as set forth herein and in the Plan.  Objections, if any, to fee Claims shall be filed and served not later than fourteen (14) business days prior to the date set by the Court for the hearing to consider such requests.

**E.     Executory Contracts and Leases.**

45.     As of the Confirmation Date, all executory contracts and unexpired leases of the Debtors shall be assumed or rejected, as set forth in the Plan, pursuant to sections 365 and 1123 of the Bankruptcy Code.

46.     Upon the Confirmation Date of the Plan, the Debtors shall provide notice of the rejection pursuant to the Plan of an executory contract or unexpired lease to any non-debtor parties.  In the event the Plan otherwise is not consummated, the Debtors may modify or amend (including, without limitation, making additions and/or deletions) all rights of the Debtors to assume or reject its unexpired leases and executory contracts shall be reinstated to the date immediately prior to the date of this Order.

**F.     Taxes and Transfers.**

47.     The transfer of any asset under the Plan or this Order has been duly authorized, and when issued, as provided in the Plan, will be validly issued, fully paid and nonassessable.

48.     Creditors seeking to protect the validity, enforceability, perfection and priority of the liens and security interests granted and/or continued under the Plan may file financing statements, deeds of trust, mortgages or other documents and take any and all actions as they deem

Exhibit E

appropriate, in their respective discretion, to confirm the perfection of such security interests and liens.

49.     Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and all appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

50.     All filing and recording officers are hereby directed to accept for filing or recording all instruments of transfer to be filed and recorded notwithstanding any contrary provision of applicable non-bankruptcy law.  This Court retains jurisdiction to enforce the foregoing direction, by contempt proceedings or otherwise.

**G.     Miscellaneous.**

51.     From and after the Confirmation Date, this Court shall retain and have exclusive jurisdiction over all matters arising out of these Chapter 11 cases pursuant to, and for purposes of, subsection 105(a) and section 1142 of the Bankruptcy Code, including without limitation, jurisdiction over the matters set forth in the Plan, which is incorporated herein by reference, as if set forth *in extenso*.

52.     Except as otherwise provided in the Plan and this Order, notice of all subsequent pleadings in these Chapter 11 cases shall be limited to counsel for the Debtors, the United States Trustee and any party known to be directly affected by the relief sought.

53.     Notwithstanding anything in the Plan or this Order to the contrary, the amount of any priority tax Claim for U.S. federal income taxes, if any, and the rights of the holder of such Claim, if any, to payment in respect thereof shall: (a) survive the Effective Date and consummation

25

of the Plan and be determined in the manner and by the administrative or judicial tribunal in which the amount of such Claim and the rights of the holder of such Claim would have been resolved or adjudicated if the Chapter 11 cases had not been commenced; and (b) not be discharged, impaired or adversely affected by the Plan.  In accordance with section 1124 of the Bankruptcy Code, the Plan shall leave unaltered the legal, equitable and contractual rights of a holder of such Claim.

54.    Failure specifically to include or reference particular sections or provisions of the Plan or any related agreement in this Order shall not diminish or impair the effectiveness of such sections or provisions, it being the intent of the Court that the Plan be confirmed and such related agreements be approved in their entirety.

55.    All entities holding Claims against the Debtors that are treated under the Plan are hereby directed to execute, deliver, file or record any document, and to take any action necessary to implement, consummate and otherwise effect the Plan in accordance with its terms, and all such entities shall be bound by the terms and provisions of all documents executed and delivered by them in connection with the Plan.

56.    In accordance with section 1142 of the Bankruptcy Code, the Debtors and any other entity designated pursuant to the Plan, are hereby authorized, empowered and directed to issue, execute, deliver, file and record any document, and to take any action necessary or appropriate to implement, consummate and otherwise effectuate the Plan in accordance with its terms, and all such entities shall be bound by the terms and provisions of all documents issued, executed and delivered by them as necessary or appropriate to implement or effectuate the transactions contemplated by the Plan and as set forth in the Plan.

57.    Any document related to the Plan that refers to a plan of reorganization of the Debtors, other than the Plan confirmed by this Order, shall be, and it hereby is, deemed to be

Exhibit E

modified such that the reference to a plan of reorganization of the Debtors in such document shall mean the Plan confirmed by this Order, as appropriate.

58.    In the event of an inconsistency between the Plan, on the one hand, and any other agreement, instrument or document intended to implement the provisions of the Plan, on the other, the provisions of the Plan shall govern (unless otherwise expressly provided for in such agreement, instrument or document).  In the event of any inconsistency between the Plan or any agreement, instrument or document intended to implement the Plan, on the one hand, and this Order, on the other, the provisions of this Order shall govern.

59.    The provisions of this Order are integrated with each other and are non-severable and mutually dependent.

60.    This Order is a final order and the period in which an appeal must be filed shall commence immediately upon the entry hereof.

61.    If any or all of the provisions of this Order are hereafter reversed, modified or vacated by subsequent order of this Court or any other Court, such reversal, modification or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtors receipt of written notice of such order. Notwithstanding any such reversal, modification or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Order and the Plan and all related documents or any amendments or modifications thereto.

27

Exhibit E

62.     The Plan shall be substantially consummated on the Confirmation Date because the

transactions described in the Plan shall have occurred or shall have been provided for.


Submitted by:

THE SCHWARTZ LAW FIRM, INC.

By: /s/ Samuel A. Schwartz
Samuel A. Schwartz, Esq., NBN 10985
701 E. Bridger Ave., Suite 120
Las Vegas, NV 89101
*Attorneys for Debtors*

28

Exhibit E

**SUBMISSION TO COUNSEL FOR APPROVAL PURSUANT TO LR 9021**

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

_____ The court has waived the requirement set forth in LR 9021(b)(1).

_____ No party appeared at the hearing or filed an objection to the motion.

__X__ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order or failed to respond, as indicated below [list each party and whether the party has approved, disapproved or failed to respond to the document]:

_____ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of this order.

APPROVED:            Michael Chen, Esq.; Brittany Wood, Esq.; Ace Van Patten, Esq.

DISAPPROVED:

FAILED TO RESPOND:

Submitted by:

THE SCHWARTZ LAW FIRM, INC.

By: /s/ Samuel A. Schwartz
Samuel A. Schwartz, Esq., NBN 10985
701 E. Bridger Ave., Suite 120
Las Vegas, NV 89101
*Attorneys for Debtors*

# # #

29

Exhibit E

# EXHIBIT A

Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
Bryan A. Lindsey, Esq.
Nevada Bar No. 10662
The Schwartz Law Firm, Inc.
701 E. Bridger Avenue, Suite 120
Las Vegas, Nevada 89101
Telephone: (702) 385-5544
Facsimile: (702) 385-2741
Attorneys for the Debtors

### UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA

| | | |
|---|---|---|
| In re: | ) | Case No. 09-29123-BAM |
| | ) | Chapter 11 |
| Melani Schulte and William R. Schulte, | ) | |
| | ) | Jointly Administered with: |
| | ) | |
| 2704 Sattley LLC, | ) | 09-27238-BAM |
| Hot Endeavor LLC, | ) | 09-27909-BAM |
| Cherish LLC, | ) | 09-28513-BAM |
| SABRECO Inc., | ) | 09-31584-BAM |
| Keep Safe LLC | ) | 09-31585-BAM |
| | ) | |
| Debtors. | ) | Confirmation Hearing Date: January 31, 2011 |
| | ) | Confirmation Hearing Time: 9:30 a.m. |
| | ) | |

### THIRD AMENDED JOINT PLAN OF REORGANIZATION OF
### MELANI SCHULTE AND WILLIAM R. SCHULTE

ARTICLE I - SUMMARY

This Third Amended Joint Plan of Reorganization (the "**Plan**") under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq*. (the "**Bankruptcy Code**") proposes to pay creditors of the above-captioned debtors and debtors-in-possession (the "**Debtors**") from the reorganization of their residential property and secured debt.

This Plan provides for 2 classes of secured claims and 3 classes of unsecured claims. Unsecured creditors holding allowed claims may receive distributions, if objections to the Plan are lodged under Section 1129(a)(15) of the Bankruptcy Code, which the Debtors have valued at approximately 4% of each creditor's allowed claim. If no objections are lodged, the Debtors may elect to make zero distributions to general unsecured creditors. This Plan also provides for the payment of administrative and priority claims in full on the effective date of this Plan, or as agreed by the holder of such administrative or priority claim.

Exhibit E

All creditors should refer to Articles II through IV of this Plan for information regarding the precise treatment of their claims.  A Fourth Amended Joint Disclosure Statement (the "**Disclosure Statement**") that provides more detailed information regarding this Plan and the rights of creditors was circulated with this Plan.  Your rights may be affected.  You should read these papers carefully and discuss them with your attorney.  If you do not have an attorney, you may wish to consult one.

### ARTICLE II - CLASSIFICATION AND TREATMENT OF CLAIMS

This Plan constitutes the Chapter 11 plan of reorganization of the Debtors.  All Claims against the Debtors are placed in classes (each a "**Class**") as designated by Classes 1 through 5. In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims and Priority Tax Claims.

The categories of Claims (as defined in the Bankruptcy Code, listed below classify Claims for all purposes, including, without limitation, voting, confirmation and distribution pursuant to this Plan sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim to be classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim qualifies within the description of such different Class.  A Claim is in a particular Class only to the extent that any such Claim is allowed in that Class and has not been paid or otherwise settled prior to the effective date of the Plan as determined in paragraph 6.02 below.

