1   CHRISTOPHER P. BURKE, ESQ.         **_ECF Filed On 4/23/21_**
    Nevada Bar No.: 004093
2   *atty@cburke.lvcoxmail.com*
    218 S. Maryland Pkwy.
3   Las Vegas, Nevada 89101
    (702) 385-7987
4   Attorney for Debtor

5

6               **UNITED STATES BANKRUPTCY COURT**
                    **DISTRICT OF NEVADA**

7

8   In Re:                    Case No. 09-29123-MKN

9   MELANI SCHULTE and         Chapter 11
    WILLIAM R. SCHULTE,

10                          Jointly Administered with:

11   2704 SATTLEY LLC,          09-31585- MKN
    HOT ENDEAVOR LLC,        09-27238- MKN
12   1341 MINUET LLC,          09-27909- MKN
    1708 PLATO PICO LLC,       09-27910- MKN
13   2228 WARM WALNUT LLC,     09-27911- MKN
    9425 VALLEY HILLS LLC,     09-27912- MKN
14   9500 ASPEN GLOW LLC,      09-27913- MKN
    5218 MISTY MORNING LLC,   09-27914- MKN
15   CHERISH LLC,            09-27916- MKN
    SABRECO INC.,           09-28513- MKN
16   KEEP SAFE LLC,          09-31584- MKN

17            Debtors.         Date: May 26, 2021
                                Time: 9:30 a.m.

18       **MOTION FOR CONTEMPT FOR VIOLATION OF THE AUTOMATIC STAY**
19     **AND DISCHARGE INJUNCTION, FAILING TO COMPLY WITH A COURT**
    **ORDER AND THE CONFIRMED PLAN AND FOR DAMAGES INCLUDING**
20     **ATTORNEYS FEES AGAINST CREDITORS, SHELLPOINT MORTGAGE**
        **SERVICING AND OCWEN LOAN SERVICING, LLC**

21         COMES NOW, Debtor, Melani Schulte ("Mrs. Schulte" or "Debtor"), and files this

22   Motion for Contempt for Violation of the Automatic Stay and Discharge Injunction and

23   Failure to Comply with A Court Order and the Confirmed Plan and for Damages including

24   Attorneys Fees against Creditors, Shellpoint Mortgage Servicing ("Shellpoint") and Ocwen

25   Loan Servicing, LLC ("Ocwen") for the property located at 1392 Echo Falls Ave., Las Vegas

26

27

28                              1

Nevada 89123 ("Echo Falls Ave.").

# I
# Facts

1. On October 11, 2009, Debtors filed a Chapter 11 petition ("Petition") for bankruptcy and was assigned bankruptcy case no. 09-29123-MKN (Dkt. #1). Debtors Melani Schulte and William Schulte (Deceased) filed their bankruptcy schedules on December 1, 2009 (Dkt.#41). On Schedule B of the petition, Debtors listed many properties, including one located at 1392 Echo Falls Ave., Las Vegas Nevada 89123 ("Echo Falls Ave.").

2. On January 28, 2010, The Bank of New York Mellon filed a Motion for Relief from Stay Property: 1392 Echo Falls Ave. (Dkt.#62).

3. On January 29, 2010 Debtor proposed their Plan of Reorganization (Dkt. #67) and Disclosure Statement (Dkt. #68).

4. On January 31, 2010, Secured Creditor Litton Loan Servicing filed a Proof of Claim (claim no. 51-1), which lists $17,59348 in pre-petition arrears and a total claim of $128,482.54 due as of date of filing.

5. On February 25, 2010 Debtor filed their Opposition to Motion for Relief from Stay (Dkt.#100).

6. On May 31, 2010 Debtors filed their Amended Disclosure Statement (Dkt.# 250).

7. On May 31, 2010, Debtor filed their Amended Plan of Reorganization (Dkt.# 251) and Exhibit B (Table of Properties) to Disclosure Statement (Dkt.# 252).

8. On June 7, 2010, Debtor filed a Supplemental Opp and Objections to Motion for Relief Of Stay (Dkt.#311).

9. On August 14, 2010, Debtor filed their Motion to Value Collateral Property located at Property: 1392 Echo Falls Ave., Las Vegas Nevada 89123

(Dkt.#541).

10.    On September 22, 2010 Litton Loan and the Debtors filed a Stipulation Re: Treatment of Litton Loan Mortgage's Claim on Echo Falls Ave. (Dkt. #703).In the Agreed Stip it stated, Debtor shall make monthly adequate protection payments to the Secured Creditor, and continuing on the first day of each month thereafter pursuant to the terms of the Note and Deed of Trust. Payments shall be consistent with the value set forth for the subject property in the Motion to Value Collateral filed in Bankruptcy case 09-29123-BAM on 8/14/2010, docket #541. Payments shall be based upon the determination of value of $132,000.00, over a term of 30 years, amortized at a fixed rate of **5.00%**. Commencing 10/1/2010, Debtor shall make regular monthly post-petition payments to Secured Creditor in the amount of **$708.60,** and continuing on the first day of each month thereafter pursuant to the terms of the Note and Deed of Trust. Payments shall be made directly to: Litton Loan Servicing, LP Attn: Cash Management 4828 Loop Central Drive Houston, TX 77081, with reference to the last four digits of the Loan Number 2478, or as otherwise directed. The Debtor shall timely perform all of their obligations under Secured Creditor's loan documents as they come due, including but not limited to the payment of real estate taxes, maintaining insurance coverage, and any and all senior liens. In the event Debtor fails to timely perform any of the obligations set forth in this Order, Secured Creditor shall notify Debtor and Debtor's counsel of the default in writing. Debtor shall have ten (10) calendar days from the date of the written notification to cure the default, plus an additional $100.00 for attorneys' fees. If Debtor fails to timely cure the default, Secured Creditor shall be entitled to lodge a Declaration of Default and an Order Terminating the Automatic Stay. The Order shall be

entered without further hearing. The automatic stay shall be immediately terminated and extinguished for all purposes as to Secured Creditor and Secured Creditor may proceed with and hold a trustee's sale of the subject property, pursuant to applicable state law, and without further Court Order of proceeding being necessary, commence any action necessary to obtain complete possession of the subject Property, including unlawful detainer, if required. Upon disposition of collateral, secured collateral, secured creditor will amend or delete its Proof of Claim and provide Trustee notice of the same. If Debtor defaults on the obligations set forth herein on more than three (3) occasions, Secured Creditor may lodge a Declaration and Order Terminating the Automatic Stay. The Order shall be entered without further hearing. The automatic stay shall be immediately terminated and extinguished for all purposes as to Secured Creditor and Secured Creditor may proceed with and hold a trustee's sale of the subject property, pursuant to applicable state law, and without further Court Order of proceeding being necessary, commence any action necessary to obtain complete possession of the subject Property, including unlawful detainer, if required. Upon disposition of collateral, secured creditor will amend or delete its Proof of Claim and provide Trustee with notice of the same. (Dkt.#703, p.1-3).

11.    And on September 24, 2010 the Agreed Order was granted on the Stipulated Order Regarding Treatment of Creditor's Claim Pursuant to Chapter 11 plan (Dkt.#717).

12.    On September 24, 2010 the Order Granting Collateral, "Strip Off" and Modify Rights of Unsecured Creditors Pursuant to 11 U.S.C. Section 506(a) and Section 1123 for the Real Property Located at 1392 Echo Falls Ave., Las Vegas Nevada 89123  was entered (Dkt.# 716).

**Post Stipulation**

13.    On October 5, 2010, Debtor filed their Second Amended Disclosure Statement (Dkt. #752) and their Amended Plan #3 of Reorganization (Dkt.# 753).

14.    On November 9, 2010, Debtor filed their Third Amended Disclosure Statement (Dkt. #816).

15.    On November 23, 2010, Debtor proposed their Amended Plan #4 of Reorganization, (Dkt. #834) and on November 23, 2010, filed their Fourth Amended Disclosure Statement (Dkt. #832).

16.    Debtors Amended Chapter 11 Plan #4 ("Confirmed Plan") incorporated the Agreed Order by reference to Litton Loan's class treatment, and the Court confirmed the proposed plan on March 8, 2011 ("Confirmation Order").

17.    That on October 11, 2011 Ocwen Loan Servicing, LLC filed a Transfer of Claim for Security (Dkt.#992).

**The Stip for Adequate Protection states Schulte is to directly pay the property taxes and insurance. However, the Servicers continuously add it to her monthly statement**

18.    That on or about April 17, 2013, Mrs. Schulte received a mortgage statement from Ocwen. It listed: **Account Information**

| | |
|---|---|
| *Current Principal Balance: | 107,313.78 |
| Post-Petition Interest Rate: | 5.87500% |
| Pre-Petition Interest Rate: | .00000% |
| Post-Petition Due Date: | 12/01/2010 |
| Contractual Due Date: | 03/01/2010 |
| Escrow Advance Balance: | 4,618.24- |
| Interest Paid Year-To-Date: | 529.64 |
| Taxes Paid Year-To-Date: | 317.76 |
| Beginning Principal Balance: | 108,182.13 |
| Principal Reductions Year-To-Date: | 868.35 |

Beginning Escrow Balance: 4,518.67-

Escrow Deposits/Adjustments Year-To-Date: 218.19

Escrow Disbursements/Adjustments Year-To-Date: 317.76-

Recently Assessed Amounts:

04/04/13 Foreclosure Costs: 65.00

*This is the principal balance only, not the amount to pay your account in full.

**Details of Amount Due**

Current Post-Petition Amount Due:

Principal: 1,020.21

Interest: 377.78

Escrow: 218.19

Less: Partial Payment Amount: 732.94-

Current Post-Petition Amount Due by 05/01/13: 883.24

Post-Petition Past Due Amounts:

Principal: 27,519.06

Interest: 13,022.65

Escrow: 6,327.51

Post-Petition Past Due Amount DUE IMMEDIATELY  46,869.22

Post-Petition Amount Due: 47,752.46

Assessed Fees/Expense Outstanding:

Info Only- Late Charges: 1,817.40

Info Only-Current-Foreclosure Cost: 65.00

Info Only-Current-Foreclosure Cost: 18.00

Info Only-Prev-Prior Servicer Fees: 3,333.66

**Total Fees/Expense Outstanding:** **5,443.76**

**Recent Account Activity**

| Date | Description | Principal | Interest | Escrow | Optional | Late Charges | Fees/Other | Suspense | Total |
|------|-------------|-----------|----------|--------|----------|--------------|------------|----------|-------|
| 03/05/13 | Payment | | | 218.19 | | | | 907.58- | 708.60 |
| 03/05/13 | Payment | 868.35 | 529.64 | | | | | | 708.60 |
| 04/02/13 | Suspense Payment | | | | | | | 708.60 | |

At the bottom on the Detach portion of the page it listed, **AMOUNT DUE** $47,752.46; If Received after 05/17/2013 add Late Charge of: $69.90; Total Amount Due with Late Charge: $47,822.36 (Ex. '2', p.2).

6

19.     That on or about June 17, 2013, Mrs. Schulte received a mortgage statement

from Ocwen. It listed: **Account Information**

| | |
|---|---|
| *Current Principal Balance: | 106,441.18 |
| Post-Petition Interest Rate: | 5.87500% |
| Pre-Petition Interest Rate: | .00000% |
| Post-Petition Due Date: | 01/01/2011 |
| Contractual Due Date: | 04/01/2010 |
| Escrow Advance Balance: | 4,400.05- |
| Interest Paid Year-To-Date: | 1,055.03 |
| Taxes Paid Year-To-Date: | 317.75 |
| Beginning Principal Balance: | 108,182.13 |
| Principal Reductions Year-To-Date: | 1,740.95 |
| Beginning Escrow Balance: | 4,518.67- |
| Escrow Deposits/Adjustments Year-To-Date: | 436.38 |
| Escrow Disbursements/Adjustments Year-To-Date: | 317.76- |

*This is the principal balance only, not the amount to pay your account in full.

**Details of Amount Due**

Current Post-Petition Amount Due:

| | |
|---|---|
| Principal: | 1,030.22 |
| Interest: | 367.77 |
| Escrow: | 218.19 |
| Less: Partial Payment Amount: | 533.96- |
| Current Post-Petition Amount Due by 05/01/13: | 1,082.22 |

Post-Petition Past Due Amounts:

| | |
|---|---|
| Principal: | 28,678.99 |
| Interest: | 13,260.71 |
| Escrow: | 6,546.70 |
| Post-Petition Past Due Amount DUE IMMEDIATELY | 46,485.40 |
| Post-Petition Amount Due: | 49,567.62 |

Assessed Fees/Expense Outstanding:

| | |
|---|---|
| Info Only- Late Charges: | 209.70 |
| Info Only-Current-Foreclosure Cost: | 1,817.40 |
| Info Only-Current-Foreclosure Cost: | 83.00 |
| Info Only-Prev-Prior Servicer Fees: | 3,333.66 |

7

**Total Fees/Expense Outstanding:**          **5,443.76**

**Recent Account Activity**

| Date | Description | Principal | Interest | Escrow | Optional | Late Charges | Fees/ Other | Suspense | Total |
|---|---|---|---|---|---|---|---|---|---|
| 05/21/13 | Payment | | | 218.19 | | | | 198.98- | 1,417.20 |
| 05/21/13 | Payment | 872.60 | 525.39 | | | | | | |

(Ex. '2', p.4).

20.   That on or about August 19, 2013, Mrs. Schulte received a mortgage statement from Ocwen. It listed: **Account Information**

| | |
|---|---|
| *Current Principal Balance: | 106,441.18 |
| Post-Petition Interest Rate: | 5.87500% |
| Pre-Petition Interest Rate: | .00000% |
| Post-Petition Due Date: | 01/01/2011 |
| Contractual Due Date: | 04/01/2010 |
| Escrow Advance Balance: | 5,109.06- |
| Interest Paid Year-To-Date: | 1,055.03 |
| Taxes Paid Year-To-Date: | 649.77 |
| Beginning Principal Balance: | 108,182.13 |
| Principal Reductions Year-To-Date: | 1,740.95 |
| Beginning Escrow Balance: | 4,518.67- |
| Escrow Deposits/Adjustments Year-To-Date: | 436.38 |
| Escrow Disbursements/Adjustments Year-To-Date: | 1,026.77- |

*This is the principal balance only, not the amount to pay your account in full.

**Details of Amount Due**

| | |
|---|---|
| Current Post-Petition Amount Due: | |
| Principal: | 1,040.33 |
| Interest: | 357.66 |
| Escrow: | 218.19 |
| Less: Partial Payment Amount: | 533.96- |
| Current Post-Petition Amount Due by 05/01/13: | 1,082.22 |
| Post-Petition Past Due Amounts: | |
| Principal: | 30,744.48 |
| Interest: | 13,991.20 |

8

Escrow:                                                            6,982.08

Post-Petition Past Due Amount DUE IMMEDIATELY 51,717.76

Post-Petition Amount Due:                              52,799.98

Assessed Fees/Expense Outstanding:

Info Only- Late Charges:                                  209.70

Info Only-Current-Foreclosure Cost:                1,817.40

Info Only-Current-Foreclosure Cost:                83.00

Info Only-Prev-Prior Servicer Fees:                3,333.66

**Total Fees/Expense Outstanding:          5,443.76**

**Recent Account Activity**

| Date | Description | Principal | Interest | Escrow 377.00- | Optional | Late Charges | Fees/Other | Suspense | Total 377.00 |
|------|-------------|-----------|----------|-------|----------|--------------|------------|----------|-------|
| 07/25/13 07/29/13 | Insurance Disbursement CENTURY NATIONAL INSURANCE CO Tax Disbursement CLARK COUNTY TREASURERS OFFICE | | | 332.01- | | | | | 332.01- |

At the bottom on the Detach portion of the page it listed, **AMOUNT DUE** $52,799.98; If Received after 09/17/2013 add Late Charge of: $69.90; Total Amount Due with Late Charge: $52,869.88 (Ex. '2', p.6).

21.    That on or about February 4, 2014, Mrs. Schulte received a letter from Ocwen. It stated, We are pleased to assist you in identifying solutions for your mortgage questions. **We have assigned a dedicated mortgage assistance expert to help you, Martha Garcia, who will be your personal Relationship Manager. Martha Garcia** will carefully review your situation and application materials, make sure your information is complete and work with you to identify the best potential resolution options. At the bottom of the page it further listed, Notice Regarding Bankruptcy: Please be advised that this letter is in no way an attempt to collect either a pre-petition, post petition or discharge debt. If your bankruptcy case is still active, no action will be taken in willful violation of the Automatic Stay. If you

9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

have received an Order of Discharge in a bankruptcy case, any action taken by us is for the sole purpose of protection our lien interest in the underlying mortgaged property and is not an attempt to recover any amounts from you personally. Finally, if you are in an active Chapter 11, 12 or 13 bankruptcy case and an Order for Relief from the Automatic Stay has not been issued, you should continue to make payments in accordance with your plan. If your loan has been paid in full or already foreclosed upon, this is not attempt to collect any additional funds from you (Ex. '3', p.2).

22.    That on or about March 5, 2014, Mrs. Schulte received a letter from Ocwen. It stated, We are pleased to assist you in identifying solutions for your mortgage questions. **We have assigned a dedicated mortgage assistance expert to help you, Verlean Reese, who will be your personal Relationship Manager. Verlean Reese** will carefully review your situation and application materials, make sure your information is complete and work with you to identify the best potential resolution options At the bottom of the page it further listed, Notice Regarding Bankruptcy: Please be advised that this letter is in no way an attempt to collect either a pre-petition, post petition or discharge debt. If your bankruptcy case is still active, no action will be taken in willful violation of the Automatic Stay. If you have received an Order of Discharge in a bankruptcy case, any action taken by us is for the sole purpose of protection our lien interest in the underlying mortgaged property and is not an attempt to recover any amounts from you personally. Finally, if you are in an active Chapter 11, 12 or 13 bankruptcy case and an Order for Relief from the Automatic Stay has not been issued, you should continue to make payments in accordance with your plan. If your loan has been paid in full or already foreclosed upon, this is not attempt to collect

10

any additional funds from you (Ex. '3', p.4).

23.    That on or about May 22, 2014, Mrs. Schulte received a letter from Ocwen. It stated, We have received your correspondence requesting research to be performed for the above referenced loan. It is Ocwen's policy to perform all research and provide a written response to you within twenty (20) days from the receipt of your letter. Ocwen may need to contact you for further information in order to process your request (Ex. '3', p.7).

24.    That on or about May 29, 2014, Mrs. Schulte received another letter from Ocwen. It stated, Our company has recently received a request for information on the above referenced loan, which is enclosed for your review (Ex. '3', p.8).

25.    That on or about July 21, 2014, Mrs. Schulte received a **ESCROW ACCOUNT DISCLOSURE STATEMENT-BANKRUPTCY PROJECTIONS FOR THE YEAR** from Ocwen. It stated, This notice is being sent to you because Ocwen Loan Servicing, LLC has been notified that a proceeding under Chapter 11 of the Bankruptcy Code involving you was commenced on 10/11/2009. This notice relates to your postpetition escrow payments and disbursements only. It further list, Escrow Balance as of the date of Bankruptcy filing :  $-8,134.69; Escrow due for Disbursement in the month of Bankruptcy filing Oct 2009 : $0.00; Amount to be part of the Proof Of Claim– Pre-petition Escrow due :-$8,134.69; Post Petition Escrow balance as of the date of Bankruptcy filing  : $188.16.

| Description of Next Disbursement | Due Date of Next Disbursement | Estimated Amount(s) of Next Disbursement |
|---|---|---|
| County Tax | Sep 2014 | $331.10 |
| County Tax | Dec 2014 | $331.10 |
| County Tax | Feb 2015 | $331.10 |

11

| County Tax | July 2015 | $332.01 |
|---|---|---|
| Hazard Insurance | Aug 2015 | $390.00 |
| Total Annual Disbursements | | $1,715.31 |
| Target Escrow Payment | | $142.94 (1/12th of $1,7156.31 |

Total Shortage $4,642.38 (Ex. '3', p.14).

