| Fill in this information to identity the case: |
| --- |

| | |
| --- | --- |
| Debtor 1 | Schulte Properties LLC |
| Debtor 2 | |
| United States Bankruptcy Court for the: | District of Nevada, Las Vegas Division |
| Case number | 1812734 |

## Official Form 410

# Proof of Claim                                                                    04/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C.§503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents**; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

| | |
| --- | --- |
| **1. Who is the current creditor?** | THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK,AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST  2004-28CB, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES2004-28CB<br><br>Other names the creditor used with the debtor |
| **2. Has this claim been acquired from anyone else?** | ☑ No<br><br>☐ Yes     From whom? |

| **3. Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
| --- | --- | --- |
| | Shellpoint Mortgage Servicing<br>PO Box 10826<br><br>Greenville          SC          29603-0826<br><br>Contact phone    (800) 365-7107<br><br>Contact email  mtgbk@shellpointmtg.com<br><br>Uniform claim identifier for electronic payments in chapter 13 (if you use one) | Shellpoint Mortgage Servicing<br><br><br>Contact phone    (800) 365-7107<br><br>Contact email |

| | |
| --- | --- |
| **4. Does this claim amend one already filed?** | ☑ No<br><br>☐ Yes     Claim number on court claims registry (if known)          Filed on |
| **5. Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No<br><br>☐ Yes     Who made the earlier filing? |

EXHIBIT E

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes   Last 4 digits of the debtor's account or any number you use to identify the debtor:   6861

---

**7. How much is the claim?**   $171,520.96   **Does this amount include interest or other charges?**

☐ No

☑ Yes   Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

---

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money Loaned

---

**9. Is all or part of the claim secured?**

☐ No

☑ Yes   The claim is secured by a lien on property.

**Nature of property:**   1392 Echo Falls Ave, Las Vegas, NV 89123

☑ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle.

☐ Other. Describe:

**Basis for perfection:**   Note/Mortgage

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recordsd.)

**Value of Property:**

**Amount of the claim that is secured:**   $171,520.96

**Amount of the claim that is unsecured:**   $0.00   (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $54,510.99

**Annual Interest Rate** (when case was filed)   5.0000000%

☑ Fixed

☐ Variable

---

**10. Is this claim based on a lease?**

☑ No

☐ Yes   **Amount necessary to cure any default as of  the date of the petition.**

---

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes   Identify the property:

---

Official Form 410                  Proof of Claim                  page 2



**12. Is all or part of this claim entitled to priority under 11 U.S.C. § 507(a)??**

☑ No

☐ Yes    *Check all that apply:*

Amount entitled to priority

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C § 507(a)(1)(A) or (a)(1)(B).

☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

☐ Taxes or penalties owed to government units. 11 U.S.C. § 507(a)(8)

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5)

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.

\* Amounts are subject to adjustment on 4/01/16 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:   Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRPB 599(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    09/12/2018

/s/ Barbara Lebiedziewicz
_____
Signature

Print the name of the person who is completing and signing this claim:

Name    Barbara Lebiedziewicz

Title    Bankruptcy Case Manager

Company    Shellpoint Mortgage Servicing

Address    PO Box 10826

Greenville                    SC                    29603-0826

Contact phone    (800) 365-7107        Contact email    mtgbk@shellpointmtg.com


EXHIBIT E

# Mortgage Proof of Claim Attachment

(12/15)

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

## Part 1: Mortgage and Case Information

| | |
|---|---|
| Case Number: | 1812734 |
| Debtor 1: | LLC Schulte Properties |
| Debtor 2: | |
| Last 4 digits to identify: | 6861 |
| Creditor: | THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2004-28CB, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2004-28CB |
| Servicer: | Shellpoint Mortgage Servicing |
| Fixed accrual/daily simple interest/other: | Fixed |

## Part 2: Total Debt Calculation

| | |
|---|---|
| Principal balance: | $128,870.89 |
| Interest due: | $36,041.12 |
| Fees, costs due: | $6,538.42 |
| Escrow deficiency for funds advanced: | |
| Less funds on hand - | ($702.97) |
| Total debt: | $171,520.96 |

## Part 3: Arrearage as of the Date of the Petition

| | |
|---|---|
| Principal & interest due: | $47,476.20 |
| Prepetition fees due: | $6,538.42 |
| Escrow deficiency for funds advanced: | $773.50 |
| Projected escrow shortage: | $425.84 |
| Less funds on hand: - | ($702.97) |
| Total prepetition arrearage: | $54,510.99 |

## Part 4: Monthly Mortgage Payment

| | |
|---|---|
| Principal & Interest: | $708.60 |
| Monthly escrow: | $160.57 |
| Private mortgage insurance: | $0.00 |
| Total monthly payment: | $869.17 |

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 708.60 | 708.60 | 708.60 | Regular Payment | 11/1/12 | 708.60 | | | | | | 101319.21 | | 3345.27 | | 14886.59 |
| | 708.60 | | 708.60 | Regular Payment | 12/1/12 | 1417.20 | | | | | | | | | | |
| 12/11/12 | | 708.60 | | Unapplied Payment | 7/1/09 | | | | | | 708.60 | | | | | 15595.19 |
| 12/11/12 | | 708.60 | | Unapplied Payment | 7/1/09 | | | | | | 708.60 | | | | | 16303.79 |
| 12/21/12 | | -317.76 | | Tax Bill 1 Disbursement | 7/1/09 | | | | -317.76 | | | | | | | |
| | 708.60 | | 708.60 | Regular Payment | 1/1/13 | 2125.80 | | | | | | | | | | |
| | 708.60 | | 708.60 | Regular Payment | 2/1/13 | 2834.40 | | | | | | | | | 3027.51 | |
| 2/7/13 | | -317.76 | | Tax Bill 1 Disbursement | 7/1/09 | | | | -317.76 | | | | | | | |
| | 708.60 | | 708.60 | Regular Payment | 3/1/13 | 3543.00 | | | | | | 100450.86 | | 2709.75 | | 17012.39 |
| | | 708.60 | | Unapplied Payment | 2/1/10 | 3543.00 | 868.35 | 529.64 | 218.19 | | 708.60 | | | | | |
| | 1397.99 | 1397.99 | | Regular Payment | 7/1/09 | 3543.00 | | | | | | | | 2927.94 | | |
| 3/4/13 | 708.60 | 218.19 | 218.19 | Regular Payment | 4/1/13 | 4251.60 | | | | | | | | | | |
| 4/2/13 | | 708.60 | | Unapplied Payment | 7/1/09 | | | | | | 708.60 | | | | | 17720.99 |

Official Form 410A     **Mortgage Proof of Claim Attachment**     Page 1 of 9

EXHIBIT E

(12/15)

# Mortgage Proof of Claim Attachment

Case Number: 1812734

Debtor 1: LLC Schulte Properties

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/2/13 | | 708.60 | 708.60 | Unapplied Payment | 7/1/09 | | | | | | 708.60 | 708.60 | | | | 18429.59 |
| 5/21/13 | 708.60 | 708.60 | 708.60 | Regular Payment | 5/1/13 | 4960.20 | | | | | | | | | | 19846.79 |
| 5/21/13 | | 1417.20 | 1397.99 | Unapplied Payment | 7/1/09 | | | | | | 1417.20 | 1417.20 | | | | |
| 5/21/13 | 708.60 | 1397.99 | 218.19 | Regular Payment | 3/1/10 | 4960.20 | 872.60 | 525.39 | | | | 99578.26 | | | | |
| 5/21/13 | 708.60 | 218.19 | 708.60 | Regular Payment | 7/1/09 | 4960.20 | | | 218.19 | | | | | 3146.13 | | |
| | 708.60 | 708.60 | 708.60 | Regular Payment | 6/1/13 | 5668.80 | | | | | | | | | | |
| | 708.60 | 708.60 | 708.60 | Regular Payment | 7/1/13 | 6377.40 | | | | | | | | | | |
| 7/25/13 | | -377.00 | -377.00 | Insurance Premium Dis | 7/1/13 | | | | -377.00 | | | | | 2769.13 | | |
| 7/29/13 | | -332.01 | -332.01 | Tax Bill 1 Disbursemer | 7/1/09 | | | | -332.01 | | | | | 2437.12 | | |
| | 708.60 | 708.60 | 708.60 | Regular Payment | 8/1/13 | 7086.00 | | | | | | | | | | |
| | 708.60 | 708.60 | 708.60 | Regular Payment | 9/1/13 | 7794.60 | | | | | | | | | | |
| 9/19/13 | | -331.10 | -331.10 | Tax Bill 1 Disbursemer | 7/1/09 | | | | -331.10 | | | | | 2106.02 | | |
| | 708.60 | 708.60 | 708.60 | Regular Payment | 10/1/13 | 8503.20 | | | | | | | | | | |
| 10/30/13 | | -2032.33 | -2032.33 | Tax Bill 1 Disbursemer | 7/1/09 | | | | -2032.33 | | | | | 73.69 | | |
| | 708.60 | 708.60 | 708.60 | Regular Payment | 11/1/13 | 9211.80 | | | | | | | | | | |
| | 708.60 | 708.60 | 708.60 | Regular Payment | 12/1/13 | 9920.40 | | | | | | | | | | |
| 12/18/13 | | -331.10 | -331.10 | Tax Bill 1 Disbursemer | 7/1/09 | | | | -331.10 | | | | | -257.41 | | |
| | 708.60 | 708.60 | 708.60 | Regular Payment | 1/1/14 | 10629.00 | | | | | | | | | | |
| | 708.60 | 708.60 | 708.60 | Regular Payment | 2/1/14 | 11337.60 | | | | | | | | | | |
| 2/18/14 | | -331.10 | -331.10 | Tax Bill 1 Disbursemer | 7/1/09 | | | | -331.10 | | | | | -588.51 | | |
| | 708.60 | 708.60 | 708.60 | Regular Payment | 3/1/14 | 12046.20 | | | | | | | | | | |
| | 708.60 | 708.60 | 708.60 | Regular Payment | 4/1/14 | 12754.80 | | | | | | | | | | |
| | 708.60 | 708.60 | 708.60 | Regular Payment | 5/1/14 | 13463.80 | | | | | | | | | | |
| | 708.60 | 708.60 | 708.60 | Regular Payment | 6/1/14 | 14172.00 | | | | | | | | | | |
| | 708.60 | 708.60 | 708.60 | Regular Payment | 7/1/14 | 14880.60 | | | | | | | | | | |
| | | -390.00 | -390.00 | Insurance Premium Dis | 7/1/09 | | | | -390.00 | | | | | -978.51 | | |
| | | -341.94 | -341.94 | Tax Bill 1 Disbursemer | 7/1/09 | | | | -341.94 | | | | | -1320.45 | | |
| | 708.60 | 708.60 | 708.60 | Regular Payment | 8/1/14 | 15589.20 | | | | | | | | | | |
| | 708.60 | 708.60 | 708.60 | Regular Payment | 9/1/14 | 16297.80 | | | | | | | | | | |
| | | -341.03 | -341.03 | Tax Bill 1 Disbursemer | 7/1/09 | | | | -341.03 | | | | | -1661.48 | | |
| | 708.60 | 708.60 | 708.60 | Regular Payment | 10/1/14 | 17006.40 | | | | | | | | | | |
| 10/6/14 | | 390.00 | 390.00 | Insurance Refund | 7/1/09 | | | | 390.00 | | | | | -1271.48 | | |
| | 708.60 | 708.60 | 708.60 | Regular Payment | 11/1/14 | 17715.00 | | | | | | | | | | |

EXHIBIT E

(12/15)

# Mortgage Proof of Claim Attachment

Case Number: 1812734

Debtor 1: LLC Schulte Properties

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 708.60 | 708.60 | 708.60 | Regular Payment | 12/1/14 | 18423.60 | | | | | | | | | | |
| 12/18/14 | | -341.03 | | Tax Bill 1 Disbursemer | 7/1/09 | 19132.20 | | | -341.03 | | | | | -1612.51 | | |
| | 708.60 | 708.60 | 708.60 | Regular Payment | 1/1/15 | 19840.80 | | | | | | | | | | |
| 2/12/15 | | -341.03 | -341.03 | Tax Bill 1 Disbursemer | 2/15 | 20549.40 | | | -341.03 | | | | | -1953.54 | | |
| 3/30/15 | 708.60 | 3159.86 | 708.60 | Regular Payment | 3/15 | | | | | | 3159.86 | | | | | 23006.65 |
| 3/30/15 | | -654.57 | | Escrow Adjustment | 7/1/09 | | | | -654.57 | | | | | -2608.11 | | |
| 3/30/15 | | -2505.29 | | Principal Adjustment | 7/1/09 | | -2505.29 | | | | | 102083.55 | | | | |
| 3/31/15 | | 1688.72 | | Unapplied Payment | 7/1/09 | | | | | | 1688.72 | | | | | 24695.37 |
| 3/31/15 | | -1688.72 | | Interest Adj - Prior Ye | 7/1/09 | | | -1688.72 | | | | | | | | |
| 3/31/15 | | -708.60 | -708.60 | Unapplied Payment | 7/1/09 | | | | | | -708.60 | | | | | 23986.77 |
| 3/31/15 | | -708.60 | -708.60 | Unapplied Payment | 7/1/09 | | | | | | -708.60 | | | | | 23278.17 |
| 3/31/15 | | -1397.99 | -1397.99 | Regular Payment | 7/1/09 | 20549.40 | -6862.92 | 6372.51 | | | | 108946.47 | | | | |
| 3/31/15 | | -708.60 | -708.60 | Unapplied Payment | 7/1/09 | | | | | | -708.60 | | | | | 22569.57 |
| 3/31/15 | | -218.19 | -218.19 | Regular Payment | 7/1/09 | | | | -218.19 | | | | | -2826.30 | | |
| 3/31/15 | | -1397.99 | -1397.99 | Regular Payment | 8/1/09 | 20549.40 | -843.27 | -554.72 | | | | 109789.74 | | | | |
| 3/31/15 | | -708.60 | -708.60 | Unapplied Payment | 7/1/09 | | | | | | -708.60 | | | | | 21860.97 |
| 3/31/15 | | -218.19 | -218.19 | Regular Payment | 7/1/09 | | | | -218.19 | | | | | -3044.49 | | |
| 3/31/15 | | -1397.99 | -1397.99 | Regular Payment | 9/1/09 | 20549.40 | -847.40 | -550.59 | | | | 110637.14 | | | | |
| 3/31/15 | | -708.60 | -708.60 | Unapplied Payment | 7/1/09 | | | | | | -708.60 | | | | | 21152.37 |
| 3/31/15 | | -218.19 | -218.19 | Regular Payment | 7/1/09 | | | | -218.19 | | | | | -3262.68 | | |
| 3/31/15 | | -1397.99 | -1397.99 | Regular Payment | 10/1/09 | 20549.40 | -851.55 | -546.44 | | | | 111488.69 | | | | |
| 3/31/15 | | -708.60 | -708.60 | Unapplied Payment | 7/1/09 | | | | | | -708.60 | | | | | 20443.77 |
| 3/31/15 | | -218.19 | -218.19 | Regular Payment | 7/1/09 | | | | -218.19 | | | | | -3480.87 | | |
| 3/31/15 | | -1397.99 | -1397.99 | Regular Payment | 11/1/09 | 20549.40 | -855.72 | -542.27 | | | | 112344.41 | | | | |
| 3/31/15 | | -708.60 | -708.60 | Unapplied Payment | 7/1/09 | | | | | | -708.60 | | | | | 19735.17 |
| 3/31/15 | | -218.19 | -218.19 | Regular Payment | 7/1/09 | | | | -218.19 | | | | | -3699.06 | | |
| 3/31/15 | | -1397.99 | -1397.99 | Regular Payment | 12/1/09 | 20549.40 | -859.91 | -538.08 | | | | 113204.32 | | | | |
| 3/31/15 | | -708.60 | -708.60 | Unapplied Payment | 7/1/09 | | | | | | -708.60 | | | | | 19026.57 |
| 3/31/15 | | -218.19 | -218.19 | Regular Payment | 7/1/09 | | | | -218.19 | | | | | -3917.25 | | |
| 3/31/15 | | -1397.99 | -1397.99 | Regular Payment | 7/1/09 | 20549.40 | -864.12 | -533.87 | | | | 114068.44 | | | | |
| 3/31/15 | | -708.60 | -708.60 | Unapplied Payment | 7/1/09 | | | | | | -708.60 | | | | | 18317.97 |
| 3/31/15 | | -218.19 | -218.19 | Regular Payment | 7/1/09 | | | | -218.19 | | | | | -4135.44 | | |

EXHIBIT E

**Mortgage Proof of Claim Attachment**

(12/15)

Case Number: 1812734

Debtor 1: LLC Schulte Properties

**Part 5: Loan Payment History from First Date of Default**

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/31/15 | | -1397.99 | -1397.99 | Regular Payment | 1/1/10 | 20549.40 | -868.35 | -529.64 | | | | 114936.79 | | | | |
| 3/31/15 | | -708.60 | -708.60 | Unapplied Payment | 7/1/09 | 20549.40 | | | | | -708.60 | | | | | 17609.37 |
| 3/31/15 | | -218.19 | -218.19 | Regular Payment | 7/1/09 | 20549.40 | | | -218.19 | | | 115809.39 | | -4353.63 | | |
| 3/31/15 | | -1397.99 | -1397.99 | Regular Payment | 2/1/10 | 20549.40 | -872.60 | -525.39 | | | | | | | | |
| 4/1/15 | 708.60 | | 708.60 | Regular Payment | 4/1/15 | 21258.00 | | | | | | | | | | |
| 4/1/15 | | | | Unapplied Adjust | 7/1/09 | | | | | | | | | | | |
| 4/16/15 | | 7535.65 | | Escrow Adjustment | 3/1/11 | | | | 7535.65 | | | | | 3182.02 | | |
| 4/16/15 | | -33606.95 | | Principal Adjustment | 3/1/11 | | -33606.95 | | | | | 149416.34 | | | | |
| 4/16/15 | | 1616.18 | 1616.18 | Regular Payment | 3/1/11 | 21258.00 | 911.81 | 486.18 | 218.19 | | | 148504.53 | | 3400.21 | | |
| 4/16/15 | | 1616.18 | 1616.18 | Regular Payment | 2/1/11 | 21258.00 | 907.37 | 490.62 | 218.19 | | | 147597.16 | | 3618.40 | | |
| 4/16/15 | | 1616.18 | 1616.18 | Regular Payment | 1/1/11 | 21258.00 | 902.95 | 495.04 | 218.19 | | | 146694.21 | | 3836.59 | | |
| 4/16/15 | | 1616.18 | 1616.18 | Regular Payment | 12/1/10 | 21258.00 | 898.55 | 499.44 | 218.19 | | | 145795.66 | | 4054.78 | | |
| 4/16/15 | | 1616.18 | 1616.18 | Regular Payment | 11/1/10 | 21258.00 | 894.17 | 503.82 | 218.19 | | | 144901.49 | | 4272.97 | | |
| 4/16/15 | | 1616.18 | 1616.18 | Regular Payment | 10/1/10 | 21258.00 | 889.81 | 508.18 | 218.19 | | | 144011.68 | | 4491.16 | | |
| 4/16/15 | | 1616.18 | 1616.18 | Regular Payment | 9/1/10 | 21258.00 | 885.48 | 512.51 | 218.19 | | | 143126.20 | | 4709.35 | | |
| 4/16/15 | | 1616.18 | 1616.18 | Regular Payment | 8/1/10 | 21258.00 | 881.16 | 516.83 | 218.19 | | | 142245.04 | | 4927.54 | | |
| 4/16/15 | | 1616.18 | 1616.18 | Regular Payment | 7/1/10 | 21258.00 | 876.87 | 521.12 | 218.19 | | | 141368.17 | | 5145.73 | | |
| 4/16/15 | | 1616.18 | 1616.18 | Regular Payment | 6/1/10 | 21258.00 | 872.60 | 525.39 | 218.19 | | | 140495.57 | | 5363.92 | | |
| 4/16/15 | | 1616.18 | 1616.18 | Regular Payment | 5/1/10 | 21258.00 | 868.35 | 529.64 | 218.19 | | | 139627.22 | | 5582.11 | | |
| 4/16/15 | | 1616.18 | 1616.18 | Regular Payment | 4/1/10 | 21258.00 | 864.12 | 533.87 | 218.19 | | | 138763.10 | | 5800.30 | | |
| 4/16/15 | | 1616.18 | 1616.18 | Regular Payment | 3/1/10 | 21258.00 | 859.91 | 538.08 | 218.19 | | | 137903.19 | | 6018.49 | | |
| 4/16/15 | | 1616.18 | 1616.18 | Regular Payment | 2/1/10 | 21258.00 | 855.72 | 542.27 | 218.19 | | | 137047.47 | | 6236.68 | | |
| 4/16/15 | | 1616.18 | 1616.18 | Regular Payment | 1/1/10 | 21258.00 | 851.55 | 546.44 | 218.19 | | | 136195.92 | | 6454.87 | | |
| 4/16/15 | | 1616.18 | 1616.18 | Regular Payment | 12/1/09 | 21258.00 | 847.40 | 550.59 | 218.19 | | | 135348.52 | | 6673.06 | | |
| 4/16/15 | | 1616.18 | 1616.18 | Regular Payment | 11/1/09 | 21258.00 | 843.27 | 554.72 | 218.19 | | | 134505.25 | | 6891.25 | | |
| 4/16/15 | | 1616.18 | 1616.18 | Regular Payment | 10/1/09 | 21258.00 | 839.16 | 558.83 | 218.19 | | | 133666.09 | | 7109.44 | | |
| 4/16/15 | | 1616.18 | 1616.18 | Regular Payment | 9/1/09 | 21258.00 | 835.08 | 562.91 | 218.19 | | | 132831.01 | | 7327.63 | | |
| 4/16/15 | | 1616.18 | 1616.18 | Regular Payment | 8/1/09 | 21258.00 | 831.01 | 566.98 | 218.19 | | | 132000.00 | | 7545.82 | | |
| 4/16/15 | | 0.36 | | Escrow Adjustment | 7/1/09 | | | | 0.36 | | | | | 7546.18 | | |
| 4/16/15 | | -0.36 | | Unapplied Adjust | 7/1/09 | | | | | | -0.36 | | | | | 17609.01 |
| 4/17/15 | | 708.60 | 708.60 | Regular Payment | 10/1/12 | 21258.00 | 170.93 | 537.67 | | | | 131829.07 | | | | |
| 4/17/15 | | 708.60 | 708.60 | Regular Payment | 9/1/12 | 21258.00 | 170.22 | 538.38 | | | | 131658.85 | | | | |
| 4/17/15 | | 708.60 | 708.60 | Regular Payment | 8/1/12 | 21258.00 | 169.51 | 539.09 | | | | 131489.34 | | | | |

**EXHIBIT E**

(12/15)

# Mortgage Proof of Claim Attachment

Case Number: 1812734

Debtor 1: LLC Schulte Properties

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/17/15 | 708.60 | 708.60 | 708.60 | Regular Payment | 7/1/12 | 21258.00 | 168.81 | 539.79 | | | | 131320.53 | | | | |
| 4/17/15 | 708.60 | 708.60 | 708.60 | Regular Payment | 6/1/12 | 21258.00 | 168.11 | 540.49 | | | | 131152.42 | | | | |
| 4/17/15 | 708.60 | 708.60 | 708.60 | Regular Payment | 5/1/12 | 21258.00 | 167.41 | 541.19 | | | | 130985.01 | | | | |
| 4/17/15 | 708.60 | 708.60 | 708.60 | Regular Payment | 4/1/12 | 21258.00 | 166.71 | 541.89 | | | | 130818.30 | | | | |
| 4/17/15 | 708.60 | 708.60 | 708.60 | Regular Payment | 3/1/12 | 21258.00 | 166.02 | 542.58 | | | | 130652.28 | | | | |
| 4/17/15 | 708.60 | 708.60 | 708.60 | Regular Payment | 2/1/12 | 21258.00 | 165.33 | 543.27 | | | | 130486.95 | | | | |
| 4/17/15 | 708.60 | 708.60 | 708.60 | Regular Payment | 1/1/12 | 21258.00 | 164.65 | 543.95 | | | | 130322.30 | | | | |
| 4/17/15 | 708.60 | 708.60 | 708.60 | Regular Payment | 12/1/11 | 21258.00 | 163.96 | 544.64 | | | | 130158.34 | | | | |
| 4/17/15 | 708.60 | 708.60 | 708.60 | Regular Payment | 11/1/11 | 21258.00 | 163.28 | 545.32 | | | | 129995.06 | | | | |
| 4/17/15 | 708.60 | 708.60 | 708.60 | Regular Payment | 10/1/11 | 21258.00 | 162.61 | 545.99 | | | | 129832.45 | | | | |
| 4/17/15 | 708.60 | 708.60 | 708.60 | Regular Payment | 9/1/11 | 21258.00 | 161.93 | 546.67 | | | | 129670.52 | | | | |
| 4/17/15 | 708.60 | 708.60 | 708.60 | Regular Payment | 8/1/11 | 21258.00 | 161.26 | 547.34 | | | | 129509.26 | | | | |
| 4/17/15 | 708.60 | 708.60 | 708.60 | Regular Payment | 7/1/11 | 21258.00 | 160.59 | 548.01 | | | | 129348.67 | | | | |
| 4/17/15 | 708.60 | 708.60 | 708.60 | Regular Payment | 6/1/11 | 21258.00 | 159.92 | 548.68 | | | | 129188.75 | | | | |
| 4/17/15 | 708.60 | 708.60 | 708.60 | Regular Payment | 5/1/11 | 21258.00 | 159.26 | 549.34 | | | | 129029.49 | | | | |
| 4/17/15 | 708.60 | 708.60 | 708.60 | Regular Payment | 4/1/11 | 21258.00 | 158.60 | 550.00 | | | | 128870.89 | | | | |
| 4/17/15 | | -18311.98 | | Unapplied Adjust | 3/1/11 | | | | | | -18311.98 | | | | | -702.97 |
| | 708.60 | | 708.60 | Regular Payment | 5/1/15 | 21966.60 | | | | | | | | | | |
| | 708.60 | | 708.60 | Regular Payment | 6/1/15 | 22675.20 | | | | | | | | | | |
| | 708.60 | | 708.60 | Regular Payment | 7/1/15 | 23383.80 | | | | | | | | | | |
| 7/16/15 | | -392.00 | | Insurance Premium Dis | 10/1/12 | | | | -392.00 | | | | | 7154.18 | | |
| 7/30/15 | | -353.04 | | Tax Bill 1 Disbursemer | 10/1/12 | | | | -353.04 | | | | | 6801.14 | | |
| | 708.60 | | 708.60 | Regular Payment | 8/1/15 | 24092.40 | | | | | | | | | | |
| 8/17/15 | | -3400.57 | | Escrow Disbursement | 11/1/12 | | | | -3400.57 | | | | | 3400.57 | | |
| | | | | Unapplied Adjust | 11/1/12 | | | | | | | | | | | |
| | 708.60 | | 708.60 | Regular Payment | 9/1/15 | 24801.00 | | | | | | | | | | |
| | | -15.00 | -15.00 | Property Pres | 11/1/12 | | | | | -15.00 | | | | | 15.00 | |
| | 708.60 | | 708.60 | Regular Payment | 10/1/15 | 25509.60 | | | | | | | | | | |
| | | -351.95 | | Tax Bill 2 Disbursemer | 10/7/15 | | | | -351.95 | | | | | 3048.62 | | |
| | | 351.95 | | Tax Refund Report | 11/1/12 | | | | 351.95 | | | | | 3400.57 | | |
| | 708.60 | | 708.60 | Regular Payment | 11/1/15 | 26218.20 | | | | | | | | | | |
| | 708.60 | | 708.60 | Regular Payment | 12/1/15 | 26926.80 | | | | | | | | | | |
| 12/16/15 | | -351.95 | | Tax Bill 3 Disbursemer | 12/31/15 | | | | -351.95 | | | | | 3048.62 | | |

EXHIBIT E

(12/15)

