1   Regina A. Habermas, Esq.
    Nevada Bar No. 8481
2   GHIDOTTI | BERGER LLP
    415 S. 6th Street, #310
3   Las Vegas, NV 89101
    Tel: (949) 427-2010
4   Fax: (949) 427-2732
5   ghabermas@ghidottiberger.com
    Attorneys for Secured Creditors,
6   U.S. Bank Trust National Association as Trustee of the Lodge Series III Trust,
    U.S. Bank Trust National Association as Trustee of the Chalet Series III Trust,
7   U.S. Bank Trust National Association as Trustee of the Bungalow Series IV Trust, and
8   U.S. Bank Trust National Association as Trustee of the Bungalow Series F Trust

9                       UNITED STATES BANKRUPTCY COURT

10              DISTRICT OF NEVADA – LAS VEGAS DIVISION

11  | In Re: | Case No.:  09-29123-mkn |
    |---|---|
12  | MELANI SCHULTE and | Chapter 11 |
13  | WILLIAM SCHULTE, | |
    | | Jointly Administered with: |
14  | | |
15  | 2704 SATTLEY LLC, | 09-27238-BAM |
    | HOT ENDEAVOR LLC, | 09-27909-BAM |
16  | 1341 MINUET LLC, | 09-27910-BAM |
    | 1708 PLATO PICO LLC, | 09-27911-BAM |
17  | 2228 WARM WALNUT LLC, | 09-27912-BAM |
    | 9425 VALLEY HILLS LLC, | 09-27913-BAM |
18  | 9500 ASPEN GLOW LLC, | 09-27914-BAM |
    | 5218 MISTY MORNING LLC, | 09-27916-BAM |
19  | CHERISH LLC, | 09-28513-BAM |
    | SABRECO INC., | 09-31584-BAM |
20  | KEEP SAFE LLC, | 09-31585-BAM |
21  | | |
22  | Debtors. | **AMENDED MOTION TO CLARIFY PLAN TREATMENT REGARDING VARIOUS REAL PROPERTIES** |
23  
24  
25      Secured Creditors, U.S. Bank Trust National Association as Trustee of the Lodge

26  Series III Trust, U.S. Bank Trust National Association as Trustee of the Chalet Series III

27  Trust, U.S. Bank Trust National Association as Trustee of the Bungalow Series IV Trust, and

28

U.S. Bank Trust National Association as Trustee of the Bungalow Series F Trust (collectively, "Secured Creditors"), by and through undersigned counsel, hereby move this Court for an Order clarifying the treatment of Secured Creditors' Claims pursuant to Debtors' Third Amended Chapter 11 Plan of Reorganization (Doc. 834, filed November 23, 2010), which was confirmed by this Court on March 8, 2011 (Doc. 912).

This Motion is based upon the following Memorandum of Point and Authorities, the Declaration of SN Servicing Corporation in Support of Amended Motion to Clarify Plan Treatment Regarding Various Real Properties filed concurrently herewith, the papers on file herein, and any oral argument permitted by the Court.

DATED: May 25, 2021                    GHIDOTTI | BERGER LLP

By:   /s/ Regina A. Habermas, Esq.
      Regina A. Habermas, Esq.
      Nevada Bar No. 8481
      415 S. 6th Street, #310
      Las Vegas, NV  89101
      ghabermas@ghidottiberger.com
      Attorneys for Secured Creditors

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

This Court confirmed a plan of reorganization in the above-captioned action on March 8, 2011 and a dispute has arisen regarding the treatment of certain claims in the plan confirmed by this Court.   The Debtors and various secured creditors in these jointly-administered cases agreed to the treatment of claims through stipulations and orders entered by the Court.   However, Schulte Properties LLC, an entity that now holds title to the real properties treated in the confirmed plan, is misinterpreting the provisions of that plan and asserting that various servicers and investors have somehow improperly serviced loans since the confirmation of the plan.

Schulte Properties, LLC has filed its own bankruptcy action, Case Number 18-12734-mkn, and recently obtained Court approval to retain special litigation counsel to pursue claims against lenders and servicers and to file objections to most of the claims filed in the 2018 action.   Secured Creditors therefore seek an Order of this Court interpreting the language of Debtors' confirmed plan and specifically concluding that the Debtors' confirmed plan did not eliminate the escrow portions of Secured Creditors' loans.

