Jeffrey S. Allison (NV Bar # 8949)
**HOUSER LLP**
9970 Research Drive
Irvine, California 92618
6671 S. Las Vegas Blvd.
Building D, Suite 210
Las Vegas, Nevada 89119
Phone: (949) 679-1111
Fax: (949) 679-1112
jallison@houser-law.com

Attorneys for PHH MORTGAGE CORPORATION, successor to OCWEN LOAN SERVICING, LLC

## UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| In Re:<br><br>MELANI SCHULTE and<br>WILLIAM R. SCHULTE,<br><br>2704 SATTLEY LLC,<br>HOT ENDEAVOR LLC,<br>1341 MINUET LLC,<br>1708 PLATO PICO LLC,<br>2228 WARM WALNUT LLC,<br>9425 VALLEY HILLS LLC,<br>9500 ASPEN GLOW LLC,<br>5218 MISTY MORNING LLC,<br>CHERISH LLC,<br>SABRECO INC.,<br>KEEP SAFE LLC,<br><br>Debtors. | Case No. 09-29123-MKN<br><br>Chapter 11<br><br>Jointly Administered with:<br><br>09-31585-MKN<br>09-27238-MKN<br>09-27909-MKN<br>09-27910-MKN<br>09-27911-MKN<br>09-27912-MKN<br>09-27913-MKN<br>09-27914-MKN<br>09-27916-MKN<br>09-28513-MKN<br>09-31584-MKN<br><br>**OPPOSITION OF PHH TO DEBTORS' MOTION FOR CONTEMPT FOR VIOLATION OF THE AUTOMATIC STAY AND DISCHARGE INJUNCTION, FAILING TO COMPLY WITH A COURT ORDER AND THE CONFIRMED PLAN AND FOR DAMAGES AGAINST CREDITORS [DOC 1334]**<br><br>Date:   June 9, 2021 (status hearing)<br>Time:  9:30 a.m.<br>Judge: HON MIKE K. NAKAGAWA |

1    PHH MORTGAGE CORPORATION ("PHH"), successor to OCWEN LOAN SERVICING,

2    LLC ("Ocwen") submits the following in opposition to the Motion for Contempt for Violation of the

3    Automatic Stay and Discharge Injunction, Failing to Comply with a Court Order and the Confirmed

4    Plan and for Damages including Attorneys Fees against Creditor, Shellpoint Mortgage Servicing and

5    Ocwen Loan Servicing, LLC ("Motion") [Doc 1334] filed by Melanie Schulte on behalf of Debtors,

6    including William Schulte (deceased), (collectively "Debtor" unless otherwise indicated).[1]

7    ## I.    INTRODUCTION

8        Debtor's Motion was filed on April 23, 2021, over 10 years after their Chapter 11 Plan was

9    confirmed on March 8, 2011 in the debtors' first bankruptcy case. [Doc 912]. The confirmation

10    order effectively modified secured claims encumbering the debtors' thirty-two (32) rental properties,

11    including that secured by the loan that is the subject of the Motion. Debtor's Motion presents the

12    complexity of numerous corporate debtors, multiple creditors with Ocwen being one of the prior

13    servicers of the loan until 2015, along with erroneous or insufficient accounts of the motions, orders,

14    monthly payments, and the informational monthly statements or correspondence. There are at least

15    five reasons why Debtor's Motion against Ocwen should fail.

16        First, the Motion was apparently mailed to addresses for the former servicer Ocwen, it was

17    not mailed to or served upon PHH. [Doc 1336]. Ocwen merged and has not existed for

18    approximately two years as of June 1, 2019. It is undisputed that Ocwen had service released the

19    loan nearly six years ago to another servicer on August 17, 2015. [Doc 1137; Shellpoint Decl. ¶ 7;

20    (Doc 1342-1); Motion ¶ 27]. PHH was not a party to Debtor's Bankruptcy and has never serviced

---

21    [1] Debtor's 114 page Motion was not mailed or served on PHH. Another counsel forwarded the Motion to PHH during
the week of May 17, 2021. PHH is a successor servicer to Ocwen, although a different entity with a different servicing
22    system. Ocwen merged and has not existed for nearly two years as of June 1, 2019. It is uncontroverted that Ocwen had
transferred the servicing of the loan that is the subject of the Motion to another servicer nearly six years ago on August
17, 2015. PHH has never serviced the loan which is not on its system and it was not a party to the Debtor's Bankruptcy
23    concerning this matter. The undersigned counsel was retained by PHH on May 24, 2021, just two days before the initial
Motion hearing on May 26, 2021. [Doc 1347]. As requested to Debtor's counsel and at the hearing, PHH submits this
24    Opposition prior to the status hearing then set for June 9, 2021. PHH requests indulgence for the Opposition under the
circumstances.

1    the loan which is not in its servicing system.  It is difficult for PHH to locate information for the loan

2    temporarily serviced and released years prior by Ocwen with a different servicing system.

