_____
Honorable Mike K. Nakagawa
United States Bankruptcy Judge

Entered on Docket
July 20, 2021

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

\* \* \* \* \* \*

| | |
|---|---|
| In re: | ) Case No.: 09-29123-MKN |
| | ) Chapter 11 |
| MELANI SCHULTE and | ) |
| WILLIAM SCHULTE, | ) Jointly Administered with: |
| | ) |
| 2704 SATTLEY LLC, | ) 09-27238-MKN |
| HOT ENDEAVOR LLC, | ) 09-27909-MKN |
| 1341 MINUET LLC, | ) 09-27910-MKN |
| 1708 PLATO PICO LLC, | ) 09-27911-MKN |
| 2228 WARM WALNUT LLC, | ) 09-27912-MKN |
| 9425 VALLEY HILLS LLC, | ) 09-27913-MKN |
| 9500 ASPEN GLOW LLC, | ) 09-27914-MKN |
| 5218 MISTY MORNING LLC, | ) 09-27916-MKN |
| CHERISH LLC, | ) 09-28513-MKN |
| SABRECO INC., | ) 09-31584-MKN |
| KEEP SAFE LLC, | ) 09-31585-MKN |
| | ) |
| Debtors. | ) Date:  June 9, 2021 |
| | ) Time:  9:30 a.m. |

**ORDER ON MOTION FOR CONTEMPT FOR VIOLATION OF THE AUTOMATIC STAY AND DISCHARGE INJUNCTION, FAILING TO COMPLY WITH A COURT ORDER AND THE CONFIRMED PLAN AND FOR DAMAGES INCLUDING ATTORNEYS FEES AGAINST CREDITORS, SHELLPOINT MORTGAGE SERVICING AND OCWEN LOAN SERVICING, LLC**[1]

---

[1] In this Order, all references to "ECF No." are to the numbers assigned to the documents filed in the case as they appear on the docket maintained by the clerk of the court. Because there are multiple bankruptcy cases filed in multiple years, the relevant year of the particular case will precede the ECF No. as required. Any additional necessary identifying information will be provided.

1

On June 9, 2021, the court heard the Motion for Contempt for Violation of the Automatic Stay and Discharge Injunction, Failing to Comply With a Court Order and the Confirmed Plan and for Damages Including Attorney's Fees Against Creditors, Shellpoint Mortgage Servicing ("Shellpoint") and Ocwen Loan Servicing, LLC ("Ocwen") ("Contempt Motion"), brought in the above-captioned case. The appearances of counsel were noted on the record. After arguments were presented, the matter was taken under submission.

## BACKGROUND[2]

On October 11, 2009, William R. Schulte and Melani Schulte (jointly "Debtors"), husband and wife, filed a voluntary petition for reorganization under Chapter 11 ("2009 Bankruptcy"). (2009 ECF No. 1).[3] The filing of the bankruptcy petition resulted in the automatic stay arising under Section 362(a) ("Automatic Stay"). The Debtors' assets consisted of numerous rental properties. Ownership of each rental property was held by separate entities, each of which filed separate Chapter 11 proceedings.[4] The 2009 Bankruptcy commenced by the Debtors was jointly administered with the Chapter 11 proceedings of the separate entities. (2009 ECF No. 128).

---

[2] In this Order, all references to "Section" shall be to provisions of the Bankruptcy Code, 11 U.S.C. §§ 101, et seq., unless otherwise indicated. All references to "FRBP" are to the Federal Rules of Bankruptcy Procedure. All references to "FRE" are to the Federal Rules of Evidence.

[3] Pursuant to FRE 201(b), the court takes judicial notice of all materials appearing on the docket in the above-captioned bankruptcy case and related bankruptcy proceedings. See U.S. v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980); see also Bank of Am., N.A. v. CD-04, Inc. (In re Owner Mgmt. Serv., LLC Trustee Corps.), 530 B.R. 711, 717 (Bankr. C.D. Cal. 2015) ("The Court may consider the records in this case, the underlying bankruptcy case and public records.").

