_____
Honorable Mike K. Nakagawa
United States Bankruptcy Judge

Entered on Docket
July 20, 2021

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

\* \* \* \* \* \*

| In re: | ) | Case No.: 09-29123-MKN |
|---|---|---|
|  | ) | Chapter 11 |
| MELANI SCHULTE and | ) |  |
| WILLIAM SCHULTE, | ) | Jointly Administered with: |
|  | ) |  |
| 2704 SATTLEY LLC, | ) | 09-27238-MKN |
| HOT ENDEAVOR LLC, | ) | 09-27909-MKN |
| 1341 MINUET LLC, | ) | 09-27910-MKN |
| 1708 PLATO PICO LLC, | ) | 09-27911-MKN |
| 2228 WARM WALNUT LLC, | ) | 09-27912-MKN |
| 9425 VALLEY HILLS LLC, | ) | 09-27913-MKN |
| 9500 ASPEN GLOW LLC, | ) | 09-27914-MKN |
| 5218 MISTY MORNING LLC, | ) | 09-27916-MKN |
| CHERISH LLC, | ) | 09-28513-MKN |
| SABRECO INC., | ) | 09-31584-MKN |
| KEEP SAFE LLC, | ) | 09-31585-MKN |
|  | ) |  |
| Debtors. | ) | Date:   June 23, 2021 |
|  | ) | Time:  9:30 a.m. |

**ORDER ON AMENDED MOTION TO CLARIFY PLAN TREATMENT REGARDING VARIOUS REAL PROPERTIES**[1]

On June 23, 2021, the court heard the Amended Motion to Clarify Plan Treatment Regarding Various Real Properties ("Clarification Motion"), brought by U.S. Bank Trust National Association as Trustee of the Lodge Series III Trust, U.S. Bank Trust National

---

[1] In this Order, all references to "ECF No." are to the numbers assigned to the documents filed in the case as they appear on the docket maintained by the clerk of the court. Because there are multiple cases filed in multiple years, the relevant year of the particular case will precede the ECF No. as required. If necessary, additional identifying information will be provided.

1

Association as Trustee of the Chalet Series III Trust, U.S. Bank National Association as Trustee of the Bungalow Series IV Trust, and U.S. Bank National Association as Trustee of the Bungalow Series F Trust ("USB") in the above-captioned case. The appearances of counsel were noted on the record. After arguments were presented, the matter was taken under submission.

## BACKGROUND[2]

On October 11, 2009, William R. Schulte and Melani Schulte (jointly "Debtors"), husband and wife, filed a voluntary petition for reorganization under Chapter 11 ("2009 Bankruptcy"). (2009 ECF No. 1).[3] The filing of the bankruptcy petition resulted in the automatic stay arising under Section 362(a). The Debtors' assets consisted of numerous rental properties. Ownership of each rental property was held by separate entities, each of which filed separate Chapter 11 proceedings.[4] The 2009 Bankruptcy commenced by the Debtors was jointly administered with the Chapter 11 proceedings of the separate entities. (2009 ECF No. 128).

On March 8, 2011, an order ("Confirmation Order") was entered confirming the Debtors'

---

[2] In this Order, all references to "Section" shall be to provisions of the Bankruptcy Code, 11 U.S.C. §§ 101, et seq., unless otherwise indicated. All references to "FRBP" are to the Federal Rules of Bankruptcy Procedure. All references to "FRE" are to the Federal Rules of Evidence.

[3] Pursuant to FRE 201(b), the court takes judicial notice of all materials appearing on the docket in the above-captioned bankruptcy case and related bankruptcy proceedings. See U.S. v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980); see also Bank of Am., N.A. v. CD-04, Inc. (In re Owner Mgmt. Serv., LLC Trustee Corps.), 530 B.R. 711, 717 (Bankr. C.D. Cal. 2015) ("The Court may consider the records in this case, the underlying bankruptcy case and public records.").

