ARIEL E. STERN, ESQ.
Nevada Bar No. 8276
NATALIE L. WINSLOW, ESQ.
Nevada Bar No. 12125
NICHOLAS E. BELAY, ESQ.
Nevada Bar No. 15175
AKERMAN LLP
1635 Village Center Circle, Suite 200
Las Vegas, NV 89134
Telephone: (702) 634-5000
Facsimile: (702) 380-8572
Email: ariel.stern@akerman.com
Email: natalie.winslow@akerman.com
Email: nicholas.belay@akerman.com

*Attorneys for NewRez LLC dba Shellpoint Mortgage Servicing*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>MELANI SCHULTE and WILLIAM SCHULTE,<br><br>2704 SATTLEY LLC;<br>HOT ENDEAVOR LLC;<br>1341 MINUET LLC;<br>1708 PLATO PICO LLC;<br>2228 WARM WALNUT LLC;<br>9425 VALLEY HILLS LLC;<br>9500 ASPEN GLOW LLC;<br>5218 MISTY MORNING LLC;<br>CHERISH LLC;<br>SABRECO INC., and<br>KEEP SAFE LLC, | Case No.: 09-29123-mkn<br>Chapter 11<br><br>**SHELLPOINT MORTGAGE SERVICING'S MOTION FOR SUMMARY JUDGMENT**<br><br>Jointly Administered with:<br><br>09-27238-MKN<br>09-27909-MKN<br>09-27910-MKN<br>09-27911-MKN<br>09-27912-MKN<br>09-27913-MKN<br>09-27914-MKN<br>09-27916-MKN<br>09-28513-MKN<br>09-31584-MKN<br>09-31585-MKN<br><br>**Hearing Date: TBD (Date Requested)**<br>**Hearing Time:** |

1

61964585;2

NewRez LLC dba Shellpoint Mortgage Servicing moves for summary judgment on debtor Melani Schulte's motion for contempt (ECF No. 1334).

**I.    INTRODUCTION.**

The court entered its confirmation order in this chapter 11 bankruptcy action on March 8, 2011. Since this time, Melani Schulte has failed to make more than five years' worth of payments under the confirmed plan and associated loan documents. Rather than address her own violations of this court's orders, Ms. Schulte attempts to shift the blame to Shellpoint, arguing Shellpoint violated the automatic stay/discharge injunction by sending various post-default communications and failing to implement the confirmation plan. Schulte's arguments lack merit.

**First**, any communications sent by Shellpoint occurred after termination of the automatic stay. These communications were for informational purposes only, necessary to address Ms. Schulte's breach of the confirmation plan, and objectively reasonable to further Shellpoint's *in rem* rights in the property given the circumstances. And even if the automatic stay were still in effect (it was not), Schulte cannot demonstrate any willful misconduct or bad faith by Shellpoint.

**Second**, Shellpoint has been, and remains, in full compliance with the court's confirmed plan and discharge injunction. Shellpoint has conducted multiple internal audits and reviews of its loan documents to ensure correct application of the confirmation order, as reflected through the ample documentation submitted with Shellpoint's proof of claim. Shellpoint has acted both reasonably and in accordance with the court's orders and incorporated loan documents. There is simply no basis to award sanctions against Shellpoint.

**Third**, aside from being unable to establish liability, Schulte cannot prove she suffered any actual damages resulting from Shellpoint's alleged conduct. Any supposed "damages" Schulte has incurred have been due to her own failure to abide by the confirmation plan, which required Schulte to make the agreed-upon monthly payments and transfer the at-issue property to a holding company. Schulte fails to address her roughly *six-year* delay in transferring the property to Schulte Properties LLC, instead attempting to claim "emotional distress" in her personal capacity. But it is well-established a corporate entity cannot suffer "emotional distress," and Schulte cannot capitalize on her

2

own failure to abide by the confirmation order. The court should grant summary judgment in Shellpoint's favor.

## II. STATEMENT OF FACTS.

### A. The Loan

1. In October 2004, Melani Schulte executed a promissory note in the principal amount of $167,000.00 (**note**). *See* **Exhibit 1**, Shellpoint Declaration ¶ 5. The note was specially indorsed to THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2004-28CB, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2004-28CB (**BoNYM**). *Id.*

2. The note was secured by a deed of trust in favor of Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for Countrywide Home Loans, Inc, and encumbering the real property located at 1392 Echo Falls Ave., Las Vegas, NV 89123 (**property**). **Exhibit 2**. The note and deed of trust collectively comprise the loan.

3. The deed of trust was assigned to BoNYM on June 22, 2016. **Exhibit 3**. BoNYM remains the beneficiary of the deed of trust. *Id.*; Ex. 1 at ¶ 6.