**THE DEBTORS INTEND TO SEEK SUBSTANTIVE CONSOLIDATION IN CONNECTION WITH THE PAYMENT OF THE GENERAL UNSECURED CLAIMS AGAINST THEIR ESTATES THROUGH THE PLAN.  IF SUCH SUBSTANTIVE CONSOLIDATION IS AUTHORIZED AND ORDERED BY THE COURT, CERTAIN ALLOWED CLAIMS OF THE DEBTORS OR THEIR ESTATES SHALL BE SATISFIED FROM THE COMBINED CASH AND OTHER PROPERTY OF THE DEBTORS AND THEIR COMBINED ESTATES.  ALL ALLOWED SECURED CLAIMS IN CLASSES 1 AND 2 WILL RETAIN THEIR LIENS AND NOT BE ELIMINATED AS THE RESULT OF THE SUBSTANTIVE CONSOLIDATION.**

**Classification of Claims**

2.01    Class 1(a) – Secured Claim of America's Servicing Company

(a)    *Classification*: Class 1(a) consists of the Secured Claim of America's Servicing Company against the Debtors' property located at 509 Canyon Greens, Las Vegas, Nevada 89144, which is secured by a lien against the Debtors' residential property, loan number ███████.

(b)    *Treatment*: The holder of the allowed Class 1(a) Secured Claim shall be unimpaired and paid in full in accordance with the terms of its related note and mortgage.

Exhibit E

(c)     *Voting*: Class 1(a) is an unimpaired class, and the holder of the Class 1(a) claim is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the holder of the Class 1(a) claim is not entitled to vote to accept or reject the Plan.

2.02     Class 2(a) –Secured Claim of CitiMortgage

(a)     *Classification*: Class 2(a) consists of the Secured Claim of CitiMortgage against the Debtors' property located at 9500 Aspen Glow Drive, Las Vegas, Nevada 89134 which is secured by a lien against the Debtors' residential property, loan number ███████████.

(b)     *Treatment*: The holder of the allowed Class 2(a) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth in **Exhibit 1**, attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(a) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan.  The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(a) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(a) is an impaired class, and the holder of the Class 2(a) claim is entitled to vote to accept or reject the Plan.

Class 2(b) –Secured Claim of City National Bank

(a)     *Classification*: Class 2(b) consists of the Secured Claim of City National Bank against the Debtors' property located at 9500 Aspen Glow Drive, Las Vegas, Nevada 89134, which is secured by a lien against the Debtors' residential property, loan number ████████.

(b)     *Treatment*: The holder of the allowed Class 2(b) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth in **Exhibit 1**, attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(b) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan.  The confirmation order approving

Exhibit E

the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(b) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(b) is an impaired class, and the holder of the Class 2(b) claim is entitled to vote to accept or reject the Plan.

Class 2(c) –Secured Claim of Chase Home Finance

(a)     *Classification*: Class 2(c) consists of the Secured Claim of Chase Home Finance against the Debtors' property located at 2460 Avenida Cortes, Henderson, Nevada 89074, which is secured by a lien against the Debtors' residential property, loan number ▮▮▮▮▮▮▮▮.

(b)     *Treatment*: The holder of the allowed Class 2(c) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(c) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan.  The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(c) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(c) is an impaired class, and the holder of the Class 2(c) claim is entitled to vote to accept or reject the Plan.

Class 2(d) –Secured Claim of Countywide Home Loans

(a)     *Classification*: Class 2(d) consists of the Secured Claim of Countrywide Home Loans against the Debtors' property located at 2460 Avenida Cortes, Henderson, Nevada 89074, which is secured by a lien against the Debtors' residential property, loan number ▮▮▮▮▮▮▮▮.

(b)     *Treatment*: The holder of the allowed Class 2(d) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth in **Exhibit 1**, attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

Exhibit E

(c)     *Valuation*: The Class 2(d) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan.  The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(d) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(d) is an impaired class, and the holder of the Class 2(d) claim is entitled to vote to accept or reject the Plan.

Class 2(e) –Secured Claim of Countrywide Home Loans

(a)     *Classification*: Class 2(e) consists of the Secured Claim of Countrywide Home Loans against the Debtors' property located at 4710 Brently Place, Las Vegas, Nevada 89122, which is secured by a lien against the Debtors' residential property, loan number ▇▇▇▇▇▇▇.

(b)     *Treatment*: The holder of the allowed Class 2(e) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(e) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan.  The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(e) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(e) is an impaired class, and the holder of the Class 2(e) claim is entitled to vote to accept or reject the Plan.

Class 2(f) –Secured Claim of Chase Home Finance

(a)     *Classification*: Class 2(f) consists of the Secured Claim of Chase Home Finance against the Debtors' property located at 7873 Bridgefield Lane, Las Vegas, Nevada 89147, which is secured by a lien against the Debtors' residential property, loan number ▇▇▇▇▇▇▇▇.

Exhibit E

(b)    *Treatment*: The holder of the allowed Class 2(f) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)    *Valuation*: The Class 2(f) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan.  The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)    *Unsecured Portion of the Claim*: Any amount of a Class 2(f) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)    *Voting*: Class 2(f) is an impaired class, and the holder of the Class 2(f) claim is entitled to vote to accept or reject the Plan.

Class 2(g) –Secured Claim of Bank of Nevada

(a)    *Classification*: Class 2(g) consists of the Secured Claim of Bank of Nevada against the Debtors' property located at 7873 Bridgefield Lane, Las Vegas, Nevada 89147, which is secured by a lien against the Debtors' residential property, loan number ▮▮▮▮▮▮▮.

(b)    *Treatment*: The holder of the allowed Class 2(g) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)    *Valuation*: The Class 2(g) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan.  The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)    *Unsecured Portion of the Claim*: Any amount of a Class 2(g) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)    *Voting*: Class 2(g) is an impaired class, and the holder of the Class 2(g) claim is entitled to vote to accept or reject the Plan.

Exhibit E

### Class 2(h) –Secured Claim of Countrywide Home Loans

(a)    *Classification*: Class 2(h) consists of the Secured Claim of Countrywide Home Loans against the Debtors' property located at 3322 Cheltenham Street, Las Vegas, Nevada 89129, which is secured by a lien against the Debtors' residential property, loan number ███████.

(b)    *Treatment*: The holder of the allowed Class 2(h) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)    *Valuation*: The Class 2(h) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan.  The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)    *Unsecured Portion of the Claim*: Any amount of a Class 2(h) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)    *Voting*: Class 2(h) is an impaired class, and the holder of the Class 2(h) claim is entitled to vote to accept or reject the Plan.

### Class 2(i) –Secured Claim of Countrywide Home Loans

(a)    *Classification*: Class 2(i) consists of the Secured Claim of Countrywide Home Loans against the Debtors' property located at 3383 Cloverdale Court, Las Vegas, Nevada 89117, which is secured by a lien against the Debtors' residential property, loan number ███████.

(b)    *Treatment*: The holder of the allowed Class 2(i) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)    *Valuation*: The Class 2(i) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan.  The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)    *Unsecured Portion of the Claim*: Any amount of a Class 2(i) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

Exhibit E

(e) *Voting*: Class 2(i) is an impaired class, and the holder of the Class 2(i) claim is entitled to vote to accept or reject the Plan.

Class 2(j) –Secured Claim of CitiMortgage, Inc.

(a) *Classification*: Class 2(j) consists of the Secured Claim of CitiMortgage, Inc. against the Debtors' property located at 1624 Desert Canyon Court, Las Vegas, Nevada 89128 which is secured by a lien against the Debtors' residential property, loan number ▮▮▮▮▮▮▮▮▮.

(b) *Treatment*: The holder of the allowed Class 2(j) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c) *Valuation*: The Class 2(j) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d) *Unsecured Portion of the Claim*: Any amount of a Class 2(j) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e) *Voting*: Class 2(j) is an impaired class, and the holder of the Class 2(j) claim is entitled to vote to accept or reject the Plan.

Class 2(k) –Secured Claim of Bank of Nevada

(a) *Classification*: Class 2(k) consists of the Secured Claim of Bank of Nevada against the Debtors' property located at 1624 Desert Canyon Court, Las Vegas, Nevada 89128 which is secured by a lien against the Debtors' residential property, loan number ▮▮▮▮▮▮▮▮.

(b) *Treatment*: The holder of the allowed Class 2(k) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c) *Valuation*: The Class 2(k) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

Exhibit E

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(k) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(k) is an impaired class, and the holder of the Class 2(k) claim is entitled to vote to accept or reject the Plan.

Class 2(l) –Secured Claim of Countrywide Home Loans

(a)     *Classification*: Class 2(l) consists of the Secured Claim of Countrywide Home Loans against the Debtors' property located at 3729 Discovery Creek Avenue, North Las Vegas, Nevada 89031, which is secured by a lien against the Debtors' residential property, loan number ████████.

(b)     *Treatment*: The holder of the allowed Class 2(l) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(l) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan.  The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(l) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(l) is an impaired class, and the holder of the Class 2(l) claim is entitled to vote to accept or reject the Plan.

Class 2(m) –Secured Claim of Litton Loan Servicing

(a)     *Classification*: Class 2(m) consists of the Secured Claim of Litton Loan Servicing against the Debtors' property located at 1392 Echo Falls Avenue, Las Vegas, Nevada 89183, which is secured by a lien against the Debtors' residential property, loan number ████████.

(b)     *Treatment*: The holder of the allowed Class 2(m) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(m) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property

Page | 9

Exhibit E

as set forth on **Exhibit 1** of the Plan.  The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)   *Unsecured Portion of the Claim*: Any amount of a Class 2(m) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)   *Voting*: Class 2(m) is an impaired class, and the holder of the Class 2(m) claim is entitled to vote to accept or reject the Plan.

Class 2(n) –Secured Claim of Countrywide Home Loans

(a)   *Classification*: Class 2(n) consists of the Secured Claim of Countrywide Home Loans against the Debtors' property located at 1701 Empire Mine Drive, Henderson, Nevada 89014, which is secured by a lien against the Debtors' residential property, loan number ▆▆▆▆▆▆.

(b)   *Treatment*: The holder of the allowed Class 2(n) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)   *Valuation*: The Class 2(n) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan.  The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)   *Unsecured Portion of the Claim*: Any amount of a Class 2(n) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)   *Voting*: Class 2(n) is an impaired class, and the holder of the Class 2(n) claim is entitled to vote to accept or reject the Plan.