**Post Confirmation**

26.    Debtor Melani Schulte continued making the payments in accordance with the Stipulation, including paying the monthly principal and interest payments (Ex. '1' Decl. M. Schulte ¶30).

27.    That on or about August 21, 2015, Mrs. Schulte received Notice of Transfer of Loan from Bank of America, N.A. to Shellpoint Mortgage Servicing. It stated, Shellpoint Mortgage Servicing would like to welcome you and inform you that effective 08/17/2015, the servicing of your loan has been transferred from Bank of America, N.A. to Shellpoint Mortgage Servicing. (Ex. '4').

28.    On November 3, 2015, Debtor filed their Amended Application for the Entry of the Discharge of Debtors (Dkt.# 1152). Shellpoint did not object. On December 15, 2015, the Court entered its Stipulated Order Granting Amended Motion for Discharge of Debtors (Dkt.#1181). And on December 15, 2015 court entered Debtors Discharge (Dkt.#1182).

**Post-Discharge**

29.    That on or about February 2, 2016, Mrs. Schulte received a letter from Shellpoint. It stated, We have assigned a Specialist to assist you throughout the Loss Mitigation process concerning your mortgage loan. We will perform

an evaluation of your financial condition and determine your qualifications for all alternatives that may be applicable for this account. As of the date of this letter, the account balance is $128,870.89. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater (Ex. '5', p.2).

30.    That on or about May 12, 2016, Mrs. Schulte received a **NOTICE OF DEFAULT AND INTENT TO ACCELERATE** from Shellpoint. It stated, 1. You are in default because you have failed to pay the required monthly installments commencing with the payment due 11/01/2012.; 2. As of 05/12/2016, total monthly payments (including principal, interest, and escrow if applicable), late fees, insufficient funds (NSF) fees, and other fees and advances due under the terms of your loan documents in the total amount of $39,792.43 are past due. This past due amount is itemized below. Currently, your interest rate is 5%. The anticipated date of your next interest rate change is not applicable. It also list,

| | |
|---|---|
| PITI for 43 months: | $39,851.97 |
| Unpaid Late charge(s): | $35.43 |
| Unpaid Non-sufficient funds charge(s) | $0.00 |
| Outstanding legal fees and costs: | $550.00 |
| Unpaid Broker price opinion fees: | $0.00 |
| Unpaid Inspection fees: | $13.00 |
| Other Unpaid fees: | $45.00 |
| Escrow advance (for non-escrowed loans): $0.00 | |
| Escrow shortage (for escrowed loans): | $2,344.72 |
| Prepayment Fees: | $0.00 |
| Total amount due: | $39,792.43 |

(Ex. '5', p.5)

31.    That on or about June 27, 2016, Mrs. Schulte received a **Notice of Referral to Foreclosure** from Shellpoint. It stated, **Your mortgage loan**

**payment is past due and your property may be referred to foreclosures unless immediate action is taken.** You may be able to avoid foreclosure by paying the total amount necessary to bring the account current (see "Important Account Information"). **Important Account Information as of 06/27/2016:** A. **The total amount needed to reinstate or to bring the account current is: $40,816.08.** Please note this amount is subject to change. Please call us for the most current amount.; B. The amount of the principal obligation under the mortgage is: $128,870.89; C. The date through which the account is paid is: 10/01/2012; D. The date of last full payment was: 04/17/2015; E. As of today, you are due for: 11/01/2012; F. As of today, the interest rate in effect for the loan is : 5%; G. The date on which the interest rate may next reset or adjust is: Not Applicable; H. The amount of any prepayment fee to be charge is: $0.00; I. The amount of late payment fees included in the above reinstatement amount is: $106.29 (Ex. '5', p.10)

32. That on or about July 25, 2016, Mrs. Schulte received a letter from Shellpoint. It stated, The above referenced mortgage loan serviced by Shellpoint Mortgage Servicing ("Shellpoint"), on the above referenced property is in default and foreclosure proceedings have or may soon commence. Because you have not taken steps to resolve the delinquency, we have been instructed by the owner of your mortgage loan to commence foreclosure. In addition to foreclosing on the property, the owner of the mortgage loan may seek a deficiency judgment against you if the proceeds from the foreclosure sale do not pay off the amount you owe on the mortgage loan (Ex. '5', p.14)

33. That on or about August 25, 2016, Mrs. Schulte received a letter from TRUSTEE CORPS. It stated, With regards to the above referenced file our

14

office is handling, enclosed please find or REINSTATEMENT and/or PAY OFF Demand, which *you* have requested. It further list, **REINSTATEMENT DEMAND**

Payments        $42,532.34

Total Corp. Adv/Late/NSF/Atty Fees        $837.15

Unapplied Balance    $-702.97

Trustees Fees          $457.50

**TOTAL amount due to <u>REINSTATE</u> loan: <u>$43,224.02</u>**

 **THIS STATEMENT EXPIRES ON <u>08/31/2016 @ 3:00p.m.</u>** (Ex. '5', p.16).

34.    That on or about September 6, 2016 Mrs. Schulte received a Substitution of Trustee (Ex. '5', p.20).

35.    That on or about September 7, 2016 Mrs. Schulte received a Cooperative Short Sale or Deed-in-Lieu Offer from Shellpoint. It stated, Shellpoint Mortgage Servicing wants to work with you on any possible options to avoid foreclosure. You may eligible for our Cooperative Short Sale Program or the Cooperative Deed-in-Lieu Program. By participating in either of these programs you could earn up to $23,716.74 in relocation assistance. These programs are specifically designed to help borrowers who are unable to afford their mortgage and want to avoid foreclosure (Ex. '5', p.24).

36.    That on or about October 27, 2016, Mrs. Schulte received a letter from Shellpoint. It stated, Principal Balance: $128,870.89; We understand that financial circumstances may change from time to time, affecting your ability to meet your obligations. We're concerned about your recently missed mortgage payment and want to offer our assistance in case you are unable to catch up (Ex. '5', p.26).

37.  That on or about December 12, 2016, Mrs. Schulte received a letter from Shellpoint. It stated, Principal Balance: $128,870.89; **ACT NOW! LAST CHANCE TO APPLY FOR THE HOME AFFORDABLE MODIFICATION AND FORECLOSURE ALTERNATIVES PROGRAMS!** On December 30, 2016, the Home Affordable Modification Program ("HAMP") and the Home Affordable Foreclosure Alternatives Program ("HAFA") will be ratired. This will be your last opportunity to apply for these programs. If approved for HAMP, you could be eligible for a reduced monthly payment and up to $10,000 in performance incentives. If approved for HAFA, you will have an opportunity to exit your home and be relieved of the remaining mortgage debt through a short sale or a deed-in-lieu of foreclosure. HAFA provides eligible homeowners with $10,000 in relocation assistance (Ex. '5', p.44).

38.  That on or about December 22, 2016, Mrs. Schulte received another letter from Shellpoint. It stated, Principal Balance: $128,870.89. **United States Department of Housing and Urban Development Office of Housing Servicemembers Civil Relief Act Notice Disclosure**; **Legal Rights and Protections Under the SCRA**; Servicemembers on "active duty" or "active service," or a dependent of such a servicemember may be entitled to certain legal protections and debt relief pursuant to the Servicemember Civil Relief Act (50 USC App. §§501-596)(SCRA) (Ex. '5', p.46).

39.  That on January 13, 2017, Shellpoint filed a Notice of Breach and Default and Election to Cause Sale of Real Property Under Deed of Trust (Ex. '6', p.2).

40.  That on or about January 18, 2017, Mrs. Schulte received another letter from Shellpoint. It stated, We are writing to let you know that your mortgage is currently in foreclosure. However, you may still have an opportunity to keep

your home or prevent foreclosure, even if you previously indicated that you do not wish to stay in your home (Ex. '6', p.8).

41. That on or about January 19, 2017, Mrs. Schulte received a mortgage statement from Shellpoint. It listed, **Payment Date 02/01/2017; Payment Amount $48,637.48.** It also list,

**Account Information**

Outstanding Principal        $128,870.89

Interest Rate                 5.000%

Prepayment Penalty        No

Last Paid Installment 10/1/2012

**Explanation of Amount Due;**

Principal $212.18

Interest $496.42

Escrow (Taxes and Insurance) $151.37

**Regular Monthly Payment $859.97**

Total Fees and Charges $0.00

Overdue Payment   $47,777.51

**Total Amount Due $48,637.48**

**Past Payments Breakdown**

|  | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow | $0.00 | $0.00 |
| Fees/Late Charges | $0.00 | $0.00 |
| Partial Payment (Unapplied) $0.00 | | $702.97 |
| **Total** | **$0.00** | **$702.97** |

17

**Important Message**

 **\*Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account according to applicable state law. If you pay the balance of a partial payment, the funds will be applied to your mortgage. **Transaction Activity (12/19/2016- 1/18/2017)**

| Date | Description | Charges | Payments |
|------|-------------|---------|----------|
| 12/23/2016 | Late Charge Waive | ($35.43) | |
| 1/3/2017 | FC Costs Disbursement | $55.00 | |
| 1/5/2017 | Property Inspection Disbursement | $13.00 | |
| 12/23/2016 | Late Charge Assess (because full payment not received by 1/15/2017) | $35.43 | |

**Additional Information**

| Date | Description | Amount |
|------|-------------|--------|
| 01/18/2017 | Escrow Balance | $880.96 |

At the bottom on the Detach portion of the page it listed

**Mortgage Payment Coupon; Amount Due; Due By 2/1/2017: $48,637.48**. On the second page it further list,

**\*\*Delinquency Notice\*\***

 **You are late on your mortgage payments.** Failure to bring your loan current may result in fees and foreclosure- the loss of your home. As of January 18,2017, you are 1,540 days delinquent on your mortgage loan.

Recent Account History

 • Payment due 8/1/16: unpaid balance of $43,166.87

 • Payment due 9/1/16: unpaid balance of $962.22

18

• Payment due 10/1/16: unpaid balance of $962.22

• Payment due 11/1/16: unpaid balance of $895.40

• Payment due 12/1/16: unpaid balance of $895.40

• Payment due 1/1/17: unpaid balance of $895.40

• Current payment due 02/1/17: $859.97

**• Total: $48,637.48 due. You must pay this amount to bring your loan current** (Ex. '6', p.9).

42.    That on or about February 16, 2017, Mrs. Schulte received a mortgage statement from Shellpoint. It listed, **Payment Due Date 03/01/2017; Payment Amount $50,720.35.** It also list,

**Account Information**

Outstanding Principal        $128,870.89

Interest Rate                5.000%

Prepayment Penalty        No

Last Paid Installment 10/1/2012

**Explanation of Amount Due;**

Principal $213.07

Interest $495.53

Escrow (Taxes and Insurance) $151.37

**Regular Monthly Payment $859.97**

Total Fees and Charges $0.00

Overdue Payment      $49,860.38

**Total Amount Due $50,720.35**

**Past Payments Breakdown**

|  | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |

| | | |
|---|---|---|
| Interest | $0.00 | $0.00 |
| Escrow | $0.00 | $0.00 |
| Fees/Late Charges | $0.00 | $0.00 |
| Partial Payment (Unapplied) | $0.00 | $702.97 |
| **Total** | **$0.00** | **$702.97** |

**Important Message**

*\*Partial Payments:* Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account according to applicable state law. If you pay the balance of a partial payment, the funds will be applied to your mortgage. **Transaction Activity (1/19/2017- 2/15/2017)**

| Date | Description | Charges | Payments |
|---|---|---|---|
| 2/2/2017 | Recording Cost Disbursement | $222.00 | |
| 2/2/2017 | Recording Cost Disbursement | $43.00 | |
| 2/2/2017 | Certified Mail Cost Disbursement | $144.90 | |
| 2/2/2017 | FC Costs Disbursement | $75.00 | |
| 2/2/2017 | FC Costs Disbursement | $420.00 | |
| 2/2/2017 | Foreclosure Trustee Disbursement | $305.00 | |
| 12/14/2017 | Property Inspection Disbursement | $13.00 | |

**Additional Information**

| Date | Description | Amount |
|---|---|---|
| 2/15/2017 | Escrow Balance | $528.31 |
| 2/14/2017 | County Tax Bill 4 | ($352.65) |

At the bottom on the Detach portion of the page it listed

**Mortgage Payment Coupon; Amount Due; Due By 3/1/2017: $50,720.35**. On the second page it further list,

**\*\*Delinquency Notice\*\***

**You are late on your mortgage payments**. Failure to bring your loan current may result in fees and foreclosure- the loss of your home. As of February 15, 2017, you are 1,568 days delinquent on your mortgage loan.

Recent Account History

• Payment due 9/1/16: unpaid balance of $45,351.99

• Payment due 10/1/16: unpaid balance of $962.22

• Payment due 11/1/16: unpaid balance of $895.40

• Payment due 12/1/16: unpaid balance of $895.40

• Payment due 1/1/17: unpaid balance of $895.40

• Payment due 2/1/17: unpaid balance of $859.97

• Current payment due 3/1/17: $859.97

• **Total: $50,720.35 due. You must pay this amount to bring your loan current** (Ex. '6', p.11).

43.  That on or about March 19, 2017, Mrs. Schulte received a mortgage statement from Shellpoint. It listed, **Payment Due Date 4/01/2017; Amount Due $51,628.75.** It also list,

**Account Information**

Outstanding Principal         $128,870.89

Interest Rate                  5.000%

Prepayment Penalty         No

Last Paid Installment 10/1/2012

**Explanation of Amount Due**:

Principal $213.95

Interest $494.65

Escrow (Taxes and Insurance) $151.37

**Regular Monthly Payment $859.97**

Total Fees and Charges $35.43

Overdue Payment    $50,733.35

**Total Amount Due $51,628.75**

**Past Payments Breakdown**

|  | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow | $0.00 | $0.00 |
| Fees/Late Charges | $0.00 | $0.00 |
| Partial Payment (Unapplied) | $0.00 | $702.97 |
| **Total** | **$0.00** | **$702.97** |

**Important Message**

 **\*Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account according to applicable state law. If you pay the balance of a partial payment, the funds will be applied to your mortgage. **Transaction Activity (2/16/2017- 3/18/2017)**

| **Date** | **Description** | **Charges** | **Payments** |
|---|---|---|---|
| 2/17/2017 | Late Charge Assess (because full payment not received by 2/16/2017) | $35.43 | |
| 3/10/2017 | Property Inspection Disbursement | $13.00 | |

**Additional Information**

| **Date** | **Description** | **Amount** |
|---|---|---|
| 2/18/2017 | Escrow Balance | $528.31 |

At the bottom on the Detach portion of the page it listed

**Mortgage Payment Coupon; Amount Due; Due By 4/1/2017: $51,628.75**. On the second page it further list,

**\*\*Delinquency Notice\*\***

**You are late on your mortgage payments**. Failure to bring your loan current may result in fees and foreclosure- the loss of your home. As of March 18, 2017, you are 1,599 days delinquent on your mortgage loan. Recent Account History

• Payment due 10/1/16: unpaid balance of $46,327.21

• Payment due 11/1/16: unpaid balance of $895.40

• Payment due 12/1/16: unpaid balance of $895.40

• Payment due 1/1/17: unpaid balance of $895.40

• Payment due 2/1/17: unpaid balance of $895.40

• Payment due 3/1/17: unpaid balance of $8559.97

• Current payment due 4/1/17: $859.97

**• Total: $51,628.75 due. You must pay this amount to bring your loan current** (Ex. '6', p.13).

44. That on or about March 21, 2017 Mrs. Schulte mailed a certified letter to Shellpoint Mortgage Servicing Requesting information (Ex. '6', p.15).

45. That on or about March 24, 2017, Mrs. Schulte faxed a letter to Trustee Corp. Requesting a reinstatement quote and a payoff quote (Ex. '6', p.18).

46. That on or about March 27, 2017, Mrs. Schulte received a letter from Shellpoint. It stated, We understand that financial circumstances may change from time to time, effecting your ability to meet your obligations. We're concerned about your recently missed mortgage payment(s) and want to offer our assistance in case you are unable to catch up (Ex. '6', p.20).

47. That on or about March 28, 2017, Mrs. Schulte faxed another letter to Trustee

Corp. Requesting a reinstatement quote and request for Information (Ex. '6', p.37).

48.    That on or about March 28, 2017, Mrs. Schulte received a letter from Trustee Corps regarding the requested information letter she mailed them (Ex. '6', p.40).

49.    That on or about March 29, 2017 Mrs. Schulte received a letter from Shellpoint. It stated, This letter is in response to *your* recent inquiry regarding the above-referenced account serviced by Shellpoint Mortgage Servicing on behalf of THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2004-28CB, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2004-28CB, the owner of your loan. We are working to gather the requested information and will forward it to you as soon as possible (Ex. '6', p.49).

50.    That on or about March 30, 2017 Mrs. Schulte received the signed receipt by Shellpoint Mortgage Servicing regarding her letter (Ex. '6', p.16).

51.    That on or about April 13, 2017 Mrs. Schulte received a letter from Shellpoint. It stated, This letter is in response to *your* recent inquiry regarding the above-referenced account serviced by Shellpoint Mortgage Servicing on behalf of THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., Alternative Loan Trust 2004-28cb, Mortgage Pass-Through Certificates, Series 2004-28cb, ("Bony As Trustee For Cwalt 2004-28cb") . Shellpoint began servicing this loan on or About 17, 2015 (Ex. '6', p.51).

52.    That on or about April 20, 2017 Mrs. Schulte mailed a certified letter to Shellpoint Mortgage Servicing Requesting information (Ex. '6', p.53).

24

53. That on June 1, 2017, Shellpoint filed a Notice of Trustee's Sale Important Notice to Property Owner (Ex. '6', p.57).

54. That on or about June 1, 2017, Mrs. Schulte faxed and mailed a letter to Trustee Corp. and Shellpoint. Requesting a reinstatement quote ASAP for the aforementioned mortgage on the stated property (Ex. '6', p.60).

55. That on or about June 27, 2017, Mrs. Schulte received a letter from Trustee Corps regarding the REINSTATEMENT and/or PAY OFF Demand which *you* have requested (Ex. '6', p.67).

56. That on June 28, 2017, The Law Offices of Amberlea Davis on behalf of Mrs. Schulte faxed a letter to National Title Company, Trustee Corp. and Nevada Legal News Requesting Trustee's Sale Date to be taken off calendar (Ex. '6', p.71).

57. That on or about June 29, 2017, Mrs. Schulte received a letter from Trustee Corps. It stated, You are hereby notified that the Trustee's Sale listed for the above referenced property has been postponed to Monday, August 14, 2017 at 10:00 AM. (Ex. '6', p.75).

58. That on or about August 14, 2017, Mrs. Schulte received a letter from Trustee Corps. It stated, You are hereby notified that the Trustee's Sale listed for the above referenced property has been postponed to Thursday, September 14, 2017 at 10:00 AM. (Ex. '6', p.76).

59. That on or about October 27, 2017, Mrs. Schulte received a letter from Shellpoint. It stated,, Shellpoint Mortgage Servicing ("Shellpoint") is committed to offering assistance and exploring options that may assist our borrowers who filed for bankruptcy with a temporary or long-term solution. If you fill out the attached forms and return them to us, we will be able to explore all the options that are available. If you are an attorney representing

25

the borrower, please fill out and provide the attached consent form to initiate the process (Ex. '6', p.78).

60. That on or about November 6, 2017 Mrs. Schulte mailed a certified letter to Shellpoint Mortgage Servicing second Request for information (Ex. '6', p.94).

61. That on or about April 5, 2018 Mrs. Schulte received a Cooperative Deed-in-Lieu or Short Sale Offer from Shellpoint. It stated, Shellpoint Mortgage Servicing ("Shellpoint") wants to work with you on any possible options to avoid foreclosure. We understand this is a difficult time and we want to help. You may eligible for our Cooperative Deed-in-Lieu Program or Cooperative Short Sale Program. Our offer is now especially attractive, as it includes an incentive up to $20,000.00 to help you settle other possible existing liens on the property as well as provide relocation assistance. These programs are specifically designed to help borrowers who are unable to afford their mortgage and want to avoid foreclosure. (Ex. '7', p.2).