# Mortgage Proof of Claim Attachment

Case Number:  1812734

Debtor 1:  LLC Schulte Properties

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/7/16 | 708.60 | | | Regular Payment | 1/1/16 | 27635.40 | | | | | | | | | | |
| 1/7/16 | | | -15.00 | Property Pres | 11/1/12 | | | | | -15.00 | | | | | 30.00 | |
| 1/11/16 | | | -350.00 | Attorney Cost | 11/1/12 | | | | | -350.00 | | | | | 380.00 | |
| 1/19/16 | | | -200.00 | Attorney Cost | 11/1/12 | | | | | -200.00 | | | | | 580.00 | |
| 2/1/16 | 708.60 | | | Regular Payment | 2/1/16 | 28344.00 | | | | | | | | | | |
| 2/1/16 | | | -15.00 | Property Pres | 11/1/12 | | | | | -15.00 | | | | | 595.00 | |
| 2/8/16 | | -351.95 | | Tax Refund Report | 11/1/12 | | | | -351.95 | | | | | 2696.67 | | |
| 2/10/16 | | -351.95 | | Tax Bill 4 Disbursemen | 3/3/16 | | | | -351.95 | | | | | 2344.72 | | |
| 3/1/16 | 708.60 | | | Regular Payment | 3/1/16 | 29052.60 | | | | | | | | | | |
| 4/1/16 | 708.60 | | | Regular Payment | 4/1/16 | 29761.20 | | | | | | | | | | |
| 4/13/16 | | | -13.00 | Property Inspection | 11/1/12 | | | | | -13.00 | | | | | 608.00 | |
| 4/17/16 | | | -35.43 | Late Charge Assess | 4/1/16 | | | | | -35.43 | | | | | 643.43 | |
| 5/1/16 | 708.60 | | | Regular Payment | 5/1/16 | 30469.80 | | | | | | | | | | |
| 5/17/16 | | | -35.43 | Late Charge Assess | 5/1/16 | | | | | -35.43 | | | | | 678.86 | |
| 5/21/16 | | | -13.00 | Property Inspection | 11/1/12 | | | | | -13.00 | | | | | 691.86 | |
| 6/1/16 | 708.60 | | | Regular Payment | 6/1/16 | 31178.40 | | | | | | | | | | |
| 6/8/16 | | | -13.00 | Property Inspection | 11/1/12 | | | | | -13.00 | | | | | 704.86 | |
| 6/17/16 | | | -35.43 | Late Charge Assess | 6/1/16 | | | | | -35.43 | | | | | 740.29 | |
| 7/1/16 | 708.60 | | | Regular Payment | 7/1/16 | 31887.00 | | | | | | | | | | |
| 7/17/16 | | | -35.43 | Late Charge Assess | 7/1/16 | | | | | -35.43 | | | | | 775.72 | |
| 7/20/16 | | | -13.00 | Property Inspection | 11/1/12 | | | | | -13.00 | | | | | 788.72 | |
| 7/25/16 | | -354.46 | | Tax Bill 1 Disbursemer | 8/19/16 | | | | -354.46 | | | | | 1990.26 | | |
| 8/1/16 | 708.60 | | | Regular Payment | 8/1/16 | 32595.60 | | | | | | | | | | |
| 8/8/16 | | -404.00 | | Insurance Premium Dis | 8/14/16 | | | | -404.00 | | | | | 1586.26 | | |
| 8/8/16 | | | -35.43 | Late Charge Assess | 8/1/16 | | | | | -35.43 | | | | | 824.15 | |
| 8/8/16 | | | -13.00 | Property Pres | 11/1/12 | | | | | -13.00 | | | | | 837.15 | |
| 9/1/16 | 708.60 | | | Regular Payment | 9/1/16 | 33304.20 | | | | | | | | | | |
| 9/8/16 | | | -13.00 | Property Pres | 11/1/12 | | | | | -13.00 | | | | | 850.15 | |
| 9/8/16 | | -457.50 | -457.50 | Foreclosure Trustee | 11/1/12 | | | | | -457.50 | | | | | 1307.65 | |
| 9/8/16 | | -352.65 | | Tax Bill 2 Disbursemen | 10/7/16 | | | | -352.65 | | | | | 1233.61 | | |
| 9/1/16 | | | -35.43 | Late Charge Assess | 9/1/16 | | | | | -35.43 | | | | | 1343.08 | |
| 10/1/16 | 708.60 | | | Regular Payment | 10/1/16 | 34012.80 | | | | | | | | | | |
| 10/12/16 | | | 70.86 | Late Charge Waive | 11/1/12 | | | | | 70.86 | | | | | 1272.22 | |

Offical Form 410A  Mortgage Proof of Claim Attachment

EXHIBIT E

# Mortgage Proof of Claim Attachment

(12/15)

Case Number: 1812734

Debtor 1: LLC Schulte Properties

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/17/16 | | | -35.43 | Late Charge Assess | 10/1/16 | | | | | | | | | | 1307.65 | |
| 10/24/16 | | | -13.00 | Property Inspection | 11/1/16 | | | | | | | | | | 1320.65 | |
| 11/17/16 | 708.60 | | 708.60 | Regular Payment | 11/1/16 | 34721.40 | | | | | | | | | | |
| 11/17/16 | | | -35.43 | Late Charge Assess | 11/1/16 | | | | | -35.43 | | | | | 1356.08 | |
| 11/21/16 | | | -13.00 | Property Inspection | 11/1/12 | | | | | -13.00 | | | | | 1369.08 | |
| 12/14/16 | 708.60 | | 708.60 | Regular Payment | 12/1/16 | 35430.00 | | | | | | | | | | |
| 12/14/16 | | -352.65 | | Tax Bill 3 Disbursement | 12/31/16 | | | | -352.65 | | | | | 880.96 | | |
| 12/14/16 | | | 70.86 | Late Charge Waive | 11/1/12 | | | | | 70.86 | | | | | 1298.22 | |
| 12/15/16 | | | -13.00 | Property Inspection | 11/1/12 | | | | | -13.00 | | | | | 1311.22 | |
| 12/17/16 | | | -35.43 | Late Charge Assess | 12/1/16 | | | | | -35.43 | | | | | 1346.65 | |
| 12/23/16 | | | 35.43 | Late Charge Waive | 11/1/12 | | | | | 35.43 | | | | | 1311.22 | |
| 1/3/17 | 708.60 | | 708.60 | Regular Payment | 1/1/17 | 36138.60 | | | | | | | | | | |
| 1/3/17 | | | -55.00 | FC Costs | 11/1/12 | | | | | -55.00 | | | | | 1366.22 | |
| 1/12/17 | | | -13.00 | Property Inspection | 11/1/12 | | | | | -13.00 | | | | | 1379.22 | |
| 1/17/17 | | | -35.43 | Late Charge Assess | 1/1/17 | | | | | -35.43 | | | | | 1414.65 | |
| 2/2/17 | 708.60 | | 708.60 | Regular Payment | 2/1/17 | 36847.20 | | | | | | | | | | |
| 2/2/17 | | | -305.00 | Foreclosure Trustee | 11/1/12 | | | | | -305.00 | | | | | 1719.65 | |
| 2/2/17 | | | -420.00 | FC Costs | 11/1/12 | | | | | -420.00 | | | | | 2139.65 | |
| 2/2/17 | | | -75.00 | FC Costs | 11/1/12 | | | | | -75.00 | | | | | 2214.65 | |
| 2/2/17 | | | -144.90 | Certified Mail Cost | 11/1/12 | | | | | -144.90 | | | | | 2359.55 | |
| 2/2/17 | | | -43.00 | Recording Cost | 11/1/12 | | | | | -43.00 | | | | | 2402.55 | |
| 2/2/17 | | | -222.00 | Recording Cost | 11/1/12 | | | | | -222.00 | | | | | 2624.55 | |
| 2/14/17 | | -352.65 | | Tax Bill 4 Disbursement | 3/3/17 | | | | -352.65 | | | | | 528.31 | | |
| 2/14/17 | | | -13.00 | Property Inspection | 11/1/12 | | | | | -13.00 | | | | | 2637.55 | |
| 2/14/17 | | | -35.43 | Late Charge Assess | 2/1/17 | | | | | -35.43 | | | | | 2672.98 | |
| 3/3/17 | 708.60 | | 708.60 | Regular Payment | 3/1/17 | 37555.80 | | | | | | | | | | |
| 3/3/17 | | | -13.00 | Property Inspection | 11/1/12 | | | | | -13.00 | | | | | 2685.98 | |
| 4/3/17 | 708.60 | | 708.60 | Regular Payment | 4/1/17 | 38264.40 | | | | | | | | | | |
| 4/3/17 | | | -13.00 | Property Inspection | 11/1/12 | | | | | -13.00 | | | | | 2698.98 | |
| 5/1/17 | 708.60 | | 708.60 | Regular Payment | 5/1/17 | 38973.00 | | | | | | | | | | |
| 5/1/17 | | | -13.00 | Property Inspection | 11/1/12 | | | | | -13.00 | | | | | 2711.98 | |
| 6/6/17 | 708.60 | | 708.60 | Regular Payment | 6/1/17 | 39681.60 | | | | | | | | | | |
| 6/6/17 | | | -310.00 | BPO/Apstsl Cost | 11/1/12 | | | | | -310.00 | | | | | 3021.98 | |

**EXHIBIT E**

# Mortgage Proof of Claim Attachment

(12/15)

Case Number: 1812734

Debtor 1: LLC Schulte Properties

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, Int & ese past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/7/17 | | | -13.00 | Property Inspection | 11/1/12 | | | | | -13.00 | | | | | 3034.98 | |
| 6/26/17 | | | -130.56 | Certified Mail Cost | 11/1/12 | | | | | -130.56 | | | | | 3165.54 | |
| 6/26/17 | | | -120.00 | FC Costs | 11/1/12 | | | | | -120.00 | | | | | 3285.54 | |
| 6/26/17 | | | -330.00 | FC Costs | 11/1/12 | | | | | -330.00 | | | | | 3615.54 | |
| 6/26/17 | | | -18.00 | Recording Cost | 11/1/12 | | | | | -18.00 | | | | | 3633.54 | |
| 7/10/17 | 708.60 | | | Regular Payment | 7/17 | 40390.20 | | | | | | | | | | |
| 7/10/17 | | | -13.00 | Property Inspection | 11/1/12 | | | | | -13.00 | | | | | 3646.54 | |
| 7/11/17 | | | -7.20 | Certified Mail Cost | 11/1/12 | | | | | -7.20 | | | | | 3653.74 | |
| 7/18/17 | | -417.00 | | Insurance Premium Dis | 8/14/17 | | | | -417.00 | | | | | 111.31 | | |
| 8/1/17 | 708.60 | | | Regular Payment | 8/1/17 | 41098.80 | | | | | | | | | | |
| 8/8/17 | | -363.62 | | Tax Bill 1 Disbursemen | 8/19/17 | | | | -363.62 | | | | | -252.31 | | |
| 8/9/17 | | | -13.00 | Property Inspection | 11/1/12 | | | | | -13.00 | | | | | 3666.74 | |
| 8/10/17 | | 417.00 | | Insurance Refund | 11/1/12 | | | | 417.00 | | | | | 164.69 | | |
| 8/25/17 | | | -350.00 | Appraisal | 11/1/12 | | | | | -350.00 | | | | | 4016.74 | |
| 9/1/17 | 708.60 | | | Regular Payment | 9/1/17 | 41807.40 | | | | | | | | | | |
| 9/7/17 | | | -13.00 | Property Inspection | 11/1/12 | | | | | -13.00 | | | | | 4029.74 | |
| 9/20/17 | | -361.82 | | Tax Bill 2 Disbursemen | 10/7/17 | | | | -361.82 | | | | | -197.13 | | |
| 10/1/17 | 708.60 | | | Regular Payment | 10/1/17 | 42516.00 | | | | | | | | | | |
| 10/11/17 | | | -13.00 | Property Inspection | 11/1/12 | | | | | -13.00 | | | | | 4042.74 | |
| 11/1/17 | 708.60 | | | Regular Payment | 11/1/17 | 43224.60 | | | | | | | | | | |
| 11/13/17 | | | -13.00 | Property Inspection | 11/1/12 | | | | | -13.00 | | | | | 4055.74 | |
| 12/1/17 | 708.60 | | | Regular Payment | 12/1/17 | 43933.20 | | | | | | | | | | |
| 12/13/17 | | -361.82 | | Tax Bill 3 Disbursemen | 12/31/17 | | | | -361.82 | | | | | -558.95 | | |
| 12/13/17 | | | -13.00 | Property Inspection | 11/1/12 | | | | | -13.00 | | | | | 4068.74 | |
| 1/1/18 | | 147.27 | | Int on Escrow Pmt | 11/1/12 | | | | 147.27 | | | | | -411.68 | | |
| 1/1/18 | 708.60 | | | Regular Payment | 1/1/18 | 44641.80 | | | | | | | | | | |
| 2/1/18 | 708.60 | | | Regular Payment | 2/1/18 | 45350.40 | | | | | | | | | | |
| 2/13/18 | | | -13.00 | Property Inspection | 11/1/12 | | | | | -13.00 | | | | | 4081.74 | |
| 3/1/18 | | -361.82 | | Tax Bill 4 Disbursemen | | | | | -361.82 | | | | | -773.50 | | |
| 3/3/18 | 708.60 | | | Regular Payment | 3/3/18 | 46059.00 | | | | | | | | | | |
| 3/13/18 | | | -13.00 | Property Inspection | 11/1/12 | | | | | -13.00 | | | | | 4094.74 | |
| 3/17/18 | | | -35.43 | Late Charge Assess | 3/1/18 | | | | | -35.43 | | | | | 4130.17 | |
| 4/1/18 | 708.60 | | | Regular Payment | 4/1/18 | 46767.60 | | | | | | | | | | |

EXHIBIT E

(12/15)

# Mortgage Proof of Claim Attachment

Case Number: 1812734

Debtor 1: LLC Schulte Properties

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/17/18 | | | -35.43 | Late Charge Assess | 4/1/18 | | | | | -35.43 | -35.43 | | | | 4165.60 | |
| 5/2/18 | 708.60 | 708.60 | 708.60 | Regular Payment | 5/1/18 | 47476.20 | | | | | | | | | | |
| 5/2/18 | | | -1525.00 | Foreclosure Trustee | 11/1/12 | | | | | -1525.00 | | | | | 5690.60 | |
| 5/2/18 | | | -13.00 | Property Inspection | 11/1/12 | | | | | -13.00 | | | | | 5703.60 | |
| 5/10/18 | | | -40.00 | Recording Cost | 11/1/12 | | | | | -40.00 | | | | | 5743.60 | |
| 5/10/18 | | | -2.82 | Certified Mail Cost | 11/1/12 | | | | | -2.82 | | | | | 5746.42 | |
| 5/10/18 | | | -792.00 | FC Costs | 11/1/12 | 47476.20 | | | | -792.00 | | 128870.89 | | -773.50 | 6538.42 | -702.97 |

EXHIBIT E

## Exhibit 'A'

Case No.:          1812734

Debtors:           LLC Schulte Properties                                    SS No.

Address:           1392 Echo Falls Ave

                   Las Vegas                    NV                   89123

Loan No:           6861

On filing petition 05/10/2018 debtor(s) owed claimant $128,870.89 plus interest on arrearages at   5.000000%   per annum (rate at petition) from 11/01/2012.

ARREARAGES owed as of 05/10/2018, the date of filing of the petition.

| From Date | Through Date | Type of Charge | # | Unit Charge | Total |
|---|---|---|---|---|---|
| 11/01/2012 | 05/01/2018 | Payment @ 5% | 67 | $708.60 | $47,476.20 |
| | | Late Charge | | | $283.44 |
| | | Attorney Cost | | | $550.00 |
| | | FC Costs | | | $1,792.00 |
| | | Foreclosure Trustee | | | $2,287.50 |
| | | BPO/Aprsl Cost | | | $310.00 |
| | | Recording Cost | | | $323.00 |
| | | Property Inspection | | | $286.00 |
| | | Appraisal | | | $350.00 |
| | | Certified Mail Cost | | | $285.48 |
| | | Property Pres | | | $71.00 |
| | | Escrow Deficiency | | | $773.50 |
| | | Escrow Shortage | | | $425.84 |
| | | Unapplied | | | ($702.97) |
| | | | | Subtotal | **$54,510.99** |
| | | | | **Total** | **$54,510.99** |

The above figures represent the delinquency at the time of filing and do not reflect payments received after the date of filing of the bankruptcy.

Late charges accrue to the account when payments are received 16 days past the payment due date.

Loan agreements that provided for interest calculated at a daily simple rate will be reset to reflect a standard amortization rate during the pendency of your current bankruptcy.

EXHIBIT E

## Exhibit 'A1'

Case No.:        1812734

Debtors:         LLC Schulte Properties                          SS No.

Address:         1392 Echo Falls Ave

                 Las Vegas              NV               89123

Loan No:         6861

On filing petition  05/10/2018  debtor(s) owed claimant total debt of $171,520.96.

The Total Debt owed at petition:

| | |
|---|---:|
| Principal Balance | $128,870.89 |
| Interest | $36,041.12 |
| Late Charge | $283.44 |
| Attorney Cost | $550.00 |
| FC Costs | $1,792.00 |
| Foreclosure Trustee | $2,287.50 |
| BPO/Aprsl Cost | $310.00 |
| Recording Cost | $323.00 |
| Property Inspection | $286.00 |
| Appraisal | $350.00 |
| Certified Mail Cost | $285.48 |
| Property Pres | $71.00 |
| Escrow Deficiency | $773.50 |
| Unapplied | ($702.97) |

**Total Debt:**                          **$171,520.96**

The above figures represent the owed at the time of filing and do not reflect payments received after the date of filing of the bankruptcy.

Shellpoint Mortgage Servicing services the underlying mortgage loan and note for the property referenced in this proof of claim for BANK OF NEW YORK AS TRUSTEE FOR CWALT2004-28CB. In the event the automatic stay in this case is modified, this case dismisses, and/or the debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC, ALTERNATIVE LOAN TRUST  2004-28CB, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2004-28CB .

Noteholder, directly or through an agent, has possession of the promissory note. The promissory note is either made payable to Noteholder or has been duly endorsed. Noteholder is the original mortgagee or beneficiary or the assignee of the security instrument for the referenced loan.

EXHIBIT E



**Shellpoint Mortgage Servicing**

55 Beattie Place
Suite 110
Greenville, SC  29601
For Inquiries:  (800) 365-7107

| | |
|---|---|
| Analysis Date: | May 10, 2018 |
| Loan: | ...861 |
| Property Address: | |
| 1392 Echo Falls Ave | |
| Las Vegas, NV  89123 | |

MELANI SCHULTE
9811 W. Charleston Blvd
Ste 2-351
Las Vegas NV  89117

### Annual Escrow Account Disclosure Statement - Account History

The following is an overview of your escrow account with Shellpoint Mortgage Servicing. It contains  the history of escrow payments made on your behalf in the prior year, and a snapshot of the anticipated disbursements for the coming year. Any potential adjustments due to increases or decreases with your escrow items may affect your monthly escrow payment. If your escrow payment increases, your monthly payment will also increase. If the escrow payment decreases, your mortgage payment will decrease.

| Payment Information | Contractual | Effective Jun 01, 2018 |
|---|---|---|
| P & I Pmt: | $708.60 | $708.60 |
| Escrow Pmt: | $0.00 | $160.57 |
| Other Funds Pmt: | $0.00 | $0.00 |
| Asst. Pmt (-): | $0.00 | $0.00 |
| Reserve Acct Pmt: | $0.00 | $0.00 |
| Total Payment: | $708.60 | $869.17 |

| Prior Esc Pmt | March 01, 2018 |
|---|---|
| P & I Pmt: | $708.60 |
| Escrow Pmt: | $155.51 |
| Other Funds Pmt: | $0.00 |
| Asst. Pmt (-): | $0.00 |
| Resrv Acct Pmt: | $0.00 |
| Total Payment: | $864.11 |

| Escrow Balance Calculation | |
|---|---|
| Due Date: | Jan 01, 2013 |
| Escrow Balance: | $0.00 |
| Anticipated Pmts to Escrow: | $0.00 |
| Anticipated Pmts from Escrow (-): | $0.00 |
| Anticipated Escrow Balance: | $0.00 |

| Shortage/Overage Information | Effective Jun 01, 2018 |
|---|---|
| Upcoming Total Annual Bills | $1,926.85 |
| Required Cushion | $0.00 |
| Required Starting Balance | $425.84 |
| Escrow Shortage | ($425.84) |
| Surplus | $0.00 |

**Cushion Calculation:** Because Shellpoint Mortgage Servicing does not set your tax amounts or insurance premiums, your escrow balance contains a cushion of $0.00. A cushion is an additional amount of funds held in your escrow in order to prevent the balance from becoming overdrawn when an increase in the disbursement amount occurs. Your lowest monthly balance should not be below $321.14 or 1/6 of the anticipated payment from the account.

This is a statement of actual activity in your escrow account from Mar 2018 to May 2018.  Last year's anticipated activity (payments to and from your escrow account) is next to the actual activity.

| Date | Payments to Escrow Anticipated | Actual | Payments From Escrow Anticipated | Actual | Description | Escrow Balance Required | Actual |
|---|---|---|---|---|---|---|---|
| | | | | | Starting Balance | $310.98 | ($773.50) |
| Mar 2018 | $155.51 | | $361.82 | | * County Tax | $104.67 | ($773.50) |
| Apr 2018 | $155.51 | | | | * | $260.18 | ($773.50) |
| May 2018 | $155.51 | | | | * | $415.69 | ($773.50) |
| May 2018 | | | | | Anticipated Transactions | $415.69 | ($773.50) |
| | P | | | | | | ($773.50) |
| | $466.53 | $0.00 | $361.82 | $0.00 | | | |

An asterisk (*) indicates a difference from a previous estimate either in the date or the amount.  If you want a further explanation, please call our toll-free number.

P - The letter (P) beside an amount indicates that the payment or disbursement has not yet occurred but is estimated to occur as shown.

EXHIBIT E

For Inquiries: (800) 365-7107

| | | | | Analysis Date: | | May 10, 2018 |
| | | | | Loan: | 6861 | |

**Annual Escrow Account Disclosure Statement - Projections for Coming Year**

This is an estimate of activity in your escrow account during the coming year based on payments anticipated to be made to and from your account.

| Date | Anticipated Payments | | | Escrow Balance | |
| | To Escrow | From Escrow | Description | Anticipated | Required |
|------|-----------|-------------|-------------|-------------|----------|
| | | | Starting Balance | $0.00 | $425.84 |
| Jun 2018 | $160.57 | | | $160.57 | $586.41 |
| Jul 2018 | $160.57 | | | $321.14 | $746.98 |
| Aug 2018 | $160.57 | $417.00 | Hazard | $64.71 | $490.55 |
| Aug 2018 | | $378.79 | County Tax | ($314.08) | $111.76 |
| Sep 2018 | $160.57 | | | ($153.51) | $272.33 |
| Oct 2018 | $160.57 | $377.02 | County Tax | ($369.96) | $55.88 |
| Nov 2018 | $160.57 | | | ($209.39) | $216.45 |
| Dec 2018 | $160.57 | $377.02 | County Tax | ($425.84) | $0.00 |
| Jan 2019 | $160.57 | | | ($265.27) | $160.57 |
| Feb 2019 | $160.57 | | | ($104.70) | $321.14 |
| Mar 2019 | $160.57 | $377.02 | County Tax | ($321.15) | $104.69 |
| Apr 2019 | $160.57 | | | ($160.58) | $265.26 |
| May 2019 | $160.57 | | | ($0.01) | $425.83 |
| | $1,926.84 | $1,926.85 | | | |

(Please keep this statement for comparison with the actual activity in your account at the end of the escrow accounting computation year.)

Your ending balance from the last month of the account history (escrow balance anticipated) is ($0.00). Your starting
balance (escrow balance required) according to this analysis should be $425.84. This means you have a shortage of $425.84.
This shortage may be collected from you over a period of 12 months or more unless the shortage is less than 1 month's
deposit, in which case we have the additional option of requesting payment within 30 days. We have decided to do nothing.

We anticipate the total of your coming year bills to be $1,926.85. We divide that amount by the number of payments expected during the coming year
to obtain your escrow payment.

| New Escrow Payment Calculation | |
|--------------------------------|---------|
| Unadjusted Escrow Payment | $160.57 |
| Surplus Reduction: | $0.00 |
| Shortage Installment: | $0.00 |
| Rounding Adjustment Amount: | $0.00 |
| Escrow Payment: | $160.57 |

TO THE EXTENT YOUR OBLIGATION HAS BEEN DISCHARGED, DISMISSED OR IS SUBJECT TO AN AUTOMATIC STAY OF BANKRUPTCY ORDER UNDER TITLE 11 OF THE UNITED STATES CODE, THIS
NOTICE IS FOR COMPLIANCE AND INFORMATION PURPOSES ONLY AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR ANY ATTEMPT TO COLLECT ANY SUCH OBLIGATION.

EXHIBIT E

Shellpoint Mortgage Servicing
PO Box 10826

Greenville, SC  29603-0826

Phone Number:        (800) 365-7107
Fax:                 (866) 467-1137

Email:     mtgbk@shellpointmtg.com

---

RE: Debtor 1     Schulte Properties, LLC
    Debtor 2

Case No:    1812734

PROOF OF SERVICE

I certify that a copy of the foregoing documents were served upon the following persons electronically or by mail via the U.S. Postal Service, postage prepaid or by personal delivery, at their scheduled addresses on this day, 9/12/2018.


District of Nevada, Las Vegas Division
300 Las Vegas Blvd. South
Las Vegas, NV  89101

Matthew L. Johnson
8831 West Sahara Ave
Las Vegas, NV  89117


/s/ Barbara Lebiedziewicz

EXHIBIT E

After Recorded Return To:                 I

Shellpoint Mortgage Servicing            I

75 Beattie Place                          I

Greenville, SC 29601                      I

Attention:                                I

> ‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖ 2015073111
> P/ATTY    Book: DE 2473 Page: 2733 - 2735     3 Pgs
> September 18, 2015  01:18:49 PM
> Rec: $15.00
> FILED IN GREENVILLE COUNTY, SC *Timothy J Nanney*

## LIMITED POWER OF ATTORNEY

**KNOW ALL PERSONS BY THESE PRESENTS:**

THAT, BANK OF AMERICA, N.A., a national banking association located at 7105 Corporate Drive, Plano, TX 75024 ("Seller"),[1] by these presents does hereby make, constitute and appoint New Penn Financial, LLC dba Shellpoint Mortgage Servicing, a Delaware limited liability company, located at 75 Beattie Place, Greenville, SC 29601 ("Servicer"), Seller's true and lawful attorney-in-fact, and hereby grants it authority and power to take, through its duly authorized officers, the Actions (as such term is defined herein) in Seller's name, place and stead. This limited power of attorney ("Limited Power of Attorney") is given in connection with, and relates solely to that certain Sale of Servicing Rights and Interim Servicing for Certain Mortgage Loans Letter dated as of August 3, 2015, between Seller and Servicer, under the terms of which Seller sold to Servicer the servicing rights to certain mortgage loans (such loans, the "Loans"). Each of the Loans comprises a promissory note evidencing a right to payment and performance secured by a security interest or other lien on real property evidenced by one or more mortgages, deeds of trust, deeds to secure debt or other forms of security instruments (each, a "Mortgage"). The parties agree that this Limited Power of Attorney is coupled with an interest.

As used above, the term "Actions" shall mean and be limited to the following acts, in each case only with respect to one or another of the Loans and only as mandated or permitted by federal, state or local laws or other legal requirements or restrictions:

1. Execute or file assignments of mortgages, or of any beneficial interest in a Mortgage;

2. Execute or file reconveyances, deeds of reconveyance or releases or satisfactions of mortgage or similar instruments releasing the lien of a Mortgage;

3. Correct or otherwise remedy any errors or deficiencies contained in any transfer or reconveyance documents provided or prepared by Seller or a prior transferor, including, but not limited to note indorsements;

4. Indorse all checks, drafts and/or other negotiable instruments made payable to Seller as payments by borrowers in connection with the Loans;

---

[1] This Limited Power of Attorney is intended to cover Actions, as such term is defined herein, taken in the name of: Bank of America, N.A.; or Bank of America, N.A., as successor by merger to BAC Home Loans Servicing LP formerly known as Countrywide Home Loans Servicing LP.