**II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On October 11, 2009, Debtors Melani Schulte and William R. Schulte filed the Voluntary Petition that initiated the above-captioned Chapter 11 bankruptcy action (Doc. 1). On March 22, 2010, the Court entered an Order Granting Amended and Renewed Motion of the Debtors for the Entry of an Order under Fed. R. Bankr. P. 1015(b), Directing Joint Administration, pursuant to which several bankruptcy actions filed by related debtors were joined for procedural purposes only (Doc. 128).   On November 23, 2010, Debtors filed their Third Amended Joint Plan of Reorganization of Melani Schulte and William R. Schulte (Doc. 834).   On March 8, 2011, the Court entered its Order Confirming the Debtors' Chapter 11 Plan of Reorganization (Doc. 912, the "Confirmation Order").   A copy of the confirmed Plan is attached to the Confirmation Order and the Confirmation Order did not substantively alter the terms of the Plan's treatment of claims.   *Id*.   Debtors' Plan classified 40 different secured

1    claims within Class 1 and Class 2 (Doc. 912, p. 32-54). Class 1 was unimpaired, but all of the

2    claims included within Class 2 were impaired. *Id*. The treatment of the secured claims within

3    Class 2 was generally the same and the differences were related to the fact that each claim was

4    secured by a different parcel of real property and some claims would be paid at higher interest

5    rates than others. *Id*.

6    Secured Creditors, or their predecessors-in-interest, filed proofs of claim evidencing

7    claims secured by real property of the estate as detailed below. They also entered into

8    stipulations regarding the treatment of their claims or resolved motions by agreeing on plan

9    treatment as detailed below.

10        **A.**    **8216 Peaceful Canyon Drive, Las Vegas, NV 89134 (the "Peaceful Canyon**

11            **Property")**

12    Proof of Claim No. 5, filed on November 5, 2009, evidenced a total claim of

13    $86,994.02, with pre-petition arrears of $8,606.19, secured by the real property commonly

14    known as 8216 Peaceful Canyon Drive, Las Vegas, NV 89134 (the "Peaceful Canyon

15    Claim"). *See* Claim 5-1 and Declaration of SN Servicing Corporation in Support of Amended

16    Motion to Clarify Treatment Regarding Various Real Properties, filed concurrently herewith

17    (the "SN Declaration"). The maturity date of the loan was April 1, 2024 and the monthly

18    payment due on the loan at the time the Petition was filed was $1,032.70, which consisted of

19    $762.76 for principal and interest and $269.94 for escrow. *Id*. True and correct copies of the

20    Note and Deed of Trust were attached to the Peaceful Canyon Claim, which is currently held

21    by U.S. Bank Trust National Association as Trustee of the Lodge Series III Trust. *Id*.

22    The holder of the Peaceful Canyon Claim entered into a Stipulation and Order re:

23    Debtors' Chapter 11 Plan of Reorganization by JPMorgan Chase Bank, N.A. on January 20,

24    2011 (the "Peaceful Canyon Stipulation," Doc. 863). The parties agreed that the holder of the

25    Peaceful Canyon Claim had a secured claim in the amount of at least $86,994.02 to be

26    amortized over 30 years at an interest rate of 5% per annum. *Id*. The parties also agreed that

27    the monthly payment of principal and interest would be $467.00, which is the minimum

28    monthly payment required to repay the outstanding balance of $86,994.02 at 5% interest over

1  30 years.  *Id*.  The parties further agreed Debtors "shall maintain real property taxes and real

2  property hazard insurance paid current for the Subject Property."  *Id*.  Finally, the parties

3  agreed, "[e]xcept as otherwise expressly provided herein, all remaining terms of the Note and

4  Deed of Trust shall govern the treatment of Secured Creditor's Claim."  *Id*.  The Order

5  approving the Peaceful Canyon Stipulation was entered on January 21, 2011 (Doc. 869).

6  **B.    1624 Desert Canyon Court, Las Vegas, NV 89128 (the "Desert Canyon
7  Property")**

8  Proof of Claim No. 37, filed on January 5, 2010, evidenced a total claim of

9  $90,620.12, with pre-petition arrears of $12,943.01, secured by the real property commonly

10  known as 1624 Desert Canyon Court, Las Vegas, NV 89128 (the "Desert Canyon Claim").