3    Accordingly, the Motion is barred under the doctrine of laches due to the long delay by Debtor for

4    over 10 years resulting in the cessation of business, service transfers, and loss of information or

5    witness personnel all to the prejudice of PHH.  Debtor's delay and inadequate service is

6    compounded because the Motion is largely geared toward a subsequent servicer other than Ocwen.

7        Second, the Motion does not establish that Debtor made each and every loan payment timely

8    for principal, interest, property taxes and insurance after an adequate protection order with a

9    different prior servicer or after the confirmed Ch. 11 plan.  Apparently, the terms now suggested by

10    Debtor were not clearly set forth to the creditors.  Indeed, the Ch. 11 plan made no provision for

11    escrow and stated that all other provisions of the Note and Deed of Trust would apply.  Perhaps this

12    is why Debtor has alleged many creditors did not comply with the confirmation order by correctly

13    updating their records to reflect the modification of claims in the confirmed Ch. 11 plan.  Also,

14    perhaps this is why current creditors are still seeking clarification.  Moreover, Debtor's Motion fails

15    to establish the subjective element of **knowledge** required before establishing any willful and

16    intentional violation by Ocwen, or to warrant sanctions under § 105(a) or punitive damages.

17        Third, PHH asserts it was reasonable for Ocwen to believe the automatic stay terminated

18    upon entry of the Ch. 11 plan confirmation order in 2011 pursuant to the law applicable to the

19    corporate affiliated debtors.  Debtor attempts to classify with Chapter 7 debtors who receive a

20    discharge and no expectation of receiving communications or correspondence from creditors.

21    Debtor had an ongoing contractual relationship for the lien securing the loan.  As such, Ocwen

22    believed it was reasonable to provide Debtor information regarding the status of the secured loan to

23    ascertain whether loss mitigation assistance was needed.  The statements provided to Debtor were:

24    (i) for informational purposes; (ii) not sent with an intention to collect a debt from Debtor

1  personally, but rather to enforce rights as to the Property; (iii) sent to assist the Debtor with potential

2  loss mitigation; and (iv) were objectively reasonable given servicing records showing Debtor's

3  default.

4    Fourth, even if Debtor could satisfy the elements of knowledge of a willful and intentional

5  violation of the automatic stay under §362, Debtor's Motion does not delineate or establish the

6  unspecified damages for any relief sought against Ocwen.  Debtor fails to establish she is entitled or

7  any amounts of damages caused by Ocwen (as opposed to some other servicer).  Apparently, Debtor

8  has successfully moved this secured property, and approximately 30 other properties, in and out of

9  bankruptcies while transferring properties to shell entities in furtherance of a scheme to collect rents

10  while not making payments on the loans.  For Debtor to now seek further redress from the Court as

11  one of two individuals, while seeking to also obtain relief via an LLC over the past 10 years, is a

12  product of unclean hands at best and bad faith at worst.

13    Fifth, Ocwen did not and could not have violated the discharge injunction under §524 or

14  otherwise.  Debtor's discharge was entered on December 15, 2015.  [Doc 1182; Motion ¶ 28].

15  Ocwen did not service the loan at or after that date.  Undisputedly, Ocwen had previously released

16  the servicing on August 17, 2015.  [Doc 1137; Shellpoint Decl. ¶ 7 (Doc 1342-1); Motion ¶ 27].

17  Accordingly, Ocwen could not have violated the discharge injunction and there cannot be any

18  liability against Ocwen.  This is why Debtor's Motion only asserts a violation by and seeks relief

19  against another servicer. [Motion, pp. 104-105; 110-113].

20    For the reasons set forth herein, Debtor's Motion should be denied as to Ocwen.

21  **II.    STATEMENT OF FACTS**

22    On October 14, 2004, Melanie Schulte executed a promissory note in the principal sum of

23  $167,000.00 ("Note").  The Note reflects it was specially indorsed to THE BANK OF NEW

24  YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE

1   CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2004-28CB

2   MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2004-28CB ("Creditor"). [Shellpoint

3   Decl. ¶ 4, Exh. A (Doc 1342-1); Proof of Claim (Claim 51-1)].

4         The Note is secured by a deed of trust ("Deed of Trust") encumbering the real property

5   located at 1392 Echo Falls Ave, Las Vegas, NV 89123 ("Property"). [Shellpoint Decl. ¶ 5, Exh. B;

6   (Doc 1342-1); Proof of Claim (Claim 51-1)]. The Note and Deed of Trust are correctly referenced

7   as the "Subject Loan."

8         Pursuant to the terms of the Deed of Trust, Debtor is required to maintain real property taxes

9   and hazard insurance for the Property; Creditor is entitled to pay taxes/insurance on the

10  Debtor's behalf and set up an escrow impound. [Shellpoint Decl. ¶ 6, Exh. B Deed of Trust ¶¶ 1-5

11  (Doc 1342-1); Proof of Claim (Claim 51-1)].