[4] Those separate Chapter 11 proceedings were: 2704 Sattley LLC, Case No. 09-27238-BAM; Hot Endeavor LLC, Case No. 09-27909-BAM; 1341 Minuet LLC, Case No. 09-27910-BAM; 1708 Plato Pico LLC, Case No. 09-27911-BAM; 2228 Warm Walnut LLC, Case No. 09-27912-BAM; 9425 Valley Hills LLC, Case No. 09-27913-BAM; 9500 Aspen Glow LLC, Case No. 09-27914-BAM; 5218 Misty Morning LLC, Case No. 09-27916-BAM; Cherish LLC, Case No. 09-28513-BTB; Sabreco Inc., Case No. 09-31584-MKN; and Keep Safe LLC, Case No. 09-31585-BAM.

On March 8, 2011, an order ("Confirmation Order") was entered confirming the Debtors' proposed "Third Amended Plan of Reorganization" ("Confirmed Plan")[5] in the 2009 Bankruptcy. (2009 ECF No. 912). The Confirmation Order was not appealed, its provisions were never stayed, and no amendments to the Confirmation Order or the terms of the Confirmed Plan were ever sought.

On February 10, 2012, the Debtors filed for divorce and Melani Schulte ("Melani") was awarded one or more of the rental properties as her sole and separate property.

On December 15, 2015, the Debtors received their Chapter 11 discharge as a result of the 2009 Bankruptcy ("Chapter 11 Discharge"). (2009 ECF No. 1182). Issuance of the Chapter 11 Discharge resulted in a number of protections automatically created in favor of the Debtors, including in a statutory injunction arising under Section 524(a)(2) ("Discharge Injunction").

On January 21, 2016, an order was entered in the 2009 Bankruptcy granting relief from stay in favor of Nationstar Mortgage LLC with respect to the real property located at 10317 Neopolitan Place, Las Vegas, Nevada 89144. (2009 ECF No. 1191).

On August 18, 2016, an order was entered in the 2009 Bankruptcy granting relief from stay in favor of Image Finance LLC with respect to the real properties located at 7873 Bridgefield Lane, Las Vegas, Nevada, 1624 Desert Canyon Court, Las Vegas, Nevada, and 1528 Splinter Rock Way, Las Vegas, Nevada. (2009 ECF No. 1215).

On December 8, 2016, an order was entered in the 2009 Bankruptcy granting relief from

---

[5] The Confirmed Plan previously was filed on November 23, 2010 (ECF No. 834) and provided, *inter alia*, for title to all of the Debtors' real properties to be transferred to a holding company, but without limiting the Debtors' personal liability to their Class 1 creditors or their obligations under the plan. See Confirmed Plan at §5.03. The Confirmed Plan also provided for the jointly administered Chapter 11 estates to be substantively consolidated as of the effective date of the plan. Id. at §5.07. Additionally, the Confirmed Plan provided for all property of the consolidated debtor estates to vest in the reorganized Debtors after plan confirmation, free and clear of all liens, claims, charges or other encumbrances, except as provided in Section 6.06. Id. at §6.05. That Section 6.06 expressly states, in pertinent part: "The existing liens and lien rights of those lenders holding claims in Class 1 and Class 2 are expressly preserved under the Plan, and their existing liens shall ride through and remain attached to any and all underlying collateral in any transfer of property expressly set forth in, or contemplated by, the Plan." Id. at §6.06.

stay in favor of Fifth Third Mortgage Company with respect to the real property located at 5218 Misty Morning Drive, Las Vegas, Nevada 89118. (2009 ECF No. 1234).

On May 31, 2017, facing foreclosure proceedings, an entity named Schulte Properties, LLC ("SPLLC"), filed for Chapter 11 bankruptcy protection ("2017 Bankruptcy").[6] On the same date, a notice of the Chapter 11 filing ("Bankruptcy Notice") was issued scheduling a meeting of creditors ("341 Meeting") for July 6, 2017. (2017 ECF No. 3). SPLLC voluntarily dismissed the 2017 Bankruptcy on January 16, 2018, however, in anticipation of resolving disputes surrounding the amounts owed to the various lenders as a result of the Confirmed Plan in the 2009 Bankruptcy and the individual discharge obtained by the Debtors.[7] Following the dismissal of the 2017 Bankruptcy, and in further compliance with the Confirmation Order, Melani continued to transfer additional properties to SPLLC.