[4] Those separate Chapter 11 proceedings were: 2704 Sattley LLC, Case No. 09-27238-BAM; Hot Endeavor LLC, Case No. 09-27909-BAM; 1341 Minuet LLC, Case No. 09-27910-BAM; 1708 Plato Pico LLC, Case No. 09-27911-BAM; 2228 Warm Walnut LLC, Case No. 09-27912-BAM; 9425 Valley Hills LLC, Case No. 09-27913-BAM; 9500 Aspen Glow LLC, Case No. 09-27914-BAM; 5218 Misty Morning LLC, Case No. 09-27916-BAM; Cherish LLC, Case No. 09-28513-BTB; Sabreco Inc., Case No. 09-31584-MKN; and Keep Safe LLC, Case No. 09-31585-BAM.

proposed "Third Amended Plan of Reorganization" ("Confirmed Plan")[5] in the 2009 Bankruptcy. (2009 ECF No. 912). The Confirmation Order was not appealed, its provisions were never stayed, and no amendments to the Confirmation Order or the terms of the Confirmed Plan were ever sought.

On February 10, 2012, the Debtors filed for divorce and Melani Schulte ("Melani") was awarded one or more of the rental properties as her sole and separate property.

On December 15, 2015, the Debtors received their Chapter 11 discharge as a result of the 2009 Bankruptcy ("Chapter 11 Discharge"). (2009 ECF No. 1182). Issuance of the Chapter 11 Discharge resulted in a number of protections automatically created in favor of the Debtors, including in a statutory injunction arising under Section 524(a)(2) ("Discharge Injunction").

On January 21, 2016, an order was entered in the 2009 Bankruptcy granting relief from stay in favor of Nationstar Mortgage LLC with respect to the real property located at 10317 Neopolitan Place, Las Vegas, Nevada 89144. (2009 ECF No. 1191).

On August 18, 2016, an order was entered in the 2009 Bankruptcy granting relief from stay in favor of Image Finance LLC with respect to the real properties located at 7873 Bridgefield Lane, Las Vegas, Nevada, 1624 Desert Canyon Court, Las Vegas, Nevada, and 1528 Splinter Rock Way, Las Vegas, Nevada. (2009 ECF No. 1215).

On December 8, 2016, an order was entered in the 2009 Bankruptcy granting relief from stay in favor of Fifth Third Mortgage Company with respect to the real property located at 5218

---

[5] The Confirmed Plan previously was filed on November 23, 2010 (ECF No. 834) and provided, *inter alia*, for title to all of the Debtors' real properties to be transferred to a holding company, but without limiting the Debtors' personal liability to their Class 1 creditors or their obligations under the plan. See Confirmed Plan at §5.03. The Confirmed Plan also provided for the jointly administered Chapter 11 estates to be substantively consolidated as of the effective date of the plan. Id. at §5.07. Additionally, the Confirmed Plan provided for all property of the consolidated debtor estates to vest in the reorganized Debtors after plan confirmation, free and clear of all liens, claims, charges or other encumbrances, except as provided in Section 6.06. Id. at §6.05. That Section 6.06 expressly states, in pertinent part: "The existing liens and lien rights of those lenders holding claims in Class 1 and Class 2 are expressly preserved under the Plan, and their existing liens shall ride through and remain attached to any and all underlying collateral in any transfer of property expressly set forth in, or contemplated by, the Plan." Id. at §6.06.

Misty Morning Drive, Las Vegas Nevada 89118. (2009 ECF No. 1234).

On May 31, 2017, facing foreclosure proceedings, an entity named Schulte Properties, LLC ("SPLLC"), filed for Chapter 11 bankruptcy protection ("2017 Bankruptcy").[6] On the same date, a notice of the Chapter 11 filing ("Bankruptcy Notice") was issued scheduling a meeting of creditors ("341 Meeting") for July 6, 2017. (2017 ECF No. 3). The 341 Meeting was concluded on July 7, 2017. SPLLC voluntarily dismissed the 2017 Bankruptcy on January 16, 2018, however, in anticipation of resolving disputes surrounding the amounts owed to the various lenders as a result of the Confirmed Plan in the 2009 Bankruptcy and the individual discharge obtained by the Debtors.[7] Following the dismissal of the 2017 Bankruptcy, and in further compliance with the Confirmation Order, Melani continued to transfer additional properties to SPLLC.