4. Pursuant to the terms of the deed of trust, the borrower is required to maintain real property taxes and hazard insurance for the property. Ex. 3 at ¶¶ 1-5, 9. The lender is entitled to pay these taxes/insurance obligations on the borrower's behalf and include these amounts in an escrow impound. *Id.* The deed of trust sets forth the manner in which payments are applied to the loan, including the priority of payments in the event of a delinquency. *Id.* at ¶¶ 1, 2.

5. In August 2015, Shellpoint acquired the servicing rights to the subject loan. Ex. 1 at ¶ 8. Shellpoint remains the authorized servicer on behalf of BoNYM. *Id.*

6. On May 30, 2017, Melani Schulte transferred her interest in the property to Schulte Properties pursuant to a Grant, Bargain, Sale Deed recorded with the Clark County Recorder's office. **Exhibit 4**.

### B. The First Bankruptcy

7. Melani Schulte filed for chapter 11 bankruptcy relief on October 11, 2009 as Case No. 09-29123-mkn. *See* First Bankruptcy, ECF No. 1.

3

61964585;2

8.  Ms. Schulte and the prior loan servicer entered a stipulation for adequate protection on September 22, 2010. ECF No. 703. The stipulation required Ms. Schulte to make monthly adequate protection payments in the amount of $708.60 commencing on October 1, 2010. *Id.* The stipulation further required Ms. Schulte to timely perform all obligations under the loan documents "as they come due, including but not limited to the payment of real estate taxes, maintaining insurance coverage, and any and all senior liens." *Id.* The stipulation made clear that Ms. Schulte's obligations remained consistent with "the terms of the Note and Deed of Trust." *Id.* The court approved the stipulation for adequate protection on September 24, 2010. ECF No. 717.

9.  On March 8, 2011, the court entered the confirmation order, modifying the subject loan. ECF No. 912. The terms of the confirmed plan listed BoNYM's claim in Class 2(m) and provided for a secured claim of $132,000.00 amortized over thirty (30) years at 5.00% interest per annum with principal and interest payments of $708.60 per month. *Id.* at 39, 40. The plan did not address payment of taxes or insurance, or else include any mandatory default provisions. *Id.* Instead, just like the order on adequate protection, treatment under the confirmation plan was made "in accordance with all other terms of [BoNYM's] related note and mortgage." *Id.*

10. The confirmed plan had an effective date of March 23, 2011, or the "eleventh business day following the date of entry of the confirmation order" or March 23, 2011. *Id.* at § 6.02. As a result, the first payments under the modified claim were to commence April 1, 2011 and continue each month until March 1, 2041.

11. Pursuant to the confirmed plan, Schulte was required to transfer the property to a holding company on or after the effective date. *Id.* at 57.

12. On December 15, 2015, Schulte obtained a Chapter 11 discharge. *See* First Bankruptcy, ECF No. 1181-2.

13. Ms. Schulte did not transfer her interest in the property to Schulte Properties LLC until May 30, 2017. Ex. 4.

**C.  The Second Bankruptcy**

14. Schulte Properties filed a second Chapter 11 bankruptcy case on May 31, 2017 as Case No. 17-12883—just five (5) days after Schulte Properties was registered with the Nevada

4

Secretary of State. **Exhibit 5**. Ms. Schulte signed the petition as managing member of Schulte Properties. *See* Second Bankruptcy, ECF No. 1.

15. Schulte Properties failed to confirm a Chapter 11 plan in the second bankruptcy and requested dismissal. Accordingly, the court entered an order of dismissal on January 16, 2018. *Id.* at ECF No. 99.

### D. The Third Bankruptcy

16. Less than five months after receiving dismissal of its second bankruptcy, Schulte Properties commenced the instant third bankruptcy case by filing a Chapter 11 petition on May 10, 2018. ECF No. 1. Ms. Schulte signed the petition as managing member of Schulte Properties. *Id.*

17. On September 12, 2018, Shellpoint filed its proof of claim reflecting a secured claim of $171,520.96, including pre-petition arrears of $54,510.99. **Exhibit 6**, Claim No. 16-1. The claim included supporting documentation, including payment history, payment breakdown, loan documents, an escrow analysis, and copies of the relevant court orders. These documents itemized the amounts owed under the loan and indicated Shellpoint updated its system to reflect treatment of its claim in accordance with the confirmation plan from the first bankruptcy. *Id.*

18. Specifically, the proof of claim reflects a reduced principal balance of $128,870.89, with an interest rate of 5.00% and monthly payments of $708.60. Pursuant to the 410(A) Attachment, Schulte Properties and Ms. Schulte failed to make sixty-seven principal and interest payments between November 1, 2012 and May 1, 2018. *Id.* at 13.

19. The loan history shows Shellpoint made various advances for taxes and insurance, resulting in an escrow balance. *Id.* at 4-15. These advances were made in accordance with the terms of the loan documents, as incorporated in the order on adequate protection and confirmation plan.