Class 2(o) –Secured Claim of Chase Home Finance

(a)   *Classification*: Class 2(o) consists of the Secured Claim of Chase Home Finance against the Debtors' property located at 9020 Feather River Court, Las Vegas, Nevada 89117, which is secured by a lien against the Debtors' residential property, loan number ▆▆▆▆▆▆.

(b)   *Treatment*: The holder of the allowed Class 2(o) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

Exhibit E

(c)     *Valuation*: The Class 2(o) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan.  The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(o) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(o) is an impaired class, and the holder of the Class 2(o) claim is entitled to vote to accept or reject the Plan.

Class 2(p) −Secured Claim of Countrywide Home Loans

(a)     *Classification*: Class 2(p) consists of the Secured Claim of Countrywide Home Loans against the Debtors' property located at 9020 Feather River Court, Las Vegas, Nevada 89117, which is secured by a lien against the Debtors' residential property, loan number ▮▮▮▮▮▮▮.

(b)     *Treatment*: The holder of the allowed Class 2(p) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(p) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan.  The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(p) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(p) is an impaired class, and the holder of the Class 2(p) claim is entitled to vote to accept or reject the Plan.

Class 2(q) −Secured Claim of CitiMortgage, Inc.

(a)     *Classification*: Class 2(q) consists of the Secured Claim of CitiMortgage, Inc. against the Debtors' property located at 1013 Golden Hawk Way, Las Vegas, Nevada 89108, which is secured by a lien against the Debtors' residential property, loan number ▮▮▮▮▮▮▮.

Exhibit E

(b)    *Treatment*: The holder of the allowed Class 2(q) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)    *Valuation*: The Class 2(q) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan.  The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)    *Unsecured Portion of the Claim*: Any amount of a Class 2(q) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)    *Voting*: Class 2(q) is an impaired class, and the holder of the Class 2(q) claim is entitled to vote to accept or reject the Plan.

Class 2(r) –Secured Claim of CitiMortgage, Inc.

(a)    *Classification*: Class 2(r) consists of the Secured Claim of CitiMortgage, Inc. against the Debtors' property located at 4521 W. La Madre Way, North Las Vegas, Nevada 89031, which is secured by a lien against the Debtors' residential property, loan number ███████████.

(b)    *Treatment*: The holder of the allowed Class 2(r) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)    *Valuation*: The Class 2(r) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan.  The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)    *Unsecured Portion of the Claim*: Any amount of a Class 2(r) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)    *Voting*: Class 2(r) is an impaired class, and the holder of the Class 2(r) claim is entitled to vote to accept or reject the Plan.

Exhibit E

Class 2(s) –Secured Claim of CitiMortgage, Inc.

(a)     *Classification*: Class 2(s) consists of the Secured Claim of CitiMortgage, Inc. against the Debtors' property located at 8562 Lambert Drive, Las Vegas, Nevada 89147, which is secured by a lien against the Debtors' residential property, loan number ████████.

(b)     *Treatment*: The holder of the allowed Class 2(s) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(s) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan.  The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(s) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(s) is an impaired class, and the holder of the Class 2(s) claim is entitled to vote to accept or reject the Plan.

Class 2(t) –Secured Claim of CitiMortgage, Inc.

(a)     *Classification*: Class 2(t) consists of the Secured Claim of CitiMortgage, Inc. against the Debtors' property located at 276 Manzanita Ranch Lane, Henderson, Nevada 89052 which is secured by a lien against the Debtors' residential property, loan number ████████.

(b)     *Treatment*: The holder of the allowed Class 2(t) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(t) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan.  The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(t) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

Exhibit E

(e)     *Voting*: Class 2(t) is an impaired class, and the holder of the Class 2(t) claim is entitled to vote to accept or reject the Plan.

Class 2(u) –Secured Claim of CitiMortgage, Inc.

(a)     *Classification*: Class 2(u) consists of the Secured Claim of CitiMortgage, Inc. against the Debtors' property located at 2861 Marathon Drive, Henderson, Nevada 89074, which is secured by a lien against the Debtors' residential property, loan number ▇▇▇▇▇▇▇▇▇.

(b)     *Treatment*: The holder of the allowed Class 2(u) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(r) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan.  The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(u) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(u) is an impaired class, and the holder of the Class 2(u) claim is entitled to vote to accept or reject the Plan.

Class 2(v) –Secured Claim of Fifth Third Bank

(a)     *Classification*: Class 2(v) consists of the Secured Claim of Fifth Third Bank against the Debtors' property located at 5218 Misty Morning Drive, Las Vegas, Nevada 89118, which is secured by a lien against the Debtors' residential property, loan number ▇▇▇▇▇▇▇▇.

(b)     *Treatment*: The holder of the allowed Class 2(v) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(v) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan.  The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

Exhibit E

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(v) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(v) is an impaired class, and the holder of the Class 2(v) claim is entitled to vote to accept or reject the Plan.

Class 2(w) –Secured Claim of Countrywide Home Loans

(a)     *Classification*: Class 2(w) consists of the Secured Claim of Countrywide Home Loans against the Debtors' property located at 10317 Neopolitan Place, Las Vegas, Nevada 89144 which is secured by a lien against the Debtors' residential property, loan number ▇▇▇▇▇▇▇▇.

(b)     *Treatment*: The holder of the allowed Class 2(w) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(w) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan.  The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(w) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(w) is an impaired class, and the holder of the Class 2(w) claim is entitled to vote to accept or reject the Plan.

Class 2(x) –Secured Claim of Litton Loan Servicing

(a)     *Classification*: Class 2(x) consists of the Secured Claim of Litton Loan Servicing against the Debtors' property located at 956 Ostrich Fern Court, Las Vegas, Nevada 89183, which is secured by a lien against the Debtors' residential property, loan number ▇▇▇▇▇▇▇▇.

(b)     *Treatment*: The holder of the allowed Class 2(x) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(x) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property

Exhibit E

as set forth on **Exhibit 1** of the Plan.  The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(x) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(x) is an impaired class, and the holder of the Class 2(x) claim is entitled to vote to accept or reject the Plan.

Class 2(y) –Secured Claim of Chase Home Finance

(a)     *Classification*: Class 2(y) consists of the Secured Claim of Chase Home Finance against the Debtors' property located at 8216 Peaceful Canyon Drive, Las Vegas, Nevada 89128, which is secured by a lien against the Debtors' residential property, loan number ▇▇▇▇▇▇▇.

(b)     *Treatment*: The holder of the allowed Class 2(y) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(y) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan.  The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(y) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(y) is an impaired class, and the holder of the Class 2(y) claim is entitled to vote to accept or reject the Plan.

Class 2(z) –Secured Claim of Countrywide Home Loans

(a)     *Classification*: Class 2(z) consists of the Secured Claim of Countrywide Home Loans against the Debtors' property located at 8216 Peaceful Canyon Drive, Las Vegas, Nevada 89128, which is secured by a lien against the Debtors' residential property, loan number ▇▇▇▇▇▇▇.

(b)     *Treatment*: The holder of the allowed Class 2(z) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

Exhibit E

(c) *Valuation*: The Class 2(z) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d) *Unsecured Portion of the Claim*: Any amount of a Class 2(z) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e) *Voting*: Class 2(z) is an impaired class, and the holder of the Class 2(z) claim is entitled to vote to accept or reject the Plan.

Class 2(aa) –Secured Claim of Chase Manhattan Mortgage

(a) *Classification*: Class 2(aa) consists of the Secured Claim of Chase Manhattan Mortgage against the Debtors' property located at 6091 Pumpkin Patch Avenue, Las Vegas, Nevada 89142, which is secured by a lien against the Debtors' residential property, loan number ███████████.

(b) *Treatment*: The holder of the allowed Class 2(aa) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over the remaining loan term, and in accordance with all other terms of its related note and mortgage.

(c) *Valuation*: The Class 2(aa) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d) *Unsecured Portion of the Claim*: Any amount of a Class 2(aa) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e) *Voting*: Class 2(aa) is an impaired class, and the holder of the Class 2(aa) claim is entitled to vote to accept or reject the Plan.

Class 2(bb) –Secured Claim of Countrywide Home Loans

(a) *Classification*: Class 2(bb) consists of the Secured Claim of Countrywide Home Loans against the Debtors' property located at 5709 Ridgetree Avenue, Las Vegas, Nevada 89107, which is secured by a lien against the Debtors' residential property, loan number ████████.

Exhibit E

(b) *Treatment*: The holder of the allowed Class 2(bb) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c) *Valuation*: The Class 2(bb) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d) *Unsecured Portion of the Claim*: Any amount of a Class 2(bb) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e) *Voting*: Class 2(bb) is an impaired class, and the holder of the Class 2(bb) claim is entitled to vote to accept or reject the Plan.

Class 2(cc) –Secured Claim of Fidelity Bank

(a) *Classification*: Class 2(cc) consists of the Secured Claim of Fidelity Bank against the Debtors' property located at 5524 Rock Creek Lane, Las Vegas, Nevada 89130, which is secured by a lien against the Debtors' residential property, loan number ██████████.

(b) *Treatment*: The holder of the allowed Class 2(cc) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c) *Valuation*: The Class 2(cc) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d) *Unsecured Portion of the Claim*: Any amount of a Class 2(cc) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e) *Voting*: Class 2(cc) is an impaired class, and the holder of the Class 2(cc) claim is entitled to vote to accept or reject the Plan.

Exhibit E

<u>Class 2(dd) –Secured Claim of CitiMortgage, Inc.</u>

(a)     *Classification*: Class 2(dd) consists of the Secured Claim of CitiMortgage, Inc. against the Debtors' property located at 922 Saddle Horn Drive, Henderson, Nevada 89002, which is secured by a lien against the Debtors' residential property, loan number ████████.