62. That on or about April 20 2018, Mrs. Schulte received a mortgage statement from Shellpoint. It listed, **Payment Date 05/01/2018; Payment Amount $63,195.63.** It also list,
**Explanation of Payment Amount**;
Principal $225.84
Interest $482.76
Escrow (Taxes and Insurance) $155.51
**Regular Monthly Payment $864.11**
Total Fees and Charges $35.43
Past Unpaid Payment $62,296.09
**Total Payment Amount $63,195.63**
 **Past Payment Breakdown**

|  | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow | $0.00 | $0.00 |

26

| | | |
|---|---|---|
| Fees/Late Charges | $0.00 | $0.00 |
| Partial Payment (Unapplied) | $0.00 | $702.97 |
| **Total** | **$0.00** | **$702.97** |

**Account Information**

| | |
|---|---|
| Outstanding Principal | $128,870.89 |
| Interest Rate | 5.000% |
| Prepayment Penalty | None |

**Bankruptcy Message**

**Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy.**

**Important Message**

 **\*Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account according to applicable state law. If you pay the balance of a partial payment, the funds will be applied to your mortgage.

**\*\*Account History\*\***

**Recent Account History**

• Payment due 11/01/17: unpaid balance of $58,044.36

• Payment due 12/01/17: unpaid balance of $829.36

• Payment due 01/01/18: unpaid balance of $829.36

• Payment due 02/01/18: unpaid balance of $829.36

• Payment due 03/01/18: unpaid balance of $899.54

• Payment due 04/01/18: unpaid balance of $899.54

• Payment due 05/01/18: current payment due

• **Total: $63,195.63 unpaid amount that, if paid, would bring your loan current.** At the bottom on the Detach portion of the page it listed **Payment Amount; Payment Date 05/01/2018; Payment Amount $63,195.63** (Ex. '7', p.6).

63.    That on or about April 23, 2018 Mrs. Schulte faxed a letter to Shellpoint Mortgage Servicing asking for the information she had requested over the last 2 years and to honor her 2009 bankruptcy confirmation order (Ex. '7', p.8).

64.    That on or about April 25, 2018, Mrs. Schulte received a letter from Shellpoint. It stated, Shellpoint Mortgage Servicing ("Shellpoint") is

27

committed to offering assistance and exploring options that may assist our borrowers who filed for bankruptcy with a temporary or long-term solution. If you fill out the attached forms and return them to us, we will be able to explore all the options that are available. If you are an attorney representing the borrower, please fill out and provide the attached consent form to initiate the process (Ex. '7', p.10).

65. That on or about May 3, 2018, Ms. Schulte received a letter from National Default Servicing Corporation ("NDSC"), for the property at Echo Falls Avenue (Ex. '7', p.27).

66. That on or about May 7, 2018, Ms. Schulte received a letter from Shellpoint. It stated, Thank you for your recent inquiry regarding the above referenced mortgage loan. We will review account information and provide a written response to your request within fifteen (15) days (Ex. '7', p.28).

67. That on or about May 10, 2018 Mrs. Schulte mailed a letter disputing the validity of the debt to National Default Servicing Corp. Mortgage Servicing (Ex. '7', p.32).

68. That on or about May 11, 2018 Mrs. Schulte received a Cooperative Deed-in-Lieu or Short Sale Offer from Shellpoint. It stated, Shellpoint Mortgage Servicing ("Shellpoint") wants to work with you on any possible options to avoid foreclosure. We understand this is a difficult time and we want to help. You may eligible for our Cooperative Deed-in-Lieu Program or Cooperative Short Sale Program. Our offer is now especially attractive, as it includes an incentive up to $20,000.00 to help you settle other possible existing liens on the property as well as provide relocation assistance. These programs are specifically designed to help borrowers who are unable to afford their mortgage and want to avoid foreclosure. (Ex. '7', p.33).

69. That on or about May 16, 2018, Ms. Schulte received a letter from National Default Servicing Corporation ("NDSC"), for the property at Echo Falls Avenue. It stated, We are writing to let you know that your mortgage loan payment is past due, and your property has been referred to foreclosure (Ex. '7', p.37).

70. That on or about May 20 2018, Mrs. Schulte received a mortgage statement from Shellpoint. It listed, **Payment Date 06/01/2018; Payment Amount $65,584.74.** It also list,

**Explanation of Payment Amount**;

Principal $226.78

Interest $481.82

Escrow (Taxes and Insurance) $155.51

**Regular Monthly Payment $864.11**

Total Fees and Charges $1,586.43

Past Unpaid Payment $63,134.20

**Total Payment Amount $65,584.74**

**Past Payment Breakdown**

|  | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow | $0.00 | $0.00 |
| Fees/Late Charges | $26.00 | $0.00 |
| Partial Payment (Unapplied) $0.00 | | $702.97 |
| **Total** | **$26.00** | **$728.97** |

**Account Information**

Outstanding Principal    $128,870.89

29

| | |
|---|---|
| Interest Rate | 5.000% |
| Prepayment Penalty | None |

**Bankruptcy Message**

**Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy.**

**Important Message**

 **\*Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account according to applicable state law. If you pay the balance of a partial payment, the funds will be applied to your mortgage.

**\*\*Account History\*\***

**Recent Account History**

• Payment due 12/01/17: unpaid balance of $60,398.72

• Payment due 01/01/18: unpaid balance of $829.36

• Payment due 02/01/18: unpaid balance of $829.36

• Payment due 03/01/18: unpaid balance of $899.54

• Payment due 04/01/18: unpaid balance of $899.54

• Payment due 05/01/18: unpaid balance of $864.11

• Payment due 06/01/18: current payment due

• **Total: $65,584.74 unpaid amount that, if paid, would bring your loan current.** At the bottom on the Detach portion of the page it listed **Payment Amount; Payment Date 06/01/2018; Payment Amount $65,584.74.** On the second page it list, **Transaction Activity (04/15/2018- 05/19-2018)**

| **Date** | **Description** | **Charges** | **Payments** |
|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| 04/17/2018 | Late Charge Assess (because full payment not received by 4/16/2018) | | $35.43 | $0.00 |
| 05/02/2018 | Property Inspection Disbursement | $13.00 | | $0.00 |
| 05/02/2018 | Foreclosure Trustee Disbursement | $1,525.00 | | $0.00 |
| 05/17/2018 | Property Inspection Disbursement | $13.00 | | $0.00 |
| 05/17/2018 | Property Inspection Payment | | $0.00 | $13.00 |
| 05/18/2018 | Property Inspection Payment | | $0.00 | $13.00 |

(Ex. '7', p.39).

71.    That on or about June 18, 2018, Mrs. Schulte received a mortgage statement from Shellpoint. It listed, **Payment Date 07/01/2018; Payment Amount $67,297.17.** It also list,

**Explanation of Payment Amount**;

Principal $227.72

Interest $480.88

Escrow (Taxes and Insurance) $155.51

**Regular Monthly Payment $864.11**

Total Fees and Charges $848.32

Past Unpaid Payment $65,584.74

**Total Payment Amount $67,297.17**

**Past Payment Breakdown**

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow | $0.00 | $0.00 |
| Fees/Late Charges | $0.00 | $26.00 |

31

Partial Payment (Unapplied) $0.00                    $702.97

**Total**                          **$0.00**                    **$728.97**

**Account Information**

Outstanding Principal        $128,870.89

Interest Rate                      5.000%

Prepayment Penalty          None

**Bankruptcy Message**

**Our records show that either you are a debtor in bankruptcy or
you discharged personal liability for your mortgage loan in
bankruptcy.**

**Important Message**

 **\*Partial Payments:** Any partial payments that you make are not applied
to your mortgage, but instead are held in a separate suspense account
according to applicable state law. If you pay the balance of a partial payment,
the funds will be applied to your mortgage.

**\*\*Account History\*\***

**Recent Account History**

• Payment due 01/01/18: unpaid balance of $62,076.40

• Payment due 02/01/18: unpaid balance of $829.36

• Payment due 03/01/18: unpaid balance of $899.54

• Payment due 04/01/18: unpaid balance of $899.54

• Payment due 05/01/18: unpaid balance of $864.11

• Payment due 06/01/18: unpaid balance of $864.11

• Payment due 07/01/18: current payment due

• **Total: $67,297.17 unpaid amount that, if paid, would bring your
loan current.** At the bottom on the Detach portion of the page it listed

**Payment Amount; Payment Date 07/01/2018; Payment Amount $67,297.17.** On the second page it list, **Transaction Activity (05/20/2018- 06/17/2018)**

| Date | Description | Charges | Payments |
|------|-------------|---------|----------|
| 06/11/2018 | Property Inspection Disbursement | $13.50 | $0.00 |
| 06/12/2018 | Certified Mail Cost Disbursement | $2.82 | $0.00 |
| 06/12/2018 | FC Costs Disbursement | $792.00 | $0.00 |
| 06/12/2018 | Recording Cost Disbursement | $40.00 | $0.00 |

(Ex. '7', p.42).

72.  That on or about July 20, 2018, Mrs. Schulte received a mortgage statement from Shellpoint. It listed, **Payment Date 08/01/2018; Payment Amount $67,465.68.** It also list,

**Explanation of Payment Amount**;

Principal $228.67

Interest $479.93

Escrow (Taxes and Insurance) $155.51

**Regular Monthly Payment $864.11**

Total Fees and Charges $13.00

Past Unpaid Payment $66,588.57

**Total Payment Amount $67,465.68**

**Past Payment Breakdown**

|  | Paid Last Month | Paid Year to Date |
|--|-----------------|-------------------|
| Principal | $171.64 | $171.64 |
| Interest | $536.96 | $536.96 |
| Escrow | $218.19 | $218.19 |
| Fees/Late Charges | $0.00 | $26.00 |

| Partial Payment (Unapplied) | -$218.19 | $484.78 |
|---|---|---|
| **Total** | **$708.60** | **$1,437.57** |

**<u>Account Information</u>**

| Outstanding Principal | $128,699.25 |
|---|---|
| Interest Rate | 5.000% |
| Prepayment Penalty | None |

**Bankruptcy Message**

**Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy.**

**Important Message**

 *Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account according to applicable state law. If you pay the balance of a partial payment, the funds will be applied to your mortgage.

**\*\*Account History\*\***

**Recent Account History**

• Payment due 02/01/18: unpaid balance of $62,210.16

• Payment due 03/01/18: unpaid balance of $899.54

• Payment due 04/01/18: unpaid balance of $899.54

• Payment due 05/01/18: unpaid balance of $864.11

• Payment due 06/01/18: unpaid balance of $864.11

• Payment due 07/01/18: unpaid balance of $864.11

• Payment due 08/01/18: current payment due

• **Total: $67,465.68 unpaid amount that, if paid, would bring your loan current.** At the bottom on the Detach portion of the page it listed

34

**Payment Amount; Payment Date 08/01/2018; Payment Amount $67,465.68.** On the second page it list, **Transaction Activity (06/18/2018- 07/19/2018)**

| Date | Description | Charges | Payments |
|------|-------------|---------|----------|
| 07/16/2018 | Property Inspection Disbursement | $13.00 | $0.00 |
| 07/16/2018 | Partial Payment Unapplied | $0.00 | $0.00 |
| 07/17/2018 | Partial Payment Unapplied | $0.00 | -$926.79 |
| 07/17/2018 | Regular Payment-(Due 11/1/2012) | $0.00 | $926.79 |

(Ex. '7', p.43).

73.    That on or about August 21, 2018, Mrs. Schulte received a letter from Shellpoint. It stated, Our records show that your hazard insurance expired and we do not have evidence that you have obtained new coverage. **Because hazard insurance is required on your property, we plan to buy insurance for your property**. You must pay us for any period which the insurance we buy is in effect but you do not have insurance (Ex. '7', p.48).

74.    That on or about August 20, 2018, Mrs. Schulte received a mortgage statement from Shellpoint. It listed, **Payment Date 09/01/2018; Payment Amount $67,621.19.** It also list,

**Explanation of Payment Amount**;

Principal $229.63

Interest $478.97

Escrow (Taxes and Insurance) $155.51

**Regular Monthly Payment $864.11**

Total Fees and Charges $0.00

Past Unpaid Payment $66,757.00

**Total Payment Amount $67,621.19**

**Past Payment Breakdown**

|  | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $172.35 | $343.99 |
| Interest | $536.25 | $1,073.21 |
| Escrow | $218.19 | $436.38 |
| Fees/Late Charges | $0.00 | $26.00 |
| Partial Payment (Unapplied) | -$218.19 | $266.59 |
| **Total** | **$708.60** | **$2,146.17** |

**Account Information**

| Outstanding Principal | $128,870.89 |
|---|---|
| Interest Rate | 5.000% |
| Prepayment Penalty | None |

**Bankruptcy Message**

**Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy.**

**Important Message**

 ***Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account according to applicable state law. If you pay the balance of a partial payment, the funds will be applied to your mortgage.

**\*\*Account History\*\***

**Recent Account History**

• Payment due 03/01/18: unpaid balance of $62,401.10

• Payment due 04/01/18: unpaid balance of $899.54

• Payment due 05/01/18: unpaid balance of $864.11

• Payment due 06/01/18: unpaid balance of $864.11

• Payment due 07/01/18: unpaid balance of $864.11

• Payment due 08/01/18: unpaid balance of $864.11

• Payment due 09/01/18: current payment due

• **Total: $67,221.19 unpaid amount that, if paid, would bring your loan current.** At the bottom on the Detach portion of the page it listed **Payment Amount; Payment Date 09/01/2018; Payment Amount $67,621.19.** On the second page it list, **Transaction Activity (07/20/2018- 08/19/2018)**

| Date | Description | Charges | Payments |
|------|-------------|---------|----------|
| 07/31/2018 | County Tax Bill 1 | $378.79 | $0.00 |
| 08/13/2018 | Partial Payment Unapplied | $0.00 | $708.60 |
| 08/14/2018 | Partial Payment Unapplied | $0.00 | -$926.79 |
| 08/14/2018 | Regular Payment- (Due 12/1/2012) | $0.00 | $926.79 |

(Ex. '7', p.52).

75.  That on or about September 7, 2018, Mrs. Schulte received a letter from Shellpoint. It stated, Your evidence of property insurance documents for the above referenced property was recently received. It was noted that the Name Insured is incorrect on the policy. **Please update the name listed on the policy to read as follows:** Melani Schulte (Ex. '7', p.55).

76.  That on or about September 20, 2018, Mrs. Schulte received a letter from Shellpoint. It stated, This is your **second and final notice** that our records show that your hazard insurance has expired and we do not have evidence that you have obtained new coverage. Because hazard insurance is required on your property, we plan to buy insurance for your property. You must pay us for any period during which the insurance we buy is in effect but you do

not have insurance (Ex. '7', p.58).

77.   That on or about September 20, 2018, Mrs. Schulte received a mortgage statement from Shellpoint. It listed, **Payment Date 10/01/2018; Payment Amount $56,357.77.** It also list,

**Explanation of Payment Amount**;

Principal $230.58

Interest $478.02

Escrow (Taxes and Insurance) $160.57

**Regular Monthly Payment $869.17**

Total Fees and Charges $145.00

Past Unpaid Payment $55,343.60

**Total Payment Amount $56,357.77**

**Past Payment Breakdown**

|  | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $173.07 | $517.06 |
| Interest | $535.53 | $1,608.74 |
| Escrow | $580.01 | $1,016.39 |
| Fees/Late Charges | $0.00 | $26.00 |
| Partial Payment (Unapplied) | -$218.19 | $48.40 |
| **Total** | **$1,070.42** | **$3,216.59** |

**Account Information**

Outstanding Principal $128,353.83

Interest Rate   5.000%

Prepayment Penalty   None

**Bankruptcy Message**

**Our records show that either you are a debtor in bankruptcy or**

38

**you discharged personal liability for your mortgage loan in bankruptcy.**

**Important Message**

 **\*Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account according to applicable state law. If you pay the balance of a partial payment, the funds will be applied to your mortgage.

**\*\*Account History\*\***

**Recent Account History**

• Payment due 04/01/18: unpaid balance of $51,303.32

• Payment due 05/01/18: unpaid balance of $708.60

• Payment due 06/01/18: unpaid balance of $869.17

• Payment due 07/01/18: unpaid balance of $869.17

• Payment due 08/01/18: unpaid balance of $869.17

• Payment due 09/01/18: unpaid balance of $869.17

• Payment due 10/01/18: current payment due

• **Total: $56,357.77 unpaid amount that, if paid, would bring your loan current.** At the bottom on the Detach portion of the page it listed **Payment Amount; Payment Date 10/01/2018; Payment Amount $56,357.77.** On the second page it list, **Transaction Activity (08/20/2018- 09/19/2018)**

| Date | Description | Charges | Payments |
|------|-------------|---------|----------|
| 08/22/2018 | BPO/Aprst Cost Disbursement | $145.00 | $0.00 |
| 08/30/2018 | Tax Refund Report | $0.00 | $361.82 |
| 09/11/2018 | Partial Payment Unapplied | $0.00 | $708.60 |
| 09/12/2018 | Partial Payment Unapplied | $0.00 | -$926.79 |

09/12/2018   Regular Payment- (Due 1/1/2013) $0.00        $926.79

(Ex. '7', p.59).

78.    That on or about September 27, 2018, Mrs. Schulte faxed Shellpoint proof of insurance for the property of 1392 Echo Falls Ave. (Ex. '7', p.65).

79.    That on or about October 18, 2018, Mrs. Schulte received a mortgage statement from Shellpoint. It listed, **Payment Date 11/01/2018; Payment Amount $56,566.74.** It also list,

**Explanation of Payment Amount**;

Principal $231.54

Interest $477.06

Escrow (Taxes and Insurance) $160.57

**Regular Monthly Payment $869.17**

Total Fees and Charges $0.00

Past Unpaid Payment $55,697.57

**Total Payment Amount $56,566.74**

**Past Payment Breakdown**

|  | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $173.79 | $690.85 |
| Interest | $534.81 | $2,143.55 |
| Escrow | $48.40 | $1,064.79 |
| Fees/Late Charges | $0.00 | $26.00 |
| Partial Payment (Unapplied) | -$48.40 | $0.00 |
| **Total** | **$708.60** | **$3,925.19** |

**Account Information**

Outstanding Principal   $128,180.04

Interest Rate              5.000%

40

Prepayment Penalty          None

**Bankruptcy Message**

**Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy.**

**Important Message**

 ***Partial Payments:*** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account according to applicable state law. If you pay the balance of a partial payment, the funds will be applied to your mortgage.

**\*\*Account History\*\***

**Recent Account History**

• Payment due 05/01/18: unpaid balance of $51,351.72

• Payment due 06/01/18: unpaid balance of $869.17

• Payment due 07/01/18: unpaid balance of $869.17

• Payment due 08/01/18: unpaid balance of $869.17

• Payment due 09/01/18: unpaid balance of $869.17

• Payment due 10/01/18: unpaid balance of $869.17

• Payment due 11/01/18: current payment due

**• Total: $56,566.74 unpaid amount that, if paid, would bring your loan current.** At the bottom on the Detach portion of the page it listed **Payment Amount; Payment Date 11/01/2018; Payment Amount $56,566.74.** On the second page it list, **Transaction Activity (09/20/2018- 10/17/2018)**

| Date | Description | Charges | Payments |
|------|-------------|---------|----------|
| 10/11/2018 | Partial Payment Unapplied | $0.00 | $48.40 |

41

10/11/2018   Regular Payment- (Due 2/1/2013) $0.00        $708.60

10/11/2018   Escrow Only Payment              $0.00        $48.40

(Ex. '7', p.71).

80. That on or about October 22, 2018, Mrs. Schulte received a letter  from Shellpoint. It stated, We have not received proof of hazard insurance on the above referenced property as required under the terms of your mortgage and as requested in our previous notice. Because of this, **it has become necessary to place lender-placed insurance coverage on your property** (Ex. '7', p.74).