LIMITED POWER OF ATTORNEY TO NEW PENN FINANCIAL, LLC dba SHELLPOINT MORTGAGE SERVICING

THIS INSTRUMENT PREPARED BY AMIE ELDRED 7315 S DURANGO DRIVE, LAS VEGAS, NV 89113

EXHIBIT E

5. Execute or file quitclaim deeds or, only where necessary and appropriate, special warranty deeds or other deeds causing the transfer of title to Servicer or a third party, in respect of property acquired through a foreclosure or deed-in-lieu of foreclosure ("REO Property");

6. Execute and deliver documentation with respect to the marketing and sale of REO Property, including, without limitation: listing agreements; purchase and sale agreements; escrow instructions; HUD-1 settlement statements; and any other document necessary to effect the transfer of REO Property;

7. Execute or file any documents necessary and appropriate to substitute the creditor or foreclosing party in a bankruptcy or foreclosure proceeding in respect of any of the Loans;

*provided, however*, that nothing herein shall permit Servicer to commence, continue, or otherwise prosecute or pursue any foreclosure proceedings in the name of Seller. All indorsements executed pursuant to this Limited Power of Attorney shall contain the words "without recourse," and unless the law requires otherwise, all other documents of transfer executed pursuant to this Limited Power of Attorney shall contain the following sentence: "This [*insert document title*] is made without recourse to or against [*insert name of entity in whose name the Action is taken*] or Bank of America, N.A., and without representation or warranty, express or implied, by [*insert name of entity in whose name the Action is taken*] or Bank of America, N.A."

With respect to the Actions, Seller gives to said attorney-in-fact full power and authority to execute such instruments and to do and perform all and every act and thing requisite, necessary and proper to carry into effect the power or powers granted by or under this Limited Power of Attorney as fully, to all intents and purposes, as the undersigned might or could do, and hereby does ratify and confirm all that said attorney-in-fact shall lawfully do or cause to be done by authority hereof.

Nothing contained herein shall be construed to grant Servicer the power to (i) initiate or defend any suit, litigation, or proceeding in the name of Seller or be construed to create a duty of Seller to initiate or defend any suit, litigation, or proceeding in the name of Servicer, (ii) incur or agree to any liability or obligation in the name of or on behalf of Seller, or (iii) execute any document or take any action on behalf of, or in the name, place, or stead of, Seller, except as provided herein. This Limited Power of Attorney is entered into and shall be governed by the laws of the State of New York without regard to conflicts of law principles of such state.

*[Remainder of page intentionally left blank]*

EXHIBIT E

**IN WITNESS WHEREOF**, Bank of America, N.A. has executed this Limited Power of Attorney this 3rd day of September, 2015.

BANK OF AMERICA, N.A.

By:

Name: Debra J. Rhodes

Title: Senior Vice President

Witness:

Name: Patricia S. Wittmeyer

Title: Assistant Vice President

Witness:

Name: Mary A. Ritchie

Title: Officer

STATE OF FLORIDA    :
                    : ss.
COUNTY OF DUVAL     :

This instrument was acknowledged before me on September 3, 2015 by Debra J. Rhodes, personally known to me to be the Senior Vice President of Bank of America, N.A., a national banking association, on behalf of said national banking association.

Notary Public

My commission expires: 9/14/18

MARGARET DONNELLY
MY COMMISSION # FF 154706
EXPIRES: September 14, 2018
Bonded Thru Budget Notary Services

EXHIBIT E

EXECUTION COPY

CWALT, INC.,
Depositor

COUNTRYWIDE HOME LOANS, INC.,
Seller

PARK GRANADA LLC,
Seller

COUNTRYWIDE HOME LOANS SERVICING LP,
Master Servicer

and

THE BANK OF NEW YORK,
Trustee

POOLING AND SERVICING AGREEMENT
Dated as of November 1, 2004

ALTERNATIVE LOAN TRUST 2004-28CB

MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2004-28CB

NY1 5625606v7

EXHIBIT E

Prepared by: JEANETTE HUTSON

LOAN #:

# NOTE

OCTOBER 14, 2004             LAS VEGAS              NEVADA
[Date]                        [City]                      [State]

1392 ECHO FALLS AVENUE, LAS VEGAS, NV 89123
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 167,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
COUNTRYWIDE HOME LOANS, INC.
I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.875 %.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the FIRST day of each month beginning on DECEMBER 01, 2004 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on NOVEMBER 01, 2019 I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.
(B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $ 1,397.99

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment .

(B) Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP MORTGAGE FORMS - (800)521-7291
Initials _____

-6N (0207).01    CHL (03/03)(d)    Page 1 of 2    Form 3200 1/01

EXHIBIT E

LOAN #:

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

The Bank of New York Mellon f/k/a The Bank of New York
as Trustee for the Certificateholders CWALT, Inc.
Asset-Backed Certificates, Series 2004-28CB

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC

BY

David A. Spector
Managing Director

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
MELANI SCHULTE                    -Borrower                                            -Borrower

_____ (Seal)          _____ (Seal)
                                  -Borrower                                            -Borrower

*[Sign Original Only]*

-5N (0207).01    CHL (03/03)          Page 2 of 2          Form 3200 1/01

**EXHIBIT E**

Note Allonge

Borrower: MELANI SCHULTE, A MARRIED WOMAN AS HER SOLE SEPARATE
PROPERTY
Property Address: 1392 Echo Falls Ave, Las Vegas, NEVADA 89123
Loan Amount: $167,000.00
Investor Number:

For the purpose of endorsement of the attached Note, this Allonge is affixed and becomes a permanent part of said
Note.

Pay to the order of:

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE
CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2004-28CB, MORTGAGE PASS-
THROUGH CERTIFICATES, SERIES 2004-28CB, without recourse

BAC HOME LOANS SERVICING, LP F/K/A COUNTRYWIDE HOME LOANS SERVICING, LP BY NEW
PENN FINANCIAL, LLC, D/B/A SHELLPOINT MORTGAGE SERVICING AS ATTORNEY IN FACT

By:
Name:   CYNTHIA M. BROCK
Title:    MANAGER

**EXHIBIT E**



Inst #: 20170530-0000542
Fees: $17.00 N/C Fee: $0.00
RPTT: $0.00 Ex: #009
05/30/2017 08:54:32 AM
Receipt #: 3096423
Requestor:
SCHULTE PROPERTIES LLC
Recorded By: RNS  Pgs: 2
**DEBBIE CONWAY**
**CLARK COUNTY RECORDER**

**RECORDING REQUESTED BY:**
MELANI SCHULTE
**When Recorded Mail Document
and Tax Statement To:**
SCHULTE PROPERTIES LLC
9811 W. Charleston Blvd #2-351
Las Vegas, NV 89117

APN: 177-26-211-146
ADDRESS: 1392 Echo Falls Ave., Las Vegas, NV 89183

## GRANT, BARGAIN, SALE DEED

**THIS INDENTURE WITNESSETH:** That, **MELANI SCHULTE , a single unmarried woman, as
her sole and separate property**

**In Consideration Of $10.00 and other VALUABLE CONSIDERATION, the receipt of which is
hereby acknowledged,** do(es) hereby GRANT, BARGAIN, SELL and CONVEY to
**SCHULTE PROPERTIES LLC , a Nevada Limited Liability Company**

All that real property situated in Clark County, State of Nevada, bounded and described as follows:

Lot 146 in Block 2 of Spencer/Pyle II as shown by map thereof on file in Book 86 of Plats, Page 43
in the Office of the County Recorder of Clark County, Nevada.

SUBJECT TO:   1.   Taxes for the current fiscal year.
              2.   Covenants, Conditions, Reservations, Rights, Rights of Way and Easements
                   now of record.

Together with all and singular tenements, hereditaments and appurtenances thereunto belonging or
in anywise appertaining.

DATED: May 30, 2017

STATE OF NEVADA
COUNTY OF CLARK

This instrument was acknowledged before
me on  5/30/17
by Melani Schulte

Signature
                              Notary Public
My Commission Expires: 10/31/18

MELANI SCHULTE

Amberlea Davis
Notary Public
No: 14-14876-1 Exp 10/31/2018

Description: Clark,NV Document-Year.Date.DocID 2017.530.542 Page: 1 of 2
Order: 444 Comment:

**EXHIBIT E**

**STATE OF NEVADA**
**DECLARATION OF VALUE**

1. Assessor Parcel Number(s)
   a. *177-26-211-146*
   b. _____
   c. _____
   d. _____

2. Type of Property:

   | | | | |
   |---|---|---|---|
   | a.☐ | Vacant Land | b.☑ | Single Fam. Res. |
   | c.☐ | Condo/Twnhse | d.☐ | 2-4 Plex |
   | e.☐ | Apt. Bldg | f.☐ | Comm'l/Ind'l |
   | g.☐ | Agricultural | h.☐ | Mobile Home |
   | ☐ | Other | | |

   FOR RECORDERS OPTIONAL USE ONLY
   Book_____ Page:_____
   Date of Recording: _____
   Notes:

3. a. Total Value/Sales Price of Property        $ *188,566*
   b. Deed in Lieu of Foreclosure Only (value of property (                    )
   c. Transfer Tax Value:                         $ *0*
   d. Real Property Transfer Tax Due              $ *0*

4. **If Exemption Claimed:**
   a. Transfer Tax Exemption per NRS 375.090, Section *9*
   b. Explain Reason for Exemption: *TRANSFER TO A BUSINESS ENTITY OF WHICH GRANTOR IS 100% OWNER*

5. Partial Interest: Percentage being transferred: _____ %

The undersigned declares and acknowledges, under penalty of perjury, pursuant to NRS 375.060
and NRS 375.110, that the information provided is correct to the best of their information and belief,
and can be supported by documentation if called upon to substantiate the information provided herein.
Furthermore, the parties agree that disallowance of any claimed exemption, or other determination of
additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month. Pursuant
to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owed.

Signature _Melani Schulte_        Capacity: GRANTOR

Signature _____        Capacity: _____

| **SELLER (GRANTOR) INFORMATION** | **BUYER (GRANTEE) INFORMATION** |
|---|---|
| **(REQUIRED)** | **(REQUIRED)** |
| Print Name: MELANI  SCHULTE | Print Name: SCHULTE PROPERTIES LLC |
| Address: 9811 W. CHARLESTON BL.#2-351 | Address: 9811 W. Charleston Bl.#2-351 |
| City: LAS VEGAS | City: LAS VEGAS |
| State: NV    Zip: 89117 | State: NV    Zip: 89117 |

**COMPANY/PERSON REQUESTING RECORDING (Required if not seller or buyer)**

| Print Name: | Escrow # |
|---|---|
| Address: | |
| City: | State:    Zip: |

AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED

EXHIBIT E

Inst #: 200911200000522
Fees: $14.00
N/C Fee: $0.00
11/20/2009 08:47:25 AM
Receipt #: 135281
Requestor:
FIDELITY NATIONAL DEFAULT S
Recorded By: ADF  Pgs: 1
DEBBIE CONWAY
CLARK COUNTY RECORDER

RECORDING REQUESTED BY:
RECONTRUST COMPANY, N.A.
**AND WHEN RECORDED MAIL DOCUMENT TO:**
Litton Loan Servicing LP
4828 Loop Central Drive
Houston, TX 77081

TS No.
TITLE ORDER#:

---

### CORPORATION ASSIGNMENT OF DEED OF TRUST NEVADA

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFER TO:
**BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP**

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 10/14/2004,
EXECUTED BY: MELANI SCHULTE, A MARRIED WOMAN AS HER SOLE AND SEPARATE
PROPERTY, TRUSTOR: TO CTC REAL ESTATE SERVICES, TRUSTEE AND RECORDED AS
INSTRUMENT NO. 0004433 ON 10/18/2004, IN BOOK 20041018, OF OFFICIAL RECORDS IN THE
COUNTY RECORDER'S OFFICE OF CLARK COUNTY, IN THE STATE OF NEVADA.

DESCRIBING THE LAND THEREIN: AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST.

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE
MONEY DUE AND TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS
ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST/MORTGAGE.

DATED: November 18, 2009

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

State of: _Texas_ )
County of: _Dallas_ ) BY: _Angela Nava_

Angela Nava, Assistant Secretary

On _11/18/09_ before me _Khadija W Gulley_, personally appeared Angela Nava,
know to me (or proved to me on the oath of _____ or through _____) to be the
person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she
executed the same for the purposes and consideration therein expressed.
Witness my hand and official seal.

_Khadija W Gulley_
Notary Public's Signature

KHADIJA W. GULLEY
My Commission Expires
August 28, 2011

**EXHIBIT E**

Inst #: 20160629-0000647
Fees: $18.00
N/C Fee: $25.00
06/29/2016 08:42:56 AM
Receipt #: 2804203
Requestor:
CHARLES A BROWN AND ASSOC I
Recorded By: DXI  Pgs: 2
DEBBIE CONWAY
CLARK COUNTY RECORDER

Prepared by, Recording Requested By
and Return to:
Charles Brown
Brown & Associates
2316 Southmore
Pasadena, TX 77502
713-941-4928
Parcel: 177-26-211-146

# ASSIGNMENT OF DEED OF TRUST

ShPnt/AOL
Loan #: (                    )

**FOR VALUE RECEIVED**, BAC HOME LOANS SERVICING, LP F/K/A COUNTRYWIDE HOME LOANS SERVICING, LP, ITS SUCCESSORS AND ASSIGNS, whose address is c/o New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing, 75 Beattie Place, Ste. 110, MS #001, Greenville, SC 29601, does hereby assign and transfer to **THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2004-28CB, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2004-28CB** whose address is c/o New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing, 55 Beattie Place, Suite 110, MS#001, Greenville, SC 29601, all its right, title and interest in and to the following described deed of trust executed by **MELANI SCHULTE, A MARRIED WOMAN AS HER SOLE SEPARATE PROPERTY** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC., ITS SUCCESSORS AND ASSIGNS** for **$167,000.00** dated **10/14/2004** of record on **10/18/2004** at Document Number **20041018-0004433**, in the **CLARK** County Clerk's Office, State of **NEVADA**.

Property Address: 1392 Echo Falls Ave, Las Vegas, NEVADA 89123
Legal description: LOT ONE HUNDRED FORTY-SIX (146) IN BLOCK TWO (2) OF SPENCER/PYLE, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 86 OF PLATS, PAGE 43, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA

Executed this 6/22/16

BAC HOME LOANS SERVICING, LP F/K/A COUNTRYWIDE HOME LOANS SERVICING, LP BY NEW PENN FINANCIAL, LLC, D/B/A SHELLPOINT MORTGAGE SERVICING AS ATTORNEY IN FACT

By:  CYNTHIA M. BROCK
Title:  MANAGER

EXHIBIT E

# ACKNOWLEDGMENT

STATE OF SOUTH CAROLINA

COUNTY OF Greenville

Before me, the undersigned officer, on this day, personally appeared CYNTHIA M. BROCK the MANAGER of New Penn Financial, LLC, d/b/a Shellpoint Mortgage Servicing attorney in fact for BAC HOME LOANS SERVICING, LP F/K/A COUNTRYWIDE HOME LOANS SERVICING, LP, ITS SUCCESSORS AND ASSIGNS, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal this _6/22/16_.

Notary Public in and for the State of SOUTH CAROLINA
Notary's Printed Name   Tonya M Ellis
My Commission Expires: 9/8/2020
I hereby affirm that this document submitted for recording does not contain a social security number.

Preparer:

DOT for $167,000.00 dated 10/14/2004

*[Notary seal: TONYA M. ELLIS / MY COMMISSION / EXPIRES 09/08/2020 / NOTARY PUBLIC / SOUTH CAROLINA]*

EXHIBIT E

Assessor's Parcel Number:
177-26-211-146
After Recording Return To:
COUNTRYWIDE HOME LOANS,

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
JEANETTE HUTSON
Recording Requested By:
D. DEL BALZO

COUNTRYWIDE HOME LOANS, INC.

10190 COVINGTON CROSS DR
#190
LAS VEGAS
NV 89144

**Receipt/Conformed Copy**

Requestor:
TICOR TITLE OF NEVADA INC
10/18/2004 14:54:32    T20040115933
Book/Instr:  20041018-0004433
Trust Deed          Page Count: 24
Fees: $37.00    N/C Fee: $0.00

Frances Deane
Clark County Recorder

────────[Space Above This Line For Recording Data]────────

[Escrow/Closing #]          [Doc ID #]

# DEED OF TRUST

MIN

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3,
11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in
Section 16.

(A) "Security Instrument" means this document, which is dated OCTOBER 14, 2004
together with all Riders to this document.

NEVADA-Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Page 1 of 16

Initials: _____

-6A(NV) (0307) CHL (07/03)(d)
VMP Mortgage Solutions - (800)521-7291

Form 3029 1/01

EXHIBIT E

DOC ID #:

**(B) "Borrower"** is
MELANI SCHULTE, A MARRIED WOMAN AS HER SOLE AND SEPARATE
PROPERTY

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is
COUNTRYWIDE HOME LOANS, INC.

Lender is a
CORPORATION

organized and existing under the laws of  NEW YORK                    . Lender's address is
4500 Park Granada
Calabasas, CA 91302-1613
**(D) "Trustee"** is
CTC REAL ESTATE SERVICES

400 COUNTRYWIDE WAY MSN SV-88
SIMI VALLEY, CA, NV 93065
**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this
Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated  OCTOBER 14, 2004
The Note states that Borrower owes Lender
ONE HUNDRED SIXTY SEVEN THOUSAND and 00/100

Dollars (U.S. $ 167,000.00            ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than  NOVEMBER 01, 2019 .
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☒ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

VMP®-6A(NV) (0307)  CHL (07/03)          Page 2 of 16          Initials: ____

Form 3029  1/01

EXHIBIT E

DOC ID #:

(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items"** means those items that are described in Section 3.

(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower

Initials:

Form 3029  1/01

**EXHIBIT E**

DOC ID #:

irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property
located in the COUNTY                                                           of
[Type of Recording Jurisdiction]

CLARK                                                                    :
[Name of Recording Jurisdiction]

LOT ONE HUNDRED FORTY-SIX (146) IN BLOCK TWO (2) OF
SPENCER/PYLE, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 86 OF
PLATS, PAGE 43, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK
COUNTY, NEVADA.

The legal description was obtained from the previous deed:

Recorded on:    Libor#    Page#

which currently has the address of
                    1392 ECHO FALLS AVENUE, LAS VEGAS

                                    [Street/City]
Nevada    89123    ("Property Address"):
        [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also
be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the
"Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by
Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for
Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,
but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender
including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the
right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of
record. Borrower warrants and will defend generally the title to the Property against all claims and demands,
subject to any encumbrances of record.

VMP -6A(NV) (0307)   CHL (07/03)        Page 4 of 16        Initials: [signature]        Form 3029 1/01

EXHIBIT E

DOC ID #:

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums

Initials: _____

EXHIBIT E

DOC ID #:

any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or

Initials: _(illegible)_

EXHIBIT E

DOC ID #:

defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be

DOC ID #:

paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is

Initials: _____

-6A(NV) (0307)    CHL (07/03)         Page 8 of 16                          Form 3029 1/01

**EXHIBIT E**

DOC ID #:

reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive

Initials: _____

EXHIBIT E

DOC ID #:

from (or might be characterized as) a portion of Borrower's payments for Mortgage insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Initials: _____

VMP® -6A(NV) (0307)    CHL (07/03)    Page 10 of 16    Form 3029 1/01

EXHIBIT E

DOC ID #:

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

Initials:

-6A(NV) (0307)   CHL (07/03)          Page 11 of 16                          Form 3029 1/01

**EXHIBIT E**

DOC ID #: (

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees,

Initials: _____

EXHIBIT E

DOC ID #:

property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Initials:

EXHIBIT E

DOC ID #:

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note, and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. **Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $   300.00

Initials:

-6A(NV) (0307)    CHL (07/03)          Page 14 of 16                    Form 3029 1/01

EXHIBIT E

DOC ID #:

 BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____

_____(Seal)
MELANI SCHULTE                                          -Borrower

_____(Seal)
                                                       -Borrower

_____(Seal)
                                                       -Borrower

_____(Seal)
                                                       -Borrower

EXHIBIT E

DOC ID #:

STATE OF NEVADA
COUNTY OF Clark

This instrument was acknowledged before me on October 15, 2004. by


HEATHER EUBANKS
Notary Public State of Nevada
No.03-80693-1
My appt. exp. Mar. 4, 2007

Heather Eubanks

Mail Tax Statements To:
TAX DEPARTMENT SV3-24

450 American Street
Simi Valley CA, 93065

Initials:

EXHIBIT E

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

———————————————— [Space Above This Line For Recording Data] ————————————————

# 1-4 FAMILY RIDER
## (Assignment of Rents)

PARCEL ID #:
177-26-211-146
Prepared By:
JEANETTE HUTSON

[Escrow/Closing #]                    [Doc ID #]

MULTISTATE 1-4 FAMILY RIDER -Fannie Mae/Freddie Mac Uniform Instrument
Page 1 of 4

Initials: (illegible)

VMP®-57R (0008).01 CHL (09/01)(d)   VMP MORTGAGE FORMS - (800)521-7291
CONV/VA

Form 3170 1/01

EXHIBIT E

DOC ID #:

THIS 1-4 FAMILY RIDER is made this FOURTEENTH day of OCTOBER, 2004 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to
COUNTRYWIDE HOME LOANS, INC.
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
1392 ECHO FALLS AVENUE, LAS VEGAS, NV 89123
[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

Initials:

-57R (0008).01 CHL (09/01)          Page 2 of 4          Form 3170 1/01

EXHIBIT E

DOC ID #:

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorneys' fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

Initials: _____

-57R (0008).01    CHL (09/01)                    Page 3 of 4                    Form 3170 1/01

EXHIBIT E

DOC ID #:

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____ _Melani Schulte_ _____ (Seal)

MELANI SCHULTE                                         - Borrower

_____ (Seal)

                                                      - Borrower

_____ (Seal)

                                                      - Borrower

_____ (Seal)

                                                      - Borrower

-57R (0008).01    CHL (09/01)          Page 4 of 4                Form 3170 1/01

EXHIBIT E

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

——————————————— [Space Above This Line For Recording Data] ———————

# PLANNED UNIT DEVELOPMENT RIDER

PARCEL ID #:
177-26-211-146
Prepared By:
JEANETTE HUTSON

[Escrow/Closing #]                                              [Doc ID #]

Initials:

MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Page 1 of 4
VMP -7R (0008).01     CHL (09/01)(d)     VMP MORTGAGE FORMS - (800)521-7291
CONV/VA

Form 3150 1/01

EXHIBIT E

DOC ID #:

THIS PLANNED UNIT DEVELOPMENT RIDER is made this FOURTEENTH    day of
OCTOBER, 2004   , and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the
"Borrower") to secure Borrower's Note to
COUNTRYWIDE HOME LOANS, INC.
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
1392 ECHO FALLS AVENUE, LAS VEGAS, NV 89123
[Property Address]
The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such
parcels and certain common areas and facilities, as described in
THE COVENANTS, CONDITIONS, AND RESTRICTIONS FILED OF RECORD THAT AFFECT THE
PROPERTY

(the "Declaration"). The Property is a part of a planned unit development known as
SILVERADO RANCH LANDSCAPE
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity
owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses,
benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's Constituent
Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument
or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or
regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments
imposed pursuant to the Constituent Documents.

B. Property Insurance. So long as the Owners Association maintains, with a generally accepted insurance
carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides
insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire,
hazards included within the term "extended coverage," and any other hazards, including, but not limited to,
earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3
for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property;
and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is
deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

Initials:

-7R (0008).01    CHL (09/01)              Page 2 of 4                    Form 3150 1/01

EXHIBIT E

DOC ID #:

What Lender requires as a condition of this waiver can change during the term of the loan.

· Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Initials: 

EXHIBIT E

DOC ID #:

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)
MELANI SCHULTE                                                    - Borrower

_____ (Seal)
                                                                 - Borrower

_____ (Seal)
                                                                 - Borrower

_____ (Seal)
                                                                 - Borrower

VMP®-7R (0008).01    CHL (09/01)           Page 4 of 4                    Form 3150  1/01

EXHIBIT E

| Details required for Cram Down |
|---|

Loar

Name of Debtor: Melani Schulte

Property address : 1392 ECHO FALLS AVENUE, LAS VEGAS, NV 89123

Snag It of court order showing the court ordered terms that the loan is to be modified to. Please also include the confirmed plan and/or stipulation, as well as the confirmation order.

| Interest Type/Loan Type |
|---|
| New UPB: |
| Escrow Deposit: |
| Interest Rate: |
| P&I: |
| T&I: |
| New Term of the Modified Loan in Months |
| Balloon terms if any |
| 1st mod due date (Contractual Start Date) |
| Maturity date: |
| Escrowed (Y/N) |

Step Rate Terms if any: N/A

Special Instructions:

Funds to remain in Misc Suspense:

EXHIBIT E

| Fixed Rate |
|---|
| 132,000.00 |
| NA |
| 5.00% |
| $708.60 |
| $218.19 |
| 360 months |
| NA |
| 4/1/2011 |
| 3/1/2041 |
| Y |

EXHIBIT E

Entered on Docket
March 08, 2011

*Bruce A. Markell*

Hon. Bruce A. Markell
United States Bankruptcy Judge

Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
Bryan A. Lindsey, Esq.
Nevada Bar No. 10662
The Schwartz Law Firm, Inc.
701 E. Bridger Avenue, Suite 120
Las Vegas, Nevada 89101
Telephone: (702) 385-5544
Facsimile: (702) 385-2741
Attorneys for Debtors
and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re: | ) Case No. 09-29123-BAM |
| | ) |
| Melani Schulte and William R. Schulte, | ) Chapter 11 |
| | ) |
| | ) Jointly Administered with: |
| 2704 Sattley LLC, | ) |
| Hot Endeavor LLC, | ) 09-27238-BAM |
| Cherish LLC, | ) 09-27909-BAM |
| SABRECO Inc., | ) 09-28513-BAM |
| Keep Safe LLC | ) 09-31584-BAM |
| | ) 09-31585-BAM |
| Debtors. | ) |
| | ) Confirmation Hearing Date: January 31, 2011 |
| | ) Confirmation Hearing Time: 9:30 a.m. |

## ORDER CONFIRMING THE DEBTORS'
## CHAPTER 11 PLAN OF REORGANIZATION

The above-captioned debtors and debtors-in-possession (the "**Debtors**"), having proposed

and filed their Third Amended Chapter 11 Plan of Reorganization (the "**Plan**");[1] and the Court

_____

[1]   All capitalized terms used but not defined herein shall have the respective meanings
ascribed to such terms in the Plan.