11  *See* Claim 37-1 and SN Declaration.  The maturity date of the loan was September 1, 2016

12  and the monthly payment due on the loan at the time the Petition was filed was $1,541.50,

13  which consisted of $1,248.60 for principal and interest and $292.90 for escrow.  *Id.*  True and

14  correct copies of the Note and Deed of Trust were attached to the Desert Canyon Claim,

15  which is currently held by U.S. Bank Trust National Association as Trustee of the Lodge

16  Series III Trust.  *Id*.

17  The holder of the Desert Canyon Claim entered into a Stipulation re: Treatment of

18  Citimortgage, Inc.'s Claim under Debtors' Chapter 11 Plan of Reorganization on March 16,

19  2011 (the "Desert Canyon Stipulation," Doc. 915).  The parties agreed that the Desert Canyon

20  Claim would remain fully secured over a term of 30 years at an interest rate of 5.25% per

21  annum.  *Id*.  The parties also agreed that the monthly payment of principal and interest would

22  be $500.12.  *Id*.  The parties further agreed, "[i]n addition to Principal and Interest Payments,

23  Debtors shall tender to Creditor regular monthly escrow payments for advances made by

24  Creditor for the maintenance of real property taxes and real property hazard insurances for the

25  Subject Property."  *Id*.  Finally, the parties agreed, "[e]xcept as otherwise expressly provided

26  herein, all remaining terms of the Note and Deed of Trust shall govern the treatment of

27  Secured Creditor's Claim."  *Id*.  The Order approving the Desert Canyon Stipulation was

28  entered on March 18, 2011 (Doc. 923).

### C. 1194 Stormy Valley Road, Las Vegas, NV 89123 (the "Stormy Valley Property")

Proof of Claim No. 39, filed on January 7, 2010, evidenced a total claim of $113,403.16, with pre-petition arrears of $9,738.59, secured by the real property commonly known as 1194 Stormy Valley Road, Las Vegas, NV 89123 (the "Stormy Valley Claim"). *See* Claim 39-1 and SN Declaration. The maturity date of the loan was December 1, 2030 and the monthly payment due on the loan at the time the Petition was filed was $1,052.33, which consisted of $857.03 for principal and interest and $195.30 for escrow. *Id.* True and correct copies of the Note and Deed of Trust were attached to the Stormy Valley Claim, which is currently held by U.S. Bank Trust National Association as Trustee of the Chalet Series III Trust. *Id.*

The holder of the Stormy Valley Claim entered into a Stipulation re: Treatment of Citimortgage, Inc.'s Claim under Debtors' Chapter 11 Plan of Reorganization on March 16, 2011 (the "Stormy Valley Stipulation," Doc. 920). The parties agreed that the Stormy Valley Claim would remain fully secured over a term of 30 years at an interest rate of 5.25% per annum. *Id.* The parties also agreed that the monthly payment of principal and interest would be $591.75. *Id.* The parties further agreed, "[i]n addition to Principal and Interest Payments, Debtors shall tender to Creditor regular monthly escrow payments for advances made by Creditor for the maintenance of real property taxes and real property hazard insurances for the Subject Property." *Id.* Finally, the parties agreed, "[e]xcept as otherwise expressly provided herein, all remaining terms of the Note and Deed of Trust shall govern the treatment of Secured Creditor's Claim." *Id.* The Order approving the Stormy Valley Stipulation was entered on March 18, 2011 (Doc. 928).