12        The Deed of Trust was assigned to Creditor. [Shellpoint Decl. ¶ 5, Exh. B (Doc 1342-1);

13  Proof of Claim (Claim 51-1)].

14        On October 11, 2009, Debtor filed this Chapter 11 Bankruptcy Case No. 09-29123.

15        On January 31, 2010, a proof of claim for the Subject Loan was filed by Creditor through its

16  servicer, Litton Loan Servicing, LP for $128,482.54 total debt and $17,593.48 arrearages ("POC").

17  [Claim 51.1].

18        On September 24, 2010, the Court entered an Order Approving a Stipulation for

19  Adequate Protection ("APO") between Debtor and the prior loan servicer, Litton Loan Servicing,

20  LP. The APO required Debtor to make monthly adequate protection payments in the amount of

21  $708.60 commencing October 1, 2010. The APO payments were *based on* a secured claim to be

22  valued at $132,000.00 amortized over thirty (30) years at 5.00% interest per annum. Further, the

23  APO provided Debtor shall timely perform all obligations under the Subject Loan documents as they

24  come due, including but not limited to the payment of real estate taxes and maintaining insurance

1    coverage.  Nothing in the APO permanently modified the POC prior to confirmation of the Ch. 11

2    plan.  Rather, the APO simply required Debtor to make monthly payments and provided default

3    remedies in the event Debtor defaulted on the pre-confirmation payments.  [Doc 703, 717].

4              On September 24, 2010, the Court entered an ORDER GRANTING MOTION TO VALUE

5    COLLATERAL, "STRIP OFF" AND MODIFY RIGHTS OF UNSECURED CREDITORS

6    PURSUANT TO 11 U.S.C. § 506(a) AND § 1123 FOR THE REAL PROPERTY LOCATED AT

7    1392 ECHO FALLS AVENUE, LAS VEGAS, NEVADA 89183 ("Valuation Order").  The

8    Valuation Order bifurcated the POC into a secured claim of $132,000.00 and an unsecured claim of

9    $25,603.21 subject to confirmation of Debtor's Chapter 11 plan.  [Doc 716].

10             On October 11, 2011, a Transfer of Claim was filed reflecting the transfer of the Subject

11   Loan servicing from Litton Loan Servicing, LP to Ocwen.  [Doc 993].

12             On March 8, 2011, the Court entered a Confirmation order on the Ch. 11 Plan which

13   modified the Subject Loan.  [Doc 912].  The terms of the Confirmed Plan listed POC amount in

14   Class 2(m), and provided for a secured claim of $132,000.00 amortized over thirty (30) years at

15   5.00% interest per annum with principal and interest payments of $708.60 per month.  The

16   Confirmed Plan defined the "Effective Date" as the "eleventh business day following the date of

17   entry of the Confirmation Order."  [Doc 912, Confirmed Plan, §6.02].  Accordingly, the Effective

18   Date of the Confirmed Plan occurred on March 23, 2011. As a result, payments on the modified

19   Claim were to commence April 1, 2011 and continue each month thereafter until March 1, 2041.

20   The Plan failed to address the payment of taxes or insurance on the Property post-confirmation.

21   Further, the Plan failed to include mandatory default provisions.

22             On or about August 17, 2015, SHELLPOINT MORTGAGE SERVICING ("Shellpoint")

23   acquired servicing rights to the Subject Loan.  [Doc 1137; Shellpoint Decl. ¶ 7; (Doc 1342-1);

24

1    Motion ¶ 27].  At the time of acquisition, the Subject Loan reflected the terms of the confirmed Plan

2    and a default.  [Shellpoint Decl. ¶¶ 7-8, Exh. A; (Doc 1137].

3            On December 15, 2015, Debtor obtained a Chapter 11 Discharge.  [Doc 1182].

4    **III.    ARGUMENT**

5            A debtor seeking contempt must prove by clear and convincing evidence that a creditor

6    violated a specific and definite confirmation or discharge order, and that sanctions are proper for the

7    creditor's violation.  In re Zilog, 450 F.3d 996, 1007, 1009 (9th Cir. 2006); In re Bennett, 298 F.3d

8    1059, 1069 (9th Cir. 2002); and see, Reliable Elec. Co., Inc. v. Olson Const. Co., 726 F.2d 620, 622

9    (10th Cir. 1984).  Additionally, "The imposition and selection of particular civil sanctions are

10   matters left to the sound discretion of the court."  David v. Hooker, Ltd., 560 F.2d 412, 418 (9th Cir.

11   1977).