On September 27, 2017, an order was entered in the 2009 Bankruptcy in favor of The Bank of New York Mellon f/k/a The Bank of New York successor in interest to JP Morgan Chase Bank, N.A., successor in interest to Bank One, National Association, as Trustee for CSFB Mortgage-Backed Pass-Through Certificates, Series 2003-27, confirming that no automatic stay was in effect with respect to the real property located at 509 Canyon Greens Drive, Las Vegas, Nevada 89144. (2009 ECF No. 1240).

On February 15, 2018, an order was entered in the 2009 Bankruptcy in favor of Bayview Loan Servicing, LLC, confirming that the automatic stay was terminated as to the real property located at 1701 Empire Mine Drive, Henderson, Nevada 89014. (2009 ECF No. 1255).

On May 10, 2018, facing continued foreclosure proceedings, SPLLC again filed for Chapter 11 bankruptcy protection ("2018 Bankruptcy").[8] On the same date, a Bankruptcy Notice of the Chapter 11 filing was issued scheduling a 341 Meeting for June 14, 2018. (2018 ECF No.

---

[6] 2017 ECF No. 1. The SPLLC proceeding in 2017 was denominated Case No. 17-12883-mkn.

[7] 2017 ECF No. 99 (The court found cause exists to dismiss the Chapter 11 bankruptcy case "without prejudice pursuant to 11 U.S.C. [§] 1112(b).").

[8] 2018 ECF No. 1. The 2018 Bankruptcy was denominated Case No. 18-12734-mkn.

3). The 341 Meeting was concluded on September 23, 2018.

On May 24, 2018, SPLLC filed its schedules of assets and liabilities ("Schedules"), statement of financial affairs, and other required information.[9]

On December 20, 2018, an order was entered in the 2009 Bankruptcy in favor of Federal National Mortgage Association, confirming that the automatic stay was terminated as to the real property located at 8562 Lambert Drive, Las Vegas, Nevada 89147. (2009 ECF No. 1266).

On February 27, 2019, SPLLC filed its first plan of reorganization and disclosure statement. (2018 ECF Nos. 201 and 202). Approval of SPLLC's disclosure statement was set for hearing on April 17, 2019 (ECF No. 205) and was further continued as a status hearing to May 29, 2019. SPLLC's disclosure statement was approved on May 29, 2019.

On June 6, 2019, an order approving SPLLC's disclosure statement was entered. (2018 ECF No. 530). The disclosure statement order scheduled a status hearing for December 4, 2019, to set a hearing date for confirmation of SPLLC's Plan of Reorganization #2 (2018 ECF No. 346). The status hearing was further continued several other times.

On January 28, 2020, the court issued an order in the 2009 Bankruptcy directing the Debtors to show cause why the 2009 Bankruptcy case should not be closed. (2009 ECF No. 1269).

On August 28, 2020, an order was entered in the 2009 Bankruptcy authorizing Melani to employ new bankruptcy counsel.[10] (2009 ECF No. 1282).

On September 4, 2020, Melani filed a motion in the 2009 Bankruptcy seeking contempt sanctions against creditor Citi Mortgage, Inc. in connection with the real property located at 9500

---

[9] FRBP 1007(c) allows a debtor to, within 14 days of filing a voluntary bankruptcy petition, file "the schedules, statements, and other documents" as required under this rule. On its property Schedule "A/B," SPLLC listed 32 separate parcels of real property, including a property valued at $277,850.00 located at 1392 Echo Falls Avenue, Las Vegas, Nevada 89193 ("Echo Falls Property").

[10] The order essentially authorized Melani to employ new bankruptcy counsel for the limited purpose of advising and representing her in connection with claims for violation of the automatic stay, bankruptcy discharge, the confirmed Chapter 11 plan, and/or modifying mortgages and the litigation of such matters. (2009 ECF No. 1278).

5

Aspen Glow Drive, Las Vegas, Nevada 89134 ("Citi Contempt Motion"); the motion was noticed to be heard on October 7, 2020. (2009 ECF Nos. 1283 and 1284).[11]

On September 24, 2020, a stipulation was filed in the 2009 Bankruptcy to continue the hearing on the Citi Contempt Motion to November 18, 2020. (2009 ECF No. 1305).