On September 27, 2017, an order was entered in the 2009 Bankruptcy in favor of The Bank of New York Mellon f/k/a The Bank of New York successor in interest to JP Morgan Chase Bank, N.A., successor in interest to Bank One, National Association, as Trustee for CSFB Mortgage-Backed Pass-Through Certificates, Series 2003-27, confirming that no automatic stay was in effect with respect to the real property located at 509 Canyon Greens Drive, Las Vegas, Nevada 89144. (2009 ECF No. 1240).

On February 15, 2018, an order was entered in the 2009 Bankruptcy in favor of Bayview Loan Servicing, LLC, confirming that the automatic stay was terminated as to the real property located at 1701 Empire Mine Drive, Henderson, Nevada 89014. (2009 ECF No. 1255).

On May 10, 2018, facing continued foreclosure proceedings, SPLLC again filed for Chapter 11 bankruptcy protection ("2018 Bankruptcy").[8] On the same date, a Bankruptcy Notice of the Chapter 11 filing was issued scheduling a 341 Meeting for June 14, 2018. (2018 ECF No.

---

[6] 2017 ECF No. 1. The SPLLC proceeding in 2017 was denominated Case No. 17-12883-mkn

[7] 2017 ECF No. 99 (The court found cause exists to dismiss the Chapter 11 bankruptcy case "without prejudice pursuant to 11 U.S.C. [§] 1112(b).").

[8] 2018 ECF No. 1. The 2018 Bankruptcy was denominated Case No. 18-12734-mkn.

1  3).  The 341 Meeting was concluded on September 23, 2018.

2  On May 24, 2018, SPLLC filed its schedules of assets and liabilities ("Schedules"),
3  statement of financial affairs, and other required information.[9]

4  On December 20, 2018, an order was entered in the 2009 Bankruptcy in favor of Federal
5  National Mortgage Association, confirming that the automatic stay was terminated as to the real
6  property located at 8562 Lambert Drive, Las Vegas, Nevada 89147.  (2009 ECF No. 1266).

7  On February 27, 2019, SPLLC filed its first plan of reorganization and disclosure
8  statement.  (2018 ECF Nos. 201 and 202).  Approval of SPLLC's disclosure statement was set
9  for hearing on April 17, 2019 (ECF No. 205) and was further continued as a status hearing to
10 May 29, 2019.  SPLLC's disclosure statement was approved on May 29, 2019.

11 On June 6, 2019, an order approving SPLLC's disclosure statement was entered.  (2018
12 ECF No. 530).  The disclosure statement order scheduled a status hearing for December 4, 2019,
13 to set a hearing date for confirmation of SPLLC's Plan of Reorganization #2 (2018 ECF No.
14 346).  The status hearing was further continued several other times.

15 On January 28, 2020, the court issued an order in the 2009 Bankruptcy directing the
16 Debtors to show cause why the 2009 Bankruptcy case should not be closed.  (2009 ECF No.
17 1269).

18 On August 28, 2020, an order was entered in the 2009 Bankruptcy authorizing Melani to
19 employ new bankruptcy counsel.[10]  (2009 ECF No. 1282).

20 On September 4, 2020, Melani filed a motion in the 2009 Bankruptcy seeking contempt
21 sanctions against creditor Citi Mortgage, Inc. in connection with the real property located at 9500

---

[9] FRBP 1007(c) allows a debtor to, within 14 days of filing a voluntary bankruptcy petition, file "the schedules, statements, and other documents" as required under this rule.  On its property Schedule "A/B," SPLLC listed 32 separate parcels of real property, including a property valued at $277,850.00 located at 1392 Echo Falls Avenue, Las Vegas, Nevada 89193 ("Echo Falls Property").