20. Shellpoint also incurred other post-confirmation/pre-petition fees associated with the debtor's default under the confirmed plan and loan documents, including late charges, attorneys' fees, foreclosure fees, inspection fees, appraisal fees, and property preservation fees. *Id.*

21. The parties attended a judicial settlement conference on March 5, 2021, in an attempt to resolve the debtor's default and any alleged compliance issues. Despite Shellpoint's good faith attempt to resolve this matter, the parties were unable to reach resolution.

61964585;2

**E. Schulte's Motion for Contempt**

22. Schulte filed her motion for contempt against Shellpoint and one of the prior loan servicers, Ocwen Loan Servicing LLC, on April 23, 2021. ECF No. 1334. Schulte alleges Shellpoint failed to comply with the confirmation plan, violated the discharge order, and violated the automatic stay. *Id.* Schulte bases these arguments on various informational statements, notices, and loss mitigation offers that Shellpoint allegedly sent to Schulte following entry of the confirmation order. *See* Exs. 5-9 to ECF No. 1334. Schulte requests unspecified actual damages, including emotional distress, punitive damages, sanctions, and attorney's fees/costs.

23. On July 20, 2021, the court set the matter for an evidentiary hearing. ECF No. 1370. The court specifically noted that Schulte bears the burden of proof on all "forms of relief sought by way of the [] Contempt Motion. *Id.* at 14.

**F. Shellpoint's Compliance with the Confirmed Plan**

24. Shellpoint did not acquire servicing rights to the subject loan until August 17, 2015. Ex. 1 at ¶ 8. At the time of acquisition, the loan reflected terms of the confirmed plan and indicated Schulte was substantially in default. *Id.* at ¶ 9, 10.

25. Shellpoint completed multiple audits to confirm its compliance with the confirmed plan and completion of system updates. *Id.* at ¶¶ 10, 11. Shellpoint remains in full compliance with the confirmation order. *Id.*

26. The loan reflects a default based on Schulte's failure to make all required principal, interest, and escrow payments under the confirmed plan and associated loan documents. *Id.* at ¶ 13.

27. Any statements or correspondence sent by Shellpoint to Schulte following entry of the confirmed plan or discharge order were: (i) for informational purposes only based on the Debtor's default under the confirmed plan; (ii) not sent with an intention to collect a debt from the Debtor personally, but rather to enforce rights as to the Property; and/or (iii) sent to assist the Debtor with potential loss mitigation. *Id.* at ¶ 15.

28. None of the statements were issued with the intent to collect a debt from Schulte personally. The statements included express disclaimers advising Schulte the statements were for

6

61964585;2

informational purposes only, advising Schulte of the status of her mortgage loan, and only sent for purposes of enforcing the lien against the property.

29.     The monthly statements Shellpoint sent to Schulte reflected the terms of the confirmed plan, including the correct principal balance, interest rate (5.00%), and principal and interest payment ($708.60), and in some instances, an escrow payment for the taxes/insurance advances made by Shellpoint on Schulte's behalf. *Id.* at ¶ 16.  The terms of the promissory note and deed of trust, which remain operative pursuant to the confirmation plan, required Schulte to maintain taxes and insurance. Ex. 3 at ¶¶ 1-5, 9

30.     After Schulte failed to make these payments in accordance with the loan documents, Shellpoint was within its contractual rights under the loan documents to pay taxes and insurance on the Schulte's behalf and seek recovery through an escrow impound. Ex. 3 at ¶¶ 1-5, 9.

31.     As of January 26, 2022, the unpaid principal balance totals $120,806.33. Ex. 1 at ¶ 17. As of January 26, 2022, the past due payments on the loan total $54,362.28, with a current due date of June 1, 2016. *Id.* at ¶ 18. This amount excludes corporate advances, late fees, attorneys' fees, and other charges which may be contractually owed on the account. *Id.*

## III.     LEGAL STANDARD.

"The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court." *In re Bennett*, 298 F.3d 1059, 1069 (9th Cir. 2002) (internal quotation omitted). Before imposing civil contempt sanctions, the court must find the defendant knew of the order, and the actions which violated the order were intentional. *See In re Dyer*, 322 F.3d 1178, 1190-91 (9th Cir. 2003). Alternatively, civil contempt sanctions may be imposed where the defendant failed to remedy the violation after learning of it. *See Cal. Emp't Dep't v. Taxel (In re Del Mission Ltd.)*, 98 F.3d 1147, 1151-52 (9th Cir. 1996). For sanctions such as attorney's fees to be justified, the court must find the defendant acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 33, 111 S. Ct. 2123, 2126 (1991). The power of the bankruptcy court to contemn should be exercised sparingly so long as justice can be done. *In re Mallow Hotel Corp.*, 18 F.Supp. 869 (M.D. Pa. 1937).