(b)     *Treatment*: The holder of the allowed Class 2(dd) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(dd) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(dd) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(dd) is an impaired class, and the holder of the Class 2(dd) claim is entitled to vote to accept or reject the Plan.

<u>Class 2(ee) –Secured Claim of CitiMortgage, Inc.</u>

(a)     *Classification*: Class 2(ee) consists of the Secured Claim of CitiMortgage, Inc. against the Debtors' property located at 5609 San Ardo Place, Las Vegas, Nevada 89130, which is secured by a lien against the Debtors' residential property, loan number ████████.

(b)     *Treatment*: The holder of the allowed Class 2(ee) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(ee) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(ee) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

Exhibit E

(e)     *Voting*: Class 2(ee) is an impaired class, and the holder of the Class 2(ee) claim is entitled to vote to accept or reject the Plan.

Class 2(ff) –Secured Claim of Maxine Llewellyn and Mel Elizer

(a)     *Classification*: Class 2(ff) consists of the Secured Claim of Maxine Llewellyn and Mel Elizer against the Debtors' property located at 2704 Sattley Circle, Las Vegas, Nevada 89117, which is secured by a lien against the Debtors' residential property.

(b)     *Treatment*: The holder of the allowed Class 2(ff) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, payable in monthly installments of $700.00, over a period of 5 years, with a balloon payment of the amount of its claim after the five-year period.

(c)     *Valuation*: The Class 2(ff) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(ff) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(ff) is an impaired class, and the holder of the Class 2(ff) claim is entitled to vote to accept or reject the Plan.

Class 2(gg) –Secured Claim of Countrywide Home Loans

(a)     *Classification*: Class 2(gg) consists of the Secured Claim of Countrywide Home Loans against the Debtors' property located at 9521 Sierra Summit Avenue, Las Vegas, Nevada 89134, which is secured by a lien against the Debtors' residential property, loan number ▮▮▮▮▮▮▮.

(b)     *Treatment*: The holder of the allowed Class 2(gg) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(gg) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

Exhibit E

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(gg) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(gg) is an impaired class, and the holder of the Class 2(gg) claim is entitled to vote to accept or reject the Plan.

Class 2(hh) –Secured Claim of Wells Fargo Home Mortgage

(a)     *Classification*: Class 2(hh) consists of the Secured Claim of Wells Fargo Home Mortgage against the Debtors' property located at 1528 Splinter Rock Way, North Las Vegas, Nevada 89031, which is secured by a lien against the Debtors' residential property, loan number ███████.

(b)     *Treatment*: The holder of the allowed Class 2(hh) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(hh) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan.  The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(hh) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(hh) is an impaired class, and the holder of the Class 2(hh) claim is entitled to vote to accept or reject the Plan.

Class 2(ii) –Secured Claim of CitiMortgage, Inc.

(a)     *Classification*: Class 2(ii) consists of the Secured Claim of CitiMortgage, Inc. against the Debtors' property located at 1194 Stormy Valley Road, Las Vegas, Nevada 89123, which is secured by a lien against the Debtors' residential property, loan number ████████████.

(b)     *Treatment*: The holder of the allowed Class 2(ii) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(ii) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property

Exhibit E

as set forth on **Exhibit 1** of the Plan.  The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)    *Unsecured Portion of the Claim*: Any amount of a Class 2(ii) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)    *Voting*: Class 2(ii) is an impaired class, and the holder of the Class 2(ii) claim is entitled to vote to accept or reject the Plan.

Class 2(jj) –Secured Claim of CitiMortgage, Inc.

(a)    *Classification*: Class 2(jj) consists of the Secured Claim of CitiMortgage, Inc. against the Debtors' property located at 2290 Surrey Meadows Avenue, Henderson, Nevada 89052, which is secured by a lien against the Debtors' residential property, loan number ▆▆▆▆▆▆▆▆.

(b)    *Treatment*: The holder of the allowed Class 2(jj) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)    *Valuation*: The Class 2(jj) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan.  The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)    *Unsecured Portion of the Claim*: Any amount of a Class 2(jj) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)    *Voting*: Class 2(jj) is an impaired class, and the holder of the Class 2(jj) claim is entitled to vote to accept or reject the Plan.

Class 2(kk) –Secured Claim of Countrywide Home Loans

(a)    *Classification*: Class 2(kk) consists of the Secured Claim of Countrywide Home Loans against the Debtors' property located at 2614 Sweet Leilani Avenue, North Las Vegas, Nevada 89031, which is secured by a lien against the Debtors' residential property, loan number ▆▆▆▆▆▆.

(b)    *Treatment*: The holder of the allowed Class 2(kk) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

Exhibit E

(c)     *Valuation*: The Class 2(kk) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan.  The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(kk) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(kk) is an impaired class, and the holder of the Class 2(kk) claim is entitled to vote to accept or reject the Plan.

Class 2(ll) –Secured Claim of CitiMortgage, Inc.

(a)     *Classification*: Class 2(ll) consists of the Secured Claim of CitiMortgage, Inc. against the Debtors' property located at 2525 Via Di Autostrada, Henderson, Nevada 89074, which is secured by a lien against the Debtors' residential property, loan number ▉▉▉▉▉▉▉▉.

(b)     *Treatment*: The holder of the allowed Class 2(ll) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(ll) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan.  The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(ll) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(ll) is an impaired class, and the holder of the Class 2(ll) claim is entitled to vote to accept or reject the Plan.

Class 2(mm) –Secured Claim of Wells Fargo Bank, N.A.

(a)     *Classification*: Class 2(mm) consists of the Secured Claim of Wells Fargo Bank, N.A. against the Debtors' property located at 276 Manzanita Ranch Lane, Henderson, Nevada 89012, which is secured by a lien against the Debtors' residential property, loan number ▉▉▉▉▉▉▉▉▉.

(b)     *Treatment*: The holder of the allowed Class 2(mm) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth in **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(mm) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan.  The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(mm) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(mm) is an impaired class, and the holder of the Class 2(mm) claim is entitled to vote to accept or reject the Plan.

2.03    Class 3 – Priority Claims

(a)     *Classification*: Class 3 consists of the Priority Claims against the Debtors.

(b)     *Treatment*:  The legal, equitable and contractual rights of the holders of allowed Class 3 Claims are unaltered.  Except to the extent that a holder of an allowed Class 3 claim has been paid by the Debtors prior to the effective date of this Plan or otherwise agrees to different treatment, each holder of an allowed Class 3 Claim shall receive, in full and final satisfaction of such allowed Class 3 claim, payment in full in cash on or as soon as reasonably practicable after (i) the effective date of the Plan, (ii) the date such allowed Class 3 claim becomes allowed or (iii) such other date as may be ordered by the Bankruptcy Court.

(c)     *Voting*: Class 3 is an unimpaired Class, and is deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the holders of Class 3 claims are not entitled to vote to accept or reject the Plan.

2.04    Class 4 – Convenience Claims

(a)     *Classification:* Class 4 consists of Convenience Claims in an amount under $1,000.00 each against the Debtors in accordance with section 1122(b) of the Bankruptcy Code.

(b)     *Treatment:*  The legal, equitable and contractual rights of the holders of allowed Class 4 claims are unaltered.  Except to the extent that a holder of an allowed Class 4 claim has been paid by the Debtors prior to the effective date of this Plan or otherwise agrees to different treatment, each

Exhibit E

holder of an allowed Class 4 claim shall receive, in full and final satisfaction of such allowed Class 4 claim, payment in full in cash on or as soon as reasonably practicable after (i) the effective date of the Plan, (ii) the date such allowed Class 4 claim becomes allowed or (iii) such other date as may be ordered by the Bankruptcy Court.

(c)     *Voting:* Class 4 is an unimpaired class, and the holders of Class 4 claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the holders of Class 4 claims are not entitled to vote to accept or reject the Plan.

2.05     Class 5 - General Unsecured Claims

(a)     *Classification:* Class 5 consists of General Unsecured Claims against the Debtors, which includes the unsecured portion of the Debtors' first and second lien holders' claims.

(b)     *Treatment:*  Holders of allowed General Unsecured Claims shall receive, in full and final satisfaction of such allowed Class 5 claims, their pro rata share of the Debtors' monthly plan payments, which the Debtors estimate to be 4% of such creditor's claim.

(c)     *Voting:* Class 5 is an impaired Class, and holders of Class 5 claims are entitled to vote to accept or reject the Plan.

ARTICLE III

TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS.
U.S. TRUSTEES FEES AND PRIORITY TAX CLAIMS

3.01     Unclassified Claims. In accordance with section 1123(a)(1) of the Bankruptcy Code, administrative expense claims, and priority tax claims are not in classes.

3.02     Administrative Expense Claims. Each holder of an administrative expense claim allowed under Section 503 of the Bankruptcy Code will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtors.

3.03     Priority Tax Claims. Each holder of a priority tax claim will be paid in full on the effective date of this Plan, or with respect to the Internal Revenue Service, as agreed upon among the parties.

3.04     United States Trustee Fees. All fees required to be paid by 28 U.S.C. § 1930 will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

Exhibit E

ARTICLE IV
PROVISIONS FOR EXECUTORY CONTRACTS, UNEXPIRED LEASES AND
DISPOSITION OF VACANT LAND

4.01    Assumed Executory Contracts and Unexpired Leases.

(a) The Debtors shall assume, on the effective date of this Plan, the executory contracts and unexpired leases listed on **Exhibit 2** attached hereto.  Listed on **Exhibit 2** is also the Debtors' estimated cure amount, if any, necessary to assume such contract in accordance with Section 365 of the Bankruptcy Code.

(b) The Debtors will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 4.01(a) above.  A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

(c) The confirmation order shall constitute an order of the Bankruptcy Court approving such assumptions pursuant to sections 365 and 1123 of the Bankruptcy Code as of the effective date of this Plan.  The Debtors reserve the right to amend **Exhibit 2** at any time before the effective date.