81. That on or about October 25, 2018, Mrs. Schulte received another mortgage statement from Shellpoint. It listed, **Payment Date 11/01/2018; Payment Amount $56,566.74.** It also list,

**Explanation of Payment Amount**;

Principal $231.54

Interest $477.06

Escrow (Taxes and Insurance) $160.57

**Regular Monthly Payment $869.17**

Total Fees and Charges $0.00

Past Unpaid Payment $55,697.57

**Total Payment Amount $56,566.74**

**Past Payment Breakdown**

|                    | Paid Last Month | Paid Year to Date |
| ------------------ | --------------- | ----------------- |
| Principal          | $173.79         | $690.85           |
| Interest           | $534.81         | $2,143.55         |
| Escrow             | $48.40          | $1,064.79         |
| Fees/Late Charges  | $0.00           | $26.00            |

Partial Payment (Unapplied) -$48.40                    $0.00

**Total                          $708.60                    $3,925.19**

**Account Information**

Outstanding Principal        $128,180.04

Interest Rate                 5.000%

Prepayment Penalty            None

**Bankruptcy Message**

**Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy.**

**Important Message**

 **\*Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account according to applicable state law. If you pay the balance of a partial payment, the funds will be applied to your mortgage.

**\*\*Account History\*\***

**Recent Account History**

• Payment due 05/01/18: unpaid balance of $51,351.72

• Payment due 06/01/18: unpaid balance of $869.17

• Payment due 07/01/18: unpaid balance of $869.17

• Payment due 08/01/18: unpaid balance of $869.17

• Payment due 09/01/18: unpaid balance of $869.17

• Payment due 10/01/18: unpaid balance of $869.17

• Payment due 11/01/18: current payment due

**• Total: $56,566.74 unpaid amount that, if paid, would bring your loan current.** At the bottom on the Detach portion of the page it listed

43

**Payment Amount; Payment Date 11/01/2018; Payment Amount $56,566.74.** On the second page it list, **Transaction Activity (09/20/2018- 10/17/2018)**

| Date | Description | Charges | Payments |
|------|-------------|---------|----------|
| 10/11/2018 | Partial Payment Unapplied | $0.00 | -$48.40 |
| 10/11/2018 | Regular Payment- (Due 2/1/2013) | $0.00 | $708.60 |
| 10/11/2018 | Escrow Only Payment | $0.00 | $48.40 |
| 10/24/2018 | Reversal of Tax Refund Report | $0.00 | -$361.82 |
| 10/24/2018 | Tax Refund Report | $0.00 | $361.82 |

(Ex. '7', p.78).

82.    That on or about November 6, 2018, Mrs. Schulte received a letter from Shellpoint. It stated, Your evidence of property insurance documents for the above referenced property was recently received. It was noted that the Name Insured is incorrect on the policy. **Please update the name listed on the policy to read as follows:** Melani Schulte (Ex. '7', p.79).

83.    That on or about November 17, 2018, Mrs. Schulte received a mortgage statement from Shellpoint. It listed, **Payment Date 12/01/2018; Payment Amount $56,727.31.** It also list,

**Explanation of Payment Amount**;

Principal $233.51

Interest $476.09

Escrow (Taxes and Insurance) $160.57

**Regular Monthly Payment $869.17**

Total Fees and Charges $0.00

Past Unpaid Payment $55,858.14

**Total Payment Amount $56,727.31**

44

**Past Payment Breakdown**

|  | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $174.52 | $865.37 |
| Interest | $534.08 | $2,677.63 |
| Escrow | $0.00 | $1,064.79 |
| Fees/Late Charges | $0.00 | $26.00 |
| **Total** | **$708.60** | **$4,633.79** |

**Account Information**

| Outstanding Principal | $128,005.52 |
|---|---|
| Interest Rate | 5.000% |
| Prepayment Penalty | None |

**Bankruptcy Message**

**Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy.**

**Important Message**

 *Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account according to applicable state law. If you pay the balance of a partial payment, the funds will be applied to your mortgage.

**\*\*Account History\*\***

**Recent Account History**

• Payment due 06/01/18: unpaid balance of $51,512.29

• Payment due 07/01/18: unpaid balance of $869.17

• Payment due 08/01/18: unpaid balance of $869.17

• Payment due 09/01/18: unpaid balance of $869.17

• Payment due 10/01/18: unpaid balance of $869.17    •

Payment due 11/01/18: unpaid balance of $869.17    •

Payment due 12/01/18: current payment due    •

**Total: $56,727.31 unpaid amount that, if paid, would bring your loan current.** At the bottom on the Detach portion of the page it listed **Payment Amount; Payment Date 12/01/2018; Payment Amount $56,727.31.** On the second page it list, **Transaction Activity (10/28/2018- 11/16/2018)**

| Date | Description | Charges | Payments |
|------|-------------|---------|----------|
| 11/06/2018 | Lender Placed Hazard Disbursement | $1,311.86 | $0.0 |
| 11/13/2018 | Regular Payment- (Due 3/1/2013) $0.00 | | $708.60 |

(Ex. '7', p.80).

84.  That on or about November 21, 2018, Mrs. Schulte faxed Shellpoint proof of insurance for the property of 1392 Echo Falls Ave. (Ex. '7', p.83).

85.  That on or about December 18, 2018, Mrs. Schulte received a mortgage statement from Shellpoint. It listed, **Payment Date 01/01/2019; Payment Amount $56,900.88.** It also list,

**Explanation of Payment Amount**;

Principal $233.48

Interest $475.12

Escrow (Taxes and Insurance) $160.57

**Regular Monthly Payment $869.17**

Total Fees and Charges $13.00

Past Unpaid Payment $56,018.71

**Total Payment Amount $56,900.88**

**Past Payment Breakdown**

|  | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $175.24 | $1,040.61 |
| Interest | $533.36 | $3,210.99 |
| Escrow | $0.00 | $1,064.79 |
| Fees/Late Charges | $0.00 | $26.00 |
| **Total** | **$708.60** | **$5,342.39** |

**Account Information**

| | |
|---|---|
| Outstanding Principal | $127,830.28 |
| Interest Rate | 5.000% |
| Prepayment Penalty | None |

**Bankruptcy Message**

**Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy.**

**Important Message**

 *Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account according to applicable state law. If you pay the balance of a partial payment, the funds will be applied to your mortgage.

**\*\*Account History\*\***

**Recent Account History**

• Payment due 07/01/18: unpaid balance of $51,685.86

• Payment due 08/01/18: unpaid balance of $869.17

• Payment due 09/01/18: unpaid balance of $869.17

• Payment due 10/01/18: unpaid balance of $869.17

• Payment due 11/01/18: unpaid balance of $869.17

• Payment due 12/01/18: unpaid balance of $869.17

• Payment due 01/01/19: current payment due

• **Total: $56,900.88 unpaid amount that, if paid, would bring your loan current.** At the bottom on the Detach portion of the page it listed **Payment Amount; Payment Date 01/01/2019; Payment Amount $56,900.88.** On the second page it list, **Transaction Activity (11/17/2018- 12/17/2018)**

| Date | Description | Charges | Payments |
|---|---|---|---|
| 11/26/2018 | Property Inspection Disbursement | $13.00 | $0.0 |
| 12/10/2018 | Regular Payment- (Due 4/1/2013) | $0.00 | $708.60 |

(Ex. '7', p.88).

86.  That on or about January 8, 2019, Mrs. Schulte received a letter from Shellpoint. It stated, We recently changed the billing frequency of your lender placed policy's premium from monthly to annually. If you have your own coverage, please have your insurance agent forward a copy of the policy to our office as soon as possible (Ex. '8', p.2).

87.  That on or about January 14, 2019, Mrs. Schulte faxed Shellpoint a letter regarding the renewed insurance for the property of 1392 Echo Falls Ave. (Ex. '8', p.3).

88.  That on or about January 17, 2019, Mrs. Schulte received a letter from Shellpoint. It stated, Thank you for submitting an acceptable policy fo the referenced property. The policy you have submitted will replace the previous insurance information we have on record (Ex. '8', p.5).

89.  That on or about January 18, 2019, Mrs. Schulte received a mortgage statement from Shellpoint. It listed, **Payment Date 02/01/2019; Payment Amount $57,642.40.** It also list,

48

**Explanation of Payment Amount**;

Principal $234.45

Interest $474.15

Escrow (Taxes and Insurance) $160.57

**Regular Monthly Payment $869.17**

Total Fees and Charges $580.95

 Past Unpaid Payment $56,192.28

**Total Payment Amount $57,642.40**

**Past Payment Breakdown**

|  | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $175.97 | $175.97 |
| Interest | $532.63 | $532.63 |
| Escrow | $0.00 | $0.00 |
| Fees/Late Charges | $0.00 | $0.00 |
| **Total** | **$708.60** | **$708.60** |

**Account Information**

| Outstanding Principal | $127,654.31 |
|---|---|
| Interest Rate | 5.000% |
| Prepayment Penalty | None |

**Bankruptcy Message**

**Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy.**

**Important Message**

 *\*Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account

49

according to applicable state law. If you pay the balance of a partial payment, the funds will be applied to your mortgage.

**\*\*Account History\*\***

**Recent Account History**

• Payment due 08/01/18: unpaid balance of $52,427.38

 • Payment due 09/01/18: unpaid balance of $869.17

• Payment due 10/01/18: unpaid balance of $869.17

• Payment due 11/01/18: unpaid balance of $869.17

• Payment due 12/01/18: unpaid balance of $869.17

• Payment due 01/01/19: unpaid balance of $869.17

• Payment due 02/01/19: current payment due

**• Total: $57,642.40 unpaid amount that, if paid, would bring your loan current.** At the bottom on the Detach portion of the page it listed **Payment Amount; Payment Date 02/01/2019; Payment Amount $57,642.40.** On the second page it list, **Transaction Activity (12/18/2018- 01/17/2019)**

| Date | Description | Charges | Payments |
|------|-------------|---------|----------|
| 12/21/2018 | FC Costs Disbursement | $533.75 | $0.0 |
| 12/21/2018 | Certified Mail Costs Disbursement | $7.20 | $0.00 |
| 12/21/2018 | Recording Costs Disbursement | $40.00 | $0.00 |
| 12/21/2018 | Regular Payment- (Due 5/1/2013) | $0.00 | $708.60 |

(Ex. '8', p.6).

90.    That on or about February 16, 2019, Mrs. Schulte received a mortgage statement from Shellpoint. It listed, **Payment Date 03/01/2019; Payment Amount $57,781.22** It also list,

**Explanation of Payment Amount;**

Principal $235.43

Interest $473.17

Escrow (Taxes and Insurance) $125.82

**Regular Monthly Payment $834.42**

Total Fees and Charges $13.00

Past Unpaid Payment $56,933.80

**Total Payment Amount $57,781.22**

**Past Payment Breakdown**

|  | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $176.71 | $352.68 |
| Interest | $531.89 | $1,064.52 |
| Escrow | $1,313.36 | $1,313.36 |
| Fees/Late Charges | $0.00 | $0.00 |
| **Total** | **$2,021.96** | **$2,730.56** |

**Account Information**

Outstanding Principal    $127,477.60

Interest Rate    5.000%

Prepayment Penalty    None

**Bankruptcy Message**

**Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy.**

**Important Message**

 **\*Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account according to applicable state law. If you pay the balance of a partial payment,

the funds will be applied to your mortgage.

**\*\*Account History\*\***

**Recent Account History**

• Payment due 09/01/18: unpaid balance of $52,600.95

 • Payment due 10/01/18: unpaid balance of $869.17

• Payment due 11/01/18: unpaid balance of $869.17

• Payment due 12/01/18: unpaid balance of $869.17

• Payment due 01/01/19: unpaid balance of $869.17

• Payment due 02/01/19: unpaid balance of $869.17

• Payment due 03/01/19: current payment due

• **Total: $57,781.22 unpaid amount that, if paid, would bring your loan current.** At the bottom on the Detach portion of the page it listed **Payment Amount; Payment Date 03/01/2019; Payment Amount $57,781.22.** On the second page it list, **Transaction Activity (01/18/2019- 02/15/2019)**

| Date | Description | Charges | Payments |
|------|-------------|---------|----------|
| 01/18/2019 | Insurance-Refund | $0.00 | $1,313.36 |
| 1/21/2019 | Property Inspection Disbursement | $13.00 | $0.00 |
| 02/07/2019 | Regular Payment- (Due 6/1/2013) | $0.00 | $708.60 |

(Ex. '8', p.9).

91.   That on or about March 18, 2019, Mrs. Schulte received a mortgage statement from Shellpoint. It listed, **Payment Date 04/01/2019; Payment Amount $58,615.64** It also list,

**Explanation of Payment Amount;**

Principal $236.41

Interest $472.19

Escrow (Taxes and Insurance) $125.82

**Regular Monthly Payment $834.42**

Total Fees and Charges $155.00

 Past Unpaid Payment $57,626.22

**Total Payment Amount $58,615.64**

**Past Payment Breakdown**

|  | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $352.68 |
| Interest | $0.00 | $1,064.52 |
| Escrow | $0.00 | $1,313.36 |
| Fees/Late Charges | $155.00 | $155.00 |
| **Total** | **$155.00** | **$2,885.56** |

**Account Information**

| | |
|---|---|
| Outstanding Principal | $127,477.60 |
| Interest Rate | 5.000% |
| Prepayment Penalty | None |

**Bankruptcy Message**

**Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy.**

**Important Message**

 **\*Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account according to applicable state law. If you pay the balance of a partial payment, the funds will be applied to your mortgage.

**\*\*Account History\*\***

53

**Recent Account History**

• Payment due 10/01/18: unpaid balance of $53,470.12

 • Payment due 11/01/18: unpaid balance of $869.17

• Payment due 12/01/18: unpaid balance of $869.17

• Payment due 01/01/19: unpaid balance of $869.17

• Payment due 02/01/19: unpaid balance of $869.17

 • Payment due 03/01/19: unpaid balance of $834.42

 • Payment due 04/01/19: current payment due

• **Total: $58,615.64 unpaid amount that, if paid, would bring your loan current.** At the bottom on the Detach portion of the page it listed **Payment Amount; Payment Date 04/01/2019; Payment Amount $58,615.64.** On the second page it list, **Transaction Activity (02/16/2019- 03/17/2019)**

| Date | Description | Charges | Payments |
|------|-------------|---------|----------|
| 02/27/2019 | BPO/Aprsl Cost Disbursement | $155.00 | $0.00 |
| 02/27/2019 | BPO/Aprsl Cost Payment | $0.00 | $155.00 |

(Ex. '8', p.12).

92.    That on or about April 17, 2019, Mrs. Schulte received a mortgage statement from Shellpoint. It listed, **Payment Date 05/01/2019; Payment Amount $58,395.86.** It also list,

**Explanation of Payment Amount**;

Principal $237.39

Interest $471.21

Escrow (Taxes and Insurance) $125.82

**Regular Monthly Payment $834.42**

Total Fees and Charges $363.00

54

Past Unpaid Payment $57,198.44

**Total Payment Amount $58,395.86**

**Past Payment Breakdown**

|  | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $355.62 | $708.30 |
| Interest | $1,061.58 | $2,126.10 |
| Escrow | $0.00 | $1,313.36 |
| Fees/Late Charges | $0.00 | $155.00 |
| **Total** | **$1,417.20** | **$4,302.76** |

**Account Information**

| | |
|---|---|
| Outstanding Principal | $127,121.98 |
| Interest Rate | 5.000% |
| Prepayment Penalty | None |

**Bankruptcy Message**

**Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy.**

**Important Message**

 **\*Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account according to applicable state law. If you pay the balance of a partial payment, the funds will be applied to your mortgage.

**\*\*Account History\*\***

**Recent Account History**

• Payment due 11/01/18: unpaid balance of $53,285.09

 • Payment due 12/01/18: unpaid balance of $869.17

• Payment due 01/01/19: unpaid balance of $869.17

• Payment due 02/01/19: unpaid balance of $869.17

• Payment due 03/01/19: unpaid balance of $834.42

• Payment due 04/01/19: unpaid balance of $834.42

• Payment due 05/01/19: current payment due

• **Total: $58,395.86 unpaid amount that, if paid, would bring your loan current.** At the bottom on the Detach portion of the page it listed **Payment Amount; Payment Date 05/01/2019; Payment Amount $58,395.86.** On the second page it list, **Transaction Activity (03/18/2019- 04/16/2019)**

| Date | Description | Charges | Payments |
|------|-------------|---------|----------|
| 03/18/2019 | Regular Payment-(Due 7/1/2013) | $0.00 | $708.60 |
| 03/20/2019 | Property Inspection Disbursement | $13.00 | $0.00 |
| 04/05/2019 | Attorney Cost Disbursement | $350.00 | $0.00 |
| 04/29/2019 | Regular Payment-(Due 8/1/2013) | $0.00 | $708.60 |

(Ex. '8', p.13).

93.    That on or about May 18, 2019, Mrs. Schulte received a mortgage statement from Shellpoint. It listed, **Payment Date 06/01/2019; Payment Amount $58,521.68.** It also list,

**Explanation of Payment Amount;**

Principal $238.38

Interest $470.22

Escrow (Taxes and Insurance) $125.82

**Regular Monthly Payment $834.42**

Total Fees and Charges $0.00

Past Unpaid Payment $57,687.26

56

**Total Payment Amount $58,521.68**

**Past Payment Breakdown**

|  | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $178.93 | $887.23 |
| Interest | $529.67 | $2,655.77 |
| Escrow | $0.00 | $1,313.36 |
| Fees/Late Charges | $0.00 | $155.00 |
| **Total** | **$708.60** | **$5,011.36** |

**Account Information**

| | |
|---|---|
| Outstanding Principal | $126,943.05 |
| Interest Rate | 5.000% |
| Prepayment Penalty | None |

**Bankruptcy Message**

**Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy.**

**Important Message**

 **\*Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account according to applicable state law. If you pay the balance of a partial payment, the funds will be applied to your mortgage.

**\*\*Account History\*\***

**Recent Account History**

• Payment due 12/01/18: unpaid balance of $53,445.66

 • Payment due 01/01/19: unpaid balance of $869.17

• Payment due 02/01/19: unpaid balance of $869.17

57

• Payment due 03/01/19: unpaid balance of $834.42

• Payment due 04/01/19: unpaid balance of $834.42

• Payment due 05/01/19: unpaid balance of $834.42

• Payment due 06/01/19: current payment due

**• Total: $58,521.68  amount that, if paid, would bring your loan current.** At the bottom on the Detach portion of the page it listed **Payment Amount; Payment Date 06/01/2019; Payment Amount $58,521.68.** On the second page it list, **Transaction Activity (04/17/2019-05/17/2019)**

| **Date** | **Description** | **Charges** | **Payments** |
|---|---|---|---|
| 05/07/2019 | Regular Payment-(Due 9/1/2013) | $0.00 | $708.60 |

(Ex. '8', p.16).

94.   That on or about June 17, 2019, Mrs. Schulte received a mortgage statement from Shellpoint. It listed, **Payment Date 07/01/2019; Payment Amount $58,647.50.** It also list,

**Explanation of Payment Amount**;

Principal $239.37

Interest $469.23

Escrow (Taxes and Insurance) $125.82

**Regular Monthly Payment $834.42**

Total Fees and Charges $125.00

 Past Unpaid Payment $57,688.08

**Total Payment Amount $58,647.50**

**Past Payment Breakdown**

|  | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $179.67 | $1,066.90 |

58

| | | |
|---|---|---|
| Interest | $528.93 | $3,184.70 |
| Escrow | $0.00 | $1,313.36 |
| Fees/Late Charges | $125.00 | $280.00 |
| **Total** | **$833.60** | **$5,844.96** |

## Account Information

| | |
|---|---|
| Outstanding Principal | $126,763.38 |
| Interest Rate | 5.000% |
| Prepayment Penalty | None |

## Bankruptcy Message

**Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy.**

## Important Message

 *Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account according to applicable state law. If you pay the balance of a partial payment, the funds will be applied to your mortgage.