1

EXHIBIT E

i.     Secured Claim -    $99,806.60

ii.    Unsecured Claim -   $119,936.54

12.    That the secured and unsecured claims against the property located at 3383 Cloverdale Court, Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 3383 Cloverdale Court, Las Vegas, Nevada, are:

a. First Lien – BAC Home Loans Servicing, LP  - Loan Number – 85885825

i.     Secured Claim -    $168,856.34

ii.    Unsecured Claim -   $20,438.13

b. Second Lien – Bank of America – Loan Number – 68189001211199

i.     Secured Claim  -    $0.00

ii.    Unsecured Claim -   $100,000.00

13.    That the secured and unsecured claims against the property located at 1624 Desert Canyon Court, Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 1624 Desert Canyon Court, Las Vegas, Nevada, are:

a. First Lien – CitiMortgage  - Loan Number – 0011954829-5

i.     Secured Claim -    $90,568.03

ii.    Unsecured Claim -   $0.00

b. Second Lien – Bank of Nevada – Loan Number – 910016328

i.     Secured Claim  -    $49,244.61

ii.    Unsecured Claim -   $460,755.39

10

EXHIBIT E

14.     That the secured and unsecured claims against the property located at 3729 Discovery Creek Avenue, North Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and the creditor's wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 3729 Discovery Creek Avenue, North Las Vegas, Nevada are:

    a.  First Lien – BAC Home Loans Servicing, LP  - Loan Number – 101427028

        i.      Secured Claim -        $125,446.93

        ii.     Unsecured Claim -      $128,092.53

15.     That the secured and unsecured claims against the property located at 1392 Echo Falls Avenue, Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 1392 Echo Falls Avenue, Las Vegas, Nevada, are:

    a.  First Lien – Litton Loan Servicing  - Loan Number – 19732478

        i.      Secured Claim -        $132,000.00

        ii.     Unsecured Claim -      $0.00

    b.  Second Lien – Bank of America – Loan Number – 68189001596999

        i.      Secured Claim  -       $0.00

        ii.     Unsecured Claim -      $100,000.00

16.     That the secured and unsecured claims against the property located at 1701 Empire Mine Drive, Henderson, Nevada, are bifurcated in accordance with agreement of the parties; and the creditor's wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 1701 Empire Mine Drive, Henderson, Nevada, are:

11

EXHIBIT E

a.  First Lien – BAC Home Loans Servicing, LP  - Loan Number – 85885841

    i.    Secured Claim -    $80,000.00

    ii.    Unsecured Claim -    $99,633.34

17.    That the secured and unsecured claims against the property located at 9020 Feather River Court, Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 9020 Feather River Court, Las Vegas, Nevada, are:

a.  First Lien – JP Morgan Chase Bank  - Loan Number – 8483094523

    i.    Secured Claim -    $73,692.98

    ii.    Unsecured Claim -    $0.00

b.  Second Lien – Countrywide/BAC Home Loans Servicing, LP – Loan Number – 156496465

    i.    Secured Claim  -    $44,941.33

    ii.    Unsecured Claim -    $153,468.46

18.    That the secured and unsecured claims against the property located at 1013 Golden Hawk Way, Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 1013 Golden Hawk Way, Las Vegas, Nevada, are:

a.  First Lien – CitiMortgage  - Loan Number – 0616443148-5

    i.    Secured Claim -    $64,854.69

    ii.    Unsecured Claim -    $0.00

b.  Second Lien – BAC Home Loans Servicing, LP – Loan Number – 156496457

EXHIBIT E

Transferred to Green Tree Servicing – Loan Number: 89741392

    i.      Secured Claim -    $0.00

    ii.     Unsecured Claim -    $167,756.00

19.    That the secured and unsecured claims against the property located at 4521 W. La Madre Way, North Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 4521 W. La Madre Way, North Las Vegas, Nevada, are:

a.  First Lien – CitiMortgage  - Loan Number – 0011951495-8

    i.      Secured Claim -    $74,304.10

    ii.     Unsecured Claim -    $0.00

b.  Second Lien – Wells Fargo – Loan Number – 65065048763141998

    i.      Secured Claim -    $0.00

    ii.     Unsecured Claim -    $149,951.83

20.    That the secured and unsecured claims against the property located at 8562 Lambert Drive, Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 8562 Lambert Drive, Las Vegas, Nevada, are:

a.  First Lien – CitiMortgage  - Loan Number – 0002525827-8

    i.      Secured Claim -    $138,423.56

    ii.     Unsecured Claim -    $0.00

b.  Second Lien – BAC Home Loans Servicing – Loan Number – 156496473

    i.      Secured Claim -    $0.00

13

EXHIBIT E

ii.       Unsecured Claim -    $146,269.17

21.     That the secured and unsecured claims against the property located at 276 Manzanita Ranch Lane, Henderson, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 276 Manzanita Ranch Lane, Henderson, Nevada, are:

    a.  First Lien – CitiMortgage  - Loan Number – 0002525553-0

        i.       Secured Claim -    $126,038.87

        ii.      Unsecured Claim -    $0.00

    b.  Second Lien – Wells Fargo – Loan Number – 65065047357831998

        i.       Secured Claim -    $9,172.80

        ii.      Unsecured Claim -    $134,827.20

22.     That the secured and unsecured claims against the property located at 2861 Marathon Drive, Henderson, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 2861 Marathon Drive, Henderson, Nevada, are:

    a.  First Lien – CitiMortgage  - Loan Number – 0702460064-0

        i.       Secured Claim -    $101,274.22

        ii.      Unsecured Claim -    $0.00

    b.  Second Lien – BAC Home Loans Servicing, LP – Loan Number – 154705549

        i.       Secured Claim -    $0.00

        ii.      Unsecured Claim -    $114,363.00

EXHIBIT E

23.     That the secured and unsecured claims against the property located at 5218 Misty Morning Drive, Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 5218 Misty Morning Drive, Las Vegas, Nevada, are:

    a.  First Lien – Fifth Third Bank  - Loan Number – 201746682

        i.      Secured Claim -       $141,640.60

        ii.     Unsecured Claim -     $27,573.99

    b.  Second Lien – City National Bank – Loan Number – 1824409

        i.      Secured Claim -       $0.00

        ii.     Unsecured Claim -     $1,000,000.00

24.     That the secured and unsecured claims against the property located at 10317 Neopolitan Place, Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 10317 Neopolitan Place, Las Vegas, Nevada, are:

    a.  First Lien – BAC Home Loans Servicing, LP  - Loan Number – 74761662

        i.      Secured Claim -       $122,425.03

        ii.     Unsecured Claim -     $0.00

    b.  Second Lien – BAC Home Loans Servicing, LP – Loan Number – 154705533

        i.      Secured Claim -       $0.00

        ii.     Unsecured Claim -     $117,081.00

25.     That the secured and unsecured claims against the property located at 956 Ostrich Fern Court, Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and

15

EXHIBIT E

the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to

11 U.S.C. § 506(a), and the total amounts of the claims against 956 Ostrich Fern Court, Las Vegas,

Nevada, are:

    a.  First Lien – Litton Loan Servicing  - Loan Number – 19732460

        i.      Secured Claim -    $152,440.29

        ii.     Unsecured Claim -    $0.00

    b.  Second Lien – Bank of America – Loan Number – 68189001609399

        i.      Secured Claim -    $0.00

        ii.     Unsecured Claim -    $102,022.20

    26.    That the secured and unsecured claims against the property located at 8216 Peaceful

Canyon Drive, Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and

the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to

11 U.S.C. § 506(a), and the total amounts of the claims against 8216 Peaceful Canyon Drive, Las

Vegas, Nevada, are:

    a.  First Lien – JP Morgan Chase Bank  - Loan Number – 5942618181

        i.      Secured Claim -    $86,994.02

        ii.     Unsecured Claim -    $0.00

    b.  Second Lien – BAC Home Loans Servicing, LP – Loan Number – 154705557

        i.      Secured Claim -    $39,302.59

        ii.     Unsecured Claim -    $114,127.41

    27.    That the secured and unsecured claims against the property located at 6091

Pumpkin Patch Avenue, Las Vegas, Nevada, are bifurcated in accordance with that certain

stipulation between the parties and filed with this court on March 3, 2011 (Docket No. 907); and

the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to

EXHIBIT E

11 U.S.C. § 506(a), and the total amounts of the claims against 6091 Pumpkin Patch Avenue, Las Vegas, Nevada, are:

    a.  First Lien – Chase Home Finance, LLC  - Loan Number – 1251107609

        i.      Secured Claim -     $108,307.50

        ii.     Unsecured Claim -   $0.00

    b.  Second Lien – Wells Fargo – Loan Number – 65065046945011998

        i.      Secured Claim -     $0.00

        ii.     Unsecured Claim -   $154,555.66

28.     That the secured and unsecured claims against the property located at 5709 Ridgetree Avenue, Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 5709 Ridgetree Avenue, Las Vegas, Nevada, are:

    a.  First Lien – BAC Home Loans Servicing, LP  - Loan Number – 943813

        i.      Secured Claim -     $57,963.85

        ii.     Unsecured Claim -   $17,235.43

    b.  Second Lien – Deborah Drake

        i.      Secured Claim -     $0.00

        ii.     Unsecured Claim -   $155,000.00

29.     That the secured and unsecured claims against the property located at 5524 Rock Creek Lane, Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 5524 Rock Creek Lane, Las Vegas, Nevada, are:

EXHIBIT E

a. First Lien – Fidelity Bank  - Loan Number – 99010769

    i.      Secured Claim -     $83,380.18

    ii.     Unsecured Claim -   $0.00

b. Second Lien – Wells Fargo – Loan Number - 65065047320381998

    i.      Secured Claim -     $0.00

    ii.     Unsecured Claim -   $145,000.00

30.     That the secured and unsecured claims against the property located at 922 Saddle Horn Drive, Henderson, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 922 Saddle Horn Drive, Henderson, Nevada, are:

a. First Lien – CitiMortgage  - Loan Number – 0002415316-5

    i.      Secured Claim -     $96,734.23

    ii.     Unsecured Claim -   $0.00

b. Second Lien – Bank of America – Loan Number - 68189001224599

    i.      Secured Claim -     $0.00

    ii.     Unsecured Claim -   $100,000.00

31.     That the secured and unsecured claims against the property located at 5609 San Ardo Place, Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 5609 San Ardo Place, Las Vegas, Nevada, are:

a. First Lien – CitiMortgage  - Loan Number – 00001535955-7

    i.      Secured Claim -     $100,573.39

EXHIBIT E

ii.     Unsecured Claim -     $0.00

b.  Second Lien – U.S. Bank – Loan Number: 007-0176-529-098

i.     Secured Claim -     $0.00

ii.     Unsecured Claim -     $48,600.00

c.  Third Lien – Deborah Drake

i.     Secured Claim -     $0.00

ii.     Unsecured Claim -     $155,000.00

32.     That the secured and unsecured claims against the property located at 2704 Sattley Circle, Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 2704 Sattley Circle, Las Vegas, Nevada, are:

a.  First Lien – Maxine Llewellyn and Mel Elizer

i.     Secured Claim -     $210,000.00

ii.     Unsecured Claim -     $0.00

b.  Second Lien – Wells Fargo – Loan Number - 83082507423330001

i.     Secured Claim -     $0.00

ii.     Unsecured Claim -     $31,531.11

c.  Third Lien – Bank of Nevada – Loan Number – 910016328

i.     Secured Claim -     $0.00

ii.     Unsecured Claim -     $510,000.00

33.     That the secured and unsecured claims against the property located at 9521 Sierra Summit Avenue, Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims,"

19

EXHIBIT E

having conducted a hearing on January 31, 2011 (the "**Hearing**") to consider confirmation of the Plan, and the Court having considered (i) the Debtors' Memorandum of Law in Support of Confirmation of their Plan of Reorganization Under Chapter 11 of the Bankruptcy Code and Reply to Objection (the "**Memo**"), (ii) the declaration of the Debtors submitted in support of their Plan, (iii) the arguments of counsel presented at the Hearing, (iv) the objection of Chase Home Finance, LLC filed with respect to confirmation of the Plan and the response filed thereto, and (v) the pleadings filed in support of confirmation; and the Court being familiar with the Plan and other relevant factors affecting these Chapter 11 cases pending under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "**Bankruptcy Code**"); and the Court having taken judicial notice of the entire record of the Chapter 11 cases, including, without limitation, all pleadings and papers filed by the Debtors in the Chapter 11 cases, the order (the "**Disclosure Statement Order**") entered by the Court on December 1, 2010 (a) approving the Debtors' Fourth Amended Disclosure Statement with Respect to the Plan (the "**Disclosure Statement**"), (b) approving the forms of ballots and solicitation and tabulation procedures, (c) prescribing the form and manner of notice thereof, (d) fixing the last date for filing objections to the Plan, and (e) scheduling the Hearing to consider confirmation for the Chapter 11 Plan and (f) appointing The Schwartz Law Firm, Inc. ("**SLF**") as solicitation and tabulation agent; and the Court having found that due and proper notice has been given with respect to the Hearing and the deadlines and procedures for objections to the Plan and the appearance of all interested parties having been duly noted in the record of the Hearing; and upon the record of the Hearing, and after due deliberation thereon, and sufficient cause appearing therefore;

_____

2

EXHIBIT E

pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 9521 Sierra Summit Avenue, Las Vegas, Nevada, are:

   a.  First Lien – BAC Home Loans Servicing, LP – Loan Number - 5266345

      i.     Secured Claim -    $103,824.33

      ii.    Unsecured Claim -    $0.00

   b.  Second Lien – BAC Home Loans Servicing, LP – Loan Number – 154705541

      Transferred to Green Tree Servicing – Loan Number: 89720808

      i.     Secured Claim -    $0.00

      ii.    Unsecured Claim -    $151,713.00

   34.    That the secured and unsecured claims against the property located at 1528 Splinter Rock Way, North Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 1528 Splinter Rock Way, North Las Vegas, Nevada, are:

   a.  First Lien – Wells Fargo – Loan Number - 3464851

      i.     Secured Claim -    $105,942.62

      ii.    Unsecured Claim -    $0.00

   b.  Second Lien – Bank of Nevada – Loan Number - 910016328

      i.     Secured Claim -    $0.00

      ii.    Unsecured Claim -    $510,000.00

   35.    That the secured and unsecured claims against the property located at 1194 Stormy Valley Road, Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to

EXHIBIT E

11 U.S.C. § 506(a), and the total amounts of the claims against 1194 Stormy Valley Road, Las

Vegas, Nevada, are:

    a.  First Lien – CitiMortgage– Loan Number – 0002411561-0

        i.       Secured Claim -    $107,161.54

        ii.      Unsecured Claim -    $0.00

    b.  Second Lien – Wells Fargo – Loan Number - 83765049832011998

        i.       Secured Claim -    $0.00

        ii.      Unsecured Claim -    $130,000.00

    36.     That the secured and unsecured claims against the property located at 2290 Surrey

Meadows Avenue, Henderson, Nevada, are bifurcated in accordance with agreement of the parties;

and the creditors' wholly unsecured claims shall be treated as "general unsecured claims,"

pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 2290 Surrey Meadows

Avenue, Henderson, Nevada, are:

    a.  First Lien – CitiMortgage– Loan Number – 0002488054-4

        i.       Secured Claim -    $160,723.30

        ii.      Unsecured Claim -    $0.00

    b.  Second Lien – BAC Home Loans Servicing, LP – Loan Number – 154705565

       Transferred to Green Tree Servicing – Loan Number: 89741262

        i.       Secured Claim -    $0.00

        ii.      Unsecured Claim -    $168,075.00

    37.     That the secured and unsecured claims against the property located at 2614 Sweet

Leilani Avenue, North Las Vegas, Nevada, are bifurcated in accordance with agreement of the

parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims,"

EXHIBIT E

pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 2614 Sweet Leilani Avenue, North Las Vegas, Nevada, are:

    a.  First Lien – BAC Home Loans Servicing, LP – Loan Number – 100242287

        i.      Secured Claim -     $130,720.99

        ii.     Unsecured Claim -   $48,298.87

    b.  Second Lien – Jeff Sylvester

        i.      Secured Claim -     $0.00

        ii.     Unsecured Claim -   $72,000.00

38.     That the secured and unsecured claims against the property located at 2525 Via Di Autostrada, Henderson, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 2525 Via Di Autostrada, Henderson, Nevada, are:

    a.  First Lien – CitiMortgage – Loan Number – 002519792-2

        i.      Secured Claim -     $85,280.12

        ii.     Unsecured Claim -   $0.00

    b.  Second Lien – Homecomings Financial – Loan Number – 9125505

        Transferred to GMAC Mortgage – Loan Number: 7392714689

        Transferred to Specialized Loan Servicing – Loan Number: 1004257193

        i.      Secured Claim -     $0.00

        ii.     Unsecured Claim -   $141,800.00

39.     That the unsecured portions of the Lenders' claims be reclassified as general unsecured claims with other general unsecured creditors through the Debtors' Plan.

22

EXHIBIT E

40.     That Lenders' secured rights and/or lien-holder rights in the Properties are hereby modified as set forth above, provided, however, all remaining terms of the mortgages and notes related to the Properties, except as expressly modified herein or in the Plan, shall remain the same.

**C.     Plan Implementation.**

41.     The Debtors are authorized to undertake or cause to be undertaken any and all acts and actions contemplated by the Plan or required to consummate and implement the provisions of the Plan, prior to, on and after the Effective Date, including without limitation, entering, executing, delivering, filing or recording any agreements, instruments or documents necessary to implement the Plan.  All such actions shall be deemed to have occurred and shall be in effect without any requirement or further action by the Debtors.

42.     Each federal, state, commonwealth, local, foreign or other governmental agency is hereby directed and authorized to accept any and all documents, mortgages and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan and this Order.

**D.     Plan Distributions.**

43.     There were no objections to the Plan from creditors holding allowed unsecured claims.  In accordance with section 1129(a)(15) and as indicated on the record at the Hearing, the Debtors will not make any Plan payments to their unsecured creditors.

44.     In accordance with the Plan, all applications for payment of fees and reimbursement of expenses by professionals retained in these Chapter 11 cases as well as parties seeking compensation pursuant to section 503 of the Bankruptcy Code must be filed with the Court by the date that is no later than forty-five (45) days after the Confirmation Date (or, if such date is not a Business Day, by the next Business Day thereafter).  Any Person or entity that fails to file such an application or request on or before such date shall be forever barred from asserting such

23

**EXHIBIT E**

Administrative Claim against the Debtors or their property, and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover such Administrative Claim. Applications for approval of professionals' fees not previously awarded during the pendency of the Chapter 11 cases may be included in such professional's final applications as set forth herein and in the Plan. Objections, if any, to fee Claims shall be filed and served not later than fourteen (14) business days prior to the date set by the Court for the hearing to consider such requests.

**E.    Executory Contracts and Leases.**

45.    As of the Confirmation Date, all executory contracts and unexpired leases of the Debtors shall be assumed or rejected, as set forth in the Plan, pursuant to sections 365 and 1123 of the Bankruptcy Code.

46.    Upon the Confirmation Date of the Plan, the Debtors shall provide notice of the rejection pursuant to the Plan of an executory contract or unexpired lease to any non-debtor parties. In the event the Plan otherwise is not consummated, the Debtors may modify or amend (including, without limitation, making additions and/or deletions) all rights of the Debtors to assume or reject its unexpired leases and executory contracts shall be reinstated to the date immediately prior to the date of this Order.

**F.    Taxes and Transfers.**

47.    The transfer of any asset under the Plan or this Order has been duly authorized, and when issued, as provided in the Plan, will be validly issued, fully paid and nonassessable.

48.    Creditors seeking to protect the validity, enforceability, perfection and priority of the liens and security interests granted and/or continued under the Plan may file financing statements, deeds of trust, mortgages or other documents and take any and all actions as they deem

EXHIBIT E

appropriate, in their respective discretion, to confirm the perfection of such security interests and liens.

49.     Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and all appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

50.     All filing and recording officers are hereby directed to accept for filing or recording all instruments of transfer to be filed and recorded notwithstanding any contrary provision of applicable non-bankruptcy law.  This Court retains jurisdiction to enforce the foregoing direction, by contempt proceedings or otherwise.

**G.     Miscellaneous.**

51.     From and after the Confirmation Date, this Court shall retain and have exclusive jurisdiction over all matters arising out of these Chapter 11 cases pursuant to, and for purposes of, subsection 105(a) and section 1142 of the Bankruptcy Code, including without limitation, jurisdiction over the matters set forth in the Plan, which is incorporated herein by reference, as if set forth *in extenso*.

52.     Except as otherwise provided in the Plan and this Order, notice of all subsequent pleadings in these Chapter 11 cases shall be limited to counsel for the Debtors, the United States Trustee and any party known to be directly affected by the relief sought.

53.     Notwithstanding anything in the Plan or this Order to the contrary, the amount of any priority tax Claim for U.S. federal income taxes, if any, and the rights of the holder of such Claim, if any, to payment in respect thereof shall: (a) survive the Effective Date and consummation

25

EXHIBIT E

of the Plan and be determined in the manner and by the administrative or judicial tribunal in which the amount of such Claim and the rights of the holder of such Claim would have been resolved or adjudicated if the Chapter 11 cases had not been commenced; and (b) not be discharged, impaired or adversely affected by the Plan. In accordance with section 1124 of the Bankruptcy Code, the Plan shall leave unaltered the legal, equitable and contractual rights of a holder of such Claim.

54. Failure specifically to include or reference particular sections or provisions of the Plan or any related agreement in this Order shall not diminish or impair the effectiveness of such sections or provisions, it being the intent of the Court that the Plan be confirmed and such related agreements be approved in their entirety.

55. All entities holding Claims against the Debtors that are treated under the Plan are hereby directed to execute, deliver, file or record any document, and to take any action necessary to implement, consummate and otherwise effect the Plan in accordance with its terms, and all such entities shall be bound by the terms and provisions of all documents executed and delivered by them in connection with the Plan.

56. In accordance with section 1142 of the Bankruptcy Code, the Debtors and any other entity designated pursuant to the Plan, are hereby authorized, empowered and directed to issue, execute, deliver, file and record any document, and to take any action necessary or appropriate to implement, consummate and otherwise effectuate the Plan in accordance with its terms, and all such entities shall be bound by the terms and provisions of all documents issued, executed and delivered by them as necessary or appropriate to implement or effectuate the transactions contemplated by the Plan and as set forth in the Plan.

57. Any document related to the Plan that refers to a plan of reorganization of the Debtors, other than the Plan confirmed by this Order, shall be, and it hereby is, deemed to be

EXHIBIT E

1 modified such that the reference to a plan of reorganization of the Debtors in such document shall

2 mean the Plan confirmed by this Order, as appropriate.

4      58.     In the event of an inconsistency between the Plan, on the one hand, and any other

5 agreement, instrument or document intended to implement the provisions of the Plan, on the other,

6 the provisions of the Plan shall govern (unless otherwise expressly provided for in such agreement,

7 instrument or document).  In the event of any inconsistency between the Plan or any agreement,

8 instrument or document intended to implement the Plan, on the one hand, and this Order, on the

10 other, the provisions of this Order shall govern.

12      59.     The provisions of this Order are integrated with each other and are non-severable

13 and mutually dependent.

15      60.     This Order is a final order and the period in which an appeal must be filed shall

16 commence immediately upon the entry hereof.

18      61.     If any or all of the provisions of this Order are hereafter reversed, modified or

19 vacated by subsequent order of this Court or any other Court, such reversal, modification or

20 vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in

22 connection with the Plan prior to the Debtors receipt of written notice of such order.

23 Notwithstanding any such reversal, modification or vacatur of this Order, any such act or

24 obligation incurred or undertaken pursuant to, and in reliance on, this Order prior to the effective

26 date of such reversal, modification or vacatur shall be governed in all respects by the provisions of

27 this Order and the Plan and all related documents or any amendments or modifications thereto.

27

EXHIBIT E

62.    The Plan shall be substantially consummated on the Confirmation Date because the
transactions described in the Plan shall have occurred or shall have been provided for.


Submitted by:

THE SCHWARTZ LAW FIRM, INC.

By: /s/ Samuel A. Schwartz
Samuel A. Schwartz, Esq., NBN 10985
701 E. Bridger Ave., Suite 120
Las Vegas, NV 89101
*Attorneys for Debtors*

EXHIBIT E

**SUBMISSION TO COUNSEL FOR APPROVAL PURSUANT TO LR 9021**

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

_____ The court has waived the requirement set forth in LR 9021(b)(1).

_____ No party appeared at the hearing or filed an objection to the motion.

__X__ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order or failed to respond, as indicated below [list each party and whether the party has approved, disapproved or failed to respond to the document]:

_____ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of this order.

APPROVED:          Michael Chen, Esq.; Brittany Wood, Esq.; Ace Van Patten, Esq.

DISAPPROVED:

FAILED TO RESPOND:

Submitted by:

THE SCHWARTZ LAW FIRM, INC.

By: /s/ Samuel A. Schwartz
Samuel A. Schwartz, Esq., NBN 10985
701 E. Bridger Ave., Suite 120
Las Vegas, NV 89101
*Attorneys for Debtors*

### # # #

29

**EXHIBIT E**

**IT IS HEREBY FOUND AND CONCLUDED,**[2] that:

<u>**JURISDICTION AND VENUE**</u>

A.      The Court has jurisdiction to conduct the Hearing and to confirm the Plan pursuant to 28 U.S.C. § 1334.

B.      Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b), and this Court has jurisdiction to enter a final order with respect thereto.

C.      The Debtors are proper debtors under section 109 of the Bankruptcy Code and proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.

D.      Each of the conditions precedent to the entry of this Order has been satisfied.

<u>**JUDICIAL NOTICE**</u>

E.      This Court takes judicial notice of the docket of the Debtors' Chapter 11 cases maintained by the Clerk of the Court and/or its duly-appointed agent, and all pleadings and other documents filed, all orders entered, and evidence and arguments made, proffered or adduced at, the hearings held before the Court during the pendency of the Chapter 11 cases.

**STANDARDS FOR CONFIRMATION UNDER**
<u>**SECTION 1129 OF THE BANKRUPTCY CODE**</u>

F.      <u>Section 1129(a)(1).</u>      The Plan complies with each applicable provision of the Bankruptcy Code.  In particular, the Plan complies with the requirements of sections 1122, 1123, 1125 and 1126 of the Bankruptcy code.

---

[2]   The Findings of Fact and Conclusions of Law contained herein constitute the findings of fact and conclusions of law required to be entered by this Court pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").  To the extent any finding of fact constitutes a conclusion of law, it is adopted as such.  To the extent any conclusion of law constitutes a finding of fact, it is adopted as such.

3

**EXHIBIT E**

# EXHIBIT A

Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
Bryan A. Lindsey, Esq.
Nevada Bar No. 10662
The Schwartz Law Firm, Inc.
701 E. Bridger Avenue, Suite 120
Las Vegas, Nevada 89101
Telephone: (702) 385-5544
Facsimile: (702) 385-2741
Attorneys for the Debtors

## UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA

| | | |
|---|---|---|
| In re: | ) | Case No. 09-29123-BAM |
| | ) | Chapter 11 |
| Melani Schulte and William R. Schulte, | ) | |
| | ) | Jointly Administered with: |
| | ) | |
| 2704 Sattley LLC, | ) | 09-27238-BAM |
| Hot Endeavor LLC, | ) | 09-27909-BAM |
| Cherish LLC, | ) | 09-28513-BAM |
| SABRECO Inc., | ) | 09-31584-BAM |
| Keep Safe LLC | ) | 09-31585-BAM |
| | ) | |
| Debtors. | ) | Confirmation Hearing Date: January 31, 2011 |
| | ) | Confirmation Hearing Time: 9:30 a.m. |
| | ) | |

## THIRD AMENDED JOINT PLAN OF REORGANIZATION OF
## MELANI SCHULTE AND WILLIAM R. SCHULTE

### ARTICLE I - SUMMARY

This Third Amended Joint Plan of Reorganization (the "**Plan**") under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**") proposes to pay creditors of the above-captioned debtors and debtors-in-possession (the "**Debtors**") from the reorganization of their residential property and secured debt.

This Plan provides for 2 classes of secured claims and 3 classes of unsecured claims. Unsecured creditors holding allowed claims may receive distributions, if objections to the Plan are lodged under Section 1129(a)(15) of the Bankruptcy Code, which the Debtors have valued at approximately 4% of each creditor's allowed claim. If no objections are lodged, the Debtors may elect to make zero distributions to general unsecured creditors. This Plan also provides for the payment of administrative and priority claims in full on the effective date of this Plan, or as agreed by the holder of such administrative or priority claim.

Page | 1

EXHIBIT E

All creditors should refer to Articles II through IV of this Plan for information regarding the precise treatment of their claims. A Fourth Amended Joint Disclosure Statement (the "**Disclosure Statement**") that provides more detailed information regarding this Plan and the rights of creditors was circulated with this Plan. Your rights may be affected. You should read these papers carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.

## ARTICLE II - CLASSIFICATION AND TREATMENT OF CLAIMS

This Plan constitutes the Chapter 11 plan of reorganization of the Debtors. All Claims against the Debtors are placed in classes (each a "**Class**") as designated by Classes 1 through 5. In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims and Priority Tax Claims.

The categories of Claims (as defined in the Bankruptcy Code, listed below classify Claims for all purposes, including, without limitation, voting, confirmation and distribution pursuant to this Plan sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim to be classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that any such Claim is allowed in that Class and has not been paid or otherwise settled prior to the effective date of the Plan as determined in paragraph 6.02 below.