### D. 922 Saddle Horn Drive, Henderson, NV 89015 (the "Saddle Horn Property")

Proof of Claim No. 40, filed on January 7, 2010, evidenced a total claim of $101,557.56, with pre-petition arrears of $7,965.21, secured by the real property commonly known as 922 Saddle Horn Drive, Henderson, NV 89015 (the "Saddle Horn Claim"). *See* Claim 40-1 and SN Declaration. The maturity date of the loan was December 1, 2030 and the

monthly payment due on the loan at the time the Petition was filed was $940.66, which consisted of $759.87 for principal and interest and $180.79 for escrow. *Id.* True and correct copies of the Note and Deed of Trust were attached to the Saddle Horn Claim, which is currently held by U.S. Bank Trust National Association as Trustee of the Bungalow Series F Trust. *Id.*

The holder of the Saddle Horn Claim entered into a Stipulation re: Treatment of Citimortgage, Inc.'s Claim under Debtors' Chapter 11 Plan of Reorganization on March 16, 2011 (the "Saddle Horn Stipulation," Doc. 920). The parties agreed that the Saddle Horn Claim would remain fully secured over a term of 30 years at an interest rate of 5.25% per annum. *Id.* The parties also agreed that the monthly payment of principal and interest would be $534.17. *Id.* The parties further agreed, "[i]n addition to Principal and Interest Payments, Debtors shall tender to Creditor regular monthly escrow payments for advances made by Creditor for the maintenance of real property taxes and real property hazard insurances for the Subject Property." *Id.* Finally, the parties agreed, "[e]xcept as otherwise expressly provided herein, all remaining terms of the Note and Deed of Trust shall govern the treatment of Secured Creditor's Claim." *Id.* The Order approving the Saddle Horn Stipulation was entered on March 18, 2011 (Doc. 927).

E.    **4521 W. La Madre Way, North Las Vegas, NV 89031 (the "La Madre Property")**

Proof of Claim No. 41, filed on January 7, 2010, evidenced a total claim of $78,029.90, with pre-petition arrears of $10,691.27, secured by the real property commonly known as 4521 W. La Madre Way, North Las Vegas, NV 89031 (the "La Madre Claim"). *See* Claim 41-1 and SN Declaration. The maturity date of the loan was July 1, 2016 and the monthly payment due on the loan at the time the Petition was filed was $1,256.92, which consisted of $1,049.83 for principal and interest and $207.09 for escrow. *Id.* True and correct copies of the Note and Deed of Trust were attached to the La Madre Claim, which is currently held by U.S. Bank Trust National Association as Trustee of the Lodge Series III Trust. *Id.*

The holder of the La Madre Claim entered into a Stipulation re: Treatment of

1   Citimortgage, Inc.'s Claim under Debtors' Chapter 11 Plan of Reorganization on March 16,

2   2011 (the "La Madre Stipulation," Doc. 918).  The parties agreed that the La Madre Claim

3   would remain fully secured over a term of 30 years at an interest rate of 5.25% per annum.  *Id*.

4   The parties also agreed that the monthly payment of principal and interest would be $410.31.

5   *Id*.  The parties further agreed, "[i]n addition to Principal and Interest Payments, Debtors shall

6   tender to Creditor regular monthly escrow payments for advances made by Creditor for the

7   maintenance of real property taxes and real property hazard insurances for the Subject

8   Property."  *Id*.  Finally, the parties agreed, "[e]xcept as otherwise expressly provided herein,

9   all remaining terms of the Note and Deed of Trust shall govern the treatment of Secured

10  Creditor's Claim."  *Id*.  The Order approving the La Madre Stipulation was entered on

11  March 18, 2011 (Doc. 926).

12          **F.      2525 Via Di Autostrada, Henderson, NV 89074 (the "Autostrada Property")**

13          Proof of Claim No. 42, filed on January 7, 2010, evidenced a total claim of

14  $89,351.45, with pre-petition arrears of $11,923.89, secured by the real property commonly

15  known as 2525 Via Di Autostrada, Henderson, NV 89074 (the "Autostrada Claim").  *See*

16  Claim 42-1 and SN Declaration.  The maturity date of the loan was January 1, 2017 and the

17  monthly payment due on the loan at the time the Petition was filed was $1,419.15, which

18  consisted of $1,133.55 for principal and interest and $285.60 for escrow.  *Id.*  True and correct

19  copies of the Note and Deed of Trust were attached to the Autostrada Claim, which is

20  currently held by U.S. Bank Trust National Association as Trustee of the Chalet Series III

21  Trust. *Id*.

22          The holder of the Autostrada Claim entered into a Stipulated Order re: Treatment of

23  Citimortgage, Inc.'s Claim under Debtors' Chapter 11 Plan of Reorganization on February 24,

24  2011 (the "Autostrada Stipulation," Doc. 903).  The parties agreed that the Autostrada Claim

25  would remain fully secured over a term of 30 years at an interest rate of 5.25% per annum.  *Id*.