12           Moreover, sanctions may be awarded only if a party **knowingly** and willfully or in bad faith

13   violated court orders, and intended the actions which violated the order.  11 U.S.C. § 105(a); In re

14   Fjeldsted, 293 B.R. 12, 26 (9th Cir. BAP 2003); In re Bennett, 298 F.3d at 1069 (knowledge is a

15   prerequisite to the willfulness element).  Under these authorities, the subjective knowledge element

16   is a pre-requisite and cannot be imputed on a motion for sanctions.  Even if there a sanctionable

17   violation adjudicated, Section 105(a) authorizes only such civil compensatory remedies as are

18   necessary and appropriate to carry out the provisions of the Bankruptcy Code.  See, Walls v. Ditech

19   Bank, N.A., 276 F.3d 502, 507 (9th Cir. 2002); In re Bennett, 298 F.3d at 1069; F.J. Hanshaw

20   Enters., Inc. v. Emerald River Dev., Inc., 244 F.3d 1128, 1137-38 (9th Cir. 2001).  Indeed, the power

21   of the bankruptcy court to contemn should be exercised sparingly so long as justice can be done.

22   Mallow Hotel Corp., 18 F.Supp. 869 (M.D.Pa. 1937).

23

24

1    **A.    Laches Applies Because the Debtor Waited 10 Years to Bring the Motion**

2          Debtor cannot recover from PHH for its Motion as to Ocwen under the doctrine of laches.

3    The unreasonable delay has caused prejudice and harm to PHH due to the length of time for over 10

4    years that Debtor waited to file the Motion.  Bankruptcy Courts have invoked laches as part of the

5    "goal [of]…prevent[ion] of prejudicial delay in the bringing of a proceeding,…a relevant and

6    necessary doctrine in the bankruptcy context."  In re Beaty, 300 F.3d 914, 922 (9th Cir. 2002).  The

7    Ninth Circuit has also recognized, "[t]raditionally, laches is invoked when witnesses have died or

8    evidence has gone stale."  Trustees for Alaska Laborers-Constr. Indus. Health & Sec. Fund v.

9    Ferrell, 812 F.2d 512, 518 (9th Cir. 1987).

10          Debtor's Motion seeks contempt sanctions against Ocwen for violation of the automatic stay

11    and the Confirmation Order for the Ch. 11 Plan entered on March 8, 2011. [Doc 912].  The Motion

12    was filed over 10 years later on April 23, 2021 without explanation as to why Debtor did not take

13    action against Ocwen previously.  [Doc 1334].  If the alleged disputes and efforts by Debtor were as

14    significant as suggested, there is nothing established as to why the effort to bring this Motion was

15    delayed or abandoned for over a decade.

16          The unreasonable and unexplained delay in now retroactively raising the Motion issues have

17    caused prejudice to PHH.  For instance, Ocwen undisputedly transferred the servicing of the loan to

18    another servicer nearly six years ago on August 17, 2015, which was also over four years after the

19    Confirmation Order.  [Doc 1137; Shellpoint Decl. ¶ 7; (Doc 1342-1); Motion ¶ 27].  As confirmed

20    by the public record, Ocwen was merged and has not existed as an entity for nearly two years,

21    effective on or about June 1, 2019. PHH while it is the successor servicer of Ocwen, has a different

22    servicing platform, was never a party to Debtor's Bankruptcy for the Motion, never serviced the

23    Subject Loan, and does not have the Subject Loan or records thereof in its servicing system.  Indeed,

24    the majority of the Motion is geared toward another servicer subsequent to Ocwen after August of

1  2015. Debtor's Motion further appears to seek certain provisions to be enforced that are not

2  provided for in the Confirmation Order for the Ch. 11 Plan. (See below).

3      The Motion requires research and review of approximately five years of transactions of

4  records from a prior servicer from September 2010 to September 2011, and former Ocwen from

5  October 2011 to August 2015. [Doc 703, 717, 993]. PHH does not have ready possession, custody

6  or control of those records or witness personnel compounded by Debtor's inaction. Debtor's belated

7  Motion now brought to capitalize with high monetary damage requests is prejudicial to PHH.

8  Laches is applicable here to bar or limit the delayed and insufficient Motion, at least as to PHH for

9  Ocwen.

10     **B.    Debtor Does Not Have Standing**

11     Notwithstanding that Debtor has not met her burden to establish the relief requested against

12  former Ocwen, Debtor also cannot show standing to assert the Motion claims. To establish standing,

13  the movant must assert (1) an injury in fact that (2) is fairly traceable to alleged actions of each

14  defendant or respondent for which (3) the Court can offer redress. See, Wittman v. Personhuballah,

15  136 S.Ct. 1732, 1736 (2016); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); Mont

16  Env't Info. Ctr. V. Stone-Manning, 766 F.3d 1184, 1188 (9th Cir. 2014) (plaintiff did not have

17  standing because it had not suffered harm). This is the "irreducible minimum" required for a

18  plaintiff or movant to proceed with his claims. Valley Forge Christian Coll. V. Ams. United for