On October 20, 2020, and November 6, 2020, orders were entered in the 2009 Bankruptcy requiring Melani to appear at a continued settlement conference being conducted in connection with the SPLLC proceeding. (2009 ECF Nos. 1320 and 1323).

On November 18, 2020, a status hearing was conducted on the Citi Contempt Motion at which an evidentiary hearing was scheduled for March 29 and March 30, 2021. (2009 ECF No. 1326).

On March 19, 2021, an order was entered in the 2009 Bankruptcy scheduling a status conference for July 28, 2021. (2009 ECF No. 1332).

On March 19, 2021, a settlement conference was held before Judge Gary Spraker regarding SPLLC's disclosure statement (ECF No. 345). Judge Spraker mediated with the parties for approximately four (4) hours, but a settlement was not reached. A status hearing in the SPLLC case is scheduled to be held on July 28, 2021 (along with the status conference in the 2009 Bankruptcy).

On April 23, 2021, Melani filed the instant Contempt Motion in the 2009 Bankruptcy seeking contempt sanctions against Shellpoint and Ocwen; the motion was noticed to be heard on May 26, 2021. (2009 ECF Nos. 1334 and 1335). Attached as Exhibit 1 to the Contempt Motion is a Declaration of Melani Schulte dated April 16, 2021 ("Melani Declaration"). Additional Exhibits 2 through 9 are attached to the Contempt Motion that appear to be authenticated by the Melani Declaration.[12]

On April 26, 2021, a stipulation was filed in the 2009 Bankruptcy to dismiss with

---

[11] An amended motion was filed on September 11, 2020 (2009 ECF No. 1289), but the hearing date was unchanged.

[12] Unfortunately, Melani's former spouse and co-debtor in the 2009 Bankruptcy, William R. Schulte, died on January 21, 2020. See Melani Declaration at ¶ 129. The 2009 Bankruptcy has never been closed, however, and a suggestion of death ordinarily must be filed.

6

prejudice the Citi Contempt Motion.  (2009 ECF No. 1338).

On May 12, 2021, Shellpoint filed a response to the instant Contempt Motion ("Shellpoint Opposition").  (2009 ECF No. 1342).  Attached as Exhibit A to the Shellpoint Opposition is a form declaration signed by Daniella Banks, a bankruptcy manager for Shellpoint ("Shellpoint Declaration").  Additional Exhibits B through E are attached to the Shellpoint Opposition.

On May 24, 2021, PHH Mortgage Corporation ("PHH"), as successor to Ocwen, filed a notice of appearance and request to continue the hearing on the instant Contempt Motion.  (2009 ECF No. 1347).

On May 25, 2021, U.S. Bank National Association filed a motion to clarify plan treatment regarding various real properties ("Clarification Motion"), along with a declaration of SN Servicing Corporation.  The Clarification Motion was noticed to be heard on June 23, 2021.  (2009 ECF Nos. 1351, 1352, and 1353).

On May 27, 2021, PHH filed an opposition to the instant Contempt Motion ("PHH Opposition"), accompanied by the declaration and amended declaration of Jeffrey S. Allison ("Allison Declaration").  (2009 ECF Nos. 1357, 1358, and 1359).

On June 7, 2021, Melani filed a reply to the PHH Opposition ("Contempt Motion Reply").  (2009 ECF No. 1362).[13]

## DISCUSSION

The instant Contempt Motion covers 114 pages containing 116 separate factual allegations that are based on the Melani Declaration.  The allegations concern the servicing of a loan secured by the Echo Falls Property ("Echo Falls Loan").  At the conclusion of the Contempt Motion, Melani requests an order finding that in servicing the Echo Falls Loan, Shellpoint and Ocwen violated the Automatic Stay, violated the Confirmation Order, violated the Confirmed Plan, and violated the Discharge Injunction.  Based on the alleged violations, Melani seeks to impose sanctions against Shellpoint and Ocwen under Section 362(k)(1), under Section 105(a),

---

[13] Due to errors in the caption of the document, Melani subsequently refiled the Contempt Motion Reply but did not change its content.  (2009 ECF Nos. 1364 and 1366).

or under the court's inherent authority. Melani requests that the sanctions take the form of emotional distress and other actual damages, as well as punitive damages. She also seeks an award of attorney's fees and costs. Assuming that sanctions are appropriate, Melani finally requests that a separate hearing be conducted to determine the amount of the sanctions, as well as attorney's fees and costs. In other words, Melani seeks a determination of liability for civil contempt based on four separate alleged violations, and a separate determination of any resulting contempt sanctions.