[10] The order essentially authorized Melani to employ new bankruptcy counsel for the limited purpose of advising and representing her in connection with claims for violation of the automatic stay, bankruptcy discharge, the confirmed Chapter 11 plan, and/or modifying mortgages and the litigation of such matters.  (2009 ECF No. 1278).

5

Aspen Glow Drive, Las Vegas, Nevada 89134 ("Citi Contempt Motion"); the motion was noticed to be heard on October 7, 2020.  (2009 ECF Nos. 1283 and 1284).[11]

On September 24, 2020, a stipulation was filed in the 2009 Bankruptcy to continue the hearing on the Citi Contempt Motion to November 18, 2020.  (2009 ECF No. 1305).

On October 20, 2020, and November 6, 2020, orders were entered in the 2009 Bankruptcy requiring Melani to appear at a continued settlement conference being conducted in connection with the SPLLC proceeding.  (2009 ECF Nos. 1320 and 1323).

On November 18, 2020, a status hearing was conducted on the Citi Contempt Motion at which an evidentiary hearing was scheduled for March 29 and March 30, 2021.  (2009 ECF No. 1326).

On March 19, 2021, an order was entered in the 2009 Bankruptcy scheduling a status conference for July 28, 2021.  (2009 ECF No. 1332).

On March 19, 2021, a settlement conference was held before Judge Gary Spraker regarding SPLLC's disclosure statement (ECF No. 345).  Judge Spraker mediated with the parties for approximately four (4) hours, but a settlement was not reached.  A status hearing in the SPLLC case is scheduled to be held on July 28, 2021 (along with the status conference in the 2009 Bankruptcy).

On April 23, 2021, Melani filed a motion in the 2009 Bankruptcy seeking contempt sanctions against Shellpoint and Ocwen ("Shellpoint Contempt Motion").  (2009 ECF No. 1334). That motion was noticed to be heard on May 26, 2021.  (2009 ECF No. 1335).  Attached as Exhibit 1 to the Shellpoint Contempt Motion is a Declaration of Melani Schulte dated April 16, 2021 ("Melani Shellpoint Contempt Declaration").  Additional Exhibits 2 through 9 are attached to the Contempt Motion that appear to be authenticated by the Melani Shellpoint Contempt Declaration.[12]

---

[11] An amended motion was filed on September 11, 2020 (2009 ECF No. 1289), but the hearing date was unchanged.

[12] Unfortunately, Melani's former spouse and co-debtor in the 2009 Bankruptcy, William R. Schulte, died on January 21, 2020.  See Melani Shellpoint Contempt Declaration at ¶129.  The

On April 26, 2021, a stipulation was filed in the 2009 Bankruptcy to dismiss with prejudice the Citi Contempt Motion. (2009 ECF No. 1338).

On May 12, 2021, Shellpoint filed a response to the Shellpoint Contempt Motion ("Shellpoint Opposition"). (2009 ECF No. 1342). Attached as Exhibit A to the Shellpoint Opposition is a form declaration signed by Daniella Banks, a bankruptcy manager for Shellpoint. Additional Exhibits B through E are attached to the Shellpoint Opposition.

On May 24, 2021, PHH Mortgage Corporation ("PHH"), as successor to Ocwen, filed a notice of appearance and request to continue the hearing on the Shellpoint Contempt Motion. (2009 ECF No. 1347).

On May 25, 2021, USB filed the instant Clarification Motion regarding various real properties, along with a declaration of SN Servicing Corporation ("SNS"). The Clarification Motion was noticed to be heard on June 23, 2021. (2009 ECF Nos. 1351, 1352, and 1353).

On May 27, 2021, PHH filed an opposition to the Shellpoint Contempt Motion ("PHH Opposition"), accompanied by the declaration and amended declaration of Jeffrey S. Allison ("Allison Declaration"). (2009 ECF Nos. 1357, 1358, and 1359).