7

IV. **ARGUMENT.**

    1. **Shellpoint did not violate the automatic stay.**

Schulte alleges Shellpoint violated the automatic stay by sending informational statements *after* entry of the confirmation and discharge order. This court has already held the property "was no longer property of the Chapter 11 estate after March 8, 2011" when the reorganization plan was confirmed, and therefore not subject to the automatic stay. *See* Order, ECF No. 1370 at 12. Further, this court has held the automatic stay as to acts to recover prebankruptcy claims against Schulte terminated after entry of the discharge order on December 15, 2015. *Id.* at 13. The remaining question is thus whether Shellpoint took actions in violation of the automatic stay as to the property before March 8, 2011 and as to Schulte before December 15, 2015. *Id.* It did neither.

Schulte points to a number of statements and notices she allegedly received from Shellpoint in her motion for contempt. ECF No. 1334, Exs. 5-9. The earliest correspondence is dated February 2, 2016, **after the automatic stay had terminated** as to both the property and Schulte. All other alleged correspondence from Shellpoint were sent after this date. This is only logical, as Shellpoint did not even become involved in the loan until late 2015. Ex. 1 at ¶ 8. This alone entitles Shellpoint to summary judgment on Schulte's automatic stay argument.

Even if Schulte could demonstrate Shellpoint sent pre-discharge correspondence (and she cannot), there is no evidence Shellpoint acted willfully in violation of the automatic stay. 11 U.S.C. § 362(k)(1). Shellpoint acted reasonably to address Ms. Schulte's breach of the confirmation plan and further Shellpoint's *in rem* rights in the property given the circumstances. The statements and notices sent to Schulte included appropriate bankruptcy disclaimers advising the correspondence were for informational purposes only and not an attempt to collect the debt personally. Ex. 1 at ¶ 15. These correspondences largely addressed Schulte's *own* default on the confirmation plan, offering loss mitigation assistance. *Id.* Schulte admits to requesting monthly statements from Shellpoint and never asked Shellpoint to stop sending such correspondence. *See* **Exhibit 7** at 50, 51. The statements were plainly not to pressure Schulte to pay discharged debt, as required to show a violation. *In re McLean,* 794 F.3d at 1322. Shellpoint is entitled to summary judgment.

. . .

8

61964585;2

**2.     Shellpoint fully complied with the confirmation and discharge orders.**

*A.     Shellpoint ensured proper implementation of the confirmed plan*

The record shows Shellpoint was, and remains, in full compliance with the court's confirmation and discharge orders. Shellpoint did not acquire servicing rights to the subject loan until August 17, 2015. Ex. 1 at ¶ 8. Prior to this point, it had no involvement in either the loan or Schulte's bankruptcy. At the time of acquisition, the loan reflected terms of the confirmed plan and indicated Schulte was substantially in default. *Id.* at ¶ 9, 10. Shellpoint completed multiple audits to confirm the accuracy of these records and ensure compliance with the confirmed plan. *Id.* The monthly statements Shellpoint sent reflected the terms of the confirmed plan, including the correct principal balance, interest rate (5.00%), and principal and interest payment ($708.60). *Id.* at ¶ 16.

In some instances, Shellpoint advanced escrow payments for taxes/insurance on Schulte's behalf. *Id.* While the stipulated adequate protection order contemplated Ms. Schulte's maintenance of taxes and insurance for the property, it did not modify the loan documents with respect to escrow. *See* ECF No. 703 at 1, 2 (noting Ms. Schulte's obligations under the protection order remained consistent with "the terms of the Note and Deed of Trust."). Further, the confirmation plan did not address payment of taxes or insurance, or else include any mandatory default provisions. ECF No. 912. Instead, just like the order on adequate protection, treatment under the confirmation plan was made "in accordance with all other terms of [BoNYM's] related note and mortgage." *Id.* at 39, 40. Accordingly, the subject loan documents fully control payment of the taxes/insurance post confirmation. Ex. 3 at ¶¶ 1-5, 9. As Ms. Schulte concedes she did not pay all the taxes and insurance in a timely manner, Shellpoint was fully justified in advancing escrow funds.

Shellpoint's compliance is further demonstrated in its proof of claim, which it filed in the third bankruptcy action, Case No. 18-12734-mkn. *See* Ex. 6. The claim included supporting documentation, including payment history, payment breakdown, loan documents, an escrow analysis, and copies of the relevant court orders. These documents itemized the amounts owed under the loan and indicated Shellpoint updated its system to reflect treatment of its claim in accordance with the confirmation plan from the first bankruptcy. *Id.*

. . .

9

61964585;2

1    Specifically, the proof of claim reflects a reduced principal balance of $128,870.89, with an
2  interest rate of 5.00% and monthly payments of $708.60.  Pursuant to the 410(A) Attachment,
3  **Schulte Properties and Ms. Schulte failed to make sixty-seven principal and interest payments**
4  **between November 1, 2012 and May 1, 2018**.  *Id.* at 8-12; Ex. 1 at ¶ 13.  This fact is consistent
5  with Ms. Schulte's *own* deposition testimony:

6    **Q**.    Okay. So every single month, you sent in a payment of $708.60?
7    **A**.    I did until when I got the return envelope back in 2013 saying that there was no forwarding address for Litton Loan Servicing . . ..