(d) Any objection by a party to an executory contract or unexpired lease to the Debtors' proposed assumption or any related cure amount set forth on **Exhibit 2** must be filed, served and actually received by the Debtors at least seven (7) days prior to the confirmation hearing of this Plan. Any party to an executory contract or unexpired lease that fails to object timely to the proposed cure amount will be deemed to have consented to such assignment of its executory contract or unexpired lease.   The confirmation order shall constitute an order of the Bankruptcy Court approving any proposed assignments of executory contracts or unexpired leases pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

(e) In the event of a dispute regarding (i) the amount of any cure payment, (ii) the ability of the Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assigned or (iii) any other matter pertaining to assignment, the applicable cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a final order or orders resolving the dispute and approving the assumption.  If an objection to a cure amount is sustained by the Bankruptcy Court, the Debtors at their sole option, may elect to reject such executory contract or unexpired lease in lieu of assuming and assigning it.

ARTICLE V - MEANS FOR IMPLEMENTATION OF THE PLAN

5.01    Source of Payments.  If an objection to the Plan is lodged under Section 1129(a)(15) of the Bankruptcy Code, the Debtors' Payments and distributions under the Plan will be funded by the Debtors, based upon their (a) projected monthly rental income and (b) personal income.  The Liquidation Analysis attached the Disclosure Statement as **Exhibit C**, outlines the Debtors' sources and uses of income.  The Debtors' monthly Plan payment shall be four thousand dollars

Exhibit E

($4,000.00).  If no objections are lodged to the Plan, the Debtors may make no distributions to general unsecured creditors.

5.02    Method of Plan Payments

(a)    On or about the effective date of the Plan, to the extent necessary, the Debtors shall retain Cynthia Bitaut of Baxter Distribution Services, LLP, 2655 Box Canyon Drive #190, Las Vegas, Nevada 89128 as their disbursement agent (the "**Disbursement Agent**").  Except as otherwise provided in the Plan, upon the first full month after the entry of the order confirming the Plan, the Debtors shall begin making monthly distributions to the Disbursement Agent under the Plan. The Disbursement Agent shall begin, as soon as practical, making pro rata payments to the Debtors' unsecured creditors holding allowed claims, on a quarterly basis, until such claims are paid as set forth in the Plan.

(b)    Except as otherwise provided in the Plan, or upon the entry of a final, non-appealable order of the Bankruptcy Court, or as agreed to by the relevant parties, distributions under the Plan on account of a disputed claim that becomes an allowed claim after the effective date of the Plan shall be begin on the regular quarterly payment date, as established by the Disbursement Agent, which is at least thirty (30) days after such claim becomes an allowed claim.

(c)    Notwithstanding anything in the Plan to the contrary, and except as otherwise agreed to by the relevant parties, no partial payments and no partial distributions shall be made with respect to a disputed claim until all such disputes in connection with such disputed claim have been resolved by settlement among the parties or a final order of the Bankruptcy Court.  In the event that there are disputed claims requiring adjudication and resolution, the Disbursement Agent shall establish appropriate reserves for potential payment of such Claims.

(d)    In no event, however, shall the Disbursement Agent be held liable for any failures of the Debtors to make any of their payments required under the Plan.  If any holders of allowed claims against the Debtors' estate fail to receive payment in accordance with the Plan, the Bankruptcy Court shall retain jurisdiction to hear and determine all matters related to the implementation of this Plan and the payments required hereunder.

(e)    The Disbursement Agent shall be authorized to retain attorneys, if necessary, to object to proofs of claim, pay administrative expenses and collect a reasonable fee for administering the Debtors' post-confirmation estate from the Debtors' plan payments.

5.03    The Holding Company.  On or after the effective date of the Plan, the Debtors shall transfer title to their properties to a Nevada limited liability company (the "**Holding Company**"), for liability purposes.  The transfer shall not limit the Debtors' personal liability to their Class 1 creditors or their obligations to make payments under this Plan.

5.04    Post-confirmation Management.  The Debtors will manage their properties post-petition in the ordinary course, which will include the assumption and continued operation under all partnership agreements, as well as the debt service obligations thereunder.  They will be authorized to enter into, terminate and renew lease agreements as they see fit.  Such activities will include retaining management companies to aid in the renting of their property, drafting and

Exhibit E

serving eviction notices, negotiating loan modifications or refinancing their properties, repairing the properties and maintaining a reserve account of up to one month's mortgage payments, or $10,000.00, whichever is greater.  In addition, the Debtors will be authorized to transfer the properties to the Holding Company to limit their liability from claims arising from their rental business (such as injuries occurring at the homes) after the date of confirmation.

5.05    <u>Liquidation and Abandonment of Certain Debtor Entities</u>.  Pursuant to Sections 363 and 554 of the Bankruptcy Code, the Debtors may abandon or liquidate Cherish LLC, Keep Safe LLC, 2704 Sattley LLC and Hot Endeavor, LLC (the "**Abandoned Entities**"), as all properties owned by those entities will be transferred back to the Debtors Melani and William R. Schulte, personally.  Therefore, the order confirming the Plan will constitute the Bankruptcy Court's finding and determination that the abandonment or liquidation of the Abandoned Entities is (1) in the best interests of the Debtors, their estates and parties in interest, (2) fair, equitable and reasonable, (3) made in good faith and (4) approved pursuant to section 363 and 554 of the Bankruptcy Code and Bankruptcy Rule 9019.

5.06    <u>Post-confirmation Payment</u>.  The post-confirmation payment of the claims of allowed general unsecured creditors in the Debtors' cases shall be jointly administered.  Accordingly, the Debtors will pay their combined creditor pool through the continued joint administration of their estates post-confirmation, in order to maximize the distributions to unsecured creditors and avoid the related costs of paying their joint creditors separately for 5 years.  The order confirming the Plan shall direct the foregoing administration of the Debtors' post-confirmation estates.

5.07    <u>Substantive Consolidation</u>.  The filing of the Plan shall constitute a motion for an order of the Bankruptcy Court approving, and the Confirmation Order shall constitute the Bankruptcy Court's approval of, substantive consolidation of the payment of the general unsecured claims against the reorganized Debtors' estates, specifically the estates of Melani and William R. Schulte and SABRECO, Inc. (collectively, the "**Reorganized Debtors**").  On the effective date of the Plan, pursuant to Section 105(a) of the Bankruptcy Code, the Reorganized Debtors' estates shall be substantively consolidated solely for the purposes related to the Plan (including voting and distributions to general unsecured creditors). The substantive consolidation of the Reorganized Debtors' estates shall have the following effects:

(a)    All assets of the Reorganized Debtors' estates shall be treated as though they were assets of a single consolidated estate for purposes of distributions under the Plan;

(b)    Each and every claim scheduled, filed, to be filed, or deemed to have been filed in these Chapter 11 cases against either Reorganized Debtor shall be deemed scheduled or filed against a single consolidated Estate; and

(c)    No distributions shall be made under the Plan on account of claims among the Reorganized Debtors, and any and all liability on account of such claims between the Reorganized Debtors shall be deemed satisfied and discharged upon confirmation.

Exhibit E

Notwithstanding the foregoing, on or after the effective date of the Plan, the Reorganized Debtors may take such actions as are necessary to complete a merger with or dissolution of any of the Reorganized Debtors' assets under applicable law.

**ALL ALLOWED SECURED CLAIMS IN CLASSES 1 AND 2 WILL RETAIN THEIR LIENS, SHALL BE PAID AS SET FORTH IN CLASSES 1 AND 2, AND NOT BE ELIMINATED AS THE RESULT OF THE SUBSTANTIVE CONSOLIDATION.**

### ARTICLE VI
### GENERAL PROVISIONS

6.01    Definitions and Rules of Construction. The definitions and rules of construction set forth in Sections 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan.

6.02    Effective Date of Plan.  The effective date of this Plan is the eleventh business day following the date of the entry of the confirmation order.  But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

6.03    Modification of Plan.

The Debtors may modify the Plan at any time before confirmation of the Plan.  The Court, however, may require a new Disclosure Statement and/or re-voting on the Plan.  The Debtors may also seek to modify the Plan at any time after confirmation only if (A) the Plan has not been substantially consummated and (B) the Court authorizes the proposed modifications after notice and a hearing.

Upon request of the Debtors, the Plan may be modified at any time after confirmation of the Plan, but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take on accounting of any payment of a claim made other than under the Plan.

Effective as of the date hereof and subject to the limitations and rights contained in the Plan: (a) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the confirmation order; and (b) after the entry of the confirmation order, the Debtors may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan; provided, however, that any modification to the Plan shall not affect the rights or treatment of holders of unsecured claims.

6.04    Final Decree**.**  Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of bankruptcy Procedure, the Debtors, or such other party as the Court shall designate in the Plan confirmation order, shall file a motion with the Court to obtain a final

Exhibit E

decree to close the case.  Alternatively, the Court may enter such a final decree on its own motion.

6.05    Vesting of Assets in the Reorganized Debtors and the Holding Company.  After confirmation of the Plan, all property of the Debtors shall vest in the reorganized Debtors and the Holding Company, free and clear of all liens, claims, charges or other encumbrances, except those enumerated in Section 6.06, the order approving the Motion to Value and the confirmation order.  The reorganized Debtors may operate their business and may use, acquire or dispose of property and compromise or settle any claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the confirmation order.  Without limiting the foregoing, the Debtors shall pay the charges that incur after confirmation for professionals' fees, disbursements, expenses or related support services (including reasonable fees relating to the preparation of professional fee applications) without application to the Bankruptcy Court.

6.06    Release of Liens, Claims and Equity Interests.  Except as otherwise provided herein or in the following sentence or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, upon confirmation, all liens, claims, mortgages, deeds of trust, or other security interests against the property of the Debtors' estate shall be fully released and discharged.  The existing liens and lien rights of those lenders holding claims in Class 1 and Class 2 are expressly preserved under the Plan, and their existing liens shall ride through and remain attached to any and all underlying collateral in any transfer of property expressly set forth in, or contemplated by, the Plan.  To the extent any provision in this Plan or the Confirmation Order can be read to contradict the express preservation of lien rights in this provision, this provision controls.