## **Account History**

### Recent Account History

• Payment due 01/01/19: unpaid balance of $53,606.23

• Payment due 02/01/19: unpaid balance of $869.17

• Payment due 03/01/19: unpaid balance of $834.42

• Payment due 04/01/19: unpaid balance of $834.42

• Payment due 05/01/19: unpaid balance of $834.42

• Payment due 06/01/19: unpaid balance of $834.42

• Payment due 07/01/19: current payment due

**• Total: $58,647.50  amount that, if paid, would bring your loan current.** At the bottom on the Detach portion of the page it listed **Payment Amount; Payment Date 07/01/2019; Payment Amount $58,647.50.** On the second page it list, **Transaction Activity (05/18/2019-06/16/2019)**

| Date | Description | Charges | Payments |
|------|-------------|---------|----------|
| 05/27/2019 | BPO/Aprst Cost Disbursement | $125.00 | $0.00 |
| 05/28/2019 | BPO/Aprst Cost Payment | $0.00 | $125.00 |
| 06/07/2019 | Regular Payment-(Due 10/1/2013) | $0.00 | $708.60 |

(Ex. '8', p.17).

95.  That on or about July 26, 2019, Mrs. Schulte received a mortgage statement from Shellpoint. It listed, **Payment Date 08/01/2019; Payment Amount $58,799.32.** It also list,

**Explanation of Payment Amount;**

Principal $240.37

Interest $468.23

Escrow (Taxes and Insurance) $125.82

**Regular Monthly Payment $834.42**

Total Fees and Charges $26.00

Past Unpaid Payment $57,938.90

**Total Payment Amount $58,799.32**

**Past Payment Breakdown**

|  | Paid Last Month | Paid Year to Date |
|--|-----------------|-------------------|
| Principal | $180.42 | $1,247.32 |
| Interest | $528.18 | $3,712.88 |
| Escrow | $0.00 | $1,313.36 |

60

| | | |
|---|---|---|
| Fees/Late Charges | $0.00 | $280.00 |
| **Total** | **$708.60** | **$6,553.56** |

**Account Information**

| | |
|---|---|
| Outstanding Principal | $126,582.96 |
| Interest Rate | 5.000% |
| Prepayment Penalty | None |

**Bankruptcy Message**

**Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy.**

**Important Message**

 *Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account according to applicable state law. If you pay the balance of a partial payment, the funds will be applied to your mortgage.

**\*\*Account History\*\***

**Recent Account History**

• Payment due 02/01/19: unpaid balance of $53,792.80

• Payment due 03/01/19: unpaid balance of $834.42

• Payment due 04/01/19: unpaid balance of $834.42

• Payment due 05/01/19: unpaid balance of $834.42

• Payment due 06/01/19: unpaid balance of $834.42

• Payment due 07/01/19: unpaid balance of $834.42

• Payment due 08/01/19: current payment due

• **Total: $58,799.32  amount that, if paid, would bring your loan current.** At the bottom on the Detach portion of the page it listed **Payment**

61

**Amount; Payment Date 08/01/2019; Payment Amount $58,799.32.**
On the second page it list, **Transaction Activity (06/17/2019-07/25/2019)**

| Date | Description | Charges | Payments |
|---|---|---|---|
| 06/18/2019 | Property Inspection Disbursement | $13.00 | $0.00 |
| 07/08/2019 | Regular Payment-(Due 11/1/2013) | $0.00 | $708.60 |
| 07/24/2019 | Property Inspection Disbursement | $13.00 | $0.00 |

(Ex. '8', p.20).

96. That on or about August 18, 2019, Mrs. Schulte received a mortgage statement from Shellpoint. It listed, **Payment Date 09/01/2019; Payment Amount $58,938.14.** It also list,

**Explanation of Payment Amount;**

Principal $241.37

Interest $467.23

Escrow (Taxes and Insurance) $125.82

**Regular Monthly Payment $834.42**

Total Fees and Charges $13.00

Past Unpaid Payment $58,090.72

**Total Payment Amount $58,938.14**

**Past Payment Breakdown**

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $181.17 | $1,428.49 |
| Interest | $527.43 | $4,240.31 |
| Escrow | $0.00 | $1,313.36 |
| Fees/Late Charges | $0.00 | $280.00 |
| **Total** | **$708.60** | **$7,262.16** |

62

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**Account Information**</u>

Outstanding Principal        $126,401.79

Interest Rate                5.000%

Prepayment Penalty          None

<u>**Bankruptcy Message**</u>

**Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy.**

<u>**Important Message**</u>

 **\*Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account according to applicable state law. If you pay the balance of a partial payment, the funds will be applied to your mortgage.

<u>**\*\*Account History\*\***</u>

**Recent Account History**

• Payment due 03/01/19: unpaid balance of $53,931.62

• Payment due 04/01/19: unpaid balance of $834.42

• Payment due 05/01/19: unpaid balance of $834.42

• Payment due 06/01/19: unpaid balance of $834.42

• Payment due 07/01/19: unpaid balance of $834.42

• Payment due 08/01/19: unpaid balance of $834.42

• Payment due 09/01/19: current payment due

• **Total: $58,938.14  amount that, if paid, would bring your loan current.** At the bottom on the Detach portion of the page it listed **Payment Amount; Payment Date 09/01/2019; Payment Amount $58,938.14.** On the second page it list, **Transaction Activity (07/26/2019-**

63

**08/17/2019)**

| Date | Description | Charges | Payments |
|------|-------------|---------|----------|
| 08/05/2019 | County Tax Bill 1 | $396.86 | $0.00 |
| 08/09/2019 | Regular Payment-(Due 12/1/2013) | $0.00 | $708.60 |
| 08/16/2019 | Property Inspection Disbursement | $13.00 | $0.00 |

(Ex. '8', p.21).

97.    That on or about August 21, 2019, Mrs. Schulte received a letter  from Shellpoint. It stated, Our records show that your hazard insurance expired and we do not have evidence that you have obtained new coverage. **Because hazard insurance is required on your property, we plan to buy insurance for your property**. You must pay us for any period which the insurance we buy is in effect but you do not have insurance (Ex. '8', p.24).

98.    That on or about September 6, 2019, Mrs. Schulte received a letter  from Shellpoint. It stated, The lender-placed insurance we purchased for your property is cancelled effective August 14, 2019 for one of the reasons stated below: Adequate insurance coverage was provided; Your mortgage loan is paid in full.; Servicing of your mortgage was transferred to another lender. (Ex. '8', p.28).

99.    That on or about September 17, 2019, Mrs. Schulte received a mortgage statement from Shellpoint. It listed, **Payment Date 10/01/2019; Payment Amount $59,063.96.** It also list,

**Explanation of Payment Amount**;

Principal $242.38

Interest $466.22

Escrow (Taxes and Insurance) $125.82

**Regular Monthly Payment $834.42**

64

Total Fees and Charges $0.00

Past Unpaid Payment $58,229.54

**Total Payment Amount $59,063.96**

**Past Payment Breakdown**

|  | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $181.93 | $1,610.42 |
| Interest | $526.67 | $4,766.98 |
| Escrow | $0.00 | $1,313.36 |
| Fees/Late Charges | $0.00 | $280.00 |
| **Total** | **$708.60** | **$7,970.76** |

**Account Information**

| Outstanding Principal | $126,219.86 |
|---|---|
| Interest Rate | 5.000% |
| Prepayment Penalty | None |

**Bankruptcy Message**

**Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy.**

**Important Message**

 **\*Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account according to applicable state law. If you pay the balance of a partial payment, the funds will be applied to your mortgage.

**\*\*Account History\*\***

**Recent Account History**

• Payment due 04/01/19: unpaid balance of $54,057.44

• Payment due 05/01/19: unpaid balance of $834.42

• Payment due 06/01/19: unpaid balance of $834.42

• Payment due 07/01/19: unpaid balance of $834.42

• Payment due 08/01/19: unpaid balance of $834.42

• Payment due 09/01/19: unpaid balance of $834.42

• Payment due 10/01/19: current payment due

• **Total: $59,063.96  amount that, if paid, would bring your loan current.** At the bottom on the Detach portion of the page it listed **Payment Amount; Payment Date 10/01/2019; Payment Amount $59,063.96.** On the second page it list, **Transaction Activity (08/18/2019-09/16/2019)**

| Date | Description | Charges | Payments |
|------|-------------|---------|----------|
| 09/10/2019 | Regular Payment-(Due 1/1/2014) | $0.00 | $708.60 |

(Ex. '8', p.29).

100.   That on or about October 18, 2019, Mrs. Schulte received a mortgage statement from Shellpoint. It listed, **Payment Date 11/01/2019; Payment Amount $60,185.31.** It also list,

**Explanation of Payment Amount**;

Principal $243.39

Interest $465.21

Escrow (Taxes and Insurance) $131.85

**Regular Monthly Payment $840.45**

Total Fees and Charges $989.50

 Past Unpaid Payment $58,355.36

**Total Payment Amount $60,185.31**

**Past Payment Breakdown**

66

|                      | Paid Last Month | Paid Year to Date |
|----------------------|-----------------|-------------------|
| Principal            | $182.68         | $1,793.10         |
| Interest             | $525.92         | $5,292.90         |
| Escrow               | $0.00           | $1,313.36         |
| Fees/Late Charges    | $0.00           | $280.00           |
| **Total**            | **$708.60**     | **$8,679.36**     |

## Account Information

| Outstanding Principal | $125,853.73 |
|-----------------------|-------------|
| Interest Rate         | 5.000%      |
| Prepayment Penalty    | None        |

## Bankruptcy Message

**Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy.**

## Important Message

 **\*Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account according to applicable state law. If you pay the balance of a partial payment, the funds will be applied to your mortgage.

## \*\*Account History\*\*

**Recent Account History**

• Payment due 06/01/19: unpaid balance of $55,298.58

• Payment due 07/01/19: unpaid balance of $834.42

• Payment due 08/01/19: unpaid balance of $834.42

• Payment due 09/01/19: unpaid balance of $834.42

• Payment due 10/01/19: unpaid balance of $834.42

• Payment due 11/01/19: unpaid balance of $840.45

• Payment due 12/01/19: current payment due

• **Total: $60,317.16  amount that, if paid, would bring your loan current.** At the bottom on the Detach portion of the page it listed **Payment Amount; Payment Date 12/01/2019; Payment Amount $60,317.16.** On the second page it list, **Transaction Activity (10/18/2019-11/16/2019)**

| Date | Description | Charges | Payments |
|------|-------------|---------|----------|
| 09/10/2019 | Regular Payment-(Due 3/1/2014) | $0.00 | $708.60 |

(Ex. '8', p.31).

101.    That on or about November 17, 2019, Mrs. Schulte received a mortgage statement from Shellpoint. It listed, **Payment Date 12/01/2019; Payment Amount $60,317.16.** It also list,

**Explanation of Payment Amount;**

Principal $244.40

Interest $464.20

Escrow (Taxes and Insurance) $131.85

**Regular Monthly Payment $840.45**

Total Fees and Charges $0.00

Past Unpaid Payment $59,476.71

**Total Payment Amount $60,317.16**

**Past Payment Breakdown**

| | Paid Last Month | Paid Year to Date |
|------|------|------|
| Principal | $183.45 | $1,976.55 |
| Interest | $525.15 | $5,818.05 |
| Escrow | $0.00 | $1,313.36 |

68

| | | |
|---|---|---|
| Fees/Late Charges | $0.00 | $280.00 |
| **Total** | **$708.60** | **$9,387.96** |

**Account Information**

| | |
|---|---|
| Outstanding Principal | $125,853.73 |
| Interest Rate | 5.000% |
| Prepayment Penalty | None |

**Bankruptcy Message**

**Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy.**

**Important Message**

 ***Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account according to applicable state law. If you pay the balance of a partial payment, the funds will be applied to your mortgage.

**\*\*Account History\*\***

**Recent Account History**

• Payment due 06/01/19: unpaid balance of $55,298.58

• Payment due 07/01/19: unpaid balance of $834.42

• Payment due 08/01/19: unpaid balance of $834.42

• Payment due 09/01/19: unpaid balance of $834.42

• Payment due 10/01/19: unpaid balance of $834.42

• Payment due 11/01/19: unpaid balance of $840.45

• Payment due 12/01/19: current payment due

• **Total: $60,317.16  amount that, if paid, would bring your loan current.** At the bottom on the Detach portion of the page it listed **Payment**

69

**Amount; Payment Date 12/01/2019; Payment Amount $60,317.16.**
On the second page it list, **Transaction Activity (10/18/2019-11/16/2019)**

| Date | Description | Charges | Payments |
|------|-------------|---------|----------|
| 09/10/2019 | Regular Payment-(Due 3/1/2014) | $0.00 | $708.60 |

(Ex. '8', p.33).

102. That on or about December 18, 2019, Mrs. Schulte received a mortgage statement from Shellpoint. It listed, **Payment Date 01/01/2020; Payment Amount $60,462.01.** It also list,

**Explanation of Payment Amount;**

Principal $245.42

Interest $463.18

Escrow (Taxes and Insurance) $131.85

**Regular Monthly Payment $840.45**

Total Fees and Charges $13.00

Past Unpaid Payment $59,608.56

**Total Payment Amount $60,462.01**

**Past Payment Breakdown**

| | Paid Last Month | Paid Year to Date |
|------|------|------|
| Principal | $184.21 | $2,160.76 |
| Interest | $524.39 | $6,342.44 |
| Escrow | $0.00 | $1,313.36 |
| Fees/Late Charges | $0.00 | $280.00 |
| **Total** | **$708.60** | **$10,096.56** |

**Account Information**

Outstanding Principal $125,669.52

70

| | |
|---|---|
| Interest Rate | 5.000% |
| Prepayment Penalty | None |

**Bankruptcy Message**

**Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy.**

**Important Message**

 **\*Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account according to applicable state law. If you pay the balance of a partial payment, the funds will be applied to your mortgage.

**\*\*Account History\*\***

**Recent Account History**

• Payment due 07/01/19: unpaid balance of $55,437.40

• Payment due 08/01/19: unpaid balance of $834.42

• Payment due 09/01/19: unpaid balance of $834.42

• Payment due 10/01/19: unpaid balance of $834.42

• Payment due 11/01/19: unpaid balance of $840.45

• Payment due 12/01/19: unpaid balance of $840.45

• Payment due 01/01/20: current payment due

• **Total: $60,462.01  amount that, if paid, would bring your loan current.** At the bottom on the Detach portion of the page it listed **Payment Amount; Payment Date 01/01/2020; Payment Amount $60,462.01.** On the second page it list, **Transaction Activity (11/17/2019-12/17/2019)**

| **Date** | **Description** | **Charges** | **Payments** |
|---|---|---|---|

71

11/20/2019   Regular Inspection Disbursement  $13.00        $0.00

12/06/2019   Regular Payment-(Due 4/1/2014)  $0.00        $708.60

(Ex. '8', p.35).

103.   That on or about January 18, 2020, Mrs. Schulte received a mortgage statement from Shellpoint. It listed, **Payment Date 02/01/2020; Payment Amount $61,668.86.** It also list,

**Explanation of Payment Amount;**

Principal $246.44

Interest $462.16

Escrow (Taxes and Insurance) $131.85

**Regular Monthly Payment $840.45**

Total Fees and Charges $1,075.00

Past Unpaid Payment $59,753.41

**Total Payment Amount $61,668.86**

**Past Payment Breakdown**

|  | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $184.98 | $184.98 |
| Interest | $523.62 | $523.62 |
| Escrow | $0.00 | $0.00 |
| Fees/Late Charges | $0.00 | $0.00 |
| **Total** | **$708.60** | **$708.60** |

**Account Information**

Outstanding Principal   $125,484.54

Interest Rate   5.000%

Prepayment Penalty   None

**Bankruptcy Message**

72

**Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy.**

**Important Message**

 **\*Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account according to applicable state law. If you pay the balance of a partial payment, the funds will be applied to your mortgage.

**\*\*Account History\*\***

**Recent Account History**

• Payment due 08/01/19: unpaid balance of $56,638.22

• Payment due 09/01/19: unpaid balance of $834.42

• Payment due 10/01/19: unpaid balance of $834.42

• Payment due 11/01/19: unpaid balance of $840.45

• Payment due 12/01/19: unpaid balance of $840.45

• Payment due 01/01/20: unpaid balance of $840.45

• Payment due 02/01/20: current payment due

• **Total: $61,668.86 amount that, if paid, would bring your loan current.** At the bottom on the Detach portion of the page it listed **Payment Amount; Payment Date 02/01/2020; Payment Amount $61,668.86** On the second page it list, **Transaction Activity (12/18/2019-01/17/2020)**

| Date | Description | Charges | Payments |
|------|-------------|---------|----------|
| 01/07/2020 | Attorney Cost Disbursement | $1,075.00 | $0.00 |
| 01/07/2020 | Regular Payment-(Due 5/1/2014) | $0.00 | $708.60 |

(Ex. '9', p.2).

104.  That on or about February 16, 2020, Mrs. Schulte received a mortgage statement from Shellpoint. It listed, **Payment Date 03/01/2020; Payment Amount $61,908.71.** It also list,

**Explanation of Payment Amount;**

Principal $247.47

Interest $461.13

Escrow (Taxes and Insurance) $131.85

**Regular Monthly Payment $840.45**

Total Fees and Charges $208.00

Past Unpaid Payment $60,860.26

**Total Payment Amount $61,908.71**

**Past Payment Breakdown**

|  | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $185.75 | $370.73 |
| Interest | $522.85 | $1,046.47 |
| Escrow | $0.00 | $0.00 |
| Fees/Late Charges | $100.00 | $100.00 |
| **Total** | **$808.60** | **$1,517.20** |

**Account Information**

Outstanding Principal $125,296.79

Interest Rate 5.000%

Prepayment Penalty None

**Bankruptcy Message**

**Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy.**

74

**Important Message**

 **\*Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account according to applicable state law. If you pay the balance of a partial payment, the funds will be applied to your mortgage.

**\*\*Account History\*\***

**Recent Account History**

• Payment due 09/01/19: unpaid balance of $56,872.04

• Payment due 10/01/19: unpaid balance of $834.42

• Payment due 11/01/19: unpaid balance of $840.45

• Payment due 12/01/19: unpaid balance of $840.45

• Payment due 01/01/20: unpaid balance of $840.45

• Payment due 02/01/20: unpaid balance of $840.45

• Payment due 03/01/20: current payment due

• **Total: $61,908.71 amount that, if paid, would bring your loan current.** At the bottom on the Detach portion of the page it listed **Payment Amount; Payment Date 03/01/2020; Payment Amount $61,908.71** On the second page it list, **Transaction Activity (01/18/2020-02/15/2020)**

| Date | Description | Charges | Payments |
|------|-------------|---------|----------|
| 01/27/2020 | Property Inspection Disbursement | $13.00 | $0.00 |
| 01/28/2020 | BPO/Aprsl Cost Disbursement | $95.00 | $0.00 |
| 02/03/2020 | BPO/Aprsl Cost Disbursement | $100.00 | $0.00 |
| 02/03/2020 | BPO/Aprsl Cost Payment | $0.00 | $100.00 |
| 02/10/2020 | Regular Payment-(Due 6/1/2014) | $0.00 | $708.60 |

(Ex. '9', p.5).

105.    That on or about March 18, 2020, Mrs. Schulte received a mortgage statement from Shellpoint. It listed, **Payment Date 04/01/2020; Payment Amount $62,053.56** It also list,

**<u>Explanation of Payment Amount</u>;**

Principal $248.50

Interest $460.10

Escrow (Taxes and Insurance) $131.85

**Regular Monthly Payment $840.45**

Total Fees and Charges $13.00

Past Unpaid Payment $61,200.11

**Total Payment Amount $62,053.56**

**<u>Past Payment Breakdown</u>**

|  | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $186.52 | $557.25 |
| Interest | $522.08 | $1,568.55 |
| Escrow | $0.00 | $0.00 |
| Fees/Late Charges | $0.00 | $0.00 |
| **Total** | **$708.60** | **$2,225.80** |

**<u>Account Information</u>**

Outstanding Principal    $125,112.27

Interest Rate    5.000%

Prepayment Penalty    None

**<u>Bankruptcy Message</u>**

**Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy.**

76

**Important Message**

 **Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account according to applicable state law. If you pay the balance of a partial payment, the funds will be applied to your mortgage.