**THE DEBTORS INTEND TO SEEK SUBSTANTIVE CONSOLIDATION IN CONNECTION WITH THE PAYMENT OF THE GENERAL UNSECURED CLAIMS AGAINST THEIR ESTATES THROUGH THE PLAN. IF SUCH SUBSTANTIVE CONSOLIDATION IS AUTHORIZED AND ORDERED BY THE COURT, CERTAIN ALLOWED CLAIMS OF THE DEBTORS OR THEIR ESTATES SHALL BE SATISFIED FROM THE COMBINED CASH AND OTHER PROPERTY OF THE DEBTORS AND THEIR COMBINED ESTATES. ALL ALLOWED SECURED CLAIMS IN CLASSES 1 AND 2 WILL RETAIN THEIR LIENS AND NOT BE ELIMINATED AS THE RESULT OF THE SUBSTANTIVE CONSOLIDATION.**

**Classification of Claims**

2.01    Class 1(a) – Secured Claim of America's Servicing Company

      (a)    *Classification*: Class 1(a) consists of the Secured Claim of America's Servicing Company against the Debtors' property located at 509 Canyon Greens, Las Vegas, Nevada 89144, which is secured by a lien against the Debtors' residential property, loan number 1205043971.

      (b)    *Treatment*: The holder of the allowed Class 1(a) Secured Claim shall be unimpaired and paid in full in accordance with the terms of its related note and mortgage.

Page | 2

**EXHIBIT E**

(c) *Voting*: Class 1(a) is an unimpaired class, and the holder of the Class 1(a) claim is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the holder of the Class 1(a) claim is not entitled to vote to accept or reject the Plan.

2.02 <u>Class 2(a) –Secured Claim of CitiMortgage</u>

(a) *Classification*: Class 2(a) consists of the Secured Claim of CitiMortgage against the Debtors' property located at 9500 Aspen Glow Drive, Las Vegas, Nevada 89134 which is secured by a lien against the Debtors' residential property, loan number 0577014851-7.

(b) *Treatment*: The holder of the allowed Class 2(a) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth in **Exhibit 1**, attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c) *Valuation*: The Class 2(a) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d) *Unsecured Portion of the Claim*: Any amount of a Class 2(a) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e) *Voting*: Class 2(a) is an impaired class, and the holder of the Class 2(a) claim is entitled to vote to accept or reject the Plan.

<u>Class 2(b) –Secured Claim of City National Bank</u>

(a) *Classification*: Class 2(b) consists of the Secured Claim of City National Bank against the Debtors' property located at 9500 Aspen Glow Drive, Las Vegas, Nevada 89134, which is secured by a lien against the Debtors' residential property, loan number 1824409.

(b) *Treatment*: The holder of the allowed Class 2(b) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth in **Exhibit 1**, attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c) *Valuation*: The Class 2(b) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving

EXHIBIT E

the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)    *Unsecured Portion of the Claim*: Any amount of a Class 2(b) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)    *Voting*: Class 2(b) is an impaired class, and the holder of the Class 2(b) claim is entitled to vote to accept or reject the Plan.

Class 2(c) –Secured Claim of Chase Home Finance

(a)    *Classification*: Class 2(c) consists of the Secured Claim of Chase Home Finance against the Debtors' property located at 2460 Avenida Cortes, Henderson, Nevada 89074, which is secured by a lien against the Debtors' residential property, loan number 8483094531.

(b)    *Treatment*: The holder of the allowed Class 2(c) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years and in accordance with all other terms of its related note and mortgage.

(c)    *Valuation*: The Class 2(c) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)    *Unsecured Portion of the Claim*: Any amount of a Class 2(c) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)    *Voting*: Class 2(c) is an impaired class, and the holder of the Class 2(c) claim is entitled to vote to accept or reject the Plan.

Class 2(d) –Secured Claim of Countywide Home Loans

(a)    *Classification*: Class 2(d) consists of the Secured Claim of Countrywide Home Loans against the Debtors' property located at 2460 Avenida Cortes, Henderson, Nevada 89074, which is secured by a lien against the Debtors' residential property, loan number 156496481.

(b)    *Treatment*: The holder of the allowed Class 2(d) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth in **Exhibit 1**, attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

EXHIBIT E

(c) *Valuation*: The Class 2(d) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d) *Unsecured Portion of the Claim*: Any amount of a Class 2(d) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e) *Voting*: Class 2(d) is an impaired class, and the holder of the Class 2(d) claim is entitled to vote to accept or reject the Plan.

Class 2(e) –Secured Claim of Countrywide Home Loans

(a) *Classification*: Class 2(e) consists of the Secured Claim of Countrywide Home Loans against the Debtors' property located at 4710 Brently Place, Las Vegas, Nevada 89122, which is secured by a lien against the Debtors' residential property, loan number 86314260.

(b) *Treatment*: The holder of the allowed Class 2(e) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c) *Valuation*: The Class 2(e) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d) *Unsecured Portion of the Claim*: Any amount of a Class 2(e) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e) *Voting*: Class 2(e) is an impaired class, and the holder of the Class 2(e) claim is entitled to vote to accept or reject the Plan.

Class 2(f) –Secured Claim of Chase Home Finance

(a) *Classification*: Class 2(f) consists of the Secured Claim of Chase Home Finance against the Debtors' property located at 7873 Bridgefield Lane, Las Vegas, Nevada 89147, which is secured by a lien against the Debtors' residential property, loan number 8483094549.

EXHIBIT E

(b)     *Treatment*: The holder of the allowed Class 2(f) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(f) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan.  The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(f) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(f) is an impaired class, and the holder of the Class 2(f) claim is entitled to vote to accept or reject the Plan.

Class 2(g) –Secured Claim of Bank of Nevada

(a)     *Classification*: Class 2(g) consists of the Secured Claim of Bank of Nevada against the Debtors' property located at 7873 Bridgefield Lane, Las Vegas, Nevada 89147, which is secured by a lien against the Debtors' residential property, loan number 910016328.

(b)     *Treatment*: The holder of the allowed Class 2(g) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(g) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan.  The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(g) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(g) is an impaired class, and the holder of the Class 2(g) claim is entitled to vote to accept or reject the Plan.

EXHIBIT E

Class 2(h) – Secured Claim of Countrywide Home Loans

(a)     *Classification*: Class 2(h) consists of the Secured Claim of Countrywide Home Loans against the Debtors' property located at 3322 Cheltenham Street, Las Vegas, Nevada 89129, which is secured by a lien against the Debtors' residential property, loan number 84536650.

(b)     *Treatment*: The holder of the allowed Class 2(h) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(h) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(h) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(h) is an impaired class, and the holder of the Class 2(h) claim is entitled to vote to accept or reject the Plan.

Class 2(i) – Secured Claim of Countrywide Home Loans

(a)     *Classification*: Class 2(i) consists of the Secured Claim of Countrywide Home Loans against the Debtors' property located at 3383 Cloverdale Court, Las Vegas, Nevada 89117, which is secured by a lien against the Debtors' residential property, loan number 85885825.

(b)     *Treatment*: The holder of the allowed Class 2(i) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(i) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(i) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

**EXHIBIT E**

(e)   *Voting*: Class 2(i) is an impaired class, and the holder of the Class 2(i) claim is entitled to vote to accept or reject the Plan.

Class 2(j) –Secured Claim of CitiMortgage, Inc.

(a)   *Classification*: Class 2(j) consists of the Secured Claim of CitiMortgage, Inc. against the Debtors' property located at 1624 Desert Canyon Court, Las Vegas, Nevada 89128 which is secured by a lien against the Debtors' residential property, loan number 0011954829-5.

(b)   *Treatment*: The holder of the allowed Class 2(j) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)   *Valuation*: The Class 2(j) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan.  The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)   *Unsecured Portion of the Claim*: Any amount of a Class 2(j) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)   *Voting*: Class 2(j) is an impaired class, and the holder of the Class 2(j) claim is entitled to vote to accept or reject the Plan.

Class 2(k) –Secured Claim of Bank of Nevada

(a)   *Classification*: Class 2(k) consists of the Secured Claim of Bank of Nevada against the Debtors' property located at 1624 Desert Canyon Court, Las Vegas, Nevada 89128 which is secured by a lien against the Debtors' residential property, loan number 910016328.

(b)   *Treatment*: The holder of the allowed Class 2(k) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)   *Valuation*: The Class 2(k) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan.  The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

EXHIBIT E

(d)   *Unsecured Portion of the Claim*: Any amount of a Class 2(k) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)   *Voting*: Class 2(k) is an impaired class, and the holder of the Class 2(k) claim is entitled to vote to accept or reject the Plan.

Class 2(l) –Secured Claim of Countrywide Home Loans

(a)   *Classification*: Class 2(l) consists of the Secured Claim of Countrywide Home Loans against the Debtors' property located at 3729 Discovery Creek Avenue, North Las Vegas, Nevada 89031, which is secured by a lien against the Debtors' residential property, loan number 101427028.

(b)   *Treatment*: The holder of the allowed Class 2(l) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)   *Valuation*: The Class 2(l) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan.  The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)   *Unsecured Portion of the Claim*: Any amount of a Class 2(l) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)   *Voting*: Class 2(l) is an impaired class, and the holder of the Class 2(l) claim is entitled to vote to accept or reject the Plan.

Class 2(m) –Secured Claim of Litton Loan Servicing

(a)   *Classification*: Class 2(m) consists of the Secured Claim of Litton Loan Servicing against the Debtors' property located at 1392 Echo Falls Avenue, Las Vegas, Nevada 89183, which is secured by a lien against the Debtors' residential property, loan number 19732478.

(b)   *Treatment*: The holder of the allowed Class 2(m) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)   *Valuation*: The Class 2(m) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property

EXHIBIT E

G.  **Section 1129(a)(4).**  No payment for services or costs in connection with the Chapter 11 cases or the Plan has been made by the Debtors other than payments that have been authorized by order of the Court.

H.  **Section 1129(a)(7).**  Each holder of an impaired Claim that has not accepted the Plan will, on account of such Claim, receive or retain property under the Plan having a value, as of the effective date of the Plan (the "**Effective Date**"), that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

I.  **Section 1129(a)(8).**  The Plan has not been accepted by all impaired classes of Claims.  Nevertheless, the Plan is confirmable because it satisfies 1129(b)(1) of the Bankruptcy Code with respect to such non-accepting classes of Claims.

J.  **Section 1129(a)(9).**  The Plan provides treatment for Administrative and Priority Claims that is consistent with the requirements of section 1129(a)(9) of the Bankruptcy Code.

K.  **Section 1129(a)(10).**  The Plan has been accepted by a class of impaired Claims that voted on the Plan, including Classes 2(c), (f), (h), (i), (l), (n), (o), (v), (x), (y), (cc), (ff) and (kk), and Class 5, determined without including any acceptance of the Plan by any insider.

L.  **Section 1129(a)(11).**  Confirmation of the Plan is not likely to be followed by the liquidation or the need for the further financial reorganization of the Debtors.

M.  **Section 1129(a)(12).**  The Plan provides for the payment of all fees payable under Section 1930, Title 28 of the United States Code by the Debtors on the Effective Date (or as soon as practicable thereafter).  After the Effective Date and until these Chapter 11 cases are closed, converted or dismissed, the Plan provides for the payment by the Disbursement Agent of all such fees as they become due and payable.

4

EXHIBIT E

as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)  *Unsecured Portion of the Claim*: Any amount of a Class 2(m) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)  *Voting*: Class 2(m) is an impaired class, and the holder of the Class 2(m) claim is entitled to vote to accept or reject the Plan.

Class 2(n) –Secured Claim of Countrywide Home Loans

(a)  *Classification*: Class 2(n) consists of the Secured Claim of Countrywide Home Loans against the Debtors' property located at 1701 Empire Mine Drive, Henderson, Nevada 89014, which is secured by a lien against the Debtors' residential property, loan number 85885841.

(b)  *Treatment*: The holder of the allowed Class 2(n) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)  *Valuation*: The Class 2(n) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)  *Unsecured Portion of the Claim*: Any amount of a Class 2(n) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)  *Voting*: Class 2(n) is an impaired class, and the holder of the Class 2(n) claim is entitled to vote to accept or reject the Plan.

Class 2(o) –Secured Claim of Chase Home Finance

(a)  *Classification*: Class 2(o) consists of the Secured Claim of Chase Home Finance against the Debtors' property located at 9020 Feather River Court, Las Vegas, Nevada 89117, which is secured by a lien against the Debtors' residential property, loan number 8483094523.

(b)  *Treatment*: The holder of the allowed Class 2(o) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

**EXHIBIT E**

(c)     *Valuation*: The Class 2(o) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(o) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(o) is an impaired class, and the holder of the Class 2(o) claim is entitled to vote to accept or reject the Plan.

Class 2(p) –Secured Claim of Countrywide Home Loans

(a)     *Classification*: Class 2(p) consists of the Secured Claim of Countrywide Home Loans against the Debtors' property located at 9020 Feather River Court, Las Vegas, Nevada 89117, which is secured by a lien against the Debtors' residential property, loan number 156496465.

(b)     *Treatment*: The holder of the allowed Class 2(p) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(p) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(p) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(p) is an impaired class, and the holder of the Class 2(p) claim is entitled to vote to accept or reject the Plan.

Class 2(q) –Secured Claim of CitiMortgage, Inc.

(a)     *Classification*: Class 2(q) consists of the Secured Claim of CitiMortgage, Inc. against the Debtors' property located at 1013 Golden Hawk Way, Las Vegas, Nevada 89108, which is secured by a lien against the Debtors' residential property, loan number 0616443148-5.

Page | 11

**EXHIBIT E**

(b)   *Treatment*: The holder of the allowed Class 2(q) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)   *Valuation*: The Class 2(q) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)   *Unsecured Portion of the Claim*: Any amount of a Class 2(q) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)   *Voting*: Class 2(q) is an impaired class, and the holder of the Class 2(q) claim is entitled to vote to accept or reject the Plan.

Class 2(r) –Secured Claim of CitiMortgage, Inc.

(a)   *Classification*: Class 2(r) consists of the Secured Claim of CitiMortgage, Inc. against the Debtors' property located at 4521 W. La Madre Way, North Las Vegas, Nevada 89031, which is secured by a lien against the Debtors' residential property, loan number 0011951495-8.

(b)   *Treatment*: The holder of the allowed Class 2(r) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)   *Valuation*: The Class 2(r) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)   *Unsecured Portion of the Claim*: Any amount of a Class 2(r) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)   *Voting*: Class 2(r) is an impaired class, and the holder of the Class 2(r) claim is entitled to vote to accept or reject the Plan.

EXHIBIT E

Class 2(s) –Secured Claim of CitiMortgage, Inc.

(a)     *Classification*: Class 2(s) consists of the Secured Claim of CitiMortgage, Inc. against the Debtors' property located at 8562 Lambert Drive, Las Vegas, Nevada 89147, which is secured by a lien against the Debtors' residential property, loan number 0002525827-8.

(b)     *Treatment*: The holder of the allowed Class 2(s) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(s) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(s) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(s) is an impaired class, and the holder of the Class 2(s) claim is entitled to vote to accept or reject the Plan.

Class 2(t) –Secured Claim of CitiMortgage, Inc.

(a)     *Classification*: Class 2(t) consists of the Secured Claim of CitiMortgage, Inc. against the Debtors' property located at 276 Manzanita Ranch Lane, Henderson, Nevada 89052 which is secured by a lien against the Debtors' residential property, loan number 0002525553-0.

(b)     *Treatment*: The holder of the allowed Class 2(t) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(t) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(t) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

EXHIBIT E

(e)     *Voting*: Class 2(t) is an impaired class, and the holder of the Class 2(t) claim is entitled to vote to accept or reject the Plan.

Class 2(u) –Secured Claim of CitiMortgage, Inc.

(a)     *Classification*: Class 2(u) consists of the Secured Claim of CitiMortgage, Inc. against the Debtors' property located at 2861 Marathon Drive, Henderson, Nevada 89074, which is secured by a lien against the Debtors' residential property, loan number 0702460064-0.

(b)     *Treatment*: The holder of the allowed Class 2(u) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(r) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(u) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(u) is an impaired class, and the holder of the Class 2(u) claim is entitled to vote to accept or reject the Plan.

Class 2(v) –Secured Claim of Fifth Third Bank

(a)     *Classification*: Class 2(v) consists of the Secured Claim of Fifth Third Bank against the Debtors' property located at 5218 Misty Morning Drive, Las Vegas, Nevada 89118, which is secured by a lien against the Debtors' residential property, loan number 0201746682.

(b)     *Treatment*: The holder of the allowed Class 2(v) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(v) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

EXHIBIT E

(d) *Unsecured Portion of the Claim*: Any amount of a Class 2(v) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e) *Voting*: Class 2(v) is an impaired class, and the holder of the Class 2(v) claim is entitled to vote to accept or reject the Plan.

Class 2(w) –Secured Claim of Countrywide Home Loans

(a) *Classification*: Class 2(w) consists of the Secured Claim of Countrywide Home Loans against the Debtors' property located at 10317 Neopolitan Place, Las Vegas, Nevada 89144 which is secured by a lien against the Debtors' residential property, loan number 74761662.

(b) *Treatment*: The holder of the allowed Class 2(w) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c) *Valuation*: The Class 2(w) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d) *Unsecured Portion of the Claim*: Any amount of a Class 2(w) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e) *Voting*: Class 2(w) is an impaired class, and the holder of the Class 2(w) claim is entitled to vote to accept or reject the Plan.

Class 2(x) –Secured Claim of Litton Loan Servicing

(a) *Classification*: Class 2(x) consists of the Secured Claim of Litton Loan Servicing against the Debtors' property located at 956 Ostrich Fern Court, Las Vegas, Nevada 89183, which is secured by a lien against the Debtors' residential property, loan number 19732460.

(b) *Treatment*: The holder of the allowed Class 2(x) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c) *Valuation*: The Class 2(x) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property

EXHIBIT E

as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)   *Unsecured Portion of the Claim*: Any amount of a Class 2(x) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)   *Voting*: Class 2(x) is an impaired class, and the holder of the Class 2(x) claim is entitled to vote to accept or reject the Plan.

Class 2(y) –Secured Claim of Chase Home Finance

(a)   *Classification*: Class 2(y) consists of the Secured Claim of Chase Home Finance against the Debtors' property located at 8216 Peaceful Canyon Drive, Las Vegas, Nevada 89128, which is secured by a lien against the Debtors' residential property, loan number 5942618181.

(b)   *Treatment*: The holder of the allowed Class 2(y) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)   *Valuation*: The Class 2(y) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)   *Unsecured Portion of the Claim*: Any amount of a Class 2(y) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)   *Voting*: Class 2(y) is an impaired class, and the holder of the Class 2(y) claim is entitled to vote to accept or reject the Plan.

Class 2(z) –Secured Claim of Countrywide Home Loans

(a)   *Classification*: Class 2(z) consists of the Secured Claim of Countrywide Home Loans against the Debtors' property located at 8216 Peaceful Canyon Drive, Las Vegas, Nevada 89128, which is secured by a lien against the Debtors' residential property, loan number 154705557.

(b)   *Treatment*: The holder of the allowed Class 2(z) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

**EXHIBIT E**

(c)  *Valuation*: The Class 2(z) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)  *Unsecured Portion of the Claim*: Any amount of a Class 2(z) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)  *Voting*: Class 2(z) is an impaired class, and the holder of the Class 2(z) claim is entitled to vote to accept or reject the Plan.

Class 2(aa) –Secured Claim of Chase Manhattan Mortgage

(a)  *Classification*: Class 2(aa) consists of the Secured Claim of Chase Manhattan Mortgage against the Debtors' property located at 6091 Pumpkin Patch Avenue, Las Vegas, Nevada 89142, which is secured by a lien against the Debtors' residential property, loan number 001251107609.

(b)  *Treatment*: The holder of the allowed Class 2(aa) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over the remaining loan term, and in accordance with all other terms of its related note and mortgage.

(c)  *Valuation*: The Class 2(aa) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)  *Unsecured Portion of the Claim*: Any amount of a Class 2(aa) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)  *Voting*: Class 2(aa) is an impaired class, and the holder of the Class 2(aa) claim is entitled to vote to accept or reject the Plan.

Class 2(bb) –Secured Claim of Countrywide Home Loans

(a)  *Classification*: Class 2(bb) consists of the Secured Claim of Countrywide Home Loans against the Debtors' property located at 5709 Ridgetree Avenue, Las Vegas, Nevada 89107, which is secured by a lien against the Debtors' residential property, loan number 943813.

EXHIBIT E

(b)   *Treatment*: The holder of the allowed Class 2(bb) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)   *Valuation*: The Class 2(bb) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)   *Unsecured Portion of the Claim*: Any amount of a Class 2(bb) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)   *Voting*: Class 2(bb) is an impaired class, and the holder of the Class 2(bb) claim is entitled to vote to accept or reject the Plan.

Class 2(cc) – Secured Claim of Fidelity Bank

(a)   *Classification*: Class 2(cc) consists of the Secured Claim of Fidelity Bank against the Debtors' property located at 5524 Rock Creek Lane, Las Vegas, Nevada 89130, which is secured by a lien against the Debtors' residential property, loan number 0099010769.

(b)   *Treatment*: The holder of the allowed Class 2(cc) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)   *Valuation*: The Class 2(cc) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)   *Unsecured Portion of the Claim*: Any amount of a Class 2(cc) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)   *Voting*: Class 2(cc) is an impaired class, and the holder of the Class 2(cc) claim is entitled to vote to accept or reject the Plan.

EXHIBIT E

Class 2(dd) –Secured Claim of CitiMortgage, Inc.

(a)     *Classification*: Class 2(dd) consists of the Secured Claim of CitiMortgage, Inc. against the Debtors' property located at 922 Saddle Horn Drive, Henderson, Nevada 89002, which is secured by a lien against the Debtors' residential property, loan number 0002415316-5.

(b)     *Treatment*: The holder of the allowed Class 2(dd) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(dd) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(dd) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(dd) is an impaired class, and the holder of the Class 2(dd) claim is entitled to vote to accept or reject the Plan.

Class 2(ee) –Secured Claim of CitiMortgage, Inc.

(a)     *Classification*: Class 2(ee) consists of the Secured Claim of CitiMortgage, Inc. against the Debtors' property located at 5609 San Ardo Place, Las Vegas, Nevada 89130, which is secured by a lien against the Debtors' residential property, loan number 00001535955-7.

(b)     *Treatment*: The holder of the allowed Class 2(ee) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(ee) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(ee) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

EXHIBIT E

N.      <u>Section 1129(a)(15)</u>.  There were no objections to the Plan from creditors holding allowed unsecured claims.  In accordance with section 1129(a)(15) and as indicated on the record at the Hearing, the Debtors will not make any Plan payments to their unsecured creditors.

O.      <u>Section 1129(c)</u>.  The Plan (including previous versions thereof) is the only plan that has been filed in the Chapter 11 cases that has been found to satisfy the requirements of subsections (a) and (b) of section 1129 of the Bankruptcy Code.  Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

P.      <u>Section 1129(d)</u>.  No party in interest, including but not limited to any governmental unit, has requested that the Court deny confirmation of the Plan on grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, and the principal purpose of the Plan is not such avoidance.  Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

<strong><u>EXECUTORY CONTRACTS</u></strong>

Q.      Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, upon the occurrence of the Effective Date, the Plan provides for the rejection of each and every executory contract and unexpired lease that is not listed on Exhibit 2 to the Plan as being rejected.  The Debtors' decisions regarding the assumption and rejection of executory contracts and unexpired leases are based on and are within the sound business judgment of the Debtors, are necessary to the implementation of the Plan and are in the best interests of the Debtors, their estate, holders of Claims and other parties in interest in these Chapter 11 cases.

<strong><u>SETTLEMENTS</u></strong>

R.      Pursuant to section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019(a), and in consideration of the classification, distributions and other benefits provided under the Plan,

5

<strong>EXHIBIT E</strong>

(e)    *Voting*: Class 2(ee) is an impaired class, and the holder of the Class 2(ee) claim is entitled to vote to accept or reject the Plan.

Class 2(ff) –Secured Claim of Maxine Llewellyn and Mel Elizer

(a)    *Classification*: Class 2(ff) consists of the Secured Claim of Maxine Llewellyn and Mel Elizer against the Debtors' property located at 2704 Sattley Circle, Las Vegas, Nevada 89117, which is secured by a lien against the Debtors' residential property.

(b)    *Treatment*: The holder of the allowed Class 2(ff) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, payable in monthly installments of $700.00, over a period of 5 years, with a balloon payment of the amount of its claim after the five-year period.

(c)    *Valuation*: The Class 2(ff) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)    *Unsecured Portion of the Claim*: Any amount of a Class 2(ff) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)    *Voting*: Class 2(ff) is an impaired class, and the holder of the Class 2(ff) claim is entitled to vote to accept or reject the Plan.

Class 2(gg) –Secured Claim of Countrywide Home Loans

(a)    *Classification*: Class 2(gg) consists of the Secured Claim of Countrywide Home Loans against the Debtors' property located at 9521 Sierra Summit Avenue, Las Vegas, Nevada 89134, which is secured by a lien against the Debtors' residential property, loan number 005266345.

(b)    *Treatment*: The holder of the allowed Class 2(gg) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)    *Valuation*: The Class 2(gg) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

**EXHIBIT E**

(d)   *Unsecured Portion of the Claim*: Any amount of a Class 2(gg) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)   *Voting*: Class 2(gg) is an impaired class, and the holder of the Class 2(gg) claim is entitled to vote to accept or reject the Plan.

Class 2(hh) –Secured Claim of Wells Fargo Home Mortgage

(a)   *Classification*: Class 2(hh) consists of the Secured Claim of Wells Fargo Home Mortgage against the Debtors' property located at 1528 Splinter Rock Way, North Las Vegas, Nevada 89031, which is secured by a lien against the Debtors' residential property, loan number 3464851.

(b)   *Treatment*: The holder of the allowed Class 2(hh) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)   *Valuation*: The Class 2(hh) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)   *Unsecured Portion of the Claim*: Any amount of a Class 2(hh) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)   *Voting*: Class 2(hh) is an impaired class, and the holder of the Class 2(hh) claim is entitled to vote to accept or reject the Plan.

Class 2(ii) –Secured Claim of CitiMortgage, Inc.

(a)   *Classification*: Class 2(ii) consists of the Secured Claim of CitiMortgage, Inc. against the Debtors' property located at 1194 Stormy Valley Road, Las Vegas, Nevada 89123, which is secured by a lien against the Debtors' residential property, loan number 0002411561-0.

(b)   *Treatment*: The holder of the allowed Class 2(ii) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)   *Valuation*: The Class 2(ii) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property

Page | 21

EXHIBIT E

as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)    *Unsecured Portion of the Claim*: Any amount of a Class 2(ii) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)    *Voting*: Class 2(ii) is an impaired class, and the holder of the Class 2(ii) claim is entitled to vote to accept or reject the Plan.

Class 2(jj) –Secured Claim of CitiMortgage, Inc.

(a)    *Classification*: Class 2(jj) consists of the Secured Claim of CitiMortgage, Inc. against the Debtors' property located at 2290 Surrey Meadows Avenue, Henderson, Nevada 89052, which is secured by a lien against the Debtors' residential property, loan number 0002488054-4.

(b)    *Treatment*: The holder of the allowed Class 2(jj) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)    *Valuation*: The Class 2(jj) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)    *Unsecured Portion of the Claim*: Any amount of a Class 2(jj) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)    *Voting*: Class 2(jj) is an impaired class, and the holder of the Class 2(jj) claim is entitled to vote to accept or reject the Plan.

Class 2(kk) –Secured Claim of Countrywide Home Loans

(a)    *Classification*: Class 2(kk) consists of the Secured Claim of Countrywide Home Loans against the Debtors' property located at 2614 Sweet Leilani Avenue, North Las Vegas, Nevada 89031, which is secured by a lien against the Debtors' residential property, loan number 100242287.