26  The parties also agreed that the monthly payment of principal and interest would be $470.92.

27  *Id*.  The parties further agreed, "[i]n addition to Principal and Interest Payments, Debtors shall

28  tender to Creditor regular monthly escrow payments for advances made by Creditor for the

1  maintenance of real property taxes and real property hazard insurances for the Subject

2  Property." *Id*.  Finally, the parties agreed, "[e]xcept as otherwise expressly provided herein,

3  all remaining terms of the Note and Deed of Trust shall govern the treatment of Secured

4  Creditor's Claim."  *Id*.  The Order approving the Autostrada Stipulation was entered on

5  February 25, 2011 (Doc. 904).

6  **G.    3322 Cheltenham Street, Las Vegas, NV 89129 (the "Cheltenham**
   **Property")**

7

8  Proof of Claim No. 45, filed on January 13, 2010, evidenced a total claim of

9  $219,743.14, with pre-petition arrears of $13,684.22, secured by the real property commonly

10  known as 3322 Cheltenham Street, Las Vegas, NV 89129 (the "Cheltenham Claim").  *See*

11  Claim 45-1 and SN Declaration.  The maturity date of the loan was January 1, 2035 and the

12  monthly payment due on the loan at the time the Petition was filed was $1,693.22, which

13  consisted of $1,478.80 for principal and interest and $214.42 for escrow.  *Id.*  True and correct

14  copies of the Note and Deed of Trust were attached to the Cheltenham Claim, which is

15  currently held by U.S. Bank Trust National Association as Trustee of the Bungalow Series IV

16  Trust. *Id*.

17  The holder of the Cheltenham Claim filed a Motion for Relief from Automatic Stay on

18  June 18, 2010 (Doc. 340).  The parties entered into an Agreed Order re Adequate Protection,

19  which was entered on August 31, 2010 (the "Cheltenham Stipulation," Doc. 593).  The parties

20  agreed that the holder of the Cheltenham Claim had a secured claim in the amount of

21  $99,806.60 to be amortized over 30 years at an interest rate of 5.25% per annum.  *Id*.  The

22  parties also agreed that the monthly payment of principal and interest would be $551.14,

23  which is the minimum monthly payment required to repay the outstanding balance of

24  $99,806.60 at 5.25% interest over 30 years.  *Id*.  The parties further agreed Debtors "shall

25  maintain insurance on the subject property, naming Secured Creditor as loss payee as well as

26  maintain the property taxes on the subject property." *Id*.

27  **H.    5609 San Ardo Place, Las Vegas, NV 89130 (the "San Ardo Property")**

28  Proof of Claim No. 58, filed on February 5, 2010, evidenced a total claim of

$100,709.15, with pre-petition arrears of $8,471.58, secured by the real property commonly known as 5609 San Ardo Place, Las Vegas, NV 89130 (the "San Ardo Claim"). *See* Claim 58-1 and SN Declaration. The maturity date of the loan was September 1, 2028 and the monthly payment due on the loan at the time the Petition was filed was $984.74, which consisted of $754.97 for principal and interest and $229.77 for escrow. *Id.* True and correct copies of the Note and Deed of Trust were attached to the San Ardo Claim, which is currently held by U.S. Bank Trust National Association as Trustee of the Lodge Series III Trust. *Id.*

The holder of the San Ardo Claim entered into a Stipulated Order Regarding Treatment of Citimortgage, Inc.'s Claim under Debtors' Chapter 11 Plan of Reorganization on February 24, 2011 (the "San Ardo Stipulation," Doc. 902). The parties agreed that the San Ardo Claim would remain fully secured over a term of 30 years at an interest rate of 5.25% per annum. *Id.* The parties also agreed that the monthly payment of principal and interest would be $555.37. *Id.* The parties further agreed, "[i]n addition to Principal and Interest Payments, Debtors shall tender to Creditor regular monthly escrow payments for advances made by Creditor for the maintenance of real property taxes and real property hazard insurances for the Subject Property." *Id.* Finally, the parties agreed, "[e]xcept as otherwise expressly provided herein, all remaining terms of the Note and Deed of Trust shall govern the treatment of Secured Creditor's Claim." *Id.*