19  Separation of Church & State, Inc., 454 U.S. 464, 472 (1982).

20     Here, Debtor bears the burden of proof as to each element of standing and claims. See,

21  Wittman, 136 S.Ct. at 1737, Lujan, 504 U.S. at 561. As discussed further below, Debtor's Motion

22  fails to establish injury-in-fact damages in a certain amount proximately caused by Ocwen, let alone

23  PHH. If there was any delay in adjusting the Subject Loan, it was and is rectified. At the time the

24  servicing was transferred to the subsequent servicer in August 2015, the Subject Loan reflected the

1    terms of the confirmed Ch. 11 Plan and a default. [Shellpoint Opposition, pp. 8, 15-16; Shellpoint

2    Decl. ¶¶ 7-8, Exh. A; (Doc 1137]. Debtor's Motion does not establish each monthly payment of

3    principal, interest, taxes, insurance or escrow between 2010 and 2015, or after. Debtor lacks

4    standing and the Motion fails as to Ocwen in this regard.

5        **C.**    <u>**Ocwen Did Not Violate the Automatic Stay**</u>

6            11 U.S.C. §362(c) provides:

7            (1) the stay of an act against property of the estate under subsection (a) of this section
            continues until such property is no longer property of the estate;

8

9            (2) the stay of any other act under subsection (a) of this section continues until the earliest of-

10              (A) the time the case is closed;
           (B) the time the case is dismissed; or

11              (C) if the case is a case under chapter 7 of this title concerning an individual or a case
              under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or
              denied.

12

13   11 U.S.C. §362(c). Accordingly, the stay of an act against property of the estate continues only until

14   such property is no longer property of the estate. 11 U.S.C. §362(c)(1). The automatic stay

15   terminates upon confirmation pursuant to 11 U.S.C. §362(c)(1) as a Chapter 11 Plan typically

16   revests property of the estate with the debtor. <u>In re Houlik</u>, 481 B.R. 661, 673 (10th Cir. BAP 2012).

17   In a Chapter 11 bankruptcy with corporate debtors, as here, the automatic stay is terminated upon the

18   confirmation of a Ch. 11 plan absent any express preservation of the stay in the plan or court

19   order. The plan controls thereafter, not the stay. Accordingly, post-confirmation collection

20   activities do not violate the stay. *See,* 11 U.S.C. § 362(c)(1) *and* 11 U.S.C. § 1141(d)(1); <u>In re</u>

21   <u>Robert E. Allen v. Robert E. Allen</u>. 300 F.3d 1055, 1059 (9th Cir. 2002); <u>In re Korgan</u>, 52 B.R. 557,

22   558 (Bankr.D.Oregon 1985); <u>In re Hakim</u>, 244 B.R. 820, 822 (Bankr.N.D.Cal. 1999).

23           Here, Debtor's Bankruptcy and properties includes corporate debtors. There is no express

24   preservation of the stay in the Confirmation Order or Ch. 11 Plan entered on March 8, 2011. [Doc

912]. Debtor alleges Ocwen violated the automatic stay of §362(a) by sending eight informational statements or letters following entry of the Confirmation Order on March 8, 2011 and the transfer of servicing to Ocwen on or about October 11, 2011 until Ocwen transferred the servicing to another servicer on August 17, 2015. [Docs 993, 1137, 1342-1; Shellpoint Decl. ¶ 7; Motion ¶ 27]. As a result, Debtor alleges she is entitled to damages under §362(k) based on a willful stay violation. However, Debtor's Confirmed Ch. 11 Plan expressly provided "[a]fter confirmation of the Plan, all property of the Debtors shall vest in the reorganized Debtors and the Holding Company." [Doc 912, §6.05].

PHH submits the automatic stay terminated upon confirmation of the Ch. 11 Plan on March 8, 2011. All eight of the informational statements or letters as referenced in the Motion followed the confirmation of the Ch. 11 Plan. [Motion, pp. 5-12]. Accordingly, Ocwen did not violate the stay.

**D.    Ocwen Did Not Knowingly Violate the Stay or Confirmation Order**

There is vagueness and ambiguity regarding the termination of the stay and the terms of the Confirmation Order for the Ch. 11 Plan as to the effective date for payments to commence, the APO payments, and escrow items such as Property taxes and insurance. Debtor's Motion does not establish when, to whom or in what amounts each monthly installment of principle, interest, and escrow items such as taxes and insurance was made. The Motion does not go into any missing, insufficient and/or returned payments, arrearages, charges or expenses.[2]  The Motion does not establish that Ocwen **knowingly** violated anything.

It was objectively reasonable for Ocwen to believe its actions in furtherance of its *in rem* rights did not violate the stay or confirmation order. See, Taggart v. Lorenzen, 139 S.Ct. 1795, 1799, 1804, 1809 (2019) (objectively reasonable basis for discretionary determination that creditor's

---

[2] Any record of untimely, short or missed payments may have resulted in suspense placement until sufficient to apply toward the oldest installment due which would also result in arrearages and charges.