In its response, Shellpoint asserts that it did not obtain rights to service the Echo Falls Loan until August 17, 2015 and that Melani already was in default in her Confirmed Plan payments at that time. See Shellpoint Opposition at 3:5-15 and Shellpoint Declaration at ¶¶ 8 and 11. It also argues that the Automatic Stay terminated either on March 8, 2011 when the Confirmation Order was entered that removed the Echo Falls Property from the bankruptcy estate by vesting it in the reorganized Debtors,[14] or no later than December 15, 2015 when Melani received her Chapter 11 Discharge. See Shellpoint Opposition at 3:16-18 and 12:15-25.[15] Shellpoint further maintains that because Melani is in default under the Confirmed Plan, there has been no violation of the Discharge Injunction. Id. at 4:1-10 and 17:13 to 19:16.

---

[14] See discussion at note 5, supra.

[15] Melani offered no written argument, nor any suggestion at the hearing, that the automatic stay remained in effect as to property of the estate after the Confirmation Order was entered on March 8, 2011. Section 362(c)(1), however, refers only to acts against property of the estate. Section 362(c)(2) refers to any other act encompassed by Section 362(a), and provides that the automatic stay remains in effect until the earliest of when the case is closed, the case is dismissed, or a Chapter 11 discharge is granted or denied. The 2009 Bankruptcy has never been closed or dismissed. The Chapter 11 discharge was entered on December 15, 2015. With respect to the Echo Falls property, the automatic stay terminated on March 8, 2011. See, e.g., In re Bour, 433 B.R. 898 (Bankr. M.D. Fla. 2010)(revesting of post-petition wages under individual debtors' confirmed Chapter 11 plan terminated automatic stay). With respect to the Echo Falls Loan, the automatic stay terminated as to the Debtors on December 15, 2015. See, e.g., In re Binder, 224 B.R. 483 (Bankr. D. Colo. 1998) (even after stay terminates for revested property under Chapter 13 plan, automatic stay remains for actions to collect prepetition debts until case is converted, dismissed or a discharge is entered).

Finally, it maintains that any award of sanctions is not appropriate under the circumstances. Id. at 4:11-21 and 19:17 to 23:17.[16]

In its response, PHH, as successor to Ocwen, asserts that Ocwen transferred servicing of the Echo Falls Loan to Shellpoint on August 17, 2015, and that Ocwen no longer existed as of June 1, 2019. See PHH Opposition at 2:17-20 & n.1 and Allison Declaration at ¶ 3. PHH maintains that Melani's claim for damages is barred by the doctrine of laches,[17] id. at 3:3-6 and 8:1 to 9:8-9, and that Melani had defaulted on the Confirmed Plan before the servicing rights were transferred by Ocwen to Shellpoint. Id. at 3:7-11 and 9:23 to 10:3.[18] It argues that any award of damages for violation of the Automatic Stay or Confirmation Order is not appropriate under the circumstances, id. at 4:4-7, 11:1-11 and 11:20 to 14:14, and that no discharge violation occurred because Ocwen had relinquished any servicing rights before the Chapter 11 Discharge

---

[16] Shellpoint includes an unusual argument that Melani has failed to mitigate her damages by not engaging in good faith settlement negotiations and by pursuing the Contempt Motion. See Shellpoint Opposition at 22:19 to 23:3. Mitigation of damages typically assumes that the party is in control of the circumstances that cause the claimed damages. In this instance, Melani asserts that the damages she suffered were caused by actions controlled by Ocwen or Shellpoint.