On June 7, 2021, Melani filed a reply to the PHH Opposition ("Shellpoint Contempt Motion Reply"). (2009 ECF No. 1362).[13]

On June 9, 2021, Melani filed a response to the Clarification Motion ("Response"). (2009 ECF No. 1367), and filed a supplement to that Response the following day ("Supplemental Response").[14] (2009 ECF No. 1368).

On June 16, 2021, USB filed a reply in support of the Clarification Motion ("Reply"). (2009 ECF No. 1369).

---

2009 Bankruptcy has never been closed, however, and a suggestion of death ordinarily must be filed.

[13] Due to errors in the caption of the document, Melani subsequently refiled the Contempt Motion Reply but did not change its content. (2009 ECF Nos. 1364 and 1366).

[14] Exhibit "A" to the Supplemental Response is a copy of Melani's declaration ("Melani Clarification Declaration") that was supposed to be attached to the original response.

7

# DISCUSSION[15]

USB seeks relief as the trustee of four entities: Lodge Series III Trust, Chalet Series III Trust, Bungalow Series IV Trust, and Bungalow F Trust. Those four entities apparently have liens against nine separate parcels of real property located at the following addresses: 8216 Peaceful Canyon Drive, Las Vegas, Nevada 89134; 1624 Desert Canyon Court, Las Vegas, Nevada 89128; 1194 Stormy Valley Road, Las Vegas, Nevada 89123; 922 Saddle Horn Drive, Henderson, Nevada 89015; 4521 W. La Madre Way, North Las Vegas, Nevada 89031; 2525 Via Di Autostrada, Henderson, Nevada 89074; 3322 Cheltenham Street, Las Vegas, Nevada 89129; 5609 San Ardo Place, Las Vegas, Nevada 89130; and 8562 Lambert Drive, Las Vegas, Nevada 89147. All nine properties are addressed in the Confirmed Plan through treatment of certain loans secured by the properties. Title to all nine properties is now in SPLLC.

Although the Confirmation Order was entered on March 8, 2011, USB now seeks "clarification" of the Confirmed Plan allegedly because SPLLC, in its separate 2018 Bankruptcy, "is misinterpreting the language of [the Confirmed Plan] and asserting that various servicers and investors have somehow improperly serviced loans since confirmation of the plan." Clarification Motion at 3:7-10. Moreover, USB asserts that SPLLC "recently obtained Court approval to retain special litigation counsel to pursue claims against lenders and servicers and to file objections to most of the claims frilled in the [2018 Bankruptcy]." Id. at 3:12-14. As a result of the actions being pursued by SPLLC in the 2018 Bankruptcy, USB "therefore seek[s] an Order of this Court interpreting the language of [the Confirmed Plan] and specifically concluding that the [Confirmed Plan] did not eliminate the escrow portions of Secured Creditors' loans." Id. at 3:14-16.[16]

---

[15] The Shellpoint Contempt Motion is the subject of a separate order entered contemporaneously herewith.

[16] According to the claims register in the 2018 Bankruptcy, USB is listed as the holder of eight proofs of claim ("POC") secured by real property. Apparently, USB filed POC 6-1 as trustee on behalf of an entity secured by real property not involved in the instant Clarification Motion. USB apparently was assigned POCs 7-1, 8-1, 19-1 and 20-1 originally filed by MTGLQ Investors, L.P., with respect to the Peaceful Canyon Property, San Ardo Property, W. La Madre Property, and Desert Canyon Property. USB also apparently was assigned POCs 12-1, 27-1, and

In response, Melani initially questions whether a loan servicer that does not provide loan statements should ever have standing to seek clarification of the Confirmed Plan. See Response at 2:6-8.[17] She also questions whether USB or SNS acts as the current servicer of the nine loans at issue, see Response at 1 n.1, but her declaration suggests that SNS is now servicing each loan. See Melani Clarification Declaration at ¶¶ 11 through 19.