8    
9    * * *
10   **A**    All payments were made in a timely manner until 2013, when that envelope came back.

11   
12   **Q**.    Okay.
13   **A**.    After the envelope came back with no forwarding address to get to Litton or anybody else, **those payments were not made**.

14  Ex. 7 at 26, 31 (emphasis added).

15    In short, Shellpoint's system incorporates the modification of the loan in the Debtor's
16  confirmed bankruptcy plan, and its records reflect a secured claim of $132,000.00 amortized over
17  thirty (30) years at 5.00% interest per annum with principal and interest payments of $708.60 per
18  month commencing April 1, 2011 and continuing until March 1, 2041.  Ex. 1 at ¶ 10.  As of January
19  26, 2022, the unpaid principal balance totals $120,806.33.  Ex. 1 at ¶ 17.  As of January 26, 2022,
20  the past due payments on the loan total $54,362.28, with a current due date of June 1, 2016.  *Id.* at ¶
21  18.  This amount excludes corporate advances, late fees, attorneys' fees, and other charges which
22  may be contractually owed on the account.  *Id.*  Discovery is now closed.  Schulte possesses no
23  evidence to establish Shellpoint is in violation of the confirmed plan.

24        B.    *Shellpoint did not violate the discharge order*

25    A discharge "operates as an injunction against the commencement or continuation of an
26  action ... to collect, recover or offset any [discharged] debt as a personal liability of the debtor." 11
27  U.S.C. § 524(a)(2) (2006).  A party that knowingly violates the discharge injunction can be held in
28  contempt under § 105(a).  *Renwick v. Bennett (In re Bennett),* 298 F.3d 1059, 1069 (9th Cir. 2002);

10

*Walls v. Wells Fargo Bank, N.A.,* 276 F.3d 502, 507 (9th Cir. 2002). The party seeking contempt sanctions for violation of the discharge injunction has the burden of proving, by clear and convincing evidence, that the sanctions are justified. *Espinosa v. United Student Aid Funds, Inc.,* 553 F.3d 1193, 1205 n. 7 (9th Cir. 2008). Schulte contends Shellpoint violated the discharge injunction by sending various informational statements in the mail, which allegedly "requested" payment of an improper amount for the principal and interest. ECF No. 1334 at 104. This is not the case.

**First**, Shellpoint sent monthly statements reflecting the terms of the confirmed plan, including the correct principal balance, interest rate (5.00%), and principal and interest payment ($708.60). Ex. 1 at ¶ 16. While Schulte complains the monthly payment amount included escrow, this was fully permitted under the terms of the confirmation plan, which incorporated the loan documents. *See* Ex. 3 at ¶¶ 1-5, 9.

**Second**, Shellpoint's actions were objectively reasonable given Schulte's substantial default under the confirmation plan. The statements and notices sent to Schulte included appropriate bankruptcy disclaimers advising the correspondence were for informational purposes only and not an attempt to collect the debt personally. *See* Mot. for Contempt, Exs. 5-9; Ex. 1 at ¶ 15. These correspondences largely addressed Schulte's ***own*** default on the confirmation plan, offering loss mitigation assistance. *Id.* This was not a Chapter 7 bankruptcy, where the debtor could reasonably believe there is no need for payments or correspondence following discharge. Schulte remained involved in the property under the plan and through her holding company, Schulte Properties LLC. Nothing Shellpoint allegedly sent could be construed as attempting to collect personally discharged debt against Schulte.

**Third**, the confirmation plan specifically contemplated Schulte continuing to make payments in accordance with the plan. In fact, Schulte admits to ***requesting*** monthly statements from Shellpoint and never asked Shellpoint to stop sending such correspondence. *See* Ex. 7 at 50, 51. The statements were indisputably not to pressure Schulte to repay discharged debt, but rather provide important information regarding the status of the loan post-confirmation. *In re McLean,* 794 F.3d at 1322. Any communications from Shellpoint were in furtherance of its own *in rem* rights based on Schulte's failure to make payments under the plan. It was objectively reasonable for

61964585;2

Shellpoint to send correspondence regarding the account status, and Schulte fully expected to receive this information. Schulte has no basis to argue otherwise, much less sufficient evidence to demonstrate Shellpoint acted unreasonably by clear and convincing evidence.