6.07    Certificate of Incorporation and Bylaws.  The articles of organization and bylaws (or other formation documents) of the Holding Company shall be amended as may be required to be consistent with the provisions of the Plan and the Bankruptcy Code or as otherwise required by, and in a form reasonably acceptable to, the Debtors.  On or as soon as reasonably practicable after confirmation of the Plan, the reorganized Debtors shall file a new certificate of organization with the Nevada secretary of state, as required by section 1123(a)(6) of the Bankruptcy Code.

6.08    Effectuating Documents; Further Transactions.  The Debtors may take all actions to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan.

6.09    Exemption from Certain Transfer Taxes.  Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the confirmation order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

6.10    Revocation of Plan.  The Debtors reserve the right to revoke or withdraw the Plan prior to the confirmation hearing and to file subsequent Chapter 11 plans.  If the Debtors revoke or

Exhibit E

withdraw the Plan, or if confirmation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Court; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against, the Debtors or any other entity; (b) prejudice in any manner the rights of the Debtors or any other entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtors or any other entity.

6.11    Successors and Assigns.   The rights, benefits and obligations of any entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

6.12    Reservation of Rights.   Except as expressly set forth herein, the Plan shall have no force or effect until the Court enters the confirmation order.   Neither the filing of the Plan, any statement or provision contained in the Disclosure Statement, nor the taking of any action by a Debtors or any other entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) any Debtors with respect to the holders of claims or other entity; or (2) any holder of a Claim or other entity prior to the effective date of the Plan. The Debtors expressly reserve all rights to pursue any claims they may hold against their mortgage lenders or against any other entity prior to or after the effective date of the Plan.

6.13    Further Assurances.   The Debtors or the reorganized Debtors, as applicable, all holders of Claims receiving distributions under the Plan and all other entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the confirmation order.

6.14    Severability.   If, prior to confirmation of the Plan, any term or provision of the Plan is held by the Court to be invalid, void or unenforceable, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted, *provided* that any such alteration or interpretation must be in form and substance reasonably acceptable to the Debtors, and, to the extent such alteration or interpretation affects the rights or treatment of holders of unsecured claims, such claim holder.

6.15    Return of Security Deposits.   Unless the Debtors agree otherwise in a written agreement or stipulation approved by the Court, all security deposits provided by the Debtors to any person or entity at any time after the petition date shall be returned to the Debtors within twenty (20) days after the date of confirmation, without deduction or offset of any kind.

6.16    Filing of Additional Documents.   On or before the Effective Date, the Debtors may file with the Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

Exhibit E

6.17    Captions.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

ARTICLE VII
DISCHARGE

**7.01 Discharge.**  Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments to unsecured creditors under this Plan, if the Debtors elect to make such payments, which is 5 years or 20 quarterly payments, or as otherwise provided in § 1141(d)(5) of the Code.  The Debtors will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

Dated:   November 23, 2010

Respectfully submitted,

MELANI SCHULTE

/s/ Melani Schulte_____


WILLIAM R. SCHULTE

/s/ William R. Schulte_____

Exhibit E

# EXHIBIT 1

**Exhibit 1**

**Residential Property Owned by Melani and William R. Schulte**            .

9500 Aspen Glow Drive
Las Vegas, Nevada 89134
Value:                                    $142,500.00


2460 Avenida Cortes
Henderson, Nevada 89074
Value:                                    $123,000.00


4710 Brently Place
Las Vegas, Nevada 89122
Value:                                    $109,105.70


7873 Bridgefield Lane
Las Vegas, Nevada 89147
Value:                                    $126,000.00


3322 Cheltenham Street
Las Vegas, Nevada 89129
Value:                                    $99,806.60


3383 Cloverdale Court
Las Vegas, Nevada 89117
Value:                                    $168,856.34


1624 Desert Canyon Court
Las Vegas, Nevada 89128
Value:                                    $168,000.00


3729 Discovery Creek Avenue
North Las Vegas, Nevada 89031
Value:                                    $125,446.93


1392 Echo Falls Avenue
Las Vegas, Nevada 89183
Value:                                    $132,000.00


1701 Empire Mine Drive
Henderson, Nevada 89014
Value:                                    $80,000.00

Exhibit E

9020 Feather River Court
Las Vegas, Nevada 89117
Value:                                      $135,000.00

1013 Golden Hawk Way
Las Vegas, Nevada 89108
Value:                                      $94,000.00

4521 W. La Madre Way
Las Vegas, Nevada 89031
Value:                                      $100,000.00

8562 Lambert Drive
Las Vegas, Nevada 89147
Value:                                      $148,000.00

276 Manzanita Ranch Lane
Henderson, Nevada 89012
Value:                                      $162,000.00

2861 Marathon Drive
Henderson, Nevada 89074
Value:                                      $125,000.00

5218 Misty Morning Drive
Las Vegas, Nevada 89118
Value:                                      $138,000.00

10317 Neopolitan Place
Las Vegas, Nevada 89144
Value:                                      $140,000.00

956 Ostrich Fern Court
Las Vegas, Nevada 89183
Value:                                      $152,440.29

8216 Peaceful Canyon Drive
Las Vegas, Nevada 89128
Value:                                      $143,000.00

6091 Pumpkin Patch Avenue
Las Vegas, Nevada 89142
Value:                                      $108,307.50

Exhibit E

5709 Ridgetree Avenue
Las Vegas, Nevada 89107
Value:                                   $57,963.85

5524 Rock Creek Lane
Las Vegas, Nevada 89130
Value:                                   $100,000.00

922 Saddle Horn Drive
Henderson, Nevada 89002
Value:                                   $114,000.00

5609 San Ardo Place
Las Vegas, Nevada 89130
Value:                                   $115,000.00

2704 Sattley Circle
Las Vegas, Nevada 89117
Value:                                   $210,000.00

9521 Sierra Summit Avenue
Las Vegas, Nevada 89134
Value:                                   $135,000.00

1528 Splinter Rock Way
Las Vegas, Nevada 89031
Value:                                   $112,000.00

1194 Stormy Valley Road
Las Vegas, Nevada 89123
Value:                                   $127,000.00

2290 Surrey Meadows Avenue
Las Vegas, Nevada 89130
Value:                                   $195,000.00

2614 Sweet Leilani Avenue
North Las Vegas, Nevada 89131
Value:                                   $130,720.99

2525 Via Di Autostrada
Henderson, Nevada 89074
Value:                                   $125,000.00

Exhibit E

509 Canyon Greens
Las Vegas, Nevada 89144
Value: $807,141.58

**Total Appraised Value:** **$4,949,289.78**

Exhibit E

# EXHIBIT 2

Exhibit E

## EXHIBIT 2

<u>Melani Schulte and William R. Schulte Leases and Executory Contracts to be Assumed Pursuant to the Plan</u>

<u>Residential Lease Agreements</u>

Standard Residential Lease Agreement dated June 1, 2010 between the Debtors and Luther and Rita Cobbs for the rental of:
9500 Aspen Glow Drive
Las Vegas, Nevada 89134

Standard Residential Lease Agreement dated June 27, 2008 between the Debtors and Shireen McGrath for the rental of:
2460 Avenida Cortes
Henderson, Nevada 89074

Standard Residential Lease Agreement dated February 18, 2005 between the Debtors and Evelyn and Richard Deschamps for the rental of:
4710 Brently Place
Las Vegas, Nevada 89122

Standard Residential Lease Agreement dated June 1, 2010 between the Debtors and Antonio & Linda Reina for the rental of:
7873 Bridgefield Lane
Las Vegas, Nevada 89147

Standard Residential Lease Agreement dated May 27, 2008 between the Debtors and William Hallman for the rental of:
3322 Cheltenham Street
Las Vegas, Nevada 89129

Standard Residential Lease Agreement dated March 7, 2010 between the Debtors and Nikheel Arnold Prasad for the rental of:
3383 Cloverdale Court
Las Vegas, Nevada 89117

Standard Residential Lease Agreement dated June 1, 2010 between the Debtors and Ryan Mack & Lorraine Acevedo for the rental of:
1624 Desert Canyon Court
Las Vegas, Nevada 89128

Standard Residential Lease Agreement dated June 27, 2005 between the Debtors and Tyler Taylor for the rental of:
3729 Discovery Creek Avenue
North Las Vegas, Nevada 89031

Exhibit E

Standard Residential Lease Agreement dated June 12, 2004 between the Debtors and Shaun Powell, Nicholas Hurd and Chad Jordan for the rental of:
1392 Echo Falls Avenue
Las Vegas, Nevada 89183

Standard Residential Lease Agreement dated June 1, 2010 between the Debtors and Roly Agreda for the rental of:
1701 Empire Mine Drive
Henderson, Nevada 89014

Standard Residential Lease Agreement dated June 17, 2007 between the Debtors and James and Judy Craig for the rental of:
9020 Feather River Court
Las Vegas, Nevada 89117

Standard Residential Lease Agreement dated December 1, 2010 between the Debtors and Arni Flenoy for the rental of:
1013 Golden Hawk Way
Las Vegas, Nevada 89108

Standard Residential Lease Agreement dated June 1, 2010 between the Debtors and Linda Marrone for the rental of:
4521 W. La Madre Way
Las Vegas, Nevada 89031

Standard Residential Lease Agreement dated March 19, 2009 between the Debtors and Be Ngoc Dong and Tran Kim for the rental of:
8562 Lambert Drive
Las Vegas, Nevada 89147

Standard Residential Lease Agreement dated March 27, 2010 between the Debtors and Xeomara Ramos for the rental of:
276 Manzanita Ranch Lane
Henderson, Nevada 89012

Standard Residential Lease Agreement dated March 17, 2007 between the Debtors and Benjamin Tranquillo and Nicole Carpenter for the rental of:
2861 Marathon Drive
Henderson, Nevada 89074