**\*\*Account History\*\***

**Recent Account History**

• Payment due 10/01/19: unpaid balance of $57,010.86

• Payment due 11/01/19: unpaid balance of $840.45

• Payment due 12/01/19: unpaid balance of $840.45

• Payment due 01/01/20: unpaid balance of $840.45

• Payment due 02/01/20: unpaid balance of $840.45

• Payment due 03/01/20: unpaid balance of $840.45

• Payment due 04/01/20: current payment due

• **Total: $62,053.56 amount that, if paid, would bring your loan current.** At the bottom on the Detach portion of the page it listed **Payment Amount; Payment Date 04/01/2020; Payment Amount $62,053.56** On the second page it list, **Transaction Activity (02/16/2020-03/17/2020)**

| Date | Description | Charges | Payments |
|------|-------------|---------|----------|
| 02/20/2020 | Property Inspection Disbursement | $13.00 | $0.00 |
| 03/09/2020 | Partial Payment Unapplied | $0.00 | $708.60 |
| 03/09/2020 | Partial Payment Unapplied | $0.00 | -$708.60 |
| 03/09/2020 | Regular Payment-(Due 7/1/2014) | $0.00 | $708.60 |

(Ex. '9', p.6).

106.    That on or about April 17, 2020, Mrs. Schulte received a mortgage statement

from Shellpoint. It listed, **Payment Date 05/01/2020; Payment Amount $62,185.41.** It also list,

**Explanation of Payment Amount**;

Principal $249.54

Interest $459.06

Escrow (Taxes and Insurance) $131.85

**Regular Monthly Payment $840.45**

Total Fees and Charges $0.00

Past Unpaid Payment $61,344.96

**Total Payment Amount $62,185.41**

**Past Payment Breakdown**

|  | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $187.30 | $744.55 |
| Interest | $521.30 | $2,089.85 |
| Escrow | $0.00 | $0.00 |
| Fees/Late Charges | $0.00 | $100.00 |
| **Total** | **$708.60** | **$2,934.40** |

**Account Information**

Outstanding Principal    $124,924.97

Interest Rate    5.000%

Prepayment Penalty    None

**Bankruptcy Message**

**Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy.**

**Important Message**

78

**\*Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account according to applicable state law. If you pay the balance of a partial payment, the funds will be applied to your mortgage.

**\*\*Account History\*\***

**Recent Account History**

• Payment due 11/01/19: unpaid balance of $57,142.71

• Payment due 12/01/19: unpaid balance of $840.45

• Payment due 01/01/20: unpaid balance of $840.45

• Payment due 02/01/20: unpaid balance of $840.45

• Payment due 03/01/20: unpaid balance of $840.45

• Payment due 04/01/20: unpaid balance of $840.45

• Payment due 05/01/20: current payment due

• **Total: $62,185.41 amount that, if paid, would bring your loan current.** At the bottom on the Detach portion of the page it listed **Payment Amount; Payment Date 05/01/2020; Payment Amount $62,185.41** On the second page it list, **Transaction Activity (03/18/2020-04/16/2020)**

| Date | Description | Charges | Payments |
|------|-------------|---------|----------|
| 04/16/2020 | Partial Payment Unapplied | $0.00 | $708.60 |
| 04/16/2020 | Partial Payment Unapplied | $0.00 | -$708.60 |
| 04/16/2020 | Regular Payment-(Due 8/1/2014) | $0.00 | $708.60 |

(Ex. '9', p.7).

107.    That on or about May 18, 2020, Mrs. Schulte received a mortgage statement from Shellpoint. It listed, **Payment Date 06/01/2020; Payment Amount $64,084.76.** It also list,

79

**<u>Explanation of Payment Amount</u>;**

Principal $250.58

Interest $458.02

Escrow (Taxes and Insurance) $131.85

**Regular Monthly Payment $840.45**

Total Fees and Charges $1,767.50

  Past Unpaid Payment $61,476.81

**Total Payment Amount $64,084.76**

**<u>Past Payment Breakdown</u>**

|  | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $188.08 | $932.63 |
| Interest | $520.52 | $2,610.37 |
| Escrow | $0.00 | $0.00 |
| Fees/Late Charges | $0.00 | $100.00 |
| **Total** | **$708.60** | **$3,643.00** |

**<u>Account Information</u>**

Outstanding Principal    $124,736.89

Interest Rate    5.000%

Prepayment Penalty    None

**<u>Bankruptcy Message</u>**

**Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy.**

**<u>Important Message</u>**

 **\*Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account

80

according to applicable state law. If you pay the balance of a partial payment, the funds will be applied to your mortgage.

**\*\*Account History\*\***

**Recent Account History**

• Payment due 12/01/19: unpaid balance of $59,042.06

  • Payment due 01/01/19: unpaid balance of $840.45

  • Payment due 02/01/20: unpaid balance of $840.45

  • Payment due 03/01/20: unpaid balance of $840.45

  • Payment due 04/01/20: unpaid balance of $840.45

  • Payment due 05/01/20: unpaid balance of $840.45

  • Payment due 06/01/20: current payment due

• **Total: $64,084.76 amount that, if paid, would bring your loan current.** At the bottom on the Detach portion of the page it listed **Payment Amount; Payment Date 06/01/2020; Payment Amount $64,084.76.** On the second page it list, **Transaction Activity (04/17/2020- 05/17/2020)**

| Date | Description | Charges | Payments |
|------|-------------|---------|----------|
| 04/17/2020 | Property Inspection Disbursement | $13.00 | $0.00 |
| 04/16/2020 | BK Costs Disbursement | $1,741.50 | $0.00 |
| 04/16/2020 | Regular Payment-(Due 9/1/2014) | $0.00 | $708.60 |
| 05/14/2020 | Property Inspection Disbursement | $13.00 | $0.00 |

(Ex. '9', p.11).

108.   That on or about June 18, 2020, Mrs. Schulte received a mortgage statement from Shellpoint. It listed, **Payment Date 07/01/2020; Payment Amount $64,229.61.** It also list,

**Explanation of Payment Amount;**

81

Principal $251.62

Interest $456.98

Escrow (Taxes and Insurance) $131.85

**Regular Monthly Payment $840.45**

Total Fees and Charges $108.00

 Past Unpaid Payment $63,281.16

**Total Payment Amount $64,229.61**

**Past Payment Breakdown**

|  | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $188.86 | $1,121.49 |
| Interest | $519.74 | $3,130.11 |
| Escrow | $0.00 | $0.00 |
| Fees/Late Charges | $95.00 | $195.00 |
| **Total** | **$803.60** | **$4,446.60** |

**Account Information**

| Outstanding Principal | $124,548.03 |
|---|---|
| Interest Rate | 5.000% |
| Prepayment Penalty | None |

**Bankruptcy Message**

**Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy.**

**Important Message**

 **\*Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account according to applicable state law. If you pay the balance of a partial payment,

82

the funds will be applied to your mortgage.

**\*\*Account History\*\***

**Recent Account History**

• Payment due 01/01/20: unpaid balance of $59,186.91

• Payment due 02/01/20: unpaid balance of $840.45

• Payment due 03/01/20: unpaid balance of $840.45

• Payment due 04/01/20: unpaid balance of $840.45

• Payment due 05/01/20: unpaid balance of $840.45

• Payment due 06/01/20: unpaid balance of $840.45

• Payment due 07/01/20: current payment due

• **Total: $64,229.61 amount that, if paid, would bring your loan current.** On the second page it list, **Transaction Activity (05/18/2020-06/17/2020)**

| Date | Description | Charges | Payments |
|------|-------------|---------|----------|
| 05/19/2020 | BPO/Aprsl Cost Disbursement | $95.00 | $0.00 |
| 05/19/2020 | BPO/Aprsl Costs Payment | $0.00 | $95.00 |
| 06/10/2020 | Property Inspection Disbursement | $13.00 | $0.00 |
| 06/10/2020 | Partial Payment Unapplied | $0.00 | $708.60 |
| 06/10/2020 | Partial Payment Unapplied | $0.00 | -$708.60 |
| 06/10/2020 | Partial Payment Unapplied | $0.00 | $708.60 |
| 06/11/2020 | Partial Payment Unapplied | $0.00 | -$708.60 |
| 06/11/2020 | Regular Payment-(Due 10/1/2014) | $0.00 | $708.60 |

(Ex. '9', p.13).

109.  That on or about July 18, 2020, Mrs. Schulte received a mortgage statement from Shellpoint. It listed, **Payment Date 08/01/2020; Payment Amount $67,706.96.** It also list,

**<u>Explanation of Payment Amount</u>;**

Principal $252.67

Interest $455.93

Escrow (Taxes and Insurance) $131.85

**Regular Monthly Payment $840.45**

Total Fees and Charges $3,345.50

Past Unpaid Payment $63,521.01

**Total Payment Amount $67,706.96**

**<u>Past Payment Breakdown</u>**

|  | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $189.65 | $1,311.14 |
| Interest | $518.95 | $3,649.06 |
| Escrow | $0.00 | $0.00 |
| Fees/Late Charges | $0.00 | $195.00 |
| **Total** | **$708.60** | **$5,155.20** |

**<u>Account Information</u>**

Outstanding Principal    $124,358.38

Interest Rate    5.000%

Prepayment Penalty    None

**<u>Bankruptcy Message</u>**

**Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy.**

**<u>Important Message</u>**

 **\*Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account

84

according to applicable state law. If you pay the balance of a partial payment, the funds will be applied to your mortgage.

**Account History**

**Recent Account History**

• Payment due 02/01/20: unpaid balance of $62,664.26

• Payment due 03/01/20: unpaid balance of $840.45

• Payment due 04/01/20: unpaid balance of $840.45

• Payment due 05/01/20: unpaid balance of $840.45

• Payment due 06/01/20: unpaid balance of $840.45

• Payment due 07/01/20: unpaid balance of $840.45

• Payment due 08/01/20: current payment due

• **Total: $67,706.96 amount that, if paid, would bring your loan current.** On the second page it list, **Transaction Activity (06/18/2020- 07/17/2020)**

| Date | Description | Charges | Payments |
|------|-------------|---------|----------|
| 07/07/2020 | BK Cost Disbursement | $3,268.00 | $0.00 |
| 07/13/2020 | Property Inspection Disbursement | $13.00 | $0.00 |
| 07/13/2020 | Partial Payment Unapplied | $0.00 | $708.60 |
| 07/13/2020 | Partial Payment Unapplied | $0.00 | $708.60 |
| 07/13/2020 | Regular Payment-(Due 10/1/2014) | $0.00 | $708.60 |
| 07/15/2020 | BK Cost Disbursement | $64.50 | $0.00 |

(Ex. '9', p.15).

110.   That on or about August 4, 2020, Mrs. Schulte received a letter from Shellpoint. It stated, Your property insurance policy for the above property was recently received. Upon review, it was noted there is a discrepancy in the property description on the policy. Please update the property listed in the

policy to read as follows: **1392 ECHO FALL AVE LAS VEGAS, NV 89123**
(Ex. '9', p.17).

111.   That on or about August 18, 2020, Mrs. Schulte received a mortgage
statement from Shellpoint. It listed, **Payment Date 09/01/2020;
Payment Amount $68,560.41.** It also list,

**Explanation of Payment Amount**;

Principal $253.72

Interest $454.88

Escrow (Taxes and Insurance) $131.85

**Regular Monthly Payment $840.45**

Total Fees and Charges $13.00

Past Unpaid Payment $67,706.96

**Total Payment Amount $68,560.41**

**Past Payment Breakdown**

|  | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $1,311.14 |
| Interest | $0.00 | $3,649.06 |
| Escrow | $0.00 | $0.00 |
| Fees/Late Charges | $0.00 | $195.00 |
| **Total** | **$0.00** | **$5,155.20** |

**Account Information**

Outstanding Principal     $124,358.38

Interest Rate     5.000%

Prepayment Penalty     None

**Bankruptcy Message**

**Our records show that either you are a debtor in bankruptcy or**

**you discharged personal liability for your mortgage loan in bankruptcy.**

**Important Message**

**\*Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account according to applicable state law. If you pay the balance of a partial payment, the funds will be applied to your mortgage.

**\*\*Account History\*\***

**Recent Account History**

• Payment due 03/01/20: unpaid balance of $63,517.71

• Payment due 04/01/20: unpaid balance of $840.45

• Payment due 05/01/20: unpaid balance of $840.45

• Payment due 05/01/20: unpaid balance of $840.45

• Payment due 07/01/20: unpaid balance of $840.45

• Payment due 08/01/20: unpaid balance of $840.45

• Payment due 09/01/20: current payment due

• **Total: $68,560.41 amount that, if paid, would bring your loan current.** On the second page it list, **Transaction Activity (07/18/2020- 08/17/2020)**

| Date | Description | Charges | Payments |
|------|-------------|---------|----------|
| 08/03/2020 | County Tax Bill 1 | $424.00 | $0.00 |
| 08/05/2020 | Property Inspection Disbursement | $13.00 | $0.00 |

(Ex. '9', p.20).

112.  That on or about August 26, 2020, Mrs. Schulte faxed Shellpoint proof of renewed insurance for the property of 1392 Echo Falls Ave., and asking them to remove the unnecessary coverage and remove any charges with

87

such coverage from her account (Ex. '9' p.22).

113.    That on or about September 18, 2020, Mrs. Schulte received a mortgage statement from Shellpoint. It listed, **Payment Date 10/01/2020; Payment Amount $68,705.26.** It also list,

**Explanation of Payment Amount**;

Principal $254.78

Interest $453.82

Escrow (Taxes and Insurance) $131.85

**Regular Monthly Payment $840.45**

Total Fees and Charges $13.00

Past Unpaid Payment $67,851.81

**Total Payment Amount $68,705.26**

**Past Payment Breakdown**

|  | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $190.44 | $1,501.58 |
| Interest | $518.16 | $4,167.22 |
| Escrow | $0.00 | $0.00 |
| Fees/Late Charges | $0.00 | $195.00 |
| **Total** | **$708.60** | **$5,863.80** |

**Account Information**

Outstanding Principal    $124,167.94

Interest Rate    5.000%

Prepayment Penalty    None

**Bankruptcy Message**

**Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in**

88

**bankruptcy.**

**Important Message**

 ***Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account according to applicable state law. If you pay the balance of a partial payment, the funds will be applied to your mortgage.

 **\*\*Account History\*\***

 **Recent Account History**

 • Payment due 06/01/20: unpaid balance of $840.45

 • Payment due 07/01/20: unpaid balance of $840.45

 • Payment due 08/01/20: unpaid balance of $840.45

 • Payment due 09/01/20: unpaid balance of $840.45

 • Payment due 04/01/20: unpaid balance of $63,662.56

 • Payment due 05/01/20: unpaid balance of $840.45

 • Payment due 10/01/20: current payment due

 **• Total: $68,705.26 amount that, if paid, would bring your loan current.** On the second page it list, **Transaction Activity (08/18/2020- 09/17/2020)**

| Date | Description | Charges | Payments |
|------|-------------|---------|----------|
| 08/18/2020 | Regular Payment-(Due 12/1/2014) | $0.00 | $708.60 |
| 09/02/2020 | Property Inspection Disbursement | $13.00 | $0.00 |

(Ex. '9', p.27).

114.   That on or about October 18, 2020, Mrs. Schulte received a mortgage statement from Shellpoint. It listed, **Payment Date 11/01/2020; Payment Amount $68,150.39.** It also list,

**Explanation of Payment Amount**;

89

Principal $255.84

Interest $452.76

Escrow (Taxes and Insurance) $140.73

**Regular Monthly Payment $849.33**

Total Fees and Charges $13.00

Past Unpaid Payment $67,288.06

**Total Payment Amount $68,105.39**

**Past Payment Breakdown**

|  | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $383.26 | $1,884.84 |
| Interest | $1,033.94 | $5,201.16 |
| Escrow | $0.00 | $0.00 |
| Fees/Late Charges | $0.00 | $195.00 |
| **Total** | **$1,417.20** | **$7,281.00** |

**Account Information**

Outstanding Principal    $124,784.68

Interest Rate    5.000%

Prepayment Penalty    None

**Bankruptcy Message**

**Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy.**

**Important Message**

 *Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account according to applicable state law. If you pay the balance of a partial

90

payment, the funds will be applied to your mortgage.

**\*\*Account History\*\***

**Recent Account History**

• Payment due 05/01/20: unpaid balance of $63,098.81

• Payment due 06/01/20: unpaid balance of $840.45

• Payment due 07/01/20: unpaid balance of $840.45

• Payment due 08/01/20: unpaid balance of $840.45

• Payment due 09/01/20: unpaid balance of $840.45

 • Payment due 10/01/20: unpaid balance of $840.45

 • Payment due 11/01/20: current payment due

**• Total: $68,150.39 amount that, if paid, would bring your loan current.** On the second page it list, **Transaction Activity (09/18/2020- 10/17/2020)**

| Date | Description | Charges | Payments |
|------|-------------|---------|----------|
| 09/23/2020 | Regular Payment-(Due 1/1/2015) | $0.00 | $708.60 |
| 09/30/2020 | Property Inspection Disbursement | $13.00 | $0.00 |
| 10/15/2020 | Regular Payment-(Due 2/1/2015) | $0.00 | $708.60 |

(Ex. '9', p.29).

115.    That on or about November 18, 2020, Mrs. Schulte received a mortgage statement from Shellpoint. It listed, **Payment Date 12/01/2020; Payment Amount $68,304.12.** It also list,

**Explanation of Payment Amount**;

Principal $256.91

Interest $451.69

Escrow (Taxes and Insurance) $140.73

**Regular Monthly Payment $849.33**

Total Fees and Charges $13.00

Past Unpaid Payment $67,441.79

**Total Payment Amount $68,304.12**

**Past Payment Breakdown**

|  | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $192.83 | $2,077.67 |
| Interest | $515.77 | $5,716.93 |
| Escrow | $0.00 | $0.00 |
| Fees/Late Charges | $0.00 | $195.00 |
| **Total** | **$708.60** | **$7,989.60** |

**Account Information**

| Outstanding Principal | $123,591.85 |
|---|---|
| Interest Rate | 5.000% |
| Prepayment Penalty | None |

**Bankruptcy Message**

**Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy.**

**Important Message**

 **\*Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account according to applicable state law. If you pay the balance of a partial payment, the funds will be applied to your mortgage.

 **\*\*Account History\*\***

 **Recent Account History**

• Payment due 09/01/20: unpaid balance of $840.45

92

• Payment due 10/01/20: unpaid balance of $840.45

• Payment due 11/01/20: unpaid balance of $840.45

• Payment due 06/01/20: unpaid balance of $63,243.66

• Payment due 07/01/20: unpaid balance of $840.45

• Payment due 08/01/20: unpaid balance of $840.45

• Payment due 12/01/20: current payment due

• **Total: $68,304.12 amount that, if paid, would bring your loan current.** On the second page it list, **Transaction Activity (10/19/2020- 11/17/2020)**

| Date | Description | Charges | Payments |
|---|---|---|---|
| 11/04/2020 | Property Inspection Disbursement | $13.00 | $0.00 |
| 11/09/2020 | Regular Payment-(Due 3/1/2015) | $0.00 | $708.60 |

(Ex. '9', p.31).

**116.** That on or about January 18, 2021, Mrs. Schulte received a mortgage statement from Shellpoint. It listed, **Payment Date 2/01/2021; Payment Amount $69,665.08.** It also list,

**Explanation of Payment Amount;**

Principal $259.05

Interest $449.55

Escrow (Taxes and Insurance) $140.73

**Regular Monthly Payment $849.33**

Total Fees and Charges $430.00

Past Unpaid Payment $68,385.75

**Total Payment Amount $69,665.08**

**Past Payment Breakdown**

Paid Last Month          Paid Year to Date

93

| | | |
|---|---|---|
| Principal | $194.44 | $194.44 |
| Interest | $514.16 | $514.16 |
| Escrow | $0.00 | $0.00 |
| Fees/Late Charges | $0.00 | $0.00 |
| **Total** | **$708.60** | **$708.60** |

## Account Information

| | |
|---|---|
| Outstanding Principal | $123,203.78 |
| Interest Rate | 5.000% |
| Prepayment Penalty | None |

## Bankruptcy Message

**Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy.**

## Important Message

 **\*Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account according to applicable state law. If you pay the balance of a partial payment, the funds will be applied to your mortgage.