(b)    *Treatment*: The holder of the allowed Class 2(kk) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

EXHIBIT E

(c)     *Valuation*: The Class 2(kk) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(kk) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(kk) is an impaired class, and the holder of the Class 2(kk) claim is entitled to vote to accept or reject the Plan.

Class 2(ll) –Secured Claim of CitiMortgage, Inc.

(a)     *Classification*: Class 2(ll) consists of the Secured Claim of CitiMortgage, Inc. against the Debtors' property located at 2525 Via Di Autostrada, Henderson, Nevada 89074, which is secured by a lien against the Debtors' residential property, loan number 0002519792-2.

(b)     *Treatment*: The holder of the allowed Class 2(ll) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(ll) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(ll) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(ll) is an impaired class, and the holder of the Class 2(ll) claim is entitled to vote to accept or reject the Plan.

Class 2(mm) –Secured Claim of Wells Fargo Bank, N.A.

(a)     *Classification*: Class 2(mm) consists of the Secured Claim of Wells Fargo Bank, N.A. against the Debtors' property located at 276 Manzanita Ranch Lane, Henderson, Nevada 89012, which is secured by a lien against the Debtors' residential property, loan number 65065047357831998.

**EXHIBIT E**

(b) *Treatment*: The holder of the allowed Class 2(mm) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c) *Valuation*: The Class 2(mm) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d) *Unsecured Portion of the Claim*: Any amount of a Class 2(mm) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e) *Voting*: Class 2(mm) is an impaired class, and the holder of the Class 2(mm) claim is entitled to vote to accept or reject the Plan.

2.03    Class 3 – Priority Claims

(a) *Classification*: Class 3 consists of the Priority Claims against the Debtors.

(b) *Treatment*: The legal, equitable and contractual rights of the holders of allowed Class 3 Claims are unaltered. Except to the extent that a holder of an allowed Class 3 claim has been paid by the Debtors prior to the effective date of this Plan or otherwise agrees to different treatment, each holder of an allowed Class 3 Claim shall receive, in full and final satisfaction of such allowed Class 3 claim, payment in full in cash on or as soon as reasonably practicable after (i) the effective date of the Plan, (ii) the date such allowed Class 3 claim becomes allowed or (iii) such other date as may be ordered by the Bankruptcy Court.

(c) *Voting*: Class 3 is an unimpaired Class, and is deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the holders of Class 3 claims are not entitled to vote to accept or reject the Plan.

2.04    Class 4 – Convenience Claims

(a) *Classification:* Class 4 consists of Convenience Claims in an amount under $1,000.00 each against the Debtors in accordance with section 1122(b) of the Bankruptcy Code.

(b) *Treatment:* The legal, equitable and contractual rights of the holders of allowed Class 4 claims are unaltered. Except to the extent that a holder of an allowed Class 4 claim has been paid by the Debtors prior to the effective date of this Plan or otherwise agrees to different treatment, each

EXHIBIT E

holder of an allowed Class 4 claim shall receive, in full and final satisfaction of such allowed Class 4 claim, payment in full in cash on or as soon as reasonably practicable after (i) the effective date of the Plan, (ii) the date such allowed Class 4 claim becomes allowed or (iii) such other date as may be ordered by the Bankruptcy Court.

(c) *Voting:* Class 4 is an unimpaired class, and the holders of Class 4 claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the holders of Class 4 claims are not entitled to vote to accept or reject the Plan.

2.05    Class 5 - General Unsecured Claims

(a) *Classification:* Class 5 consists of General Unsecured Claims against the Debtors, which includes the unsecured portion of the Debtors' first and second lien holders' claims.

(b) *Treatment:* Holders of allowed General Unsecured Claims shall receive, in full and final satisfaction of such allowed Class 5 claims, their pro rata share of the Debtors' monthly plan payments, which the Debtors estimate to be 4% of such creditor's claim.

(c) *Voting:* Class 5 is an impaired Class, and holders of Class 5 claims are entitled to vote to accept or reject the Plan.

## ARTICLE III

### TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES AND PRIORITY TAX CLAIMS

3.01    Unclassified Claims. In accordance with section 1123(a)(1) of the Bankruptcy Code, administrative expense claims, and priority tax claims are not in classes.

3.02    Administrative Expense Claims. Each holder of an administrative expense claim allowed under Section 503 of the Bankruptcy Code will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtors.

3.03    Priority Tax Claims. Each holder of a priority tax claim will be paid in full on the effective date of this Plan, or with respect to the Internal Revenue Service, as agreed upon among the parties.

3.04    United States Trustee Fees. All fees required to be paid by 28 U.S.C. § 1930 will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

EXHIBIT E

## ARTICLE IV
## PROVISIONS FOR EXECUTORY CONTRACTS, UNEXPIRED LEASES AND DISPOSITION OF VACANT LAND

4.01    Assumed Executory Contracts and Unexpired Leases.

(a) The Debtors shall assume, on the effective date of this Plan, the executory contracts and unexpired leases listed on **Exhibit 2** attached hereto. Listed on **Exhibit 2** is also the Debtors' estimated cure amount, if any, necessary to assume such contract in accordance with Section 365 of the Bankruptcy Code.

(b) The Debtors will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 4.01(a) above. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

(c) The confirmation order shall constitute an order of the Bankruptcy Court approving such assumptions pursuant to sections 365 and 1123 of the Bankruptcy Code as of the effective date of this Plan. The Debtors reserve the right to amend **Exhibit 2** at any time before the effective date.

(d) Any objection by a party to an executory contract or unexpired lease to the Debtors' proposed assumption or any related cure amount set forth on **Exhibit 2** must be filed, served and actually received by the Debtors at least seven (7) days prior to the confirmation hearing of this Plan. Any party to an executory contract or unexpired lease that fails to object timely to the proposed cure amount will be deemed to have consented to such assignment of its executory contract or unexpired lease. The confirmation order shall constitute an order of the Bankruptcy Court approving any proposed assignments of executory contracts or unexpired leases pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

(e) In the event of a dispute regarding (i) the amount of any cure payment, (ii) the ability of the Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assigned or (iii) any other matter pertaining to assignment, the applicable cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a final order or orders resolving the dispute and approving the assumption. If an objection to a cure amount is sustained by the Bankruptcy Court, the Debtors at their sole option, may elect to reject such executory contract or unexpired lease in lieu of assuming and assigning it.

## ARTICLE V - MEANS FOR IMPLEMENTATION OF THE PLAN

5.01    Source of Payments. If an objection to the Plan is lodged under Section 1129(a)(15) of the Bankruptcy Code, the Debtors' Payments and distributions under the Plan will be funded by the Debtors, based upon their (a) projected monthly rental income and (b) personal income. The Liquidation Analysis attached the Disclosure Statement as **Exhibit C**, outlines the Debtors' sources and uses of income. The Debtors' monthly Plan payment shall be four thousand dollars

**EXHIBIT E**

($4,000.00). If no objections are lodged to the Plan, the Debtors may make no distributions to general unsecured creditors.

5.02   Method of Plan Payments

(a)   On or about the effective date of the Plan, to the extent necessary, the Debtors shall retain Cynthia Bitaut of Baxter Distribution Services, LLP, 2655 Box Canyon Drive #190, Las Vegas, Nevada 89128 as their disbursement agent (the "**Disbursement Agent**"). Except as otherwise provided in the Plan, upon the first full month after the entry of the order confirming the Plan, the Debtors shall begin making monthly distributions to the Disbursement Agent under the Plan. The Disbursement Agent shall begin, as soon as practical, making pro rata payments to the Debtors' unsecured creditors holding allowed claims, on a quarterly basis, until such claims are paid as set forth in the Plan.

(b)   Except as otherwise provided in the Plan, or upon the entry of a final, non-appealable order of the Bankruptcy Court, or as agreed to by the relevant parties, distributions under the Plan on account of a disputed claim that becomes an allowed claim after the effective date of the Plan shall be begin on the regular quarterly payment date, as established by the Disbursement Agent, which is at least thirty (30) days after such claim becomes an allowed claim.

(c)   Notwithstanding anything in the Plan to the contrary, and except as otherwise agreed to by the relevant parties, no partial payments and no partial distributions shall be made with respect to a disputed claim until all such disputes in connection with such disputed claim have been resolved by settlement among the parties or a final order of the Bankruptcy Court. In the event that there are disputed claims requiring adjudication and resolution, the Disbursement Agent shall establish appropriate reserves for potential payment of such Claims.

(d)   In no event, however, shall the Disbursement Agent be held liable for any failures of the Debtors to make any of their payments required under the Plan. If any holders of allowed claims against the Debtors' estate fail to receive payment in accordance with the Plan, the Bankruptcy Court shall retain jurisdiction to hear and determine all matters related to the implementation of this Plan and the payments required hereunder.

(e)   The Disbursement Agent shall be authorized to retain attorneys, if necessary, to object to proofs of claim, pay administrative expenses and collect a reasonable fee for administering the Debtors' post-confirmation estate from the Debtors' plan payments.

5.03   The Holding Company. On or after the effective date of the Plan, the Debtors shall transfer title to their properties to a Nevada limited liability company (the "**Holding Company**"), for liability purposes. The transfer shall not limit the Debtors' personal liability to their Class 1 creditors or their obligations to make payments under this Plan.

5.04   Post-confirmation Management. The Debtors will manage their properties post-petition in the ordinary course, which will include the assumption and continued operation under all partnership agreements, as well as the debt service obligations thereunder. They will be authorized to enter into, terminate and renew lease agreements as they see fit. Such activities will include retaining management companies to aid in the renting of their property, drafting and

EXHIBIT E

serving eviction notices, negotiating loan modifications or refinancing their properties, repairing the properties and maintaining a reserve account of up to one month's mortgage payments, or $10,000.00, whichever is greater. In addition, the Debtors will be authorized to transfer the properties to the Holding Company to limit their liability from claims arising from their rental business (such as injuries occurring at the homes) after the date of confirmation.

5.05    Liquidation and Abandonment of Certain Debtor Entities. Pursuant to Sections 363 and 554 of the Bankruptcy Code, the Debtors may abandon or liquidate Cherish LLC, Keep Safe LLC, 2704 Sattley LLC and Hot Endeavor, LLC (the "**Abandoned Entities**"), as all properties owned by those entities will be transferred back to the Debtors Melani and William R. Schulte, personally. Therefore, the order confirming the Plan will constitute the Bankruptcy Court's finding and determination that the abandonment or liquidation of the Abandoned Entities is (1) in the best interests of the Debtors, their estates and parties in interest, (2) fair, equitable and reasonable, (3) made in good faith and (4) approved pursuant to section 363 and 554 of the Bankruptcy Code and Bankruptcy Rule 9019.

5.06    Post-confirmation Payment. The post-confirmation payment of the claims of allowed general unsecured creditors in the Debtors' cases shall be jointly administered. Accordingly, the Debtors will pay their combined creditor pool through the continued joint administration of their estates post-confirmation, in order to maximize the distributions to unsecured creditors and avoid the related costs of paying their joint creditors separately for 5 years. The order confirming the Plan shall direct the foregoing administration of the Debtors' post-confirmation estates.

5.07    Substantive Consolidation. The filing of the Plan shall constitute a motion for an order of the Bankruptcy Court approving, and the Confirmation Order shall constitute the Bankruptcy Court's approval of, substantive consolidation of the payment of the general unsecured claims against the reorganized Debtors' estates, specifically the estates of Melani and William R. Schulte and SABRECO, Inc. (collectively, the "**Reorganized Debtors**"). On the effective date of the Plan, pursuant to Section 105(a) of the Bankruptcy Code, the Reorganized Debtors' estates shall be substantively consolidated solely for the purposes related to the Plan (including voting and distributions to general unsecured creditors). The substantive consolidation of the Reorganized Debtors' estates shall have the following effects:

(a)     All assets of the Reorganized Debtors' estates shall be treated as though they were assets of a single consolidated estate for purposes of distributions under the Plan;

(b)     Each and every claim scheduled, filed, to be filed, or deemed to have been filed in these Chapter 11 cases against either Reorganized Debtor shall be deemed scheduled or filed against a single consolidated Estate; and

(c)     No distributions shall be made under the Plan on account of claims among the Reorganized Debtors, and any and all liability on account of such claims between the Reorganized Debtors shall be deemed satisfied and discharged upon confirmation.

EXHIBIT E

Notwithstanding the foregoing, on or after the effective date of the Plan, the Reorganized Debtors may take such actions as are necessary to complete a merger with or dissolution of any of the Reorganized Debtors' assets under applicable law.

**ALL ALLOWED SECURED CLAIMS IN CLASSES 1 AND 2 WILL RETAIN THEIR LIENS, SHALL BE PAID AS SET FORTH IN CLASSES 1 AND 2, AND NOT BE ELIMINATED AS THE RESULT OF THE SUBSTANTIVE CONSOLIDATION.**

### ARTICLE VI
### GENERAL PROVISIONS

6.01    Definitions and Rules of Construction.  The definitions and rules of construction set forth in Sections 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan.

6.02    Effective Date of Plan.  The effective date of this Plan is the eleventh business day following the date of the entry of the confirmation order.  But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

6.03    Modification of Plan.

The Debtors may modify the Plan at any time before confirmation of the Plan.  The Court, however, may require a new Disclosure Statement and/or re-voting on the Plan.  The Debtors may also seek to modify the Plan at any time after confirmation only if (A) the Plan has not been substantially consummated and (B) the Court authorizes the proposed modifications after notice and a hearing.

Upon request of the Debtors, the Plan may be modified at any time after confirmation of the Plan, but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take on accounting of any payment of a claim made other than under the Plan.

Effective as of the date hereof and subject to the limitations and rights contained in the Plan: (a) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the confirmation order; and (b) after the entry of the confirmation order, the Debtors may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan; provided, however, that any modification to the Plan shall not affect the rights or treatment of holders of unsecured claims.

6.04    Final Decree.  Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of bankruptcy Procedure, the Debtors, or such other party as the Court shall designate in the Plan confirmation order, shall file a motion with the Court to obtain a final

EXHIBIT E

the provisions of the Plan constitute a good faith compromise and settlement of all the Claims and

controversies resolved pursuant to the Plan.

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:

**A.**     **General**

1.     The Plan, attached hereto as **Exhibit A**, is hereby confirmed and the record of the

Hearing is hereby closed.

2.     The Effective Date of the Plan shall occur on the tenth day after the Court signs and

enters this Order confirming the Plan (the "**Confirmation Date**").

3.     In accordance with section 1141(a) of the Bankruptcy Code and upon the

occurrence of the Effective Date, the Plan shall be binding upon and inure to the benefit of (i) the

Debtors and their respective successors and assigns, (ii) the holders of Claims and their respective

successors and assigns (whether or not they voted to accept the Plan, whether or not they are

impaired under the Plan, and whether or not any such holder has filed or is deemed to have filed a

proof of Claim), (iii) any other Person giving, acquiring or receiving property under the Plan, (iv)

any party to an executory contract or unexpired lease of a Debtors and (v) each of the foregoing's

respective heirs, successors, assigns, trustees, executors, administrators, affiliates, officers,

directors, agents, representatives, attorneys, beneficiaries or guardians, if any.

**B.**     **Treatment of Secured Claims**

4.     The secured portions of the claims of the Debtors' lenders (the "**Lenders**") are

reduced to either the appraised value of the underlying properties (the "**Properties**"), pursuant to

11 U.S.C. § 506(a) or as agreed upon between the parties, as set forth in this Order and the Plan.

5.     That the unsecured portions of the Lenders' claims are reduced and shall be treated

as "general unsecured claims," pursuant to 11 U.S.C. § 506(a).

6

EXHIBIT E

decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

6.05    Vesting of Assets in the Reorganized Debtors and the Holding Company. After confirmation of the Plan, all property of the Debtors shall vest in the reorganized Debtors and the Holding Company, free and clear of all liens, claims, charges or other encumbrances, except those enumerated in Section 6.06, the order approving the Motion to Value and the confirmation order. The reorganized Debtors may operate their business and may use, acquire or dispose of property and compromise or settle any claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the confirmation order. Without limiting the foregoing, the Debtors shall pay the charges that incur after confirmation for professionals' fees, disbursements, expenses or related support services (including reasonable fees relating to the preparation of professional fee applications) without application to the Bankruptcy Court.

6.06    Release of Liens, Claims and Equity Interests. Except as otherwise provided herein or in the following sentence or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, upon confirmation, all liens, claims, mortgages, deeds of trust, or other security interests against the property of the Debtors' estate shall be fully released and discharged. The existing liens and lien rights of those lenders holding claims in Class 1 and Class 2 are expressly preserved under the Plan, and their existing liens shall ride through and remain attached to any and all underlying collateral in any transfer of property expressly set forth in, or contemplated by, the Plan. To the extent any provision in this Plan or the Confirmation Order can be read to contradict the express preservation of lien rights in this provision, this provision controls.

6.07    Certificate of Incorporation and Bylaws. The articles of organization and bylaws (or other formation documents) of the Holding Company shall be amended as may be required to be consistent with the provisions of the Plan and the Bankruptcy Code or as otherwise required by, and in a form reasonably acceptable to, the Debtors. On or as soon as reasonably practicable after confirmation of the Plan, the reorganized Debtors shall file a new certificate of organization with the Nevada secretary of state, as required by section 1123(a)(6) of the Bankruptcy Code.

6.08    Effectuating Documents; Further Transactions. The Debtors may take all actions to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan.

6.09    Exemption from Certain Transfer Taxes. Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the confirmation order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

6.10    Revocation of Plan. The Debtors reserve the right to revoke or withdraw the Plan prior to the confirmation hearing and to file subsequent Chapter 11 plans. If the Debtors revoke or

EXHIBIT E

withdraw the Plan, or if confirmation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Court; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against, the Debtors or any other entity; (b) prejudice in any manner the rights of the Debtors or any other entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtors or any other entity.

6.11    Successors and Assigns.  The rights, benefits and obligations of any entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

6.12    Reservation of Rights.  Except as expressly set forth herein, the Plan shall have no force or effect until the Court enters the confirmation order.  Neither the filing of the Plan, any statement or provision contained in the Disclosure Statement, nor the taking of any action by a Debtors or any other entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) any Debtors with respect to the holders of claims or other entity; or (2) any holder of a Claim or other entity prior to the effective date of the Plan. The Debtors expressly reserve all rights to pursue any claims they may hold against their mortgage lenders or against any other entity prior to or after the effective date of the Plan.

6.13    Further Assurances.  The Debtors or the reorganized Debtors, as applicable, all holders of Claims receiving distributions under the Plan and all other entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the confirmation order.

6.14    Severability.  If, prior to confirmation of the Plan, any term or provision of the Plan is held by the Court to be invalid, void or unenforceable, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted, *provided* that any such alteration or interpretation must be in form and substance reasonably acceptable to the Debtors, and, to the extent such alteration or interpretation affects the rights or treatment of holders of unsecured claims, such claim holder.

6.15    Return of Security Deposits.  Unless the Debtors agree otherwise in a written agreement or stipulation approved by the Court, all security deposits provided by the Debtors to any person or entity at any time after the petition date shall be returned to the Debtors within twenty (20) days after the date of confirmation, without deduction or offset of any kind.

6.16    Filing of Additional Documents.  On or before the Effective Date, the Debtors may file with the Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

EXHIBIT E

6.17  Captions.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

ARTICLE VII
DISCHARGE

**7.01 Discharge.**  Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments to unsecured creditors under this Plan, if the Debtors elect to make such payments, which is 5 years or 20 quarterly payments, or as otherwise provided in § 1141(d)(5) of the Code.  The Debtors will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

Dated:   November 23, 2010

Respectfully submitted,

MELANI SCHULTE

/s/ Melani Schulte


WILLIAM R. SCHULTE

/s/ William R. Schulte

EXHIBIT E

# EXHIBIT 1

EXHIBIT E

**Exhibit 1**

**Residential Property Owned by Melani and William R. Schulte** .

9500 Aspen Glow Drive
Las Vegas, Nevada 89134
Value:                               $142,500.00

2460 Avenida Cortes
Henderson, Nevada 89074
Value:                               $123,000.00

4710 Brently Place
Las Vegas, Nevada 89122
Value:                               $109,105.70

7873 Bridgefield Lane
Las Vegas, Nevada 89147
Value:                               $126,000.00

3322 Cheltenham Street
Las Vegas, Nevada 89129
Value:                               $99,806.60

3383 Cloverdale Court
Las Vegas, Nevada 89117
Value:                               $168,856.34

1624 Desert Canyon Court
Las Vegas, Nevada 89128
Value:                               $168,000.00

3729 Discovery Creek Avenue
North Las Vegas, Nevada 89031
Value:                               $125,446.93

1392 Echo Falls Avenue
Las Vegas, Nevada 89183
Value:                               $132,000.00

1701 Empire Mine Drive
Henderson, Nevada 89014
Value:                               $80,000.00

EXHIBIT E

9020 Feather River Court
Las Vegas, Nevada 89117
Value:                                          $135,000.00

1013 Golden Hawk Way
Las Vegas, Nevada 89108
Value:                                          $94,000.00

4521 W. La Madre Way
Las Vegas, Nevada 89031
Value:                                          $100,000.00

8562 Lambert Drive
Las Vegas, Nevada 89147
Value:                                          $148,000.00

276 Manzanita Ranch Lane
Henderson, Nevada 89012
Value:                                          $162,000.00

2861 Marathon Drive
Henderson, Nevada 89074
Value:                                          $125,000.00

5218 Misty Morning Drive
Las Vegas, Nevada 89118
Value:                                          $138,000.00

10317 Neopolitan Place
Las Vegas, Nevada 89144
Value:                                          $140,000.00

956 Ostrich Fern Court
Las Vegas, Nevada 89183
Value:                                          $152,440.29

8216 Peaceful Canyon Drive
Las Vegas, Nevada 89128
Value:                                          $143,000.00

6091 Pumpkin Patch Avenue
Las Vegas, Nevada 89142
Value:                                          $108,307.50

EXHIBIT E

5709 Ridgetree Avenue
Las Vegas, Nevada 89107
Value:                                    $57,963.85

5524 Rock Creek Lane
Las Vegas, Nevada 89130
Value:                                    $100,000.00

922 Saddle Horn Drive
Henderson, Nevada 89002
Value:                                    $114,000.00

5609 San Ardo Place
Las Vegas, Nevada 89130
Value:                                    $115,000.00

2704 Sattley Circle
Las Vegas, Nevada 89117
Value:                                    $210,000.00

9521 Sierra Summit Avenue
Las Vegas, Nevada 89134
Value:                                    $135,000.00

1528 Splinter Rock Way
Las Vegas, Nevada 89031
Value:                                    $112,000.00

1194 Stormy Valley Road
Las Vegas, Nevada 89123
Value:                                    $127,000.00

2290 Surrey Meadows Avenue
Las Vegas, Nevada 89130
Value:                                    $195,000.00

2614 Sweet Leilani Avenue
North Las Vegas, Nevada 89131
Value:                                    $130,720.99

2525 Via Di Autostrada
Henderson, Nevada 89074
Value:                                    $125,000.00

EXHIBIT E

509 Canyon Greens
Las Vegas, Nevada 89144
Value:                                    $807,141.58


**Total Appraised Value:**            **$4,949,289.78**

EXHIBIT E

# EXHIBIT 2

**EXHIBIT 2**

Melani Schulte and William R. Schulte Leases and Executory Contracts to be Assumed Pursuant to the Plan

Residential Lease Agreements

Standard Residential Lease Agreement dated June 1, 2010 between the Debtors and Luther and Rita Cobbs for the rental of:
9500 Aspen Glow Drive
Las Vegas, Nevada 89134

Standard Residential Lease Agreement dated June 27, 2008 between the Debtors and Shireen McGrath for the rental of:
2460 Avenida Cortes
Henderson, Nevada 89074

Standard Residential Lease Agreement dated February 18, 2005 between the Debtors and Evelyn and Richard Deschamps for the rental of:
4710 Brently Place
Las Vegas, Nevada 89122

Standard Residential Lease Agreement dated June 1, 2010 between the Debtors and Antonio & Linda Reina for the rental of:
7873 Bridgefield Lane
Las Vegas, Nevada 89147

Standard Residential Lease Agreement dated May 27, 2008 between the Debtors and William Hallman for the rental of:
3322 Cheltenham Street
Las Vegas, Nevada 89129

Standard Residential Lease Agreement dated March 7, 2010 between the Debtors and Nikheel Arnold Prasad for the rental of:
3383 Cloverdale Court
Las Vegas, Nevada 89117

Standard Residential Lease Agreement dated June 1, 2010 between the Debtors and Ryan Mack & Lorraine Acevedo for the rental of:
1624 Desert Canyon Court
Las Vegas, Nevada 89128

Standard Residential Lease Agreement dated June 27, 2005 between the Debtors and Tyler Taylor for the rental of:
3729 Discovery Creek Avenue
North Las Vegas, Nevada 89031

**EXHIBIT E**

6.    That the secured and unsecured claims against the property located at 509 Canyon Greens Drive, Las Vegas, Nevada, are bifurcated in accordance in accordance with the agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 509 Canyon Greens Drive, Las Vegas, Nevada  are:

a.  First Lien – America's Servicing Company – Loan Number: 1205043971

    i.     Secured Claim -      $807,141.58

    ii.    Unsecured Claim -    $0.00

b.  Second Lien – Countrywide/BAC Home Loans Servicing, LP – Loan Number: 110655785

    i.     Secured Claim -      $0.00

    ii.    Unsecured Claim -    $839,500.00

c.  Third Lien - Deborah Drake

    i.     Secured Claim -      $0.00

    ii.    Unsecured Claim -    $155,000.00

d.  Fourth Lien – Z'REA LP

    i.     Secured Claim -      $0.00

    ii.    Unsecured Claim -    $2,000,000.00

e.  Fifth Lien – Jeffrey Sylvester

    i.     Secured Claim -      $0.00

    ii.    Unsecured Claim -    $72,000.00

7.    That the secured and unsecured claims against the property located at 9500 Aspen Glow Drive, Las Vegas, Nevada, are bifurcated in accordance with the agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims,"

7

EXHIBIT E

Standard Residential Lease Agreement dated June 12, 2004 between the Debtors and Shaun Powell, Nicholas Hurd and Chad Jordan for the rental of:
1392 Echo Falls Avenue
Las Vegas, Nevada 89183

Standard Residential Lease Agreement dated June 1, 2010 between the Debtors and Roly Agreda for the rental of:
1701 Empire Mine Drive
Henderson, Nevada 89014

Standard Residential Lease Agreement dated June 17, 2007 between the Debtors and James and Judy Craig for the rental of:
9020 Feather River Court
Las Vegas, Nevada 89117

Standard Residential Lease Agreement dated December 1, 2010 between the Debtors and Arni Flenoy for the rental of:
1013 Golden Hawk Way
Las Vegas, Nevada 89108

Standard Residential Lease Agreement dated June 1, 2010 between the Debtors and Linda Marrone for the rental of:
4521 W. La Madre Way
Las Vegas, Nevada 89031

Standard Residential Lease Agreement dated March 19, 2009 between the Debtors and Be Ngoc Dong and Tran Kim for the rental of:
8562 Lambert Drive
Las Vegas, Nevada 89147

Standard Residential Lease Agreement dated March 27, 2010 between the Debtors and Xeomara Ramos for the rental of:
276 Manzanita Ranch Lane
Henderson, Nevada 89012

Standard Residential Lease Agreement dated March 17, 2007 between the Debtors and Benjamin Tranquillo and Nicole Carpenter for the rental of:
2861 Marathon Drive
Henderson, Nevada 89074

Standard Residential Lease Agreement dated June 1, 2010 between the Debtors and Earl Humphrey for the rental of:
5218 Misty Morning Drive
Las Vegas, Nevada 89118

EXHIBIT E

Standard Residential Lease Agreement dated May 14, 2010 between the Debtors and Rosemary Karnay and Daniel Shaefer for the rental of:
10317 Neopolitan Place
Las Vegas, Nevada 89144

Standard Residential Lease Agreement dated September 1, 2007 between the Debtors and Clint Fisher for the rental of:
956 Ostrich Fern Court
Las Vegas, Nevada 89183

Standard Residential Lease Agreement dated April 30, 2001 between the Debtors and James Earl and Lisa Hammond for the rental of:
8216 Peaceful Canyon Drive
Las Vegas, Nevada 89128