**I.   8562 Lambert Drive, Las Vegas, NV 89147 (the "Lambert Property")**

No proof of claim was filed for the claim secured by the real property common known as 8562 Lambert Drive, Las Vegas, NV 89147 (the "Lambert Claim"). *See* SN Declaration. The monthly payment due on the loan at the time the Petition was filed was $1,237.76, which consisted of $1,036.91 for principal and interest and $200.85 for escrow. *Id.* True and correct copies of the Note and Deed of Trust evidencing the Lambert Claim are attached to the SN Declaration and the Lambert Claim is currently held by U.S. Bank Trust National Association as Trustee of the Bungalow Series IV Trust. *Id.* It does not appear that the holder of the Lambert Claim entered into a stipulation regarding treatment of the Lambert Claim or filed any motions that resulted in an agreement of the parties regarding the payments to be made on

1 the Lambert Claim.

2 **III.    ARGUMENT**

3          This Court has jurisdiction to interpret the confirmed Plan and determine what impact,

4 if any, that Plan had on the terms of Secured Creditors' Notes and Deeds of Trust.  The plain

5 language of the Plan altered certain, specified terms of Secured Creditors' loans and stated

6 Secured Creditors' claims would otherwise by paid as required by the Notes and Deeds of

7 Trust.  Should the Court find the language of the Plan to be ambiguous, the agreements of the

8 parties and underlying loan documents demonstrate the escrow impounds were not eliminated

9 from Secured Creditors' loans when the Plan was confirmed.

10          **A. This Court Retains Jurisdiction to Interpret the Confirmed Plan and**
            **Confirmation Order**
11

12          Although the Plan was confirmed in March 2011 and Debtors were discharged in

13 December 2015, this Court retains jurisdiction to hear and decide the parties' dispute

14 concerning the treatment of Secured Creditor's claims in the Plan.  Pursuant to 28 U.S.C.

15 § 1334(b), this Court has jurisdiction of "all civil proceedings arising under title 11, or arising

16 in or related to cases under title 11."  Here, the Court has "related to" jurisdiction of the

17 present dispute.  As the Ninth Circuit has noted, "[a] bankruptcy court's 'related to'

18 jurisdiction is very broad, including nearly every matter directly or indirectly related to the

19 bankruptcy."  *In re Wilshire Courtyard*, 729 F.3d 1279, 1287 (9th Cir. 2013) (citation

20 omitted).  In 2005, the Ninth Circuit adopted the Third Circuit's "close nexus" test to

21 determine whether a bankruptcy court has "related to" jurisdiction over post-confirmation

22 issues.  *See In re Pegasus Gold Corp.*, 394 F.3d 1189, 1194 (9th Cir.2005).  The "close

23 nexus" test "encompasses matters affecting the interpretation, implementation, consummation,

24 execution, or administration of the confirmed plan."  *In re Wilshire Courtyard*, 729 F.3d at

25 1287 (citation and internal quotations omitted).  The test "recognizes the limited nature of

26 post-confirmation jurisdiction but retains a certain flexibility."  *Id*.

27          Here, the Court clearly has "related to" jurisdiction to resolve the parties' dispute

28 concerning the terms of the confirmed Plan.  The "close nexus" test expressly contemplates

the retention of jurisdiction to interpret the terms of a confirmed plan.  In addition, the Court that confirmed the Plan is in the best position to interpret the treatment of claims within the Plan.