1   conduct is lawful, i.e. a fair ground of doubt as to whether an order barred the creditors' conduct).

2   The eight statements and letters from Ocwen referenced in the Motion between 2013 and 2014 were

3   based on Ocwen's records and included bankruptcy disclaimers advising the Debtor the

4   correspondence: (i) was for informational purposes only regarding the status of the Subject Loan;

5   and (ii) not an attempt to collect a debt from the Debtor personally, but rather to enforce Ocwen's

6   rights against the Property.  The fact that the statements included amounts or dates due does not

7   diminish their informational purpose, the prominent and broad disclaimers, or Ocwen's reasonable

8   belief that it was not in violation of the stay or Confirmation Order.  To wit, Debtor's Motion fails to

9   establish that Ocwen knowingly violated the stay or Confirmation Order, and fails to establish

10  damages in a sum certain under §362(k) or otherwise.

11          E.      **Ocwen Did Not Willfully and Intentionally Violate the Stay or Confirmation**

12                  **Order**

13          In extreme cases, where conduct rises to the level of bad faith, the bankruptcy court may

14  impose sanctions under its inherent sanction authority.  In re Rainbow Magazine, 77 F.3d 278,

15  284 (9th Cir. 1996). The inherent sanction authority allows a bankruptcy court to deter and provide

16  compensation for a broad range of improper litigation tactics.  Fink v. Gomez, 239 F.3d 989, 992-

17  93 (9th Cir. 2001). "The inherent sanction authority differs from the civil contempt authority in an

18  additional respect as well.  Before imposing sanctions under its inherent sanctioning authority, a

19  court must make an explicit finding of bad faith or willful misconduct . . . [which] consists of

20  something more egregious than mere negligence or recklessness." Id. at 993-94.

21          The Supreme Court in Roadway Express, Inc. v. Piper, 447 U.S. 752 (1980), delivered the

22  definitive summary of the basis on which a federal court may levy sanctions under its inherent

23  power.  The Court reiterated the federal courts' inherent power to levy sanctions, including

24  attorneys' fees, for "willful disobedience of a court order ... or when the losing party has acted in bad

1   faith, vexatiously, wantonly, or for oppressive reasons...." Id. at 766.  The Court reaffirmed the

2   Roadway principles in Chambers v. NASCO, Inc., 501 U.S. 32 (1991), emphasizing the continuing

3   need for resort to the court's inherent power, because it is "both broader and narrower than other

4   means of imposing sanctions." Id. at 46. On the one hand, the inherent power "extends to a full range

5   of litigation abuses."  On the other, the litigant must have "engaged in bad faith or willful

6   disobedience of a court's order." Id. at 46-47, 111 S.Ct. 2123. In Chambers, the Court left no

7   question that a court may levy fee-based sanctions when a party has acted in bad faith, vexatiously,

8   wantonly, or for oppressive reasons.  Fink v. Gomez, 239 F.3d 989, 991-92 (9th Cir. 2001).

9           While Debtor complains the monthly payment amount included escrow, the terms of the

10  Subject Loan permitted Ocwen to advance taxes and insurance on the Debtor's behalf and seek

11  recovery though an escrow impound.  [Shellpoint Decl. ¶ 5, Exh. B; (Doc 1342-1); Proof of Claim

12  (Claim 51-1)].  The pre-confirmation APO contemplated Debtor's maintenance of taxes and

13  insurance for the Property.  If Debtor failed to maintain taxes and/or insurance, Ocwen had the right

14  to advance them to protect the security interest.  Notably, the APO did not permanently modify the

15  Subject Loan documents with respect to escrow.  Rather, any modification of the Subject Loan

16  occurred only through the Confirmed Plan on March 8, 2011, effective March 23, 2011.  The Plan

17  did not incorporate the APO by reference or state the APO shall control the treatment of the POC in

18  the Plan.

19          PHH asserts the terms of the Confirmed Plan superseded and replaced and terms in the APO.

20  The Ch. 11 Plan itself failed to address escrow or the payment of taxes and insurance on the Property

21  post-confirmation.  Rather, the Plan stated that all other provisions of the Note and Deed of Trust

22  would apply.  Absent any express modification of escrow in the Confirmed Ch. 11Plan, PHH further

23  asserts the Subject Loan documents controlled the payment of taxes and insurance post-

24  confirmation.  These authorized Ocwen to advance said funds on the Debtor's behalf where not

1   timely paid and seek recovery through an escrow impound.  Debtor's Motion does not affirmatively

2   discount with evidence that she may have made only principal and interest payments, and not the

3   escrow payments, or months where she may not have made timely payments.