[17] It is not altogether clear whether PHH is asserting laches as an equitable defense to the alleged violation of the Automatic Stay, the Confirmation Order, the Confirmed Plan, or the Discharge Injunction. While equitable defenses may be asserted in bankruptcy proceedings, see, e.g., Northbay Wellness Group, Inc. v. Beyries, 789 F.3d 956 (9th Cir. 2015) (clean hands doctrine may be considered in dischargeability proceedings), creditors are not categorically prohibited from seeking retroactive relief so long as such relief does not create court jurisdiction where none existed. Compare Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano, 140 S.Ct. 696 (2020)(nunc pro tunc order of remand improperly issued to create jurisdiction for court that prematurely entered an order prior to remand) with Merriman v. Fattorini (In re Merriman), 616 B.R. 381 (B.A.P. 9th Cir. 2202) (annulment of the automatic stay permitted to allow state court action commenced in violation of the automatic stay to proceed). In other words, while PHH apparently suggests that Melani has not been diligent in asserting her claims, the same could be said if PHH could obtain retroactive relief from stay on behalf of Ocwen to nullify the alleged violations.

[18] Based on its argument that Melani has established no damages caused by Ocwen, PHH argues that Melani has no standing to assert her claim against Ocwen. See PHH Opposition at 9:10 to 10:4.

was entered. Id. at 4:13-18 and 14:17-22. Finally, PHH maintains that any award of sanctions against Ocwen is not warranted under the circumstances. Id. at 15:1 to 17:7.

### I. The Burden of Proof.

The parties generally agree on the elements that must be proven to obtain the sanctions sought by Melani. See, e.g., Contempt Motion at 95:13 to 98:14, 101:7 to 104:8, 106:4-12[19]; Shellpoint Opposition at 9:24 to 10:8, 12:2-14, 13:16 to 14:8; PHH Opposition at 7:5-22. As previously summarized, the parties obviously disagree on whether the necessary elements exist, or that sanctions are warranted even if violations have occurred. There appears to be no disagreement, however, that Melani bears the burden of proof on all of the facts necessary to find the elements required for each alleged violation as well as the factual basis for the damages, attorney's fees, and costs that she seeks.

### II. The Standard of Proof.

Section 362(k)(1) requires the court to award actual damages, including costs and attorney's fees, to individuals injured by a willful violation of the automatic stay. In appropriate circumstances, punitive damages also may be awarded. The individual injured must demonstrate the factual basis for the violations and the damage award by a preponderance of the evidence. See, e.g., Eskanos & Adler, P.C. v. Leetien, 309 F.3d 1210, 1215-16 (9th Cir. 2002)(sanctions for post-petition collection action filed in violation of the automatic stay).

Section 524(a)(2) creates a statutory injunction, but does not create a remedy for when the injunction is violated. Section 105(a) authorizes the court to issue "any order…that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. The remedy for violation of an injunction typically is to hold the violator in civil contempt and then award civil sanctions in favor of the injured party.[20] The remedy for violation of a court order, including

---

[19] Melani's legal argument, however, seems to conflate a court's ability to find a party in civil contempt with a court's inherent authority to address bad faith and willful misconduct in litigation. See discussion at 11-12, infra.

[20] The remedy would be based on a finding that the violator was either in criminal contempt or in civil contempt. The remedy for criminal contempt may include incarceration or economic sanctions designed to punish and therefore deter future violations. The remedy for civil contempt may include sanctions to coerce compliance or to compensate the party injured by

provisions of a plan confirmed by a court order, also is to hold the violator in civil contempt. The injured party must demonstrate the factual basis for a finding of civil contempt and an award of sanctions by clear and convincing evidence. See Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1190-91 (9th Cir. 2003).

Courts separately possess inherent authority to "deter and provide compensation for a broad range of litigation tactics."[21] In re Dyer, 322 F.3d at 1196, citing Fink v. Gomez, 239 F.3d 989, 992-93 (9th Cir. 2001).[22] Imposing sanctions for improper litigation tactics requires explicit findings of bad faith or willful misconduct. Id.[23] The exercise of inherent authority to impose

---

the violation. Coercive civil contempt sanctions may include an award of actual damages and legal expenses to the injured party, or, incarceration of the violator until such time as the violator complies.

[21] Improper litigation tactics attempted through representations of law or fact to the court also can be addressed through Civil Rule 11. That rule permits litigants to seek sanctions against opposing parties for filing materials that contain, and later advocating, frivolous factual and legal arguments. Civil Rule 11 permits litigants to request such sanctions, and also permits a court to impose sanctions *sua sponte*. A court is not prevented by Civil Rule 11 from exercising its inherent authority.