Notwithstanding Melani's acknowledgement that SNS is the current servicer, the Clarification Motion itself does not identify whether USB is servicing the subject loans at the current time and USB's Reply also does not address the issue. Instead, both the Clarification Motion and the Reply refer to the declaration obtained from an employee of SNS ("SNS Declaration"). That employee attests that SNS "services the loans at issue," see SNS Declaration at ¶1, supra, but the balance of the information in the declaration is based on the declarant's review of the loan documents included in the business records maintained by SNS. Id. at ¶¶ 4 through 19. Nowhere does the declarant identify the dates upon which SNS commenced servicing any of the nine loans on which USB's clarification request is based.[18] In other words,

---

33-1 originally filed by Federal National Mortgage Association ("Fannie Mae") with respect to the Via Di Autostrada Property, Stormy Valley Property, and Saddle Horn Property. There also is POC 28-1 filed by Fannie Mae with respect to the Cheltenham Property, but no indication that the claim has been assigned to USB. There also is POC 29-1 filed by SPLLC on behalf of Fannie Mae with respect to the Lambert Property, but no indication that the claim has been assigned to USB. All of the claims are based on obligations arising from promissory notes secured by the respective properties.

[17] Melani attests that "during the years that [SNS] has serviced these loans, despite numerous requests by me over the years, I have never received a single statement from [SNS] on any of these nine properties regarding the principal, interest, insurance of property tax amount owed." Melani Clarification Declaration at ¶ 4. The exhibits to her declaration in support of the Shellpoint Contempt Motion included copies of mortgage statements received from both Ocwen and Shellpoint in connection with the loan on the Echo Falls Property. Copies of mortgage statements from USB or SNS regarding the loans referenced in the Clarification Motion do not appear in the record. The absence of such exhibits appears to be consistent with Melani's testimony that no monthly mortgage statements were ever sent by USB or SNS.

[18] For example, the SNS employee attests that she reviewed a copy of POC 5-1 filed in the 2009 Bankruptcy. See SNS Declaration at 5. Attached to that POC is a copy of a Note in favor of Comstock Bank dated March 21, 1994, along with a deed of trust against the Peaceful Canyon Property. The same paragraph of the declaration attests that the claim currently is held

9

there is nothing in the record establishing the specific loan servicing actions of SNS regarding the subject loans from the October 11, 2009 bankruptcy petition date, from the March 8, 2011 entry date of the Confirmation Order, and from December 15, 2015 entry date of the Chapter 11 Discharge.  There appears to be agreement that SNS is now the servicer of the nine loans, but no agreement when the servicing activity commenced for each of the nine loans.

       The dates upon which USB or SNS commenced servicing the nine loans is essential to consideration of the Clarification Motion.  According to USB, the motion is brought because SPLLC is alleging in the 2018 Bankruptcy that certain parties have improperly serviced loans since the Confirmation Order was entered in the 2009 Bankruptcy.  See Clarification Motion at 3:7-10.  USB asserts that the unambiguous language of the Confirmed Plan in the 2009 Bankruptcy as well as various orders entered prior to plan confirmation did not eliminate a requirement for escrow impounds under the nine loans.  Additionally, USB argues that the parties did not intend to eliminate the escrow impound requirement.  See Clarification Motion at 14:2 to 16:1.  Unfortunately, there is no evidence before the court establishing when USB or SNS commenced servicing the nine loans after entry of the Confirmation Order, or whether USB even had an interest in any of the subject loans at the time the Confirmation Order was entered.[19]  At the very least, such information is required to assess the merits of Melani's equitable estoppel argument, see Response at 3:15 to 4:5, supra, to bar USB from seeking modification of an order

---

by USB but provides no information regarding the servicing of the loan from 1994 to date, much less from entry of the Confirmation Order to the present.

[19] At the hearing, counsel for USB was in the unfortunate position of being new to the case and possibly without knowledge of either the extensive history of the 2009 Bankruptcy or the servicing history of loans that were made prior to commencement of the case.  Indeed, Melani attests that the nine loans have passed through multiple owners or servicers prior to ending up with SNS or USB.  See Melani Clarification Declaration at ¶¶ 11 through 19.  Counsel for USB also suggested that there may be difficulty in obtaining the records necessary to establish the relevant servicing history for the nine loans at issue, given the number of owners and loan servicers involved.  While the court might be sympathetic to the practical concerns of successive lenders and loan servicers, it would be equally sympathetic to the concerns of borrowers who may have to deal with lender representatives who have little or no ability or willingness to meaningfully respond to loan compliance questions.