### 3. Sanctions are not warranted.

The bankruptcy court's civil contempt power, which the Ninth Circuit has held is conferred on the bankruptcy court by section 105(a) of the Bankruptcy Code, is a limited one. *Walls v. Wells Fargo Bank*, 276 F.3d 502, 507 (9th Cir. 2002). The Ninth Circuit specifically prohibits bankruptcy courts from imposing punitive sanctions for violations of the discharge injunction. *In re Dyer*, 322 F.3d 1178, 1183 (9th Cir. 2003) ("[P]unitive sanctions are criminal contempt sanctions . . . [but] criminal contempt sanctions are not available under § 105(a).").

Any sanctions imposed upon a litigant that are neither "calibrate[d] to [the] damages caused by" the violation in question nor designed to coerce compliance with a court order are punitive in nature and thus implicate the criminal contempt power. *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 and n.4 (2017); *see also In re McLean*, 794 F.3d 1313, 1323 (11th Cir. 2015) ("Punitive sanctions . . . take the form of a fixed fine and have no practical purpose other than punishment . . . [P]unitive sanctions are for offenses already completed.").[1]

As outlined above, there is no basis for sanction of any kind, including punitive sanctions. The uncontroverted evidence demonstrates Shellpoint's full compliance with the confirmed plan and discharge injunction. Shellpoint has taken every effort to verify its compliance with these orders, including conducting multiple audits of the loan accounting. There was nothing intentionally improper or in bad faith regarding Shellpoint's conduct. It inherited a loan as servicer that was delinquent under the confirmed plan and acted appropriately given the circumstances. It's monthly statements, internal accounting, and loan history all reflect the correct terms under the confirmed plan, including the correct principal balance, interest rate, and monthly payment. Ex. 1 at 9.

---

[1] It is true that the Ninth Circuit held in *Dyer* that the civil contempt power permits bankruptcy courts to impose such mild, non-compensatory penalties upon creditors for violations of the discharge injunction. That holding, however, is inconsistent with the Supreme Court's subsequent decision in *Goodyear* which held that sanctions must be compensatory in nature.

12

61964585;2

Further, the escrow payments were fully consistent with both the adequate protection order and confirmed plan itself, which incorporated the terms of the loan documents. Shellpoint has taken numerous good faith efforts to resolve Schulte's default, including attending a settlement conference just last year.

Simply put, Schulte cannot meet her burden of showing the requisite intent to support damages on any of her assertions. Discovery has now closed. Schulte has no evidence, much less clear and convincing evidence, to show any intent to violate the court's orders, or else engage in bad faith or willful misconduct. If anything, Schulte has obtained a windfall by continuing to collect rent without making the required payments under the confirmation plan. Shellpoint is entitled to summary judgment on this issue.

**4.    Schulte cannot prove damages.**

*A.    Actual Damages*

Even if Schulte could prove a violation on Shellpoint's part (she cannot), summary judgment is appropriate because Schulte cannot prove damages. The bankruptcy court's civil contempt power, which the Ninth Circuit has held is conferred on the bankruptcy court by section 105(a) of the Bankruptcy Code, is limited. *Walls v. Wells Fargo Bank*, 276 F.3d 502, 507 (9th Cir. 2002). The United Supreme Court has made clear that *any* sanctions imposed upon a litigant that are neither "calibrate[d] to [the] damages caused by" the violation in question nor designed to coerce compliance with a court order, are punitive in nature and thus implicate the criminal contempt power. *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 and n.4 (2017); *see also In re McLean*, 794 F.3d 1313, 1323 (11th Cir. 2015) ("Punitive sanctions . . . take the form of a fixed fine and have no practical purpose other than punishment . . . [P]unitive sanctions are for offenses already completed.").

Schulte cannot show by clear and convincing evidence she has suffered any actual damages. No actual damages exist. Schulte superficially claims damages for attorney's fees, emotional distress, and associated compensatory costs. But absent from Schulte's allegations (and the disclosed evidence) is anything beyond conjecture to establish the requisite causal connection between the actions or inactions of Shellpoint and Schulte's alleged damages. As Schulte concedes, she has

13

involvement with numerous different loans, properties, and servicers. Schulte has raised similar "contempt" and sanctions motions against these different entities. The burden falls on Schulte to show how *Shellpoint* is liable for the claimed damages, as opposed to some other entity or prior servicer. Because Schulte cannot do so, summary judgment is appropriate.