Standard Residential Lease Agreement dated June 1, 2010 between the Debtors and Earl Humphrey for the rental of:
5218 Misty Morning Drive
Las Vegas, Nevada 89118

Exhibit E

Standard Residential Lease Agreement dated May 14, 2010 between the Debtors and Rosemary Karnay and Daniel Shaefer for the rental of:
10317 Neopolitan Place
Las Vegas, Nevada 89144

Standard Residential Lease Agreement dated September 1, 2007 between the Debtors and Clint Fisher for the rental of:
956 Ostrich Fern Court
Las Vegas, Nevada 89183

Standard Residential Lease Agreement dated April 30, 2001 between the Debtors and James Earl and Lisa Hammond for the rental of:
8216 Peaceful Canyon Drive
Las Vegas, Nevada 89128

Standard Residential Lease Agreement dated June 1, 2010 between the Debtors and Darrin and Jody Miller for the rental of:
6091 Pumpkin Patch Avenue
Las Vegas, Nevada 89142

Standard Residential Lease Agreement dated February 1, 2010 between the Debtors and Donald and Bonnie Lee for the rental of:
5709 Ridgetree Avenue
Las Vegas, Nevada 89107

Standard Residential Lease Agreement dated June 1, 2010 between the Debtors and Charles Gallo for the rental of:
5524 Rock Creek Lane
Las Vegas, Nevada 89130

Standard Residential Lease Agreement dated October 1, 2009 between the Debtors and Richard and Mary Gordon for the rental of:
922 Saddle Horn Drive
Henderson, Nevada 89002

Standard Residential Lease Agreement dated June 1, 2010 between the Debtors and J. Richard Stull for the rental of:
5609 San Ardo Place
Las Vegas, Nevada 89130

Standard Residential Lease Agreement dated June 1, 2010 between the Debtors and Devin Marrin for the rental of:
2704 Sattley Circle
Las Vegas, Nevada 89117

Exhibit E

Standard Residential Lease Agreement dated August 27, 2009 between the Debtors and Lyla and Phillip Dwyer for the rental of:
9521 Sierra Summit Avenue
Las Vegas, Nevada 89134

Standard Residential Lease Agreement dated April 27, 2010 between the Debtors and Karen Yos for the rental of:
1528 Splinter Rock Way
Las Vegas, Nevada 89031

Standard Residential Lease Agreement dated July 27, 2009 between the Debtors and Donna Hanna and Kenneth Wade for the rental of:
1194 Stormy Valley Road
Las Vegas, Nevada 89123

Standard Residential Lease Agreement dated April 27, 2007 between the Debtors and William Lundy and Theresa Orden for the rental of:
2290 Surrey Meadows Avenue
Las Vegas, Nevada 89130

Standard Residential Lease Agreement dated January 4, 2007 between the Debtors and Tyler Taylor for the rental of:
2614 Sweet Leilani Avenue
North Las Vegas, Nevada 89131

Standard Residential Lease Agreement dated June 1, 2010 between the Debtors and Brian Hobbs for the rental of:
2525 Via Di Autostrada
Henderson, Nevada 89074


**Residential Mortgages**

Residential Mortgage by and between the Debtors and America's Servicing Company for the purchase of:
509 Canyon Greens
Las Vegas, Nevada 89144
Cure Amount:                      $ 0.00

Residential Mortgage by and between the Debtors and CitiMortgage for the purchase of:
9500 Aspen Glow Drive
Las Vegas, Nevada 89134
Cure Amount:                      $0.00

Exhibit E

Residential Mortgage by and between Debtors and Chase Home Finance for the purchase of:
2460 Avenida Cortes
Henderson, Nevada 89074
Cure Amount:                                    $0.00

Residential Mortgage by and between the Debtors and Countrywide Home Loans for the purchase of:
4710 Brently Place
Las Vegas, Nevada 89122
Cure Amount:                                    $0.00

Residential Mortgage by and between the Debtors and Chase Home Finance for the purchase of:
7873 Bridgefield Lane
Las Vegas, Nevada 89147
Cure Amount:                                    $0.00

Residential Mortgage by and between the Debtors and Countrywide Home Lending for the purchase of:
3322 Cheltenham Street
Las Vegas, Nevada 89129
Cure Amount:                                    $0.00

Residential Mortgage by and between the Debtors and Countrywide Home Lending for the purchase of:
3383 Cloverdale Court
Las Vegas, Nevada 89117
Cure Amount:                                    $0.00

Residential Mortgage by and between the Debtors and CitiMortgage for the purchase of:
1624 Desert Canyon Court
Las Vegas, Nevada 89128
Cure Amount:                                    $0.00

Residential Mortgage by and between the Debtors and Countrywide Home Lending for the purchase of:
3729 Discovery Creek Avenue
North Las Vegas, Nevada 89031
Cure Amount:                                    $0.00

Residential Mortgage by and between the Debtors and Litton Loan Servicing for the purchase of:
1392 Echo Falls Avenue
Las Vegas, Nevada 89183
Cure Amount:                                    $0.00

Exhibit E

Residential Mortgage by and between the Debtors and Countrywide Home Lending for the purchase of:
1701 Empire Mine Drive
Henderson, Nevada 89014
Cure Amount:                          $0.00

Residential Mortgage by and between the Debtors and Chase Home Finance for the purchase of:
9020 Feather River Court
Las Vegas, Nevada 89117
Cure Amount:                          $0.00

Residential Mortgage by and between the Debtors and CitiMortgage for the purchase of:
1013 Golden Hawk Way
Las Vegas, Nevada 89108
Cure Amount:                          $0.00

Residential Mortgage by and between the Debtors and CitiMortgage for the purchase of:
4521 W. La Madre Way
Las Vegas, Nevada 89031
Cure Amount:                          $0.00

Residential Mortgage by and between the Debtors and CitiMortgage for the purchase of:
8562 Lambert Drive
Las Vegas, Nevada 89147
Cure Amount:                          $0.00

Residential Mortgage by and between the Debtors and CitiMortgage for the purchase of:
276 Manzanita Ranch Lane
Henderson, Nevada 89012
Cure Amount:                          $0.00

Residential Mortgage by and between the Debtors and CitiMortgage for the purchase of:
2861 Marathon Drive
Henderson, Nevada 89074
Cure Amount:                          $0.00

Residential Mortgage by and between the Debtors and Fifth Third Bank for the purchase of:
5218 Misty Morning Drive
Las Vegas, Nevada 89118
Cure Amount:                          $0.00

Residential Mortgage by and between the Debtors and Countrywide Home Lending for the purchase of:
10317 Neopolitan Place
Las Vegas, Nevada 89144
Cure Amount:                          $0.00

Exhibit E

Residential Mortgage by and between the Debtors and Litton Loan for the purchase of:
956 Ostrich Fern Court
Las Vegas, Nevada 89183
Cure Amount:                                  $0.00

Residential Mortgage by and between the Debtors and Chase Home Finance for the purchase of:
8216 Peaceful Canyon Drive
Las Vegas, Nevada 89128
Cure Amount:                                  $0.00

Residential Mortgage by and between the Debtors and Chase Manhattan Mortgage for the purchase of:
6091 Pumpkin Patch Avenue
Las Vegas, Nevada 89142
Cure Amount:                                  $0.00

Residential Mortgage by and between the Debtors and Countrywide Home Lending for the purchase of:
5709 Ridgetree Avenue
Las Vegas, Nevada 89107
Cure Amount:                                  $0.00

Residential Mortgage by and between the Debtors and Fidelity Bank for the purchase of:
5524 Rock Creek Lane
Las Vegas, Nevada 89130
Cure Amount:                                  $0.00

Residential Mortgage by and between the Debtors and CitiMortgage for the purchase of:
922 Saddle Horn Drive
Henderson, Nevada 89002
Cure Amount:                                  $0.00

Residential Mortgage by and between the Debtors and CitiMortgage for the purchase of:
5609 San Ardo Place
Las Vegas, Nevada 89130
Cure Amount:                                  $0.00

Residential Mortgage by and between the Debtors and Mel Elizer and Maxine Llewellyn for the purchase of:
2704 Sattley Circle
Las Vegas, Nevada 89117
Cure Amount:                                  $0.00

Exhibit E

Residential Mortgage by and between the Debtors and Countrywide Home Lending for the purchase of:
9521 Sierra Summit Avenue
Las Vegas, Nevada 89134
Cure Amount:                              $0.00

Residential Mortgage by and between the Debtors and Wells Fargo Home Mortgage for the purchase of:
1528 Splinter Rock Way
Las Vegas, Nevada 89031
Cure Amount:                              $0.00

Residential Mortgage by and between the Debtors and CitiMortgage for the purchase of:
1194 Stormy Valley Road
Las Vegas, Nevada 89123
Cure Amount:                              $0.00

Residential Mortgage by and between the Debtors and CitiMortgage for the purchase of:
2290 Surrey Meadows Avenue
Las Vegas, Nevada 89130
Cure Amount:                              $0.00

Residential Mortgage by and between the Debtors and Countrywide Home Lending for the purchase of:
2614 Sweet Leilani Avenue
North Las Vegas, Nevada 89131
Cure Amount:                              $0.00

Residential Mortgage by and between the Debtors and CitiMortgage for the purchase of:
2525 Via Di Autostrada
Henderson, Nevada 89074
Cure Amount:                              $0.00

Exhibit E

1

2

3

4

**Entered on Docket**
**March 18, 2011**

5

*Bruce A. Markell*
Hon. Bruce A. Markell
United States Bankruptcy Judge

6

7

8  PITE DUNCAN, LLP
   ACE VAN PATTEN (NV Bar #11731)

9  EDDIE R. JIMENEZ (NV Bar #10376)
   701 Bridger Avenue, Suite 700

10 Las Vegas, Nevada 89101
   Telephone: (858) 750-7600

11 Facsimile: (619) 590-1385
   E-mail: ecfnvb@piteduncan.com

12
   MAILING ADDRESS:

13 4375 Jutland Drive, Suite 200
   P.O. Box 17933

14 San Diego, California 92177-0933

15 Attorneys for CITIMORTGAGE, INC.

16

17

18

19                          UNITED STATES COURT

20                           DISTRICT OF NEVADA

21 | In re | Bankruptcy Case No. BK-S-09-29123-BAM |
   |       | Chapter 13                            |

22 MELANI SCHULTE  AND WILLIAM R.
   SCHULTE,                                   ORDER ON STIPULATED ORDER

23                                             REGARDING TREATMENT OF
           Debtors.                            CREDITOR'S CLAIM PURSUANT TO

24                                             CHAPTER 11 PLAN

25 /././

26 /././

27 /././

28

                                                            Exhibit E

1    The parties having agreed to the terms set forth in the Stipulated Order Regarding

2  Treatment of Creditor's Claim Pursuant to Chapter 11 Plan are bound by the terms of their

3  stipulation, which shall be the Order of this court.