 **\*\*Account History\*\***

 **Recent Account History**

• Payment due 08/01/20: unpaid balance of $64,586.86

• Payment due 09/01/20: unpaid balance of $840.45

• Payment due 10/01/20: unpaid balance of $840.45

• Payment due 11/01/20: unpaid balance of $849.33

• Payment due 12/01/20: unpaid balance of $849.33

• Payment due 01/01/21: unpaid balance of $849.33

94

• Payment due 02/01/21: current payment due

• **Total: $69,665.08 amount that, if paid, would bring your loan current.** On the second page it list, **Transaction Activity (12/18/2020- 01/17/2021)**

| Date | Description | Charges | Payments |
|------|-------------|---------|----------|
| 11/04/2020 | BK Costs Disbursement | $430.00 | $0.00 |
| 11/09/2020 | Regular Payment-(Due 5/1/2015) | $0.00 | $708.60 |

On the last page it also attaches a fee schedule (Ex. '9', p.33).

### III

### Argument

### Ocwen and Shellpoint Violated the Automatic Stay

**1. Knowledge of the Stay**

Section 362(k) provides for an award of actual damages for an individual injured by a willful violation of the automatic stay. A prerequisite to awarding any actual or punitive damages under Section 362(k) is a finding that the creditor's violation of the automatic stay was willful. Proof of specific intent to violate the automatic stay is not required. *In re Dyer*, 322 F.3d 1178, 1191 (9th Cir. 2003). Instead, the moving party need only demonstrate that the creditor knew of the automatic stay, and that the creditor's actions that violated the stay were intentional. See *In re Pace*, 67 F.3d 187, 191 (9th Cir. 1995). A party with knowledge of the bankruptcy proceeding is considered to have knowledge of the automatic stay. See *In re Perl*, 513 B.R. 566, 576 (B.A.P. 9th Cir. 2014), *rev'd on other grounds*, 811 F.3d 1120 (9th Cir. 2016). Here, there is no question that in 2010 Ocwen knew of Schulte's bankruptcy and by September 2015 Shellpoint also knew of Ms. Schulte's bankruptcy.

**2. Shellpoint Took Action against Ms. Schulte  with the Stay in Effect.**

The automatic stay is self-executing, effective upon filing of the bankruptcy petition. *In re Gruntz,* 202 F.3d 1074, 1081 (9th Cir. 2000). Even if a creditor received no notice

whatsoever, any act done in violation of the stay would be subject to being undone by the court. *In re Computer Communication,* 824 F.2d 725 (9th Cir. 1987). Further, "[w]hen a creditor receives actual notice of the filing of a case, the burden is on the creditor to ensure that the automatic stay is not violated." *Roche v. Pep Boys, Inc.*, 361 BR 615, 623 (Bankr. N.D. Ga. 2008).

Where a creditor is provided actual notice of the bankruptcy any violation of the stay *must* be deliberate, *In re Smith*, 296 BR 46, 55 (Bankr. MD. Ala. 2002). Willfulness under §362(k) requires knowledge that a bankruptcy petition has been filed, whether through formal notice or otherwise. *In re Lyckberg*, 310 BR 881, 891 (Bankr. N.D. Ill. 1999). Knowledge of the bankruptcy filing is the legal equivalent of knowledge of the stay, and a violation is willful when a creditor acts intentionally with knowledge of the bankruptcy. *In re Ozenne,* 337 BR 214, 220 (9th Cir. BAP 2006); *In re Welch*, 296 BR 170, 172 (Bankr. C.D. Ill. 2003). Ignorance of the bankruptcy laws does not excuse anyone involved in a willful violation of the stay. *In re Sumpter,* 171 BR 835, 843 (Bankr. N.D. Ill. 1994). As to the Debtors, the inquiry under §362(k) is whether it engaged in any act to collect, assess, or recover its mortgage claim, at the time it took over the servicing of the loan. Here, both Ocwen and Shellpoint's actions violated §362(a)(3), (5) and (a)(6).

An act is willful under §362(k) if it is done intentionally and with knowledge of the bankruptcy filing. *In re Bloom,* 875 F. 2d 224, 227 (9th Cir. 1989). Showing that the creditor knew of the bankruptcy case and that the creditor's actions were intentional is enough. *Bloom* at 227. "The absence of willfulness does not relieve [a party violating a court order or decree] from civil contempt." *Id*. Thus, because civil contempt is remedial in nature, "it matters not with what intent the [contemnor does] the prohibited act." *Perry v. O'Donnell*, 759 F. 2d 702, 705 (9th Cir. 1985).

"When reasonable actual notice is received, it becomes the creditors responsibility to ensure the stay is not violated, or if it has been prior to receipt of actual notice, to reverse

1  any action taken." *In re Flack,* 239 BR 155, 163. "Creditors will not be shielded from liability

2  by *turning a blind eye* to reasonable, actual notice of filing." *Id.* at 164. "It is not for

3  creditors to decide when they will respect the rights of debtors and/or to interpret the

4  applicability of the stay provisions". *Id*

5      "Once a party is put on notice of a bankruptcy filing, he is under a duty to seek

6  further information which should reveal the applicability and scope of the automatic stay".

7  *In re Lile,* 103 BR 830, 837 (Bankr. S. D. Tex. 1989), *aff'd* 161 BR 788 (S.D. Tex 1993), *aff'd*

8  in part sub nom. *Matter of Lile,* 43 F.3d 668 (5th Cir. 1994). Had Ocwen and Shellpoint

9  taken the time and trouble to correct their statements after stipulating to the monthly

10 payment and interest they agreed to in Ms. Schulte's bankruptcy instead of embarking on

11 what eventually proved to be an incorrect decision, then the element of reckless disregard

12 may not be present. *In re Aster*, 11 BR 483, 485 (Bankr. D. RI. 1981).

13     When a creditor knows that the automatic stay exists, the creditor bears

14 responsibility for any violations caused by its intentional actions (or inactions), regardless

15 of whether the specific intent of the action or actions was to violate the stay.  *See, e.g., In*

16 *re Goodman*, 991 F.2d 613, 618 (9th Cir. 1993). An act or omission "does not cease to be a

17 violation of a law and a decree merely because it may have been done innocently." *McComb*

18 *v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949).

19     A creditor's "half-hearted effort to determine if a Debtor had filed, even if sincere .

20 . . , did not meet the burden of inquiry. It is the responsibility of parties stayed to ascertain

21 whether a bankruptcy case has truly been commenced" *Johnson* at 267. Automatic stay

22 violations, even if innocent can became willful if the creditor fails to remedy the violation

23 after receiving notice of the stay. *In re Adams*, 94 BR 838 (Bankr. E.D. Pa. 1989). Upon

24 learning of a bankruptcy filing, a creditor has an affirmative duty to reverse any action and

25 return the debtor to status quo. *In re Sams,* 106 BR 485 (Bankr. S.D. OH. 1989). Here,

26 neither Ocwen nor Shellpoint took steps to correct its notice for years.

27

28                                      97

Both Ocwen and Shellpoint, as a long term mortgage servicers, were equipped with individuals experienced in dealing with legal matters. "[I]t is the responsibility of [the] part[y] stayed to ascertain whether a bankruptcy case has truly been commenced." *In re Freemyer Indus. Pressure, Inc.,* 281 BR 262, 267 (Bankr. N.D. Tex. 2002). (Notice sent by facsimile and given orally puts a creditor on inquiry notice). Even if, either Ocwen or Shellpoint was uncertain what to do, the court in *Freemyer* stated, it is "especially troubled that [the creditor] apparently did not look up the law. Applicability of the automatic stay is not a difficult concept, nor is the law unclear. A five-minute check of any treatise would have corrected [the creditors] misperception." *Id* at 268 fn.6.

Finally, "[i]f a creditor is uncertain about the applicability of the automatic stay, the creditor may petition the court for clarification; otherwise, the creditor risks exposure under 11 U.S.C. §362(k)(1) when he undertakes his own determination of the manner in which §362(a) affects his actions." *In re Galmore,* 390 BR 901, 904 (Bankr. Ind. 2008). Here, both Ocwen and Shellpoint failed to take this or any other route.

**3. Shellpoint's Stay Violation Continued Post Discharge by Failing to Take Steps to Stop What it Started.**

A creditor also violates the automatic stay by failing to take affirmative action to halt the effect of its violation. Once a party is put on notice of a bankruptcy filing, he is under a duty to seek further information which should reveal the applicability and scope of the stay. *In re Wagner,* 74 BR 898, 904 (Bankr. E.D.Pa. 1987). A creditor takes the risk of being assessed damages if he fails to obtain clarification from the bankruptcy court. *In re Clark,* 49 BR 704, 707 (Bankr. D. Guam. 1985). Many courts have held, it is incumbent on a creditor to take the necessary steps to halt or reverse any pending collection efforts and thereby, maintain, or restore the status quo as it existed at the time of the filing of the bankruptcy petition. Even "if [the stay] has been violated prior to receipt of actual notice the burden is on the creditor to *reverse* any such action taken in violation of the stay." *In re Smith,* 180 BR 311, 319 (Bankr. N.D. Ga. 1995).

" The responsibility is placed on the creditor because 'to place the onus on the debtor . . . to take affirmative steps . . . would subject the debtor to the financial pressures the automatic stay was designed to temporarily abate, and render the breathing spell from his creditors illusory' ". *Roche* at 621. "Courts find a violation of the stay based on an act of *omission* when a creditor fails to cure a previous violation of the stay or otherwise restore the states quo." *In re Bilfield*, 494 BR 292, 301 (Bankr. N.D. OH. 2013). The *Bilfield* court rejected the innocence argument of a creditor who hired a process server that served a subpoena upon the debtor in violation of the stay. The creditor had an affirmative obligation to instruct its agent to stand down. *Id.* at 305. Here, despite actual knowledge of the new payment terms, neither Ocwen or Shellpoint took any steps to cease mailing incorrect collection letters to Ms. Schulte.

It would result in a significant waste of judicial resources and "the automatic stay . . . would be frustrated if the debtor had to involve the court in each situation as here. It would continuously involve the court in pointless and needless litigation. . . it should not be the court that should stop the snowball." *In re Baldwin*, 1996 WL 33401577*3 (Bankr.C.D. Ill. 1996). "A creditor sets in motion the process. [The] [c]reditor is in the driver's seat and very much controls what is done thereafter if it chooses. If the 'continuation' is to be stayed, it cannot chose to do nothing and pass the buck to the garnishee or the court in which the garnishment is filed to effectuate the stay. Positive action on the part of the creditor is necessary so that continuation is stayed" *In re Elder,* 12 BR 491, 494-95 (Bankr. M.D. Ga. 1981).

A willful violation can be found based on an act of *omission*. *In re Banks*, 253 BR 25, 31 (Bankr. E.D. Mich. 2000). Courts have been quick to realize that a creditors *inaction* can often be just as disruptive to the debtor as are affirmative collection efforts. *In re Miller*, 22 BR 479, 481 (Bankr. D. Md. 1982). "In other words, the entire scenario was created, produced and directed by Creditor," so it was the party that needed to act. *In re Daniels,* 316

BR 342, 348-49 (Bankr. D. ID. 2004). Here, Ocwen and Shellpoint took no action to curtail their incorrect collection statements.

Even, after Ms. Schulte's discharge, Shellpoint's stay violations carried over and continued, because it never corrected its earlier violations. Debtors may continue to experience the consequences of a stay violation even *after* the stay has expired. *In re Snowden*, 769 F3 651, 659 and 662 (9th Cir. 2014), *aff'g* 422 B.R. 737 (Bankr. W.D. Wash. 2010). A creditor's failure, after they became aware of the Debtor's bankruptcy filing and resulting stay, to take affirmative steps to stop its actions also constitutes a "willful" violation of the stay under 11 U.S.C. §362(k)(1). *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1212, (9th Cir. 2002). For this reason, a stay violation exists until remedied, even after the underlying bankruptcy case is resolved. Thus, because neither Ocwen nor Shellpoint has *ever* acknowledged it violated the stay in the first place, it amounted to a continuing violation.

The Ninth Circuit has held that until a stay violation ends, even if it's after discharge, it is a continuing violation. "Stay violation liability under §362(k)(1) continues until full restitution is actually made or, if after expiration of the stay, until the court orders full restitution. See *Snowden*, 769 at 659 and 662; *In re Sundquist*, 566 B.R. 563, 586 (E.D. Cal. 2017). As Judge Christopher Klein aptly stated:

> When "a violation of the discharge injunction is merely continuation of pre-discharge conduct that violated the automatic stay, §362(k)(1) *continues* to provide stronger more explicit, and more definite statutory remedies that are more adequate to the task than the least-possible-exercise-of-power restriction on civil contempt" citing *In re Snowden*, 769 F.3d at 659 and 662; *In re Sundquist*, 566 BR at 586.

*In re Legrand*, 19-21198 at *15 (Bankr. E.D.Cal. Feb. 6, 2020)(emphasis added).

Judge Klein adds: "It would be an odd system that strips an individual debtor of the potent §362(k)(1) statutory punitive damages remedy against a creditor violating the automatic stay in bad faith but then holds that, because the stay violation persisted past entry of discharge, the §524 discharge injunction insulates that same bad actor with civil

100

contempt's milder least-possible-exercise-of-power approach of civil contempt." *Id.* In fact, Ms. Schulte has been *required* to pursue litigation and hire an expert to establish that the violation was willful and to obtain potential damages. *Snowden*, 769 F.3d at 659. Thus, Shellpoint's stay violation will not end until this Court rules after trial.

## Ocwen and Shellpoint Violated the Discharge Injunction

### 1. Ms. Schulte's Discharge

The bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, . . . or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . ." 11 USC §524(a)(2). Like the stay, the discharge is automatic and self-effectuating. *In re Marino*, 577 B.R. 772, 783 (9th Cir. BAP 2017). In fact, creditors must obey it, even if a debtor does not assert it. *In re Pavelich*, 229 BR 777, 781-782 (9thCir. BAP 1999). Here, Ms. Schulte asserted it by contacting Ocwen and Shellpoint on several occasions post-discharge (Dec. M. Schulte).

### 2. Knowledge of the Discharge

Second, because Shellpoint was on notice of the bankruptcy and stipulated to new mortgage figures, its collection letters also violated the discharge injunction. "One of the benefits an individual receives from a discharge is peace of mind the individual needs no longer be concerned that a discharged debt will be enforced against him or her. When a creditor disregards the discharge and attempts to collect a debt, it is certainly within the realm of possibility that the debtor will be harmed emotionally. When such occurs, the harm may be remedied." *In re Nordlund*, 494 BR 507, 523 (Bankr. E.D. Cal. 2011). A debtor who asserts that the discharge injunction has been violated must seek relief from the bankruptcy court by motion, as was done here, rather than through commencement of an adversary proceeding. See *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1190 (9th Cir. 2011).

The Ninth Circuit has held that Section 524(a) may be enforced by the court's contempt power under section 105(a). See *Walls v. Wells Fargo Bank, N.A.,* 276 F.3d 502, 509 (9th Cir. 2002). To be subject to sanctions for violating the discharge injunction, a party's violation must be "willful." The Ninth Circuit applies a two-part test to determine whether the willfulness standard has been met: (1) did the alleged offending party know that the discharge injunction applied; (2) and did such party intend the actions that violated the discharge injunction? *In re Nash*, 464 B.R. at 880 (citing *Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d 1193, 1205 n.7 (9th Cir.2008), *aff'd*, 130 S.Ct. 1367 (2010); *In re Zilog, Inc.*, 450 F.3d 996, 1007 (9th Cir.2006).

For the second prong, the bankruptcy court's focus is not on the offending party's subjective beliefs or intent, but on whether the party's conduct in fact complied with the order at issue. *In re Bassett*, 255 B.R. 747, 758 (9th Cir.BAP2000), *rev'd on other grounds*, 285 F.3d 882 (9th Cir.2002). In *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019), the US Supreme Court issued its ruling overturning the Ninth Circuit's previous standard for judging violations of a 11 U.S.C. § 524 discharge injunction – a subjective standard which focused on the subjective thought process of the creditor. *In re Taggart*, 888 F.3d 438, 441 (9th Cir. 2018). In its place, the Court adopted the reasoning of an old case, *California Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618, 5 S.Ct. 618, 28 L.Ed. 1106 (1885), to find that "a court may hold a creditor in civil contempt for violating a discharge order if there is *no fair ground of doubt* as to whether the order barred the creditor's conduct. In other words, civil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful." *Taggart*, 139 S. Ct. at 1799 (2019) (emphasis in original).

The "fair ground of doubt" standard, therefore, would seem to be an application of the "reasonable person" principle, wherein an action is judged to be lawful only if a reasonable person would perform it. "[A] party's record of continuing and persistent

102

violations and persistent contumacy justified placing the burden of any uncertainty in the decree on the shoulders of the party who violated the court order." *Taggart v. Lorenzen*, 139 S. Ct. at 1802. By this standard, neither Ocwen nor Shellpoint had an objectively reasonable basis for believing that its collection actions in the form of collection statements were lawful, especially after Ms. Schulte notified them of the bankruptcy. Therefore, they are subject to sanctions.

"Under the fair ground of doubt standard, civil contempt may be appropriate when the creditor violates a discharge order based on an objectively unreasonable understanding of the discharge order *or the statutes that govern its scope*." *Taggart*, 139 S. Ct. at 1796 (emphasis added). In general, the law presumes that all parties are aware of the obligations the law imposes on them. *Bibeau v. Pac. Nw. Research Found. Inc.*, 188 F.3d 1105, 1110 (9th Cir. 1999), *opinion amended on denial of reh'g*, 208 F.3d 831 (9th Cir. 2000). In particular, "[b]usinesses are deemed knowledgeable of the laws affecting their enterprise." *Franken Invs., Inc. v. City of Flint*, 218 F. Supp. 2d 876, 886 (E.D. Mich. 2002) (*citing Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947)). Both Ocwen and Shellpoint are in the business of collecting money from debtors. It is an institutional servicer that regularly files claims in bankruptcy. Thus, it must be presumed to be familiar with, and understand, the federal laws regarding debt and bankruptcy.

The moving party must prove by clear and convincing evidence that the offending party violated the order. *In re Zilog, Inc.*, 450 F.3d at 1007;  *In re Dyer*, 322 F.3d 1178, 1191 (9th Cir.2003). The moving party also has this same burden to prove that sanctions are justified. *Espinosa*, 553 F.3d at 1205 n.7. The burden then shifts to the offending party to demonstrate why it was unable to comply. *In re Bennett*, 298 F.3d at 1069. If a bankruptcy court finds that a party has willfully violated the discharge injunction, it may award actual damages, punitive damages and attorney's fees to the debtor. *In re Nash*, 464 B.R. at 880 (citing *Espinosa*, 553 F.3d at 1205 n.7 (citing 2 Collier Bankruptcy Manual ¶524.02[2][c]

(3d rev. ed.))). The bankruptcy court has broad discretion in fashioning a remedy for violation of the discharge injunction. *In re Bassett*, 255 B.R. at 758. *In re Wallace*, 2012 WL 2401871 at *5 (B.A.P. 9th Cir. June 26, 2012).

The discharge prohibits not just litigation, but also informal collection activities, such a dunning notices and calls. *Marino* 577 BR at 783. Actual or constructive notice of the discharged debt will suffice to find a party in violation of the discharge injunction. *In re Nassoko*, 405 B.R. 515, 522 (Bankr. S.D. N.Y. 2009). Here, both Ocwen and Shellpoint were on actual and constructive notice of Ms. Schulte's discharge.

### 3. Shellpoint's Billing Statements Violated the Discharge Injunction When Requesting an Improper Amount of Payment and Interest.