Standard Residential Lease Agreement dated June 1, 2010 between the Debtors and Darrin and Jody Miller for the rental of:
6091 Pumpkin Patch Avenue
Las Vegas, Nevada 89142

Standard Residential Lease Agreement dated February 1, 2010 between the Debtors and Donald and Bonnie Lee for the rental of:
5709 Ridgetree Avenue
Las Vegas, Nevada 89107

Standard Residential Lease Agreement dated June 1, 2010 between the Debtors and Charles Gallo for the rental of:
5524 Rock Creek Lane
Las Vegas, Nevada 89130

Standard Residential Lease Agreement dated October 1, 2009 between the Debtors and Richard and Mary Gordon for the rental of:
922 Saddle Horn Drive
Henderson, Nevada 89002

Standard Residential Lease Agreement dated June 1, 2010 between the Debtors and J. Richard Stull for the rental of:
5609 San Ardo Place
Las Vegas, Nevada 89130

Standard Residential Lease Agreement dated June 1, 2010 between the Debtors and Devin Marrin for the rental of:
2704 Sattley Circle
Las Vegas, Nevada 89117

EXHIBIT E

Standard Residential Lease Agreement dated August 27, 2009 between the Debtors and Lyla and Phillip Dwyer for the rental of:
9521 Sierra Summit Avenue
Las Vegas, Nevada 89134

Standard Residential Lease Agreement dated April 27, 2010 between the Debtors and Karen Yos for the rental of:
1528 Splinter Rock Way
Las Vegas, Nevada 89031

Standard Residential Lease Agreement dated July 27, 2009 between the Debtors and Donna Hanna and Kenneth Wade for the rental of:
1194 Stormy Valley Road
Las Vegas, Nevada 89123

Standard Residential Lease Agreement dated April 27, 2007 between the Debtors and William Lundy and Theresa Orden for the rental of:
2290 Surrey Meadows Avenue
Las Vegas, Nevada 89130

Standard Residential Lease Agreement dated January 4, 2007 between the Debtors and Tyler Taylor for the rental of:
2614 Sweet Leilani Avenue
North Las Vegas, Nevada 89131

Standard Residential Lease Agreement dated June 1, 2010 between the Debtors and Brian Hobbs for the rental of:
2525 Via Di Autostrada
Henderson, Nevada 89074

**Residential Mortgages**

Residential Mortgage by and between the Debtors and America's Servicing Company for the purchase of:
509 Canyon Greens
Las Vegas, Nevada 89144
Cure Amount:                    $ 0.00

Residential Mortgage by and between the Debtors and CitiMortgage for the purchase of:
9500 Aspen Glow Drive
Las Vegas, Nevada 89134
Cure Amount:                    $0.00

EXHIBIT E

Residential Mortgage by and between Debtors and Chase Home Finance for the purchase of:
2460 Avenida Cortes
Henderson, Nevada 89074
Cure Amount:                               $0.00


Residential Mortgage by and between the Debtors and Countrywide Home Loans for the
purchase of:
4710 Brently Place
Las Vegas, Nevada 89122
Cure Amount:                               $0.00


Residential Mortgage by and between the Debtors and Chase Home Finance for the purchase of:
7873 Bridgefield Lane
Las Vegas, Nevada 89147
Cure Amount:                               $0.00


Residential Mortgage by and between the Debtors and Countrywide Home Lending for the
purchase of:
3322 Cheltenham Street
Las Vegas, Nevada 89129
Cure Amount:                               $0.00


Residential Mortgage by and between the Debtors and Countrywide Home Lending for the
purchase of:
3383 Cloverdale Court
Las Vegas, Nevada 89117
Cure Amount:                               $0.00


Residential Mortgage by and between the Debtors and CitiMortgage for the purchase of:
1624 Desert Canyon Court
Las Vegas, Nevada 89128
Cure Amount:                               $0.00


Residential Mortgage by and between the Debtors and Countrywide Home Lending for the
purchase of:
3729 Discovery Creek Avenue
North Las Vegas, Nevada 89031
Cure Amount:                               $0.00


Residential Mortgage by and between the Debtors and Litton Loan Servicing for the purchase of:
1392 Echo Falls Avenue
Las Vegas, Nevada 89183
Cure Amount:                               $0.00

EXHIBIT E

Residential Mortgage by and between the Debtors and Countrywide Home Lending for the purchase of:
1701 Empire Mine Drive
Henderson, Nevada 89014
Cure Amount:                 $0.00

Residential Mortgage by and between the Debtors and Chase Home Finance for the purchase of:
9020 Feather River Court
Las Vegas, Nevada 89117
Cure Amount:                 $0.00

Residential Mortgage by and between the Debtors and CitiMortgage for the purchase of:
1013 Golden Hawk Way
Las Vegas, Nevada 89108
Cure Amount:                 $0.00

Residential Mortgage by and between the Debtors and CitiMortgage for the purchase of:
4521 W. La Madre Way
Las Vegas, Nevada 89031
Cure Amount:                 $0.00

Residential Mortgage by and between the Debtors and CitiMortgage for the purchase of:
8562 Lambert Drive
Las Vegas, Nevada 89147
Cure Amount:                 $0.00

Residential Mortgage by and between the Debtors and CitiMortgage for the purchase of:
276 Manzanita Ranch Lane
Henderson, Nevada 89012
Cure Amount:                 $0.00

Residential Mortgage by and between the Debtors and CitiMortgage for the purchase of:
2861 Marathon Drive
Henderson, Nevada 89074
Cure Amount:                 $0.00

Residential Mortgage by and between the Debtors and Fifth Third Bank for the purchase of:
5218 Misty Morning Drive
Las Vegas, Nevada 89118
Cure Amount:                 $0.00

Residential Mortgage by and between the Debtors and Countrywide Home Lending for the purchase of:
10317 Neopolitan Place
Las Vegas, Nevada 89144
Cure Amount:                 $0.00

EXHIBIT E

Residential Mortgage by and between the Debtors and Litton Loan for the purchase of:
956 Ostrich Fern Court
Las Vegas, Nevada 89183
Cure Amount:                          $0.00

Residential Mortgage by and between the Debtors and Chase Home Finance for the purchase of:
8216 Peaceful Canyon Drive
Las Vegas, Nevada 89128
Cure Amount:                          $0.00

Residential Mortgage by and between the Debtors and Chase Manhattan Mortgage for the purchase of:
6091 Pumpkin Patch Avenue
Las Vegas, Nevada 89142
Cure Amount:                          $0.00

Residential Mortgage by and between the Debtors and Countrywide Home Lending for the purchase of:
5709 Ridgetree Avenue
Las Vegas, Nevada 89107
Cure Amount:                          $0.00

Residential Mortgage by and between the Debtors and Fidelity Bank for the purchase of:
5524 Rock Creek Lane
Las Vegas, Nevada 89130
Cure Amount:                          $0.00

Residential Mortgage by and between the Debtors and CitiMortgage for the purchase of:
922 Saddle Horn Drive
Henderson, Nevada 89002
Cure Amount:                          $0.00

Residential Mortgage by and between the Debtors and CitiMortgage for the purchase of:
5609 San Ardo Place
Las Vegas, Nevada 89130
Cure Amount:                          $0.00

Residential Mortgage by and between the Debtors and Mel Elizer and Maxine Llewellyn for the purchase of:
2704 Sattley Circle
Las Vegas, Nevada 89117
Cure Amount:                          $0.00

EXHIBIT E

Residential Mortgage by and between the Debtors and Countrywide Home Lending for the purchase of:
9521 Sierra Summit Avenue
Las Vegas, Nevada 89134
Cure Amount: $0.00

Residential Mortgage by and between the Debtors and Wells Fargo Home Mortgage for the purchase of:
1528 Splinter Rock Way
Las Vegas, Nevada 89031
Cure Amount: $0.00

Residential Mortgage by and between the Debtors and CitiMortgage for the purchase of:
1194 Stormy Valley Road
Las Vegas, Nevada 89123
Cure Amount: $0.00

Residential Mortgage by and between the Debtors and CitiMortgage for the purchase of:
2290 Surrey Meadows Avenue
Las Vegas, Nevada 89130
Cure Amount: $0.00

Residential Mortgage by and between the Debtors and Countrywide Home Lending for the purchase of:
2614 Sweet Leilani Avenue
North Las Vegas, Nevada 89131
Cure Amount: $0.00

Residential Mortgage by and between the Debtors and CitiMortgage for the purchase of:
2525 Via Di Autostrada
Henderson, Nevada 89074
Cure Amount: $0.00

EXHIBIT E

pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 9500 Aspen Glow Drive, Las Vegas, Nevada, are:

    a.  First Lien – CitiMortgage - Loan Number – 0577014851-7

        i.     Secured Claim -     $94,646.23

        ii.    Unsecured Claim -   $0.00

    b.  Second Lien – City National Bank - Loan Number – 1824409

        i.     Secured Claim -     $25,777.44

        ii.    Unsecured Claim -   $974,222.56

8.     That the secured and unsecured claims against the property located at 2460 Avenida Cortes, Henderson, Nevada, are bifurcated in accordance with the agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 2460 Avenida Cortes, Henderson, Nevada, are:

    a.  First Lien – JP Morgan Chase Bank - Loan Number – 8483094531

        i.     Secured Claim -     $69,436.96

        ii.    Unsecured Claim -   $0.00

    b.  Second Lien – BAC Home Loans Servicing, LP - Loan Number – 156496481

        i.     Secured Claim -     $39,883.68

        ii.    Unsecured Claim -   $125,427.32

9.     That the secured and unsecured claims against the property located at 4710 Brently Place, Las Vegas, Nevada, are bifurcated in accordance with the agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 4710 Brently Place, Las Vegas, Nevada, are:

8

EXHIBIT E

a. First Lien – BAC Home Loans Servicing  - Loan Number – 86314260

    i.      Secured Claim -    $109,105.70

    ii.     Unsecured Claim -    $0.00

b. Second Lien – Bank of America - Loan Number – 68189001596799

    i.      Unsecured Claim -    $100,000.00

c. Third Lien – Deborah Drake

    i.      Unsecured Claim -    $155,000.00

10.    That the secured and unsecured claims against the property located at 7873 Bridgefield Lane, Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and the creditors' wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 7873 Bridgefield Lane, Las Vegas, Nevada, are:

a. First Lien – JP Morgan Chase Bank  - Loan Number – 8483094549

    i.      Secured Claim -    $73,213.85

    ii.     Unsecured Claim -    $0.00

b. Second Lien – Bank of Nevada – Loan Number – 910016328

    i.      Secured Claim -    $37,309.74

    ii.     Unsecured Claim -    $472,690.26

11.    That the secured and unsecured claims against the property located at 3322 Cheltenham Street, Las Vegas, Nevada, are bifurcated in accordance with agreement of the parties; and the creditor's wholly unsecured claims shall be treated as "general unsecured claims," pursuant to 11 U.S.C. § 506(a), and the total amounts of the claims against 3322 Cheltenham Street, Las Vegas, Nevada, are:

a. First Lien – BAC Home Loans Servicing LP  - Loan Number – 84536650

9

EXHIBIT E

Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
Bryan A. Lindsey, Esq.
Nevada Bar No. 10662
The Schwartz Law Firm, Inc.
701 E. Bridger Avenue, Suite 120
Las Vegas, Nevada 89101
Telephone: (702) 385-5544
Facsimile: (702) 385-2741
Attorneys for the Debtors

## UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re: | ) Case No. 09-29123-BAM |
| | ) Chapter 11 |
| Melani Schulte and William R. Schulte, | ) |
| | ) Jointly Administered with: |
| | ) |
| 2704 Sattley LLC, | ) 09-27238-BAM |
| Hot Endeavor LLC, | ) 09-27909-BAM |
| Cherish LLC, | ) 09-28513-BAM |
| SABRECO Inc., | ) 09-31584-BAM |
| Keep Safe LLC | ) 09-31585-BAM |
| | ) |
| Debtors. | ) Confirmation Hearing Date: January 31, 2011 |
| | ) Confirmation Hearing Time: 9:30 a.m. |
| | ) |

## THIRD AMENDED JOINT PLAN OF REORGANIZATION OF
## MELANI SCHULTE AND WILLIAM R. SCHULTE

### ARTICLE I – SUMMARY

This Third Amended Joint Plan of Reorganization (the "**Plan**") under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq*. (the "**Bankruptcy Code**") proposes to pay creditors of the above-captioned debtors and debtors-in-possession (the "**Debtors**") from the reorganization of their residential property and secured debt.

This Plan provides for 2 classes of secured claims and 3 classes of unsecured claims. Unsecured creditors holding allowed claims may receive distributions, if objections to the Plan are lodged under Section 1129(a)(15) of the Bankruptcy Code, which the Debtors have valued at approximately 4% of each creditor's allowed claim. If no objections are lodged, the Debtors may elect to make zero distributions to general unsecured creditors. This Plan also provides for the payment of administrative and priority claims in full on the effective date of this Plan, or as agreed by the holder of such administrative or priority claim.

EXHIBIT E

as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)   *Unsecured Portion of the Claim*: Any amount of a Class 2(m) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)   *Voting*: Class 2(m) is an impaired class, and the holder of the Class 2(m) claim is entitled to vote to accept or reject the Plan.

Class 2(n) –Secured Claim of Countrywide Home Loans

(a)   *Classification*: Class 2(n) consists of the Secured Claim of Countrywide Home Loans against the Debtors' property located at 1701 Empire Mine Drive, Henderson, Nevada 89014, which is secured by a lien against the Debtors' residential property, loan number 85885841.

(b)   *Treatment*: The holder of the allowed Class 2(n) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)   *Valuation*: The Class 2(n) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)   *Unsecured Portion of the Claim*: Any amount of a Class 2(n) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)   *Voting*: Class 2(n) is an impaired class, and the holder of the Class 2(n) claim is entitled to vote to accept or reject the Plan.

Class 2(o) –Secured Claim of Chase Home Finance

(a)   *Classification*: Class 2(o) consists of the Secured Claim of Chase Home Finance against the Debtors' property located at 9020 Feather River Court, Las Vegas, Nevada 89117, which is secured by a lien against the Debtors' residential property, loan number 8483094523.

(b)   *Treatment*: The holder of the allowed Class 2(o) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

Page | 10

EXHIBIT E

(c) *Valuation*: The Class 2(o) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d) *Unsecured Portion of the Claim*: Any amount of a Class 2(o) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e) *Voting*: Class 2(o) is an impaired class, and the holder of the Class 2(o) claim is entitled to vote to accept or reject the Plan.

Class 2(p) –Secured Claim of Countrywide Home Loans

(a) *Classification*: Class 2(p) consists of the Secured Claim of Countrywide Home Loans against the Debtors' property located at 9020 Feather River Court, Las Vegas, Nevada 89117, which is secured by a lien against the Debtors' residential property, loan number 156496465.

(b) *Treatment*: The holder of the allowed Class 2(p) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c) *Valuation*: The Class 2(p) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d) *Unsecured Portion of the Claim*: Any amount of a Class 2(p) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e) *Voting*: Class 2(p) is an impaired class, and the holder of the Class 2(p) claim is entitled to vote to accept or reject the Plan.

Class 2(q) –Secured Claim of CitiMortgage, Inc.

(a) *Classification*: Class 2(q) consists of the Secured Claim of CitiMortgage, Inc. against the Debtors' property located at 1013 Golden Hawk Way, Las Vegas, Nevada 89108, which is secured by a lien against the Debtors' residential property, loan number 0616443148-5.

EXHIBIT E

(b)     *Treatment*: The holder of the allowed Class 2(q) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(q) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(q) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(q) is an impaired class, and the holder of the Class 2(q) claim is entitled to vote to accept or reject the Plan.

Class 2(r) –Secured Claim of CitiMortgage, Inc.

(a)     *Classification*: Class 2(r) consists of the Secured Claim of CitiMortgage, Inc. against the Debtors' property located at 4521 W. La Madre Avenue, North Las Vegas, Nevada 89031, which is secured by a lien against the Debtors' residential property, loan number 0011951495-8.

(b)     *Treatment*: The holder of the allowed Class 2(r) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(r) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(r) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(r) is an impaired class, and the holder of the Class 2(r) claim is entitled to vote to accept or reject the Plan.

EXHIBIT E

Class 2(s) –Secured Claim of CitiMortgage, Inc.

(a)    *Classification*: Class 2(s) consists of the Secured Claim of CitiMortgage, Inc. against the Debtors' property located at 8562 Lambert Drive, Las Vegas, Nevada 89147, which is secured by a lien against the Debtors' residential property, loan number 0002525827-8.

(b)    *Treatment*: The holder of the allowed Class 2(s) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)    *Valuation*: The Class 2(s) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)    *Unsecured Portion of the Claim*: Any amount of a Class 2(s) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)    *Voting*: Class 2(s) is an impaired class, and the holder of the Class 2(s) claim is entitled to vote to accept or reject the Plan.

Class 2(t) –Secured Claim of CitiMortgage, Inc.

(a)    *Classification*: Class 2(t) consists of the Secured Claim of CitiMortgage, Inc. against the Debtors' property located at 276 Manzanita Ranch Lane, which is secured by a lien against the Debtors' residential property, loan number 000252553-0.

(b)    *Treatment*: The holder of the allowed Class 2(t) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)    *Valuation*: The Class 2(t) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)    *Unsecured Portion of the Claim*: Any amount of a Class 2(t) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

EXHIBIT E

(e)     *Voting*: Class 2(t) is an impaired class, and the holder of the Class 2(t) claim is entitled to vote to accept or reject the Plan.

Class 2(u) –Secured Claim of CitiMortgage, Inc.

(a)     *Classification*: Class 2(u) consists of the Secured Claim of CitiMortgage, Inc. against the Debtors' property located at 2861 Marathon Drive, Henderson, Nevada 89074, which is secured by a lien against the Debtors' residential property, loan number 0702460064-0.

(b)     *Treatment*: The holder of the allowed Class 2(u) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(r) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(u) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(u) is an impaired class, and the holder of the Class 2(u) claim is entitled to vote to accept or reject the Plan.

Class 2(v) –Secured Claim of Fifth Third Bank

(a)     *Classification*: Class 2(v) consists of the Secured Claim of Fifth Third Bank against the Debtors' property located at 5218 Misty Morning Drive, Las Vegas, Nevada 89118, which is secured by a lien against the Debtors' residential property, loan number 0201746682.

(b)     *Treatment*: The holder of the allowed Class 2(v) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(v) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

EXHIBIT E

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(v) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(v) is an impaired class, and the holder of the Class 2(v) claim is entitled to vote to accept or reject the Plan.

Class 2(w) –Secured Claim of Countrywide Home Loans

(a)     *Classification*: Class 2(w) consists of the Secured Claim of Countrywide Home Loans against the Debtors' property located at 10317 Neopolitan Place, which is secured by a lien against the Debtors' residential property, loan number 74761662.

(b)     *Treatment*: The holder of the allowed Class 2(w) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(w) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(w) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(w) is an impaired class, and the holder of the Class 2(w) claim is entitled to vote to accept or reject the Plan.

Class 2(x) –Secured Claim of Litton Loan Servicing

(a)     *Classification*: Class 2(x) consists of the Secured Claim of Litton Loan Servicing against the Debtors' property located at 956 Ostrich Fern Court, Las Vegas, Nevada 89183, which is secured by a lien against the Debtors' residential property, loan number 19732460.

(b)     *Treatment*: The holder of the allowed Class 2(x) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(x) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property

EXHIBIT E

as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d) *Unsecured Portion of the Claim*: Any amount of a Class 2(x) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e) *Voting*: Class 2(x) is an impaired class, and the holder of the Class 2(x) claim is entitled to vote to accept or reject the Plan.

Class 2(y) –Secured Claim of Chase Home Finance

(a) *Classification*: Class 2(y) consists of the Secured Claim of Chase Home Finance against the Debtors' property located at 8216 Peaceful Canyon Drive, Las Vegas, Nevada 89128, which is secured by a lien against the Debtors' residential property, loan number 5942618181.

(b) *Treatment*: The holder of the allowed Class 2(y) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c) *Valuation*: The Class 2(y) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d) *Unsecured Portion of the Claim*: Any amount of a Class 2(y) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e) *Voting*: Class 2(y) is an impaired class, and the holder of the Class 2(y) claim is entitled to vote to accept or reject the Plan.

Class 2(z) –Secured Claim of Countrywide Home Loans

(a) *Classification*: Class 2(z) consists of the Secured Claim of Countrywide Home Loans against the Debtors' property located at 8216 Peaceful Canyon Drive, Las Vegas, Nevada 89128, which is secured by a lien against the Debtors' residential property, loan number 15470557.

(b) *Treatment*: The holder of the allowed Class 2(z) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

EXHIBIT E

(c)   *Valuation*: The Class 2(z) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)   *Unsecured Portion of the Claim*: Any amount of a Class 2(z) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)   *Voting*: Class 2(z) is an impaired class, and the holder of the Class 2(z) claim is entitled to vote to accept or reject the Plan.

Class 2(aa) –Secured Claim of Chase Manhattan Mortgage

(a)   *Classification*: Class 2(aa) consists of the Secured Claim of Chase Manhattan Mortgage against the Debtors' property located at 6091 Pumpkin Patch Avenue, Las Vegas, Nevada 89142, which is secured by a lien against the Debtors' residential property, loan number 001251107609.

(b)   *Treatment*: The holder of the allowed Class 2(aa) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)   *Valuation*: The Class 2(aa) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)   *Unsecured Portion of the Claim*: Any amount of a Class 2(aa) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)   *Voting*: Class 2(aa) is an impaired class, and the holder of the Class 2(aa) claim is entitled to vote to accept or reject the Plan.

Class 2(bb) –Secured Claim of Countrywide Home Loans

(a)   *Classification*: Class 2(bb) consists of the Secured Claim of Countrywide Home Loans against the Debtors' property located at 5709 Ridgetree Avenue, Las Vegas, Nevada 89107, which is secured by a lien against the Debtors' residential property, loan number 943813.

EXHIBIT E

(b)     *Treatment*: The holder of the allowed Class 2(bb) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(bb) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(bb) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(bb) is an impaired class, and the holder of the Class 2(bb) claim is entitled to vote to accept or reject the Plan.

Class 2(cc) –Secured Claim of Fidelity Bank

(a)     *Classification*: Class 2(cc) consists of the Secured Claim of Fidelity Bank against the Debtors' property located at 5524 Rock Creek Lane, Las Vegas, Nevada 89130, which is secured by a lien against the Debtors' residential property, loan number 0099010769.

(b)     *Treatment*: The holder of the allowed Class 2(cc) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(cc) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(cc) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(cc) is an impaired class, and the holder of the Class 2(cc) claim is entitled to vote to accept or reject the Plan.

EXHIBIT E

Class 2(dd) –Secured Claim of CitiMortgage, Inc.

(a)   *Classification*: Class 2(dd) consists of the Secured Claim of CitiMortgage, Inc. against the Debtors' property located at 922 Saddle Horn Drive, Henderson, Nevada 89002, which is secured by a lien against the Debtors' residential property, loan number 0002415316-5.

(b)   *Treatment*: The holder of the allowed Class 2(dd) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)   *Valuation*: The Class 2(dd) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)   *Unsecured Portion of the Claim*: Any amount of a Class 2(dd) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)   *Voting*: Class 2(dd) is an impaired class, and the holder of the Class 2(dd) claim is entitled to vote to accept or reject the Plan.

Class 2(ee) –Secured Claim of CitiMortgage, Inc.

(a)   *Classification*: Class 2(ee) consists of the Secured Claim of CitiMortgage, Inc. against the Debtors' property located at 5609 San Ardo Place, Las Vegas, Nevada 89130, which is secured by a lien against the Debtors' residential property, loan number 00001535955-7.

(b)   *Treatment*: The holder of the allowed Class 2(ee) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)   *Valuation*: The Class 2(ee) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)   *Unsecured Portion of the Claim*: Any amount of a Class 2(ee) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

EXHIBIT E

All creditors should refer to Articles II through IV of this Plan for information regarding the precise treatment of their claims. A Fourth Amended Joint Disclosure Statement (the "**Disclosure Statement**") that provides more detailed information regarding this Plan and the rights of creditors was circulated with this Plan. Your rights may be affected. You should read these papers carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.

## ARTICLE II - CLASSIFICATION AND TREATMENT OF CLAIMS

This Plan constitutes the Chapter 11 plan of reorganization of the Debtors. All Claims against the Debtors are placed in classes (each a "**Class**") as designated by Classes 1 through 5. In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims and Priority Tax Claims.

The categories of Claims (as defined in the Bankruptcy Code, listed below classify Claims for all purposes, including, without limitation, voting, confirmation and distribution pursuant to this Plan sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim to be classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that any such Claim is allowed in that Class and has not been paid or otherwise settled prior to the effective date of the Plan as determined in paragraph 6.02 below.

**THE DEBTORS INTEND TO SEEK SUBSTANTIVE CONSOLIDATION IN CONNECTION WITH THE PAYMENT OF THE GENERAL UNSECURED CLAIMS AGAINST THEIR ESTATES THROUGH THE PLAN. IF SUCH SUBSTANTIVE CONSOLIDATION IS AUTHORIZED AND ORDERED BY THE COURT, CERTAIN ALLOWED CLAIMS OF THE DEBTORS OR THEIR ESTATES SHALL BE SATISFIED FROM THE COMBINED CASH AND OTHER PROPERTY OF THE DEBTORS AND THEIR COMBINED ESTATES. ALL ALLOWED SECURED CLAIMS IN CLASSES 1 AND 2 WILL RETAIN THEIR LIENS AND NOT BE ELIMINATED AS THE RESULT OF THE SUBSTANTIVE CONSOLIDATION.**

**Classification of Claims**

2.01        Class 1(a) – Secured Claim of America's Servicing Company

       (a)        *Classification*: Class 1(a) consists of the Secured Claim of America's Servicing Company against the Debtors' property located at 509 Canyon Greens, Las Vegas, Nevada 89144, which is secured by a lien against the Debtors' residential property, loan number 120504371.

       (b)        *Treatment*: The holder of the allowed Class 1(a) Secured Claim shall be unimpaired and paid in full in accordance with the terms of its related note and mortgage.

**EXHIBIT E**

(e) *Voting*: Class 2(ee) is an impaired class, and the holder of the Class 2(ee) claim is entitled to vote to accept or reject the Plan.

Class 2(ff) –Secured Claim of Maxine Llewellyn and Mel Elizer

(a) *Classification*: Class 2(ff) consists of the Secured Claim of Maxine Llewellyn and Mel Elizer against the Debtors' property located at 2704 Sattley Circle, Las Vegas, Nevada 89117, which is secured by a lien against the Debtors' residential property.

(b) *Treatment*: The holder of the allowed Class 2(ff) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, payable in monthly installments of $700.00, over a period of 5 years, with a balloon payment of the amount of its claim after the five-year period.

(c) *Valuation*: The Class 2(ff) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d) *Unsecured Portion of the Claim*: Any amount of a Class 2(ff) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e) *Voting*: Class 2(ff) is an impaired class, and the holder of the Class 2(ff) claim is entitled to vote to accept or reject the Plan.

Class 2(gg) –Secured Claim of Countrywide Home Loans

(a) *Classification*: Class 2(gg) consists of the Secured Claim of Countrywide Home Loans against the Debtors' property located at 9521 Sierra Summit Avenue, Las Vegas, Nevada 89134, which is secured by a lien against the Debtors' residential property, loan number 005266345.

(b) *Treatment*: The holder of the allowed Class 2(gg) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c) *Valuation*: The Class 2(gg) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

EXHIBIT E

(d)   *Unsecured Portion of the Claim*: Any amount of a Class 2(gg) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)   *Voting*: Class 2(gg) is an impaired class, and the holder of the Class 2(gg) claim is entitled to vote to accept or reject the Plan.

Class 2(hh) –Secured Claim of Wells Fargo Home Mortgage

(a)   *Classification*: Class 2(hh) consists of the Secured Claim of Wells Fargo Home Mortgage against the Debtors' property located at 1528 Splinter Rock Way, Las Vegas, Nevada 89031, which is secured by a lien against the Debtors' residential property, loan number 3464851.