### B.  The Confirmed Plan Did Not Eliminate the Escrow Impounds of the Loans Secured by the Subject Properties

The Plan confirmed by this Court made very limited, specific changes to the loans secured by the subject properties.   Where a bankruptcy plan has been confirmed, the interpretation of that plan is governed by state law.  *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 588 (9th Cir. 1993) (a plan "resembles a consent decree and therefore, should be construed basically as a contract" under state law).   In Nevada, "construction of a contractual term is a question of law."  *Anvui LLC v. G.L. Dragon, LLC*, 123 Nev. 212, 215, 163 P.3d 405, 407 (2007) (citation omitted).   Further, unambiguous contracts are to be construed "according to their plain language."  *Sheehan & Sheehan v. Nelson Malley and Co.*, 121 Nev. 481, 487-88, 117 P.3d 219, 223-24 (2005) (citation omitted).   A contract is only ambiguous "when it is subject to more than one reasonable interpretation" and any ambiguity "should be construed against the drafter."  *Anvui*, 123 Nev. at 215-216, 163 P.3d at 407 (citations omitted).   Finally, where a contract is ambiguous, a court must "effectuate the intent of the parties, which may be determined in light of the surrounding circumstances if not clear from the contract itself."  *Sheehan*, 121 Nev. at 487-88, 117 P.3d at 223-24 (citations omitted).

In this case, the plain language of the Plan demonstrates the changes to Secured Creditors' loans did not include the elimination of required escrow payments by Debtors. Even if the Court were to conclude the language of the Plan is ambiguous, a review of the parties' agreements regarding plan treatment establishes the parties did not intend to remove the escrow impounds from the loans.   Therefore, the Plan did not alter the obligations of Debtors to make escrow payments.

### 1.  The Plain Language of the Plan Shows Debtors Continue to Be Obligated to Make Escrow Payments

Here, the plain language of the Plan altered only three portions of each secured claim

1    treated in Class 2 and none of those alterations eliminated the escrow impound on Secured

2    Creditors' loans.  The treatment of each of Secured Creditors' claims in the Plan is identical

3    except for the identification of the Class within which each claim falls and the interest rate to

4    be applied.  The language of the Plan is as follows,

5
         (b)      *Treatment*:  The holder of the allowed Class [2(*)] Secured Claim shall
6                 be impaired and paid the allowed amount of its claim as set forth on
                  **Exhibit 1** attached hereto, amortized at [5% or 5.25%] over 30 years,
7                 <u>and in accordance with all other terms of its related note and mortgage</u>.

8    *See*, Plan, Article II, Classification of Claims, Section 2.01, Class 2(y), Peaceful Canyon

9    Claim (Doc. 912, p. 16); Class 2(j), Desert Canyon Claim (Doc. 912, p. 38); Class 2(ii),

10   Stormy Valley Claim (Doc. 912, p. 51); Class 2(dd), Saddle Horn Claim (Doc. 912, p. 49);

11   Class 2(r), La Madre Claim (Doc. 912, p. 42); Class 2(ll), Autostrada Claim (Doc. 912, p. 23);

12   Class 2(h), Cheltenham Claim (Doc. 912, p. 37); Class 2(ee), San Ardo Claim (Doc. 912,

13   p. 49); Class 2(s), Lambert Claim (Doc. 912, p. 43) (italic and bold emphasis in original,

14   underline emphasis added).

15           This language is not ambiguous because it is not subject to more than one reasonable

16   interpretation.  Rather, the language makes it clear that the Plan altered only three provisions

17   of each loan:  1) the outstanding principal balance of the loan; 2) the interest rate to be paid;

18   and 3) the term during which payments were to be made.  Otherwise, the terms of each note

19   and deed of trust remained unchanged.  Therefore, secured claims arising out of loans that

20   included an escrow impound continued to include an escrow impound upon confirmation of

21   the Plan.

22           Moreover, the Plan is silent with respect to the payment of real property taxes and

23   insurance on the numerous real properties addressed in the Plan.  The absence of any language

24   regarding payment of those sums post-confirmation is further evidence that the Plan did not

25   alter or amend the terms of Secured Creditors' loans with respect to such payments.  The

26   language of the Plan is clear and expressly states that, other than the specified alterations, the

27   secured claims would be treated in accordance with the requirements of the underlying notes

28   and deeds of trust.  Therefore, following the confirmation of the Plan, Debtors remained

1    obligated to make escrow payments on Secured Creditors' loans.

2              **2.   The Parties Did Not Intend to Eliminate the Escrow Impounds**

3        Secured Creditors contend the language of the Plan is unambiguous, but anticipate

4    Debtors may argue it is ambiguous with respect to the payment of real property taxes and

5    insurance on the Subject Properties.  Such an argument is not persuasive.  Even if the Court

6    concludes the Plan treatment is ambiguous, there is ample evidence of the parties' intentions

7    from which to conclude the Plan did not eliminate the escrow impounds on Secured Creditors'

8    loans.