4            Debtor's Motion does not clearly and convincingly establish that Ocwen acted frivolously or

5   vexatiously, and intentionally and willfully violated the stay or Confirmation Order to warrant the

6   extreme and extraordinary remedy of court-ordered sanctions.  Debtor herself does not allege Ocwen

7   engage in unreasonable conduct.  Again, the Motion is based on eight written communications

8   allegedly sent by Ocwen in 2013 and 2014, sent for informational purposes in furtherance of the

9   secured interest in the Property and offering loss mitigation assistance.  [Motion pp. 5-12].  Debtor

10  does not allege she contacted Ocwen to request it no longer send her any statements or

11  correspondence, and the Motion does not assert Ocwen took any other actions allegedly in violation

12  of the stay or Confirmation Order.  Indeed, Ocwen transferred and no longer serviced the loan after

13  August 17, 2015.  [Doc 1137; Shellpoint Decl. ¶ 7; (Doc 1342-1); Motion ¶ 27].  Accordingly,

14  Ocwen did not act willfully or in bad faith to warrant sanctions under §105(a).

15           **F.    <u>Ocwen Could Not Have Violated Any Discharge Injunction</u>**

16           Debtor's Motion does not assert a violation by or sanction damages against Ocwen for

17  violation of the Discharge injunction.  This is because Ocwen had transferred the servicing of the

18  Subject Loan to the subsequent servicer on August 17, 2005 months before the Discharge was

19  entered on December 15, 2015.  [Doc 1137, 1182; Shellpoint Decl. ¶ 7 (Doc 1342-1); Motion ¶¶ 27,

20  28].  This is why Debtor's Motion only asserts a violation by and seeks relief against another

21  servicer. [Motion, pp. 104-105; 110-113].  Ocwen could not have violated the discharge injunction

22  under §524 or otherwise and there is no liability against Ocwen.

23

24

1        **G.    The Motion Fails to Establish Sanctions, Damages or Fees Against Ocwen**

2        Compensatory damages are available to a debtor for a creditor's sanctionable violation under

3    a Section 105(a) contempt motion.  See, Walls v. Wells Fargo Bank, N.A., 276 F.3d 502, 507 (9th

4    Cir. 2002).  "Compensatory damages" are those that are "sufficient in amount to indemnify the

5    injured person for the loss suffered."  See, *Black's Law* Dictionary 445 (9th ed. 2009).  In order to

6    recover such damages, the debtor must specifically state and prove not only the right to damages, but

7    also the amount of damages which must be based on more than conjecture.  See, Silver Sage

8    Partners, Ltd. v. City of Desert Hot Springs, 251 F.3d 814, 824 (9th Cir. 2001); McClaren v. Plastic

9    Indus., Inc., 97 F.3d 347, 361 (9th Cir. 1996).

10       Generally, for recovery of any emotional distress damages in the Ninth Circuit a debtor must

11   prove that she (1) suffered a significant harm; (2) clearly establish the significant harm; and (3)

12   demonstrate a causal connection between the significant harm and the violation (as distinct from the

13   anxiety and stress inherent in the bankruptcy process).  In re Bauer, No. BAP EC-09-1281-DMKH,

14   2010 WL 6452899, at *9 (B.A.P. 9th Cir. Apr. 8, 2010); Dawson v. Washington Mutual Bank (In re

15   Dawson), 390 F.3d 1139, 1148 (9th Cir. 2004.  Courts have previously held that emotional distress

16   damages are not recoverable where not established in the contempt motion and the supporting

17   evidence is debtor's own statement that he was upset.  See, In Re Grihalva, No. 11-26893, 2013 WL

18   5311227, at *6 n. 17 (Bankr. D. Nev. Sept. 3, 2013).

19       Courts have applied that standard of §330 for compensating the attorneys' fees of bankruptcy

20   professionals which provides "reasonable compensation for actual, necessary services."  11 U.S.C. §

21   330(a)(1)(A).  Courts especially scrutinize cases where the debtor's only injuries are those incurred

22   in litigating motions for sanctions, and where there exist insufficient circumstances to warrant

23   punitive damages.  See, e.g., In re Roman, 283 B.R. 1, 12 (B.A.P. 9th Cir. 2002)(court considers two

24   factors: "(1) what expenses or costs resulted from the violation and (2) what portion of those costs

1  was reasonable, as opposed to costs that could have been mitigated."); <u>Shadduck v. Rodolakis</u>, 221

2  B.R. 573, 585 (D.Mass. 1998) (requiring a debtor to attempt to resolve the dispute prior to filing a

3  motion for sanctions).  Although the Ninth Circuit "allows a debtor to be awarded attorney fees

4  incurred in prosecuting an action for damages for violation of the automatic stay…only an award of

5  fees reasonably incurred was mandated by statute, and therefore courts awarding fees retained the

6  discretion to eliminate unnecessary or plainly excessive fees." <u>In re Schwartz-Tallard</u>, 803 F.3d

7  1095 (9th Cir. 2015).