[22] In Fink v. Gomez, the circuit panel held that "an attorney's reckless misstatements of law and fact, when coupled with an improper purpose, such as an attempt to influence or manipulate proceedings in one case in order to gain tactical advantage in another case, are sanctionable under a court's inherent power." 239 F.3d at 994. See, e.g., Mahaffey v. Milner (In re Crystal Cathedral Ministries, 2021 WL 2182975 (B.A.P. 9th Cir. May 28, 2021)(affirming award of attorneys' fees as sanction under inherent powers).

[23] The circuit panel in Dyer distinguished between sanctions sought through civil contempt and sanctions imposed through a court's inherent authority:

> We do discern a difference. Civil contempt authority allows a court to remedy a violation of a specific order (including "automatic" orders, such as the automatic stay or discharge injunction). The inherent sanction authority allows a bankruptcy court to deter and provide compensation for a broad range of improper litigation tactics. *Fink v. Gomez,* 239 F.3d 989, 992–93 (9th Cir.2001).
>
> The inherent sanction authority differs from the civil contempt authority in an additional respect as well. Before imposing sanctions under its inherent sanctioning authority, a court must make an explicit finding of bad faith or willful misconduct. *Id.* In this context, "willful misconduct" carries a different meaning than the meaning employed in the context of determining whether an individual is entitled to damages under § 362(h) or a contempt judgment under § 105(a) for an

11

civil sanctions against a party is limited and should go no farther than necessary to redress the losses sustained by bad faith or willful misconduct. See America Unites for Kids v. Rousseau, 985 F.3d 1075, 1089 (9th Cir. 2021).

### III. The Necessity for an Evidentiary Hearing.

As previously mentioned, Melani requests a separate evidentiary hearing on the award of actual damages, punitive damages, attorney's fees and costs that she seeks by the instant Contempt Motion. Melani, Shellpoint and PHH, however, apparently believe that an evidentiary hearing is entirely unnecessary to determine whether a culpable violation occurred with respect to the Automatic Stay, the Confirmation Order, the Confirmed Plan, or the Discharge Injunction. They are incorrect.

The exhibits submitted by the parties, as well as the Melani Declaration, Allison Declaration, and Shellpoint Declaration, apparently do not raise factual disputes as to what was physically sent or received by the parties or their predecessors. They do raise factual disputes that go to the heart of whether Melani can meet her burden of proof under the various theories for which she requests sanctions.

As to the Automatic Stay, there appears to be little dispute that the Echo Lane Property was no longer property of the Chapter 11 estate after March 8, 2011, because it vested in the Reorganized Debtors when the plan of reorganization was confirmed. Under Section 362(c)(1), the automatic stay terminated as to the Echo Lane Property because it was no longer property of the bankruptcy estate. Under Section 362(c)(2), however, the Automatic Stay remained in effect as to any other acts prohibited by Section 362(a). Those acts included "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." 11

---

automatic stay violation. With regard to the inherent sanction authority, bad faith or willful misconduct consists of something more egregious than mere negligence or recklessness. Id. at 993–94. Although "specific intent to violate the automatic stay" may not be required in the contempt context, Pace, 67 F.3d at 191, such specific intent or other conduct in "bad faith or conduct tantamount to bad faith," Fink, 239 F.3d at 994, is necessary to impose sanctions under the bankruptcy court's inherent power.

322 F.3d at 1196 (emphasis added).

U.S.C. §362(a)(6).[24] Because the 2009 Bankruptcy was never closed or dismissed, the Automatic Stay did not terminate as to acts to recover a prebankruptcy claim against Melani until her Chapter 11 Discharge was entered on December 15, 2015. See 11 U.S.C. §362(c)(2)(C).

So what specific acts did Ocwen or Shellpoint take with respect to the Echo Lane Property before March 8, 2011, that violated the Automatic Stay? What specific acts did Ocwen or Shellpoint take with respect to Melani before December 15, 2015, that violated Section 362(a)(6)?[25] Assuming that Ocwen and Shellpoint had notice or actual knowledge of the 2009 Bankruptcy, were the injuries to Melani actually and proximately caused by the violation?

Additionally, what specific acts did Ocwen or Shellpoint take with respect to Melani after December 15, 2015, that violated the Discharge Injunction? Whatever actions are specifically identified, were they taken without an objectively reasonable basis for concluding that the conduct might be lawful?[26] Is there no fair ground of doubt as to whether the conduct was barred by the Discharge Injunction?