10

entered more than a decade before its motion was filed.[20]

Beyond this fundamental evidentiary gap regarding the current request, the parties appear to conflate the concerns arising in the 2018 Bankruptcy and the impact of the 2009 Bankruptcy. Melani received her Chapter 11 discharge through the 2009 Bankruptcy and the resulting Discharge Injunction prevents the secured lenders from attempting to enforce the loans against Melani as a personal liability. Repayment of the loans is required to prevent enforcement of the liens against each real property, but that is now SPLLC's problem in the 2018 Bankruptcy rather than Melani's problem from a personal liability standpoint. As the holder of the real properties, SPLLC will have to propose treatment of USB's claims through a Chapter 11 plan that is either accepted by USB or is imposed through a Chapter 11 cramdown. If USB asserts that it was damaged by any breach of the escrow impound provisions of the loan agreements, any damage amount likely must account for the direct payments made by Melani.[21] While the automatic stay remains in effect, USB cannot foreclose on the properties based solely on an alleged breach of any escrow requirement. In other words, this appears in large respect to be a breach of contract dispute that would be resolved in determining the allowed amount of USB's claims in the SPLLC proceeding.[22] Treatment of the allowed secured claims then would be determined

---

[20] Moreover, if the court is required to determine the intention and understanding of the parties, the unfortunate death of Melani's husband, see note 12, supra, as the co-proponent of the Confirmed Plan, may leave Melani or her attorneys as the sole witnesses competent to testify as to the parties' intention and understanding. Other than what may be reflected in any available business records memorializing its intention and understanding at plan confirmation, there may be no percipient witnesses available to a lender, other than counsel.

[21] In response to the Clarification Motion, Melani alleges, *inter alia*, that because she never received monthly mortgage statements from USB or SNS, she paid real property taxes and hazard insurance payments directly. See Response at 3:15-22. She also concedes, however, that the "Confirmed Plan did not eliminate the escrow impounds." Id. at 3:3:25. This concession, of course, begs the question of whether USB or SNS even needs to pursue clarification.

[22] As discussed in note 16, supra, USB appears to have an interest in various secured claims asserted through multiple proofs of claim filed in the 2018 Bankruptcy. All of the claims are based on contractual obligations arising under separate promissory notes. If USB or SNS was contractually or otherwise legally obligated to provide monthly mortgage statements, it is unclear whether a mutual breach occurred that might excuse either party from compliance with

through the plan confirmation process.

Because the record does not include information required under the circumstances of this prolonged case, the court cannot adequately consider the relief requested by USB. Denial of the request without prejudice is warranted.[23]

**IT IS THEREFORE ORDERED** that the Amended Motion to Clarify Plan Treatment Regarding Various Real Properties, brought by U.S. Bank Trust National Association as Trustee of the Lodge Series III Trust, U.S. Bank Trust National Association as Trustee of the Chalet Series III Trust, U.S. Bank National Association as Trustee of the Bungalow Series IV Trust, and U.S. Bank National Association as Trustee of the Bungalow Series F Trust, Docket No. 1351, be, and the same hereby is, **DENIED WITHOUT PREJUDICE**.

Copies sent via CM/ECF ELECTRONIC FILING

Copies sent via BNC to:
MELANI SCHULTE
9811 W. CHARLESTON BLVD. #2-351
LAS VEGAS, NV 89117

# # #

---

various requirements of the loan documents. Thus, regardless of the outcome of the Clarification Motion, its impact on the treatment of claims in the SPLLC proceeding is uncertain.

[23] In the event USB files another motion seeking similar relief, the information discussed herein must be provided. The parties will be permitted, however, to request judicial notice of the documents filed in connection with the instant Clarification Motion.