### B.      *Emotional Damages*

Schulte also claims she suffered emotional damages resulting from Shellpoint's conduct. The Ninth Circuit's standards for obtaining emotional damages are stringent. *Snowden v. Check into Cash of Wash. Inc. (In re Snowden)*, 769 F.3d 651, 657 (9th Cir 2014). "Fleeting or trivial anxiety or distress does not suffice to support an award; instead, an individual must suffer *significant* emotional harm." *In re Dawson*, 390 F.3d 1139, 1149 (9th Cir. 2004) (emphasis added); *In re Grihalva*, No. 11-26893, 2013 WL 5311227, at *6 n.17 (D. Nev. Sept. 3, 2013) (debtor's attestation that the action "upset me greatly" insufficient for emotional distress damages). The Ninth Circuit further requires that the requisite emotional harm is "clearly established." *Snowden*, 769 F.3d at 657. A debtor may prove emotional distress by offering corroborating medical evidence, or through the testimony of non-expert witnesses, "such as family members, friends, or coworkers," whose description of the "manifestations of mental anguish . . . clearly establish[es] that significant emotional harm occurred." *Dawson*, 390 F.3d at 1149-50. A debtor seeking the award damages for emotional distress must present evidence beyond the debtor's self-serving testimony. *See In re Brown*, 481 B.R. 351, 363 (Bankr. W.D. Pa. 2012); *accord Diviney v. NationsBank of Texas* (*In re Diviney*), 211 B.R. 951, 967 (Bankr. N.D. Okla. 1997), *aff'd*, 225 B.R. 762 (10th Cir. BAP 1998) (no damages for emotional distress for stay violation where no medical evidence was introduced to support claim).

Schulte's claims to have suffered "emotional strain" resulting from the at-issue conduct. As a preliminary matter, this is facially insufficient to prove she suffered significant harm or else demonstrate the required causal connection between the specific actions asserted as against Shellpoint. *See Dawson*, 390 F.3d at 1148. Further, Schulte neglects to mention that any purported "emotional strain" she suffered was due to her own violation of the confirmation, which specifically required Schulte to transfer the property to a holding company upon entry. Schulte waited roughly *six years* to do so.

It is well-established corporate entities cannot claim emotional distress damages. *See, e.g.*, *F.D.I.C. v. Hulsey*, 22 F.3d 1472, 1489 (10th Cir. 1994) ("Since a corporation lacks the cognizant ability to experience emotions, a corporation cannot suffer emotional distress."); *Earth Scientists (Petro Servs.) Ltd. v. U.S. Fid. & Guar. Co.*, 619 F. Supp. 1465, 1474 (D. Kan. 1985) ("A corporation cannot suffer severe emotional distress."). And even if a business entity could claim emotional damages (and it cannot), courts routinely hold such damages are not available in civil contempt proceedings. *See, e.g., Burd v. Walters (In re Walters),* 868 F.2d 665, 670 (4th Cir.1989) ("[N]o authority is offered to support the proposition that emotional distress is an appropriate item of damages for civil contempt, and we know of none"); *see also McBride v. Coleman,* 955 F.2d 571, 577 (8th Cir. 1992) ("The problems of proof, assessment, and appropriate compensation attendant to awarding damages for emotional distress are troublesome enough in the ordinary tort case, and should not be imported into civil contempt proceedings."), *cert. denied,* 506 U.S. 819, 113 S.Ct. 65, 121 L.Ed.2d 32 (1992). The court should not entertain Schulte's attempt to circumvent this rule by capitalizing on her *own* failure to transfer the property to the holding company. Schulte has fallen well short of meeting her burden of proof to demonstrate any emotional distress in this action.

### C.    Attorney's Fees and Costs

Section 105(a) authorizes only such remedies as are "necessary or appropriate to carry out the provisions of this title." "[C]ivil contempt is the normal sanction for violation of the discharge injunction." 4 *Collier on Bankruptcy* ¶ 524.02[2][c] (15th ed. 1999). Compensatory civil contempt allows an aggrieved debtor to obtain compensatory damages, including attorneys' fees. *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 507 (9th Cir. 2002). Courts have applied the standard of § 330 for compensating professionals in bankruptcy, which provides for "reasonable compensation for actual, necessary services." 11 U.S.C. § 330(a)(1)(A). *See United States v. Price,* 176 B.R. 807, 808 (N.D.Ill.1993), *aff'd,* 42 F.3d 1068 (7th Cir.1994) ("To the extent that services performed are compensable under § 330, attorneys' fees have been incurred by the estate and can be awarded pursuant to § 362(h)."); *Sucre v. MIC Leasing Corp. (In re Sucre),* 226 B.R. 340, 351 (Bankr.S.D.N.Y.1998).

. . .

61964585;2

Courts especially scrutinize cases where the debtor's only injuries are those incurred in litigating the motion for sanctions, and where there exist no circumstances warranting punitive damages. *See McHenry,* 179 B.R. at 168; *Shadduck v. Rodolakis,* 221 B.R. 573, 585 (D.Mass.1998) (requiring a debtor to attempt to resolve the dispute prior to filing a motion for sanctions); *In re Craine,* 206 B.R. 594 (Bankr.M.D.Fla.1997) (finding no injury); *In re Brock Utils. & Grading, Inc.,* 185 B.R. 719 (Bankr.E.D.N.C.1995) (same); *McLaughlin,* 96 B.R. at 563 (reducing fees). *In re Roman*, 283 B.R. 1, 12 (B.A.P. 9th Cir. 2002). When considering damages, the court must consider two factors: "(1) what expenses or costs resulted from the violation and (2) what portion of those costs was reasonable, as opposed to costs that could have been mitigated." *In re Roman,* 283 B.R. 1, 12 (9th Cir. BAP 2002). Further, any such attorneys' fees must be reasonable. *See, Perry v. ODonnell*, 759 F.2d 702, 706 (9th Cir. 1985).