4  <u>ALTERNATIVE METHOD re: RULE 9021:</u>

5  In accordance with LR 9021, counsel submitting this document certifies that the order accurately

6  reflects the court's ruling and that (check one):

7  ☐    The court has waived the requirement set forth in LR 9021(b)(1).

8  ☐    No party appeared at the hearing or filed an objection to the motion.

9

10 ☐    I have delivered a copy of this proposed order to all counsel who appeared at the hearing,

11 and any unrepresented parties who appeared at the hearing, and each has approved or

12 disapproved the order, or failed to respond, as indicated below [list each party and whether the

13 party has approved, disapproved, or failed to respond to the document]:

14 ☒    Failed to respond. - Debtors' Attorney

15 ☐    I certify that this is a case under Chapter 7 or 11, that I have served a copy of this order

16 with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of

17 the order.

18                                              ###

19 By: <u>Ace Van Patten</u>
20      4375 Jutland Drive, Suite 200
        P.O. Box 17933
21      San Diego, CA 92177-0933
        (702) 413-9692
22      NV Bar #11731
        Attorney for CITIMORTGAGE, INC.
23

24

25

26

27

28

1  EDDIE R. JIMENEZ (NV Bar #10376)
   ACE VAN PATTEN (NV Bar #11731)
2  PITE DUNCAN, LLP
   4375 Jutland Drive, Suite 200
3  P.O. Box 17933
   San Diego, CA 92177-0933
4  Telephone: (858) 750-7600
   Facsimile:  (619) 590-1385
5

6  Attorneys for CITIMORTGAGE, INC.

7

8

9                    **UNITED STATES BANKRUPTCY COURT**

10              **DISTRICT OF NEVADA – LAS VEGAS DIVISION**

11  | In re | 09-29123-bam |

12  MELANI SCHULTE WILLIAM R.          Chapter 11
    SCHULTE,
13
                Debtor(s).
14                                     **STIPULATION RE: TREATMENT OF**
                                       **CITIMORTGAGE, INC.'S CLAIM**
15                                     **UNDER DEBTORS' CHAPTER 11**
                                       **PLAN OF REORGANIZATION**
16

17

18

19

20          This Stipulation is entered into by and between Secured Creditor, CitiMortgage, Inc.

21  ("Creditor"), by and through its attorneys of record, and Melani Schulte and William R. Schulte,

22  the Debtors and Debtors-In-Possession herein (the "Debtors"), by and their attorneys of record.

23          The property which is the subject of this matter is commonly known as 9500 Aspen Glow

24  Drive, Las Vegas, Nevada 89134 (hereinafter the "Subject Property").

25          On or about March 5, 1993, Edward Wendell Porta and Patricia P. Porta (collectively the

26  "Borrowers"), for valuable consideration, made, executed and delivered to Weyerhaeuser

27  Mortgage Company ("Lender") a Note in the principal sum of $126,056.00 (the "Note").

28  /./././

                                            - 1 -

**Exhibit E**

1     On or about March 5, 1993, Borrowers made, executed and delivered to Lender a Deed of

2  Trust (the "Deed of Trust") granting Lender a security interest in the Subject Property. The Deed

3  of Trust was recorded on March 12, 1993, in the Official Records of Clark County, State of

4  Nevada.

5     On or about June 30, 1997, a Grant Deed was executed by the Borrowers purporting to

6  transfer interest in the Subject Property to William R. Schulte and Melani Schulte, husband and

7  wife as joint tenants with right of survivorship for consideration of $1.00. The Grant Deed was

8  recorded on July 15, 1997, in the Official Records of Clark County, State of Nevada.

9     Subsequently, Lender's beneficial interest in the Note and Deed of Trust was sold,

10  assigned and transferred to Creditor.

11     On or about October 11, 2009, Debtors filed a voluntary petition under Chapter 11 of the

12  United States Bankruptcy Code and were assigned Bankruptcy Case No. 09-29123-bam.

13     **THE PARTIES STIPULATE AS FOLLOWS:**

14     1.     Creditor's claim shall remain fully secured over a term of thirty (30) years at a

15  rate of 5.25% interest per annum.

16     2.     Debtors shall commence monthly payments as of March 1, 2011 in the amount of

17  $522.64 each.

18     3.     In addition to Principal and Interest Payments, Debtors shall tender to Creditor

19  regular monthly escrow payments for advances made by Creditor for the maintenance of real

20  property taxes and real property hazard insurances for the Subject Property.

21     4.     Except as otherwise expressly provided herein, all remaining terms of the Note

22  and Deed of Trust shall govern the treatment of Creditor's Secured Claim.

23     5.     In the event of any future default on any of the above-described provisions,

24  inclusive of this Stipulation, Creditor shall provide written notice via certified mail to Melani

25  Schulte and William R. Schulte, 7201 West Lake Mead Blvd, #500, Las Vegas, Nevada 89128,

26  and to the Debtors' attorney of record, provided the Debtors' bankruptcy remains active, Bryan

27  A. Lindsey, 701 E. Bridger Ave., Ste 120, Las Vegas, Nevada 89101, indicating the nature of

28  default.   If Debtors fail to cure the default with certified funds after passage of thirty (30)

Exhibit E

1  calendar days from the date said written notice is placed in the mail, then the Automatic Stay is

2  terminated and Creditor may proceed to foreclose its security interest in the Subject Property

3  under the terms of the Note and Deed of Trust and pursuant to applicable state law and thereafter

4  commence any action necessary to obtain complete possession of the Subject Property without

5  further notice, order, or proceeding of this Court.

6      6.    The acceptance by Creditor of a late or partial payment shall not act as a waiver of

7  Creditor's right to proceed hereunder.

8      7.    In the event that Creditor is granted relief from the automatic stay, the parties

9  hereby stipulate that the 14-day stay provided by Bankruptcy Rule 4001(a)(3) is waived.

10     8.    In the event the Debtors default under this Stipulation and Creditor forwards a 30-

11 day letter to Debtors, they shall be required to tender $100.00 for each default letter submitted in

12 order to cure the default.

13     9.    At the request of the Creditor, the Debtors shall execute such documents and

14 instruments as are necessary to reflect the Debtors as the borrowers of the Secured Claim, and to

15 modify the terms of the obligation to conform with the provisions of the this Stipulation.

16     10.   The terms of this Stipulation may not be modified, altered, or changed by the

17 Plan, any confirmation order thereon, any subsequently filed Amended Chapter 11 Plan of

18 Reorganization and confirmation order thereon without the express written consent of the

19 Creditor. The terms of this Stipulation shall be incorporated into the Plan and/or any

20 subsequently filed Amended Chapter 11 Plan of Reorganization.

21     11.   In the event the Debtors' case is dismissed or converted to any other chapter

22 under Title 11 of the United States Bankruptcy Code, Creditor shall retain its lien in the full

23 amount due under the Note and the automatic stay shall be terminated without further notice,

24 order, or proceeding of the court.

25 /././

26 /././

27 /././

28 /././

Exhibit E

1    12.    Each party shall bear their own attorneys' fees and costs in connection with the

2 preparation and filing of this Stipulation.

3    13.    In exchange for the foregoing, Creditor accepts the Debtor's Plan with respect to

4 the Subject Property.

5

6 Dated: <u>January 31, 2011</u>                     <u>/s/ Bryan A. Lindsey</u>_____
                                              BRYAN A. LINDSEY
7                                              Attorney for the Debtors

8

9
   Dated: <u>January 31, 2011</u>                     PITE DUNCAN, LLP
10

11
                                              <u>/s/ Ace Van Patten</u>_____
12                                              ACE VAN PATTEN
                                              Attorneys for Creditor
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 4 -

Exhibit E

CERTIFICATE OF SERVICE

I, Agustina Sandoval, declare that:

I am employed in the County of San Diego, California.  My business address is 4375 Jutland Drive, Suite 200; P.O. Box 17933, San Diego, CA 92177-0933. I am over the age of 18 years and not a party to this case.

On January 30, 2019, I caused the Amended Proof of Claim by placing a true copy thereof in an envelope with postage thereon fully prepaid in the United States Mail at San Diego, California and/or via electronic means pursuant to Local Bankruptcy Rule 5005-2 as follows:

Matthew L. Johnson
Johnson & Gubler, P.C.
8831 West Sahara Avenue
Las Vegas, NV 89117
annabelle@mjohnsonlaw.com


Schulte Properties LLC
9811 W. Charleston Blvd Ste 2-351
Las Vegas, NV 89117


U.S. TRUSTEE - LV – 11
300 Las Vegas Boulevard, S.
Suite 4300
Las Vegas, NV 89101
USTPRegion17.lv.ecf@usdoj.gov


I certify under penalty of perjury that the foregoing is true and correct.

Dated: January 30, 2019            /s/Agustina Sandoval
                                   AGUSTINA SANDOVAL

Exhibit E