Not surprisingly, case law also favors Ms. Schulte. "The discharge injunction survives the bankruptcy case and applies permanently with respect to every debt that is discharged." *In re Garske*, 287 BR 537,542 (9th Cir. BAP 2002). So, demand for payment of discharged debts is prohibited. *In re Brown*, 481 BR 351, 358, n. 10 (Bankr. W.D. Pa. 2012). Therefore, "[s]ending of collection letters by a mortgagee or servicer after receiving notice of a debtor's discharge is a clear violation of the discharge injunction" *In re Sharak*, 571 B.R. 13, 20 (Bankr. N.D. New York 2017), citing *In re Doger-Marinesco*, 2016 Bankr. LEXIS 4111, at *26 (Bankr. S.D. N.Y. Dec. 1, 2016). See also *In re Nassoko*, 405 BR 515 (S.D. NY. 2009).

The automatic stay contained in 11 U.S.C. §362 and the discharge injunction contained in 11 U.S.C. §524 operate as orders of the court. *Matthews* at 598. A bankruptcy court may therefore use its inherent civil contempt authority to issue sanctions against creditors violating the automatic stay and discharge injunction, which sanctions may include compensatory damages. *See, e.g., In re Wallace*, 2011 WL 1335822 at *5 (Bankr. M.D. Fla. April 5, 2011) (stating that "[i]t is well settled that this Court has the inherent power to award compensatory damages for willful violations of the automatic stay as this

falls within the ambit of the bankruptcy court's civil contempt power."); *In re Hardy,* 97 F.3d 1384, 1389 (11th Cir. 1996) (noting that "the modern trend is for courts to award actual damages for violation of §524 based on the inherent contempt power of the court.").

One court noted, that "the billing statements that Respondent sends to discharged debtors . . . are the same statements that Respondent sends to non-bankruptcy customers to collect personal debts." *In re Biery* 543 B.R. 267, 288 (Bankr. E.D. Kent. 2015). Thus, these types of "Billing statements *per se* violate the discharge [injunction]." *Id.* And critically, whether someone is in bankruptcy or not, Ocwen and Shellpoint's correspondence never changed.

A "lien holder may communicate with a discharged debtor *only* to the extent necessary to preserve or enforce its lien rights, and may not attempt to induce the debtor to pay the debt." *Marino* 577 BR at 784. (Emphasis added). However, a "creditor may not use a contact to 'coerce' or 'harass' the debtor." *In re Nash*, 464 BR 874, 881 (9th Cir. BAP 2012). But here, that's exactly what Shellpoint's account statements do. Under an objective standard, an action is considered coercive when it is "tantamount to a threat," *In re Jamo* 283 F.3d 392, 401 (1st Cir. 2002)), or "places a debtor 'between a rock and a hard place.'" *Id.* Despite dozens of Ocwen and Shellpoint's collection letters being incorrect, they threatened to foreclose.

Thus, Shellpoint's actions should not be viewed in isolation, but should be considered under the totality of circumstances to determine whether they evidence a pattern of coercive behavior. *In re Mahoney*, 368 B.R. 579, 584 (Bankr. W.D. Tex. 2007).

In this modern age of information technology, both Ocwen and Shellpoint could and should prepare notices that are consistent with the known legal status of its loan with a debtor. Their failure to do so reflects either incompetence or a deliberate effort to induce confused borrowers to pay more on a discharged debt.

1

### Inherent Contempt Authority

2
3
**1. The Court has inherent contempt authority to sanction violations of the discharge injunction, the confirmed plan and the confirmation order.**

4
5
6
7
8
9
10
11
12
Bankruptcy courts have inherent civil contempt authority independent of any statute or rule. *Jove Eng'g, Inc., v. IRS,* 92 F.3d 1539, 1553 (11th Cir. 1996). Pursuant to its inherent civil contempt authority, bankruptcy courts may enforce its own orders, *see id.; In re Matthews,* 184 B.R. 594, 598 (Bankr. S.D. Ala. 1995), and issue sanctions for noncompliance, *Bessette v. Avco Fin. Services, Inc.,* 230 F.3d 439, 445 (1st Cir. 2000). See also *In re Rainbow Magazine, Inc.*, 77 F.3d 278, 284 (9th Cir. 1996) (noting that "[t]here can be little doubt that bankruptcy courts have the inherent power to sanction vexatious conduct presented before the court" as recognized by the statutory grant of power to the bankruptcy courts under 11 U.S.C. §105(a)).

13
14
15
16
17
18
19
Despite knowledge of Ms. Schulte's bankruptcy and discharge, Shellpoint has not ceased collection of an incorrect amount of its debt against her personally, thereby continuing to violate the Court's order and plan confirmation. These letters and correspondence are of little understanding to the average debtor, especially when confronted with the mounds of paperwork and contradictory legal jargon that Ms. Schulte has received since her discharge. Thus, Ocwen and Shellpoint should be sanctioned under the court's inherent authority or, as shown below, under 11 U.S.C. §105.

20
21
**2. The Court has Contempt Authority under Section 105 to Sanction Violations of a Court's Order and the Plan Confirmation.**

22
23
24
25
26
27
In addition to its inherent civil contempt powers, bankruptcy courts have statutory civil contempt authority under 11 U.S.C. §105(a) to enforce the discharge provisions of the Bankruptcy Code and its own orders. *See Bessette*, 230 F.3d at 445; *see also In re Fatsis,* 405 B.R. 1, 7 (B.A.P. 1st Cir. 2009). Section 105(a) provides for the issuance of "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this

28

title." (Emphasis added).

"The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." *F.T.C. v. Affordable Media,* 179 F.3d 1228, 1239 (9th Cir. 1999).

A party who knowingly violates a court order or a confirmed plan can be held in contempt under §105(a) of the Bankruptcy Code. *Espinosa v. United Student Aid Funds, Inc.,* 553 F.3d 1193, fn. 7 (9th Cir. 2008). Proof of a knowing violation requires only proof that the creditor (1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction. *Bennett,* 298 F.3d at 1069; (citing *In re Hardy,* 97 F.3d at 1388-89). Therefore, the bankruptcy court clearly has discretion to impose sanctions under section 105(a). *Bennett* at 1069.

The focus "is not on the subjective beliefs or intent of the contemnors in complying with the order, but whether in fact their conduct complied with the order at issue." *In re Dyer* 322 F.3d 1178, 1191 (9th Cir. 2003), citing *Hardy* at 1390 (regarding stay violation). "Because civil contempt serves a remedial purpose it matters not with what intent the defendant did the prohibited act." *Dyer* at 1191. "[T]he threshold questions regarding the propriety of an award turns not on a finding of 'bad faith' or subjective intent, but rather on a finding of willfulness' ". *Id* at 1191. To be subject to sanctions for violating the discharge injunction, a party's violation must be "willful." The Ninth Circuit applies a two-part test to determine whether the willfulness standard has been met: (1) did the alleged offending party know that the discharge injunction applied; and (2) did such party intend the actions that violated the discharge injunction? *In re Nash,* 464 B.R. 874, 880 (9th Cir. BAP 2012). Here, the answer to both questions is a resounding yes!

Since these letters, billing statements and correspondence seek to collect improper amounts from Ms. Schulte personally, both Ocwen and Shellpoint are in contempt and should be sanctioned under the Court's inherent authority. 11 U.S.C. §105.

**IV**

**Damages**

**1. Stay and Discharge Violation**

    **(a) Actual Damages**

Actual damages may include costs, expert witness fees, attorneys' fees and, in appropriate circumstances, punitive damages for Shellpoint's stay and discharge violations. See 11 U.S.C. §362(k)(1). Actual damages may also include compensation for emotional distress. Proof of pecuniary loss is not required for an award of emotional distress damages. *In re Dawson*, 390 F.3d 1139, 1149 (9th Cir. 2004). "To recover damages for emotional distress under § 362(k), 'an individual must (1) suffer significant harm (2) clearly establish the significant harm, and (3) demonstrate a causal connection between that significant harm and the violation of the automatic stay (as distinct, for instance, from the anxiety and pressures inherent in the bankruptcy process).' . . . Emotional harm may be proved by: (1) medical evidence, (2) non-experts, such as family members, friends, or coworkers; or (3) 'even without corroborative evidence where significant emotion distress is readily apparent.' . . . The last category includes cases where the violator's conduct is 'egregious,' or where the conduct is not egregious but the circumstances make it obvious that a reasonable person would suffer significant emotional harm . . . 'Fleeting or trivial anxiety or distress does not suffice . . .'" *See America's Servicing Co. v. Schwartz-Tallard*, 438 B.R. 313, 321-22 (D. Nev. 2010), *citing In re Dawson*, 390 F.3d at 1149-50.

Because actual damages can include emotional distress damages for an automatic stay violation, see *Dawson*, 390 F.3d at 1148, courts also have authority to award emotional distress damages for a discharge violation. See *In re McLean*, 794 F.3d 1313, 1325 (11th Cir.

108

2015). Schulte argues, that any reasonable person would suffer emotional distress after a decade of continuous post-petition and post-discharge collection attempts by creditors sending letters that have incorrect billing information.

Both the Supreme Court and Ninth Circuit have made it clear, that emotional distress damages can be awarded to individuals based *solely* on a person's testimony. *Chalmers v. City of Los Angeles* 762 F.2d 753, 761 (9th Cir. 1985) (upholding emotional damages solely on testimony); *Johnson v. Hale*, 13 F.3d 1351, 1352 (9th Cir. 1994) (noting that emotional distress damages may be awarded based on testimony alone or appropriate inference from circumstances); *Carey v. Piphus*, 435 U.S. 247, 264, n.20 (1978) (emotional distress damages are "essentially subjective" and may be proven by reference to injured party's conduct and observations by others). Here, there was an actual causal connection between Shellpoint's contumacious conduct and Ms. Schulte emotional distress.   Finally, the Ninth Circuit has permitted large emotional damages based solely on a person's testimony. *Zhang v. Am Gen. Seafoods*, 339 F.3d 1020, 1040 (9th cir. 2003) ("Zhang's testimony alone is enough to substantiate the jury's award of emotional distress damages" - $360,000 emotional distress and $2,600,000 punitive damages); *Passantino v. Johnson + Johnson Consumer Prods. Inc.* 212 F.3d 493, 513 (9th Cir. 2000) (upheld $1,000,000 emotional distress damages and $2,200,000 in economic damages; *McCullough v. Johnson Rodenburg & Lauinger*, 637 F.3d 939, 957 (9th Cir. 2011)(upheld $250,000 emotional distress damages - FDCPA). Thus, this Court should consider large emotional distress damages for Ms. Schulte.

### (b) Punitive Damages

#### (1) Stay Violation

Punitive damages are permissible for stay violation. 11 U.S.C. §362(k).  An award of punitive damages requires "some showing of reckless or callous disregard for the law or rights of others." *In re Bloom,* 875 F.2d 224, 228 (9th Cir. 1989).  "Once a party is put on

109

notice of a bankruptcy filing, he is under a duty to seek further information which should reveal the applicability and scope of the automatic stay." *In re Lile*, 103 B.R. 830, 837 (Bankr.S.D. Tex. 1989), *aff'd* 161 B.R. 788 (S.D. Tex. 1993), *aff'd* in part subnom. *Matter of Lile*, 43 F.3d 668 (5th Cir. 1994). Where a creditor is provided actual notice of the bankruptcy any violation of the stay *must* be deliberate. *In re Smith*, 296 B.R. 46, 55 (Bankr. MD. Ala. 2002). But, even "[t]he absence of willfulness does not relieve [a party violating a court order or decree] from civil contempt." *Id.* Because civil contempt is remedial in nature, "it matters not with what intent the [contemnor does] the prohibited act." *Perry v. O'Donnell*, 759 F.2d 702, 705 (9th Cir. 1985). Third, punitive damages can also be warranted, not only when a creditor engages in "egregious conduct", *In re Repine* 536 F.3d at 521, but also if the conduct is "reckless" or "arrogant," as in this situation. *In re Lile,* 161 BR 788, 792 (S.D. Tex. 1993). *In re Emberton*, 263 BR 817, 826 (Bankr. W.D. Kent. 2001)(punitive damages three times actual damages). Punitive damages are most appropriate "where there has been an 'arrogant defiance' of the Bankruptcy Code." *In re Curtis*, 322 B.R. 470, 486 (Bankr. D. Mass. 2005). But, since both servicers completely ignored Ms. Schulte on numerous occasions, punitive damages are warranted.

### (2) Discharge Violation

A bankruptcy court's civil contempt authority under Section 105(a) is limited to relatively mild, non-compensatory fines rather than serious punitive sanctions. See *Dyer*, 322 F.3d at 1193. That is, unless this Court believes larger sanctions are needed. Then, it has two choices: first it can issue proposed findings and a recommended judgment on punitive damages to the district court or refer the matter to the district court for criminal contempt proceedings. *Marino* at 789.

A "willful violation" does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional.

*In re Pinkstaff*, 974 F.2d 113, 115 (9th Cir. 1992). "If the Bankruptcy Court finds that the creditor [Appellants] willfully violated the injunction, it shall, at the very least, impose sanctions to the extent necessary to make [Wallace] whole." *Ibid.*; "Where the discharge injunction was willfully violated courts award debtor's actual damages, punitive damages and attorneys' fees." *Ibid.,* citing 2 Collier Bankruptcy Manual (3rd Rev. Ed.) ¶ 524.02 [2][c].

"[B]ankruptcy courts across the country have appropriately used their statutory contempt power to order monetary relief, in the form of actual damages, attorney fees, and punitive damages when creditors have engaged in conduct that violates § 524." *Bessette* at 445.  See also *In re Harris*, 312 B.R. 591 (N.D. Miss. 2004); *In re Sanchez*, 372 B.R. 289 (Bankr. S.D. Tex. 2007) (Section 105(a) gives the court power to sanction a creditor charging undisclosed and improper fees); *In re Rizzo Cheverier*, 364 B.R. 532 (Bankr. S.D.NY 2007).

"In a civil contempt proceeding, a monetary sanction, assessed for the purpose of compensating the complainant for losses sustained by reason of the contemnor's acts, is within the universe of permissible sanctions. Thus, make-whole relief is a commonplace sanction in civil contempt.  So too are. . .  attorney's fees and costs."  *Goya Foods, Inc. v. Wallach Mgmt. Co.* 290 F.3d 63, 78 (1st Cir. 2002).  "[D]amage awards are both necessary and appropriate in the context of contempt for violation of the discharge injunctions." *Gervin* at 858.

Creditors have been found to have violated the discharge injunctive for various acts. See *In re Adrus*, 189 B.R. 413 (N.D. Ill.1995)(calling); *In re Burke* 200 B.R. 282 (Bankr. S.D. Ga. 1996)(collection letter).  As a consequence, debtors have received actual damages, emotional distress damages and attorney's fees. See *In re Curtis*, 322 B.R. 470 (Bankr.D.Mass 2005)(debtor awarded $15,000 emotional distress damages and $30,000 punitive damages); *In re Atkins,* 279 B.R. 639 (Bankr.N.D.N.Y. 2002)($30,000 emotional distress); *In re Gervin,* 337 B.R. 854, 864 (Bankr.W.D. Tex.2005)($25,000 emotional

distress damages); *In re Goodfellow,* 298 B.R. 358 (Bankr. N.D. IA.2003)(debtor awarded $5,000 actual and $5,000 punitive damages); *In re Faust,* 270 B.R. 310 (Bankr.N.D.Ga. 1998). *In re McCormak* 203 B.R. 521 (Bankr. D.N.H. 1996) (mortgage bank held liable for $10,000 in punitive damages).

### (c) Attorney Fees as Actual Damage

An award of attorneys' fees under Section 362(k) may include the fees incurred in seeking to enforce the automatic stay. *In re Schwartz-Tallard*, 803 F.3d 1095, 1101 (9th Cir. 2015). Attorneys fees are also appropriate for a discharge violation, because it is an appropriate component of a civil contempt award. See *Walls v. Wells Fargo Bank, N.A.,* 276 F.3d 502, 507 (9th Cir. 2002).

## 2. Ms. Schulte Should Not be Penalized for Enforcing Her Rights.

"Without the willingness of aggrieved debtors to prosecute violations of the discharge injunction of section 524(a)(2), such violations would go unchecked by the court. The Code has as one of its underlying purposes providing a fresh start to a discharged debtor." *In re McClure*, 420 B.R. 655, 664 (Bankr. N.D. Tex. 2009), (citing *Marrama v. Citizens Bank*, 549 U.S. 365, 367, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007) and *Grogan v. Garner*, 498 U.S. 279, 286-87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

"If violation of the discharge injunction go unpunished, creditors will lack the necessary incentive to avoid violating the law, and an underlying purpose of the Code with be undermined. In order to ensure that debtors are not hesitant to prosecute violations of the discharge injunction, they should be awarded a actual damages to compensate them for the time and effort they expend in the process." *McClure* at 664, "Should creditors feel safe in ignoring the discharge injunction, some debtors, especially if not represented - . . . may be intimidated into paying discharged debts." *Id* at 664. Here, Ms. Schulte should not be discouraged from seeking to enforce her rights.

**3. Various Forms Of Sanctions and Damages Are Available To This Court To Compensate Ms. Schulte And Coerce Shellpoint To Comply With Its Order.**

The civil contempt powers under §105(a) empower this Court to sanction the offending party. Such sanctions "must either be compensatory or designed to coerce compliance." *Dyer*, 322 F.3d at 1192; *See also: Am. Airlines Inc. v. Allied Pilots Ass'n,* 228 F.3d 574, 585 (5th Cir.2000) ("Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complaint for losses sustained."). As explained in *Dyer*, the sanctions associated with civil contempt include, compensatory damages, attorney fees, and the offending creditor's compliance. *Id.* at 1193 (citing *Walls v. Wells Fargo Bank*, 276 F.3d 502, 507 (9th Cir. 2002). *Dyer* also concluded that "relatively mild noncompensatory fines" might be necessary under some circumstances, and within the Court's inherent power, but ultimately rejected any ability for imposition of "serious" punitive sanctions. *Id.* at 1194-95.

The contempt authority conferred on bankruptcy courts is a *civil* contempt authority. As such, it authorizes only *civil* sanctions as available remedies. *In re Dyer*, 322 F.3d 1191. The Ninth Circuit has explained the difference between civil sanctions and criminal sanctions: Civil penalties must either be compensatory or designed to coerce compliance. *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.,* 244 F.3d 1128, 1137-38 (9th Cir.2001). Compensatory civil sanctions include actual damages such as attorneys fees, costs and emotional distress. *See In re Dawson*, 390 F.3d 1139, 1148 (9th Cir. 2004). Coercive sanctions are used to coerce or compel compliance with court orders and should be awarded to the party, as opposed the court. *See F.J. Hanshaw*, 244 F.3d at 1138; *See also Int'l Union, United Mine Workers of Am. v. Bagwell,* 512 U.S. 821, 827-34 (1994).

# IV

## Conclusion

It is clear, that Ocwen and Shellpoint violated the automatic stay and the discharge injunction. This is a case which warrants the imposition of sanctions, damages and an award of attorney's fees.

WHEREFORE, the Debtor respectfully requests an order;

1.  That Ocwen and Shellpoint violated the automatic stay under §362, a Court order, the confirmed plan, and the discharge injunction under §524(a)(2);

2.  Sanctioning Ocwen and Shellpoint under §362(k)(1) §105(a) or its inherent authority in an amount to be determined at a hearing;

3.  Awarding Ms. Schulte emotional distress damages in an amount to be determined at a hearing;

4.  Awarding the Debtor attorney fees and costs under §362(k)(1), §105(a) or its inherent authority in an amount to be determined in a hearing;

5.  Awarding the Debtor actual damages and costs in an amount to be determined in a hearing;

6.  Awarding the Debtor punitive damages;

7.  Holding a separate hearing on sanctions, actual damages, emotional distress damages, punitive damages, and attorney fees;

8.  Any other relief deemed just and proper;

DATED this 23rd day of April, 2021.

RESPECTFULLY SUBMITTED:

/S/CHRISTOPHER P. BURKE, ESQ.
CHRISTOPHER P. BURKE, ESQ.
218 S. Maryland Parkway
Las Vegas, Nevada 89101
(702) 385-7987

114