(b)   *Treatment*: The holder of the allowed Class 2(hh) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)   *Valuation*: The Class 2(hh) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)   *Unsecured Portion of the Claim*: Any amount of a Class 2(hh) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)   *Voting*: Class 2(hh) is an impaired class, and the holder of the Class 2(hh) claim is entitled to vote to accept or reject the Plan.

Class 2(ii) –Secured Claim of CitiMortgage, Inc.

(a)   *Classification*: Class 2(ii) consists of the Secured Claim of CitiMortgage, Inc. against the Debtors' property located at 1194 Stormy Valley Road, Las Vegas, Nevada 89123, which is secured by a lien against the Debtors' residential property, loan number 0002411561-0.

(b)   *Treatment*: The holder of the allowed Class 2(ii) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)   *Valuation*: The Class 2(ii) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property

Page | 21

EXHIBIT E

as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)  *Unsecured Portion of the Claim*: Any amount of a Class 2(ii) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)  *Voting*: Class 2(ii) is an impaired class, and the holder of the Class 2(ii) claim is entitled to vote to accept or reject the Plan.

Class 2(jj) –Secured Claim of CitiMortgage, Inc.

(a)  *Classification*: Class 2(jj) consists of the Secured Claim of CitiMortgage, Inc. against the Debtors' property located at 2290 Surrey Meadows Avenue, Henderson, Nevada 89052, which is secured by a lien against the Debtors' residential property, loan number 0002488054-4.

(b)  *Treatment*: The holder of the allowed Class 2(jj) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)  *Valuation*: The Class 2(jj) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)  *Unsecured Portion of the Claim*: Any amount of a Class 2(jj) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)  *Voting*: Class 2(jj) is an impaired class, and the holder of the Class 2(jj) claim is entitled to vote to accept or reject the Plan.

Class 2(kk) –Secured Claim of Countrywide Home Loans

(a)  *Classification*: Class 2(kk) consists of the Secured Claim of Countrywide Home Loans against the Debtors' property located at 2614 Sweet Leilani Avenue, North Las Vegas, Nevada 89031, which is secured by a lien against the Debtors' residential property, loan number 100242287.

(b)  *Treatment*: The holder of the allowed Class 2(kk) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

EXHIBIT E

      (c)    *Valuation*: The Class 2(kk) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

      (d)    *Unsecured Portion of the Claim*: Any amount of a Class 2(kk) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

      (e)    *Voting*: Class 2(kk) is an impaired class, and the holder of the Class 2(kk) claim is entitled to vote to accept or reject the Plan.

Class 2(ll) –Secured Claim of CitiMortgage, Inc.

      (f)    *Classification*: Class 2(ll) consists of the Secured Claim of CitiMortgage, Inc. against the Debtors' property located at 2525 Via Di Autostrada, Henderson, Nevada 89074, which is secured by a lien against the Debtors' residential property, loan number 0002519792-2.

      (g)    *Treatment*: The holder of the allowed Class 2(ll) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

      (h)    *Valuation*: The Class 2(ll) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

      (i)    *Unsecured Portion of the Claim*: Any amount of a Class 2(ll) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

      (j)    *Voting*: Class 2(ll) is an impaired class, and the holder of the Class 2(ll) claim is entitled to vote to accept or reject the Plan.

2.03    Class 3 – Priority Claims

      (a)    *Classification*: Class 3 consists of the Priority Claims against the Debtors.

      (b)    *Treatment*: The legal, equitable and contractual rights of the holders of allowed Class 3 Claims are unaltered. Except to the extent that a holder of an allowed Class 3 claim has been paid by the Debtors prior to the effective date of this Plan or otherwise agrees to different treatment, each

EXHIBIT E

holder of an allowed Class 3 Claim shall receive, in full and final satisfaction of such allowed Class 3 claim, payment in full in cash on or as soon as reasonably practicable after (i) the effective date of the Plan, (ii) the date such allowed Class 3 claim becomes allowed or (iii) such other date as may be ordered by the Bankruptcy Court.

(c)     *Voting:* Class 3 is an unimpaired Class, and is deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the holders of Class 3 claims are not entitled to vote to accept or reject the Plan.

2.04     Class 4 – Convenience Claims

(a)     *Classification:* Class 4 consists of Convenience Claims in an amount under $1,000.00 each against the Debtors in accordance with section 1122(b) of the Bankruptcy Code.

(b)     *Treatment:* The legal, equitable and contractual rights of the holders of allowed Class 4 claims are unaltered. Except to the extent that a holder of an allowed Class 4 claim has been paid by the Debtors prior to the effective date of this Plan or otherwise agrees to different treatment, each holder of an allowed Class 4 claim shall receive, in full and final satisfaction of such allowed Class 4 claim, payment in full in cash on or as soon as reasonably practicable after (i) the effective date of the Plan, (ii) the date such allowed Class 4 claim becomes allowed or (iii) such other date as may be ordered by the Bankruptcy Court.

(c)     *Voting:* Class 4 is an unimpaired class, and the holders of Class 4 claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the holders of Class 4 claims are not entitled to vote to accept or reject the Plan.

2.05     Class 5 - General Unsecured Claims

(a)     *Classification:* Class 5 consists of General Unsecured Claims against the Debtors, which includes the unsecured portion of the Debtors' first and second lien holders' claims.

(b)     *Treatment:* Holders of allowed General Unsecured Claims shall receive, in full and final satisfaction of such allowed Class 5 claims, their pro rata share of the Debtors' monthly plan payments, which the Debtors estimate to be 4% of such creditor's claim.

(c)     *Voting:* Class 5 is an impaired Class, and holders of Class 5 claims are entitled to vote to accept or reject the Plan.

EXHIBIT E

## ARTICLE III

### TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS.
### U.S. TRUSTEES FEES AND PRIORITY TAX CLAIMS

3.01    Unclassified Claims. In accordance with section 1123(a)(1) of the Bankruptcy Code, administrative expense claims, and priority tax claims are not in classes.

3.02    Administrative Expense Claims. Each holder of an administrative expense claim allowed under Section 503 of the Bankruptcy Code will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtors.

3.03    Priority Tax Claims. Each holder of a priority tax claim will be paid in full on the effective date of this Plan, or with respect to the Internal Revenue Service, as agreed upon among the parties.

3.04    United States Trustee Fees. All fees required to be paid by 28 U.S.C. § 1930 will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

### ARTICLE IV
### PROVISIONS FOR EXECUTORY CONTRACTS, UNEXPIRED LEASES AND
### DISPOSITION OF VACANT LAND

4.01    Assumed Executory Contracts and Unexpired Leases.

(a) The Debtors shall assume, on the effective date of this Plan, the executory contracts and unexpired leases listed on **Exhibit 2** attached hereto.  Listed on **Exhibit 2** is also the Debtors' estimated cure amount, if any, necessary to assume such contract in accordance with Section 365 of the Bankruptcy Code.

(b) The Debtors will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 4.01(a) above.  A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

(c) The confirmation order shall constitute an order of the Bankruptcy Court approving such assumptions pursuant to sections 365 and 1123 of the Bankruptcy Code as of the effective date of this Plan.  The Debtors reserve the right to amend **Exhibit 2** at any time before the effective date.

(d) Any objection by a party to an executory contract or unexpired lease to the Debtors' proposed assumption or any related cure amount set forth on **Exhibit 2** must be filed, served and actually received by the Debtors at least seven (7) days prior to the confirmation hearing of this Plan.

Page | 25

EXHIBIT E

Any party to an executory contract or unexpired lease that fails to object timely to the proposed cure amount will be deemed to have consented to such assignment of its executory contract or unexpired lease. The confirmation order shall constitute an order of the Bankruptcy Court approving any proposed assignments of executory contracts or unexpired leases pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

(e) In the event of a dispute regarding (i) the amount of any cure payment, (ii) the ability of the Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assigned or (iii) any other matter pertaining to assignment, the applicable cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a final order or orders resolving the dispute and approving the assumption. If an objection to a cure amount is sustained by the Bankruptcy Court, the Debtors at their sole option, may elect to reject such executory contract or unexpired lease in lieu of assuming and assigning it.

## ARTICLE V - MEANS FOR IMPLEMENTATION OF THE PLAN

5.01    Source of Payments.  If an objection to the Plan is lodged under Section 1129(a)(15) of the Bankruptcy Code, the Debtors' Payments and distributions under the Plan will be funded by the Debtors, based upon their (a) projected monthly rental income and (b) personal income. The Liquidation Analysis attached the Disclosure Statement as **Exhibit C**, outlines the Debtors' sources and uses of income. The Debtors' monthly Plan payment shall be four thousand dollars ($4,000.00). If no objections are lodged to the Plan, the Debtors may make no distributions to general unsecured creditors.

5.02    Method of Plan Payments

(a)      On or about the effective date of the Plan, to the extent necessary, the Debtors shall retain Cynthia Bitaut of Baxter Distribution Services, LLP, 2655 Box Canyon Drive #190, Las Vegas, Nevada 89128 as their disbursement agent (the "**Disbursement Agent**"). Except as otherwise provided in the Plan, upon the first full month after the entry of the order confirming the Plan, the Debtors shall begin making monthly distributions to the Disbursement Agent under the Plan. The Disbursement Agent shall begin, as soon as practical, making pro rata payments to the Debtors' unsecured creditors holding allowed claims, on a quarterly basis, until such claims are paid as set forth in the Plan.

(b)      Except as otherwise provided in the Plan, or upon the entry of a final, non-appealable order of the Bankruptcy Court, or as agreed to by the relevant parties, distributions under the Plan on account of a disputed claim that becomes an allowed claim after the effective date of the Plan shall be begin on the regular quarterly payment date, as established by the Disbursement Agent, which is at least thirty (30) days after such claim becomes an allowed claim.

(c)      Notwithstanding anything in the Plan to the contrary, and except as otherwise agreed to by the relevant parties, no partial payments and no partial distributions shall be made with respect to a disputed claim until all such disputes in connection with such disputed claim have been resolved by settlement among the parties or a final order of the Bankruptcy Court. In the

Page | 26

EXHIBIT E

event that there are disputed claims requiring adjudication and resolution, the Disbursement Agent shall establish appropriate reserves for potential payment of such Claims.

(d)     In no event, however, shall the Disbursement Agent be held liable for any failures of the Debtors to make any of their payments required under the Plan. If any holders of allowed claims against the Debtors' estate fail to receive payment in accordance with the Plan, the Bankruptcy Court shall retain jurisdiction to hear and determine all matters related to the implementation of this Plan and the payments required hereunder.

(e)     The Disbursement Agent shall be authorized to retain attorneys, if necessary, to object to proofs of claim, pay administrative expenses and collect a reasonable fee for administering the Debtors' post-confirmation estate from the Debtors' plan payments.

5.03    The Holding Company.  On or after the effective date of the Plan, the Debtors shall transfer title to their properties to a Nevada limited liability company (the "**Holding Company**"), for liability purposes.  The transfer shall not limit the Debtors' personal liability to their Class 1 creditors or their obligations to make payments under this Plan.

5.04    Post-confirmation Management.  The Debtors will manage their properties post-petition in the ordinary course, which will include the assumption and continued operation under all partnership agreements, as well as the debt service obligations thereunder.  They will be authorized to enter into, terminate and renew lease agreements as they see fit.  Such activities will include retaining management companies to aid in the renting of their property, drafting and serving eviction notices, negotiating loan modifications or refinancing their properties, repairing the properties and maintaining a reserve account of up to one month's mortgage payments, or $10,000.00, whichever is greater.  In addition, the Debtors will be authorized to transfer the properties to the Holding Company to limit their liability from claims arising from their rental business (such as injuries occurring at the homes) after the date of confirmation.

5.05    Liquidation and Abandonment of Certain Debtor Entities.  Pursuant to Sections 363 and 554 of the Bankruptcy Code, the Debtors may abandon or liquidate Cherish LLC, Keep Safe LLC, 2704 Sattley LLC and Hot Endeavor, LLC (the "**Abandoned Entities**"), as all properties owned by those entities will be transferred back to the Debtors Melani and William R. Schulte, personally.  Therefore, the order confirming the Plan will constitute the Bankruptcy Court's finding and determination that the abandonment or liquidation of the Abandoned Entities is (1) in the best interests of the Debtors, their estates and parties in interest, (2) fair, equitable and reasonable, (3) made in good faith and (4) approved pursuant to section 363 and 554 of the Bankruptcy Code and Bankruptcy Rule 9019.

5.06    Post-confirmation Payment.  The post-confirmation payment of the claims of allowed general unsecured creditors in the Debtors' cases shall be jointly administered. Accordingly, the Debtors will pay their combined creditor pool through the continued joint administration of their estates post-confirmation, in order to maximize the distributions to unsecured creditors and avoid the related costs of paying their joint creditors separately for 5 years.  The order confirming the Plan shall direct the foregoing administration of the Debtors' post-confirmation estates.

EXHIBIT E

5.07    Substantive Consolidation.  The filing of the Plan shall constitute a motion for an order of the Bankruptcy Court approving, and the Confirmation Order shall constitute the Bankruptcy Court's approval of, substantive consolidation of the payment of the general unsecured claims against the reorganized Debtors' estates, specifically the estates of Melani and William R. Schulte and SABRECO, Inc. (collectively, the "**Reorganized Debtors**").  On the effective date of the Plan, pursuant to Section 105(a) of the Bankruptcy Code, the Reorganized Debtors' estates shall be substantively consolidated solely for the purposes related to the Plan (including voting and distributions to general unsecured creditors). The substantive consolidation of the Reorganized Debtors' estates shall have the following effects:

(a)    All assets of the Reorganized Debtors' estates shall be treated as though they were assets of a single consolidated estate for purposes of distributions under the Plan;

(b)    Each and every claim scheduled, filed, to be filed, or deemed to have been filed in these Chapter 11 cases against either Reorganized Debtor shall be deemed scheduled or filed against a single consolidated Estate; and

(c)    No distributions shall be made under the Plan on account of claims among the Reorganized Debtors, and any and all liability on account of such claims between the Reorganized Debtors shall be deemed satisfied and discharged upon confirmation.

Notwithstanding the foregoing, on or after the effective date of the Plan, the Reorganized Debtors may take such actions as are necessary to complete a merger with or dissolution of any of the Reorganized Debtors' assets under applicable law.

**ALL ALLOWED SECURED CLAIMS IN CLASSES 1 AND 2 WILL RETAIN THEIR LIENS, SHALL BE PAID AS SET FORTH IN CLASSES 1 AND 2, AND NOT BE ELIMINATED AS THE RESULT OF THE SUBSTANTIVE CONSOLIDATION.**

ARTICLE VI
GENERAL PROVISIONS

6.01    Definitions and Rules of Construction.  The definitions and rules of construction set forth in Sections 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan.

6.02    Effective Date of Plan.  The effective date of this Plan is the eleventh business day following the date of the entry of the confirmation order.  But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

6.03    Modification of Plan.

The Debtors may modify the Plan at any time before confirmation of the Plan.  The Court, however, may require a new Disclosure Statement and/or re-voting on the Plan.  The

EXHIBIT E

Debtors may also seek to modify the Plan at any time after confirmation only if (A) the Plan has not been substantially consummated and (B) the Court authorizes the proposed modifications after notice and a hearing.

Upon request of the Debtors, the Plan may be modified at any time after confirmation of the Plan, but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take on accounting of any payment of a claim made other than under the Plan.

Effective as of the date hereof and subject to the limitations and rights contained in the Plan: (a) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the confirmation order; and (b) after the entry of the confirmation order, the Debtors may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan; provided, however, that any modification to the Plan shall not affect the rights or treatment of holders of unsecured claims.

6.04    Final Decree.  Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of bankruptcy Procedure, the Debtors, or such other party as the Court shall designate in the Plan confirmation order, shall file a motion with the Court to obtain a final decree to close the case.  Alternatively, the Court may enter such a final decree on its own motion.

6.05    Vesting of Assets in the Reorganized Debtors and the Holding Company.  After confirmation of the Plan, all property of the Debtors shall vest in the reorganized Debtors and the Holding Company, free and clear of all liens, claims, charges or other encumbrances, except those enumerated in Section 6.06, the order approving the Motion to Value and the confirmation order.  The reorganized Debtors may operate their business and may use, acquire or dispose of property and compromise or settle any claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the confirmation order.  Without limiting the foregoing, the Debtors shall pay the charges that incur after confirmation for professionals' fees, disbursements, expenses or related support services (including reasonable fees relating to the preparation of professional fee applications) without application to the Bankruptcy Court.

6.06    Release of Liens, Claims and Equity Interests.  Except as otherwise provided herein or in the following sentence or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, upon confirmation, all liens, claims, mortgages, deeds of trust, or other security interests against the property of the Debtors' estate shall be fully released and discharged.  The existing liens and lien rights of those lenders holding claims in Class 1 and Class 2 are expressly preserved under the Plan, and their existing liens shall ride through and remain attached to any and all underlying collateral in any transfer of property expressly set forth in, or contemplated by, the Plan.  To the extent any provision in this Plan or the Confirmation Order can be read to contradict the express preservation of lien rights in this provision, this provision controls.

Page | 29

EXHIBIT E

(c) *Voting*: Class 1(a) is an unimpaired class, and the holder of the Class 1(a) claim is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the holder of the Class 1(a) claim is not entitled to vote to accept or reject the Plan.

2.02    Class 2(a) –Secured Claim of CitiMortgage

(a) *Classification*: Class 2(a) consists of the Secured Claim of CitiMortgage against the Debtors' property located at 9500 Aspen Glow Drive, Las Vegas, Nevada 89134 which is secured by a lien against the Debtors' residential property, loan number 0577014851-7.

(b) *Treatment*: The holder of the allowed Class 2(a) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth in **Exhibit 1**, attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c) *Valuation*: The Class 2(a) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d) *Unsecured Portion of the Claim*: Any amount of a Class 2(a) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e) *Voting*: Class 2(a) is an impaired class, and the holder of the Class 2(a) claim is entitled to vote to accept or reject the Plan.

Class 2(b) –Secured Claim of City National Bank

(a) *Classification*: Class 2(b) consists of the Secured Claim of City National Bank against the Debtors' property located at 9500 Aspen Glow Drive, Las Vegas, Nevada 89134, which is secured by a lien against the Debtors' residential property, loan number 1824409.

(b) *Treatment*: The holder of the allowed Class 2(b) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth in **Exhibit 1**, attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c) *Valuation*: The Class 2(b) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving

EXHIBIT E

6.07    Certificate of Incorporation and Bylaws. The articles of organization and bylaws (or other formation documents) of the Holding Company shall be amended as may be required to be consistent with the provisions of the Plan and the Bankruptcy Code or as otherwise required by, and in a form reasonably acceptable to, the Debtors. On or as soon as reasonably practicable after confirmation of the Plan, the reorganized Debtors shall file a new certificate of organization with the Nevada secretary of state, as required by section 1123(a)(6) of the Bankruptcy Code.

6.08    Effectuating Documents; Further Transactions. The Debtors may take all actions to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan.

6.09    Exemption from Certain Transfer Taxes. Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the confirmation order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

6.10    Revocation of Plan. The Debtors reserve the right to revoke or withdraw the Plan prior to the confirmation hearing and to file subsequent Chapter 11 plans. If the Debtors revoke or withdraw the Plan, or if confirmation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Court; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against, the Debtors or any other entity; (b) prejudice in any manner the rights of the Debtors or any other entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtors or any other entity.

6.11    Successors and Assigns. The rights, benefits and obligations of any entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

6.12    Reservation of Rights. Except as expressly set forth herein, the Plan shall have no force or effect until the Court enters the confirmation order. Neither the filing of the Plan, any statement or provision contained in the Disclosure Statement, nor the taking of any action by a Debtors or any other entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) any Debtors with respect to the holders of claims or other entity; or (2) any holder of a Claim or other entity prior to the effective date of the Plan.

6.13    Further Assurances. The Debtors or the reorganized Debtors, as applicable, all holders of Claims receiving distributions under the Plan and all other entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the confirmation order.

EXHIBIT E

6.14    Severability.  If, prior to confirmation of the Plan, any term or provision of the Plan is
held by the Court to be invalid, void or unenforceable, the Court shall have the power to alter and
interpret such term or provision to make it valid or enforceable to the maximum extent
practicable, consistent with the original purpose of the term or provision held to be invalid, void
or unenforceable, and such term or provision then will be applicable as altered or interpreted,
*provided* that any such alteration or interpretation must be in form and substance reasonably
acceptable to the Debtors, and, to the extent such alteration or interpretation affects the rights or
treatment of holders of unsecured claims, such claim holder.

6.15    Return of Security Deposits.  Unless the Debtors agree otherwise in a written agreement
or stipulation approved by the Court, all security deposits provided by the Debtors to any person
or entity at any time after the petition date shall be returned to the Debtors within twenty (20)
days after the date of confirmation, without deduction or offset of any kind.

6.16    Filing of Additional Documents.  On or before the Effective Date, the Debtors may file
with the Court all agreements and other documents that may be necessary or appropriate to
effectuate and further evidence the terms and conditions hereof.

6.17    Captions.  The headings contained in this Plan are for convenience of reference only and
do not affect the meaning or interpretation of this Plan.

ARTICLE VII
DISCHARGE

**7.01 Discharge.**  Confirmation of this Plan does not discharge any debt provided for in this Plan
until the court grants a discharge on completion of all payments to unsecured creditors under this
Plan, which is 5 years or 20 quarterly payments, or as otherwise provided in § 1141(d)(5) of the
Code.  The Debtors will not be discharged from any debt excepted from discharge under § 523 of
the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

Dated:  November 23, 2010

Respectfully submitted,

MELANI SCHULTE

/s/ Melani Schulte

WILLIAM R. SCHULTE

/s/ William R. Schulte

EXHIBIT E

the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(b) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(b) is an impaired class, and the holder of the Class 2(b) claim is entitled to vote to accept or reject the Plan.

Class 2(c) –Secured Claim of Chase Home Finance

(a)     *Classification*: Class 2(c) consists of the Secured Claim of Chase Home Finance against the Debtors' property located at 2460 Avenida Cortes, Henderson, Nevada 89074, which is secured by a lien against the Debtors' residential property, loan number 8483094531.

(b)     *Treatment*: The holder of the allowed Class 2(c) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(c) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(c) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(c) is an impaired class, and the holder of the Class 2(c) claim is entitled to vote to accept or reject the Plan.

Class 2(d) –Secured Claim of Countywide Home Loans

(a)     *Classification*: Class 2(d) consists of the Secured Claim of Countrywide Home Loans against the Debtors' property located at 2460 Avenida Cortes, Henderson, Nevada 89074, which is secured by a lien against the Debtors' residential property, loan number 156496481.

(b)     *Treatment*: The holder of the allowed Class 2(d) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth in **Exhibit 1**, attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

EXHIBIT E

(c)     *Valuation*: The Class 2(d) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(d) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(d) is an impaired class, and the holder of the Class 2(d) claim is entitled to vote to accept or reject the Plan.

Class 2(e) –Secured Claim of Countrywide Home Loans

(a)     *Classification*: Class 2(e) consists of the Secured Claim of Countrywide Home Loans against the Debtors' property located at 4710 Brently Place, Las Vegas, Nevada 89122, which is secured by a lien against the Debtors' residential property, loan number 86314260.

(b)     *Treatment*: The holder of the allowed Class 2(e) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(e) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(e) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(e) is an impaired class, and the holder of the Class 2(e) claim is entitled to vote to accept or reject the Plan.

Class 2(f) –Secured Claim of Chase Home Finance

(a)     *Classification*: Class 2(f) consists of the Secured Claim of Chase Home Finance against the Debtors' property located at 7873 Bridgefield Lane, Las Vegas, Nevada 89147, which is secured by a lien against the Debtors' residential property, loan number 8483094549.

EXHIBIT E

(b) *Treatment*: The holder of the allowed Class 2(f) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c) *Valuation*: The Class 2(f) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d) *Unsecured Portion of the Claim*: Any amount of a Class 2(f) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e) *Voting*: Class 2(f) is an impaired class, and the holder of the Class 2(f) claim is entitled to vote to accept or reject the Plan.

Class 2(g) –Secured Claim of Bank of Nevada

(a) *Classification*: Class 2(g) consists of the Secured Claim of Bank of Nevada against the Debtors' property located at 7873 Bridgefield Lane, Las Vegas, Nevada 89147, which is secured by a lien against the Debtors' residential property, loan number 910016328.

(b) *Treatment*: The holder of the allowed Class 2(g) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c) *Valuation*: The Class 2(g) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d) *Unsecured Portion of the Claim*: Any amount of a Class 2(g) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e) *Voting*: Class 2(g) is an impaired class, and the holder of the Class 2(g) claim is entitled to vote to accept or reject the Plan.

EXHIBIT E

Class 2(h) – Secured Claim of Countrywide Home Loans

(a)     *Classification*: Class 2(h) consists of the Secured Claim of Countrywide Home Loans against the Debtors' property located at 3322 Cheltenham Street, Las Vegas, Nevada 89129, which is secured by a lien against the Debtors' residential property, loan number 84536650.

(b)     *Treatment*: The holder of the allowed Class 2(h) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(h) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(h) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(h) is an impaired class, and the holder of the Class 2(h) claim is entitled to vote to accept or reject the Plan.

Class 2(i) – Secured Claim of Countrywide Home Loans

(a)     *Classification*: Class 2(i) consists of the Secured Claim of Countrywide Home Loans against the Debtors' property located at 3383 Cloverdale Court, which is secured by a lien against the Debtors' residential property, loan number 85885825.

(b)     *Treatment*: The holder of the allowed Class 2(i) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(i) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(i) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

EXHIBIT E

(e) *Voting*: Class 2(i) is an impaired class, and the holder of the Class 2(i) claim is entitled to vote to accept or reject the Plan.

Class 2(j) –Secured Claim of CitiMortgage, Inc.

(a) *Classification*: Class 2(j) consists of the Secured Claim of CitiMortgage, Inc. against the Debtors' property located at 1624 Desert Canyon Court, Las Vegas, Nevada 89122 which is secured by a lien against the Debtors' residential property, loan number 0011954829-5.

(b) *Treatment*: The holder of the allowed Class 2(j) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c) *Valuation*: The Class 2(j) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d) *Unsecured Portion of the Claim*: Any amount of a Class 2(j) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e) *Voting*: Class 2(j) is an impaired class, and the holder of the Class 2(j) claim is entitled to vote to accept or reject the Plan.

Class 2(k) –Secured Claim of Bank of Nevada

(a) *Classification*: Class 2(k) consists of the Secured Claim of Bank of Nevada against the Debtors' property located at 1624 Desert Canyon Court, Las Vegas, Nevada 89122 which is secured by a lien against the Debtors' residential property, loan number 910016328.

(b) *Treatment*: The holder of the allowed Class 2(k) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c) *Valuation*: The Class 2(k) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

EXHIBIT E

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(k) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(k) is an impaired class, and the holder of the Class 2(k) claim is entitled to vote to accept or reject the Plan.

Class 2(l) –Secured Claim of Countrywide Home Loans

(a)     *Classification*: Class 2(l) consists of the Secured Claim of Countrywide Home Loans against the Debtors' property located at 3729 Discovery Creek Avenue, North Las Vegas, Nevada 89031, which is secured by a lien against the Debtors' residential property, loan number 101427028.

(b)     *Treatment*: The holder of the allowed Class 2(l) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5.25% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(l) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(l) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 2(l) is an impaired class, and the holder of the Class 2(l) claim is entitled to vote to accept or reject the Plan.

Class 2(m) –Secured Claim of Litton Loan Servicing

(a)     *Classification*: Class 2(m) consists of the Secured Claim of Litton Loan Servicing against the Debtors' property located at 1392 Echo Falls Avenue, Las Vegas, Nevada 89183, which is secured by a lien against the Debtors' residential property, loan number 19732478.

(b)     *Treatment*: The holder of the allowed Class 2(m) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on **Exhibit 1** attached hereto, amortized at 5% over 30 years, and in accordance with all other terms of its related note and mortgage.

(c)     *Valuation*: The Class 2(m) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property

EXHIBIT E