9        As detailed above, the holders of six of the claims at issue in this Motion entered into

10   plan treatment stipulations that identified the monthly payment required to pay off the

11   outstanding balance over 30 years at the stated interest rate and included an identical

12   provision regarding Debtors' obligation to make escrow payments to the Secured Creditors,

13          In addition to Principal and Interest Payments, <u>Debtors shall tender to Creditor</u>
            <u>regular monthly payments</u> for advances made by Creditor for the maintenance
14          of real property taxes and real property hazard insurances for the Subject
            Property.
15

16   *See* Desert Canyon Stipulation (Doc. 915), Stormy Valley Stipulation (Doc. 928), Saddle

17   Horn Stipulation (Doc. 920), La Madre Stipulation (Doc. 918), Autostrada Stipulation (Doc.

18   903), San Ardo Stipulation (Doc. 902) (emphasis added).  This provision demonstrates the

19   escrow portion of the loans evidenced by these six claims were not eliminated by the

20   confirmed Plan.

21       The holders of two of the remaining three claims entered into a plan treatment

22   stipulation and an agreed adequate protection order that included a requirement that Debtors

23   maintain real property taxes and insurance on the properties addressed in those stipulations.

24   *See* Peaceful Canyon Stipulation (Doc. 863) and Cheltenham Order (Doc. 593).   This

25   language echoes the language of each deed of trust that requires the borrower to pay to the

26   lender sums for taxes and hazard or property insurance.  With respect to the Peaceful Canyon

27   claim, the Deed of Trust states, in pertinent part,

28          …Borrower shall pay to Lender on the day monthly payments are due under the

Note, until the Note is paid in full, a sum ("Funds") for:  (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property;…(c) yearly hazard or property insurance premiums…These items are called "Escrow Items".

*See* Claim 5-1, Part 2, p. 2, Section 2. Funds for Taxes and Insurance.

With respect to the Cheltenham Claim, the Deed of Trust states, in pertinent part,

…Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note.  Borrower shall also pay funds for Escrow Items pursuant to Section 3…

Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide the payment of amounts due for:  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property;…(c) premiums any and all insurance required by Lender under Section 5;…These items are called "Escrow Items."

*See* Claim 45-1, p. 11-12, Section 1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges and Section 3. Funds for Escrow Items.  The Debtors were required to make escrow payments to the holders of the Peaceful Canyon Claim and Cheltenham Claim prior to filing their bankruptcy actions and neither the parties' agreements nor the confirmed Plan included an express waiver of these requirements.  As such, the Court should conclude the parties did not intend to eliminate the escrow impounds required under the terms of these two loans.

Finally, the holder of the Lambert Claim did not enter into an agreement with Debtors regarding the treatment of the Lambert Claim.  However, the Deed of Trust that secures the Lambert Claim includes provisions that are identical to those included in the Deed of Trust securing the Cheltenham Claim.  *See* **Exhibit "A-2"** to SN Declaration, p. 3-4, Section 1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges and Section 3. Funds for Escrow Items.  Just as with the Cheltenham Claim, the borrower was contractually obligated to make escrow payments to the holder of the Lambert Claim prior to filing the bankruptcy action.  The confirmed Plan contains no language expressly waiving or altering that requirement.  As such, the Court should again conclude the Plan did not eliminate

1    the escrow impound required under the terms of this loan.

2                              **IV.    CONCLUSION**

3          Secured Creditors respectfully request this Court enter an Order clarifying the

4    treatment of Secured Creditors' claims in Debtors' confirmed Plan.   Specifically, Secured

5    Creditors request this Court confirm Secured Creditor's interpretation that the Plan did not

6    eliminate the requirement that Debtors make escrow payments to Secured Creditors.

7     DATED:  May 25, 2021              GHIDOTTI | BERGER LLP

8                                    By:   */s/ Regina A. Habermas, Esq.*
9                                          Regina A. Habermas, Esq.
                                           Nevada Bar No. 8481
10                                         415 S. 6th Street, #310
                                           Las Vegas, NV  89101
11                                         ghabermas@ghidottiberger.com
                                           Attorneys for Secured Creditors
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28