8       Finally, while section 362(k) authorizes an award of punitive damages in appropriate

9  circumstances, a bankruptcy court is not generally authorized to impose punitive sanctions under the

10  contempt authority of section 105(a). <u>See</u>, <u>Dyer</u>, 322 F.3d at 1194; <u>In re Roman</u>, 283 B.R. 1, 14 (9th

11  Cir. BAP 2002).  Whether Section 105(a) authorizes a bankruptcy court to award punitive damages

12  under appropriate circumstances on a contempt motion, punitive damages are not warranted where a

13  debtor has failed to establish a right to recover actual damages. <u>See</u>, <u>e.g.</u>, <u>In re McHenry</u>, 179 B.R.

14  165, 168 (B.A.P. 9th Cir. 1995).

15       Debtor has failed to establish she is entitled to any damages from the former Ocwen, no

16  longer an existing entity.  Debtor does not detail or quantify the damages allegedly suffered beyond

17  a generalized $25k of attorneys' fees incurred to bring the belated Motion over a decade after the

18  Confirmation Order, and a vague statement of emotional distress with $150 for time/gas driving to

19  her attorney's office.  There is no evidence of any portion of this amount Debtor attributes to Ocwen.

20  The only assertion of emotional distress includes Debtor's assertion of "emotional strain." [Debtor

21  Decl. ¶ 37].  This does not establish a significant harm or a causal connection to an alleged violation

22  of Ocwen.

23       Similar to her claims for compensatory damages, emotional distress and attorneys' fees, her

24  request for punitive damages is unavailing and unrecoverable.  There is no sufficient evidence that

1   Ocwen acted with a reckless or callous disregard for Debtor's rights, a necessary prerequisite for

2   recovery of punitive damages. See, e.g., In re Bloom, 875 F.2d at 228. Debtor has failed to prove

3   that Ocwen acted deliberately, maliciously or in bad faith.

4         Debtor's Motion neither proves Debtor's right to nor the specific amount of any delineated

5   damages purportedly caused by Ocwen with any clear and convincing evidence. Debtor's vague

6   damages requests are improperly based merely on conjecture or implication. Accordingly, Debtor is

7   not entitled to a recovery of damages, fees or punitive damages from former Ocwen.

8   **IV.    CONCLUSION**

9         For the reasons set forth above, PHH respectfully requests that Debtor's Motion be denied.

10  Alternatively, PHH respectfully requests a scheduling order to conduct discovery, settlement

11  conference, and potential dispositive motions before an evidentiary hearing.

12        **WHEREFORE**, PHH respectfully requests that:

13      1.  The Court enter an Order denying Debtor's Motion for Contempt;

14      2.  In the alternative, the Court issue a Scheduling Order to conduct discovery, settlement

15          conference, and potential dispositive motions before an evidentiary hearing;

16      3.  An award of costs;

17      4.  Any additional relief the Court deems appropriate.

18

19  DATED: May 26, 2021               HOUSER LLP

20

21                          */s/ Jeffrey S. Allison*
                        Jeffrey S. Allison, Esq.
                        9970 Research Drive

22                          Irvine, California 92618
                        PHH MORTGAGE CORPORATION,

23                          successor to OCWEN LOAN SERVICING,
                        LLC

24

1

**<u>CERTIFICATE OF SERVICE</u>**

2

     I hereby certify that I am over the age of eighteen (18), I am not a party to this action, and
that on this date I caused to be served a true and correct copy of this **OPPOSITION OF PHH TO
DEBTORS' MOTION FOR CONTEMPT FOR VIOLATION OF THE AUTOMATIC STAY
AND DISCHARGE INJUNCTION, FAILING TO COMPLY WITH A COURT ORDER AND
THE CONFIRMED PLAN AND FOR DAMAGES AGAINST CREDITORS [DOC 1334]** by:

3

4

5

    <u>X</u>    ECF
    <u>X</u>    U.S. Mail

6

    __    Facsimile transmission
    __    Overnight Mail

7

    __    Hand and/or Personal Delivery

8

and addressed to the following:

9

**CHRISTOPHER P. BURKE, ESQ**
218 S. MARYLAND PKWY.

10

LAS VEGAS, NEVADA 89101
Tel: (702) 385-7987

11

atty@cburke.lvcoxmail.com

12

Attorney for Debtors

13

**EDDIE JIMENEZ, ESQ.**
ALDRIDGE PITE, L.L.P.

14

7220 SOUTH CIMARRON RD, STE. 140
LAS VEGAS, NEVADA 89113

15

Tel: (858) 750 7600
Fax: (619) 590-1385

16

Mailing Address:
4375 Jutland Dr., Ste 200

17

P.O. Box 17933
San Diego, California 92177-0933

18

*Attorneys for* SHELLPOINT MORTGAGE

19

SERVICING

20

**U.S. TRUSTEE - LV - 11**
300 LAS VEGAS BOULEVARD S. SUITE 4300

21

LAS VEGAS, NV 89101
USTPRegion17.lv.ecf@usdoj.gov

22

Dated:  May 27, 2021

23

24

An employee of HOUSER LLP