Moreover, what specific acts did Ocwen or Shellpoint take that violated a specific provision of the Confirmation Order or the Confirmed Plan? Were such actions taken without an objectively reasonable basis for concluding that the conduct was in violation of the Confirmation Order or the Confirmed Plan? Is there no fair ground of doubt as to whether the conduct was barred by the Confirmation Order or the Confirmed Plan?

---

[24] The other provisions of Section 362(a), i.e., subsections 1, 2, 3, 4, 5, 7 and 8, refer to collection actions against a debtor, acts against property of the estate or property of the debtor, setoff of claims, or, tax proceedings.

[25] Melani argues that damages attributable to an automatic stay violation may continue to accrue even after an individual debtor receives a bankruptcy discharge. See Contempt Motion at 98:17 to 101:4. This court previously considered a similar argument raised by the same bankruptcy counsel in a different case. Under the facts of that separate case, the argument for post-discharge damages for violation of the automatic stay was rejected. See In re Willie N. Moon and Adnette M. Gunnels-Moon, Case No. 13-12466-MKN, Order on Second Motion for Attorney Fees and Costs for Rushmore's Continuing Stay Violation in Filing Adversary No. 19-1090-MKN, at 12:6 to 14:28, entered July 21, 2020, at bankruptcy case docket no. 291.

[26] The standard for imposing civil contempt sanctions for violation of the discharge injunction are set forth in Taggert v. Lorenzen, 139 S.Ct. 1795 (2019).

Finally, what specific acts by Ocwen or Shellpoint would constitute a litigation tactic at all? Did Ocwen or Shellpoint even participate in litigation concerning the Automatic Stay, the Confirmation Order, the Confirmed Plan, or the Discharge Injunction? Has Ocwen or Shellpoint engaged in any act in responding to the instant Contempt Motion that could constitute bad faith or willful misconduct rather than simply disagreement?

As to the Automatic Stay, Melani must demonstrate that statutory sanctions are appropriate under a preponderance of the evidence standard. As to civil contempt sanctions for a violation of the Automatic Stay, the Confirmation Order, the Confirmed Plan or the Discharge Injunction, Melani must demonstrate that civil contempt should be found and that sanctions should be awarded on a clear and convincing evidence standard. Before the court exercises inherent authority to sanction bad faith or willful misconduct in connection with any of the aforementioned subjects, the court requires that such conduct be demonstrated by clear and convincing evidence.

There is <u>no doubt</u> that Melani has the burden of proof on the forms of relief sought by the instant Contempt Motion. There <u>is doubt</u> on the <u>present</u> record, however, whether Melani can meet the standard of proof required for both statutory sanctions under Section 362(k)(1), and civil contempt sanctions under Section 105(a), as well as to warrant the court's exercise of inherent authority. An evidentiary hearing is required to establish the violations alleged, as well as to determine the award, if any, of actual and punitive damages, in addition to attorney's fees and costs.

**IT IS THEREFORE ORDERED** that <u>an evidentiary hearing</u> on the Motion for Contempt for Violation of the Automatic Stay and Discharge Injunction, Failing to Comply With a Court Order and the Confirmed Plan and for Damages Including Attorney's Fees Against Creditors, Shellpoint Mortgage Servicing and Ocwen Loan Servicing, LLC, Docket No. 1334, will be set at the status hearing in the Chapter 11 case that currently is calendared for <u>July 28, 2021, at 9:30 a.m.</u>

**IT IS FURTHER ORDERED** that in advance of the July 28, 2021 status hearing, counsel for Melani Schulte, Shellpoint Mortgage Servicing, and PHH Mortgage Corporation

shall confer and contact the courtroom deputy, Cathy Shim, to obtain possible dates and times for an evidentiary hearing as well as any pretrial conference. Counsel must be prepared to discuss deadlines for any additional briefing, discovery, and motions, as well as for submission of witness and exhibit lists.

Copies sent via CM/ECF ELECTRONIC FILING

Copies sent via BNC to:
MELANI SCHULTE
9811 W. CHARLESTON BLVD. #2-351
LAS VEGAS, NV 89117

###