Here, Schulte claims to have incurred attorney's fees "attempting to straighten the account out." But Schulte neglects to mention that many of the supposed "issues" with the account predate Shellpoint's involvement and are a direct result of Schulte's own default on the confirmation plan. Incurring attorney's fees to remedy errors resulting from Schulte's own conduct and prior to Shellpoint servicing the loan cannot be attributable to Shellpoint. Further, any such attorney's fees are unreasonable given Shellpoint's compliance with the confirmed plan at the time Schulte filed the contempt motion, and Schulte has failed to provide competent evidence in support of its claim.

### D.    Punitive Damages

Shellpoint is also entitled to summary judgment on Schulte's claim for punitive damages. While section 362(k) authorizes an award of punitive damages in appropriate circumstances, *see* 11 U.S.C. § 362(k)(1), a bankruptcy court is not generally authorized to impose punitive sanctions under the contempt authority of section 105(a). *See Dyer*, 322 F.3d at 1194; *see also In re Roman*, 283 B.R. 1, 14 (9th Cir. BAP 2002). Even if punitive sanctions were authorized by section 105(a), Schulte would still not be entitled to such an award. Put simply, punitive damages are not warranted where a claimant, like Schulte, has failed to establish a right to recover actual damages. *See e.g., In re McHenry*, 179 B.R. 165, 168 (9th Cir. BAP 1995) (noting that punitive damages should not be awarded in the absence of actual damages). There is otherwise no evidence that Shellpoint acted

16

with a reckless or callous disregard for Schulte's rights, a necessary prerequisite to recovering punitive damages. *See e.g., In re Bloom*, 875 F.2d at 228.

Discovery in this matter is now closed. Schulte cannot prove that Shellpoint acted deliberately, maliciously, or in bad faith. Accordingly, summary judgment on Schulte's request for punitive damages is appropriate.

V. **CONCLUSION.**

Shellpoint has made every effort to ensure its compliance with the confirmation order and discharge injunction. Any communications it has sent to Schulte were post application of the automatic stay and contained appropriate disclaimers. Further, these communications were largely a result of Schulte's own default on the confirmation plan and appropriate given the circumstances. Schulte cannot provide any evidence to show Shellpoint engaged in improper conduct, much less show it was down with the requisite intent. And even if Schulte could overcome these substantial hurdles, she cannot prove her requested damages. The court should enter summary judgment in Shellpoint's favor.

DATED this 31st day of January, 2022.

**AKERMAN LLP**

*/s/ Nicholas E. Belay*
ARIEL E. STERN, ESQ.
Nevada Bar No. 8276
NATALIE L. WINSLOW, ESQ.
Nevada Bar No. 12125
NICHOLAS E. BELAY, ESQ.
Nevada Bar No. 15175
1635 Village Center Circle, Suite 200
Las Vegas, NV 89134
*Attorneys for NewRez LLC dba Shellpoint Mortgage Servicing*

61964585;2

**CERTIFICATE OF SERVICE**

1. On January 31, 2022, I served the following document: **SHELLPOINT MORTGAGE SERVICING'S MOTION FOR SUMMARY JUDGMENT**, I served the above-named document by the following means to the persons as listed below: *(Check all that apply)*

☒ **a.** **ECF System -** The Court's CM/ECF systems sends an e-mail notification of the filing to the parties and counsel of record who are registered with the Court's CM/ECF system.

☐ **b.** **Personal Service -** I personally delivered the document(s) to the persons at these addresses: N/A

☐ For a party represented by an attorney, delivery was made by handing the document(s) to the attorney or by leaving the documents(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the documents(s) in a conspicuous place in the office: N/A

☐ For a party, delivery was made by handing the document(s) to the party or by leaving the document(s)at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there: N/A

☐ **c.** **By direct mail (as opposed to through the ECF System)**

☐ **d.** **By fax transmission**

☐ **e.** **By messenger**

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed on: January 31, 2022.

| Patricia Larsen | */s/ Patricia Larsen* |
|---|---|
| (Name of Declarant) | (Signature of Declarant) |

## **INDEX OF EXHIBITS**

| | |
|---|---|
| Exhibit 1 | Declaration of Shellpoint Mortgage Servicing |
| Exhibit 2 | Deed of Trust |
| Exhibit 3 | Assignment of Deed of Trust |
| Exhibit 4 | Grant Bargain Sale Deed |
| Exhibit 5 | Voluntary Petition for Bankruptcy |
| Exhibit 6 | Proof of Claim |
| Exhibit 7 | Deposition of Melani Schulte |

19

61964585;2